# EXHIBIT 5

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM
NYSCEF DOC. NO. 18
INDEX NO. 652077/2017
RECEIVED NYSCEF: 06/29/2017

20-12411-jlg   Doc 14-5   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 5
Pg 2 of 57

DATED THE *19th* DAY OF *April* 2013

(1)   PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.

(2)   SHINY TIMES HOLDINGS LIMITED

(3)   KWOK HO WAN (郭浩云)

(4)   BEIJING PANGU INVESTMENT INC. (北京盘古氏投资有限公司)

---

**DEED OF SETTLEMENT**
In relation to
Facility Letter dated 16 March 2011

---

**HONG KONG**

164

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 18
RECEIVED NYSCEF: 06/29/2017

20-12411-jlg    Doc 14-5    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 5
Pg 3 of 57

## DEED OF SETTLEMENT

**THIS DEED OF SETTLEMENT (this "Deed")** is made on the 19th day of April 2013

**BETWEEN:**

(1) **PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.**, an exempted limited partnership organized under the laws of the Cayman Islands whose registered office is at P.O. Box 472, 2nd Floor, Harbour Place, Grand Cayman, Cayman Islands (**"PAX LP"** or the **"Lender"**);

(2) **SHINY TIMES HOLDINGS LIMITED**, a company incorporated under the laws of the British Virgin Islands whose registered office is at P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, British Virgin Islands (**"Shiny Times"** or the **"Borrower"**);

(3) **KWOK HO WAN (郭浩云)**, holder of Hong Kong identity card no. P746467(7) whose correspondence address in Hong Kong is at 4th Floor, Central Tower, 28 Queen's Road Central, Hong Kong (**"Mr. Kwok"**); and

(4) **BEIJING PANGU INVESTMENT INC. (北京盘古氏投资有限公司)**, a company established under the laws of PRC whose registered office is at 北京市朝阳区 北京四环中路 27 号 A 座写字楼 37 层 (**"Beijing Pangu"**).

**WHEREAS:**

(A) On 16 March 2011, PAX LP as lender and Shiny Times as borrower entered into a facility letter (the **"Facility Letter"**) pursuant to which PAX LP advanced a short term loan in a principal amount of US$46,426,489 (the **"Loan"**) to Shiny Times at the rate of 15% per annum commencing on 31 December 2010 until 30 June 2012 on the condition that a new personal guarantee of Mr. Kwok (the **"Personal Guarantee"**) in favour of the Lender had been delivered to secure the due and punctual performance of Shiny Times to fully repay the Loan plus all accrued and unpaid interest in accordance with the Facility Letter, which superseded and replaced the previous guarantee and security provided by Shiny Times and/or Mr. Kwok.  Accordingly, Mr. Kwok entered into the Personal Guarantee on 16 March 2011 in favour of the Lender to secure the Loan.

(B) As of the date hereof, the total outstanding amount of the Loan plus all accrued and unpaid interest is US$52,000,000 (the **"Total Outstanding Amount"**).

(C) Each of the Parties agrees to settle the Total Outstanding Amount in full and discharge all obligations and duties of each Party absolutely in accordance with the terms and conditions of this Deed.

1

**NOW, THEREFORE,** in consideration of the agreements and obligations set forth herein and of other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties hereto agree as follows:

## DEFINITIONS AND INTERPRETATION

1.1 <u>Definitions</u>. In this Deed and the Recitals hereto, unless the context otherwise requires:

| | |
|---|---|
| "Confidential Information" | shall have the meaning ascribed thereto in Clause 6(a). |
| "Deed" | shall mean this Deed, together with the Schedules hereto, as modified, supplemented or amended from time to time. |
| "Deed of Release" | shall have the meaning ascribed thereto in Clause 4.1. |
| "Facility Letter" | shall have the meaning ascribed thereto in Recital (A). |
| "HK$" | shall mean the lawful currency of Hong Kong. |
| "Hong Kong" | shall mean the Hong Kong Special Administrative Region of the PRC. |
| "Loan" | shall have the meaning ascribed thereto in Recital (A). |
| "Parties" | shall mean the parties described in the preamble and their respective successors and permitted transferees in accordance with the terms of this Deed; **"Party"** shall mean any one of them. |
| "PRC" | shall mean the People's Republic of China. |
| "Repayment Amount" | shall mean US$ equivalent of RMB105,000,000. |
| "Purchase Price" | shall have the meaning ascribed thereto in the Schedule. |
| "Total Outstanding Amount" | shall have the meaning ascribed thereto in Recital (B). |
| "US$" | shall mean the lawful currency of the United States of America. |
| "Waived Amount" | shall mean the balance of the Total Outstanding Amount after deduction of the Repayment Amount, which is waived by PAX LP under the terms of this |

2

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 15
20-12411-jlg    Doc 14-5    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 5
RECEIVED NYSCEF: 06/29/2017
Pg 5 of 57

Deed.

1.2    Interpretation. In this Deed (which shall include its Schedules):

(a)    the masculine gender shall include the feminine and neuter and the singular number shall include the plural and vice versa;

(b)    references to persons shall include natural persons, corporations (wherever incorporated), unincorporated associations (including partnerships), any form of governmental body, agency or authority and any other entity of any nature;

(c)    the headings are inserted for convenience only and shall not affect the construction of this Deed;

(d)    any reference to Recitals, Clauses and Schedules is a reference to the recitals, clauses and the schedule to, this Deed;

(e)    any reference to a law means that law (and any subsidiary provisions) as from time to time in force; and

(f)    a reference to a date or time is a reference to that date or time in Hong Kong, unless the context otherwise requires.

## 2.    FINAL SETTLEMENT OF THE TOTAL OUTSTANDING AMOUNT

2.1    Each Party agrees and confirms that the Total Outstanding Amount payable by Shiny Times to PAX LP as at the date hereof is US$52,000,000.

2.2    Shiny Times shall repay the Repayment Amount in three equal installments in accordance with the following schedule:

| Repayment Instalment | Scheduled Repayment Date | Repayment Amount |
|---|---|---|
| 1 | 30 days after receipt of the Purchase Price of the Apartment 1 | US$ equivalent of RMB35,000,000 |
| 2 | 30 days after receipt of the Purchase Price of the Apartment 2 | US$ equivalent of RMB35,000,000 |
| 3 | 30 days after receipt of the Purchase Price of the Apartment 3 | US$ equivalent of RMB35,000,000 |

and each repayment shall be transferred by Shiny Times or its nominee to the following bank account designated by PAX LP:

Correspondent Bank    :    JP Morgan Chase Bank, New York
SWIFT code    :    CHASUS33

3

167

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 18
20-12411-jlg   Doc 14-5   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 5
RECEIVED NYSCEF: 06/29/2017
Pg 6 of 57

| For Account | : | Butterfield Bank (Guernsey) Limited |
| SWIFT code | : | BNTBGGSX |
| Account No. | : | 544-7-11230 |
| For further credit to | : | Pacific Alliance Asia Opportunity Fund L.P. |
| Account No. | : | 02/D25/200229 |

**3.   PURCHASE OF RESIDENTIAL APARTMENTS OF PANGU PLAZA**

3.1   <u>Purchase of residential apartments</u>.  Subject to the satisfaction of all conditions precedent described in Clause 3.2 below, PAX LP hereby agrees to purchase or procure the purchase of three residential apartments in the Seven Star Morgan Plaza (七星摩根广场, which advertizing name is Pangu Plaza (盘古大观)) Beijing, PRC (the **"Apartments"**) by entering into three separate agreements on sale of the three Apartments with Beijing Pangu, a side letter in connection with such agreements and all necessary agreements and/or documents (collectively, the **"Purchase Agreements"** and each of them, the **"Purchase Agreement"**) to validate the sale and purchase of the Apartments. Particulars of the Apartments to be purchased are set out in the Schedule.

3.2   <u>Completion of Sale and Purchase of the Apartments</u>

Completion of the sale and purchase of the Apartments is subject to the satisfaction of the following conditions:

(a)   Beijing Pangu shall have obtained the House Ownership Certificate for entire building entitled "Grand Title Certificate" (《房屋所有权证》，整栋楼共同的权属证书，也称"大产权证") for all Apartments (the **"Grand Title Certificates"**);

(b)   PAX LP or its onshore designee and Beijing Pangu shall have signed the Purchase Agreements for the sale and purchase of the Apartments substantially in the form attached as Appendix I hereto within three working days after receipt of the Grand Title Certificates;

(c)   Beijing Pangu and PAX LP or its onshore designee shall have co-registered the sale of the Apartments on the website of construction authorities within three working days after receipt of the Grand Title Certificates;

(d)   The mortgage in respect of the Apartments shall have fully discharged and released;

(e)   The Apartments are of clean title, free and clear of any encumbrance;

(f)   Beijing Pangu shall have delivered to PAX LP or its onshore designee (i) a letter issued by the relevant management company of the Apartments waiving the management fee for the period from the completion date of purchase of the Apartments to the date of actual occupation of the Apartments by PAX LP or its onshore designee and in any event not longer than three (3) years (the **"Management Fee"**) and (ii) a letter issued by Beijing Pangu agreeing to pay the Management Fee on

4

behalf of PAX LP or its onshore designee, both letters are substantially in the form attached as Appendix II hereto;

(g)    Beijing Pangu shall have delivered to PAX LP or its onshore designee an invoice for the purchase of the Apartments which is approved by PAX LP or its onshore designee;

(h)    Beijing Pangu shall have provided evidence to PAX LP or its onshore designee regarding the payment of all relevant taxes and charges in connection with the sale and purchase of the Apartments made by Beijing Pangu;

(i)    Beijing Pangu shall have delivered the House Ownership Certificate of the Apartments to PAX LP or its onshore designee; and

(j)    Beijing Pangu shall have delivered the Apartments to PAX LP or its onshore designee in accordance with the terms of the Purchase Agreements and PAX LP or its onshore designee shall have satisfied the quality inspection of the Apartments.

3.3    <u>Completion of Sale and Purchase of Apartments</u>. For the avoidance of doubt, PAX LP or its onshore designee shall only be obliged to pay the purchase price of the Apartments in accordance with the terms of the Purchase Agreements after all conditions precedent set forth in Clause 3.2 have been satisfied for all Apartments. The Sale and Purchase of Apartments shall be deemed completed upon satisfaction of all conditions precedent set forth in Clause 3.2 for all Apartments.

3.4    <u>Reversion of the Facility Letter aft 31 July 2013</u>. In the event that all conditions precedent set out in Clause 3.2 for all Apartments have not been satisfied by 31 July 2013 (or such later date agreed by the Parties in writing), then the entire settlement as contemplated under this Deed shall be terminated and the Parties acknowledge that the Facility Letter shall revert and be in full force and effect immediately after 31 July 2013 (or such later date agreed by the Parties in writing) and Shiny Times shall be obliged to settle the Total Outstanding Amount and any interest accrued thereon in accordance with the terms and conditions of the Facility Letter.

4.    **RELEASE AND TERMINATION**

4.1    <u>Release and Termination of Interests in the Facility Letter and the Loan</u>. Immediately after repayment of the Repayment Amount pursuant to Clause 2.2 and completion of the sale and purchase of all Apartments in accordance with the terms of the Purchase Agreements (including satisfaction of all conditions precedent set forth in Clause 3.2 for all Apartments), PAX LP shall deliver Mr. Kwok, Shiny Times and Beijing Pangu with a deed of release (the **"Deed of Release"**) duly executed by PAX LP to fully release and terminate all of PAX LP's respective rights, title and interests in, to and under all security, assigned, pledged, mortgaged or otherwise granted to PAX LP and to release and discharge fully and absolutely the respective obligations of Mr. Kwok, Shiny Times and Beijing Pangu under the Facility Letter and other documents contemplated under Facility Letter and the Loan.

169

4.2    Reversion of the Facility Letter.  In the event that any Repayment Instalment as set forth in Clause 2.2 is not fully repaid in accordance with the terms of this Deed, the Facility Letter shall revert and be in full force and effect immediately after such failure and Shiny Times shall be obliged to settle any outstanding Total Outstanding Amount and any interest accrued thereon in accordance with the terms of the Facility Letter (after deducting any amount paid by Shiny Times to PAX LP under Clause 2.2).

