# EXHIBIT 16

Minutes of the Meeting of the Board of Directors of The Sherry-Netherland, Inc. (the "Corporation") held at Doubles, at 781 Fifth Avenue, in the Borough of Manhattan, City of New York, on March 3, 2015 at 4:00 p.m. pursuant to Notice of Meeting duly given.

PRESENT:

Mary Boies
Wendy Carduner
Edward L. Gardner
Arnold Gumowitz
Michael J. Horvitz
Frederic M. Seegal
Ira A. Lipman
Paul Teirstein (via telephone conference)

constituting all and therefore a quorum of the members of the Board of Directors of the Corporation. Also present by invitation was Michael J. Ullman, Executive Vice President of the Corporation and Eva Talel, Assistant Secretary of the Corporation.

Mr. Horvitz called the meeting to order and Ms. Talel acted as Secretary.

Upon motion duly made and seconded, the minutes of the meeting of the Board held on December 11, 2014, as previously circulated to Board members, were unanimously approved.

Mr. Horvitz reported on discussions he had with Marjorie Fisher, a prospective board member to fill the vacancy created by Mr. Meister's sale of his apartment and resignation from the Board whom the Board had recommended to fill that vacancy at its December 11, 2014 meeting. The Board had asked that Mr. Horvitz speak with Ms. Fisher to assess her interest in and availability to serve on the Board. Ms. Fisher advised Mr. Horvitz that she would be pleased to join the Board. After discussion, the Board having previously received and reviewed Ms. Fisher's credentials and resume as well as her relationship of long-standing as an occupant of The Sherry-Netherland, and upon motion duly made, seconded and unanimously adopted, it was

> RESOLVED that Ms. Marjorie Fisher be hereby appointed to fill the unexpired term of the vacancy on the Board created by Mr. Meister's sale of his apartment and resignation from the Board.

Ms. Fisher then joined the meeting via teleconference and was warmly welcomed by all members of the Board.

Mr. Horvitz reported that the Corporation had received an application to purchase the entire 18th floor of The Sherry-Netherland (Apartment 1801), as well as Maid's Room 2219,

NY 75629083v1

SN 0083

all currently owned by Sherry 1800s, LLC (M/M Haroche) from Mr. Miles Kwok, acting as Genever Holdings LLC, for a purchase price of $67,500,000 for Apartment 1801 and Maid's Room 2219 and an additional $2,500,000 for the furniture, furnishings and other contents thereof. A separate contract by Mr. Kwok/Genever has been entered into to purchase Maid's Room 719 if the application to purchase Apartment 1801 is approved. The contracts' closing date is set for not later than March 6, 2015 and provide that the purchaser may terminate the contracts if there is no closing by that date. The board package had been distributed to all directors on March 3, 2015, other than to Ms. Fisher who was not then a Board member.

Mr. Horvitz further reported that he and Mr. Fred Seegal had personally interviewed Mr. Kwok, and his son Mileson Kwok, currently a citizen/resident of Hong Kong, who stated that he intends to make New York City his home for himself and his family and to spend six to nine months a year living at The Sherry-Netherland. Messrs. Horvitz and Seegal also interviewed Mr. Kwok's wife, Hing Chi, via Skype. Mr. Horvitz reported that he was provided with certain financial information regarding Mr. Kwok, which he was asked to review in confidence and that Mr. Kwok has agreed to deposit with the Corporation an amount equal to 5 years of maintenance (approximately $3 million), as security for timely payment of his maintenance and all other financial obligations to the Corporation. After extensive discussion, the Board determined that the financial information provided by Mr. Kwok was not sufficient for the Board to consider the application and that Mr. Kwok's counsel and broker should be advised that while the Board is favorably disposed to the transaction, additional due diligence is required by the Board, including but not limited to obtaining additional financial information regarding Mr. Kwok, and upon completion of such due diligence and in light of the prospective May 6, 2015 closing date, the Board is prepared to reconvene on an expedited basis by telephone conference on March 4, 2015 at 5:30 p.m. in order to consider whether to consent to the proposed transfers.

Mr. Nathan Orsman and his colleague Mr. Shane Moan, of Orsman Lighting, Inc., the lighting design company retained by the Corporation to develop a plan for lighting the top of The Sherry-Netherland, then joined the meeting and distributed materials and presented a proposed lighting plan for the top and the exterior façade of The Sherry-Netherland, not only the top of the building. Mr. Orsman explained that the lights would operate from dusk to midnight but that Sherry occupants would be unaware of and undisturbed by the exterior lighting when inside their apartments and that there would be no heat emanating from the lights. Mr. Orsman explained his concern that if The Sherry-Netherland were only lit at the top of the building, it would appear as if the building were floating in darkness. Board members expressed their concern that a building façade lighting scheme would be disrupted by what could appear as an irregular checkerboard pattern created by interior apartment lights being turned on and off at random. With regard to the cost of the lighting plan, the cost of the equipment would be approximately $250,000 and an installation firm would be required to opine on the feasibility of the installation and price-out the installation costs on a per-floor basis, after consulting with the Corporation's electrical contractor. Mr. Orsman estimated the cost of determining the feasibility of the installation to be approximately $20,000-30,000. The Corporation's architect, David Acheson, had been consulted regarding whether consent of the The New York City Landmarks Preservation Commission was required for such an installation and advised that while an application to and hearing by the Commission would be required, consent would likely be given.

NY 75629083v1

SN 0084

Mr. Orsman was asked to modify his proposal and report back to the Board, taking into account the concerns expressed by the Board. The Board thanked Messrs. Orsman and Moan for their presentation, and they were then excused from the meeting.

Mr. Ullman reported that the Corporation had received proposals from three prospective lessees of the vacant space previously occupied by the Garren hair salon, each of which currently operate salons at other New York City locations and had offered to pay annual rent of $240,000, which is 20% more than what Garren had been paying. After discussion, the Board determined that Ms. Carduner and Ms. Boies would make further inquiries about the prospective lessees and their current operations and report on the same to the Board.

Mr. Ullman also reported that the Corporation's retail tenant, Vacca, was currently in arrears in the approximate amount of $70,000 for February and March rent, legal fees and real estate tax escalation, and that a diamond jewelry merchant, whose tenancy would not interfere with the restrictive use covenant of the Corporation's lease with "La Vielle Russie", had offered a base rent of $1.2 million per year for that space. Vacca's rent is $380,000 per year and the lease expires on December 31, 2016. After discussion, the Board unanimously determined that the Corporation's counsel should continue to aggressively pursue the pending litigation to terminate Vacca's lease for non-payment of rent and recover possession of the space and all monies owed by Vacca to the Corporation. The Corporation also determined not to pursue at this time the offer for the Vacca space which it had received, and Mr. Horvitz was authorized to explore with the principals of "La Vielle Russie" whether they would voluntarily terminate the lease for their space at The Sherry-Netherland before its September 30, 2017 termination date in exchange for the opportunity to lease the Vacca space when it becomes available and report on the same to the Board.

Mr. Ullman further reported that the 16th Floor apartment purchase by Mr. and Mrs. Elkan was expected to close by mid-March but that the purchaser (an LLC) had requested the right to generally use the apartment for its parent company's corporate executives. The Board rejected the request and Mr. Ullman was asked to advise the perspective purchaser that closing of the transaction would require execution of an Occupancy Agreement, limiting the permitted occupants to the Elkan family.

There being no further business to come before the meeting, the meeting was adjourned at 6:30 p.m.

*Eva Talel*

Eva Talel, Secretary