# EXHIBIT 20

*PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P. vs. KWOK HO WAN*

*MICHAEL HORVITZ*
*April 9, 2019*



ELLEN GRAUER
COURT REPORTING CO. LLC

126 East 56th Street, Fifth Floor  New York, New York 10022
P: 212-750-6434   F: 212-750-1097
www.ellengrauer.com

*Original File 267201.TXT*
*Min-U-Script® with Word Index*

```
                                                                 1

 1   SUPREME COURT OF THE STATE OF NEW YORK

 2   COUNTY OF NEW YORK
     ------------------------------------------------------X
 3   PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.,

 4                        Plaintiff,

 5   KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO WEN GUI,
     a/k/a GUO WENGUI, a/k/a GUO WEN-GUI, a/k/a
 6   WAN GUE HAOYUN, a/k/a MILES KWOK, a/k/a
     HAOYUN GUO,
 7
                          Defendant.
 8
     INDEX NO.: 652077/2017
 9   ------------------------------------------------------X

10

11                    1100 Superior Avenue East
                      Cleveland, Ohio
12
                      April 9, 2019
13                    8:38 a.m.

14

15        Videotaped examination of MICHAEL HORVITZ,

16   taken before me, the undersigned, Sarah R. Drown,

17   a Registered Professional Reporter and Notary

18   Public within and for the State of Ohio.

19

20

21

22

23        ELLEN GRAUER COURT REPORTING CO., LLC
            126 East 56th Street, Fifth Floor
24             New York, New York  10022
                      212-750-6434
25                  REF:  267201
```

```
 1   A P P E A R A N C E S:
 2
 3   O'MELVENY & MYERS LLP
 4   Attorney for the Plaintiff
 5        TIMES SQUARE TOWER,
 6        7 TIMES SQUARE
 7        NEW YORK, NEW YORK  10036
 8   BY:  EDWARD MOSS, ESQ.
 9        SARA N. PAHLAVAN, ESQ.
10        STUART M. SARNOFF, ESQ.(Via videoconference)
11        GARO HOPLAMAZIAN, ESQ.(Via videoconference)
12        ELI GROSSMAN, ESQ.(Via videoconference)
13        PHONE:   212.326.2000
14        EMAIL:   Emoss@omm.com
15                 Spahlavan@omm.com
16                 Ssarnoff@omm.com
17                 Ghoplamazian@omm.com
18                 Egrossman@omm.com
19
20
21
22
23
24
25
```

```
 1   A P P E A R A N C E S: (Cont'd)
 2
 3   HODGSON RUSS LLP
 4   Attorney for the Defendant
 5        605 THIRD AVENUE, SUITE 2300
 6        NEW YORK, NEW YORK  10158
 7   BY:  JILLIAN M. SEARLES, ESQ.
 8        MARK A. HARMON, ESQ. (Via phone)
 9        PHONE:  212.751.4300
10        EMAIL:  Jsearles@hodgsonruss.com
11                Mharmon@hodgsonruss.com
12
13
14   STROOCK & STROOCK & LAVAN LLP
15   Attorney for Michael Horvitz
16        180 MAIDEN LANE
17        NEW YORK, NEW YORK  10038
18   BY:  EVA C. TALEL, ESQ.(Via videoconference)
19        PHONE:  212.806.5400
20        EMAIL:  Etalel@stroock.com
21
22
23   ALSO PRESENT:
24        Ivan Bercian, Videographer
25
```

