# EXHIBIT 24

FILED: NEW YORK COUNTY CLERK 07/28/2020 04:09 PM    INDEX NO. 652077/2017

NYSCEF DOC. NO. 460    20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24    RECEIVED NYSCEF: 07/28/2020

Pg 2 of 57

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PACIFIC ALLIANCE ASIA OPPORTUNITY
FUND L.P.,

               Plaintiff,

               v.

KWOK HO WAN, *a/k/a* KWOK HO, *a/k/a* GWO
WEN GUI, *a/k/a* GUO WENGUI, *a/k/a* GUO
WEN-GUI, *a/k/a* WAN GUE HAOYUN, *a/k/a*
MILES KWOK, *a/k/a* HAOYUN GUO,

               Defendant.

Index No.

**COMPLAINT**

FILED: NEW YORK COUNTY CLERK 07/28/2020 04:09 PM
INDEX NO. 652077/2017

NYSCEF DOC. NO. 460

RECEIVED NYSCEF: 07/28/2020

20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24

Pg 3 of 57

## NATURE OF THE ACTION

1.      This is a straightforward breach of contract case.  Kwok Ho Wan, a/k/a Kwok Ho, a/k/a

Gwo Wen Gui, a/k/a Guo Wengui, a/k/a Guo Wen-Gui, a/k/a Wan Gue Haoyun, a/k/a Miles Kwok,

a/k/a Haoyun Guo ("Kwok"), a reported billionaire, and his controlled entities borrowed millions of

dollars from Plaintiff Pacific Alliance Asia Opportunity Fund L.P. ("PAX LP") but have failed to pay

any of the amount owed to PAX LP under binding written agreements.

2.      In 2008, PAX LP entered into a written agreement with Spirit Charter Investment

Limited ("Spirit Charter"), one of Kwok's business entities, under which PAX LP made available to

Spirit Charter a loan facility in the principal amount of $30 million.  This loan facility was conditioned

on Kwok's execution of a personal guarantee of Spirit Charter's repayment obligations.

3.      In 2009, another of Kwok's entities, Shiny Times Holdings Limited ("Shiny Times"),

assumed the debt that Spirit Charter owed to PAX LP, which the parties agreed at the time totaled

$45,357,534.25.  Kwok executed a personal guarantee of this debt.

4.      Then in 2011, PAX LP and Shiny Times entered into a written agreement (the "2011

Facility Letter") that expressly superseded prior agreements between the parties.  In the 2011 Facility

Letter, the parties agreed that Shiny Times owed PAX LP $46,426,489 and would repay that amount

(plus 15% annual interest from December 31, 2010) by June 30, 2012.

5.      That same day, Kwok entered into a separate personal guarantee (that similarly

expressly superseded Kwok's prior personal guarantee) under which Kwok guaranteed payment of all

amounts owed to PAX LP by Shiny Times under the 2011 Facility Letter (the "Personal Guarantee").

6.      To date, neither Shiny Times nor Kwok have paid any amount owed to PAX LP under

either the 2011 Facility Letter or the Personal Guarantee.

7.      PAX LP has taken all necessary and appropriate steps in accordance with its contracts

with Shiny Times and Kwok to recover the monies it is owed—now totaling approximately

$88 million including contractual interest—but has recovered nothing because it has been ignored by Shiny Times and Kwok at each step.

8.      Given that Kwok regularly transacts business, is domiciled and resides, and owns real estate in New York, PAX LP brings this action in this Court to enforce its contractual rights against Kwok.

## JURISDICTION AND VENUE

9.      This Court has personal jurisdiction over Kwok pursuant to New York's general personal jurisdiction statute, C.P.L.R § 301, because he is engaged in a continuous and systematic course of "doing business" in New York and is domiciled in the state.

10.     Venue is proper in this Court under C.P.L.R § 503(a) because Kwok's residence is in New York County.

## PARTIES

11.     Plaintiff PAX LP is an investment fund organized as an exempted limited partnership under the laws of the Cayman Islands.

12.     Defendant Kwok is a Chinese national who is domiciled in New York and engages in a continuous and systematic course of "doing business" in New York.

13.     Kwok resides on the 18th Floor of The Sherry-Netherland Hotel in New York City—a residence he purchased in 2015 for $67.5 million through Genever Holdings, LLC ("Genever"), a domestic limited liability company that he solely owns and that maintains its principal place of business in New York State at 80 State Street in Albany.

14.     Kwok also maintains offices at 767 Fifth Avenue for Golden Spring (New York) Ltd. ("Golden Spring"), a Delaware company that he owns, which is registered to do business as a foreign corporation in New York and has a registered agent for service of process in New York.

2

FILED: NEW YORK COUNTY CLERK 07/28/2020 04:09 PM
NYSCEF DOC. NO. 460

INDEX NO. 652077/2017

RECEIVED NYSCEF: 07/28/2020

20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24
Pg 5 of 57

15. Kwok also has employees or agents in New York, including those who work for Golden Spring and the attorneys he hired to represent him in two cases in the United States District Court for the Southern District of New York over the last two years.[1]

## STATEMENT OF FACTS

### *The Shiny Times Loan and Kwok's Personal Guarantee to Repay PAX LP*

16. PAX LP and Kwok have had business dealings since approximately February 4, 2008, when PAX LP entered into a written agreement (the "2008 Facility Agreement") with Spirit Charter, one of Kwok's business entities, under which PAX LP made available to Spirit Charter a loan facility in the principal amount of $30 million.

17. This loan facility was conditioned on Kwok's execution of a personal guarantee of Spirit Charter's repayment obligations.

18. On March 12, 2008, PAX LP and Spirit Charter amended and restated the 2008 Facility Agreement ("Amended and Restated 2008 Facility Agreement").

19. By a deed dated September 17, 2009 (the "September 2009 Deed"), Shiny Times (another of Kwok's entities), Spirit Charter, PAX LP, and various other parties agreed that Shiny Times would replace Spirit Charter as the borrower under the Amended and Restated 2008 Facility Agreement. The parties to the September 2009 Deed also agreed that the outstanding amount under the Amended and Restated 2008 Facility Agreement, including accrued and unpaid interest, was then $45,357,534.25 as of September 12, 2009 (the "Amended 2008 Loan Facility").

---

[1] In 2015, Kwok and Golden Spring were sued for violations of the Fair Labor Standards Act, and in that lawsuit, Kwok (through counsel) acknowledged that he was properly served with a summons and complaint at The Sherry-Netherland Hotel. *Ahn v. Golden Spring (New York) Ltd. et al.*, No. 1:15-cv-09697 (S.D.N.Y. Dec. 11, 2015). In 2016, Kwok and Genever filed a lawsuit (through counsel) against The Sherry-Netherland Hotel and others relating to a leak in his apartment at the hotel. *Genever Holdings, LLC and Miles Kwok v. The Sherry-Netherland, Inc., et al.*, No. 1:16-cv-06246-GBD (S.D.N.Y. Aug. 5, 2016).

3

20.     The September 2009 Deed required Kwok to execute a personal guarantee in favor of

PAX LP to secure Shiny Times' due and punctual performance and repayment of the Amended 2008

Loan Facility.  Kwok executed his personal guarantee on November 18, 2009.

21.     PAX LP, Kwok, and Shiny Times thereafter agreed to supersede the foregoing

agreements with two contracts executed on March 16, 2011—the 2011 Facility Letter (attached as

Exhibit A) and the Personal Guarantee (attached as Exhibit B).

22.     In the 2011 Facility Letter, the parties agreed that Shiny Times owed PAX LP

$46,426,489 and would repay that amount (plus 15% annual interest from December 31, 2010) by June

30, 2012.

23.     The parties further agreed in the 2011 Facility Letter that any failure by Shiny Times to

pay any amount owed to PAX LP under the 2011 Facility Letter would constitute an Event of Default,

and that in such event PAX LP could (i) declare the entire loan, accrued and unpaid interest, and any

other money payable to be immediately due and payable without further demand or notice or other

legal formality of any kind, and/or (ii) declare the 2011 Facility Letter terminated.

24.     Finally, like the prior agreements between the parties, the 2011 Facility Letter was

expressly conditioned on Kwok's execution of the Personal Guarantee to fully backstop Shiny Times'

payment obligations to PAX LP:

> The Lender [PAX LP] and the Borrower [Shiny Times] agree to enter into this
> Agreement . . . on the condition that a new personal guarantee of Mr. Kwok (the
> "Personal Guarantee"), in favour of the Lender is delivered to secure the due and
> punctual performance of the Borrower to fully repay the [2011 Facility Letter]
> plus all accrued and unpaid interest in accordance with this Agreement.

25.     Kwok signed the 2011 Facility Letter as a Director of Shiny Times and also, on the

same day, signed the Personal Guarantee, under which Kwok agreed to "irrevocably and

unconditionally" guarantee Shiny Times' payment of all amounts owed under the 2011 Facility Letter.

In particular, Kwok:

4

(a)     guaranteed to PAX LP the "due and punctual payment" of Shiny Times' obligations under the 2011 Facility Letter;

(b)     agreed "that promptly on [PAX LP's] demand [Kwok] will pay to [PAX LP] all [such amounts] that are due but unpaid";

(c)     agreed to "indemnify and hold harmless [PAX LP] on demand from and against all losses incurred by [PAX LP] as a result of any obligation of Shiny Times under the 2011 Facility Letter being or becoming void, voidable, unenforceable or ineffective as against Shiny Times for any reason whatsoever";

(d)     agreed that PAX LP's demand for payment would constitute *prima facie* evidence that such payment was due and owing;

(e)     agreed that PAX LP could seek repayment from either Shiny Times or Kwok; and

(f)     agreed to indemnify PAX LP from "any and all costs, claims losses, [and] expenses (including legal fees)" incurred as a result of exercising or enforcing the Personal Guarantee.

