# EXHIBIT 25

FILED: NEW YORK COUNTY CLERK 07/07/2017 06:05 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 28
20-12411-jlg    Doc 14-25    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 25
Pg 2 of 27
RECEIVED NYSCEF: 07/07/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PACIFIC ALLIANCE ASIA OPPORTUNITY
FUND L.P.,

                 Plaintiff,

      v.

KWOK HO WAN, *a/k/a* KWOK HO, *a/k/a* GWO
WEN GUI, *a/k/a* GUO WENGUI, *a/k/a* GUO
WEN-GUI, *a/k/a* WAN GUE HAOYUN, *a/k/a*
MILES KWOK, *a/k/a* HAOYUN GUO,

                Defendant.

Index No. 652077/2017

Part _____

**Oral Argument Requested**

Motion Seq. No. ____

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.'S MOTION FOR PRE-JUDGMENT ORDER OF ATTACHMENT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 4

    I.      THE PARTIES .................................................................................................. 4

    II.    THE SHINY TIMES LOAN AND KWOK'S PERSONAL GUARANTEE TO REPAY PAX LP ...................................................................... 4

    III.   THE EXTENSIONS AND SHINY TIMES' FAILURE TO REPAY PAX LP ........................................................................................................... 7

    IV.   PAX LP SEEKS TO ENFORCE ITS CONTRACTUAL RIGHTS AND COLLECT AMOUNTS OWED ...................................................................... 10

    V.    THIS LAWSUIT ............................................................................................ 11

    VI.   THE ASSET AT ISSUE:  KWOK'S LUXURY NEW YORK CITY RESIDENCE .................................................................................................. 12

    VII.  KWOK HAS VAST OFFSHORE HOLDINGS AND TIES .............................. 12

    VIII. AN EXPANDING LIST OF ALLEGATIONS AGAINST KWOK ................. 13

ARGUMENT ............................................................................................................................. 15

    I.      PLAINTIFF SATISFIES THE ELEMENTS FOR AN ORDER OF ATTACHMENT TO SECURE A POTENTIAL JUDGMENT IN ITS FAVOR FOR $88 MILLION ............................................................................ 15

          A.     PAX LP Is Likely to Succeed on the Merits of Its Breach of Contract Claim ...................................................................................... 15

          B.     PAX LP Satisfies the Requirements of C.P.L.R. § 6201(3) .................... 17

          C.     Defendant Has No Counterclaim That Exceeds the Amount Owed ........ 19

    II.    GENEVER IS KWOK'S ALTER EGO ........................................................... 20

CONCLUSION .......................................................................................................................... 21

i

FILED: NEW YORK COUNTY CLERK 07/07/2017 06:05 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 28
20-12411-jlg   Doc 14-25   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 25
Pg 4 of 27
RECEIVED NYSCEF: 07/07/2017

# TABLE OF AUTHORITIES

**Page**

## <u>CASES</u>

*135 Flat LLC v. Triadou SPV N.A.*,
   No. 15-CV-5345 (AJN), 2016 WL 5945912 (S.D.N.Y. June 24, 2016) ............................... 18

*2406-12 Amsterdam Assocs. LLC v. Alianza LLC*,
   25 N.Y.S.3d 167 (1st Dep't 2016) ...................................................................................... 21

*Am. Jerex Co. v. Universal Aluminum Extrusions, Inc.*,
   340 F. Supp. 524 (E.D.N.Y. 1972) ................................................................................... 20

*Arzu v. Arzu*,
   597 N.Y.S.2d 322 (1st Dep't 1993) .................................................................................. 17

*Bank of China, N.Y. Branch v. NBNM L.L.C.*,
   192 F. Supp. 2d 183 (S.D.N.Y. 2002) ............................................................................. 18

*Bank of Leumi Trust Co. of N.Y. v. Istim, Inc.*,
   892 F. Supp. 478 (S.D.N.Y. 1995) ............................................................................ 17, 20

*Coley v. Vannguard Urban Improvement Ass'n, Inc.*,
   No. 12-CV-5565, 2016 WL 7217641 (E.D.N.Y. Dec. 13, 2016) ......................................... 18

*Fireman's Fund Ins. Co. v. Kapralos*,
   942 F. Supp. 836 (E.D.N.Y. 1996) ................................................................................... 19

*Jannuzzo v. De Cuevas*,
   627 N.Y.S.2d 919 (1st Dep't 1995) .................................................................................. 17

*JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*,
   893 N.Y.S.2d 237 (2d Dep't 2010) ................................................................................... 16

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.*,
   306 F. Supp. 2d 482 (S.D.N.Y. 2004) .............................................................................. 16

*Kain Dev., LLC v. Krause Properties, LLC*,
   14 N.Y.S.3d 520 (3d Dep't 2015) ............................................................................... 20, 21

*Matter of Russian-Brazilian Holdings, Inc.(Saraev)*,
   602 N.Y.S.2d 352 (1st Dep't 1993) .................................................................................. 20

*Melcher v. Apollo Med. Fund Mgmt. LLC*,
   No. 604047, 2013 WL 6123785 (N.Y. Sup. Ct. Nov. 18, 2013) ........................................ 15

*Movado Grp., Inc. v. Presberg*,
   687 N.Y.S.2d 116 (1999) ................................................................................................. 16

ii

FILED: NEW YORK COUNTY CLERK 07/07/2017 06:05 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 28
RECEIVED NYSCEF: 07/07/2017

20-12411-jlg    Doc 14-25    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 25
Pg 5 of 27

## TABLE OF AUTHORITIES
### (continued)

**Page**

*MPEG LA, L.L.C. v. GXI Int'l, LLC,*
  7 N.Y.S.3d 63 (1st Dep't 2015) ............................................................. 20

*Olivieri Constr. Corp. v. WN Weaver St., LLC,*
  41 N.Y.S.3d 59 (2d Dep't 2016) ............................................................. 20

*Reid v. Ernst & Young Glob. Ltd.,*
  831 N.Y.S.2d 362 (Sup. Ct. 2006) ......................................................... 15

*Teitelbaum v. Mordowitz,*
  669 N.Y.S.2d 811 (1st Dep't 1998) ........................................................ 16

*Ventresca Realty Corp. v. Houlihan,*
  838 N.Y.S.2d 609 (2d Dep't 2007) ......................................................... 21

## **RULES**

C.P.L.R. § 6201 ........................................................................................ 1, 2, 18

C.P.L.R. § 6201(3) ....................................................................................... 2, 16

C.P.L.R. § 6212 ............................................................................................... 14

C.P.L.R. § 6212(a) ........................................................................................... 19

FILED: NEW YORK COUNTY CLERK 07/07/2017 06:05 PM
NYSCEF DOC. NO. 28

INDEX NO. 652077/2017
RECEIVED NYSCEF: 07/07/2017

20-12411-jlg    Doc 14-25    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 25
Pg 6 of 27

Plaintiff Pacific Alliance Asia Opportunity Fund L.P. ("PAX LP") submits this memorandum of law in support of its motion for an order pursuant to C.P.L.R. § 6201 attaching the property of Defendant Kwok Ho Wan, a/k/a Kwok Ho, a/k/a Gwo Wen Gui, a/k/a Guo Wengui, a/k/a Guo Wen-Gui, a/k/a Wan Gue Haoyun, a/k/a Miles Kwok, a/k/a Haoyun Guo ("Kwok") to secure a future money judgment against Kwok on PAX LP's claim for breach of contract.

