# EXHIBIT 38

20-12411-jlg   Doc 14-38   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 38
Pg 2 of 17

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PACIFIC ALLIANCE ASIA OPPORTUNITY
FUND L.P.,

                              Plaintiff,          Index No. 652077/2017

              v.                                  Part 61

KWOK HO WAN, *a/k/a* KWOK HO, *a/k/a* GWO        **Oral Argument Requested**
WEN GUI, *a/k/a* GUO WENGUI, *a/k/a* GUO
WEN-GUI, *a/k/a* WAN GUE HAOYUN, *a/k/a*
MILES KWOK, *a/k/a* HAOYUN GUO,                   Motion Seq. No. 3

                              Defendant.


**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF
PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.'S
MOTION FOR PRE-JUDGMENT ORDER OF ATTACHMENT**

FILED: NEW YORK COUNTY CLERK 05/23/2018 08:08 PM

NYSCEF DOC. NO. 186

INDEX NO. 652077/2017

RECEIVED NYSCEF: 05/23/2018

20-12411-jlg    Doc 14-38    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 38
Pg 3 of 17

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 4

I.   THE COURT CAN ATTACH THE RESIDENCE AND THE SHELL COMPANIES
     THROUGH WHICH KWOK OWNS IT. ..................................................................... 4

     A.   The Existence of a Prior Encumbrance Cannot Impact the Present Motion,  and
          Roscalitar 2 Does Not, in Any Event, Have a "Superior Claim" On the  Assets. .. 4

     B.   PAX LP Has Made the Requisite Showing to Pierce the Corporate Veil. ............. 5

II.  PAX LP HAS DEMONSTRATED KWOK'S INTENT TO DEFRAUD OR
     FRUSTRATE AN ANTICIPATED JUDGMENT. .......................................................... 6

III. PAX LP HAS ESTABLISHED PROBABILITY OF SUCCESS ON THE MERITS. ...... 8

IV.  KWOK'S REQUEST FOR A 50% UNDERTAKING IS UNSUPPORTABLE. ............ 10

CONCLUSION ...................................................................................................................... 11

i

FILED: NEW YORK COUNTY CLERK 05/23/2018 08:08 PM
INDEX NO. 652077/2017

NYSCEF DOC. NO. 186

20-12411-jlg    Doc 14-38    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 38

RECEIVED NYSCEF: 05/23/2018

Pg 4 of 17

# TABLE OF AUTHORITIES

**Cases**

*135 Flat LLC v. Triadou SPV N.A.*,
  No. 15-CV-5345 (AJN), 2016 WL 5945912 (S.D.N.Y. June 24, 2016) ................................ 4, 8

*2406-12 Amsterdam Assocs. LLC v. Alianza LLC*,
  136 A.D.3d 512 (1st Dep't 2016) ................................................................. 5

*Allstate Ins. Co. v Rozenberg*,
  No. 08-CV-565 ADS ETB, 2009 WL 9081080 (E.D.N.Y. Jan. 26, 2009) ............................ 11

*Arzu v. Arzu*,
  597 N.Y.S.2d 322 (1st Dep't 1993) ................................................................. 7

*Chase Manhattan Bank (Nat. Ass'n) v. 264 Water St. Assocs.*,
  174 A.D.2d 504 (1st Dep't 1991) ................................................................. 6

*Coley v. Vannguard Urban Improvement Ass'n, Inc.*,
  No. 12-CV-5565, 2016 WL 7217641 (E.D.N.Y. Dec. 13, 2016) ................................... 8

*Disney Enterprises, Inc. v. Finanz St. Honore, B.V.*,
  288 F. Supp. 3d 546 (E.D.N.Y. 2017) ............................................................. 4

*Garden City Irrigation, Inc. v Donna Salamanca*,
  No. 13304–04, 2005 WL 927001 (N.Y. Sup. Ct. April 18, 2005) ............................... 10

*Genger v. Genger*,
  No. 651089/2010, 2015 WL 112831 (N.Y. Sup. Ct. January 7, 2015) .......................... 5

*Grigsby v. Francabandiero*,
  152 A.D.3d 1195 (1st Dep't 2017) ................................................................. 6

*Herzi v Ateliers De La Haute-Garonne*,
  No. 15-cv-7702 (RJS), 2015 WL 8479676 (S.D.N.Y. Oct. 15, 2015) ........................... 10