5.    **REPRESENTATIONS, WARRANTIES AND UNDERTAKINGS**

5.1    Each Party. Each Party hereby represents and warrants to the other Party that on the date hereof and as of each payment date under Clause 2.2 of this Deed:

    (a)    Corporate Status, Power and Authority.  The Party has full power and authority (corporate or otherwise) to enter into and perform its obligations under this Deed.

    (b)    Authorization and Enforceability.  The execution and delivery of this Deed and the performance of the obligations hereunder has been duly authorized (corporate or otherwise) by the Party.

    (c)    Regulatory Approvals.  No consent, waiver, approval or authorization of any governmental authority or any filing, registration or qualification with or notice to, any governmental authority is required on the part of the Party in connection with the Party's execution or delivery of this Deed or the performance of any of its obligations hereunder.

    (d)    Litigation.  To the best knowledge of the Party after having made due inquiry, there are no judicial or administrative actions, proceedings or investigations pending or threatened against the Party that disputes or challenges the validity, binding nature and enforceability of this Deed or the ability of the Party to perform the obligations under this Deed.

    (e)    No Brokers.  Neither the Party nor any of its subsidiaries has employed any broker or finder or incurred any liability for any brokerage fees, commissions or finders' fees in connection with the transactions contemplated by this Deed.

    (f)    Binding obligations.  This Deed constitutes legal, valid and binding obligations of the Party enforceable against the Party in accordance with its terms.

6.    **CONFIDENTIALITY**

Subject to as hereinafter expressly appears, and save and except as expressly approved by all Parties in writing, each of the Parties shall maintain and shall procure that their respective appointees shall maintain strict confidence and secrecy in respect of all information of a proprietary commercial and trading

6

nature received by them or it directly or indirectly pursuant to this Deed, and each of the Parties shall use its best endeavors to procure that its respective officers, directors and associates (if any) shall likewise maintain strict confidence and secrecy in respect of such information.

(a)  For the purposes of this Clause, **"Confidential Information"** means all information of a confidential nature disclosed (whether in writing, verbally or by any other means and whether directly or indirectly) by one Party (the **"Disclosing Party"**) to any other Party (the **"Receiving Party"**) whether before or after the date of this Deed.

(b)  From the date hereon until the termination of this Deed for any reason whatsoever (the **"Term"**), the Receiving Party shall:

(i)  keep the Confidential Information confidential;

(ii)  not disclose the Confidential Information to any other person other than persons who have a need to know for the consummation of the transactions contemplated in this Deed or with the prior written consent of the Disclosing Party or as required by law or regulation; and

(iii)  not use the Confidential Information for any purpose other than the performance of its obligations under this Deed.

(c)  During the Term, the Receiving Party may disclose the Confidential Information to its employees or other persons who have a need to know for the consummation of the transactions contemplated in this Deed (the **"Recipient"**) to the extent that it is necessary for the purposes of this Deed.

(d)  The Receiving Party shall procure that each Recipient is made aware of and complies with all the Receiving Party's obligations of confidentiality under this Deed as if the Recipient was a Party.

(e)  The obligations contained in this Clause shall not apply to any Confidential Information which:

(i)  is at the date of this Deed or at any time after the date of this Deed comes into the public domain other than through breach of this Deed by the Receiving Party or any Recipient; or

(ii)  have been known to the Receiving Party prior to it being disclosed by the Disclosing Party to the Receiving Party; or

(iii)  subsequently comes lawfully into the possession of the Receiving Party from a third party; or

(iv)  information that is required to be disclosed by the Party by laws or by the requirements of any relevant stock exchange or other relevant regulatory body or any other entity that has jurisdiction over any of the Parties' activities.

7

171

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM
NYSCEF DOC. NO. 18
20-12411-jlg    Doc 14-5    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 5
Pg 10 of 57

INDEX NO. 652077/2017
RECEIVED NYSCEF: 06/29/2017

7.      **INDEPENDENT LEGAL ADVICE**

Each Party hereby agrees and acknowledges that:

(a)    prior to its execution of this Deed, it has been advised to obtain and has obtained or has had the opportunity to obtain independent legal advice on the purposes, effect, consequences and implications of this Deed and the documents referred to herein;

(b)    upon its execution of this Deed, it has carefully read the provisions of this Deed and fully understands and is fully aware of the purposes, effect, consequences and implications of this Deed and the documents referred to herein; and

(c)    it executes this Deed freely and voluntarily without duress or undue influence on the part of the other Parties or any other person.

8.      **NOTICES**

8.1.    Any notice to be given under this Deed shall be in English and Chinese and made in writing and may be delivered personally or sent by prepaid letter (airmail if overseas) or facsimile transmission. A notice shall be sent to the addressee (marked for the attention of the appropriate person) at its address or facsimile number set out below or to such other address or facsimile number as may be notified by such addressee to the other Party from time to time for the purposes of this Clause.

8.2    Notices shall be given as follows:

to PAX LP:
    Address:  P.O. Box 472, 2nd Floor
              Harbour Place
              Grand Cayman, Cayman Islands
    Attn :    Board of Directors

*with a copy to:*
    Address:  PAG
              15th Floor, AIA Central
              1 Connaught Road Central
              Hong Kong
    Fax:      +852 2918 0881
    Attn:     Jon Lewis, Group General Counsel

to Shiny Times and Mr. Kwok:
    Address:  4th Floor, Central Tower
              28 Queen's Road Central
              Hong Kong
    Fax:      +852 2850 6786
    Attn:     Kwok Ho Wan

*with a copy to:*
    Address:  Stevenson, Wong & Co.

8

4th Floor, Central Tower
28 Queen's Road Central
Hong Kong
Fax:    +852 2868 9928
Attn:    Hank Lo

8.3    A notice shall be deemed to have been served:

(a)    if personally delivered, at the time of delivery;

(b)    if posted, if to an addressee within the same country, two (2) working days (or if to an addressee in a different country, five (5) working days, when it shall be sent airmail) after the envelope containing the notice was delivered into the custody of the postal authorities; and

(c)    if communicated by facsimile transmission, at the time of transmission;

PROVIDED THAT where, in the case of delivery by hand or transmission by facsimile, such delivery or transmission occurs after 4:00 p.m. (local time) on a working day or on a day which is not a working day in the place of receipt, service shall be deemed to occur at 9:00 a.m. (local time) on the next following working day in such place; and for this purpose, in this Clause "working day" means a day on which banks are open for business in the ordinary course, other than Saturdays and Sundays.

8.4    In proving service, it shall be sufficient to prove that personal delivery was made or that the envelope containing the notice was properly addressed and delivered into the custody of postal authorities authorised to accept the same, or if sent by facsimile, by receipt of automatic confirmation of transmission or answerback PROVIDED THAT a notice shall not be deemed to be served if communicated by facsimile transmission which is not legible in all material respects; such transmission shall be deemed to have been so legible if a request for retransmission is not made before the end of the next working day following the transmission.

8.5    All the notices addressed to PAX LP shall be a sufficient notice to any one of them.

## 9.    COSTS AND EXPENSES

Save as otherwise stated in this Deed, Shiny Times shall pay all costs and expenses in relation to the negotiation, preparation, execution and carrying into effect of this Deed, the documents referred to herein and the other documents forming part of the transactions contemplated hereby and thereby, except that Beijing Pangu shall bear all the taxes and governmental and third-party charges in relation to the completion of the purchase of the Apartments under Clause 3.2.

9

173

10. **GENERAL PROVISIONS**

10.1 <u>Further Assurance</u>. Each Party agrees to perform (or procure the performance of) all further acts and things, and execute and deliver (or procure the execution and delivery of) such further documents, as may be required by law or as may be necessary or reasonably desirable to implement and/or give effect to this Deed and the transactions contemplated by it.

10.2 <u>Entire Agreement</u>. This Deed (together with any document/agreement described in or expressed to be entered into in connection with this Deed) constitutes the entire agreement between the parties in relation to the transaction(s) referred to it or in them and supersedes any previous agreement between the parties in relation to such transaction(s), including the Deed of Settlement dated 25 April, 2012 entered into by and among the parties hereto (the "**Deed of Settlement**") and the Deed of Settlement shall be terminated and be of no further effect from the date of this Deed.   It is agreed that:

   (a) no Party has entered into this Deed in reliance upon any representation, warranty or undertaking of any other Party which is not expressly set out or referred to in this Deed; and

   (b) except for any breach of an express representation or warranty under this Deed, no Party shall have any claim or remedy under this Deed in respect of misrepresentation or untrue statement made by any other Party, whether negligent or otherwise, and whether made prior to or after this Deed, PROVIDED THAT this Clause shall not exclude liability for fraudulent misrepresentation.

10.3 <u>Remedies Cumulative</u>. Any right, power or remedy expressly conferred upon any Party under this Deed shall be in addition to, not exclusive of, and without prejudice to all rights, powers and remedies which would, in the absence of express provision, be available to it; and may be exercised as often as such Party considers appropriate.

10.4 <u>Waivers</u>. No failure, relaxation, forbearance, indulgence or delay of any Party in exercising any right or remedy provided by law or under this Deed shall affect the ability of that Party subsequently to exercise such right or remedy or to pursue any other rights or remedies, nor shall such failure or delay constitute a waiver or variation of that or any other right or remedy. No single or partial exercise of any such right or remedy shall preclude any other or further exercise of it or the exercise of any other right or remedy.

10.5 <u>Severability</u>. The Parties intend that the provisions of this Deed shall be enforced to the fullest extent permissible under the laws applied in each jurisdiction in which enforcement is sought. If any particular provision or part of this Deed shall be held to be invalid or unenforceable, then such provision shall (so far as invalid or unenforceable) be given no effect and shall be deemed not to be included in this Deed but without invalidating any of the remaining provisions of this Deed. The Parties shall use all reasonable endeavours to replace the invalid or unenforceable provisions by a valid and enforceable substitute provision the effect of which is as close as possible to the intended effect of the invalid or unenforceable provision.

10

10.6    Variation. No variation of any of the terms of this Deed (or of any document described in or expressed to be entered into in connection with this Deed) shall be effective unless such variation is made in writing and signed by or on behalf of each of the Parties. The expression "variation" shall include any variation, supplement, deletion or replacement however effected.

10.7    Assignment. This Deed shall be binding upon, and inure to the benefit of, the Parties and their respective successors and permitted assigns. No party shall take any steps to assign, transfer, charge or otherwise deal with all or any of its rights and/or obligations under or pursuant to this Deed without the prior written consent of the other Parties. In the absence of the prior written consent of the Parties, this Deed shall not be capable of assignment.

10.8    Counterparts. This Deed may be executed in any number of counterparts all of which, taken together, shall constitute one and the same agreement. Any Party may enter into this Deed by executing any such counterpart.

10.9    Legal Relationship. The Parties are independent principals and no Party is nor shall it hold itself out as the agent or partner of another, and no Party shall have any authority to bind or incur any liability on behalf of any other Party.

10.10    Punctual Performance. Time shall be of the essence of this Deed.

10.11    No Set-off or Counterclaim. All sums payable by any Party under this Deed shall be made free of any set-off, counterclaim or other deduction of any nature whatsoever.

10.12    Supremacy of Agreement. If any of the provisions of this Deed are inconsistent with, or conflict with, any of the provisions of the agreements or documents (whether in English or in Chinese) referred to in this Deed or is/are part and parcel of the transactions contemplated hereunder, then the provisions of this Deed shall prevail.

## 11.    GOVERNING LAW AND JURISDICTION

11.1    Governing Law. This Deed (together with all documents referred to in it) shall be governed by and construed and take effect in accordance with the laws of Hong Kong (which each of the Parties considers to be suitable to govern the international commercial transactions contemplated by this Deed).