70

```
 1                MICHAEL HORVITZ
 2   Wong that purported to say that Mr. Kwok
 3   was the owner and controller of the
 4   company.
 5        Q.   What is your view sitting here
 6   today after reviewing his testimony as to
 7   the veracity of Mr. Kwok's certification
 8   that he owned and controlled Beijing
 9   Zenith?
10        A.   Well, I believe that this
11   testimony, the deposition testimony, and
12   the representations that we received in
13   2015 are completely inconsistent with
14   each other, but I can't tell which one is
15   true.  So I don't know whether -- whether
16   he's lying in the deposition or he was
17   misrepresenting the situation in 2015,
18   but I don't see how both situations could
19   be true.
20        Q.   Had you known that Mr. Kwok
21   didn't actually own Beijing Zenith even
22   though he certified he did, how, if at
23   all, would that have affected your
24   recommendation to the board?
25              MS. SEARLES:    Object to
```

```
 1            MICHAEL HORVITZ
 2      form.
 3      A.    Well, I have a very low
 4   tolerance for people who have an
 5   inability to tell the truth, and if I had
 6   known that the representations being made
 7   were not true, my guess is that I would
 8   have not recommended approval of the
 9   purchase of the apartment.
10      Q.    Do you recall your testimony
11   earlier today that based on Mr. Kwok's
12   certification and representations that
13   you believe Beijing Zenith was an
14   operational company?
15      A.    Well, I didn't form a judgment
16   about what business it was in, whether it
17   had operations, whether it was a holding
18   company, what it was.  It was my belief
19   that it was a company owned and
20   controlled by Mr. Kwok.
21            I found the financials
22   difficult to understand, so I couldn't
23   make a judgment about that.  But I didn't
24   form an opinion of, you know, what
25   business it was in.
```

```
 1                MICHAEL HORVITZ
 2       Q.    If I can direct your attention
 3   to page 79 of the testimony.  I'm going
 4   to start reading from line 23.  This
 5   testimony goes on to the next page.
 6             Question, "Mr. Kwok, did you
 7   know at the time this Beijing Zenith
 8   Holdings balance sheet was submitted to
 9   The Sherry-Netherland that Beijing Zenith
10   Holdings' assets had been frozen by the
11   Chinese government?"
12             "Object to the form of the
13   question."
14             Mr. Kwok refuses to answer and
15   then he's instructed that he can answer
16   this question.  He answers on line 9, "In
17   that case, I know.  Yes."
18             Do you see that?
19       A.    Yes.
20       Q.    What, if any, reaction sitting
21   here today do you have to this testimony,
22   Mr. Horvitz?
23       A.    Well, I -- I felt that the
24   Beijing Zenith financial statements
25   were -- there was something wrong with
```

```
 1              MICHAEL HORVITZ
 2   them when I first reviewed them.  So I
 3   had a skepticism about them, which is why
 4   I didn't recommend approval based on the
 5   Beijing Zenith Holdings' financial
 6   statements.
 7              So in this sense I guess I'm
 8   not surprised that -- that those
 9   statements were even more inaccurate than
10   I thought they were, but they certainly
11   confirm the idea that the statements were
12   not accurate.
13        Q.   Do you recall your testimony,
14   based on Mr. Kwok and his lawyers'
15   representations, that you believed he
16   owned 50 percent of Bravo Luck?
17        A.   Of Bravo Luck?  Yes.
18        Q.   If I can direct your attention
19   to page 82 of the testimony of Exhibit 8,
20   please.
21              I'm going to start at line 11.
22              "Thank you.  I have handed
23   you -- the court reporter has handed you
24   Exhibit 5, which is a statement entitled
25   Debit Advice from UBS in Hong Kong for
```

74

```
 1            MICHAEL HORVITZ
 2    Bravo Luck Limited, and it's
 3    Bates-stamped Kwok 510, and it was
 4    produced by your counsel to us in this
 5    case, Mr. Kwok."
 6            Do you see that, Mr. Horvitz?
 7       A.   Yes.
 8       Q.   I'm going to read from line
 9    17.
10            Question, "Bravo Luck Limited
11    is a company owned by Zhang Wei?"
12            Answer, "Yes."
13            Question, "You have no
14    ownership interest in Bravo Luck
15    Limited?"
16            Answer, "I do not remember
17    having any."
18            Do you see that testimony?
19       A.   I do see it, yes.
20       Q.   What is your reaction, if any,
21    sitting here today, Mr. Horvitz, to
22    Mr. Kwok's testimony regarding Bravo
23    Luck?
24       A.   Well, my reaction is again
25    it's completely inconsistent with the
```

```
 1              MICHAEL HORVITZ
 2   representations that were made at the
 3   time, in 2015, at the time of the
 4   application.  And either those
 5   representations were inaccurate at the
 6   time or this testimony is inaccurate when
 7   it was given.  I have no view as to which
 8   it is, but they're completely
 9   inconsistent.
10        Q.   How does reading Mr. Kwok's
11   testimony from 2018 make you feel
12   regarding the representations he made in
13   2015?
14        A.   It doesn't really -- because I
15   don't know whether the representations in
16   2015 were true or not, it doesn't -- it
17   really in a funny way doesn't cast doubt
18   on the original representations, but it
19   tells me that one of two things happened.
20             Either he was misrepresenting
21   at the time or he's lying in this
22   deposition.  And it's theoretically
23   possible that the representation was true
24   and now he's lying and it's also possible
25   that the reverse is true.  I don't have a
```

```
 1                MICHAEL HORVITZ
 2   view on that.
 3             If I -- if I had known or if
 4   I -- if this testimony indicated to me
 5   that the representations in 2015 were
 6   inaccurate, I would consider, too, that
 7   we were defrauded.
 8       Q.   I don't have anything further
 9   at this time.  I reserve my right to ask
10   additional questions after Ms. Searles'
11   examination.
12             I don't know if you want to
13   take a break before Ms. Searles starts or
14   not.
15             MS. SEARLES:      Yeah, it
16        might make more sense just to take
17        a quick break so I can --
18             MR. MOSS:         Sure.
19             MS. SEARLES:      -- just make
20        sure to do it as quickly as
21        possible for you.
22             THE WITNESS:      No problem.
23             THE VIDEOGRAPHER: Off the
24        record.  The time is 9:56.
25                  -  -  -  -  -
```

```
 1                MICHAEL HORVITZ
 2             (Recess taken.)
 3              -  -  -  -  -
 4            THE VIDEOGRAPHER: We're back
 5      on the record.  The time is now
 6      10:07.
 7       EXAMINATION OF MICHAEL HORVITZ
 8  BY MS. SEARLES:
 9       Q.   Good morning, Mr. Horvitz.
10            As I mentioned earlier, I'm
11  Jillian Searles, counsel for Mr. Kwok.  I
12  just have a few questions for you.
13            What, if anything, did you do
14  today to prepare for your deposition?
15       A.   Today?
16       Q.   Or what did you do to prepare
17  for your deposition today, if anything,
18  at any point before this day?
19       A.   Well, I reviewed the minutes
20  of the two meetings.  I reviewed the
21  application package.  I talked to my
22  counsel.  That's pretty much it.
23       Q.   Aside from your counsel, did
24  you speak to anyone at the board?
25       A.   No.
```