26.     Furthermore, Kwok agreed to waive several defenses, including those based on the winding up or dissolution of Shiny Times, or PAX LP's inability to recover against Shiny Times "for any reason." Kwok also agreed to a catchall waiver of any conceivable defenses based on "any other act, event or omission which might operate to discharge, impair or otherwise affect the Guarantor or any of the Obligations or any of the rights, powers, and remedies conferred upon [PAX LP] by this Guarantee or by law."

27.     In other words, Kwok signed an unambiguous and ironclad guarantee that he would satisfy Shiny Times' debt to PAX LP under any circumstances.

### The Extensions and Shiny Times' Ultimate Failure to Repay PAX LP

28.     Shiny Times did not repay any portion of the loan principal or accrued interest before the June 30, 2012 repayment date set forth in the 2011 Facility Letter, and the parties subsequently entered into a series of extensions, each labeled a "Deed of Settlement."

5

FILED: NEW YORK COUNTY CLERK 07/28/2020 04:02 PM
NYSCEF DOC. NO. 460

INDEX NO. 652077/2017
RECEIVED NYSCEF: 07/28/2020

20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24
Pg 8 of 57

29.    PAX LP, Shiny Times, and Kwok entered into the first Deed of Settlement (the "Original Deed of Settlement") along with Beijing Pangu Investment Inc. ("Beijing Pangu"), another company within the Kwok empire, on April 19, 2013.

30.    The Original Deed of Settlement provided that the total outstanding amount due under the 2011 Facility Letter plus all accrued and unpaid interest was $52 million as of the date of the Original Deed of Settlement, and that amount would be no longer due and owing upon the satisfaction of the following conditions:

(a)    If PAX LP completed the purchase of three apartments from Beijing Pangu in a series of three separate transactions for approximately $5 million each, for a total of approximately $15 million; and

(b)    If Shiny Times completed three installment payments to PAX LP of approximately $5 million each—one installment payment to be made after each separate apartment purchase—for a total of approximately $15 million.

31.    Before PAX LP could purchase any of the three apartments from Beijing Pangu, however, Beijing Pangu was required under the Original Deed of Settlement to satisfy certain conditions precedent relating to title, taxes, and other common aspects of real estate transactions. If any of these conditions were not met for any of the three apartments by July 31, 2013, the Original Deed of Settlement expressly provided that it would be terminated in its entirety, and the 2011 Facility Letter would revert into full effect.

32.    Beijing Pangu failed to satisfy these conditions precedent by July 31, 2013, PAX LP therefore did not complete its purchase of any of the apartments, and Shiny Times did not make any of the three installment payments it owed to PAX LP under the Original Deed of Settlement.

33.    Four supplemental deeds of settlement—on December 3, 2013, May 15, 2014, July 11, 2014, and February 10, 2015—extended the dates in the Original Deed of Settlement, including the repayment date and the date for Beijing Pangu to satisfy the conditions precedent.

6

34.    Each of the supplemental deeds had the same terms as the Original Deed of Settlement. And the result was the same each time: Beijing Pangu never met the conditions it was required to satisfy, PAX LP therefore was not required to, and did not, complete its purchase of any of the apartments, and Shiny Times never made any of the three installment payments it owed to PAX LP under the 2011 Facility Letter.

35.    Finally, on March 31, 2015, Shiny Times and PAX LP, together with Worldwide Opportunity Holdings Limited and Empire Growth Holdings Limited, entered into an Option Agreement (the "Option Agreement") that provided, among other things, for the repayment via share sale transaction of amounts owed by Shiny Times to PAX LP.

36.    Pursuant to its terms, the Option Agreement was to terminate if certain conditions relating to the transfer of property (as stated in the Option Agreement) were not satisfied. None of these conditions were satisfied, and the Option Agreement was terminated without negating Shiny Times' obligation to pay PAX LP.

37.    Thus, the 2011 Facility Letter reverted to being in full force and effect, Kwok's obligations under the Personal Guarantee are fully enforceable, and Kwok is independently liable under the Personal Guarantee for the full amount of Shiny Times' debt owed to PAX LP under the 2011 Facility Letter.

**PAX LP Seeks to Enforce Its Contractual Rights and Collect Amounts Owed**

38.    On October 16, 2015, after the Deeds of Settlement and Option Agreement were terminated and the 2011 Facility Letter reverted to being in full force and effect, PAX LP sent a written notice of demand (the "Notice of Demand") to Kwok's address in Hong Kong, as specified under the terms of the Personal Guarantee.

7

39.    The Notice of Demand informed Kwok that "Shiny Times ha[d] failed to repay any part of the sum due" under the 2011 Facility Letter and demanded immediate payment of $71,818,633.44. The Notice of Demand also informed Kwok that legal proceedings might be commenced against him if he did not make immediate payment, and reserved PAX LP's contractual rights under both the 2011 Facility Letter and the Personal Guarantee.

40.    Kwok never responded to the Notice of Demand.

41.    On February 19, 2016, PAX LP sent a letter to Shiny Times demanding payment of $82,219,404.08 due and owing under the 2011 Facility Letter (the "Shiny Times Demand Letter"), which represented the principal plus contractual interest of 15% per annum calculated up to the date of the Shiny Times Demand Letter.

42.    Shiny Times never responded to the Shiny Times Demand Letter.

43.    When Shiny Times did not respond, PAX LP submitted an application to court in the British Virgin Islands ("BVI") on February 29, 2016 seeking the appointment of joint liquidators to put Shiny Times, which is a BVI corporation, into liquidation.  The application alleged that (i) Shiny Times had failed to pay the sum then-owing of $82,410,197.87, (ii) Shiny Times was unable to pay its debts, and (iii) Shiny Times was insolvent and should be liquidated.

44.    Although Shiny Times was in fact placed into liquidation as a result of the BVI proceeding, PAX LP was unable to collect any of the monies owed to it under the 2011 Facility Letter.

45.    To date, Kwok has not repaid any of the money due and owing to PAX LP under the Personal Guarantee.  The sum due and owing—which includes the outstanding principal plus accrued and unpaid interest—is currently approximately $88 million.

46.    As a result of Kwok's failure to repay any of the money due and owing to PAX LP, Plaintiff has incurred "costs, claims losses, [and] expenses (including legal fees)" in connection with

8

FILED: NEW YORK COUNTY CLERK 07/28/2020 04:09 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 460
RECEIVED NYSCEF: 07/28/2020

20-12411-jlg   Doc 14-24   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 24
Pg 11 of 57

enforcing the Personal Guarantee.  Kwok is obligated to indemnify those amounts under the express terms of the Personal Guarantee (*see* Paragraph 25(f)).

## COUNT I – BREACH OF CONTRACT
### Against Defendant Kwok

47.     Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 46 as though fully set forth herein.

48.     The Personal Guarantee obligates Kwok to repay PAX LP for the loan facility (as amended) that PAX LP made available to Spirit Charter, along with unpaid interest.  The current amount due and owing is approximately $88 million.

49.     Plaintiff performed its own obligations under the Personal Guarantee (and other related agreements).

50.     Kwok has not repaid any of the money due and owing to PAX LP under the Personal Guarantee.

51.     As a direct result of Kwok's breach of his payment obligations under the Personal Guarantee, Plaintiff continues to suffer the loss of approximately $88 million dollars, an amount that continues to incur interest.

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

(a)     in the amount of $46,426,489 under the Personal Guarantee;

(b)     in the amount of $41,096,982.46 in interest;

(c)     the reasonable attorneys' fees, costs, and expenses PAX LP has incurred, and will continue to incur, in connection with its enforcement of the Personal Guarantee against Kwok under the Personal Guarantee's indemnification clause; and

(d)     such other and further relief to which PAX LP shows itself justly entitled.

FILED: NEW YORK COUNTY CLERK 07/28/2020 04:09 PM

NYSCEF DOC. NO. 260

INDEX NO. 652077/2017

RECEIVED NYSCEF: 07/28/2020

20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24
Pg 12 of 57

DATED:    New York, New York
          April 18, 2017

Respectfully submitted,

THE SEIDEN GROUP

By:_____

Robert W. Seiden (rseiden@seidenlegal.com)
1120 Avenue of the Americas
New York, NY 10036
(212) 626-6708

-and-

O'MELVENY & MYERS LLP
Stuart Sarnoff (ssarnoff@omm.com)
Edward Moss (emoss@omm.com)
7 Times Square
New York, NY 10036
(212) 326-2000

*Attorneys for Plaintiff*

10

FILED: NEW YORK COUNTY CLERK 07/25/2020 07:49 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 466
RECEIVED NYSCEF: 07/25/2020
20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24
Pg 13 of 57

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

PACIFIC ALLIANCE ASIA OPPORTUNITY
FUND L.P.,

                              *Plaintiff*,

        -against-

KWOK HO WAN *a/k/a* KWOK HO *a/k/a* GWO
WEN GUI *a/k/a* GUO WENGUI *a/k/a* GUO
WEN-GUI *a/k/a* WAN GUE HAOYUN *a/k/a*
MILES KWOK *a/k/a* HAOYUN GUO,

                              *Defendant*.

---

Index No. 652077/2017

Hon. Barry R. Ostrager

**DEFENDANT'S ANSWER WITH
<u>AFFIRMATIVE DEFENSES</u>**

Defendant, sued herein as Kwok Ho Wan a/k/a Kwok Ho a/k/a Gwo Wen Gui

a/k/a Guo Wengui a/k/a Guo Wen-Gui a/k/a Wan Gue Haoyun a/k/a Miles Kwok a/k/a Haoyun

Guo ("Kwok" or "Defendant"), as and for his answer to the complaint filed on April 18, 2017

(Doc. No. 2) (the "Complaint") by plaintiff Pacific Alliance Asia Opportunity Fund L.P. ("PAX"

or "Plaintiff"), states as follows:

## <u>NATURE OF THE ACTION</u>

1.        Denies the allegations in Paragraph 1 of the Complaint except admits that

there are documents at issue, and refers to those documents for their true, correct, and complete

contents.