## PRELIMINARY STATEMENT

While prejudgment attachments may not be typical in breach of contract actions, the facts of this case are unique and warrant the relief that PAX LP seeks under C.P.L.R. § 6201 because the Defendant has a long history of thwarting his payment obligations to Plaintiff, and he is setting the stage to do so once again.

Kwok is a wealthy Chinese dissident on the lam from the Chinese government, which has sought his extradition and arrest and apparently frozen many of his assets. For the past several years, Kwok has ignored and evaded PAX LP's proper attempts on behalf of its investors to collect on Kwok's multi-million-dollar personal guarantee of his shell company's debt to PAX LP. And just recently, Kwok was reported to have instructed his employees in China—including the same employee who interfaced with PAX LP on its loan—to engage in fraud relating to Kwok's other business loans. These and the other facts detailed below leave little doubt that Kwok intends to continue to try to frustrate PAX LP's efforts to collect on his very significant obligation.

Specifically, PAX LP anticipates that Kwok will welsh on the anticipated judgment in this action by (i) selling or transferring one of his only valuable assets located in the United States—namely, his co-op apartment at The Sherry-Netherland Hotel, currently listed for sale for $78 million ("the Residence"), or his shell company, Genever Holdings, LLC ("Genever"), that

1

FILED: NEW YORK COUNTY CLERK 07/07/2017 06:05 PM
NYSCEF DOC. NO. 28
INDEX NO. 652077/2017
RECEIVED NYSCEF: 07/07/2017
20-12411-jlg    Doc 14-25    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 25
Pg 7 of 27

Kwok wholly owns and established solely to hold the Residence, and (ii) transferring the proceeds from such sale or transfer to one of his many offshore accounts or holding companies. To ensure that Kwok does not succeed in secreting his assets and leaving PAX LP without a remedy on its anticipated $88 million judgment, PAX LP seeks a prejudgment attachment on the Residence, Genever, and/or the proceeds of any sale or transfer that results. PAX LP is entitled to this relief because it satisfies all of the requirements under C.P.L.R. § 6201.

*First*, PAX LP is likely to succeed on the merits of its breach of contract claim. As explained more fully below, PAX LP and one of Kwok's other shell companies—organized in the British Virgin Islands ("BVI") as Shiny Times Holdings Limited ("Shiny Times")—entered into a written agreement on March 16, 2011 (the "2011 Facility Letter") that expressly superseded the parties' prior agreements and confirmed that as of that date, Shiny Times owed PAX LP $46,426,489. (The original loan, taken by another of Kwok's entities in 2008, was for $30,000,000, and the $46,426,489 included principal plus contractual interest.) That same day, March 16, 2011, Kwok himself entered into a separate personal guarantee (that similarly superseded a prior Kwok personal guarantee) under which Kwok guaranteed payment of *all* amounts owed to PAX LP by Shiny Times under the 2011 Facility Letter (the "Personal Guarantee"), and expressly waived any conceivable defenses. PAX LP has diligently pursued both Kwok and Shiny Times (including sending each a demand letter in 2015 and 2016, respectively, and initiating a court proceeding in the BVI), but to date neither has paid *any* portion of the amount owed. Kwok cannot legitimately dispute these facts, and thus the Court is likely to render judgment in PAX LP's favor.

*Second*, an attachment is warranted under C.P.L.R. § 6201(3) because there is a reasonable basis to believe that Kwok intends to "frustrate the enforcement of a judgment that

might be rendered in plaintiff's favor" by selling or transferring his only New York assets sufficiently valuable to substantially satisfy any judgment in this case—the Residence and Genever. Most if not all of Kwok's other assets are held outside the United States (including in offshore accounts and holding companies), many of those other assets already appear to have been frozen by the Chinese government, and the Residence is listed for sale at a time when Kwok is increasingly under fire from an expanding list of parties. Indeed, as noted above, Chinese governmental authorities are seeking to extradite and arrest Kwok, and he has been sued in three more lawsuits in New York State Court in the past two months. Absent the requested prejudgment attachment, there is nothing to prevent Kwok from disposing of the Residence or Genever and orchestrating the immediate transfer of the proceeds to one of his offshore accounts, leaving PAX LP with no financial recourse.

This untenable scenario seems all the more likely given (i) Kwok's recent Tweet in response to this lawsuit that "I neither have to nor should I repay this amount of boring money irrelevant to me" and (ii) the press reports that Kwok's employee in China who served as the point person for negotiations with PAX LP pleaded guilty to fraud and was sentenced to prison in connection with his role obtaining loans for Kwok's business. And given Kwok's other Tweet in response to this lawsuit acknowledging that $88 million is "merely a small amount of money for [him]," Kwok would not be unduly prejudiced by the requested order.

*Third*, PAX LP is not aware of any counterclaim Kwok conceivably might have. And even if one existed, Kwok could not possibly have a counterclaim that would exceed the value of a judgment in PAX LP's favor.

For these and the other reasons set forth below, the Court should enter an order attaching the Residence, Genever, and/or the proceeds of any sale or transfer that results.

3

FILED: NEW YORK COUNTY CLERK 07/07/2017 06:05 PM
NYSCEF DOC. NO. 28

INDEX NO. 652077/2017

RECEIVED NYSCEF: 07/07/2017

20-12411-jlg    Doc 14-25    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 25
Pg 9 of 27

## STATEMENT OF FACTS

### I.    THE PARTIES

Plaintiff PAX LP is an investment fund organized as an exempted limited partnership under the laws of the Cayman Islands.[1]

Defendant Kwok is a Chinese national, with claimed assets of approximately $17 billion, who currently resides at The Sherry-Netherland Hotel at 781 Fifth Avenue, New York, New York.[2]

### II.    THE SHINY TIMES LOAN AND KWOK'S PERSONAL GUARANTEE TO REPAY PAX LP

PAX LP and Kwok have had business dealings since approximately February 4, 2008, when PAX LP entered into a written agreement (the "2008 Facility Agreement") with Spirit Charter Investment Limited ("Spirit Charter"), one of Kwok's business entities, under which PAX LP made available to Spirit Charter a loan facility in the principal amount of $30 million.[3] PAX LP conditioned the 2008 Facility Agreement on Kwok's execution of a personal guarantee.[4]  The parties amended and restated the 2008 Facility Agreement on March 12, 2008 (the "Amended and Restated 2008 Facility Agreement").[5]

On September 17, 2009, PAX LP, Spirit Charter, Shiny Times, and various other parties entered into a deed (the "September 2009 Deed"), under which it was agreed that Shiny Times—an entity incorporated in the British Virgin Islands that lists Kwok as its sole shareholder and director[6]—would replace Spirit Charter as the borrower under the Amended and Restated 2008

---

[1] Affirmation of PAX LP, dated July 7, 2017 ("PAX LP Aff."), ¶ 2.
[2] Affidavit of Nathaniel Francis, dated  July 7, 2017 ("Francis Aff."), ¶¶ 7, 8, 17.
[3] PAX LP Aff. ¶ 4.
[4] PAX LP Aff. ¶ 4.
[5] PAX LP Aff. ¶ 4.
[6] Francis Aff. ¶ 5.