*Hume v 1 Prospect Park ALF, LLC*,
  137 AD3d 1080 (2d Dep't 2016) ................................................................... 10

*In re Amaranth Natural Gas Commodities Litigation*,
  711 F. Supp. 2d 301 (S.D.N.Y. 2010) ............................................................. 10

*Manufacturers & Traders Tr. Co. v. Lowenstein*,
  91 A.D.2d 848 (4th Dep't 1982) ................................................................... 4

*Moquinon, Ltd. v. Gliklad*,
  No. 650366/2017, 2017 WL 1482163 (N.Y. Sup. Ct. April 6, 2017) ........................... 11

i

FILED: NEW YORK COUNTY CLERK 05/23/2018 08:08 PM
INDEX NO. 652077/2017

NYSCEF DOC. NO. 186

20-12411-jlg    Doc 14-38    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 38

Pg 5 of 17

RECEIVED NYSCEF: 05/23/2018

*N.Y. Dist. Council of Carpenters Pension Fund v KW Const., Inc.*,
No. 07-cv-8008 (RJS), 2008 WL 2115225 (S.D.N.Y. May 16, 2008) .................................... 10

*OSRecovery, Inc. v One Groupe Int'l, Inc.*,
305 F. Supp. 2d 340 (S.D.N.Y. 2004) ................................................................................. 11

*S.M. Pires v Frota Oceanica Brasileria, S.A.*,
No. 23829/76, 2005 WL 579500 (N.Y. Sup. Ct. Jan. 14, 2005) ............................................ 10

*Siegel v. Terrusa*,
222 A.D.2d 428 635 N.Y.S.2d 52 (1995) ............................................................................. 4

**Statutes**

CPLR § 6201(3) .............................................................................................................. 2, 7

N.Y. Comp. Codes R. & Regs. tit. 22, § 130-1.1 .............................................................. 4

ii

## PRELIMINARY STATEMENT[1]

Kwok's Opposition only serves to confirm that PAX LP is entitled to a pre-judgment

order attaching his luxury Residence in New York.  PAX LP demonstrated in its Motion that

Kwok has taken significant steps to defraud PAX LP or frustrate an anticipated judgment against

him in this case.  But far from refuting PAX LP's arguments, Kwok's Opposition makes matters

worse; in addition to defrauding PAX LP, it appears that Kwok has made a misrepresentation to

this Court about his own shell companies and assets.

In his Opposition, Kwok argues for the first time that the Residence cannot be attached

because it "ha[s] been pledged in [its] entirety to Roscalitar 2, an unrelated third party" and that,

therefore, "any rights PAX claims . . . are subordinate to the already-existing lien."  (Opp. at 9.) [2]

But a March 29, 2017 Uniform Commercial Code ("UCC-1") Report reflects that the Roscalitar

2 lien was *terminated* on March 29, 2017.  (*See* Hill Aff. ¶ 6, Ex. B.)  Notably, Kwok himself

does not risk swearing under oath about this Roscalitar 2 lien (despite obviously having personal

knowledge of the affairs of his wholly-owned and controlled shell company), but rather delegates

that duty to Yan Ping Wang, who has filed an affidavit claiming to be "an administrator for

[Kwok's] interests"—whatever that means.  Kwok's unwillingness personally to make this (or

for that matter any) sworn statement speaks volumes, and his other arguments are easily refuted.

---

[1] Defined terms have the same meaning as in PAX LP's Memorandum in Support of Motion to Attach, filed April 24, 2018 (Dkt. 123).  As used herein, "Hill Aff." is the Affirmation of John Hill, dated May 23, 2018; "Mot." is PAX LP's Memorandum in Support of Motion to Attach, filed April 24, 2018 (Dkt. 123); "Opp." is Defendant Kwok's Opposition to Mot., filed May 16, 2018 (Dkt. 167); "Searles Aff." is the Affirmation of Jillian M. Searles, filed May 16, 2018 (Dkt. 168); "Francis Aff." is the Affidavit of Nathaniel Francis, filed April 24, 2018 (Dkt. 140); and "Yang Aff." is the Affirmation of Catherine Yang, filed April 24, 2018 (Dkt. 138).
[2] Kwok's opposition to PAX LP's original attachment motion, which was filed on August 1, 2017 by a different law firm, did not raise this argument even though the original pledge was made in 2015.  (*See* Kwok's Memorandum of Law in Opposition to Plaintiff's Motion for Pre-Judgment Order of Attachment (Aug. 1, 2017) (Dkt. 66).)