11.2    Jurisdiction. With respect to any question, dispute, suit, action or proceedings arising out of or in connection with this Deed (the "Proceedings"), each Party irrevocably:

(a)    submits to the non-exclusive jurisdiction of the courts of Hong Kong; and

(b)    waives any objection which it may have at any time to the laying of venue of any Proceedings brought in any such court, waives any claim that such Proceedings have been brought in an inconvenient forum and further waives the right to object, with respect to such Proceedings, that such court does not have any jurisdiction over such party.

11

Nothing in this Deed precludes any Party from bring Proceedings in any other jurisdiction nor will the bringing of Proceedings in any one or more jurisdictions preclude the bringing of Proceedings in any other jurisdiction.

11.3   Service of Process.  Each party named in the first column below irrevocably appoints the Hong Kong resident person or company set opposite its name in the second column to receive, for it and on its behalf, service of process in any Proceedings:

| Party | Process Agent | Address for Service of Process |
|---|---|---|
| PAX LP | Jon Lewis | PAG<br>15th Floor, AIA Central<br>1 Connaught Road Central<br>Hong Kong<br>Facsimile: +852 2918 0881 |
| Shiny Times and Beijing Pangu | Stevensec Limited | Stevenson, Wong & Co.<br>4th Floor, Central Tower<br>28 Queen's Road Central<br>Hong Kong<br>Facsimile: +852 2868 9928 |

Each Party agrees that any such legal process shall be sufficiently served on it if delivered to its process agent at its address specified in this Clause or at the process agent's registered office for the time being in Hong Kong.  If for any reason any Party's process agent is unable to act as such, such party shall promptly notify the other Party or Parties and forthwith appoint a substitute process agent acceptable to the other Party or Parties.  Without affecting the right of any Party to serve process in any other way permitted by law, the Parties irrevocably consent to service of process given in the manner provided for notices in this Clause.

11.4   Waiver of Immunity.  To the extent that, in the courts of any jurisdiction, any Party may claim for itself or its revenues or assets (irrespective of their use or intended use) immunity on the grounds of sovereignty or other similar grounds from suit; jurisdiction of any court; relief by way of injunction, order for specific performance or for recovery of property; attachment (whether in aid of execution, before judgment or otherwise); execution or enforcement of any judgment or other legal process to which it or its revenues or assets might otherwise be entitled in any Proceedings (whether or not claimed), and to the extent that in any such jurisdiction there may be attributed to itself or its revenues or assets such immunity, that Party irrevocably agrees not to claim such immunity and irrevocably waives such immunity to the full extent permitted by the laws of such jurisdiction.

**[The rest of this page intentionally left blank]**

176

EXECUTION PAGE – DEED OF SETTLEMENT

IN WITNESS whereof, the parties hereto have duly executed this Deed the day and year first above written.

SEALED with the **COMMON SEAL of** )
**PACIFIC ALLIANCE GROUP** )
**ASSET MANAGEMENT LIMITED,** )
the General Partner of **PACIFIC** )
**ALLIANCE ASIA OPPORTUNITY** )
**FUND L.P.** and **SIGNED** by )
its authorized signatory )
in the presence of:

*For and on behalf of*
*Pacific Alliance Group Asset Management Limited*

_____
*Authorized Signatory(ies)*

CHRISTIE CHING

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM
NYSCEF DOC. NO. 18
INDEX NO. 652077/2017
RECEIVED NYSCEF: 06/29/2017
20-12411-jlg   Doc 14-5   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 5
Pg 16 of 57

EXECUTION PAGE – DEED OF SETTLEMENT

SEALED with the **COMMON SEAL** of
**SHINY TIMES HOLDINGS LIMITED**
and **SIGNED** by Kwok Ho Wan,
its director
in the presence of:

For and on behalf of
SHINY TIMES HOLDINGS LIMITED
盛時控股有限公司
Authorised Signature(s)

**SIGNED, SEALED AND DELIVERED**
by Kwok Ho Wan
in the presence of:

**EXECUTED AS DEED** by
**BEIJING PANGU INVESTMENT INC.**
(北京盘古氏投资有限公司) and
**SIGNED** by 郭楠
its legal representative
in the presence of:

**178**

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM

NYSCEF DOC. NO. 18

20-12411-jlg    Doc 14-5    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 5
Pg 17 of 57

INDEX NO. 652077/2017

RECEIVED NYSCEF: 06/29/2017

## Schedule

### Particulars of the Apartments

|  | Residential Apartment 1 | Residential Apartment 2 | Residential Apartment 3 |
|---|---|---|---|
| Address / location | Room 1701, Unit 6, Building 3, Seven Star Morgan Plaza , No. 27, Central North 4th Ring Road, Chaoyang District, Beijing Municipality, PRC （中国北京朝阳区北四环中路 27 号，七星摩根广场项目，3 栋，6 单元 1701 号） | Room 1701, Unit 8, Building 3, Seven Star Morgan Plaza , No. 27, Central North 4th Ring Road, Chaoyang District, Beijing Municipality, PRC （中国北京朝阳区北四环中路 27 号，七星摩根广场项目，3 栋，8 单元 1701 号） | Room1101, Unit 10, Building 2, Seven Star Morgan Plaza , No. 27, Central North 4th Ring Road, Chaoyang District, Beijing Municipality, PRC （中国北京朝阳区北四环中路 27 号，七星摩根广场项目，2栋，10 单元 1101 号） |
| Gross Floor Area | 668.49 Square Meters | 652.03 Square Meters | 655.42 Square Meters |
| Purchase Price | RMB35，000，000 (including tax and charges in connection with the sale and purchase of Apartment 1) | RMB35，000，000 (including tax and charges in connection with the sale and purchase of Apartment 2) | RMB35，000，000 (including tax and charges in connection with the sale and purchase of Apartment 3) |

179

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM
INDEX NO. 652077/2017

NYSCEF DOC. NO. 18
20-12411-jlg    Doc 14-5    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 5
Pg 18 of 57
RECEIVED NYSCEF: 06/29/2017

**Appendix I**

Form of Purchase Agreement

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 18
20-12411-jlg    Doc 14-5    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 5
Pg 19 of 57
RECEIVED NYSCEF: 06/29/2017

 正本

XF444752

BF——2010——0120        合同编号：　XF444752

# 北京市商品房现房买卖合同

出卖人：　　　　北京盘古氏投资有限公司　　　　　

买受人：　　　天津洋联俊杰投资实业有限公司　　　

房屋所有权证号：　　X京房权证朝字第1247244号　　

房屋坐落：朝阳区北四环中路27号院3号楼10层10单元1101

北京市住房和城乡建设委员会
北京市工商行政管理局
二〇一〇年十月修订

打印日期：2013 年 11 月 06 日

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 18
20-12411-jlg   Doc 14-5   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 5
RECEIVED NYSCEF: 06/29/2017
Pg 20 of 57

XF444752

# 说　明

　　1、本合同文本为示范文本，由北京市建设委员会和北京市工商行政管理局共同制定，适用于商品房（经济适用住房）现房买卖。商品房现房是指山建设单位建设并取得国有土地使用证和房屋所有权证（未进行过房屋权属转移登记）的房屋。

　　2、签订本合同前，出卖人应当向买受人出示国有土地使用证和房屋所有权证及其他有关证书和证明文件。

　　3、当事人应当按照自愿、公平及诚实信用的原则订立合同，任何一方不得将自己的意志强加给另一方。为体现双方自愿的原则，本合同文本相关条款后留有空白行，供双方补充约定。合同生效后，未被修改的文本打印文字视为双方当事人同意内容。

　　4、签订本合同前，买受人应当仔细阅读合同条款，特别是其中具有选择性、补充性、填充性、修改性的内容。

　　5、本合同文本【　】中选择内容、空格部位填写及其他需要删除或添加的内容，双方当事人应当协商确定。【　】中选择内容，以划√方式选定；对于实际情况未发生或双方当事人不作约定时，应当在空格部位打×，以示删除。

　　6、双方当事人在履行合同中发生争议的，可以选择向不动产所在地人民法院起诉，也可以选择向仲裁委员会申请仲裁。如选择申请仲裁的，可以向北京仲裁委员会、中国国际经济贸易仲裁委员会、外地的仲裁委员会申请。

　　7、双方当事人可以根据实际情况决定本合同原件的份数，并在签订合同时认真核对，以确保各份合同内容一致；在任何情况下，买受人都应当至少持有一份合同原件。

　　8、出卖人应保证房屋在网上签约时未与他人签订合同、未被司法机关查封且没有其它权属纠纷。如已设定抵押权的房屋还应征得抵押权人同意并在合同中告知买受人。出卖人和买受人应当在90天内到房屋行政管理部门办理房屋转移登记手续，以确保无妨碍买受人办理房屋所有权证的情况。

182

XF444752

## 北京市商品房现房买卖合同

出卖人：＿＿＿＿＿＿北京盘古氏投资有限公司＿＿＿＿＿＿

通讯地址：＿＿＿＿＿北京市朝阳区北四环中路27号＿＿＿＿

邮政编码：＿＿＿＿＿＿＿＿＿100101＿＿＿＿＿＿＿＿＿

营业执照注册号：＿＿＿＿＿110000003104188＿＿＿＿＿

企业资质证书号：＿＿＿＿＿＿CY-A-5976＿＿＿＿＿＿＿

法定代表人：＿＿宋 楠＿＿联系电话：＿＿＿58777777＿＿

委托代理人：＿＿＿×＿＿＿联系电话：＿＿＿＿×＿＿＿＿

委托销售代理机构：＿＿＿＿北京盘古氏投资有限公司＿＿＿

通讯地址：＿＿＿＿＿北京市朝阳区北四环中路27号＿＿＿＿

邮政编码：＿＿＿＿＿＿＿＿＿100101＿＿＿＿＿＿＿＿＿

营业执照注册号：＿＿＿＿＿110000003104188＿＿＿＿＿

销售代理机构资质证书号：＿＿＿＿＿＿×＿＿＿＿＿＿＿

销售员姓名：＿＿＿＿＿＿＿徐瑞丽＿＿＿＿＿＿＿＿＿＿

商品房销售员合格证书号：＿＿＿＿＿×＿＿＿＿＿＿＿＿

买受人：＿＿＿＿＿天津洋联俊杰投资实业有限公司＿＿＿＿

法定代表人＿＿＿＿；＿＿胡淼＿＿国籍：＿＿＿×＿＿＿

＿＿＿＿营业执照＿＿＿＿；＿＿120192000025626＿＿＿

出生日期：＿×＿年＿×＿月＿×＿日，性别：＿＿×＿＿

通讯地址：＿＿＿＿＿＿＿＿＿×＿＿＿＿＿＿＿＿＿＿＿

邮政编码：＿＿＿×＿＿＿联系电话：＿＿＿×＿＿＿＿

代理人：＿＿＿×＿＿＿；＿＿×＿＿国籍＿＿×＿＿

＿＿＿＿×＿＿＿；＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

出生日期：＿×＿年＿×＿月＿×＿日，性别：＿＿×＿＿

通讯地址：＿＿＿＿＿＿＿＿＿×＿＿＿＿＿＿＿＿＿＿＿

邮政编码：＿＿＿×＿＿＿联系电话：＿＿＿×＿＿＿＿

183

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM
NYSCEF DOC. NO. 18
INDEX NO. 652077/2017
RECEIVED NYSCEF: 06/29/2017
20-12411-jlg    Doc 14-5    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 5
Pg 22 of 57

## XF444752

　　根据《中华人民共和国合同法》、《中华人民共和国城市房地产管理法》、《北京市城市房地产转让管理办法》及其他有关法律、法规的规定，出卖人和买受人在平等、自愿、公平、协商一致的基础上就商品房现房买卖事宜达成如下协议：