78

1          MICHAEL HORVITZ
2     Q.    Did you speak to Mr. Ullman?
3     A.    No.
4     Q.    You mentioned you reviewed a
5  couple of documents, the board minutes?
6     A.    The board minutes, the
7  application package.  I also reviewed the
8  correspondence from Ira Gilbert and Jerry
9  Shulman regarding the financial
10 information.
11    Q.    Did you review any of the
12 legal pleadings in this particular
13 matter?
14    A.    I received them, but I didn't
15 read them.
16    Q.    From whom did you receive the
17 legal pleadings?
18    A.    My counsel.
19    Q.    I believe you mentioned
20 earlier you own an apartment at The
21 Sherry-Netherland?
22    A.    Yes.
23    Q.    You've owned that apartment
24 since 2004?
25    A.    No.  I went on the board in

```
 1                 MICHAEL HORVITZ
 2   2004.  I've owned -- I've owned the
 3   apartment since 1988.  And then I
 4   acquired -- there were a hotel room next
 5   to it and I acquired that some time
 6   later, I can't remember the year, and
 7   combined it with my apartment.  But I've
 8   been a shareholder since 1988.
 9        Q.    Okay.  Do you own that
10   apartment in your own name?
11        A.    I own it in the name of a
12   revocable trust that is my trust.
13        Q.    Is it common for individuals
14   living at The Sherry-Netherland to own
15   their apartments through other entities?
16        A.    I'd say it's --
17              MR. MOSS:        Objection to
18        the form.
19        A.    I don't know how prevalent it
20   is, but it's not -- it's not uncommon.
21        Q.    Earlier today you testified
22   that you were given various financial
23   information with respect to your review
24   of Mr. Kwok's application.
25              Other than reviewing, reading
```

80

```
 1                MICHAEL HORVITZ
 2   the actual material that was provided to
 3   you, what, if anything, did you do to
 4   verify that information?
 5          MR. MOSS:          Object to
 6      the form.
 7      A.    Well, I -- with respect to the
 8   Beijing Zenith financial information, I
 9   did nothing to verify it because I found
10   it incomprehensible.  So I discounted it.
11              With respect to the Bravo Luck
12   financial statement, I looked at the
13   certification to confirm that Mr. Kwok
14   was the -- had access to the funds.
15              But I don't think I did
16   anything further.  I don't remember doing
17   anything further, as far as verification
18   is concerned.
19      Q.    You testified earlier that
20   during the application process you did
21   have additional questions, correct?
22          MR. MOSS:          Object to
23      the form.
24      Q.    Of the financial information
25   that you were given, correct?
```

89

```
 1              C E R T I F I C A T E
 2
 3         I, Sarah R. Drown, a Registered Professional
 4    Reporter and Notary Public within and for the State
 5    of Ohio, duly commissioned and qualified, do hereby
 6    certify that MICHAEL HORVITZ, was first duly sworn
 7    to testify the truth, the whole truth and nothing
 8    but the truth in the cause aforesaid; that the
 9    testimony then given by him was by me reduced to
10    stenotypy in the presence of said witness,
11    afterwards transcribed on a computer/printer, and
12    that the foregoing is a true and correct transcript
13    of the testimony so given by him as aforesaid.
14         I do further certify that this deposition was
15    taken at the time and place in the foregoing caption
16    specified.  I do further certify that I am not a
17    relative, counsel or attorney of either party, or
18    otherwise interested in the event of this action.
19         IN WITNESS WHEREOF, I have hereunto set my hand
20    and affixed my seal of office at Cleveland, Ohio, on
21    this 10th day of April, 2019.
22
23    _____
24
25    Sarah R. Drown, RPR, Notary Public
```