2.        Denies the allegations in Paragraph 2 of the Complaint except admits that

there are documents at issue, and refers to those documents for their true, correct, and complete

contents.

3.        Denies the allegations in Paragraph 3 of the Complaint except admits that

there are documents at issue, and refers to those documents for their true, correct, and complete

contents.

FILED: NEW YORK COUNTY CLERK 07/25/2020 07:49 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 466
RECEIVED NYSCEF: 07/25/2020

20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24
Pg 14 of 57

4.     Denies the allegations in Paragraph 4 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

5.     Denies the allegations in Paragraph 5 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

6.     Denies the allegations in Paragraph 6 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

7.     Denies the allegations in Paragraph 7 of the Complaint.

8.     Denies the allegations in Paragraph 8 of the Complaint except admits that Defendant maintains a residence in New York.

## JURISDICTION AND VENUE

9.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 of the Complaint except admits that Defendant maintains a residence in New York County.

10.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint except admits that Defendant maintains a residence in New York County.

## THE PARTIES

11.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint.

12.     Denies the allegations in Paragraph 12 of the Complaint except admits that Defendant is a Chinese national and maintains a residence in New York County.

13.     Denies the allegations in Paragraph 13 of the Complaint except admits that Defendant maintains a residence in New York County.

14.     Denies the allegations in Paragraph 14 of the Complaint.

15.     Denies the allegations in Paragraph 15 of the Complaint except admits that Defendant has been involved in litigation in New York.

## STATEMENT OF FACTS

### *The Shiny Times Loan and Kwok's Personal Guarantee to Repay PAX LP*

16.     Denies the allegations in Paragraph 16 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

17.     Denies the allegations in Paragraph 17 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

18.     Denies the allegations in Paragraph 18 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

19.     Denies the allegations in Paragraph 19 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

FILED: NEW YORK COUNTY CLERK 07/25/2028 07:49 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 466
RECEIVED NYSCEF: 07/25/2028
20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24
Pg 16 of 57

20.     Denies the allegations in Paragraph 20 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

21.     Denies the allegations in Paragraph 21 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

22.     Denies the allegations in Paragraph 22 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

23.     Denies the allegations in Paragraph 23 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

24.     Denies the allegations in Paragraph 24 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

25.     Denies the allegations in Paragraph 25 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

26.     Denies the allegations in Paragraph 26 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

FILED: NEW YORK COUNTY CLERK 07/25/2020 07:49 PM
NYSCEF DOC. NO. 166

INDEX NO. 652077/2017
RECEIVED NYSCEF: 07/25/2020

20-12411-jlg   Doc 14-24   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 24
Pg 17 of 57

27.     Denies the allegations in Paragraph 27 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

### *The Extensions and Shiny Times' Ultimate Failure to Repay PAX LP*

28.     Denies the allegations in Paragraph 28 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

29.     Denies the allegations in Paragraph 29 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

30.     Denies the allegations in Paragraph 30 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

31.     Denies the allegations in Paragraph 31 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

32.     Denies the allegations in Paragraph 32 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

33.     Denies the allegations in Paragraph 33 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

34.     Denies the allegations in Paragraph 34 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

35.     Denies the allegations in Paragraph 35 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

36.     Denies the allegations in Paragraph 36 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

37.     Denies the allegations in Paragraph 37 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

### *PAX LP Seeks to Enforce Its Contractual Rights and Collect Amounts Owed*

38.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

39.     Denies the allegations in Paragraph 39 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

40.     Denies the allegations in Paragraph 40 of the Complaint.

41.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

FILED: NEW YORK COUNTY CLERK 07/25/2020 07:49 PM
NYSCEF DOC. NO. 166
INDEX NO. 652077/2017
RECEIVED NYSCEF: 07/25/2020

20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24
Pg 19 of 57

42.     Denies the allegations in Paragraph 42 of the Complaint.

43.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 of the Complaint, and refers to the application at issue for its true, correct, and complete contents.

44.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 of the Complaint.

45.     Denies the allegations in Paragraph 45 of the Complaint.

46.     Denies the allegations in Paragraph 46 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

### AS FOR A RESPONSE TO THE FIRST CAUSE OF ACTION
#### (Breach of Contract)

47.     Defendant repeats and realleges his responses to the allegations in Paragraphs 1 through 46 of the Complaint as if set forth herein at length.

48.     Denies the allegations in Paragraph 48 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

49.     Denies the allegations in Paragraph 49 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

50.     Denies the allegations in Paragraph 50 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

FILED: NEW YORK COUNTY CLERK 07/25/2020 07:49 PM
NYSCEF DOC. NO. 166
INDEX NO. 652077/2017
RECEIVED NYSCEF: 07/25/2020

20-12411-jlg   Doc 14-24   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 24
Pg 20 of 57

51.     Denies the allegations in Paragraph 51 of the Complaint except admits that there are documents at issue, and refers to those documents for their true, correct, and complete contents.

## AFFIRMATIVE DEFENSES

In further response to Plaintiff's claims, Defendant pleads the following affirmative defenses:

### First Affirmative Defense

1.     Plaintiff's claim fails to state a cause of action upon which relief may be granted.

### Second Affirmative Defense

2.     Plaintiff's claim is barred by the doctrines of equitable and/or promissory estoppel.

### Third Affirmative Defense

3.     Plaintiff's claim is barred by the consent of Plaintiff, whether express or implied, to Defendant's actions.

### Fourth Affirmative Defense

4.     Plaintiff's claim is barred, in whole or in part, because Plaintiff's damages, if any, were not caused by Defendant.

### Fifth Affirmative Defense

5.     Plaintiff's claim is barred, in whole or in part, or diminished by the doctrine of unclean hands.

FILED: NEW YORK COUNTY CLERK 07/25/2020 07:49 PM          INDEX NO. 652077/2017
NYSCEF DOC. NO. 466     20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24    RECEIVED NYSCEF: 07/25/2020

Pg 21 of 57

### Sixth Affirmative Defense

6.      Plaintiff's claim is barred, in whole or in part, by documentary evidence.

### Seventh Affirmative Defense

7.      Plaintiff's claim is barred, in whole or in part, by its assent and/or

acquiescence.

### Eighth Affirmative Defense

8.      Plaintiff's claim is barred, in whole or in part, by the doctrine of

substantial performance.

### Ninth Affirmative Defense

9.      Plaintiff's claim is barred, in whole or in part, by Plaintiff's frustration of

purpose of the alleged contracts.

### Tenth Affirmative Defense

10.      Plaintiff's claim is barred, in whole or in part, by Plaintiff's tortious

interference in the performance of the alleged contracts.

### Eleventh Affirmative Defense

11.      Plaintiff's claim is barred, in whole or in part, because Plaintiff received

the benefits intended by the alleged contracts.

### Twelfth Affirmative Defense

12.      Plaintiff's claim is barred, in whole or in part, by payment under the

alleged contracts.

### Thirteenth Affirmative Defense

13.      Defendant reserves his right to assert additional affirmative defenses as

may be warranted by future discovery and/or investigation in the present action.

FILED: NEW YORK COUNTY CLERK 04/25/2020 07:49 PM
NYSCEF DOC. NO. 466
INDEX NO. 652077/2017
RECEIVED NYSCEF: 04/25/2020
20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24
Pg 22 of 57

WHEREFORE, Defendant denies that Plaintiff is entitled to any relief whatsoever and prays for judgment that Plaintiff takes nothing and that the Complaint be dismissed with prejudice, with costs and disbursement to Defendant.

Dated: New York, New York
April 25, 2018

HODGSON RUSS LLP

By: _____
Mark A. Harmon
Jillian M. Searles
605 Third Avenue, Suite 2300
New York, New York 10036
(212) 751-4300
mharmon@hodgsonruss.com
jsearles@hodgsonruss.com

*Attorneys for Defendant*

- 10 -

FILED: NEW YORK COUNTY CLERK 04/25/2020 07:49 PM
NYSCEF DOC. NO. 166
INDEX NO. 652077/2017
RECEIVED NYSCEF: 04/25/2020
20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24
Pg 23 of 57

## AFFIRMATION OF SERVICE

JILLIAN M. SEARLES, under the penalties of perjury under the laws of New York, and pursuant to CPLR 2106(a), affirms that I am a member of Hodgson Russ LLP, attorneys for the defendant, sued herein as Kwok Ho Wan a/k/a Kwok Ho a/k/a Gwo Wen Gui a/k/a Guo Wengui a/k/a Guo Wen-Gui a/k/a Wan Gue Haoyun a/k/a Miles Kwok a/k/a Haoyun Guo ("Defendant"), and on April 25, 2018, a true and correct copy of the foregoing was served by filing it with the New York State Court's Electronic Filing System ("NYSCEF") upon all counsel of record. A courtesy copy also was served via First Class Mail upon counsel for plaintiff at the address below:

> Stuart Sarnoff, Esq.
> Edward Moss, Esq.
> O'MELVENY & MYERS LLP
> Times Square Tower
> 7 Times Square
> New York, NY 10036
>
> *Attorneys for Plaintiff*
> *Pacific Alliance Asia Opportunity Fund L.P.*

JILLIAN M. SEARLES

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

PACIFIC ALLIANCE ASIA OPPORTUNITY
FUND L.P.,

          Plaintiff,

          v.

KWOK HO WAN, *a/k/a* KWOK HO, *a/k/a* GWO
WEN GUI, *a/k/a* GUO WENGUI, *a/k/a* GUO
WEN-GUI, *a/k/a* WAN GUE HAOYUN, *a/k/a*
MILES KWOK, *a/k/a* HAOYUN GUO, GENEVER
HOLDINGS LLC, *and* GENEVER HOLDINGS
CORPORATION,

          Defendants.