4

FILED: NEW YORK COUNTY CLERK 07/07/2017 06:05 PM
NYSCEF DOC. NO. 28

INDEX NO. 652077/2017

RECEIVED NYSCEF: 07/07/2017

20-12411-jlg    Doc 14-25    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 25
Pg 10 of 27

Facility Agreement.[7]  In other words, Shiny Times would assume the debt that Spirit Charter

owed to PAX LP, which the parties agreed totaled $45,357,534.25, including accrued and unpaid

interest, as of September 12, 2009 (the "Amended 2008 Loan Facility").[8]  The September 2009

Deed required Kwok to execute a personal guarantee in favor of PAX LP to secure Shiny Times'

due and punctual performance and repayment of the Amended 2008 Loan Facility to PAX LP.[9]

Kwok executed his personal guarantee on November 18, 2009.[10]

PAX LP, Kwok, and Shiny Times thereafter agreed to supersede the foregoing

agreements with two contracts executed on March 16, 2011—the 2011 Facility Letter and the

Personal Guarantee.  In the 2011 Facility Letter, the parties agreed that Shiny Times owed PAX

LP $46,426,489 and would repay that amount by June 30, 2012 at 15% annual interest from

December 31, 2010.[11]  The parties further agreed that any failure by Shiny Times to pay any

amount owed to PAX LP under the 2011 Facility Letter would constitute an Event of Default,

and that in such event PAX LP could (i) declare the entire loan, accrued and unpaid interest, and

any other money payable to be immediately due and payable without further demand or notice or

other legal formality of any kind, and/or (ii) declare the 2011 Facility Letter terminated.[12]

Finally, like the prior agreements between the parties, the 2011 Facility Letter was expressly

conditioned on Kwok's execution of the Personal Guarantee to fully backstop Shiny Times'

payment obligations to PAX LP:

> The Lender [PAX LP] and the Borrower [Shiny Times] agree to enter into this
> Agreement . . . on the condition that a new personal guarantee of Mr. Kwok (the
> "Personal Guarantee"), in favour of the Lender is delivered to secure the due and

---

[7] PAX LP Aff. ¶ 5.
[8] PAX LP Aff. ¶ 5.
[9] PAX LP Aff. ¶ 6.
[10] PAX LP Aff. ¶ 6.
[11] PAX LP Aff. ¶ 7, Ex. A ¶¶ 3, 5, 6 (2011 Facility Letter).
[12] PAX LP Aff. ¶ 7, Ex. A ¶ 13 (2011 Facility Letter).

5

FILED: NEW YORK COUNTY CLERK 07/07/2017 06:05 PM

INDEX NO. 652077/2017

NYSCEF DOC. NO. 28

RECEIVED NYSCEF: 07/07/2017

20-12411-jlg    Doc 14-25    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 25
Pg 11 of 27

punctual performance of the Borrower to fully repay the [2011 Facility Letter] plus all accrued and unpaid interest in accordance with this Agreement.[13]

Kwok signed the 2011 Facility Letter as a director of Shiny Times[14] and also, on the same day, he signed the Personal Guarantee,[15] under which Kwok agreed to "irrevocably and unconditionally" guarantee Shiny Times' payment of all amounts owed under the 2011 Facility Letter.[16] Kwok recently "tweeted" that the Personal Guarantee was "only one big, big guarantee given by me to my family for financing."[17] Under the Personal Guarantee, Kwok specifically:

(a) guaranteed to PAX LP the "due and punctual payment" of Shiny Times' obligations under the 2011 Facility Letter;[18]

(b) agreed "that promptly on [PAX LP's] demand [Kwok] will pay to [PAX LP] all [such amounts] that are due but unpaid";[19]

(c) agreed to "indemnify and hold harmless [PAX LP] on demand from and against all losses incurred by [PAX LP] as a result of any obligation of Shiny Times under the 2011 Facility Letter being or becoming void, voidable, unenforceable or ineffective as against Shiny Times for any reason whatsoever";[20]

(d) agreed that PAX LP's demand for payment would constitute *prima facie* evidence that such payment was due and owing;[21]

(e) agreed that PAX LP could seek repayment from either Shiny Times or Kwok;[22] and

(f) agreed to indemnify PAX LP from "any and all costs, claims losses, [and] expenses (including legal fees)" incurred as a result of exercising or enforcing the Personal Guarantee.[23]

Furthermore, Kwok agreed to waive several defenses, including those based on the winding up or dissolution of Shiny Times, or PAX LP's inability to recover against Shiny Times "for any

---

[13] PAX LP Aff. ¶¶ 7, Ex. A (2011 Facility Letter), 9.

[14] PAX LP Aff. ¶ 7, Ex. A (2011 Facility Letter).

[15] PAX LP Aff. ¶ 8, Ex. B (Personal Guarantee).

[16] PAX LP Aff. ¶ 8, Ex. B ¶ 2.1 (Personal Guarantee).

[17] Francis Aff. ¶ 23. It is unclear, but presumably Kwok is referring to Shiny Times as his family.

[18] PAX LP Aff. ¶ 8, Ex. B ¶ 2.1(a) (Personal Guarantee).

[19] PAX LP Aff. ¶ 8, Ex. B ¶ 2.1(a) (Personal Guarantee).

[20] PAX LP Aff. ¶ 8, Ex. B ¶ 2.1(b) (Personal Guarantee).

[21] PAX LP Aff. ¶ 8, Ex. B ¶ 2.2 (Personal Guarantee) ("[T]he amount specified in a demand by [PAX LP] pursuant to this Guarantee as to the amount of any Obligation or the amount due from the Guarantor under this Guarantee shall be *prima facie* evidence that such Obligation or such amount is due and payable.").

[22] PAX LP Aff. ¶ 8, Ex. B ¶ 3.3 (Personal Guarantee) (PAX LP "shall not be obliged before exercising any of the rights conferred on it by this Guarantee or by law to seek to recover amounts due from Shiny Times or to exercise or enforce any other right or security it may have or hold in respect of the Obligations").

[23] PAX LP Aff. ¶ 8, Ex. B ¶ 5.3 (Personal Guarantee).

6

FILED: NEW YORK COUNTY CLERK 07/07/2017 06:05 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 28
RECEIVED NYSCEF: 07/07/2017

20-12411-jlg    Doc 14-25    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 25
Pg 12 of 27

reason."[24] Kwok also agreed to a catchall waiver of any conceivable defenses based on "any other act, event or omission which might operate to discharge, impair or otherwise affect the Guarantor or any of the Obligations or any of the rights, powers, and remedies conferred upon [PAX LP] by this Guarantee or by law."[25] In other words, Kwok signed an unambiguous and ironclad guarantee that he would satisfy Shiny Times' debt to PAX LP regardless of the circumstances.