1

First, Kwok's suggestion that the Residence and its holding company, Genever, somehow are not subject to attachment (*see* Opp. at 7–9) hinges on his assertions that (i) Genever's parent company ("Genever BVI") pledged its assets to Roscalitar 2, which as a result now has a priority lien on the Residence, and (ii) Kwok has not used the corporate form to perpetrate a fraud on PAX LP.  But not only is the law clear that the existence of an encumbrance does not affect a party's right to an attachment, Kwok's misrepresentation about the purported Roscalitar 2 lien demonstrates that he has done precisely what he denies in the Opposition:  used the corporate form to further his fraud against PAX LP.

Second, Kwok's contention that PAX LP has not established his intent to defraud or frustrate an anticipated judgment under CPLR § 6201(3) (*see id.* at 11–19) is belied by the same false statement to this Court, as well as by Kwok's silence on the other indicia of fraud or frustration of an anticipated judgment that PAX LP has identified here.  For example, Kwok could have sworn under oath that he did not slash the asking price of the Residence in response to this Motion, or that it was not actually him on a YouTube recording instructing an associate to sell his assets "quickly without making a fuss or talking about it." (Mot. at 20.)  He did neither.

Third, Kwok's suggestion that PAX LP is not likely to succeed on the merits because he "may have colorable defenses" such as substantial performance (*see* Opp. at 19–22) is wrong, and obviously so.  Kwok posits that he may have substantially performed under the parties' attempted settlement—by which PAX LP would acquire three apartments at the Beijing Pangu Plaza in satisfaction of the debt—because "the PAX entities accepted delivery of each of the three units in November 2013." (*Id.* at 21.)  But Kwok entirely fails to rebut PAX LP's showings that (i) all conditions precedent must be actually satisfied for contractual obligations to arise (*i.e.*, there is no such thing as substantial performance of conditions precedent) under Hong

2

20-12411-jlg   Doc 14-38   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 38
Pg 8 of 17

Kong (and New York) law; (ii) Kwok failed to satisfy at least four of those conditions precedent; and (iii) Kwok himself expressly admitted to not having satisfied one of them (relating to transferring title). (Mot. at 8–10, 18–19.)

Of course, Kwok also omits to mention that he actually pleaded—in a complaint he filed in the Southern District of New York earlier this year—that another company, Beijing Pangu, still "owned" the Plaza containing the three apartments when Chinese government authorities *"seized and attached"* it "in or around late January and early February 2015." (*See* Hill Aff. ¶¶ 7–8, Ex. C.)[3] That means that in 2015— more than a full year *after* the Opposition argues that Kwok had conveyed the three apartments to PAX LP (*i.e.*, in November 2013)— Kwok knew that he could not effectively transfer them. Thus, contrary to Kwok's suggestion (*see* Opp. at 19), the proposed settlement could never have taken effect, because PAX LP could not possibly have received free and clear title and ownership of the three apartments so that it could sell them to satisfy the debt Kwok owed to it.

For these and the other reasons set forth below, PAX LP's Motion should be granted.

---

[3] Based on Kwok's representation that "his family built Beijing Pangu Plaza," (*see* Hill Aff. ¶¶ 7–8, Ex. C), it would appear that he has an ownership interest in both the company Beijing Pangu and the eponymous complex.

3

## ARGUMENT

### I.     THE COURT CAN ATTACH THE RESIDENCE AND THE SHELL COMPANIES THROUGH WHICH KWOK OWNS IT.

Kwok tries to rely on two arguments to support his position that the Residence, the shell company through which Kwok purchased it (Genever), and its supposed parent company (Genever BVI),[4] are not subject to attachment.  Neither has merit.

### A.     The Existence of a Prior Encumbrance Cannot Impact the Present Motion, and Roscalitar 2 Does Not, in Any Event, Have a "Superior Claim" On the Assets.