**第一条　项目建设依据**

　　出卖人以＿＿出让＿＿方式取得坐落（国有土地使用证的坐落）于＿＿＿＿＿×＿＿ ＿＿＿＿＿＿地块的国有土地使用权。该地块 国有土地使用证号 为：＿＿京朝国 用(2009出)第0016＿＿，土地使用权面积为：＿39363.01平方米＿，买受人购买的 商品房(以下简称该商品房)所在土地用途为：＿＿＿公寓＿＿＿，土地使用年限自＿ 2006＿年＿10＿月＿08＿日至＿2076＿年＿10＿月＿08＿日 止。该地块国有土地使用权出让合同编号为：＿＿＿＿＿＿，该商品房所在土地用 途为：＿＿＿＿＿＿，土地使用权出让年限自＿＿＿＿年＿＿＿月＿＿＿日至＿ ＿＿＿＿年＿＿＿月＿＿＿日止。

　　在上述地块上建设的商品房 地名核准名称 为：＿盘古大观＿，该商品房建设工程 规划许可证号为：＿2006规建字0481号＿，现已通过规划验收并完成了竣工验收。

**第二条　销售依据**

　　买受人购买的商品房现已取得房屋所有权证，证号为：＿＿＿＿X京房权证朝字第 1247244号＿＿，填发单位为：＿＿朝阳区房屋管理局＿＿。

　　买受人购买的商品房现已取得确权证明，取得时间为：＿＿＿＿×＿＿＿＿＿＿， 填发单位为：＿＿＿＿＿×＿＿＿＿＿。

**第三条　基本情况**

　　该商品房房屋坐落为：＿朝阳区北四环中路27号院3号楼10层10单元1101。

　　经公安行政管理部门核准，该商品房地址为：＿＿＿＿朝阳区北四环中路27号院＿＿

　　该商品房所在楼栋的主体建筑结构为：＿钢筋混凝土结构＿，建筑层数为：＿＿24 ＿层，其中地上＿＿21＿＿层，地下＿＿3＿＿层。

　　该商品房为第一条规定项目中的＿＿3号楼＿＿【幢】第＿＿＿10＿＿＿【层】的 10单元1101＿号。

　　该商品房的用途为＿＿＿公寓＿＿＿；＿＿＿层高＿＿＿为：＿＿3.75＿＿米，【坡 屋顶净高】最低为：＿＿＿×＿＿米，最高为：＿＿×＿＿米。该商品房朝向为：＿ ＿东西＿＿。有＿＿＿0＿＿个阳台，其中＿＿＿0＿＿个阳台为封闭式，＿＿＿0

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM
NYSCEF DOC. NO. 18
20-12411-jlg   Doc 14-5   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 5
Pg 23 of 57
INDEX NO. 652077/2017
RECEIVED NYSCEF: 06/29/2017

XF444752

个阳台为非封闭式。

出卖人委托实测该商品房面积的房产测绘机构是 北京新兴宏图测绘有限公司，其实测建筑面积共 655.67 平方米，其中，套内建筑面积 534.41 平方米，共用部位与共用房屋分摊建筑面积 121.26 平方米。该商品房平面图及在整个楼栋中的位置图见附件一，有关共用部位与共用房屋分摊建筑面积构成说明见附件二。

本条所称层高是指上下两层楼面或楼面与地面之间的垂直距离，净高是指楼面或地面至上部楼板底面或吊顶底面之间的垂直距离。

### 第四条  抵押情况

该商品房的抵押情况为： 2 。

1、该商品房未设定抵押。

2、该商品房已经设定抵押，抵押权人为： 中国农业银行股份有限公司北京亚运村支行，抵押登记部门为： 北京市国土资源局，抵押登记日期为： 2010-12-17 。

关于抵押的相关约定见附件三。

### 第五条  租赁情况

该商品房的租赁情况为： 1 。

1、出卖人未将该商品房出租。

2、出卖人已将该商品房出租 × 。

### 第六条  计价方式与价款

除独栋别墅、整栋楼房和车库(位)以外的商品房，出卖人与买受人约定按照下列第 1 种方式计算该商品房价款。

1、按照套内建筑面积计算，该商品房单价每平方米人民币(币) 63316.26 元，总价款 人民币 币 × 佰 × 拾 ¥ 亿 叁 仟 捌 佰 捌 拾 叁 万 陆 仟 捌 佰 肆 拾 贰 元整(大写)。

2、按照建筑面积计算，该商品房单价为每平方米 × (币) × 元，总价款 × 币 × 佰 × 拾 × 亿 × 仟 × 佰 × 拾 × 万 × 仟 × 佰 × 拾 × 元整(大写)。

3、按照套(单元)计算，该商品房总价款为 × (币) × 佰 × 拾 × 亿 × 仟 × 佰 × 拾 × 万 × 仟

**185**

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 18
20-12411-jlg   Doc 14-5   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 5
Pg 24 of 57
RECEIVED NYSCEF: 06/29/2017

XF444752

×___佰___×___拾___×___元整（大写）。

4、按照___×___计算，该商品房总价款为___×___（币）___×___佰_

___×___拾___×___亿___×___仟___×___佰___×___拾___×___万_

___×___仟___×___佰___×___拾___×___元整（大写）。

具体约定见附件四。

本条所称建筑面积，是指房屋外墙（柱）勒脚以上各层的外围水平投影面积，包括阳台、挑廊、地下室、室外楼梯等，且其备有上盖，结构牢固，层高2.20米以上（含2.20米）的永久性建筑。

所称套内建筑面积，是指成套商品房（单元房）的套内使用面积、套内墙体面积和阳台建筑面积之和。


### 第七条  付款方式及期限

买受人采取下列第___4___种方式付款。

1、一次性付款。

2、分期付款。

3、贷款方式付款：___×___。买受人可以首期支付购房总价款的___×___

％，其余价款可以向___×___、___×___银行借款支付。

4、其他方式。

具体付款方式及期限的约定见附件五。


### 第八条  逾期付款责任

买受人未按照约定的时间付款的，按照下列第__2__种方式处理。

1、按照逾期时间，分别处理。（（1）和（2）不作累加）

(1)逾期在_____日之内，自约定的应付款期限届满之次日起至实际支付应付款之日止，买受人按日计算向出卖人支付逾期应付款万分之_____的违约金，并于实际支付应付款之日起_____日内向出卖人支付违约金，合同继续履行；

(2)逾期超过_____日（该日期应当与第（1）项中的日期相同）后，出卖人有权解除合同。出卖人解除合同的，买受人应当自解除合同通知送达之日起_____日内按照累计的逾期应付款的_____％向出卖人支付违约金，并由出卖人退还买受人全部已付款。买受人愿意继续履行合同的，经出卖人同意后，合同继续履行，自约定的应付款期限届满之次日起至实际支付应付款之日止，买受人按日计算向出卖人支付逾期应付款万

# XF444752

分之_____（该比率应当不小于第（1）项中的比率）的违约金，并于实际支付应付款之日起_____日内向出卖人支付违约金。

本条所称逾期应付款是指依照第七条约定的到期应付款与该期实际已付款的差额；采取分期付款的，按照相应的分期应付款与该期的实际已付款的差额确定。

2、_____具体约定见附件五_____。

**第九条 交付条件**

（一）出卖人应当在2013年11月6日前向买受人交付该商品房。

（二）该商品房交付时应当符合下列第1、__3__、__5__、__X__项所列条件。

1、提供有资质的房产测绘机构完成的该商品房面积实测技术报告书。

2、该商品房为住宅的，出卖人提供《住宅质量保证书》和《住宅使用说明书》。

3、满足第十二条中出卖人承诺的市政基础设施和其他设施达到的条件。

4、该商品房为住宅的，出卖人提供《住宅工程质量分户验收表》（2006年1月1日起进行住宅工程竣工验收的房屋适用）。

5、该商品房已取得北京市住房和城乡建设委员会出具的《北京市房屋建筑和市政基础设施工程竣工验收备案表》。

**第十条 逾期交房责任**

除不可抗力外，出卖人未按照第九条约定的期限和条件将该商品房交付买受人的，按照下列第__1__种方式处理。

1、按照逾期时间，分别处理。（（1）和（2）不作累加）

（1）逾期在__45_日之内（该时限应当不小于第八条第1款第（1）项中的时限），自第九条约定的交付期限届满之次日起至实际交付之日止，出卖人按日计算向买受人支付已交付房价款万分之__贰__的违约金（该违约金比率应当不小于第八条第1款第（1）项中的比率），并于该商品房实际交付之日起__30__日内向买受人支付违约金，合同继续履行；

（2）逾期超过__45_日（该日期应当与第（1）项中的日期相同）后，买受人有权退房。买受人退房的，出卖人应当自退房通知送达之日起_30__日内退还全部已付款，并按照买受人全部已付款的__3__%向买受人支付违约金。买受人要求继续履行合同的，

# XF444752

合同继续履行，自第九条约定的交付期限届满之次日起至实际交付之日止，出卖人按日计算向买受人支付全部已付款万分之_贰_（该比率应当不小于第（1）项中的比率）的违约金，并于该商品房实际交付之日起_30_日内向买受人支付违约金。

2、_____×_____。

**第十一条　交接手续**

（一）该商品房达到第九条约定的交付条件后，出卖人应当在交付日的_7_日前，书面通知买受人办理交接手续的时间、地点以及应当携带的证件。双方进行验收交接时，出卖人应当出示第九条约定的证明文件，并满足第九条约定的其他条件。出卖人不出示证明文件 或 出示的证明文件不齐全，或未满足第九条约定其他条件的，买受人有权拒绝接收，由此产生的逾期交房责任由出卖人承担，并按照第十条处理。

（二）验收交接后，双方应当签署商品房交接单。由于买受人原因未能按期办理交接手续的，双方同意按照下列约定方式处理：

_____见附件九补充协议_____ ；

_____×_____。

（三）双方同意按照下列第_2_种方式缴纳税费。

1、出卖人不得将买受人交纳税费作为交接该商品房的条件。

_____×_____。

2、买受人同意委托_出卖人或出卖人指定的代理人_代交下列第_（1）_、_（2）_、___×__、__×__、__×__种税费，并在接收该商品房的同时将上述税费交给出卖人。

（1）专项维修资金；

（2）契税；

（3）第二十一条约定的物业服务费用；

（4）供暖费；

（5）__×_____；

（6）__×_____

3、买受人自行向相关单位缴纳下列第_×_、_×_、_×_、_×_、_×_、_×_种税费，并在接收该商品房的同时向出卖人出示缴纳税费的凭据。

（1）专项维修资金；

**XF444752**

（2）契税；

（3）第二十一条约定的物业服务费用；

（4）供暖费；

（5）　×　　　　　　　　　　　　　　　　　　　　；

（6）　×　　　　　　　　　　　　　　　　　　　　。

**第十二条　市政基础设施和其他设施的承诺**

出卖人承诺与该商品房正常使用直接相关的市政基础设施和其他设施按照约定的日期达到下列条件：

1、市政基础设施：

（1）上水、下水：2011 年 12 月31 日 达到 　使用条件　 ；

（2）【市政双路供电】【过渡性供电】：2011 年 12 月 31 日 达到 使用条件 ；

（3）供暖 ：2011 年 12月 31日 达到 　使用条件　 ；

（4）燃气 ：2011年 12月31日 达到 　使用条件 　 ；

（5）电话通信线 ：2011年 12 月 31日交付，敷设到户 ；

（6）有线电视线 ：2011 年 12 月 31 日交付，敷设到户 ；

（7）　×　　　　　　　　　　　　　　　　　　　 ；

（8）　×　　　　　　　　　　　　　　　　　　　 。

如果在约定期限内未达到条件，双方同意按照下列方式处理：

（1）　见附件九补充协议　　　　　　　　　　　　　；

（2）　×　　　　　　　　　　　　　　　　　　　　。

2、其他设施

（1）公共绿地：2011年12月31日 达到 使用条件；

（2）小区非市政道路：2011年12月31日 达到使用条件 ；

（3）公共停车场：2011年12月31日 达到 使用条件 　；

（4）幼儿园：　×_年_×_月_×_日 达到 ×　　　　　　　；

（5）学校 ×_年_×_月_×_日 达到 ×　　　　　　　　；

（6）会所：×年_×月_×日 达到 使用条件 　　　　　　；

（7）购物中心：×年_×_月_×_日 达到 ×　　　　　　　；

（8）体育设施：×_年_×_月_×_日 达到 ×　　　　　　　；

## XF444752

（9）_____×_____

（10）_____×_____。如果
在约定期限内未达到条件，双方同意按照下列方式处理：

（1）_____见附件九补充协议_____；　　（2）

_____×_____。

### 第十三条　商品房质量、装饰、设备标准的约定

（一）出卖人承诺该商品房使用合格的建筑材料、构配件，该商品房质量符合国家和本市颁布的工程质量规范、标准和施工图设计文件的要求。

（二）出卖人和买受人约定如下：

1、该商品房室内空气质量经检测不符合国家标准的，自该商品房交付之日起_____×_____日内（该时限应当不低于 60 日），买受人有权退房。买受人退房的，出卖人应当自退房通知送达之日起_____×_____日内退还买受人全部已付款，并按照_____×_____利率付给利息，给买受人造成损失的由出卖人承担赔偿责任。因此而发生的检测费用由出卖人承担。