---

Index No. 652077/2017

Hon. Barry R. Ostrager

Part 61

**FIRST AMENDED COMPLAINT**

FILED: NEW YORK COUNTY CLERK 07/28/2020 10:59 AM
NYSCEF DOC. NO. 469
INDEX NO. 652077/2017
RECEIVED NYSCEF: 07/28/2020

20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24
Pg 25 of 57

## NATURE OF THE ACTION

1.      This is a straightforward breach of contract case.  Kwok Ho Wan, a/k/a Kwok Ho, a/k/a Gwo Wen Gui, a/k/a Guo Wengui, a/k/a Guo Wen-Gui, a/k/a Wan Gue Haoyun, a/k/a Miles Kwok, a/k/a Haoyun Guo ("Kwok"), a reported billionaire, and his controlled entities borrowed millions of dollars from Plaintiff Pacific Alliance Asia Opportunity Fund L.P. ("PAX LP") but have failed to pay the amount owed to PAX LP under binding written agreements.

2.      In 2008, PAX LP entered into a written agreement with Spirit Charter Investment Limited ("Spirit Charter"), one of Kwok's business entities, under which PAX LP made available to Spirit Charter a loan facility in the principal amount of $30 million.  This loan facility was conditioned on Kwok's execution of a personal guarantee of Spirit Charter's repayment obligations.  Kwok executed that guarantee, and PAX LP lent $30 million to Spirit Charter on February 4, 2008.

3.      In 2009, another of Kwok's entities, Shiny Times Holdings Limited ("Shiny Times"), assumed the debt that Spirit Charter owed to PAX LP, which the parties agreed at the time totaled $45,357,534.25.  Kwok again executed a personal guarantee with respect to that debt.

4.      Then in 2011, PAX LP and Shiny Times entered into a written agreement (the "2011 Facility Letter") that expressly superseded the prior agreements between the parties.  In the 2011 Facility Letter, the parties agreed that Shiny Times owed PAX LP $46,426,489 and would repay that amount (plus 15% annual interest from December 31, 2010) by June 30, 2012.

5.      That same day, Kwok executed another personal guarantee (that similarly expressly superseded Kwok's prior personal guarantee) pursuant to which Kwok guaranteed payment of the amount owed to PAX LP by Shiny Times under the 2011 Facility Letter (the "2011 Personal Guarantee").

6.      After both Shiny Times and Kwok failed to repay PAX LP, Kwok, Shiny Times, and Beijing Pangu (another Kwok-controlled entity) negotiated a potential settlement with PAX LP, under

FILED: NEW YORK COUNTY CLERK 07/28/2020 10:59 AM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 369
RECEIVED NYSCEF: 07/28/2020

20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24
Pg 26 of 57

which PAX LP, to settle the debt, was to take ownership of three apartments located in Beijing that were owned by Beijing Pangu. But Kwok and Beijing Pangu failed to meet the specific conditions precedent for the settlement (including, among other ways, failing to transfer title for the apartments to PAX LP), even after PAX LP, through four separate extensions, provided Kwok and Beijing Pangu an additional 23 months to satisfy these conditions.

7.      As the conditions precedent were not satisfied when the last deadline expired at the end of June 2015, the 2011 Facility Letter and the 2011 Personal Guarantee by their express terms reverted to being in full force and effect, and PAX LP then began its pursuit of repayment of the mounting, contractual debt from both Shiny Times and Kwok. Shiny Times, however, had no assets when PAX LP had it liquidated in the British Virgin Islands. And Kwok to this date has refused to repay a penny of his debt. In fact, Kwok has recently denied the very existence of the debt and has stated repeatedly that he should not have to repay it, including on his Twitter account and in a deposition in this very lawsuit.

8.      Two of Kwok's shell companies—Genever Holdings LLC ("Genever NY") and Genever Holdings Corporation ("Genever BVI" and together with Genever NY, the "Genever Defendants")—are liable for his debt to PAX LP because each is Kwok's alter ego. Kwok is the sole shareholder and director of Genever BVI, which in turn is the sole shareholder of Genever NY, through which Kwok purchased a luxury apartment at The Sherry-Netherland Hotel, Inc. (the "Sherry-Netherland" and the apartment the "Residence") in New York in early March 2015 for $67.5 million in cash. Kwok dominates and controls both Genever NY and Genever BVI, neither of which has offices, employees, or any separate existence apart from being the shells through which Kwok purchased the Residence.

9.      Kwok purchased the Residence for almost the precise amount of money he owed at the time to PAX LP under the Personal Guarantee.  He formed the Genever Defendants at a time when he knew his debt would be due and owing to PAX LP, and almost immediately thereafter, he purchased the Residence through the Genever Defendants in an attempt to shield that asset from PAX LP.  Kwok has made false statements to both the Sherry-Netherland and this Court about the Genever Defendants in an attempt to further that debt-avoidance effort.  This and other Kwok conduct with respect to the Genever Defendants, detailed below, demonstrates that Kwok has abused the privilege of the corporate form in order to perpetrate a fraud, wrong, or injustice against PAX LP.

10.     PAX LP has taken all necessary and appropriate steps in accordance with its agreements with Shiny Times and Kwok to recover the monies it is owed—now totaling more than $100 million including contractual interest.  To date, however, Shiny Times and Kwok have failed to satisfy even one dollar of their contractual repayment obligations on the outstanding debt.  And as a result of this failure to repay the debt, PAX LP has also incurred "costs, claims losses, [and] expenses (including legal fees)" in connection with enforcing the 2011 Personal Guarantee, which Kwok is obligated to indemnify under the express terms of the 2011 Personal Guarantee.  (*See* Exhibit A § 5.3.)

## JURISDICTION AND VENUE

11.     This Court has personal jurisdiction over Kwok pursuant to New York's general personal jurisdiction statute, C.P.L.R § 301, because he is engaged in a continuous and systematic course of "doing business" in New York, is domiciled in the state, and owns the Residence, located in New York County.

12.     This Court has personal jurisdiction over Genever NY pursuant to C.P.L.R § 301, because it is incorporated in New York and its sole business purpose is to own shares in Kwok's Residence, located in New York County.

13.     This Court has personal jurisdiction over Genever BVI because, as alleged herein, by virtue of Kwok's domination and control over it to perpetrate a fraud against PAX LP, Genever BVI is Kwok's alter ego. Moreover, Genever BVI has engaged in relevant conduct in, and availed itself of the laws of, New York by becoming the sole shareholder of a New York LLC (Genever NY) and being the indirect owner of the Residence. Indeed, Genever BVI's sole business purpose is to own (through its 100% ownership of Genever NY) the Residence. Genever BVI is represented by Kwok's counsel in this litigation (in which that counsel accepted service of and responded to a third-party subpoena to Genever BVI). Kwok's counsel also made representations to this Court in this case regarding certain pledges of Genever BVI's assets.

14.     Venue is proper in this Court under C.P.L.R § 503(a) because Kwok's residence is in New York County and Genever NY's place of incorporation is New York County.

## PARTIES

15.     Plaintiff PAX LP is an investment fund organized as an exempted limited partnership under the laws of the Cayman Islands.

16.     Defendant Kwok is a Chinese national who is domiciled in New York and engages in a continuous and systematic course of "doing business" in New York. Kwok is the sole shareholder and director of Genever BVI. Kwok resides in the Residence.

17.     Defendant Genever NY is a limited liability company established under the laws of New York. Genever NY's sole business purpose is to own shares in the Residence, which is apartment number 1801 in the Sherry-Netherland. Genever NY purchased the Residence in 2015 for $67.5 million.

18.     Defendant Genever BVI is a BVI business company established under the laws of the British Virgin Islands. Genever BVI's sole business purpose is to own (through its 100% ownership of Genever NY) the Residence.

4

## STATEMENT OF FACTS

### *The Loan Facility and Kwok's Personal Guarantees to Repay PAX LP*

19.     PAX LP and Kwok have had business dealings since approximately February 4, 2008,

when PAX LP entered into a written agreement (the "2008 Facility Agreement") with Spirit Charter

(attached as Exhibit B), one of Kwok's business entities, under which PAX LP made available to Spirit

Charter a loan facility in the principal amount of $30 million (*see* Exhibit B § 3).  Kwok executed the

2008 Facility Agreement on behalf of Spirit Charter.  The 2008 Facility Agreement specified that

"[PAX LP] shall not be obliged to make the Advance to the Borrower unless it shall first have received

. . . a duly executed Kwok[] Guarantee."  (Exhibit B § 4(d).)  Having received Kwok's guarantee, PAX

LP lent the full $30 million available under the loan facility to Spirit Charter on February 4, 2008.

20.     On March 12, 2008, PAX LP and Spirit Charter amended and restated the 2008 Facility

Agreement ("Amended and Restated 2008 Facility Agreement").  (*See* Exhibit C.)  Kwok executed the

Amended and Restated 2008 Facility Agreement on behalf of Spirit Charter, which acknowledges and

confirms that Spirit Charter "received the US$30,000,000 principal amount of the Original Facility on

4 February 2008."  (Exhibit C § 2.)

21.     By a deed dated September 17, 2009 (the "September 2009 Deed"), Shiny Times, Spirit

Charter, PAX LP, and various other parties agreed that Shiny Times would replace Spirit Charter as

the borrower under the Amended and Restated 2008 Facility Agreement.  (*See* Exhibit D.)  Kwok

executed the September 2009 Deed on behalf of Shiny Times, Spirit Charter, and himself.  The parties

to the September 2009 Deed also agreed that the outstanding amount under the Amended and Restated

2008 Facility Agreement, including accrued and unpaid interest, was $45,357,534.25 as of September

12, 2009.  (*See* Exhibit D at 4.)

FILED: NEW YORK COUNTY CLERK 07/28/2020 10:59 AM
NYSCEF DOC. NO. 369
INDEX NO. 652077/2017
RECEIVED NYSCEF: 07/28/2020
20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24
Pg 30 of 57

22.    The September 2009 Deed required Kwok to execute a new personal guarantee in favor of PAX LP to secure Shiny Times's repayment of the approximately $45 million then owed under the Amended and Restated 2008 Facility Agreement.  (*See* Exhibit D § 5.10.)  Kwok executed his personal guarantee on November 18, 2009.  (*See* Exhibit E.)