## III.    THE EXTENSIONS AND SHINY TIMES' FAILURE TO REPAY PAX LP

Shiny Times did not repay any portion of the loan principal or accrued interest before the June 30, 2012 repayment date set forth in the 2011 Facility Letter, and the parties subsequently entered into a series of extensions, each labeled a "Deed of Settlement."

On April 19, 2013, PAX LP, Shiny Times, and Kwok entered into the first Deed of Settlement (the "Original Deed of Settlement") along with Beijing Pangu Investment Inc. ("Beijing Pangu"), another company within the Kwok empire.[26] The Original Deed of Settlement provided that the then-total outstanding amount due under the 2011 Facility Letter plus all accrued and unpaid interest was $52 million and that such amount would be no longer due and owing upon the satisfaction of the following conditions:[27]

- If PAX LP completed the purchase of three apartments from Beijing Pangu in a series of three separate transactions for approximately $5 million each, for a total of approximately $15 million;[28] and

- If Shiny Times completed three installment payments to PAX LP of approximately $5 million each—one installment payment to be made after each separate apartment purchase—for a total of approximately $15 million.[29]

---

[24] PAX LP Aff. ¶ 8, Ex. B ¶ 2.1(b) (Personal Guarantee).
[25] PAX LP Aff. ¶ 8, Ex. B ¶ 3.4(g) (Personal Guarantee).
[26] PAX LP Aff. ¶ 10, Ex. C (Original Deed of Settlement).
[27] PAX LP Aff. ¶¶ 10, Ex. C ¶ 4.1 (Original Deed of Settlement), 11.
[28] PAX LP Aff. ¶¶ 10, Ex. C ¶ 3.1 (Original Deed of Settlement), 11.
[29] PAX LP Aff. ¶¶ 10, Ex. C ¶ 2.2 (Original Deed of Settlement), 11.

FILED: NEW YORK COUNTY CLERK 07/07/2017 06:05 PM
NYSCEF DOC. NO. 28
INDEX NO. 652077/2017
RECEIVED NYSCEF: 07/07/2017

20-12411-jlg    Doc 14-25    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 25
Pg 13 of 27

Before PAX LP was required to purchase any of the three apartments, Beijing Pangu was

required under the Original Deed of Settlement to satisfy certain conditions precedent relating to

title, taxes, and other common aspects of real estate transactions.[30]  If any of these conditions

were not satisfied for *any* of the three apartments by July 31, 2013, the Original Deed of

Settlement would be terminated in its entirety, and the 2011 Facility Letter would revert into full

effect:

> In the event that all conditions precedent [relating to title, taxes, and other
> common aspects of real estate transactions] for all Apartments have not been
> satisfied by 31 July 2013 (or such later date agreed by the Parties in writing), *then
> the entire settlement as contemplated under this Deed shall be terminated* and the
> Parties acknowledge that the [2011 Facility Letter] shall revert and be in full force
> and effect immediately after 31 July 2013 (or such later date agreed by the Parties
> in writing) and Shiny Times shall be obliged to settle the Total Outstanding
> Amount and any interest accrued thereon in accordance with the terms and
> conditions of the [2011 Facility Letter].[31]

Beijing Pangu failed to satisfy the conditions precedent by July 31, 2013,[32] and PAX LP

therefore did not, and could not, complete its purchase of any of the apartments,[33] and Shiny

Times did not, and could not, make the requisite installment payments to PAX LP under the

Original Deed of Settlement.[34]

Four supplemental deeds of settlement—on December 3, 2013,[35] May 15, 2014,[36]

July 11, 2014,[37] and February 10, 2015[38]—extended the dates in the Original Deed of

---

[30] PAX LP Aff. ¶¶ 10, Ex. C ¶ 3.2 (The Original Deed of Settlement provided that "(e) The Apartments are of clean
title, free and clear of any encumbrance"; "(g) Beijing Pangu shall have delivered to [PAX LP] or its onshore
designee an invoice for the purchase of the Apartments which is approved by [PAX LP] or its onshore designee";
"(h) Beijing Pangu shall have provided evidence to [PAX LP] or its onshore designee regarding the payment of all
relevant taxes and charges in connection with the sale and purchase of the Apartments made by Beijing Pangu"; "(i)
Beijing Pangu shall have delivered the House Ownership Certificate of the Apartments to [PAX LP] or its onshore
designee"), 12.

[31] PAX LP Aff. ¶¶ 10, Ex. C ¶ 3.4 (Original Deed of Settlement), 12.

[32] PAX LP Aff. ¶ 12.

[33] PAX LP Aff. ¶ 17.

[34] PAX LP Aff. ¶¶ 12, 17.

[35] PAX LP Aff. ¶¶ 10, Ex. D (Supplemental Deed of Settlement), 12.

[36] PAX LP Aff. ¶¶ 10, Ex. E (Second Supplemental Deed of Settlement), 12.

[37] PAX LP Aff. ¶¶ 10, Ex. F (Third Supplemental Deed of Settlement), 12.

8

FILED: NEW YORK COUNTY CLERK 07/07/2017 06:05 PM
NYSCEF DOC. NO. 28
INDEX NO. 652077/2017
RECEIVED NYSCEF: 07/07/2017
20-12411-jlg    Doc 14-25    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 25
Pg 14 of 27

Settlement, including the repayment date and the date for Beijing Pangu to satisfy the conditions precedent.[39] Each of the supplemental deeds of settlement had the same terms as the Original Deed of Settlement. And the result was the same each time: Beijing Pangu failed to satisfy the conditions precedent, PAX LP therefore did not, and could not, complete its purchase of any of the apartments, and Shiny Times did not, and could not, make the requisite installment payments to PAX LP under the supplemental Deeds of Settlement.[40]

Finally, on March 31, 2015, Shiny Times and PAX LP, together with Worldwide Opportunity Holdings Limited and Empire Growth Holdings Limited, entered into an Option Agreement (the "Option Agreement") that provided, among other things, for the repayment of amounts owed by Shiny Times to PAX LP[41] via a share sale transaction. Pursuant to its terms, the Option Agreement was to terminate if certain conditions stated in the Option Agreement were not satisfied.[42] Those conditions were not satisfied, and the Option Agreement was terminated without negating Shiny Times' obligation to pay PAX LP the amount owed under the 2011 Facility Letter.[43]

Thus, the entire settlement was terminated, the 2011 Facility Letter reverted to being in full force and effect,[44] Kwok's obligations under the Personal Guarantee (a condition precedent to the 2011 Facility Letter) are fully enforceable, and Kwok is independently liable under the

---

[38] PAX LP Aff. ¶¶ 10, Ex. G (Fourth Supplemental Deed of Settlement), 12.

[39] The Third and Fourth Supplemental Deeds of Settlement are undated, but their dates are set forth in the Option Agreement. PAX LP Aff., Ex. H ¶ 1.

[40] PAX LP Aff. ¶¶ 12, 16–17.