Even if there were a superior claim to Genever and/or the Sherry-Netherland, Inc. shares, this would not affect PAX LP's attachment motion.  Indeed, Kwok fails to cite a single case in support of his argument that "[a]s a result of a prior, superior claim by an unrelated third party on Genever BVI, neither the apartment nor Genever can be subject to any pre-judgment attachment."  (Opp. at 9.)  This is no accident; under New York law, "[i]t is neither illegal nor improper to grant an order of attachment to one creditor simply because another creditor claims a priority.  The order of attachment serves merely to preserve plaintiff's rights." *Manufacturers & Traders Tr. Co. v. Lowenstein*, 91 A.D.2d 848, 848 (4th Dep't 1982) (denying alleged priority lienholder's motion to vacate order of attachment); *see also Disney Enterprises, Inc. v. Finanz St. Honore, B.V.*, 288 F. Supp. 3d 546, 549 (E.D.N.Y. 2017) (denying motion to intervene by alleged priority lienholder seeking to assert priority claim over attached property).

---

[4] Kwok submits this purported evidence through the Affidavit of Yan Pin Wang, "an administrator for the interests of the defendant," who does not actually claim to have personal knowledge of these matters.  As such, the Court should not credit the affidavit. *Cf. Siegel v. Terrusa*, 222 A.D.2d 428, 428, 635 N.Y.S.2d 52, 53 (1995) (on summary judgment, "the existence of a factual issue may not be established by the hearsay information of one who had no personal knowledge of the facts").

4

Moreover, although Kwok argues that the assets of his 100% owned and controlled company, Genever BVI—which purportedly include Genever, the shares of the Sherry-Netherland, Inc., and the lease for the Residence—are currently pledged to the unrelated third party Roscalitar 2 under a May 21, 2015 Pledge and Security Agreement (*see* Opp. at 9; Hill Aff. ¶ 4, Ex. A), that is not true.  A UCC-1 Report reflects that this May 21, 2015 lien, and thus any potential lien Roscalitar 2 may have had on Genever BVI, was ***terminated*** on March 29, 2017, weeks before this lawsuit was filed.  (Hill Aff. ¶ 6, Ex. B.)  In other words, Kwok's representation that the Residence is now pledged to Roscalitar 2 (*see* Opp. at 4) is false.

**B.        PAX LP Has Made the Requisite Showing to Pierce the Corporate Veil.**

Kwok's position that PAX LP has not made a showing sufficient to pierce the corporate veil is also incorrect.  To begin, Kwok states that "complete domination" is a requirement for veil piercing (*see* Opp. at 7) but—because he could not—nowhere does he dispute that he completely dominates both Genever and Genever BVI.  Thus, Kwok has conceded domination. *See Genger v. Genger*, No. 651089/2010, 2015 WL 112831, at *3 (N.Y. Sup. Ct. January 7, 2015) ("In their opposition brief, [responding parties] do not address or contest the argument, and thus are deemed to have conceded it.").

Instead, Kwok maintains that he has not abused the privilege of the corporate form by using either Genever or Genever BVI to commit a fraud against PAX LP.  To this end, Kwok asserts there is no proof that he used the proceeds from the PAX LP loan to buy the Residence, or that he bought the Residence to defraud creditors.  (*See* Opp. at 8.)  But under New York law, PAX LP can carry its burden by showing that Genever served no different corporate purpose other than to protect the Residence from creditors.  *See 2406-12 Amsterdam Assocs. LLC v. Alianza LLC*, 136 A.D.3d 512, 513 (1st Dep't 2016) (alter ego liability established where LLC "had no employees and no function but to hold those assets away from creditors").  Given that

5

Kwok (i) purchased the Residence through one shell company (Genever) after stripping the

assets from another (Shiny Times) through which he borrowed money from PAX LP, (ii) formed

Genever solely for the purpose of buying the Residence (*see* Searles Aff. ¶ 2, Ex. A at 18–19),

and (iii) bought the Residence for approximately the same amount owed to PAX LP at that time,

and *after* many of his assets were frozen by the Chinese government, PAX LP has made the

required showing.  (*See* Mot at 23–24.)