买受人不退房的或该商品房交付使用已超过_____×_____日的，买受人应当与出卖人另行签订补充协议。

_____关于空气质量的相关约定见附件九补充协议_____。

2、交付该商品房时，该商品房已经由建设、勘察、设计、施工、工程监理等单位验收合格，出卖人应当与买受人共同查验收房，发现有其他问题的，双方同意按照第_____(3)_____种方式处理。

（1）出卖人应当于_____×_____日内将已修复的该商品房交付。由此产生的逾期交房责任由出卖人承担，并按照第十条处理。

（2）由出卖人按照国家和本市有关工程质量的规范和标准在商品房交付之日起_____×_____日内负责修复，并承担修复费用，给买受人造成的损失由出卖人承担赔偿责任。

（3）_____见附件九补充协议_____。

3、出卖人交付的商品房的装饰、设备标准应当符合双方约定的标准。达不到约定标准的，买受人有权要求出卖人按照下列第_____(2)_____种方式处理。

（1）出卖人赔偿双倍的装饰、设备差价。

（2）_____双方按照附件九补充协议的相关约定执行_____。

190

XF444752

（3）　　　　×　　　　　　　　　　　　　　　　　　。

具体装饰和设备标准的约定见附件六。

（三）出卖人和买受人对工程质量问题发生争议的，任何一方均可以委托有资质的建设工程质量检测机构检测，双方均有协助并配合对方检测的义务。

　　　　　　　　　　　　×　　　　　　　　　　　　　　。

**第十四条　居民建筑节能措施**

该商品房为住宅的，应当符合国家有关建筑节能的规定和北京市规划委员会、北京市建设委员会联合发布的《居住建筑节能设计标准》的要求。未达到标准的，出卖人应当按照《居住建筑节能设计标准》的要求补做节能措施，并承担全部费用；因此给买受人造成损失的，出卖人应当承担赔偿责任。

　　　　　　　　　　　　×　　　　　　　　　　　　　。

**第十五条　住宅保修责任**

（一）该商品房为住宅的，出卖人自该商品房交付之日起，按照《住宅质量保证书》承诺的内容承担相应的保修责任。《住宅质量保证书》承诺的保修范围和保修期限必须符合国家和北京市有关法律、法规的规定及相关标准、规程的要求。

该商品房为非住宅的，双方应当签订补充协议详细约定保修范围、保修期限和保修责任等内容。

（二）在该商品房保修范围和保修期限内发生质量问题，双方有退房约定的，按照约定处理；没有退房约定的，出卖人应当履行保修义务，买受人应当配合保修。非出卖人原因造成的损坏，出卖人不承担责任。

**第十六条　建筑隔声情况**

该商品房为住宅的，出卖人承诺该商品房建筑隔声情况符合《民用建筑隔声设计规范》（GBJ118－88）、《建筑外窗空气隔声性能分级及其检测方法》（GB8485－87）、《隔声门》（HCRJ019－98）标准，对该商品房所在地声环境状况的描述真实准确。商品房建筑设计文件所标注的建筑隔声情况和环境影响评价文件所表征的声环境状况见附件八。

商品房建筑隔声情况未达到标准的，出卖人应当按照规划设计的要求补做建筑施工隔声措施，并承担全部费用；因此给买受人造成损失的，出卖人应当承担赔偿责

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 18
20-12411-jlg Doc 14-5 Filed 12/16/20 Entered 12/16/20 15:47:19 Exhibit 5
RECEIVED NYSCEF: 06/29/2017
Pg 30 of 57

XF444752

任。

_____×_____。

第十七条　使用承诺和风险提示

1、买受人使用该商品房期间，不得擅自改变该商品房的用途、建筑主体结构和承重结构。除本合同、补充协议及其附件另有约定者外，买受人在使用该商品房期间有权与其他权利人共同使用与该商品房有关的共用部位和设施，并按照共用部位与共用房屋分摊面积承担义务。

出卖人不得擅自改变与该商品房有关的共用部位和设施的使用性质。

2、出卖人承诺商品住宅不分割拆零销售；不采收返本销售或者变相返本销售的方式销售商品房；不采取售后包租或者变相售后包租的方式销售未竣工商品房。

3、_____×_____。

第十八条　权属转移登记

（一）出卖人保证该商品房没有产权纠纷，因出卖人原因造成该商品房不能办理产权登记或发生债权债务纠纷的，由出卖人承担相应责任。

_____×_____。

（二）商品房交付使用后，双方同意按照下列第　(3)　种方式处理。

1、双方共同向权属登记机关申请办理房屋权属转移登记。

2、买受人自行委托他人向权属登记机关申请办理房屋权属转移登记。

3、买受人同意委托_出卖人或出卖人指定的机构_向权属登记机关申请办理房屋权属转移登记，委托费用_____×_____元人民币（大写）。

（三）买受人未能在商品房交付之日起_60_日内取得房屋所有权证书的，双方同意按照下列第_(3)_种方式处理。

1、如因出卖人的责任，买受人有权退房。买受人退房的，出卖人应当自退房通知送达之日起__×__日内退还买受人全部已付款，并按照_____×_____利率付给利息。买受人不退房的，自买受人应当取得房屋所有权证书的期限届满之次日起至实际取得房屋所有权证书之日止，出卖人按日计算向买受人支付全部已付款万分之_×_的违约金。

2、如因买受人的责任，_____×_____。

3、__参见附件九补充协议约定_____。

# XF444752

**第十九条　共有权益的约定**

1、该商品房所在楼栋的屋面使用权归全体产权人共有。

2、该商品房所在楼栋的外墙面使用权归全体产权人共有。

3、<u>该商品房所在楼栋的命名权归出卖人所有</u>。

4、<u>该商品房所在小区的命名权归出卖人所有</u>。

**第二十条　附属建筑物、构筑物的约定**

　　双方同意该商品房的地下停车库等附属建筑物、构筑物按照以下第　2　种方式处理。

　　1、出卖人出卖该商品房时，该商品房附属的　X　、　X　、　X　、　X　随同该商品房一并转让。

　　2、出卖人出卖该商品房时，商品房附属的　<u>地下停车库等一切未列入商品房共用分摊建筑面积的附属建筑物、构筑物</u>　、　X　、　X　、　X　　不随同该商品房一并转让。

**第二十一条　前期物业服务**

　　（一）出卖人依法选聘的物业服务企业为：　<u>第一太平戴维斯物业顾问（北京）有限公司</u>　，资质证号为：　<u>（建）107034</u>　。

　　（二）前期物业管理期间，物业服务收费价格为　<u>20</u>　/月·平方米（建筑面积）。价格构成包括物业区域内保洁费、公共秩序维护费、共用部位共用设施设备日常维护费、绿化养护费、综合管理费、　<u>其它符合规定的费用</u>　、　X　、　X　。

　　　地上停车管理费　X　，地下停车管理费　X　。

　　（三）物业服务企业按照第　3　种方式收取物业服务费。

　　1、按照年收取，买受人应当在每年的　X　月　X　日前缴费。

　　2、按照半年收取，买受人应当分别在每年的　X　月　X　日前和　X　月　X　日前缴费。

　　3、按照季收取，买受人应当分别在每年的3　月1　日前、6　月1　日前、9　月1　日前和　12　月1　日前缴该季度的物业服务费。

　　（四）物业服务内容（前期物业服务合同、临时管理规约）见附件七。买受人已详细阅读前期物业服务合同和临时管理规约，同意由出卖人依法选聘的物业服务企业

**XF444752**

提供前期物业服务，遵守临时管理规约。

### 第二十二条  专项维修资金

买受人委托出卖人代交专项维修资金的，出卖人应当自买受人接收该商品房之日起 30 日内，向买受人提交专项维修资金缴纳凭证。

买受人自行缴纳专项维修资金的，应当在商品房交付【时】【之日起 X 日内】，向物业管理企业出示专项维修资金缴纳凭证。

### 第二十三条  不可抗力

因不可抗力不能按照约定履行本合同的，根据不可抗力的影响，部分或全部免除责任，但因不可抗力不能按照约定履行合同的一方当事人应当及时告知另一方当事人，非自不可抗力事件结束之日起 30 日内向另一方当事人提供证明。

### 第二十四条  争议解决方式

本合同在履行过程中发生的争议，由双方当事人协商解决；协商不成的，按照下列第 2 种方式解决。

1、提交 X 仲裁委员会仲裁。

2、依法向人民法院起诉。

### 第二十五条

本合同自双方签字（盖章）之日起生效。双方可以根据具体情况对本合同中未约定、约定不明或不适用的内容签订书面补充协议进行变更或补充，但补充协议中含有不合理地减轻或免除本合同中约定应当由出卖人承担的责任或不合理地加重买受人责任、排除买受人主要权利内容的，仍以本合同为准。对本合同的解除，应当采用书面形式。本合同附件及补充协议与本合同具有同等法律效力。

### 第二十六条

本合同及附件共 ____ 页，一式 肆 份，具有同等法律效力，其中出卖人 叁 份，买受人 壹 份， X 份， X 份。

XF444752

出卖人(签章)：

【法定代表人】：

【委托代理人】(签章)：

【委托销售代理机构】(签章)：

签订时间：_____年____月___日

签订地点：

买受人(签章)：

【法定代表人】：

【负责人】：

【委托代理人】(签章)：

签订时间：_____年____月___日

签订地点：

**195**

XF444752

附件一  房屋平面图及在整个楼栋中的位置图（应标明方位）

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 18
20-12411-jlg    Doc 14-5    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 5
Pg 35 of 57
RECEIVED NYSCEF: 06/29/2017





197

XF444752

附件二　共用部位与共用房屋分摊建筑面积构成说明

公寓、酒店、商业公用建筑面积分摊部位说明

1、　项目简介：

本项目坐落于朝阳区北四环中路，结构为钢混。本楼地上二十一层，地下三层。规划建筑面积共241705.31平方米。

二、具体的分摊说明：

根据现行法规、技术标准及我市有关规定，同时结合本项目的实际设计情况，本楼具体分摊方案如下：

1、由全楼（2幢地下车库、2幢物业用房、2幢自行车库、2幢商业、2幢1单元公寓、2幢公寓）共同分摊的部位有：

1）位于地下三层的：热交换站；

2）位于地下二层的：发电机房；

3）位于地下一层的：泵房、分界小室、中水泵房、安防中心。

2、由2幢物业用房、2幢商业、2幢1单元公寓、2幢公寓共同分摊的部位有：

1）位于地下一层的：给水泵房。

3、由2幢物业用房独自分摊的部位有：

1）位于地下一层的：外墙一半。

4、由2幢1单元公寓、2幢公寓共同分摊的部位有：

1）位于一层的：消防控制室；

2）位于四层至二十一层的：外墙一半。

5、由2幢商业、2幢1单元公寓共同分摊的部位有：

1）位于一层的：楼梯间1、电梯间1、过厅、公寓大堂、前室1。

6、由2幢公寓独自分摊的部位有：

1）位于一层的：门廊、公寓门厅、电梯间、楼梯间；

2）位于二层至三层的：电梯间、楼梯间；

3）位于四层至十九层的：楼梯间、电梯间、前室、强弱电、管井、走道、设备间；

4）位于二十层的：电梯间、设备用房、前室、管井；

5）位于二十一层的：管井、设备用房、电梯间；

6）位于阁楼层的：风机房、风道、电梯机房、走道。

7、由2幢1单元公寓独自分摊的部位有：

1）位于四层至十九层的：楼梯间1、电梯间1、前室1、候梯厅、空调机房、管井1、强电、弱电；

2）位于二十层的：楼梯间、消防电梯机房、走道、强弱电、前室1、设备用房1、管井1、电梯间

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 18
20-12411-jlg    Doc 14-5    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 5
Pg 37 of 57
RECEIVED NYSCEF: 06/29/2017