23.    In 2011, PAX LP, Kwok, and Shiny Times agreed to supersede the foregoing agreements with two contracts executed on March 16, 2011—the 2011 Facility Letter (attached as Exhibit F) and the 2011 Personal Guarantee (attached as Exhibit A).

24.    In the 2011 Facility Letter, the parties agreed that Shiny Times owed PAX LP $46,426,489 as of that date and would repay that amount, with 15% annual interest running from December 31, 2010, by June 30, 2012.  (*See* Exhibit F §§ 3, 5.)

25.    The parties further agreed in the 2011 Facility Letter that any failure by Shiny Times to pay any amount owed to PAX LP under the 2011 Facility Letter would constitute an Event of Default, and that in such event PAX LP could (i) declare the entire loan, accrued and unpaid interest, and any other money payable to be immediately due and payable without further demand or notice or other legal formality of any kind, and/or (ii) declare the 2011 Facility Letter terminated.  (*See* Exhibit F § 13.)

26.    Like the prior agreements between the parties, the 2011 Facility Letter was also expressly conditioned on Kwok's execution of the 2011 Personal Guarantee to fully backstop Shiny Times's payment obligations to PAX LP:

> The Lender [PAX LP] and the Borrower [Shiny Times] agree to enter into this Agreement . . . on the condition that a new personal guarantee of Mr. Kwok (the "Personal Guarantee"), in favour of the Lender is delivered to secure the due and punctual performance of the Borrower to fully repay the [2011 Facility Letter] plus all accrued and unpaid interest in accordance with this Agreement.

(Exhibit F at 1.)

6

27.     Kwok executed the 2011 Facility Letter on behalf of Shiny Times and on the same day

signed the 2011 Personal Guarantee, under which he agreed to "irrevocably and unconditionally"

guarantee Shiny Times's payment of all amounts owed under the 2011 Facility Letter.  In particular,

Kwok:

> (a)     guaranteed to PAX LP the "due and punctual payment" of Shiny Times's
>         obligations under the 2011 Facility Letter;
>
> (b)     agreed "that promptly on [PAX LP's] demand [Kwok] will pay to [PAX
>         LP] all [such amounts] that are due but unpaid";
>
> (c)     agreed to "indemnify and hold harmless [PAX LP] on demand from and
>         against all losses incurred by [PAX LP] as a result of any obligation of
>         Shiny Times under the 2011 Facility Letter being or becoming void,
>         voidable, unenforceable or ineffective as against Shiny Times for any
>         reason whatsoever";
>
> (d)     agreed that PAX LP's demand for payment would constitute *prima facie*
>         evidence that such payment was due and owing;
>
> (e)     agreed that PAX LP could seek repayment from either Shiny Times or
>         Kwok; and
>
> (f)     agreed to indemnify PAX LP from "any and all costs, claims losses, [and]
>         expenses (including legal fees)" incurred as a result of exercising or
>         enforcing the Personal Guarantee.

(Exhibit A §§ 2.1–2.2, 3.3, and 5.3.)

28.     Kwok also agreed in the 2011 Personal Guarantee to waive defenses, including those

based on the winding up or dissolution of Shiny Times or PAX LP's inability to recover against Shiny

Times "for any reason."  (Exhibit A § 3.4.)  Kwok further agreed to a catchall waiver of defenses based

on "any other act, event or omission which might operate to discharge, impair or otherwise affect the

Guarantor or any of the Obligations or any of the rights, powers, and remedies conferred upon [PAX

LP] by this Guarantee or by law."  (Exhibit A § 3.4(g).)

29.     In short, Kwok personally executed an unambiguous and ironclad guarantee that he

would satisfy Shiny Times's debt to PAX LP.

### The Settlement Attempts, Extensions, and Shiny Times's
### Ultimate Failure to Repay PAX LP

30.    Shiny Times did not repay any portion of the loan principal or accrued interest before the June 30, 2012 repayment date set forth in the 2011 Facility Letter, and the parties subsequently structured an attempt to resolve that debt through a settlement agreement—and then several extensions thereof—each of which was styled a "Deed of Settlement."

31.    PAX LP, Shiny Times, and Kwok entered into the Original Deed of Settlement (attached as Exhibit G) along with Beijing Pangu, another Kwok-owned company, on April 19, 2013. Kwok executed the Original Deed of Settlement on behalf of Shiny Times and himself.

32.    The Original Deed of Settlement provided that (i) the total outstanding amount due under the 2011 Facility Letter plus all accrued and unpaid interest was $52 million as of the date of the Original Deed of Settlement, and (ii) that amount would no longer be due and owing upon the occurrence of the following events:

(a)    If PAX LP completed the purchase of three apartments from Beijing Pangu in a series of three separate transactions for approximately $5 million each, for a total of approximately $15 million; and

(b)    If Shiny Times completed three installment payments to PAX LP of approximately $5 million each—one installment payment to be made after each separate apartment purchase—for a total of approximately $15 million.

(*See* Exhibit G §§ 2–3.1.)

33.    Before PAX LP could complete the purchase the three apartments from Beijing Pangu, however, Beijing Pangu was required under the Original Deed of Settlement to satisfy certain express conditions precedent relating to title, taxes, satisfaction of mortgages, and other common aspects of Chinese real estate transactions.  (*See* Exhibit G § 3.2.)  If any of these conditions were not met for any of the three apartments by July 31, 2013, the Original Deed of Settlement provided that "the Facility Letter shall revert and be in full force and effect immediately after such failure and Shiny Times shall

8

be obliged to settle any outstanding Total Outstanding Amount and any interest accrued thereon in accordance with the terms of the [2011] Facility Letter." (Exhibit G § 4.2.)

34.     If the 2011 Facility Letter were to revert into full force and effect, Kwok's obligations would also be in full force and effect under the terms of the 2011 Personal Guarantee: "The obligations of [Kwok] . . . shall continue in full force and effect until the unconditional and irrevocable payment and discharge in full of" Shiny Times's payment and performance obligations under the 2011 Facility Letter. (Exhibit A § 3.1.)

35.     Kwok and Beijing Pangu failed to satisfy the conditions precedent by July 31, 2013.

36.     Four supplemental deeds of settlement—on December 3, 2013; May 15, 2014; July 11, 2014; and February 10, 2015 (attached as Exhibits H–K)—extended the dates in the Original Deed of Settlement, including the repayment date and the date for Kwok and Beijing Pangu to satisfy the conditions precedent.

37.     Each of the supplemental deeds had the same terms as the Original Deed of Settlement. And the result was the same each time: Kwok and Beijing Pangu never satisfied several of the required, express conditions. Thus, PAX LP was not required to (and in fact could not) complete its purchase of any of the apartments, and Shiny Times never made any of the three installment payments it owed to PAX LP under the Original Settlement Deed.

38.     Finally, on March 31, 2015, Shiny Times and PAX LP, together with Worldwide Opportunity Holdings Limited and Empire Growth Holdings Limited, entered into an Option Agreement (the "Option Agreement") that provided, among other things, for the potential sale to Kwok of shares in entities that owned the three Beijing Pangu apartments subject to the Original Deed of Settlement (*see* Exhibit L § 2), giving Kwok the option to buy back the apartments from PAX LP.

FILED: NEW YORK COUNTY CLERK 07/28/2020 10:59 AM
NYSCEF DOC. NO. 169
INDEX NO. 652077/2017
RECEIVED NYSCEF: 07/28/2020
20-12411-jlg   Doc 14-24   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 24
Pg 34 of 57

39.     Pursuant to its terms, the Option Agreement was to terminate if certain conditions were

not satisfied: "For the avoidance of doubt, if any of the following conditions to the Option is not

satisfied, this Agreement shall terminate with immediate effect (without prejudice to any rights or

remedies available to PAX LP under the Deed of Settlement)."  (Exhibit L § 2.)   As none of the

Option Agreement conditions were satisfied, the Option Agreement similarly was terminated without

relieving Shiny Times of its obligation to pay PAX LP under the 2011 Facility Letter.

40.     Thus, when both the last Deed of Settlement and the Option Agreement expired

unsatisfied on June 30, 2015, the 2011 Facility Letter reverted to being in full force and effect, Kwok's

obligations under the 2011 Personal Guarantee became fully enforceable, and Kwok was (and remains)

independently liable under the 2011 Personal Guarantee for the full amount of Shiny Times's debt

owed to PAX LP under the 2011 Facility Letter.

### *Kwok Incorporates the Genever Defendants as Shell Companies that he Completely Dominates and Controls to Fraudulently Purchase the Residence in Order to Shield His Assets from PAX LP*

41.     In late January or early February 2015, Kwok's Chinese assets—including the three

Beijing Pangu apartments that were to be transferred to PAX LP in the proposed settlement—were

seized by the Chinese government, and Kwok fled to the United States.

42.     Nevertheless, on February 10, 2015, Kwok signed the fourth and final extension of the

Original Deed of Settlement.  (*See* Exhibit K.)  Unlike PAX LP, Kwok knew at the time that his

Chinese assets, including the three apartments, already had been seized, and thus was aware that he

could *never* satisfy the conditions precedent for transferring ownership of the apartments to PAX LP.

Kwok did not inform PAX LP that the apartments had been seized, and instead induced PAX LP to

enter into the fourth and final extension while concealing this important fact.

43.     The new deadline to satisfy the conditions precedent in the fourth and final extension

was June 30, 2015.  Thus, Kwok knew at the time that he executed the February 10, 2015 extension

10

that he would never satisfy the conditions precedent (indeed, he did not) and, therefore, that he had only four months to shield his assets before his more than $70 million debt to PAX LP became due and payable.

44.     Kwok immediately went to work.  On February 13, 2015—a mere 72 hours after signing the final settlement extension that Kwok knew he could never satisfy—Kwok formed Genever BVI in the British Virgin Islands and incorporated Genever NY in New York.  Kwok did not capitalize either entity.  Neither entity opened offices or hired any employees.  Kwok is the sole owner of Genever BVI, which is the sole owner of Genever NY.  Kwok is the sole director of Genever BVI based on official filings in the BVI.