[41] PAX LP Aff. ¶ 14, Ex. H ¶¶ 2–3 (Option Agreement).

[42] PAX LP Aff. ¶ 14, Ex. H ¶ 4.4 ("If all the [conditions precedent] have not been satisfied or waived [by June 30, 2015] then this Agreement . . . shall terminate immediately and have no further effect.") (Option Agreement).

[43] PAX LP Aff. ¶ 15.

[44] PAX LP Aff. ¶¶ 10, Ex. C ¶ 3.4 (Original Deed of Settlement), 17.

9

FILED: NEW YORK COUNTY CLERK 07/07/2017 06:05 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 28
20-12411-jlg    Doc 14-25    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 25
RECEIVED NYSCEF: 07/07/2017
Pg 15 of 27

Personal Guarantee for the full amount of Shiny Times' debt owed to PAX LP under the 2011

Facility Letter.[45]

## IV.    PAX LP SEEKS TO ENFORCE ITS CONTRACTUAL RIGHTS AND COLLECT AMOUNTS OWED

On October 16, 2015, after the Deeds of Settlement and Option Agreement were

terminated and the 2011 Facility Letter and Personal Guarantee reverted to being in full force

and effect, PAX LP sent a written notice of demand (the "Notice of Demand") to Kwok's Hong

Kong address, as specified under the terms of the Personal Guarantee.[46]  The Notice of Demand

informed Kwok that "Shiny Times ha[d] failed to repay any part of the sum due" under the 2011

Facility Letter and demanded immediate payment of the amount then due and owing,

$71,818,633.44.[47]  The Notice of Demand also informed Kwok that legal proceedings might be

commenced against him, and reserved PAX LP's contractual rights under the 2011 Facility

Letter and the Personal Guarantee.[48]  Kwok never responded.[49]

On February 19, 2016, after having been ignored by Kwok for more than four months,

PAX LP sent a letter to Shiny Times demanding payment of $82,219,404.08 (the amount then

due and owing).[50]  When Shiny Times did not respond,[51] PAX LP submitted an application in

court in the BVI on February 29, 2016 seeking the appointment of joint liquidators to put Shiny

Times—a BVI corporation that lists Kwok as its sole shareholder and director—into

---

[45] PAX LP Aff. ¶¶ 15–18.  The 2011 Facility Letter and the Personal Guarantee provide for Hong Kong law to govern.  *Id.* at ¶¶ 7, Ex. A ¶ 20, 8, Ex. B ¶ 10.

[46] PAX LP Aff. ¶ 19, Ex. I (Notice of Demand); *see also* PAX LP Aff. ¶ 8, Ex. B ¶ 2.1(a) (Personal Guarantee) ("The Guarantor . . . agrees that promptly on [PAX LP's] demand he will pay to [PAX LP] all Obligations that are due but unpaid.").

[47] PAX LP Aff. ¶ 19, Ex. I (Notice of Demand).

[48] PAX LP Aff. ¶ 19, Ex. I (Notice of Demand).

[49] PAX LP Aff. ¶ 20.

[50] PAX LP Aff. ¶ 21, Ex. J (Shiny Times Demand Letter).

[51] PAX LP Aff. ¶ 22.

FILED: NEW YORK COUNTY CLERK 07/07/2017 06:05 PM
NYSCEF DOC. NO. 28
INDEX NO. 652077/2017
RECEIVED NYSCEF: 07/07/2017

20-12411-jlg    Doc 14-25    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 25
Pg 16 of 27

liquidation.[52]  The application alleged that (i) Shiny Times had failed to pay the sum then-owing

of $82,410,197.87, (ii) Shiny Times was unable to pay its debts, and (iii) Shiny Times was

insolvent and should be liquidated.[53]  Although Shiny Times was in fact placed into liquidation

as a result of the BVI proceeding, PAX LP was unable to collect any of the amounts owed to it

under the 2011 Facility Letter or the Personal Guarantee.[54]

　　　　To date, neither Shiny Times nor Kwok has paid any amount due and owing to PAX LP

under the 2011 Facility Letter or the Personal Guarantee.[55]

## V.    THIS LAWSUIT

　　　　After being unable to collect any of the monies owed to it under the 2011 Facility Letter

or the Personal Guarantee (through the Shiny Times liquidation proceeding or otherwise), PAX

LP commenced this action by filing a complaint against Kwok on April 18, 2017 for damages

that now total approximately $88 million, including contractual interest.[56]  On May 26, 2017,

PAX LP and Kwok filed a stipulation extending Kwok's deadline "to respond" to PAX LP's

complaint until June 29, 2017.[57]  On June 29, 2017, Kwok filed a motion to dismiss under CPLR

§ 327, in which he asserted only one, unavailing ground for dismissal: *forum non conveniens*.

The return date for Kwok's dismissal motion is August 8, 2017, the same date on which PAX

LP's attachment motion is returnable, and PAX LP respectfully requests that they be heard

together.[58]

---

[52] PAX LP Aff. ¶ 23.
[53] PAX LP Aff. ¶ 23.
[54] PAX LP Aff. ¶ 23.
[55] PAX LP Aff. ¶ 24.
[56] Affidavit of Edward Moss ("Moss Aff.") ¶ 2, Ex. A ¶ 7 (Complaint).
[57] Moss Aff. ¶ 3, Ex. B (Stipulation).
[58] Moss Aff. ¶ 4, Ex. C (Motion to Dismiss).  Notably, Kwok's *forum non conveniens* motion should not impact PAX LP's attachment motion for at least two independent reasons.  First, as PAX LP will demonstrate in its opposition brief, Kwok's motion borders on frivolous.  Among other grounds PAX LP will establish, it is entirely fair and appropriate to sue Kwok just a few subway stops away from his residence on Fifth Avenue—in a court where he has filed his own lawsuits, and in a city and country where he has taken refuge while being actively pursued by Chinese authorities (who have asked Interpol to put out a global warrant for his arrest).  Indeed, Kwok's

11

## VI.    THE ASSET AT ISSUE:  KWOK'S LUXURY NEW YORK CITY RESIDENCE

Kwok owns and maintains the Residence, which comprises the entire 18th floor of The Sherry-Netherland Hotel at 781 Fifth Avenue, New York, New York.[59]  Kwok purchased the Residence on or around March 24, 2015 for $67.5 million through his shell company, Genever.[60] Court records and other public information confirm that Kwok owns and controls Genever (and thus the Residence) and that he lives in the Residence.[61]  Genever was organized just a month before Kwok purchased the Residence; it has no shareholders other than Kwok and appears to have been organized by Kwok for the sole purposes of purchasing and holding the Residence.[62] The Residence is currently listed for sale for $78 million,[63] and PAX LP has been unable to identify any U.S.-based asset owned by Kwok other than the Residence and Genever that is sufficiently valuable to substantially satisfy any judgment in this case.[64]

## VII.    KWOK HAS VAST OFFSHORE HOLDINGS AND TIES

There is a reasonable basis to suspect that once Kwok consummates the sale or transfer of the Residence and/or Genever, he will ensure that any proceeds from such sale or transfer are moved immediately outside the United States.[65]  First, maintaining assets offshore is nothing new to Kwok, who keeps the majority of his assets offshore despite living in the United States.[66]

---

motion papers glaringly omit to acknowledge that Hong Kong is not in fact a viable alternative forum because Kwok *will never return there of his own free will while he is one of China's most wanted fugitives*.  Moreover, although Kwok's motion notes that the Personal Guarantee has a Hong Kong choice of law provision, it similarly fails to mention the provision consenting to PAX LP suing him in *any court of competent jurisdiction* in addition to Hong Kong.  PAX LP Aff. ¶ 8, Ex. B, ¶ 11.4.  Thus, Kwok *specifically agreed* to be sued under the Personal Guarantee outside of Hong Kong, which under the circumstances here is not actually an alternative forum.  Second, Kwok's *forum non conveniens* motion cannot affect PAX LP's likelihood of success on the merits because it presents only a "nonmerits" issue.  *See Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 424 (2007) (explaining that "a *forum non conveniens* determination [is] a nonmerits issue").