But even if further evidence that Kwok had abused the corporate form to defraud PAX

LP were required to pierce the veil, Kwok's Opposition effectively serves as evidentiary "Exhibit

A."  As explained above, the Opposition misrepresents the status of the Roscalitar 2 lien—

which, according to a UCC-1 Report of same date, was terminated back in March 2017—in an

effort to persuade this Court not to attach his Residence now.  It is difficult to conjure a more

blatant abuse of the corporate form than making a false representation about 100% owned and

controlled shell companies in an effort to render oneself judgment-proof.  *See, e.g.*, *Grigsby v.*

*Francabandiero*, 152 A.D.3d 1195, 1197 (1st Dep't 2017) ("Plaintiff specifically alleged that

[Defendant] took actions calculated to make [himself] judgment-proof by undercapitalizing the

LLC and dissolving and thereafter diverting the assets of [the LLC] to a new entity[.]"); *see also*

*Chase Manhattan Bank (Nat. Ass'n) v. 264 Water St. Assocs.*, 174 A.D.2d 504, 505 (1st Dep't

1991) (piercing corporate veil based on allegation "that appellants masterminded a scheme to

denude the subsidiary of its assets in order to render it unable to honor its obligations").

## II.    PAX LP HAS DEMONSTRATED KWOK'S INTENT TO DEFRAUD OR FRUSTRATE AN ANTICIPATED JUDGMENT.

PAX LP's opening brief demonstrated that Kwok is about to dispose of the Residence or

Genever with the intent to defraud PAX LP or frustrate a judgment against him.  (*See* Mot. at

19–22.)  To be sure, Kwok could have sought to obviate this Motion by submitting an affidavit

6

swearing under oath that he has no plans to dispose of the Residence, or that if he does, he will

not transfer its proceeds offshore, or that he has and will retain other assets in New York

sufficient to satisfy a judgment that might be issued in favor of PAX LP.  But Kwok did not do

so.  Instead, Kwok's Opposition mischaracterizes the law and the facts in such a way that only

confirms the likelihood that fraud and/or frustration of enforcement of a judgment is afoot.

First, Kwok wrongly suggests that fraudulent intent cannot be inferred.  (*See* Opp. at 12.)

As PAX LP already has explained (*see* Mot. at 20), direct proof of intent to defraud or frustrate

an anticipated judgment can rarely be obtained, and, therefore, often must be inferred from the

circumstances.  *See Arzu v. Arzu*, 597 N.Y.S.2d 322, 325 (1st Dep't 1993) ("[I]t is not always

practicable to establish by proof the existence of a fraudulent intent on the part of the debtor even

when in reality it exists.").

Second, Kwok's misrepresentation about the now-terminated Roscalitar 2 lien is

compelling evidence of his intent to defraud or frustrate an anticipated judgment under CPLR §

6201(3).

Third, Kwok's half-hearted, unsupported attempts to discredit the numerous badges of

fraud identified by PAX LP fall flat.  For example:

- Kwok's Opposition does not dispute that Kwok placed his Residence on the market just a few months after he failed to satisfy the conditions precedent in the Fourth (and final) Deed of Settlement, and right around the time PAX LP sent him a demand letter.  (*See* Opp. at 3, 14; Searles Aff. ¶ 3, Mot. at 11.);

- Kwok's Opposition does not contest that he slashed the asking price by 13% just after being notified that PAX LP planned to renew this Motion. (Mot. at 13.)  While Kwok's brief suggests in conclusory fashion that the timing may somehow just be a coincidence (*see* Opp. at 14), Kwok does not actually submit evidence, in the form of a sworn statement, saying that (or anything at all);

- Kwok's Opposition suggests that the YouTube audio recording of a man identified as him instructing his associates to sell assets quickly and quietly is of "suspect authenticity," (*see id.* at 16), but Kwok nowhere actually argues (much less submits evidence under oath attesting) that the voice giving the orders is not his own.  Instead,

7

FILED: NEW YORK COUNTY CLERK 05/23/2018 08:08 PM
NYSCEF DOC. NO. 186

INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/23/2018

20-12411-jlg   Doc 14-38   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 38
Pg 13 of 17

Kwok's opposition tries to confuse the issue by speculating about the motives of the person who posted the video, and arguing that Kwok has been fighting to stop people from impersonating him. (*See id.* at 15–16.) In support of the latter assertion, Kwok submits an April 9, 2018 letter from one of his law firms to YouTube that identifies 36 supposedly impersonating accounts (*see* Searles Aff. ¶ 13, Ex. L)—but notably does not include the account identified by PAX LP even though the audio recording was posted in September 2017, some seven months before the letter was sent; and