XF444752

l；

3）位于二十一层的：电梯间1、设备用房1、楼梯间、管井1；

4）位于附属层的：设备间1、楼梯间1、电梯机房1。

8、由2幢商业独自分摊的部位有：

1）位于一层的：强电、弱电、消防前室、扶梯厅、门厅、人行通道、前室、前室2、楼梯间2、

电梯间2、管井、外墙--半；

2）位于二层至三层的：卫生间、前室、报警阀室、走道、强电、弱电、扶梯厅、管井、电梯间

2、楼梯间2、外墙一半。

3）位于四层的：扶梯厅、楼梯间2、电梯间2。

9、由2幢商业、2幢公寓共同分摊的部位有：

1）位于一层至三层的：配电竖井。

10、不分摊的部位有：

1）位于地下二层的：锅炉房、热交换站、垃圾间、报警阀室；

2）位于地下一层的：变配电室1、变配电室2、垃圾间、报警阀室；



北京筑古氏投资有限公司

2013年11月6日

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM
NYSCEF DOC. NO. 18
INDEX NO. 652077/2017
RECEIVED NYSCEF: 06/29/2017
20-12411-jlg   Doc 14-5   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 5
Pg 38 of 57

XF444752

**附件三　关于抵押的相关约定**

出卖人应在其为买受人办理以买受人为该房屋所有权人的《房屋所有权证》之背注销本合同第四

条项下之抵押登记。

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM
NYSCEF DOC. NO. 18
INDEX NO. 652077/2017
RECEIVED NYSCEF: 06/29/2017
20-12411-jlg   Doc 14-5   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 5
Pg 39 of 57

# 银行同意抵押房屋销售的证明

朝阳区建设委员会（房屋管理局）：

北京盘古氏投资有限 公司开发建设的位于 朝阳区（县）的

北四环中路 27 号 3 号楼盘古大观 项目部分房产已抵押给我行，抵押

面积为 166718.56 平方米，我行同意抵押范围内房屋销售：

国有土地使用证号：京朝国用（2009 出）字第 0016 号

房屋所有权证：X 京房权证朝字第 1247244 号

他项权利证号：X 京房他证朝字第 412185 号

X 京房他证朝字第 415153 号



中国农业银行股份有限公司北京亚运村支行

2013 年 9 月 4 日

201

XF444752

附件四：计价方式与房款的其他约定

　　双方同意并确认，买受人为购买本《北京市商品房现房买卖合同》（下称"买卖合同"）项下房屋所应支付的商品房价款为33,836,842.31元（"房价款"），契税为1,015,105.27元，印花税为16,918.42元，公共维修基金为131,134.00元（契税、印花税及公共维修基金合称所购房屋税费，房价款与所购房屋税费合计35,000,000.00元（合称全额房价款）。

　　出卖人确认并保证，上述35,000,000.00元全额房价款为买受人购买本房屋而应当支付的全部款项，除该等款项外，买受人无需就买卖合同、买卖合同其他附件及补充协议的签署及履行而向出卖人或任何第三方支付任何其他税款及费用，如因任何原因，（包括但不限于相关部门或单位提高了契税、印花税、公共维修基金的收费标准，买受人因购买本房屋还需支付其他费用等原因）导致买受人为购买本房屋应当支付的全部款项高于上述金额的，则超出部分将由出卖人承担。出卖人同意，在办理所购房屋《房屋所有权证》时需要缴纳的所购房屋税费（即指本条所述的契税、印花税及公共维修基金）的最终承担方为买受人，出卖人同意在其代为办购房屋《房屋所有权证》时先行为买受人垫付，由买受人在依据本协议及相关协议约定支付房价款的同时将出卖人垫付的所购房屋税费一并归还给出卖人。

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM

INDEX NO. 652077/2017

NYSCEF DOC. NO. 18

20-12411-jlg    Doc 14-5    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 5

RECEIVED NYSCEF: 06/29/2017

Pg 41 of 57

XF444752

附件五： 付款方式及期限的约定

一、买受人应于下列条件全部满足后的一年内--次性向出卖人支付全额房价款：

(1) 出卖人与买受人已经完成《北京市商品房现房买卖合同》的网签和备案手续；

(2) 所购房屋的权属不存在任何瑕疵或争议；

(3) 所购房屋不存在任何抵押、查封或者其他权利限制；

(4) 出卖人提供物业公司同意豁免买受人自交付日至实际入住日（实际入住口，系指买受人开始该房屋的装修之日，或者买受人已将该房屋实际出售并办理完毕权属过户手续之日，以下同）之间物业服务费（但豁免期限最长不超过三年）的书面证明；或者如物业公司拒绝豁免相关期间的物业费，出卖人同意代为支付相关物业费的书面证明；

(5) 出卖人已向买受人开具经买受人认可的购房发票；

(6) 出卖人已根据买卖合同附件四的约定为买受人垫付了全部契税、印花税、公共维修基金等款项，并向买受人提供了上述款项的相关支付凭证；

(7) 出卖人已为买受人办理完毕以买受人为所有权人的所购商品房的《房屋所有权证》，并已将该《房屋所有权证》交付给买受人；

(8) 所购房屋已经买受人委托的房屋质量检测机构查验合格并符合交付条件。并且，出卖人已根据买卖合同、买卖合同其他附件及补充协议之约定将该房屋交付给买受人；

(9) 其他相关协议约定的全额房价款支付前提条件已经满足（如有）；

(10)    未发生出卖人严重违反买卖合同、买卖合同其他附件及补充协议、以及其他相关文件项下的任何陈述、声明、保证、约定及义务之情形。

出卖人承诺将自付费用完成上述支付全额房价款的前提条件，且该等前提条件将至迟于2013年12月31日之前满足。

如上述任一前提条件未能在2013年12月31日之前满足的，则买受人有权（但无义务）解除本合同且不承担任何形式的违约责任（但第（7）条前提条件已经满足的情况下除外），并且如因此给买受人造成任何损失的，出卖人还应当承担相应的赔偿责任；如买受人选择解除合同的，出卖人应当在收到买受人解除通知后配合办理退房手续（如需退房）及其他相关手续，同时出卖人应当承担解除本合同而产生的全部费用（包括但不限于办理退房等产生的全部费用）。

三、付款方法

（1）买卖合同及其补充协议中所述全额房价款、违约金均以人民币计算；若买受人以外币形式支付有关款项，则汇率以有关款项到达出卖人帐户当日中国人民银行公布的现汇买入价为准，多退少补。

（2）买受人如以银行票据（汇票、支票、本票）的方式支付全额房价款的，银行票据所载款

# XF444752

项到达出卖人帐户之日为付款日；

（3）买受人如采取现金方式支付全额房价款，出卖人收到现金之日为付款日。

（4）如买受人委托第三方代为办理付款事宜，买受人和第三方应向出卖方提供代付款的有关证明文件。

（5）旅行支票和国外支票将不被接受。

（6）因买受人支付全额房价款而发生的银行手续费用及其它费用由买受人自行承担。

（7）双方确认，买受人可以选择本条所述任意一种付款途径支付全额房价款。

四、买受人保证其支付的全额房价款的资金来源合法并享有所有权，如第三人向出卖人主张对该笔资金的权利并最终导致出卖人将该笔资金退还第三人的，买受人应向出卖人承担赔偿责任。

## 附件六　装饰和设备标准的约定

1、采暖系统：

（1）集中采暖：【散热器】【地板采暖】【　】＿＿＿＿散热器采暖已统一安装＿＿＿＿；

（2）分户采暖：【燃气炉】【电采暖】【　】＿＿＿＿市政热力集中供暖＿＿＿＿；

（3）采暖设备品牌：＿＿＿＿＿时代欧诺＿＿＿＿＿。

2、保温材料：

（1）外墙保温：【挤压聚苯板】【发泡聚苯板】【发泡聚安酯】【　】＿东西外墙：挤塑板；南北外墙；保温岩棉＿；

（2）内墙保温：【石膏聚苯板】【　】＿＿＿＿＿无＿＿＿＿＿。

3、外墙：【瓷砖】【涂料】【玻璃幕墙】【　】＿＿＿高档石材＿＿＿。

4、内墙：【涂料】【壁纸】【　】＿＿＿＿耐水腻子＿＿＿＿。

5、顶棚：【石膏板吊顶】【涂料】【　】＿＿＿耐水腻子＿＿＿。

6、室内地面：【大理石】【花岗岩】【　水泥抹面】【实木地板】【　】＿＿＿原结构面＿＿＿。

7、门窗：

（1）外窗结构尺寸为：＿＿＿＿4800*2250 1200*2250 等＿＿＿＿；

（2）开启方式为：＿＿＿＿＿内开内倒＿＿＿＿＿；

（3）门窗型材：【双玻中空断桥铝合金窗】【塑钢双玻璃】【　】＿＿圣戈班LOW-E中空、镀膜、夹胶玻璃，德国海德鲁WICONA品牌整体幕墙窗，全部采用6063铝型材＿＿＿。

8、厨房：

（1）地面：【水泥抹面】【瓷砖】【　】＿＿＿防水及防水保护层＿＿＿；

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM
NYSCEF DOC. NO. 25
INDEX NO. 652077/2017
RECEIVED NYSCEF: 06/29/2017

20-12411-jlg   Doc 14-5   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 5
Pg 43 of 57

XF444752

（2）墙面：【耐水腻子】【瓷砖】【 】_____2.8米以下防水及保护层；2.8米以上耐水腻子_____；

（3）顶棚：【水泥抹面】【石膏吊顶】【 】_____耐水腻子_____；

（4）厨具：_____无_____。

9、卫生间：

（1）地面：【水泥抹面】【瓷砖】【 】_____防水及防水保护层_____；

（2）墙面：【耐水腻子】【涂料】【瓷砖】【 】_____2.8米以下防水及保护层；2.8米以上耐水腻子_____；

（3）顶棚：【水泥抹面】【石膏吊顶】【 】_____耐水腻子_____；

10、阳台：【塑钢封闭】【铝合金封闭】【断桥铝合金封闭】【不封闭】【 】__无阳台__。

11、电梯：

（1）电梯品牌名称：_____迅达_____；

（2）电梯速度：__2.5__米/秒；

（3）电梯载重量：_____1350_____千克；

（4）_____刷卡乘梯访客_____。

12、其他

_____；

_____。

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM
NYSCEF DOC. NO. 18
20-12411-jlg   Doc 14-5   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 5
Pg 44 of 57
INDEX NO. 652077/2017
RECEIVED NYSCEF: 06/29/2017

XF444752

附件七　　物业服务

一、常规物业服务内容

公共区域工程设备设施的运行与维护服务；冬季供暖、夏季供户式中央空调的冷却水服务；24小时公共秩序维护服务；公共区域保洁服务；热线电话服务；前台服务；交通指引疏导服务；工程维修服务。具体内容为：