45.     Between February 13 and March 24, 2015—again, knowing that he would be unable to meet the terms of the settlement agreement and that his debt to PAX LP would come due in June 2015—Kwok entered into negotiations with the Sherry-Netherland to purchase the Residence.

46.     In order to induce the Sherry-Netherland to accept his application, Kwok, through his lawyers, presented financial statements to the Board of the Sherry-Netherland.  These financial statements represented that Kwok owned and controlled Beijing Zenith, a Chinese company whose balance sheet showed almost $4 billion in assets.  This balance sheet was a critical piece of Kwok's application because it was only one of two assets Kwok ever disclosed.

47.     Significantly, Kwok testified in this case that he not only knew at the time he had his lawyers submit his Sherry-Netherland application that these Beijing Zenith assets already had been frozen by the Chinese government, but also that, at the time of the application, he did not "have any ownership interest in Beijing Zenith" and that he had "no control at all over Beijing Zenith."

48.     A few days later, Kwok, again through counsel, presented to the Sherry-Netherland the financial statements of a second foreign company: Bravo Luck Limited ("Bravo Luck"), which held

FILED: NEW YORK COUNTY CLERK 07/28/2020 10:59 AM
NYSCEF DOC. NO. 369

INDEX NO. 652077/2017

RECEIVED NYSCEF: 07/28/2020

20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24
Pg 36 of 57

over $490 million in a UBS Hong Kong bank account. While this submission expressly represented that Kwok and his son owned and controlled Bravo Luck, Kwok again testified in this case that he had "no ownership interest in Bravo Luck."

49.    As proposed to the Sherry-Netherland, Kwok intended to and did purchase the Residence through Genever NY, which was wholly-owned by Genever BVI. The Sherry-Netherland's Executive Vice President testified he had never seen a resident make a purchase through two separate shell companies in his four decades in the industry. Because the Sherry-Netherland recognized that this structure, coupled with Kwok's failure to disclose any U.S. assets on his application, would make it difficult to collect the monthly fees it would charge to Kwok, the Sherry-Netherland required Kwok to put down the largest security deposit in the Sherry-Netherland's history—five years' worth of his roughly $56,000 in monthly fees.

50.    On the basis of what, according to Kwok's testimony, was false and misleading financial information presented to the Sherry-Netherland and Kwok's agreement to post the approximately $3 million security deposit—and at a time when Kwok's debt to PAX LP was more than $70 million—Kwok and Genever NY obtained the Sherry-Netherland Board's approval to purchase the Residence for approximately $67.5 million in cash on March 24, 2015.

51.    The Contract of Sale and Proprietary Lease Agreement with the Sherry-Netherland are signed by Genever NY. The Purchase Agreement for the apartment lists "'Miles' Kwok Ho Wan (Genever [NY])" and "Kwok Ho Wan" as the applicant.

52.    Even though Genever NY is listed on the Contract of Sale, Purchase Agreement, and the Proprietary Lease with the Sherry-Netherland, Genever NY was not capitalized and had no assets with which to purchase the Residence. Instead, Kwok purchased the Residence with funds wired from Bravo Luck.

53.     Kwok all but admitted at his deposition that the funds used to purchase the Residence came from Shiny Times.  When asked whether there was a connection between the Genever Defendants and Shiny Times, he testified that Genever BVI and Shiny Times had a "representative relationship . . . like when you purchase house, there will be some agent on behalf."

### PAX LP Seeks to Enforce Its Contractual Rights and
### Collect Amounts Owed, and Kwok and the Genever Defendants
### Attempt to Further Shield the Residence in Response

54.     On October 16, 2015, after the Deeds of Settlement and Option Agreement were terminated and the 2011 Facility Letter reverted to being in full force and effect, PAX LP sent a written notice of demand (the "Notice of Demand") to Kwok's address in Hong Kong, as specified under the terms of the 2011 Personal Guarantee.

55.     The Notice of Demand informed Kwok that "Shiny Times ha[d] failed to repay any part of the sum due" under the 2011 Facility Letter and demanded immediate payment of $71,818,633.44. The Notice of Demand also informed Kwok that legal proceedings might be commenced against him if he did not make immediate payment, and reserved PAX LP's contractual rights under both the 2011 Facility Letter and the 2011 Personal Guarantee.

56.     Kwok never responded to the Notice of Demand.

57.     At around the same time PAX LP sent the Notice of Demand, Kwok and the Genever Defendants listed the Residence for sale.

58.     On February 19, 2016, PAX LP sent a letter to Shiny Times demanding payment of $82,219,404.08 due and owing under the 2011 Facility Letter (the "Shiny Times Demand Letter"), which represented the principal plus contractual interest of 15% per annum calculated up to the date of the Shiny Times Demand Letter.

59.     Shiny Times never responded to the Shiny Times Demand Letter.

FILED: NEW YORK COUNTY CLERK 07/28/2020 10:59 AM
NYSCEF DOC. NO. 369
INDEX NO. 652077/2017
RECEIVED NYSCEF: 07/28/2020
20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24
Pg 38 of 57

60.     When Shiny Times did not respond, PAX LP submitted an application to court in the British Virgin Islands on February 29, 2016, seeking the appointment of joint liquidators to put Shiny Times, which is a BVI corporation, into liquidation.  The application alleged that (i) Shiny Times had failed to pay the sum-then-owing of $82,410,197.87, (ii) Shiny Times was unable to pay its debts, and (iii) Shiny Times was insolvent and should be liquidated.

61.     Shiny Times was in fact placed into liquidation as a result of the BVI proceeding, but it had no assets.  Thus, PAX LP was unable to collect any of the monies owed to it under the 2011 Facility Letter through the BVI liquidation proceeding (or at all).

62.     In June 2016, a few months after PAX LP had initiated the BVI liquidation proceeding, Kwok and the Genever Defendants dropped the asking price for the Residence.  That same month, Kwok attempted to further shield the Residence by trying to restructure the ownership of Genever BVI and transfer it into a trust in his son's name.

### PAX LP Files this Lawsuit, and Kwok and the Genever Defendants Make Clear that They Intend to Frustrate any Judgment Entered in Favor of PAX LP

63.     PAX LP filed this lawsuit on April 18, 2017.

64.     About a week later, Kwok tweeted that "I neither have to nor should I repay this amount of boring money irrelevant to me."

65.     Only after PAX LP filed suit and took discovery related to its motion for a pre-judgment order of attachment did it learn of all of Kwok's evasive maneuvers discussed above, including: (i) his formation of the Genever Defendants to shield the Residence from PAX LP; (ii) his failure to capitalize the Genever Defendants or observe proper corporate formalities; (iii) his submission of what he himself admitted under oath was false information to the Sherry-Netherland to induce it to approve the purchase of the Residence while Kwok knew that his similarly sized debt to PAX LP was immediately due and owing; (iv) his use of an unprecedented nested shell company

14

structure to protect the Residence from PAX LP; and (v) his apparent use of Shiny Times funds to

purchase the Residence.

66.     Kwok's history of lying in an attempt to evade his debt to PAX LP has continued

throughout this litigation, including making repeated misrepresentations to the Court and under oath at

his deposition.  As detailed above and below, those misrepresentations include false statements about

the Genever Defendants and their assets.  As Kwok made these false statements regarding the Genever

Defendants in an attempt to avoid having his Residence attached by the Court at PAX LP's request, the

Genever Defendants are integrally involved in Kwok's abuse of the corporate form to perpetrate a

fraud, wrong, or injustice against PAX LP.

67.     In May 2015, just two months after purchasing the Residence—and while Kwok knew

he would have to repay his debt to PAX LP—Kwok pledged Genever BVI's assets (*i.e.*, the

Residence) to an entity named Roscalitar 2, in direct violation of the terms of his and Genever NY's

agreements with the Sherry Netherland.  Although that pledge was terminated in March 2017, Kwok

argued in 2018—in papers submitted to this Court in opposition to PAX LP's attachment request—that

the pledge was still effective and should provide a basis for denying the attachment.

68.     Kwok again improperly pledged the Residence in February 2018, after PAX LP had

filed this lawsuit, this time to an entity named Blue Capital.  And while that pledge was terminated on

June 12, 2018, Kwok's counsel inaccurately represented to the Court—at the June 27, 2018 oral

argument on PAX LP's attachment motion—that the "lien is still in effect today."

69.     Kwok also suborned a bogus affidavit in support of his opposition to PAX LP's

attachment request.  Specifically, in May 2018, Kwok had his employee Yan Ping Wang file an

affidavit with this Court swearing to supposed facts that Kwok argued should defeat PAX LP's

attachment request, including about the ownership of the Residence, the pledges of the Residence, and

FILED: NEW YORK COUNTY CLERK 07/28/2020 10:59 AM

NYSCEF DOC. NO. 169

INDEX NO. 652077/2017

RECEIVED NYSCEF: 07/28/2020

20-12411-jlg   Doc 14-24   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 24
Pg 40 of 57

the source of the funds Kwok used to purchase the Residence.  At her deposition, however, Wang testified that ***she knew nothing*** about any of these issues.  And when the Sherry-Netherland asked Kwok in a letter why he had represented in the Wang affidavit that he had pledged the Residence (which violated his agreements with the Sherry-Netherland), Kwok's counsel denied that the Wang affidavit stated that Kwok had pledged the Residence—even though that is precisely what the Wang affidavit said in no uncertain terms.

70.     Kwok also lied repeatedly about the most basic information regarding the Residence and the Genever Defendants, including their ownership.  Wang's affidavit swears that Kwok is the owner of the Residence, but, as noted above, Kwok testified that he did not own it.  Kwok also testified that he at no time had any ownership or control over the Genever Defendants, even though the corporate documents for the Genever Defendants make clear that Kwok owns 100% of Genever BVI (which in turn owns 100% of Genever NY) and is its sole director.  Moreover, in a complaint filed by Genever NY and Kwok in the Southern District of New York in August 2016, Genever NY and Kwok alleged that "Genever [NY] is owned and operated by Mr. Kwok."[1]

## COUNT I – BREACH OF CONTRACT
### Against Defendant Kwok

71.     Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 70 as though fully set forth herein.