[59] Francis Aff. ¶¶ 6–8.
[60] Francis Aff. ¶¶ 7–8.
[61] Francis Aff. ¶¶ 8–10.
[62] Francis Aff. ¶¶ 12–14.
[63] Francis Aff. ¶ 15.
[64] Francis Aff. ¶ 6.
[65] Francis Aff. ¶ 6.
[66] Francis Aff. ¶ 16.

12

FILED: NEW YORK COUNTY CLERK 07/07/2017 06:05 PM
NYSCEF DOC. NO. 28

INDEX NO. 652077/2017

RECEIVED NYSCEF: 07/07/2017

20-12411-jlg    Doc 14-25    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 25
Pg 18 of 27

For example, Kwok owns multiple luxury residences around the world, including in Beijing,

London, Tokyo, and Abu Dhabi, and owns and controls at least five entities organized under the

laws of the BVI.[67]  Second, although Kwok has stated publicly that his wealth in China exceeds

$17 billion, many of his offshore assets are reported to have been frozen because fraud charges

are pending against him in China.[68]  There is thus good reason to suspect that Kwok will try to

ensure that his non-frozen assets, including the Residence and Genever, cannot be accessed

either by governmental bodies or judgment creditors.[69]

## VIII.  AN EXPANDING LIST OF ALLEGATIONS AGAINST KWOK

Kwok is facing increasing pressure in addition to the asset freezes.  Chinese

governmental authorities actively are pursuing his extradition—he is "often presented as China's

most-wanted man"[70]—and he is a defendant in a growing number of lawsuits both in New York

State Court and abroad.[71]  On June 9, 2017, the *South China Morning Post* reported that three

employees of another Kwok entity, Beijing Pangu Investment Company Limited, pleaded guilty

to fraud charges, testifying that they had falsified documents at Kwok's direction to obtain bank

loans totaling RMB 3.2 billion ($470 million).[72]  And on June 16, 2017, the *Shanghai Daily*

reported those same employees were sentenced to prison terms, with Beijing Pangu Investment

Company Limited deputy manager Lu Tao sentenced to two years and three months, and that

Beijing Pangu Investment Company Limited was fined $36 million.[73]  This is particularly

relevant because (i) PAX LP has loaned money to Kwok, (ii) Beijing Pangu Investment

Company Limited deputy manager Lu Tao served as the point person for Beijing Pangu during

---

[67] Francis Aff. ¶ 16.
[68] Francis Aff. ¶ 17.
[69] Francis Aff. ¶ 17.
[70] Francis Aff. ¶ 18, Ex. M.
[71] Francis Aff. ¶¶ 18–20.
[72] Francis Aff. ¶ 19, Ex. N.
[73] Francis Aff. ¶ 19, Ex. O.

FILED: NEW YORK COUNTY CLERK 07/07/2017 06:05 PM
NYSCEF DOC. NO. 28

INDEX NO. 652077/2017
RECEIVED NYSCEF: 07/07/2017

20-12411-jlg    Doc 14-25    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 25
Pg 19 of 27

PAX LP's negotiations regarding the Deeds of Settlement (which attempted to resolve Kwok's non-payment of the amounts owed ), and (iii) the fraudulent loan reportedly was obtained to fund improvements at Pangu Plaza—the same complex that houses the apartments that are the subjects of the Deeds of Settlement.[74]

Further reports indicate that the next day, Chinese authorities indicted employees of yet two more companies owned by Kwok on charges implicating Kwok as the mastermind behind multiple frauds.[75] A prosecutor in Liaoning Province filed charges against executives and employees of Beijing Pangu Investment Co., alleging Kwok ordered employees to transfer more than 400 million yuan (nearly $60 million) to companies controlled by Kwok so Kwok could pocket the proceeds.[76] Separately, a prosecutor in Henan Province filed a lawsuit against another Kwok company, Henan Yuda Real Estate Company, and its senior staff on charges of defrauding 1.5 billion yuan ($220 million) from seven banks.[77]

Given these developments, it is reasonable to suspect that Kwok may not remain in the United States for long.[78] And Kwok would have the means to leave the United States quickly and quietly following a disposition of the Residence or Genever, and the transfer of the proceeds offshore. Kwok owns a private jet, has publicly stated that he holds 11 different passports, and, as noted above, owns several other luxury residences around the world.[79] Of course, absconding with the proceeds of a disposition of the Residence or Genever would be consistent with Kwok's recent Tweet stating that "I neither have to nor should I repay this amount of boring money

---

[74] PAX LP Aff. ¶ 13; Francis Aff. ¶ 19, Ex. N.
[75] Francis Aff. ¶ 19, Ex. P.
[76] Francis Aff. ¶ 19, Ex. P.
[77] Francis Aff. ¶ 19, Ex. P.
[78] Francis Aff. ¶ 18.
[79] Francis Aff. ¶ 21.

14

irrelevant to me."[80]  In other words, in response to PAX LP's lawsuit, Kwok has stated publicly

that he remains unwilling to repay PAX LP.

## ARGUMENT

### I.    PLAINTIFF SATISFIES THE ELEMENTS FOR AN ORDER OF ATTACHMENT TO SECURE A POTENTIAL JUDGMENT IN ITS FAVOR FOR $88 MILLION

PAX LP is entitled to an order attaching the Residence and Genever because it can

establish that "(i) there is a cause of action; (ii) it is probable that [it] will succeed on the merits;

(iii) at least one ground for attachment provided in [C.P.L.R. §] 6201 exists; and (iv) the amount

demanded from the defendant exceeds all counterclaims known to the plaintiff."  *Melcher v.*

*Apollo Med. Fund Mgmt. LLC*, No. 604047, 2013 WL 6123785 (N.Y. Sup. Ct. Nov. 18, 2013)

(citing C.P.L.R. § 6212)).