- Kwok's Opposition speculates that the legion of lawsuits and accusations against him are all part of a sustained and coordinated effort by the Chinese government to discredit him, and that "the fact that a plaintiff has filed a suit containing allegations that have not yet been established can hardly be considered 'proof' of a pattern of fraudulent conduct." (*See* Opp. at 18.) But despite these musings about unproven allegations, Kwok ignores PAX LP's showing that Lu Tao—Kwok's point person for dealing with PAX LP on the attempted settlement—actually ***pleaded guilty*** to perpetrating loan fraud at Kwok's direction. (Francis Aff. ¶ 16(c), Ex. N.)

These facts—taken together along with Kwok's failure to offer any meaningful rebuttal—are more than sufficient to support an inference of intent to defraud or frustrate an anticipated judgment. *See, e.g.*, *Coley v. Vannguard Urban Improvement Ass'n, Inc.*, No. 12-CV-5565, 2016 WL 7217641, at *10 (E.D.N.Y. Dec. 13, 2016) (granting attachment where "[t]he cumulative effect of [the] pattern or series of transactions and course of conduct after the pendency of . . . suits by creditors as well as the general chronology of the events and transactions under inquiry strongly indicate[d] fraudulent activity"); *cf. 135 Flat LLC v. Triadou SPV N.A.*, No. 15-CV-5345 (AJN), 2016 WL 5945912, at *10 (S.D.N.Y. June 24, 2016) (examining in part "the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt" in granting attachment).

## III.   PAX LP HAS ESTABLISHED PROBABILITY OF SUCCESS ON THE MERITS.

Although Kwok vaguely suggests that he "may have colorable defenses" to PAX LP's contract claim (*see* Opp. at 20), he does not. The sole potential defense Kwok identifies—substantial performance of the Deeds of Settlement based on his supposed delivery of three apartments to PAX LP in November 2013—is no defense at all under the law. As PAX LP has

8

demonstrated (*see* Mot. at 18) and Kwok has entirely failed to rebut, (i) all express conditions precedent must be satisfied for contractual obligations to arise under Hong Kong (and New York) law, (ii) PAX LP has submitted evidence that Kwok did not satisfy at least four of the conditions precedent, and (iii) Kwok personally has conceded that at least one condition precedent (*i.e.*, delivery of title) was never satisfied.  (*See* Mot. at 18.)

Nor does Kwok even attempt to explain (in the Opposition, let alone by way of sworn evidence) why he would have contracted to extend his deadline to satisfy those 10 conditions precedent several times—up through June 2015—if his supposed delivery of the apartments back in November 2013 had been sufficient to discharge his multi-million dollar debt to PAX LP. (Motion at 19.) [5]

Finally, the misrepresentation in Kwok's Opposition about the status of the three apartments independently demonstrates why his substantial-performance theory is meritless. The crux of Kwok's argument seems to be that even though he admittedly did not satisfy all of the conditions precedent—including failing to convey title (*see* Opposition to PAX LP's Motion for Pre-Judgment Attachment (Dkt. 66) at 3 (stating that PAX LP does "not hav[e] the Property Title Certificates from the relevant PRC authorities,"); *id*. at 9 ("[T]itle registration did not occur with the relevant PRC authority."); *see also* Yang Aff. ¶¶ 13–15)—Kwok nevertheless somehow might have done enough by delivering executed purchase agreements for the three apartments in

---

[5] While Kwok posits that "it is still unclear from the record before the Court why supplemental deeds were executed notwithstanding the fact that the PAX entities had formally accepted the apartment units" and that, as such, discovery is necessary to determine the reason (*see* Opp. at 21), that is not true.  The evidence before this court is clear and uncontroverted that, as set forth in the Yang Affirmation (¶¶ 5–15), each subsequent Deed of Settlement, including those executed after November 2013 (the date by which Kwok suggests he had substantially performed), were entered into in order to give Kwok additional time to satisfy the ten conditions precedent.

9

November 2013.  But Kwok's own pleading in his recent S.D.N.Y. complaint (*see* Hill Aff. ¶¶

7–8, Ex. C) further exposes this as pretext.  Specifically, how could Kwok have effectively

transferred ownership of the apartments to PAX LP in late 2013 when, according to Kwok's own

words, the apartments were still owned by Beijing Pangu at the time they were seized and

attached by the Chinese government in early 2015?  And, relatedly, how could PAX LP possibly

have received clear title in order to sell those apartments to recover Kwok's debt if the Chinese

government had seized the apartments before the final Deed of Settlement's deadline had lapsed?