**1、公共服务**

1　留言服务；

2　咨询服务；

3　大堂行李搬运服务；

4　小件非贵重物品临时寄存服务；

5　代酒店预定服务；

6　代订车服务；

7　代叫出租车服务；

8　代为办理电卡、水卡、燃气卡充值手续服务；

9　代订牛奶、桶装水等生活物品服务；

10　代机票订购服务；

11　代叫、代收快件服务；

12　代订报刊杂志服务

13　公共区域绿化服务。

**2、保洁服务**

2.1 公共区域清洁服务；

2.2 外墙、外窗每年二次清洗服务；

2.3 生活垃圾每日清运服务；

2.4 公共区域每年四次灭虫服务。

**3、工程服务**

3.1电话线路、网络（宽带）线路的维护；

3.2卫星及有线电视节目系统的维护；

3.3给排水系统设备设施（水泵、水箱、阀门、管道）的维护；

3.4空调/采暖设备设施、冷却水系统设备设施的维护；

3.5 供配电系统设备的维护；

3.6电梯设备及消防系统设备的维护；

3.7以上系统设备设施（公共区域）的运行服务；

3.8以下项目为免人工费，但不包括材料费服务项目：

206

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM
NYSCEF DOC. NO. 18
INDEX NO. 652077/2017
RECEIVED NYSCEF: 06/29/2017

20-12411-jlg    Doc 14-5    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 5
Pg 45 of 57

XF444752

3.8.1更换室内照明灯具；

3.8.2：每年冬季及夏季前对空调系统进行免费检查，同时提供室内空调风口的清洁及空调机过滤网

的清洗服务。

3.8.3提供室内字画、装饰物等的悬挂；

3.8.4更换灶具电池、开关面板、电源插座、信息插座；

3.8.5疏通厨房及卫生间下水。

4、公共秩序维护服务

4.1 24小时保安、消防监控服务；

4.2公共区域不间断保安巡视服务；

4.3定期检查消防设施服务；

4.4车辆指引、交通疏导服务；

4.5主要出入口人员值守服务。

二、收费服务内容：

1、室内服务

1    代聘私人健身教练

2    形象设计护理服务

3    代聘私人营养师服务

4    私人聚会服务

5    迎送贵宾服务

6    礼仪服务

7    待聘私人司机服务

8    VIP客房服务

9    家庭保洁服务

10    儿童照看服务

11    洗衣服务

12    皮鞋养护服务

13    家庭保健服务

14    家庭美化服务

15    家庭绿植租摆养护服务

16    秘书服务

17    会议服务

18    鲜花服务

19    电话机、电脑消毒

XF444752

20  物品搬运服务

**2、室外服务**

2.1 运动休闲

2.2 观光服务

2.3 陪同购物

2.4 接机服务

2.5 学生接送服务

2.6 洗车服务

**3、工程服务**

3.1 有偿入室维修服务

三、物业服务质量符合《住宅物业服务等级规范（一级）（试行）》。

四、物业服务收费标准为：公寓20元/月/平方米（建筑面积）；顶层公寓23元/月/平方米（建筑面积）。

五、买受人在此确认同意与出卖人指定物业管理企业签署有关文件、协议，并按照协议约定缴纳该商品房物业管理费等费用。

六、出卖人为买受人提供每户2个地下停车位5年的免费使用权，该5年期限的起算日为买受人实际入住之日。具体的车位位置由出卖人根据车位使用状况统一安排，买受人应当接受出卖人的安排。出卖人在此期间不向买受人收取车位任何费用。5年期满后根据市场行情另行收取费用。

七、业主临时公约

详见《七星摩根广场业主临时管理规约》。关于物业服务费用支付的约定，《七星摩根广场业主临时管理规约》与本协议其他条款的约定不一致的，以其他条款的约定为准。

七星摩根广场（推广名：盘古大观）临时管理规约

总    则

第一条    为维护全体业主和物业使用人的合法权益，保障本物业区域内物业的安全与合理使用，维护公共秩序，促进管理有序、安全舒适、环境宜人、文明和谐的新型社区建设，根据国家法律法规，结合本物业项目实际，制订本规约。

第二条    开发建设单位与物业服务机构签订的前期物业服务合同中涉及业主共同利益的约定，应与本规约一致。

208

# XF444752

**第三条**　开发建设单位应当在销售物业前将本规约向物业买受人明示，并予以说明。物业买受人与出卖人签订物业买卖合同时，本规约作为物业买卖合同的附件，由买受人对本规约的内容予以书面确认。

**第四条**　若本规约的条款与相关法律法规相抵触，则该条款无效，但不影响本规约其他条款的效力。

## 第一部分　物业基本情况

**第五条**　本物业区域内物业的基本情况

物业名称：七星摩根广场（推广名：盘古大观）

座落位置：北京市朝阳区北四环中路27号

物业类型：公寓、酒店、商业

建筑面积：418484.7万平方米（最终以勘测部门实测面积为准）

物业区域四至：

东至：北辰西路

南至：北四环中路

西至：北辰西一路

北至：安翔北路

**第六条**　本物业区域内的物业服务用房位于：七星摩根广场（推广名：盘古大观）A座写字楼25层，建筑面积约为700平方米。

**第七条**　物业服务机构的基本情况

机构名称：第一太平戴维斯物业顾问（北京）有限公司

法定代表人：何伟虔

资质等级及资质证书编号：一级　（建）107034

注册地址：北京市朝阳区建国门外大街乙12号双子座大厦东塔2101室

邮编：100022

联系电话：010 5925 2288

**第八条**　根据有关法律法规和物业买卖合同，共用部位及共用设施设备指不为单个业主所有而为该物业全体业主所有并共同使用的部位及为该物业安装的且属该物业所有的各种机器、设备、仪器、装置等，不论设置于何处均属共用部位及共用设施设备的一部分。共用部位及共用设施设备包括但不限于：

1、　建筑物的共用部位，包括建筑物的承重结构（含建筑物的基础、承重墙体、梁柱等）、主体结构，公共门厅、公共走廊、公共楼梯间等；

2、　建筑物的共用设施设备，包括建筑物内的给排水管道、落水管、水箱、水泵、电

**209**

## XF444752

梯、冷暖设施、照明设施、消防设施、避雷设施、智能化设施、配电设施等;

**第九条** 在本物业管理区域内,根据物业买卖合同,以下部位和设施设备为建设单位所有:

1、 地下车库非人防部分;

2、 其他没有计入公摊范围的部位;

3、 开发建设单位行使以上部位和设施设备的所有权、处分权、收益权。

### 第二部分 物业的使用、维护和管理

**第十条** 本物业区域内的业主依法享有以下权利:

1、 按照物业服务合同约定,接受物业服务机构提供的服务;

2、 参与本物业区域的物业管理活动;

3、 监督前期物业服务机构履行前期物业服务合同;

4、 对本物业区域共用部位、共用设施设备和相关场地、专项维修资金的使用和管理情况享有知情权和监督权;

5、 按权物业服务机构制订物业共用部位和共用设施设备使用、公共秩序和环境卫生维护等方面的规章制度;

6、 对本物业区域内影响业主共同利益、业主正常生活秩序的行为进行投诉;

7、 提议召开业主大会,提出补充、修改本规约的建议;

8、 法律、法规规定的业主的其他权利;

**第十一条** 本物业区域内的业主应当履行以下义务:

1、 按照物业服务合同的约定,向物业服务机构交纳物业服务费用;

2、 按规定交存、管理和使用专项维修资金;

3、 遵守本物业区域内物业共用部位和共用设施设备的使用、公共秩序和环境卫生维护等方面的规章制度;

4、 配合物业服务活动;

5、 按照有利生产、方便生活、团结互助、公平合理的原则处理相邻关系,互助友爱,和睦相处;

6、 出租、转让物业时,告知承租人、买受人遵守本规约;

7、 参加业主大会并予以表决;

8、 法律、法规规定的业主的其他义务。

**第十二条** 开发建设单位对于未售出的物业,享有业主的权利,履行业主的义务。该物业所在楼栋的屋顶和外墙面的使用权、收益权、处分权归该物业所在楼栋的全体业主所有。开发建设单位在屋顶、外墙面设立、使用或经营广告、标识,无需向非该辖物业的业主支付任何费用,非该幢物业的业主不得干涉并不得以此为由向开发

XF444752

建设单位主张违约或赔偿责任。

第十三条　为了保证物业对外形象的统一和协调，业主同意其所购商品房悬挂的窗帘外侧（面对室外一侧）为统一指定的白色纱帘，窗户及窗户内侧不能悬挂、设置、张贴任何广告或商业性的标识。业上同意不堵塞任何窗户，不在该物业的外墙上安装遮阳罩、窗箱及任何伸出物或结构（包括不住窗户或外墙安装冷气机或其他固定设施），亦做出其他有碍项目整体外观的行为。

第十四条　鉴于本物业的特性，开发建设单位安装了灯光照射系统，开发建设单位根据需要在一定时间内开启该灯光照射系统，业主不得干涉并不得以此为由向开发建设单位主张违约或赔偿责任。

第十五条　业主对其专有部分行使占有、使用、收益和处分的权利时，不应危及建筑物的安全，也不应损害其他业主、物业使用人的合法权益。

第十六条　业主或物业使用人应按照有利于物业使用、安全、整洁以及公平合理、不损害公共利益和他人利益的原则，遵守供电、供水、供热、供气、排水、通行、通风、采光、装饰装修、环境卫生、环境保护等方面的相关规定。

第十七条　业主或物业使用人应按规划用途使用物业，确需改变物业规划用途的，应当经有利害关系的业主同意，依法办理相关手续。同时，告知物业服务机构、产权人或业主委员会。

第十八条　业主或物业使用人需要装修房屋的，应告知物业服务机构，签定房屋装修服务协议，明确相关的权利义务、服务内容及违约责任等内容。

第十九条　因装修房屋影响物业共用部位、共用设施设备的正常使用，应及时恢复；给其他业主或物业使用人造成损失的，应承担相应责任。

第二十条　业主或物业使用人应按有关规定合理使用水、电、气、暖等设施设备，不得擅自拆改。

第二十一条　业主或物业使用人应按设计预留的位置安装空调，采预留设计位置的，应与物业服务机构协商确定合理的位置，并做好噪音预防及冷凝水的处理。

第二十二条　遵守本物业区域车辆行驶和停放的规定。

第二十三条　业主和物业使用人在本物业管理区域内饲养动物不得违反《北京市养犬管理规定》及有关法律法规的规定，并应遵守以下约定：

1、　业主应及时清理宠物粪便，不得饲养家禽、家畜。

2、　业主要控制好所饲养的宠物，如出现饲养宠物伤人现象，饲养人承担赔付责任。如出现宠物之间争斗造成损伤，饲养人之间协商解决。

3、　宠物在以下时间发生噪声影响其他业主休息而引起投诉，物业服务企业有权制止并要求整改：

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 18
20-12411-jlg   Doc 14-5   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 5
Pg 50 of 57
RECEIVED NYSCEF: 06/29/2017

XF444752

1）每日21：00-次日8：00；

2）每日12：00-14：00之间。

第二十四条　本物业区域内禁止以下行为：

1、　损坏房屋承重结构、主体结构，对梁、柱、板等进行违章凿、拆、搭、建，擅自拆改管线和破坏防水层，切割或破坏该物业的主墙、横梁、柱或地板，破坏房屋外貌、改变构筑物包括窗户的色调或设计风格，擅自改变房屋设计用途；在其物业内安装影响该物业整体观瞻的设施设备。

2、　作出影响水、电或燃气等供应的改动，擅自更改、迁移或增大用电装置、空调装置、生活热水装置负荷，令该物业冲洗或排水系统堵塞或令该等设施的有效工作程序受损。

3、　改变物业包括车位的使用性质，改变物业区域内按照规划建设的公共建筑和共用部位及共用设施设备的使用性质。

4、　占用或损坏物业共用部位、共用设施设备及相关场地，擅自移动物业共用设施设备；

5、　在共用部位私设摊点；

6、　在非指定位置倾倒或抛弃垃圾、杂物；

7、　违反有关规定堆放易燃、易爆、剧毒、放射性物品，排放有毒有害物质，发出超标噪声；

8、　在共用部位悬挂、张贴、设置任何通告、招牌、广告或其他物件；

9、　高空抛物、进入管道井和高危区域；

10、　侵占公共绿地和损坏物业管理区域内道路、园林、花卉树木、艺术景观、照明、安全消防器材等；

11、　利用物业从事危害公共利益和侵害他人合法权益的活动；

12、　法律、法规禁止的其他行为。

13、　在所购或所租单元的地面上放置超过规定荷载的物品，或者放置产生震动及噪音的设施，干扰其他用户。

第二十五条　建设单位应按国家规定的保修期限和保修范围承担物业的保修责任。

第二十六条　　物业保修期满后，业主或物业使用人自行承担其物业专有部分的维修养护责任。因维修养护不及时给其他业主造成损失的，应承担相应责任。

第二十七条　各相关业主或物业使用人应当配合物业的维修养护。因维修养护需要进入物业专有部分时，业主、物业使用人、开发建设单位或物业服务机构应事先告知，相关业主或物业使用人应给予配合。因阻挠维修养护，造成人身伤害或财产损失的，阻挠人应承担相应责任。