72.     The 2011 Personal Guarantee obligates Kwok to repay PAX LP for the loan facility (as amended) that PAX LP made available to Spirit Charter, along with unpaid interest.  The current amount due and owing is more than $100 million.

73.     Plaintiff performed under the 2011 Personal Guarantee (and other related agreements).

---

[1] Verified Complaint, *Genever Holdings, LLC and Miles Kwok v. The Sherry-Netherland, Inc., et al.*, Case No. 1:16-cv-06246 (S.D.N.Y. Aug. 5, 2016) (Dkt. No. 1).

74.    Kwok has not repaid any of the money due and owing to PAX LP under the 2011 Personal Guarantee.

75.    As a direct result of Kwok's breach of his payment obligations under the 2011 Personal Guarantee, Plaintiff continues to suffer the loss of more than $100 million.

### COUNT II – VEIL PIERCING
**Against the Genever Defendants**

76.    Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 75 as though fully set forth herein.

77.    Kwok created the Genever Defendants for the purpose of shielding the Residence from PAX LP.

78.    In creating the Genever Defendants, Kwok failed to follow proper corporate formalities. Kwok failed to capitalize either of the Genever Defendants and used funds from a different entity to purchase the Residence, the only asset held by the Genever Defendants.

79.    At no time has either of the Genever Defendants had any employees, offices, or business purpose other than owning the Residence and shielding it from Kwok's creditors, including PAX LP.

80.    Kwok completely dominates the Genever Defendants, which he wholly owns and controls.  The Genever Defendants are the alter egos of Kwok.

81.    Kwok, through his domination and control of the Genever Defendants, abused the privilege of doing business in the corporate form to perpetrate a fraud, wrong, or injustice against PAX LP.

82.    Accordingly, the corporate veil of the Genever Defendants should be pierced, and the Genever Defendants should be held jointly and severally liable for Kwok's breach of contract.

FILED: NEW YORK COUNTY CLERK 07/28/2020 10:59 AM
NYSCEF DOC. NO. 405

INDEX NO. 652077/2017

RECEIVED NYSCEF: 07/28/2020

20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24
Pg 42 of 57

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

      (a)     in the amount greater than $100,000,000 owed as of this date under the 2011 Personal Guarantee ($46,426,489 plus accrued interest) against Kwok and the Genever Defendants as jointly and severally liable as alter egos of Kwok;

      (b)     the reasonable attorneys' fees, costs, and expenses PAX LP has incurred, and will continue to incur, in connection with its enforcement of the 2011 Personal Guarantee against Kwok, and the Genever Defendants as jointly and severally liable as alter egos of Kwok, under the 2011 Personal Guarantee's indemnification clause; and

      (c)     such other and further relief to which PAX LP shows itself justly entitled.

DATED:     New York, New York
            April 18, 2019

                            Respectfully submitted,

                            By: _____

                            O'MELVENY & MYERS LLP
                            Stuart Sarnoff (ssarnoff@omm.com)
                            Edward Moss (emoss@omm.com)
                            7 Times Square
                            New York, NY 10036
                            (212) 326-2000

                            -and-

                            THE SEIDEN GROUP

                            Robert W. Seiden (rseiden@seidenlegal.com)
                            1120 Avenue of the Americas
                            New York, NY 10036
                            (212) 626-6708

                            *Attorneys for Plaintiff*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P., | Index No. 652077/2017 |
| *Plaintiff,* | Hon. Barry R. Ostrager |
| -against- | |
| KWOK HO WAN *a/k/a* KWOK HO *a/k/a* GWO WEN GUI *a/k/a* GUO WENGUI *a/k/a* GUO WEN-GUI *a/k/a* WAN GUE HAOYUN *a/k/a* MILES KWOK *a/k/a* HAOYUN GUO, GENEVER HOLDINGS LLC, and GENEVER HOLDINGS CORPORATION, | **DEFENDANTS' ANSWER WITH AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| *Defendants.* | |

Defendants Kwok Ho Wan a/k/a Kwok Ho a/k/a Gwo Wen Gui a/k/a Guo Wengui

a/k/a Guo Wen-Gui a/k/a Wan Gue Haoyun a/k/a Miles Kwok a/k/a Haoyun Guo ("Kwok"),

Genever Holdings LLC ("Genever NY"), and Genever Holdings Corporation ("Genever BVI")

(collectively, "Defendants"), as and for their answer to the first amended complaint filed on April

18, 2019 (Doc. No. 309) (the "Amended Complaint") by plaintiff Pacific Alliance Asia

Opportunity Fund L.P. ("PAX" or "Plaintiff"), state as follows:

## NATURE OF THE ACTION

1.      Deny the allegations in Paragraph 1 of the Amended Complaint and further

aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the

document(s) at issue, said document(s) speaks for itself.

2.      Deny the allegations in Paragraph 2 of the Amended Complaint and further

aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the

document(s) at issue, said document(s) speaks for itself.

FILED: NEW YORK COUNTY CLERK 05/24/2020 04:49 PM
NYSCEF DOC. NO. 482
INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/24/2020
20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24
Pg 44 of 57

3.      Deny the allegations in Paragraph 3 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

4.      Deny the allegations in Paragraph 4 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

5.      Deny the allegations in Paragraph 5 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

6.      Paragraph 6 of the Amended Complaint violates CPLR Rule 3014 as it does not contain a plain, concise statement but rather consists of multiple allegations.  Notwithstanding, Defendants deny the allegations and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

7.      Paragraph 7 of the Amended Complaint violates CPLR Rule 3014 as it does not contain a plain, concise statement but rather consists of multiple allegations.  Notwithstanding, Defendants deny all allegations except so much thereof as alleges that Defendant Kwok has denied he owes any obligations to Plaintiff.

8.      Paragraph 8 of the Amended Complaint violates CPLR Rule 3014 as it does not contain a plain, concise statement but rather consists of multiple allegations.  Notwithstanding, Defendants deny all allegations except so much thereof as alleges the ownership structure of the Genever Defendants and that the apartment at issue was purchased in or about March 2015 for $67.5 million dollars.

9.      Paragraph 9 of the Amended Complaint violates CPLR Rule 3014 as it does not contain a plain, concise statement but rather consists of multiple allegations.  Notwithstanding, Defendants deny all allegations.

10.     Deny the allegations in Paragraph 10 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

## JURISDICTION AND VENUE

11.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Amended Complaint except so much thereof as alleges that Defendant Kwok maintains a residence in New York County.

12.     Deny the allegations in Paragraph 12 of the Amended Complaint.

13.     Paragraph 13 of the Amended Complaint violates CPLR Rule 3014 as it does not contain a plain, concise statement but rather consists of multiple allegations. Notwithstanding, Defendants deny all allegations except so much thereof as alleges the ownership structure of the Genever Defendants and that counsel for Defendant Kwok accepted service of and responded to a third-party subpoena directed to Defendant Genever BVI.

14.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of the Amended Complaint except so much thereof as alleges that Defendant Kwok maintains a residence in New York County and Defendant Genever NY's place of incorporation is New York.

## THE PARTIES

15.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Amended Complaint.

FILED: NEW YORK COUNTY CLERK 05/24/2029 04:19 PM
NYSCEF DOC. NO. 466
INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/24/2029

20-12411-jlg   Doc 14-24   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 24
Pg 46 of 57

16.     Deny the allegations in Paragraph 16 of the Amended Complaint except so much thereof as alleges the ownership structure of the Genever BVI and Defendant Kwok's place of residence.

17.     Deny the allegations in Paragraph 17 of the Amended Complaint except so much thereof as alleges that Genever NY is a New York LLC that purchased the apartment at issue in 2015 for $67.5 million.

18.     Deny the allegations in Paragraph 18 of the Amended Complaint except so much thereof as alleges the ownership structure of the Genever Defendants and that Genever BVI is a company established under the laws of the British Virgin Islands.

### STATEMENT OF FACTS

#### *The Loan Facility and Kwok's Personal Guarantees to Repay PAX LP*

19.     Deny the allegations in Paragraph 19 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

20.     Deny the allegations in Paragraph 20 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

21.     Deny the allegations in Paragraph 21 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

22.     Deny the allegations in Paragraph 22 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

FILED: NEW YORK COUNTY CLERK 05/24/2020 04:19 PM
NYSCEF DOC. NO. 488
20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24
Pg 47 of 57

INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/24/2020

23. Deny the allegations in Paragraph 23 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

24. Deny the allegations in Paragraph 24 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

25. Deny the allegations in Paragraph 25 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

26. Deny the allegations in Paragraph 26 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

27. Deny the allegations in Paragraph 27 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

28. Deny the allegations in Paragraph 28 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

29. Deny the allegations in Paragraph 29 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

FILED: NEW YORK COUNTY CLERK 05/24/2020 04:49 PM
NYSCEF DOC. NO. 466

INDEX NO. 652077/2017

RECEIVED NYSCEF: 05/24/2020

20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24
Pg 48 of 57

*The Settlement Attempts, Extensions, and*
*Shiny Times's Ultimate Failure to Repay PAX LP*

30.     Deny the allegations in Paragraph 30 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

31.     Deny the allegations in Paragraph 31 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

32.     Deny the allegations in Paragraph 32 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

33.     Deny the allegations in Paragraph 33 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

34.     Deny the allegations in Paragraph 34 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

35.     Deny the allegations in Paragraph 35 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

36.     Deny the allegations in Paragraph 36 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

37.     Deny the allegations in Paragraph 37 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

38.     Deny the allegations in Paragraph 38 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

39.     Deny the allegations in Paragraph 39 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

40.     Deny the allegations in Paragraph 40 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

### *Kwok Incorporates the Genever Defendants as Shell Companies that he Completely Dominates and Controls to Fraudulently Purchase the Residence in Order to Shield His Assets from PAX LP*

41.     Deny the allegations in Paragraph 41 of the Amended Complaint except so much thereof as alleges that Defendant Kwok came to the United States in 2015.