### A.    PAX LP Is Likely to Succeed on the Merits of Its Breach of Contract Claim

PAX LP has alleged a straightforward breach of contract and has proffered more than

sufficient supporting evidence to demonstrate that it will prevail on the merits.  Although the

Personal Guarantee is governed by Hong Kong law,[81] both New York and Hong Kong law treat

Kwok's nonpayment of a contract identically: as a breach.  There is "no actual conflict between

Hong Kong law and New York law as they apply to a claim for breach of contract."  *Reid v.*

*Ernst & Young Glob. Ltd.*, 831 N.Y.S.2d 362 (Sup. Ct. 2006).  To properly state a claim for

breach of contract under either law, a party must allege (i) the existence of a contract, (ii) the

plaintiff's performance under the contract, (iii) the defendant's breach of that contract, and

(iv) resulting damages to the plaintiff.  *See JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 893

---

[80] Francis Aff. ¶ 23.
[81] PAX LP Aff. ¶ 8, Ex. B ¶ 10 (Personal Guarantee).

FILED: NEW YORK COUNTY CLERK 07/07/2017 06:05 PM
NYSCEF DOC. NO. 28
INDEX NO. 652077/2017
RECEIVED NYSCEF: 07/07/2017
20-12411-jlg    Doc 14-25    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 25
Pg 21 of 27

N.Y.S.2d 237, 239 (2d Dep't 2010). The application of the undisputed facts to the law demonstrates that PAX LP can establish these elements.

Under the Personal Guarantee, which was a condition precedent to the 2011 Facility Letter, Kwok agreed to "irrevocably and unconditionally" guarantee Shiny Times' payment of all amounts owed under the 2011 Facility Letter.[82] A personal guarantee in exchange for a loan is an enforceable contract. *See Movado Grp., Inc. v. Presberg*, 687 N.Y.S.2d 116, 116 (1999) ("An extension of credit is ample consideration for the execution of a guaranty."); *Teitelbaum v. Mordowitz*, 669 N.Y.S.2d 811 (1st Dep't 1998) ("Consideration for a guarantee can be past or executed, where, as here, the guarantee recites in writing that it is being given in exchange for a loan and there is no question that the proceeds of the loan were received."). Indeed, in his recent Tweets, Kwok has referred to PAX LP as the "lender," himself as the "guarantor," and the Personal Guarantee as a "big, big guarantee given by me . . . for financing."[83] Thus, there is no doubt about the parties' obligations under the contract. It also is undisputed that Kwok has not repaid any of the debt owed to PAX LP, and thus that damages are at least $88 million (and mounting).

Kwok has not yet attempted to assert any substantive defenses, and there are none that would change the analysis. To begin, PAX LP is entitled to all legitimate inferences as the party seeking the attachment. *See JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.*, 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004) ("In determining whether there is a likelihood of success on the merits, all legitimate inferences should be drawn in favor of the party seeking the attachments."). Moreover, Kwok explicitly waived any conceivable defenses, including those based on "any other act, event or omission which might operate to discharge, impair or

---

[82] PAX LP Aff. ¶ 8, Ex. B ¶ 2.1, Recital B.
[83] Francis Aff. ¶ 23.

otherwise affect the Guarantor or any of the Obligations or any of the rights, powers, and remedies conferred upon [PAX LP] by this Guarantee or by law."[84]  Thus, it is probable that PAX LP will succeed on the merits.

## B.    PAX LP Satisfies the Requirements of C.P.L.R. § 6201(3)

PAX LP satisfies the requirements for a prejudgment attachment because it can show "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property or removed it from the state, *or is about to do any of these acts*."  *See* C.P.L.R. § 6201(3) (emphasis supplied).  Direct proof of intent can rarely be obtained, and, therefore, must be inferred from the circumstances.  *See Arzu v. Arzu*, 597 N.Y.S.2d 322, 325 (1st Dep't 1993) ("[I]t is not always practicable to establish by proof the existence of a fraudulent intent on the part of the debtor even when in reality it exists.").

The circumstances here support the reasonable inference that Kwok is about to attempt to frustrate a future judgment against him by disposing of his only valuable asset in the United States, ensuring that its proceeds end up in an offshore account, and thereby rendering himself judgment-proof.  *See Bank of Leumi Trust Co. of N.Y. v. Istim, Inc.*, 892 F. Supp. 478, 485 (S.D.N.Y. 1995) (granting attachment in part where defendant had "no significant assets anywhere within the United States" and in the event plaintiff prevailed, defendant thus would have "little or no assets for [plaintiff] to attach").  Kwok's only identifiable asset in the United States that can substantially satisfy any judgment is the Residence (held by Genever), which is currently listed for sale for $78 million.[85]  That potential price tag supports an attachment here.  *See Jannuzzo v. De Cuevas*, 627 N.Y.S.2d 919 (1st Dep't 1995) (upholding attachment "based

---

[84] PAX LP Aff. ¶ 8, Ex. B ¶ 3.4(g) (Personal Guarantee).
[85] Francis Aff. ¶ 6.

17

upon plaintiff's proof that defendant was attempting to frustrate the judgment by assigning art

work that constituted the bulk of her assets in this state").[86]

As shown above, Kwok's attempt to dispose of the Residence—evidenced by its

brokerage listing—is by no means the only factor suggesting his intention to frustrate PAX LP's

enforcement of its anticipated judgment, and should not be viewed in a vacuum.  For years,

Kwok successfully has avoided repaying the debt he owes under the 2011 Facility Agreement

and Personal Guarantee by ignoring PAX LP's demand (and presumably ensuring that Shiny

Times had no assets by the time it was liquidated in the BVI proceeding).  And, as previously

noted, just after this lawsuit was filed, Kwok Tweeted that he did not have to and should not

repay PAX LP, even though the amount owed was "small" and "irrelevant" to him.[87]  These two

factors further support an attachment.  *See Coley v. Vannguard Urban Improvement Ass'n, Inc*.,

No. 12-CV-5565, 2016 WL 7217641, at *10 (E.D.N.Y. Dec. 13, 2016) (granting attachment

where "[t]he cumulative effect of [the] pattern or series of transactions and course of conduct

after the pendency of . . . suits by creditors as well as the general chronology of the events and

transactions under inquiry strongly indicate[d] fraudulent activity."); *cf. 135 Flat LLC v. Triadou

SPV N.A.*, No. 15-CV-5345 (AJN), 2016 WL 5945912, at *10 (S.D.N.Y. June 24, 2016)

(examining in part "the existence or cumulative effect of a pattern or series of transactions or

course of conduct after the incurring of debt" in granting attachment).

As noted, it also very recently was reported that, among others, Kwok instructed the same

employee who served as Kwok's point person for the PAX LP Deeds of Settlement to commit

---

[86] Although "the possibility that [defendants] will remove all of their funds from New York" has on its own been deemed "too remote to justify continuing the prejudgment attachment," *Bank of China, N.Y. Branch v. NBNM L.L.C.*, 192 F. Supp. 2d 183, 188 (S.D.N.Y. 2002), the numerous and unique other indicia in this case pointing to Kwok's pattern of frustrating—and the motivation and means to continue frustrating—PAX LP's collection efforts tip the balance here in favor of an attachment.