Simply put, Kwok's illogical, counter-factual substantial-performance straw-man does

nothing to tip the likelihood-of-success scales away from resting comfortably in PAX LP's favor.

## IV.    KWOK'S REQUEST FOR A 50% UNDERTAKING IS UNSUPPORTABLE.

Kwok's request that, in the event its motion is granted, PAX LP should be made to post

an undertaking of $34 million (*see* Opp. at 22–23)—which amounts to 50 percent of the

Residence's current asking price—is absurd.  Indeed, New York courts routinely order

undertakings between ***ten and one thousand times less*** than what Kwok seeks here (*i.e.*, between

0.05 percent and 5 percent of the attachment value).[6]

Moreover, although Kwok contends that the Court should set PAX LP's undertaking "in

view of the amount of money involved" (Opp. at 23), he omits to mention that New York courts

have granted undertakings of less than 1% when ordering much larger attachments than PAX LP

---

[6] *See, e.g.*, *Hume v. 1 Prospect Park ALF, LLC*, 137 AD3d 1080 (2d Dep't 2016) (0.05%); *Herzi v. Ateliers De La Haute-Garonne*, No. 15-cv-7702 (RJS), 2015 WL 8479676, at *3 (S.D.N.Y. Oct. 15, 2015) (0.06%); *Garden City Irrigation, Inc. v. Donna Salamanca*, No. 13304–04, 2005 WL 927001, at *4 (N.Y. Sup. Ct. April 18, 2005) (0.3%); *In re Amaranth Natural Gas Commodities Litigation*, 711 F. Supp. 2d 301 (S.D.N.Y. 2010) (setting undertaking at 0.35% and citing unreported cases setting undertakings at 4.5%, 2.4%, and 0.33%); *S.M. Pires v. Frota Oceanica Brasileria, S.A.*, No. 23829/76, 2005 WL 579500, at *5 (N.Y. Sup. Ct. Jan. 14, 2005) (2%); *N.Y. Dist. Council of Carpenters Pension Fund v. KW Const., Inc.*, No. 07-cv-8008 (RJS), 2008 WL 2115225, at *6 (S.D.N.Y. May 16, 2008) (4%).

seeks here.  *See, e.g.*, *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 305 F. Supp. 2d 340, 348

(S.D.N.Y. 2004) (granting undertaking of $100,000 for $250 million attachment, or .04%); *see*

*also Moquinon, Ltd. v. Gliklad*, No. 650366/2017, 2017 WL 1482163, at *7–8 (N.Y. Sup. Ct.

April 6, 2017) (setting undertaking at $2 million for $450 million attachment, or .44%).  In fact,

the one case Kwok cites (*see* Opp. at 23) actually supports PAX LP's position.  The court there

granted a *$100,000* undertaking that totaled just over ***one percent*** of the $9 million attachment.

*See Allstate Ins. Co. v. Rozenberg*, No. 08-CV-565 ADS ETB, 2009 WL 9081080, at *6

(E.D.N.Y. Jan. 26, 2009) (granting undertaking of $100,000 for $9 million attachment, or .1%).

In short, Kwok's suggestion of a $34 million (50%) undertaking is as baseless as his

other Opposition arguments; an undertaking of between $34,000 (0.05%) and $680,000 (1%)

would be far more appropriate.

## CONCLUSION

For these and the other reasons set forth in its Motion, PAX LP's request for a pre-

judgment order of attachment should be granted.

11

DATED:  May 23, 2018
New York, New York

Respectfully submitted,

O'MELVENY & MYERS LLP

By: /s/ *Stuart Sarnoff*
Stuart Sarnoff (ssarnoff@omm.com)
Edward Moss (emoss@omm.com)
7 Times Square
New York, NY 10036
(212) 326-2000


-and-

Robert W. Seiden (rseiden@seidenlegal.com)
1120 Avenue of the Americas
New York, NY 10036
(212) 626-6708


*Attorneys for Plaintiff Pacific Alliance Asia
Opportunity Fund L.P.*

12