第二十八条　物业存在安全隐患，危及公共利益或其他业主合法权益时，责任人应当及时采

XF444752

取措施消除隐患。

第二十九条　发生危及公共利益或其他业主合法权益的紧急情况，必须及时进入物业专有部分进行维修养护时，应当事先通知相关业主或物业使用人，确实无法通知到的，物业服务机构可在公安部门、社区居委会和其他无利害关系业主的监督下，先行进行维修，事后应及时通知相关业主或物业使用人，并做好善后工作。

第三十条　因维修养护物业或者公共利益，确需临时占用、挖掘道路、场地的，应按规定办理相关手续，提前公告，并在约定期限内恢复原状。

第三十一条　利用依法归业主共有的物业共用部位、共用设施设备进行经营的，应当在征得相关业主同意后，按规定办理有关手续。所得收益归相关业主所有，分配及使用由相关业主共同约定。

## 第三部分　物业服务费用

第三十二条　物业服务费用由业主按其专有部分占建筑物总面积的比例分摊，按照前期物业服务合同的约定交纳。业主在办理入住手续时预付半年的物业服务费。此后按季交纳，具体时间为首次应交纳物业服务费之日起每3个月后当日。业主及物业使用人因故不能按时交纳物业管理费用等相关费用的，应委托他人按期代交。业主委托物业服务机构提供前期物业服务合同约定之外的特约服务的，其费用由双方当事人另行约定。

第三十三条　业主出租物业，约定由承租人交纳物业服务费用的，业主负连带责任。转让物业的，业主应与物业服务机构结清各项费用。

第三十四条　本物业区域内的全体业主按规定交存、使用和管理专项维修资金。资金余额不足首次归集数额的30%时，应当按规定续交。

## 第四部分　附则

第三十四条　业主、物业使用人、开发建设单位、物业服务机构违反本规约约定的，受侵害当事人可以申请仲裁，也可以向人民法院提起诉讼。

第三十五条　本规约所称物业的共用部位、共用设施设备，是指单个业主专有部分以外的，属于多个或全体业主共同所有或使用的房屋、空间、场地及相关设施设备。

第三十六条　本规约所称物业使用人，是指房屋承租人、共居人。

第三十七条　本规约由业主、开发建设单位、物业服务机构各持一份。

第三十八条　本规约作为物业买卖合同附件，自物业第一买受人签字承诺之日起生效（承诺书见附件），至业主大会制定的管理规约生效之日终止。

XF444752

附件：承诺书

**承诺书**

　　本人为七星摩根广场（推广名：盘古大观）<u>公寓</u>座<u>10</u>单元<u>1101</u>室业主，为维护物业使用人权益及促进七星摩根广场（推广名：盘古大观）的物业管理，本人同意及承诺如下：

一、确认已详细阅读北京盘古氏投资有限公司制定的《七星摩根广场（推广名：盘古大观）临时管理规约》（以下简称《规约》）。

二、完全同意履行和遵守及促使其他有关人员履行和遵守《规约》内列明的使用人之所有责任及义务。

三、本人同意承担违反《规约》的法律责任，并同意对其他相关人员违反《规约》的行为承担连带责任。

承诺人（业主签章）：　_____

签署日期：

**214**

XF444752

附件八　该商品房的建筑设计文件所标注的建筑隔声情况和环境影响评价文件所表征的所在地声环境状况（环境影响评价文件未含声环境状况的应在商品房预售时通过实测取得）。

1、建筑隔声情况

（1）室内允许噪声级≤ 40 dB(A),符合《民用建筑隔声设计规范》 一 级标准；

（2）分户墙及楼板计权隔声量≥ 50 dB(A),符合《民用建筑隔声设计规范》 一 级标准；

（3）分户层间楼板计权标准化撞击声压级≤ 65 dB(A),符合《民用建筑隔声设计规范》 一 级标准；

（4）建筑外窗计权隔声量35＞R$_W$≥30 dB(A)，符合《建筑外窗空气隔声性能分级及其检测方法》 Ⅲ 级标准；

（5）阳台门计权隔声量35＞R$_W$≥30 dB(A)，符合《隔声门》三级标准。

2、所在地声环境状况

（1）项目立项或预售时所在地声环境现状监测值为：昼间64.1-71.1dB(A)，夜间53.9-67.2dB(A)，监测时间为2009年9月30日；

（2）项目立项时所在地所处的声环境质量标准适用区域为1类区，执行标准为昼间 55 dB(A)，夜间 45 dB(A)；

（3）项目立项时所在地周边无（有/无）可能对本项目产生噪声或振动影响的道路、轨道线路、铁路、机场或飞行航道，分别是×；

（4）目前尚未建设但规划项目所在地周边无（有/无）可能对本项目产生噪声影响的道路、轨道线路、铁路、机场或飞行航道，分别是×；

（5）项目建成后所处区域整体环境噪声预测值为昼间54.5dB(A)～ 70.1dB(A)，夜间52.8dB(A)～68.2dB(A)。其中受周边噪声或振动影响最严重的区域为小区东侧（具体方位），预测昼间将会达到70.1dB(A)， 超过 (超过/优于)本地声环境质量标准适用区域标准 14.9dB(A)，夜间将会达到 68.2dB(A)， 超过(超过/优于)本地声环境质量标准适用区域标准23.2dB(A)。

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM INDEX NO. 652077/2017
NYSCEF DOC. NO. 18 20-12411-jlg Doc 14-5 Filed 12/16/20 Entered 12/16/20 15:47:19 Exhibit 5 RECEIVED NYSCEF: 06/29/2017

215

FILED: NEW YORK COUNTY CLERK 06/29/2017 05:31 PM
NYSCEF DOC. NO. 18
20-12411-jlg    Doc 14-5    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 5
Pg 54 of 57
INDEX NO. 652077/2017
RECEIVED NYSCEF: 06/29/2017

XF444752

2. 买受人补留或变更其通讯地址、电话的，应当向出卖人出具其亲笔签名或盖章的书面文件，该书面文件经出卖人签收确认后方为有效，否则因此导致延误或不能送达的后果，由变更方承担。买受人未向出卖人预留或补留通讯地址或代收人、或预留的通讯地址有误的、或在邮寄途中发生延误或丢失的，出卖人不承担任何延误或买受人未收到通知的责任。

第10条　其它约定：

1. 在买受人向出卖人付满了应付之合同价款的前提下（选择一次性付款的买受人应已付清全部房价款，选择银行按揭贷款付款的买受人应已付清首付款且银行贷款已付至出卖人账户，选择分期付款的买受人应已付满首付款且已付清所有到期款项），出卖人为买受人提供对所购房屋进场装修的便利。但买受人的装修方案以及装修施工单位须经过出卖人审核。出卖人为买受人选用的装修单位进场装修提供临水、临电等便利，但买受人应遵守相关的物业管理规定并承担相关费用。

2. 买受人对房屋进行装修不得改变房屋、配套设施的用途、结构、外观，不得毁损房屋、配套设施、设备或实施危及房屋安全及其他买受人正常居住和使用的行为。

3. 在不影响本商品楼通风、采光及使用功能的前提下，出卖人保留在政府批准的规划范围内对商品楼区域内绿化、道路、公共设施的修改及对修改的解释权。

4. 双方确认，买卖合同及其附件取代双方之前达成的任何协议、合同、意向、备忘等，该商品房的交房标准和条件均以买卖合同及其附件规定为准，有关该商品房的样板间、宣传材料、模型、展示板及广告供买受人在选择楼盘时参考，其中所述内容并不作为该商品房的交付标准和条件，也不构成买卖合同及其附件的任何条款及出卖人的义务。

5. 买受人确认，买受人于签署买卖合同前，出卖人已向买受人明示了《商品房销售管理办法》、《城市商品房预售管理办法》、《北京市城市房地产转让管理办法》以及《商品房买卖合同示范文本》，出卖人亦对买卖合同的条款进行了解释和说明，买受人已充分理解并认可买卖合同的所有内容。买受人确认，在签署买卖合同时，出卖人已向买受人公示有资质的测绘单位出具的商品房面积测绘技术报告书。
   买卖双方确认，双方的权利义务责任均以书面签订的买卖合同及补充协议为准。在买受人购房过程中，房屋销售人员或相关人员的口头允诺或保证均不构成合同的一部分，而无论买受人是否以录音或录像等方式进行了记录，出卖人均不因此而承担任何不利后果。

6. 买受人确认，在订立买卖合同之前，其已充分理解并认可买卖合同的所有内容，且出卖人亦对买卖合同的条款进行了解释和说明。买受人特别确认，本补充协议对双方权利义务的约定并无不当，不存在不合理地减轻、免除、加重任何一方责任或不合理的排除任何一方主要权利的情况。

7. 如无特别注明，买卖合同及本补充协议所涉日期或期限均为自然日，每个自然日为当日的零点至24点。

216

XF444752

**第11条　补充协议效力：**

1. 买卖合同及本协议的订立、履行、解释及争议解决等适用中华人民共和国法律。

2. 买卖合同及其附件存在中文或其他外文版本的，最终以中文版本为准。

3. 除买卖双方另有明确约定外，买卖合同或买卖合同其他附件与本协议有不一致的，以本协议为准。本协议未作约定的，仍以买卖合同、买卖合同其他附件为准。

4. 本协议自买卖双方签署之日生效。

出卖人签署：　　　　　　　　买受人签署：

签署日期：　年　月　日　　签署日期：　年　月　日



217

INDEX NO. 652077/2017
RECEIVED NYSCEF: 06/29/2017

Appendix II

Form of letters regarding management fee

承 诺 函

致：天津洋联俊杰投资实业有限公司

鉴于：2013 年 11 月 6 日，贵公司与本公司签署了编号为（XF444752 ）《北京市商品房现房买卖合同》（ "商品房买卖合同"）。根据商品房买卖合同，贵公司将在满足一定条件的前提下，向本公司购买位于北京市朝阳区北四环中路 27 号七星摩根广场项目 3 号楼 10 层 10 单元 1101 号商品房。

现就上述商品房物业管理费之支付事宜，本公司在此向贵公司做出如下承诺：

1. 本公司承诺，就贵公司购买的七星摩根广场项目 3 号楼 10 单元 1101 号商品房，本公司将积极促成该项目物业管理公司（"物业管理公司"）同意贵公司免交一定期限内的全部物业管理费，免交期限为在自该商品房交付给贵公司之日起，至贵公司实际入住日（定义见商品房买卖合同附件五第一条第（4）项）止或至交付之日起三年届满之日止（以较早发生的日期为准），同时承诺就上述事宜，促成物业管理公司向贵公司出具经贵公司认可的确认函。

2. 如本公司未能促成物业管理公司同意贵公司免交该商品房在上述期限内物业管理费的，则本公司承诺将无条件地代贵公司支付相关物业管理费。本公司将在相关物业管理费支付日前，将相关款项先行支付至贵公司指定账户，或将该等款项直接支付给物业管理公司（如物业管理公司同意该等付款安排）。

3. 如本公司未能履行本承诺函项下任何承诺，并因此而给贵公司造成任何损失的，本公司应对贵公司因此而遭受的全部损失承担赔偿责任。

承诺人：北京盘古氏投资有限公司

日期：2013 年 11 月 6 日

219