42.     Deny the allegations in Paragraph 42 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

43.     Deny the allegations in Paragraph 43 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

44.     Paragraph 44 of the Amended Complaint violates CPLR Rule 3014 as it does not contain a plain, concise statement but rather consists of multiple allegations.

Notwithstanding, Defendants deny all allegations except so much thereof as alleges the ownership structure of the Genever Defendants.

45.     Deny the allegations in Paragraph 45 of the Amended Complaint.

46.     Deny the allegations in Paragraph 46 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

47.     Deny the allegations in Paragraph 47 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the testimony at issue, said testimony speaks for itself.

48.     Deny the allegations in Paragraph 48 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) or testimony at issue, said document(s) and testimony speak for themselves.

49.     Paragraph 49 of the Amended Complaint violates CPLR Rule 3014 as it does not contain a plain, concise statement but rather consists of multiple allegations. Nevertheless, Defendants deny the allegations except so much thereof as alleges the ownership structure of the Genever Defendants, and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the testimony at issue, said testimony speaks for itself.

50.     Paragraph 50 of the Amended Complaint violates CPLR Rule 3014 as it does not contain a plain, concise statement but rather consists of multiple allegations. Nevertheless, Defendants deny the allegations except so much thereof as alleges that the board of The Sherry-Netherland approved the purchase of the apartment at issue in or about March 2015.

51.     Admit the allegations in Paragraph 51 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

FILED: NEW YORK COUNTY CLERK 03/24/2020 04:44 PM
NYSCEF DOC. NO. 458
INDEX NO. 652077/2017
RECEIVED NYSCEF: 03/24/2020

20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24
Pg 51 of 57

52.     Deny the allegations in Paragraph 52 of the Amended Complaint except so much thereof as alleges that the apartment at issue was purchased with funds wired from Bravo Luck.

53.     Deny the allegations in Paragraph 53 of the Amended Complaint.

### *PAX LP Seeks to Enforce Its Contractual Rights and Collect Amounts Owed, and Kwok and the Genever Defendants Attempt to Further Shield the Residence in Response*

54.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

55.     Deny the allegations in Paragraph 55 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

56.     Deny the allegations in Paragraph 56 of the Amended Complaint.

57.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 of the Amended Complaint.

58.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

59.     Deny the allegations in Paragraph 59 of the Amended Complaint.

60.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60 of the Amended Complaint and further aver that, to the extent that

FILED: NEW YORK COUNTY CLERK 05/24/2029 04:49 PM
NYSCEF DOC. NO. 456  20-12411-jlg  Doc 14-24  Filed 12/16/20  Entered 12/16/20 15:47:19  Exhibit 24
Pg 52 of 57

INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/24/2029

Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

61.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 of the Amended Complaint.

62.     Deny the allegations in Paragraph 62 of the Amended Complaint.

### *PAX LP Files this Lawsuit, and Kwok and the Genever Defendants Make Clear that They Intend to Frustrate Any Judgment Entered in Favor of PAX LP*

63.     Admit the allegations in Paragraph 63 of the Amended Complaint.

64.     Deny the allegations in Paragraph 64 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

65.     Deny the allegations in Paragraph 65 of the Amended Complaint.

66.     Paragraph 66 of the Amended Complaint violates CPLR Rule 3014 as it does not contain a plain, concise statement but rather consists of multiple allegations. Notwithstanding, Defendants deny the allegations.

67.     Deny the allegations in Paragraph 67 of the Amended Complaint.

68.     Deny the allegations in Paragraph 68 of the Amended Complaint.

69.     Paragraph 69 of the Amended Complaint violates CPLR Rule 3014 as it does not contain a plain, concise statement but rather consists of multiple allegations. Notwithstanding, Defendants deny the allegations.

70.     Paragraph 70 of the Amended Complaint violates CPLR Rule 3014 as it does not contain a plain, concise statement but rather consists of multiple allegations. Notwithstanding, Defendants deny the allegations.

## AS FOR A RESPONSE TO THE FIRST CAUSE OF ACTION
### (Breach of Contract – Against Defendant Kwok)

71.    Defendants repeat and reallege their responses to the allegations in Paragraphs 1 through 70 of the Amended Complaint as if set forth herein at length.

72.    Deny the allegations in Paragraph 72 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

73.    Deny the allegations in Paragraph 73 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

74.    Deny the allegations in Paragraph 74 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

75.    Deny the allegations in Paragraph 75 of the Amended Complaint and further aver that, to the extent that Plaintiff seeks to paraphrase and/or characterize the contents of the document(s) at issue, said document(s) speaks for itself.

## AS FOR A RESPONSE TO THE SECOND CAUSE OF ACTION
### (Veil Piercing – Against the Genever Defendants)

76.    Defendants repeat and reallege their responses to the allegations in Paragraphs 1 through 75 of the Amended Complaint as if set forth herein at length.

77.    Deny the allegations in Paragraph 77 of the Amended Complaint.

78.    Deny the allegations in Paragraph 78 of the Amended Complaint except so much thereof as alleges that the apartment at issue is the only asset held by the Genever Defendants.

FILED: NEW YORK COUNTY CLERK 05/24/2020 04:19 PM
NYSCEF DOC. NO. 382
INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/24/2020
20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24
Pg 54 of 57

79.     Deny the allegations in Paragraph 79 of the Amended Complaint.

80.     Deny the allegations in Paragraph 80 of the Amended Complaint.

81.     Deny the allegations in Paragraph 81 of the Amended Complaint.

82.     Paragraph 82 of the Amended Complaint is not a factual allegation but rather Plaintiff's demand for relief and, as such, requires no response.  Notwithstanding, Defendants deny that Defendant Kwok breached any contract.

## AFFIRMATIVE DEFENSES

In further response to Plaintiff's claims, Defendants plead the following affirmative defenses:

### First Affirmative Defense

1.     Plaintiff's claims fail to state a cause of action upon which relief may be granted.

### Second Affirmative Defense

2.     Plaintiff's claims are barred by the doctrines of equitable and/or promissory estoppel.

### Third Affirmative Defense

3.     Plaintiff's claims are barred by the consent of Plaintiff, whether express or implied, to Defendants' actions.

### Fourth Affirmative Defense

4.     Plaintiff's claims are barred, in whole or in part, because Plaintiff's damages, if any, were not caused by Defendants.

- 12 -

FILED: NEW YORK COUNTY CLERK 05/24/2029 04:19 PM
NYSCEF DOC. NO. 488
20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24
Pg 55 of 57

INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/24/2029

### Fifth Affirmative Defense

5.      Plaintiff's claims are barred, in whole or in part, or diminished by the doctrine of unclean hands.

### Sixth Affirmative Defense

6.      Plaintiff's claims are barred, in whole or in part, by documentary evidence.

### Seventh Affirmative Defense

7.      Plaintiff's claims are barred, in whole or in part, by its assent and/or acquiescence.

### Eighth Affirmative Defense

8.      Plaintiff's claims are barred, in whole or in part, by the doctrine of substantial performance.

### Ninth Affirmative Defense

9.      Plaintiff's claims are barred, in whole or in part, by Plaintiff's frustration of purpose of the alleged contracts.

### Tenth Affirmative Defense

10.     Plaintiff's claims are barred, in whole or in part, by Plaintiff's tortious interference in the performance of the alleged contracts.

### Eleventh Affirmative Defense

11.     Plaintiff's claims are barred, in whole or in part, because Plaintiff received the benefits intended by the alleged contracts.

### Twelfth Affirmative Defense

12.     Plaintiff's claims are barred, in whole or in part, by payment under the alleged contracts.

FILED: NEW YORK COUNTY CLERK 05/24/2020 04:49 PM
NYSCEF DOC. NO. 480

INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/24/2020

20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24
Pg 56 of 57

### Thirteenth Affirmative Defense

13.    The Court lacks personal jurisdiction over Defendant Genever BVI.

### Fourteenth Affirmative Defense

14.    Defendants reserve their right to assert additional affirmative defenses as may be warranted by future discovery and/or investigation in the present action.

WHEREFORE, Defendants deny that Plaintiff is entitled to any relief whatsoever and pray for judgment that Plaintiff takes nothing and that the Amended Complaint be dismissed with prejudice, with costs and disbursement to Defendants.

Dated: New York, New York
       May 24, 2019

HODGSON RUSS LLP

By: *Jillian Searles*

Mark A. Harmon
Jillian M. Searles
605 Third Avenue, Suite 2300
New York, New York 10158
(212) 751-4300
mharmon@hodgsonruss.com
jsearles@hodgsonruss.com

*Attorneys for Defendant*

FILED: NEW YORK COUNTY CLERK 05/24/2029 04:19 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 482
RECEIVED NYSCEF: 05/24/2029

20-12411-jlg    Doc 14-24    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 24
Pg 57 of 57

## AFFIRMATION OF SERVICE

JILLIAN M. SEARLES, under the penalties of perjury under the laws of New York, and pursuant to CPLR 2106(a), affirms that I am a member of Hodgson Russ LLP, attorneys for the defendants Kwok Ho Wan a/k/a Kwok Ho a/k/a Gwo Wen Gui a/k/a Guo Wengui a/k/a Guo Wen-Gui a/k/a Wan Gue Haoyun a/k/a Miles Kwok a/k/a Haoyun Guo, Genever Holdings LLC, and Genever Holdings Corporation, and on May 24, 2019, a true and correct copy of the foregoing was served by filing it with the New York State Court's Electronic Filing System ("NYSCEF") upon all counsel of record.

_Jillian Searles_

JILLIAN M. SEARLES

- 15 -