[87] Francis Aff. ¶ 23.

fraud in order to secure other loans for his business.[88]   And should Kwok dispose of the

Residence or Genever, he has the means to transfer the proceeds to one of his many offshore

accounts, grab one or more of his 11 different passports, and quickly and quietly leave the United

States on his private jet.[89]   Thus, it is reasonable to infer that Kwok intends to try to thwart PAX

LP yet again, this time by disposing of his only known asset in New York large enough to satisfy

a judgment in PAX LP's favor.  *See, e.g., Fireman's Fund Ins. Co. v. Kapralos*, 942 F. Supp.

836, 841 (E.D.N.Y. 1996) (granting attachment where "information ha[d] been furnished to

indicate that, absent an Order of Attachment, defendants [we]re likely to funnel assets to

locations outside of  New York in an effort to make any money judgment . . . uncollectable").

Finally, although it is not a required element of proof for an attachment under C.P.L.R.

6201 (unlike a motion for an injunction), it is noteworthy that Kwok himself has effectively

admitted that the attachment would not cause him any hardship.  Indeed, as noted above, Kwok

boastfully Tweeted in response to this lawsuit that $88 million is "merely a small amount of

money for [him]."[90]  By contrast, that sum is enormously significant to PAX LP, which is

pursuing this case on behalf of its partners, and so the balance of hardships weighs heavily in

favor of the requested attachment here.[91]

### C.    Defendant Has No Counterclaim That Exceeds the Amount Owed

Finally, PAX LP is entitled to an attachment here because "the amount demanded from

. . . [D]efendant exceeds all counterclaims known to the plaintiff."  C.P.L.R. § 6212(a).  Kwok

has no conceivable counterclaim against PAX LP under the facts in issue—let alone one that

could result in a judgment exceeding $88 million.  And while it is possible that Kwok may

---

[88] PAX LP Aff. ¶ 13; Francis Aff. ¶ 19.
[89] Francis Aff. ¶ 21.
[90] Francis Aff. ¶ 23.  Of course, Kwok holds his wealth offshore, so even though $88 million may be only a fraction of it, PAX LP would not be able to access his other assets in order to enforce any judgment issued by this Court.
[91] PAX LP Aff. ¶ 18.

FILED: NEW YORK COUNTY CLERK 07/07/2017 06:05 PM
INDEX NO. 652077/2017

NYSCEF DOC. NO. 28

20-12411-jlg    Doc 14-25    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 25

RECEIVED NYSCEF: 07/07/2017

Pg 25 of 27

nevertheless attempt to manufacture a counterclaim, doing so would still be insufficient. *See Am. Jerex Co. v. Universal Aluminum Extrusions, Inc.*, 340 F. Supp. 524, 529 (E.D.N.Y. 1972) (Under C.P.L.R. § 6212(a), "the existence of a pending counterclaim which is contested does not defeat an attachment."); *see also Bank Leumi Trust Co.*, 892 F. Supp. at 482 (stating that mere existence of a counterclaim does not defeat an attachment where the party seeking attachment "contends that [a defendant's] counterclaims are entirely without merit").

## II.    GENEVER IS KWOK'S ALTER EGO

PAX LP is entitled to an attachment of both the Residence and Genever because Genever is Kwok's alter ego. *See Matter of Russian-Brazilian Holdings, Inc.(Saraev)*, 602 N.Y.S.2d 352, 353 (1st Dep't 1993) (affirming attachment of property because plaintiff sufficiently pleaded that attached property was owned by alter ego of defendant). A corporation is treated as an alter ego of the defendant and veil piercing is appropriate "in order to achieve equity when a corporation has been so dominated by individuals or other entities that it primarily transacts the dominators' business instead of its own." *Kain Dev., LLC v. Krause Properties, LLC*, 14 N.Y.S.3d 520, 526 (3d Dep't 2015); *Olivieri Constr. Corp. v. WN Weaver St., LLC*, 41 N.Y.S.3d 59, 62 (2d Dep't 2016) (stating same proposition). Factors indicating domination of one corporate entity by another include overlap in ownership, officers, directors and personnel, undercapitalization of the alter ego corporation, and the commingling of assets. *See MPEG LA, L.L.C. v. GXI Int'l, LLC*, 7 N.Y.S.3d 63, 64 (1st Dep't 2015) (denying motion to dismiss and listing factors sufficient to support piercing the corporate veil).

Kwok's control over Genever can only be characterized as complete. Court documents filed by Kwok himself establish that he is the sole shareholder, owner, and operator of

20

FILED: NEW YORK COUNTY CLERK 07/07/2017 06:05 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 28
20-12411-jlg   Doc 14-25   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 25
RECEIVED NYSCEF: 07/07/2017
Pg 26 of 27

Genever.[92]  *See 2406-12 Amsterdam Assocs. LLC v. Alianza LLC*, 25 N.Y.S.3d 167, 168 (1st

Dep't 2016) (affirming that plaintiff stated a claim based on alter ego liability where the alter ego

was 90% owned by defendant and the alter ego had no employees).  Genever is a "mere

'dummy' or 'shell' entity" that has no employees, business purpose, website, registered phone

number, or offices, and appears to have been created solely as a vehicle to purchase the

Residence.[93]  *See Ventresca Realty Corp. v. Houlihan*, 838 N.Y.S.2d 609, 610 (2d Dep't 2007)

(finding alter ego liability where corporation had no other assets, "no investments, conducted no

business, had no employees, did not possess its own telephone line, and had no income other

than the funds periodically contributed to it by the individual defendant").  And there exists a

clear comingling of assets, as Kwok lives in the Residence.  *See Krause Properties, LLC*, 14

N.Y.S.3d at 526 (holding that intermingling of assets of individual and corporation raised triable

issues of fact as to veil piercing).  Accordingly, Kwok is sufficiently entangled with, and in

control of, Genever to warrant alter ego treatment with respect to the ownership of the

Residence.

## CONCLUSION

For the foregoing reasons, this Court should enter an order of attachment on Kwok's

Residence at The Sherry-Netherland Hotel, his interest in Genever, and/or on the proceeds from

any sale or transfer thereof, in order to secure the inevitable judgment in PAX LP's favor on its

meritorious breach of contract claim.

---

[92] Francis Aff. ¶¶ 8–9, Ex. D, ¶¶ 21–22.
[93] Francis Aff. ¶¶ 12–14.

21

FILED: NEW YORK COUNTY CLERK 07/07/2017 06:05 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO.: 28
RECEIVED NYSCEF: 07/07/2017

20-12411-jlg    Doc 14-25    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 25
Pg 27 of 27

DATED:    New York, New York
              July 7, 2017

Respectfully submitted,

O'MELVENY & MYERS LLP

By: /s/ *Edward Moss*
Edward Moss (emoss@omm.com)
Stuart Sarnoff (ssarnoff@omm.com)
7 Times Square
New York, NY 10036
(212) 326-2000

-and-

Robert W. Seiden (rseiden@seidenlegal.com)
1120 Avenue of the Americas
New York, NY 10036
(212) 626-6708

*Attorneys for Plaintiff Pacific Alliance Asia*
*Opportunity Fund L.P.*

22