# EXHIBIT 41

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK  :  PART 61
----------------------------------------------------x
PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.,

                              Plaintiffs,

                                               Index No.
                     -against-                 652077-17

KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO WEN GUI,
a/k/a GUO WENGUI, a/k/a GUO WEN GUI, a/k/a WAN GUE
HAOYUN, a/k/a MILES KWOK, a/k/a HAOYUN GUO,

                              Defendants.
----------------------------------------------------x
                              March 8, 2019
                              60 Centre Street
                              New York, New York

BEFORE:       HON. BARRY OSTRAGER
                              Supreme Court Justice


APPEARANCES:

                    Attorney for Plaintiff
                    O'MELVENY & MYERS LLP
                    7 Times Square Tower
                    New York, NY 10036
                    BY:  EDWARD MOSS, ESQ.
                         STUART SARNOFF, ESQ.

                    Attorney For Defendant
                    HODGSON RUSS
                    605 Third Avenue
                    New York, NY 10158
                    BY:  MARK A. HARMON, ESQ.
                         JULLIAN MARIE SEARLES, ESQ.




                    JACQUELINE CAMPBELL
                 Senior Court Reporter

                                                                    2

1                          Proceedings

2                   THE COURT:  The court issued a decision

3          June 28th, 2018.  The last paragraph of the

4          decision states "that while Pacific Alliance

5          Asia Opportunity fund fails to meet the heavy

6          burden for an for attachment, the court believes

7          that discovery, which may now proceed, may shed

8          light on Genever and/or Kwok's purported

9          fraudulent intent in purchasing and attempting to

10         seel to Residence to avoid enforcement of a

11         judgment in this action.

12              Plaintiff may renew its motion if, and when

13         discovery provides evidence of Genever and/or

14         Kwok's intent, as well as a basis for a veil

15         piercing claim by which to attach Genever's

16         property.  Plaintiff may also attempt to preserve

17         the status quo by amending its complaint to add

18         other parties and seeking a preliminary injunction

19         enjoining the sale of the Residence, assuming

20         Plaintiff establish the basis for such relief.

21         So now I have a renewed motion for a prejudgment

22         order of attachment.  I'll hear you.

23                   MR. MOSS:  Thank you, your Honor.  Your

24         Honor, I have a packet.  May I approach?

25                   MR. HARMON:  I just saw this.  I have no

FILED: NEW YORK COUNTY CLERK 03/21/2019 02:41 PM
NYSCEF DOC. NO. 281
20-12411-jlg    Doc 14-41    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 41
Pg 4 of 36
INDEX NO. 652077/2017
RECEIVED NYSCEF: 03/21/2019

3

1                    Proceedings

2        idea what's in it.

3                    THE COURT:  I'm assuming there is

4        nothing in the packet that is other than summary

5        of the arguments that are contained in the

6        breaching.

7                    MR. HARMON:  That's correct, your Honor.

8        Everything is cited to our briefs or to the cases

9        that we cited.

10                   THE COURT:  It's demonstrative.

11                   MR. HARMON:  I'm also all in favor with

12       anything that assists your Honor in deciding it.

13       I'm simply noting that I haven't had a chance to

14       see this and I don't know what's in it.

15                   THE COURT:  That's noted, but on the

16       basis of counsel's representation that there is

17       nothing in this packet other than what's in the

18       somewhat voluminous motion papers, I'm going to

19       avail myself of the opportunity to seek his

20       demonstrative.

21                   MR. HARMON:  Understood, your Honor.

22                   MR. MOSS:  Thank you, your Honor.  Good

23       morning.  You read from the court's order so we

24       could skip to slide two of my demonstrative

25       because we started with the court's order.  You're

4

1                       Proceedings

2       correct, your Honor, we're back.  We have taken

3       the discovery that your Honor ordered us to take

4       and it would be an understatement to say that the

5       discovery was fruitful.  We now have more than

6       enough evidence that we need to prove the two

7       things that we need to prove.  And I'd like to

8       start with the standard and that is on page two.

9       The first thing we need to prove is CPLR 62013

10      grounds for attachment that Mr. Kwok would be

11      attempting to defraud his creditors or frustrate

12      the enforcement of the judgment that might be

13      rendered in our favor, as assigned, disposed of,

14      encumbered or secreted property, or is about to

15      remove it from the state, or is about to do any of

16      these acts.

17           First, on the assigned, disposed of,

18      encumbered or secreted.  This is clear.  He's tried

19      hard.  He's continuing to try hard to sell the

20      residence.  What we learned in discovery is that

21      he tried to assign it to a trust in his son's

22      name.  He tried to assign one of the holding

23      companies to a trust in his son's name.  That's

24      one of the pieces of new evidence that we learned

25      and I'll walk through that.  He's encumbered not

5

```
1                        Proceedings
2       once but twice he's pled to this in this residency
3       including during the pendency of this lawsuit.
4       The people who said in papers are third party, we
5       don't know are third parties because he didn't
6       tell us anything about the pledges in discovery.
7       So the focus will be on the intent prong and
8       whether or not Mr. Kwok intends to frustrate the
9       enforcement of a judgment.  We're not required to
10      show intent to defraud.  We're required to show
11      intent to the frustrate the enforcement and we
12      have that evidence.
13           In terms of what the cases say, your Honor,
14      these are all cases cited in our brief page 3 of
15      the deck.  Fraud must ordinarily be inferred from
16      the circumstances.  Mr. Kwok is not gonna raise
17      his hand and say I'm about to commit fraud.  You
18      have to infer it from circumstantial evidence.
19           Secrecy in asset transfers is one of the
20      things that courts look at.  We have that here.
21      The pattern of conduct after incurring the debt.
22      I'll walk briefly through a time line.  We have
23      that here today.
24           Evasiveness in court proceedings.  That is
25      Coley v. Vannguard.  In that case they looked at
```

FILED: NEW YORK COUNTY CLERK 03/21/2019 02:41 PM
INDEX NO. 652077/2017

NYSCEF DOC. NO. 281

20-12411-jlg    Doc 14-41    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 41

Pg 7 of 36

RECEIVED NYSCEF: 03/21/2019

6

1                          Proceedings

2          the failure to produce evidence testimony that is

3          contradictory and incoherent.  Here we have that

4          We have that base. We have a bogus affidavit that

5          was submitted to the court from someone with zero

6          personal knowledge of anything she said on the

7          last topic motion.  I'll walk through that as well

8          and a lack of other assets in the jurisdiction.

9          That's not contested and as the court knows he has

10         mounting debt in this jurisdiction including to

11         the Boies Schiller firm which was his former

12         counsel in this case.

13               In terms of the second thing we are going to

14         pierce the veil, that is line 4.  And that's abuse

15         of the privilege.  As your Honor knows of doing

16         business in the corporate forum, to perpetrate a

17         wrong or injustice on the complaining party.  And

18         the Baby Phat case in our papers says there is a

19         discretion.  There are no definitive rules.  This

20         is a fact specific inquiry.  And again as with the

21         CPLR, wrongdoing does not necessarily require

22         fraud.  Claims of inequity or malfeasance will

23         also suffice.  One of the things courts look at is

24         the failure to observe corporate formalities.

25         Failure to capitalize a shell company.  Here he

7

1                    Proceedings

2        formed two shell companies to buy their apartment.

3        He didn't capitalize them.  The money didn't come

4        from the shell companies to buy the apartment.

5        The money came from somewhere else.  Using a shell

6        company to shield yourself from liability when you

7        know a debt is gonna become owed, especially a

8        foreign shell company, that's important because in

9        the Sweeney versus Kane case sited on page 24 of

10       our opening brief and summerized on slide 5.  In

11       Sweeney versus Kane there were New York defendants

12       who owed a debt, and right before they knew they

13       were going to have to pay, they formed a Florida

14       corporation to buy a house in the Hamptons.  So

15       they were New York residents like Mr. Kwok.  They

16       formed a foreign corporation by like Mr. Kwok.

17       There was a foreign corp. Here it was a BVI LLC to

18       purchase and shield real estate in New York City.

19       The court applied -- in New York State.  The court

20       applied Florida law, but it noted that Florida law

21       and New York are same in terms of requiring that

22       additional element fraud and malfeasance with

23       respect to the plaintiff.  In order to prove

24       notice.  And there it was just like here because

25       they did reversal.  They were holding the

FILED: NEW YORK COUNTY CLERK 03/21/2019 02:41 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 281
20-12411-jlg    Doc 14-41    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 41
RECEIVED NYSCEF: 03/21/2019
Pg 9 of 36

8

1                    Proceedings

2      corporation liable for the debts of the

3      individual.  And what the court concluded therein,

4      that on the timing and structure of bringing that

5      in through the back door, defendants utterly

6      dominated the shell and they formed it to

7      protected assets from plaintiff creditors such as

8      the plaintiffs thereby in effect defrauding them.

9           So I'll now move onto the new evidence that

10     was uncovered since the last time we were here

11     that enables us to us meet both of these

12     standards.  Slide 6 I have snipped this because it

13     was very striking to me, your Honor.  They

14     featured this argument in the preliminary

15     statement that PAX have failed to uncover any new

16     evidence.  Well, they can only say that by

17     completely ignoring the new evidence because in

18     reality plaintiff's evidence it's significant.  It

19     goes right to the heart of these standards and

20     it's irrefutable and the way you know that it's

21     irrefutable, they didn't even trust in their

22     papers, they didn't even trust.  They said well we

23     don't think it's relevant.  We think this is a

24     clear ending.  I'm going to explain why it's

25     precisely relevant.  Your Honor, in the deck we

FILED: NEW YORK COUNTY CLERK 03/21/2019 02:41 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 281
RECEIVED NYSCEF: 03/21/2019

20-12411-jlg   Doc 14-41   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 41
Pg 10 of 36

9

1                   Proceedings

2        also have a handout.  It's a time line.  I don't

3        know if you have a copy of it.  It's inserted into

4        the paper that I handed you.  I think I included

5        it in the packet.

6                   THE COURT:  Have you seen this?

7                   MR. HARMON:  Not before right now, your

8        Honor.

9                   THE COURT:  All right.  I think you gave

10       me this already.

11                  MR. MOSS:  I think I did.  This is two

12       documents stapled together.  The first page if you

13       open it up, the first page has all black ink.

14       That was a time line that I walked you through

15       last time when we didn't have the benefit of

16       discovery based mostly on publicly available

17       information.  They say we don't have any new

18       evidence.  If you would turn to the second page

19       it's essentially a red line of all the new

20       evidence that has been uncovered since the last

21       time we were here.  All the new evidence and

22       developments in the case.  On the back side of

23       that paper we anticipated there might be an

24       objection.  We cited where all of this evidence

25       comes from.  It comes from our briefs and

FILED: NEW YORK COUNTY CLERK 03/21/2019 02:41 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 281
RECEIVED NYSCEF: 03/21/2019

20-12411-jlg    Doc 14-41    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 41
Pg 11 of 36

10

1                          Proceedings

2          everything that's before the court.  So slide 7 of

3          the deck summarized this new evidence I'm not

4          going to go through it all.  It's all on papers.

5          I would just like to talk about some of the most

6          salient new evidence here.  And I'll start with

7          the background.

8              The parties entered into the loan agreement.

9          We lent Mr. Kwok from Shiny Time's money in 2011.

10         He missed the repayment deadline.  We tried to

11         settle it.  He said I'll give you three apartments

12         I own in Beijing.  We said okay we'll take the

13         three apartments.  There were preconditions.  He

14         had to give us title to the apartment.  He had to

15         tell us that the apartments were unencumbered,

16         that there weren't any liens on it.  He missed

17         some deadlines to satisfy the conditions three

18         times and we kept extending it to try to work this

19         out three times.  Then we get to January and

20         February of 2015 on the time line.  Mr. Kwok's

21         assets were seized by the Chinese government and

22         he had flees to New York.  The assets that are

23         seized include these three apartments.  Right

24         after he knows that the assets have been seized

25         and he's never gonna able to satisfactory the

FILED: NEW YORK COUNTY CLERK 03/21/2019 02:41 PM

NYSCEF DOC. NO. 281

INDEX NO. 652077/2017

RECEIVED NYSCEF: 03/21/2019

20-12411-jlg    Doc 14-41    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 41

Pg 12 of 36

11

1                          Proceedings

2           conditions, he negotiates one last settlement

3           extension, February 10th, 2014, that gives him

4           until June to satisfy these conditions he's never

5           going to be able to satisfy.  What does he do?

6           Then he tries to shield the money.  Three days

7           later he forms these two Genever entities, a New

8           York entity, a BVI entity.  He fails to capitalize

9           either one and he uses efforts, to wit, to buy the

10          shedding of those apartments, 67.5 million

11          dollars.  Precise exactly the amount that he owed

12          us at the time.  He needs board approval and this

13          is new information.  He needs board approval.  We

14          learned about the failure to capitalize and the

15          board approval process.  He obtained it fraudulent

16          by showing assets of Chinese companies to the

17          board that he said he owned, but he didn't own.

18          He recommended in writing through Paul Weiss and

19          through Williams and Connelly.  I'm sure he told

20          them that he owned the company, but he didn't.  He

21          told me in his deposition not only did he not own

22          these companies but one of the companies who is

23          very sizable balance sheet he showed to the Sherry

24          Netherlands, he said maybe I knew those assets had

25          already been seized by the Chinese government.

FILED: NEW YORK COUNTY CLERK 03/21/2019 02:41 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 281
RECEIVED NYSCEF: 03/21/2019
20-12411-jlg   Doc 14-41   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 41
Pg 13 of 36

12

```
 1                    Proceedings
 2     Not only does he obtain the apartment through
 3     false pretenses, he pressured the board to do it
 4     quickly.  I give them three days between signing
 5     and closing the Sherry Netherlands tells us this
 6     is something unprecedented.  He didn't understand
 7     why there was such a harness.  There was such a
 8     harness because he wanted to get this money parked
 9     somewhere.  What he does there are a few things to
10     know.  First, he used a two holding company
11     structure.  He buys it through New York LLC and
12     then has a BVI LLC on top of that.  The purpose of
13     that is using foreign corporation like Sweeney to
14     shield it.  The witness at the Sherry Netherlands
15     that's been in this industry for decades, said he
16     has never seen two holding companies like this
17     before.
18          Second, I've already covered that the money
19     doesn't come even from the shell companies.  The
20     money comes from somewhere else.  Third, this one
21     is significant.  He all but admitted at his
22     deposition that the money he used to the buy this
23     apartment through this Genever entity came from
24     Shiny Times that we lent money to.  He said that
25     Shiny Times and Genever had quote a representative
```

FILED: NEW YORK COUNTY CLERK 03/21/2019 02:41 PM
INDEX NO. 652077/2017

NYSCEF DOC. NO. 281

20-12411-jlg    Doc 14-41    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 41

RECEIVED NYSCEF: 03/21/2019

Pg 14 of 36

13

1                        Proceedings

2          relationship and he volunteered this part.  I

3          didn't ask him about real estate or houses or

4          home.  He said like when you purchase a house

5          there will be some meeting on behalf.  After a

6          break he came back in and said I have a

7          clarification to make.  I didn't think you were

8          talking about Shiny Times.  I thought you had said

9          Hong Kong International.  I don't know what Hong

10         Kong International is.  That's an entity never

11         been part of this case.  I never heard it before.

12         He told the truth during deposition on that point

13         and made a strategic decision and he came back in

14         and cleaned it up.  More new evidence, a couple of

15         more points on the new evidence.  June 2016 he

16         drops the price of the apartment.  He dropped the

17         price of the apartment a few months after we had

18         chased him to the BVI and had China Times

19         liquidated in the BVI.  Not only did he drop the

20         price of the apartment, he also attempted to

21         transfer it into a trust in his son's name.  He

22         was inquiring about putting the holding company

23         into trust in his son's name.  He was doing that

24         in order to try to shield the apartment.  Why else

25         do you drop the price to try hard to sell it, at

FILED: NEW YORK COUNTY CLERK 03/21/2019 02:41 PM
INDEX NO. 652077/2017

NYSCEF DOC. NO. 281

RECEIVED NYSCEF: 03/21/2019

20-12411-jlg    Doc 14-41    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 41
Pg 15 of 36

14

1                        Proceedings

2          the same time try to gift it to your son and all

3          at the same time while it's pledged to some third

4          party.  He has playing games with this apartment

5          in order to shield it from creditors when he has

6          known that his debt was due to us.  There is also

7          a host of misrepresentations that go to the heart

8          of that piercing and the heart of the standard.

9          During this lawsuit they say all this stuff about

10         the lawsuit is irrelevant, not because he new his

11         debt was due.  If we want to focus on what

12         happened during the lawsuit, we could focus on

13         what happened during the lawsuit, because there is

14         some egregious things that have happened during

15         the lawsuit that I would like to briefly go into.

16             Slide 8 Mr. Kwok in his deposition denied the

17         very existence of the debt.  In prior papers he's

18         made the argument that while I satisfied the

19         settlement conditions so I don't owe the money.

20         Here he made something up new in his deposition.

21         Slide 8, "I never signed the 30 million agreement.

22         The money was never given to us."  On the left

23         hand side you'll see that's his signature in

24         Chinese.  On the document that says the borrower

25         did receive the 30 million dollars principal

15

1                      Proceedings

2        amount of the original facility.  The fact that

3        Mr. Kwok made this argument up and now says there

4        wasn't even a debt shows that he thinks it's a

5        game to him your Honor, he's not gonna play by the

6        rules.  He told me that at his deposition.  Slide

7        9 I asked him what I thought was a pretty straight

8        forward question.  "Were why your text messages

9        searched in connection with this litigation?"

10       You'll see the quote on slide 9.  His answer was

11       "he thinks it's a crazy case.  I think this is

12       just scamming.  I think you guys are a bunch of

13       thugs.  I think you are just mafia.  You working

14       for the communists."  And he doesn't need to pay

15       any attention to this case at all.  That was his

16       response about text messages.  And then I figured

17       he's living in this country he is seeking asylum.

18       He's availing himself of the laws.  He uses these

19       courts all the time.  He's gonna pay a judgment,

20       if the court enters a judgment.  I took a little

21       bit of a risk I asked him.  I said this is slide

22       10.  "I know you've testified Mr. Kwok a lot about

23       how you think that this is an illegitimate

24       lawsuit."  But if the court finds for our client,

25       if the court finds for our client and orders you

16

1                          Proceedings

2          to pay, will you pay.  They instructed him not to

3          answer the question.  They said it was beyond the

4          scope of discovery on the attachment motion.  We

5          were seeking discovery to try to figure out if the

6          Mr. Kwok would intend to frustrate a judgment as

7          those words are used in the CPLR.  I asked him if

8          he intended to frustrate his judgement and they

9          wouldn't let him answer the question.

10              Your Honor, and then on slide 12 there is

11         more -- excuse me, slide 11 you have had an order

12         in this case that he has to inform us of any

13         contract for sale.  I asked him will you abide by

14         that order.  They didn't let him answer that

15         question either.  They said that that was outside

16         the scope of discovery.  Whether he'll abide by an

17         order the court issued in the context of an

18         attachment motion was outside the scope of

19         discovery on the attachment motion.  Slide 12

20         these are some of the misrepresentations to this

21         court during this lawsuit about the apartment and

22         about the holding company structure which goes to

23         veil piercing.  Slide 12 this is the Wang

24         affidavit that they had submitted from his

25         employee, Mr. Kwok's employee.  I'll get to Ms.

17

1                      Proceedings

2          Wang a little bit later, but she testifies at the

3          top left of the slide 12 about Mr. Kwok's

4          ownership interest in the apartment.  She goes

5          chapter and verse this is how he owns the

6          apartment through these shares and then you'll see

7          at his deposition I asked do you own the apartment

8          at Sherry Netherlands.  He said no.  At the top

9          right Ms. Wang testified to this court in her

10         affidavit that Mr. Kwok is a the sole shareholder

11         of Genever BVI.  I asked him if he had controlled

12         Genever BVI in his deposition.  He said of course

13         I don't control it.  Slide 13 and 14 are

14         misrepresentations to this court on this motion

15         and the last attachment motion about the pledges

16         and the reason the pledges are so important is

17         because this was their argument on the last

18         motion.  If the court will recall, we filed an

19         attachment motion.  They said you can't,

20         attachment judge, the apartment has been pledged

21         to somebody else.  And we learned by doing some

22         digging after that and by taking these depositions

23         that they made misrepresentations to you about the

24         pledge.  And it was the pledge of the assets of

25         Genever.  They pledged the assets of Genever

FILED: NEW YORK COUNTY CLERK 03/21/2019 02:41 PM
INDEX NO. 652077/2017

NYSCEF DOC. NO. 281
20-12411-jlg    Doc 14-41    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 41
RECEIVED NYSCEF: 03/21/2019

Pg 19 of 36

18

1                           Proceedings

2           meaning they were making misrepresentations about

3           the court performed.  Slide 13, we were having an

4           argument about whether the lien was intact.  Mr.

5           Harmon held up the British Virgin island filing,

6           he said just so your Honor knows that the lien is

7           still in effect today.  He told you on June 27th,

8           2018.  Well it wasn't.  We found the document

9           after the hearing.  That second pledge had been

10          released on June 12th, 2018.  He told you about

11          the pledge being put on but not about it being

12          released.  And this is the BVI filing that he

13          wanted you to look at.  Slide 14, they make the

14          argument since May of 2015 the apartment has been

15          pledged.  No, it was pledged in May 2015, but that

16          pledge was released in March of 2017 a year before

17          they told you it was still pledged.  It wasn't

18          even still pledged.  Now, I just want to talk

19          quickly about the affidavit.  This is the

20          affidavit that they put in.  It was the

21          centerpiece of their motion to their opposition to

22          the last attachment motion.  This was their

23          factual support.  Ms. Wang testified in her

24          affidavit that she was an administrator for Mr.

25          Kwok's interest.  I deposed her.  She was his

19

1                    Proceedings

2        translator.  She didn't know anything about the

3        business at all.  And she made all of these sworn

4        statements to this court relevant to the

5        attachment motion about the business and she knew

6        nothing about it.  Slide 15, she talked about his

7        ownership interest in the apartment in a filing

8        submitted to this court.  I asked her you don't

9        know who owns this apartment, and you don't know

10       who owns Genever, right?  She said right.  That's

11       slide 16.  Slide 16 she makes all these

12       representations about which Genever entity owns

13       the other one.  She attaches what appears as a

14       true and correct copy of corporate documents.  I

15       asked her at deposition, you don't know who owns

16       either of these entities.  I don't know.  You've

17       never even seen documents relating to these

18       corporations, right?  I've never seen them.  Even

19       though she attaches what she said are true and

20       correct copies.

21            Slide 17, this is important because they

22       don't like our argument that the funds that we

23       gave them were actually the funds that went into

24       the apartment.  And they try to oppose that trap.

25       They said "the funds used to purchase the

FILED: NEW YORK COUNTY CLERK 03/21/2019 02:41 PM
NYSCEF DOC. NO. 281
INDEX NO. 652077/2017
RECEIVED NYSCEF: 03/21/2019

20-12411-jlg    Doc 14-41    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 41
Pg 21 of 36

20

1                          Proceedings

2           apartment came from family and third-party funding

3           unrelated to the loan at issue in this action."

4           She swore to the court she knew where the money

5           came from.  She swore in her deposition she had no

6           idea where the money came from and that nobody

7           ever told her.  Slide 18 the other center piece of

8           this argument last time, it's pledged so you can't

9           do anything with it, your Honor.  This was their

10          sole evidence on the pledge, their sole witness on

11          the pledge.  She talked about the apartment being

12          pledged, the shares being pledged on slide 18.

13          And I asked her at her deposition, you don't have

14          any knowledge of any pledges, right?  You're

15          right.  And you've never seen any documents,

16          right?  Right.  These were the same documents that

17          she attached to her affidavit as true and correct

18          copies, she had never seen them before.  So I'd

19          just like to summarize on slide 19, your Honor, I

20          know we spent a lot of time last time on veil

21          piercing.  And I just want to summerize our

22          evidence on veil piercing.  He formed two Genever

23          entities to shield the residence from creditors

24          when he knew the debt was due to us.  He failed to

25          capitalize either of these.  He used false

21

1                      Proceedings
2          information to convince Sherry-Netherland to
3          approve the purchase when he knew the debt was due
4          and owing to us.  He used an  unprecedented
5          structure, two different LLC's, one of them being
6          foreign entity to protect the residence.  He
7          likely used the Shiny Times money as he testified
8          from PAX LP to buy the residence.  He
9          misrepresented to this court the status of the
10         pledges of the Genever entities and submitted a
11         phony affidavit that made representations about
12         the Genever entities from somebody who had
13         absolutely no personal knowledge of what she was
14         talking about.
15             We submit, based on all of this, while we
16         fairly failed to meet the standard last time,
17         we've met the standard now.
18             Your Honor, this is a discretionary remedy
19         meant to promote fairness and it would be
20         fundamentally unfair to allow Mr. Kwok to make
21         himself judgment proof from a debt he clearly owes
22         and has been evading from us for such a long time.
23         Thank you, your Honor.
24             MR. HARMON:  -- thank you, your Honor.
25         Mark Harmon for the Defendant.  I think I will be

FILED: NEW YORK COUNTY CLERK 03/21/2019 02:41 PM
NYSCEF DOC. NO. 281

INDEX NO. 652077/2017

RECEIVED NYSCEF: 03/21/2019

20-12411-jlg    Doc 14-41    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 41
Pg 23 of 36

22

1                          Proceedings

2        brief and then I will be happy to address any

3        questions you have for me.  I feel like we're

4        going down the same road that we've been before.

5        This question of whether or not the purchase of

6        the Sherry apartment of the Sherry Netherlands is

7        an attempt to defraud PAX the creditor and the

8        first point clearly is I think just in a practical

9        level the money to buy the apartment came from an

10       entity in Hong Kong called Bravo Luck.  That's

11       what the proof shows.  In fact, no money was ever

12       loaned to Shiny Times.  Shiny Times assumed the

13       debt of another entity.  So Shiny Times never got

14       the loan.  Shiny Times assumed the debt of another

15       entity.  There is no evidence that any of the

16       money that was used to purchase this apartment

17       came from the plaintiff.  Certainly the plaintiff

18       is in a position to know to whom they gave money

19       and when.  And that evidence is not before your

20       Honor.  They have created this scenario where they

21       argue that because Mr. Kwok brought an expensive

22       apartment in the City of New York and has put it

23       on the market for sale, that that constitutes an

24       attempt to defraud the creditors.  And they talk

25       about secreting assets, that a hallmark of the

23

1                    Proceedings
2         claim is when you're being secretive and secreting
3         assets.  What could be more public then putting 65
4         million dollars of money from Hong Kong in a
5         luxury apartment, high profile luxury apartment in
6         New York City for everybody to see?  It wasn't a
7         mystery.  Nobody tried to conceal that.  The money
8         was used to buy the apartment.  Now, they talk
9         about the Sherry Netherlands being asked to
10        hastily approve the purchase as evidence that
11        something was amiss here.  The Sherry Netherlands
12        is one of the premiere cooperative buildings in
13        the City of New York.  Its board of directors is
14        made up of people who are the bastions of the City
15        of New York.  It is inconceivable that that board
16        was pressured by Mr. Kwok to do something they
17        didn't want to do.  They put in -- they put in all
18        their evidence that was asked for by the coop
19        board and they asked the coop board to act
20        quickly, and they did and the purchase was
21        approved.  And the property is still owned by the
22        entity that purchased it.
23             Now, I think it's untort, your Honor, that
24        for months prior to the issuance of this court's
25        order PAX has been communicating with the Sherry

FILED: NEW YORK COUNTY CLERK 03/21/2019 02:41 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 281
RECEIVED NYSCEF: 03/21/2019

20-12411-jlg    Doc 14-41    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 41
Pg 25 of 36

24

1                        Proceedings
2        Netherlands to let them know what's going on and
3        obtain their assistance.  And I'm sorry that the
4        manager Mr. Allman of the Sherry Netherlands is
5        unhappy and dissatisfied that the board decided to
6        allow purchase of the apartment by Genever, but
7        the board approved that and the apartment is still
8        owned there and Mr. Allman conceded that more than
9        50 percent of the owners of the apartments at
10       Sherry Netherlands owned through a corporate
11       forum.  So there is nothing unique about what Mr.
12       Kwok did, what the defendant did.  The money,
13       there is no evidence at all that ties any of the
14       money that was loaned to any entity by the
15       plaintiff to this apartment, that it was borrowed
16       and then put into the apartment and back.
17       Whatever loans they say were made were made years
18       before the purchase of the apartment.
19            They talk about the attempt to put the
20       apartment in their son's name.  Yes, as Mr. Moss
21       said, an inquiry was made.  Somebody inquired of
22       the Sherry Netherlands what would it take to
23       change the ownership of the apartment to our son.
24       And when the Sherry Netherlands responded and said
25       essentially what had to happen they abandoned it.

FILED: NEW YORK COUNTY CLERK 03/21/2019 02:41 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 281
RECEIVED NYSCEF: 03/21/2019

20-12411-jlg    Doc 14-41    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 41
Pg 26 of 36

25

1                      Proceedings

2        This was that simple.  They asked a question.

3        They got an answer.  They abandoned it.  The

4        pledge.  Your Honor at the last hearing we had

5        raised a question of whether or not the existence

6        of a pledge impacted the decision of the court to

7        issue an attachment.  And your Honor said well

8        that's a matter of priority and we agreed.  We

9        agreed it's a question of priority.  That is the

10       only issue with the pledge.  Now, I think we all

11       agree there are no pledges on this apartment.  So

12       I understand your Honor's reticence about a

13       Chinese dissident, a Chinese national dissident

14       coming to the United States and trying to avoid

15       judgements that the court may enter by taking

16       money that's in this country and removing it from

17       the country.  I may not agree with your Honor

18       about this, but I understand the reticence that

19       the court has.  But your Honor fashioned a remedy

20       for the plaintiffs that the plaintiff didn't even

21       ask for.  You granted an order.  You entered an

22       order that required Mr. Kwok, Genever, whoever

23       owns the apartment, it's titled in Genever, to

24       notify the plaintiff if he entered into a contract

25       of sale.  And so that they could then take action

FILED: NEW YORK COUNTY CLERK 03/21/2019 02:41 PM        INDEX NO. 652077/2017

NYSCEF DOC. NO. 281        20-12411-jlg    Doc 14-41    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 41        RECEIVED NYSCEF: 03/21/2019

Pg 27 of 36

26

1                        Proceedings

2          to protection themselves.  Your Honor suggested to

3          them that they amend their complaint add the

4          proper party and seek a preliminary injunction.

5          And they didn't do that.  I have to ask so it's a

6          year now almost a year since we were since they

7          made their second attachment motion, more than a

8          year since we answered the complaint and we still

9          haven't gotten to merit discovery on this case.

10         It's still all about securing the judgment that

11         they don't have, that they if they are right that

12         it's that straightforward, that we could have just

13         done merit discovery, gotten to the issues,

14         entered a judgment and they could execute on the

15         judgment.  We haven't done that and it's dead.  We

16         spent all this times trying to attach a piece of

17         property that your Honor has already fashioned a

18         remedy for to protect them.  And there is whatever

19         evidence they say they've obtained in the post

20         order discovery, whatever that is, whatever that

21         is, it doesn't go to the questions that your Honor

22         presented.  Can you show me that the money that

23         was used to buy the apartment was money that came

24         from the plaintiffs?  Can you show that the

25         attempts to put the apartment on the market

27

1                          Proceedings
2          constitutes and demonstrates an attempt to defraud
3          the plaintiff?  You know, your Honor, it's a coop
4          in the city of New York.  There is no way that the
5          Sherry Netherlands is going to approve a new
6          purchaser without going through the entire process
7          and now the Sherry Netherlands is on notice that
8          there is an order in place because the plaintiffs
9          made sure of that.  Nothing wrong with letting the
10         Sherry know once we the order is entered in, but
11         there has been countless discussion and
12         cooperation between counsel for the Sherry and
13         counsel for PAX.  It is inconceivable that your
14         Honor's order would ever be ignored, could be
15         ignored, given the logistics of how a cooperative
16         apartment gets sold.  I say as a practical matter
17         the very notion that buying a high profile
18         apartment in New York is an effort to secret and
19         hide assets is just anathema to me.  Your Honor, I
20         think we're in the same place we were before when
21         your Honor issued the first order.  That order is
22         in place.  It protects the plaintiffs fully.
23         Nothing has happened since that order was entered
24         to change the dynamic of where we are.  We should
25         get to merit discovery and get this case resolved.

FILED: NEW YORK COUNTY CLERK 03/21/2019 02:41 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 281
RECEIVED NYSCEF: 03/21/2019

20-12411-jlg    Doc 14-41    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 41
Pg 29 of 36

28

| | |
|---|---|
| 1 | Proceedings |
| 2 | And I'm happy to answer any questions you have. |
| 3 | MR. MOSS:  Just briefly, your Honor. |
| 4 | THE COURT:  Very briefly. |
| 5 | MR. MOSS:  Very briefly.  A few points. |
| 6 | No evidence that the money came from us.  He |
| 7 | testified at his deposition that there was a |
| 8 | representative relationship between Shiny Times |
| 9 | and Genever, like when you buy a house there is an |
| 10 | agent.  So that's the evidence.  It's not my |
| 11 | evidence.  He said it at his deposition.  In terms |
| 12 | of the notice order that's out right now, we |
| 13 | understood that that would be an interim order |
| 14 | first of all.  Second of all, he didn't even say |
| 15 | that he would abide by it Mr. Kwok.  I asked him |
| 16 | in deposition if he would abide by it.  They |
| 17 | instructed him not to answer that he would abide |
| 18 | by it. |
| 19 | THE COURT:  Your adversary's point is |
| 20 | well taken.  Sherry Netherlands is on notice of |
| 21 | the order.  There is not going to be any transfer |
| 22 | of the apartment without you getting notice.  And |
| 23 | I don't think that the Sherry Netherlands is going |
| 24 | to transfer the apartment any way without |
| 25 | acquiescence by the court. |

FILED: NEW YORK COUNTY CLERK 03/21/2019 02:41 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 281
RECEIVED NYSCEF: 03/21/2019

20-12411-jlg    Doc 14-41    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 41
Pg 30 of 36

29

1                        Proceedings

2              MR. MOSS:  Well, your Honor, the

3        transfer the apartment is only one part of the

4        problem.  He have could transfer the holding

5        company.  He could transfer Genever which is

6        actually the owner of the apartment on paper to

7        somebody else.  And then we would be out of luck

8        because somebody else would be the owner of the

9        apartment.  Right now, your Honor, we have met the

10       standard for an attachment.  We have proven that

11       what he's trying to do with all of these

12       misrepresentations about the corporate funds that

13       he is trying to shield this apartment from us.  He

14       tried to assign it to the trust in the son's name.

15       They say he never followed up on it.  It never

16       went away.  That's not true.  He did follow up on

17       it.  He sent more emails saying I'd like to change

18       the contact person to my son and the Sherry

19       Netherlands witness told me that he thought Mr.

20       Kwok was trying to end around their position that

21       he couldn't assign the actual apartment.  And so

22       he did follow up on it.  We have no idea what Mr.

23       Kwok is doing because they brought all discovery

24       into it.  We've no idea what he might be doing to

25       the apartment.  He's pledged to two other

FILED: NEW YORK COUNTY CLERK 03/21/2019 02:41 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 281
RECEIVED NYSCEF: 03/21/2019

20-12411-jlg    Doc 14-41    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 41
Pg 31 of 36

30

1                          Proceedings

2          entities.  So already he could pledge again and

3          there may be a priority for somebody else.  Given

4          that we've met the standard, your Honor, we

5          respectfully request that you we'll be left

6          holding a paper judgment at this point if there is

7          not a property interest that is entered for us on

8          this property.

9                    MR. HARMON:  Your Honor, can I respond.

10                   THE COURT:  Yes, go ahead.

11                   MR. HARMON:  This notion that Mr. Kwok

12         could transfer Genever has never been raised

13         before.  It's not an argument that they ever made

14         before that's problematic to them.  They harp on

15         the fact that Mr. Kwok did not say in his

16         deposition yes I will abide by the order.  So if

17         it was as simple as Mr. Kwok saying -- if Mr. Kwok

18         could answer that question yes of course I'll

19         abide by the order, it's inconceivable to me

20         plaintiff would say that's great, we're all done,

21         we're satisfied now.  If that's what it takes to

22         satisfy them, for Mr. Kwok say of course I will

23         abide by the order, I will have Mr. Kwok do

24         whatever your Honor says to say, yes I will comply

25         with the order of this court.  That's not what

FILED: NEW YORK COUNTY CLERK 03/21/2019 02:41 PM
INDEX NO. 652077/2017

NYSCEF DOC. NO. 281

RECEIVED NYSCEF: 03/21/2019

20-12411-jlg    Doc 14-41    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 41
Pg 32 of 36

31

```
 1                     Proceedings
 2     we're doing here.  That's not what drives this.
 3     If it were that simple it would have been resolved
 4     a long time ago.
 5               THE COURT:  All right.
 6               MR. MOSS:  Just on the point where they
 7     say we never raised the issue of wanting an
 8     attachment of Genever.  In any event on page 26 of
 9     our brief we ask the court enter an order
10     attachment of residence the Genever entities and
11     any sale or proceeds from --
12               MR. HARMON:  The Genever entities aren't
13     party to the action.
14               THE COURT:  The Genever is not a party
15     to this action.  This is what I'm going to do
16     because while the fact pattern here is very
17     problematic.  I don't think the plaintiff has
18     followed up on comments made to prior oral
19     argument or the June 28th, 2018 order.  I'm going
20     to order an evidentiary hearing March 28th, at
21     9:30 and we'll resolve this issue whatever factual
22     record the parties present on March 28th.  And
23     that's the order of the court.
24               COURT OFFICER:  Please order a copy of
25     the transcript.
```

FILED: NEW YORK COUNTY CLERK 03/21/2019 02:41 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 281
20-12411-jlg   Doc 14-41   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 41
RECEIVED NYSCEF: 03/21/2019
Pg 33 of 36

32

1                          Proceedings

2              MR. MOSS:  Thank you, your Honor.

3              MR. HARMON:  Thank you.

4         Certified to be a true and accurate
          transcript of the original stenographic
5         notes.

6

7         _____
          JACQUELINE CAMPBELL
8         SENIOR COURT REPORTER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

20-12411-jlg   Doc 14-41   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 41
Pg 34 of 36

33

**1**

10 - 15:22
10036 - 1:15
10158 - 1:18
10th - 11:3
11 - 16:11
12 [4] 16:10, 16:19, 16:23, 17:3
12th - 18:10
13 [2] 17:13, 18:3
14 [2] 17:13, 18:13
15 - 19:6
16 [2] 19:11, 19:11
17 - 19:21
18 [2] 20:7, 20:12
19 - 20:19

**2**

2011 - 10:9
2014 - 11:3
2015 [3] 10:20, 18:14, 18:15
2016 - 13:15
2017 - 18:18
2018 [4] 2:3, 18:8, 18:10, 31:19
2019 - 1:8
24 - 7:9
26 - 31:8
27th - 18:7
28th [4] 3:3, 31:19, 31:20, 31:22

**3**

3 - 5:14
30 [2] 14:21, 14:25

**4**

4 - 6:14

**5**

5 - 7:10
50 - 24:9

**6**

6 - 8:12
6:9 - 1:9
605 - 1:18
61 - 1:1
62013 - 4:9
65 - 23:3
652077-17 - 1:4
67.5 - 11:10

**7**

7 [2] 1:14, 10:2

**8**

8 [3] 14:16, 14:21

**9**

9 [2] 15:7, 15:10
9:30 - 1:11

**A**

a/k/a [7] 1:5, 1:5, 1:6, 1:6, 1:6, 1:6, 1:6
abandoned [2] 24:25, 25:?
abide [8] 16:13, 16:16, 28:15, 28:16, 28:17, 30:16, 30:19, 30:23
able [2] 10:19, 30:23
absolutely - 21:13
abuse - 6:14
accurate - 32:4
acquiescence - 28:25
act - 23:19
action [5] 2:11, 20:3, 25:23, 31:13, 31:15
acts - 4:16

actual - 29:21
add [2] 2:17, 26:3
additional - 7:22
address - 22:2
administrator - 18:24
admitted - 12:21
adversary's - 28:19
affidavit [8] 6:4, 16:24, 17:10, 18:19, 18:20, 18:24, 20:17, 21:11, 25:11
against - 1:4
agent - 28:10
agree [2] 25:11, 25:14
agreed [2] 25:8, 25:9
agreement [2] 10:8, 14:21
ahead - 30:10
Alliance [2] 1:2, 2:14
Allman [2] 24:4, 24:8
allow [2] 21:20, 24:6
already [5] 9:10, 11:25, 12:18, 26:17, 30:2
amend - 26:3
amending - 2:17
amiss - 23:11
amount [2] 11:11, 15:2
anathema - 27:14
and/or [2] 2:6, 2:13
answered - 26:8
anticipated - 9:23
apartment [49] 7:2, 7:4, 10:14, 12:2, 12:23, 13:16, 13:17, 13:20, 13:24, 14:4, 16:21, 17:4, 17:6, 17:9, 17:20, 18:14, 19:7, 19:9, 19:24, 20:2, 20:11, 22:6, 22:9, 22:16, 22:22, 23:5, 23:5, 23:8, 24:6, 24:7, 24:15, 24:16, 24:18, 24:20, 24:23, 25:11, 25:23, 26:23, 26:25, 27:16, 27:18, 28:22, 28:24, 29:3, 29:6, 29:9, 29:13, 29:21, 29:25
apartments [6] 10:11, 10:13, 10:15, 10:23, 11:10, 24:9
APPEARANCES - 1:12
appears - 19:13
applied [2] 7:19, 7:20
approach - 2:24
approval [3] 11:12, 11:13, 11:15
approve [3] 21:3, 23:10, 27:5
approved [2] 23:21, 24:7
aren't - 31:12
argue - 22:21
argument [10] 8:14, 14:18, 15:3, 17:17, 18:4, 18:14, 19:22, 20:8, 30:13, 31:19
arguments - 3:5
Asia [2] 1:2, 2:5
asset - 5:19
assets [12] 6:8, 8:7, 10:21, 10:22, 10:24, 11:16, 11:24, 17:24, 17:25, 22:25, 23:3, 27:19
assign [4] 4:21, 4:22, 29:14, 29:21
assigned [2] 4:13, 4:17
assistance - 24:3
assists - 3:12
assumed [2] 22:12, 22:14
assuming [2] 2:19, 3:3
asylum - 15:17
attach [2] 2:15, 26:16
attached - 20:17
attaches [2] 19:13, 19:17
attachment [16] 2:6, 2:22, 4:10, 16:4, 16:18, 16:19, 17:15, 17:19, 17:20, 18:22, 19:5, 25:7, 26:7, 29:10, 31:8, 31:10
attempt [5] 2:16, 22:7, 22:24, 24:19, 27:2
attempted - 13:20
attempting [2] 2:9, 4:11
attempts - 26:25
attention - 15:15
Attorney [2] 1:13, 4:1
avail - 3:19
available - 9:16
availing - 15:18
Avenue - 1:18
avoid [2] 2:19, 25:14

**B**

Baby - 6:18
background - 10:7
balance - 11:23
BARRY - 1:10
base - 6:4
bastions - 23:14
become - 7:7
behalf - 13:5
Beijing - 10:12
believes - 2:6
benefit - 9:15
beyond - 16:3
bit [2] 5:11, 17:2
black - 9:13
board [11] 11:12, 11:13, 11:15, 11:17, 12:13, 23:13, 23:15, 23:19, 23:25, 24:5, 24:7
bogus - 6:4
Bolen - 6:11
borrowed - 24:15
borrower - 14:24
Bravo - 22:10
branching - 3:6
break - 13:6
brief [4] 5:14, 7:10, 22:2, 31:10
briefly [5] 5:22, 14:15, 28:3, 28:4, 28:5
briefs [2] 31:8, 9:25
bringing - 8:4
British - 18:5
brought [2] 22:21, 29:23
buildings - 23:12
bunch - 15:12
burden - 2:6
buying - 27:17
buys - 12:11
BVI [8] 7:17, 11:8, 12:12, 13:19, 17:11, 17:12, 18:12

**C**

CAMPBELL [2] 1:22, 32:?
can't [2] 17:19, 20:8
capitalize [5] 6:25, 7:1, 11:18, 11:14, 29:?
case [11] 5:25, 6:12, 6:18, 7:9, 9:22, 13:11, 15:11, 15:15, 16:12, 26:9, 27:23
cases [3] 3:8, 5:13, 5:14
center - 20:7
centerpiece - 18:21
Centre - 1:5
Certainly - 22:17
Certified - 32:4
chance - 3:13
change [3] 24:23, 27:24, 29:17
chapter - 17:5
chased - 13:18
China - 13:18
Chinese [6] 10:21, 11:25, 14:20, 14:25, 25:13, 25:13
circumstances - 5:16
circumstantial - 5:18
cited [4] 3:8, 3:9, 5:14, 9:24
city [6] 7:16, 22:22, 23:6, 23:13, 23:14, 27:4
claim [2] 2:15, 23:2
claims - 6:22
clarification - 13:7
cleaned - 13:14
clear [4] 13:8, 8:24
clearly [2] 21:2, 22:8
client [2] 15:24, 15:25
closing - 12:5
Coley - 5:25
comes [3] 9:25, 9:25, 12:20
coming - 25:14
comments - 31:18
commit - 5:17
communicating - 23:25
communicate - 15:14
companies [8] 4:23, 7:2, 7:4, 11:16, 11:22, 11:22, 12:16, 12:19
company [8] 6:25, 7:6, 7:8, 11:20, 12:10, 13:22, 16:22, 29:5
complaining - 6:17
complaint [3] 2:17, 26:3, 26:8
completely - 8:17
comply - 30:24
conceal - 23:7
concealed - 24:8
concluded - 8:3
conditions [4] 10:17, 11:2, 11:4, 14:19
conduct - 5:1
connection - 15:9
Connelly - 11:19
constitutes [2] 22:23, 27:2
contact - 29:18
contained - 3:5
contested - 6:16
contest - 16:17
continuing - 4:19
contract [2] 16:13, 25:24
contradictory - 6:3
control - 17:13
controlled - 17:11
convince - 21:2
coop [3] 23:18, 23:19, 27:3
cooperation - 27:12
cooperative [2] 23:12, 27:15
copies [2] 19:20, 20:18
corp - 7:17
corporate [5] 6:16, 6:24, 19:14, 24:10, 29:12
corporation [4] 7:14, 7:16, 8:2, 12:13
corporations - 19:18
correct [5] 3:7, 4:2, 19:14, 19:20, 20:17
couldn't - 29:21
counsel [3] 6:12, 27:12, 27:13
counsels - 3:14
countless - 27:11
COUNTY - 1:1
couple - 13:14
course [3] 17:12, 30:18, 30:22
court [45] 1:1, 1:11, 1:23, 2:2, 2:2, 2:6, 3:3, 3:10, 3:15, 5:24, 6:5, 6:9, 7:9, 7:19, 8:3, 9:6, 9:9, 10:2, 15:20, 15:24, 15:25, 16:17, 16:21, 17:9, 17:14, 17:18, 18:3, 19:4, 19:8, 20:4, 21:9, 25:6, 25:15, 25:19, 28:4, 28:19, 28:25, 30:10, 30:25, 31:5, 31:14, 31:21, 31:24, 32:8
court's [3] 3:23, 3:25, 23:24
courts [3] 5:20, 6:23, 15:19
covered - 12:18
CPLR [3] 4:9, 6:21, 16:?
crazy - 15:11
created - 22:20
creditor - 22:7
creditors [5] 4:11, 8:7, 14:5, 20:23, 22:24

**D**

dead - 26:15
deadline - 10:10
deadlines - 10:17
debt [13] 5:21, 6:10, 7:7, 7:12, 14:6, 14:11, 14:17, 15:4, 20:24, 21:3, 21:21, 22:13, 22:14
debts - 8:2
decades - 12:15
decided - 24:5
deciding - 3:12
decision [4] 2:2, 2:4, 13:13, 25:6
deck [3] 5:15, 8:25, 10:3
defendant [3] 1:7, 21:25, 24:12
defendants [3] 1:7, 1:8, 1:8
definitive - 6:19
defraud [5] 4:11, 5:10, 22:7, 22:24, 27:2
defrauding - 8:8
demonstrates - 27:2
demonstrative [3] 3:10, 3:20, 3:24
denied - 14:15
deposed - 18:25
deposition [15] 11:21, 12:22, 13:12, 14:14, 14:20, 15:6, 17:7, 17:12, 19:15, 20:5, 20:13, 28:7, 28:11, 28:16, 30:16
depositions - 17:22
developments - 9:22
digging - 17:22
directors - 23:13
discovery [16] 2:7, 2:13, 4:3, 4:5, 4:20, 5:6, 9:16, 16:4, 16:5, 16:16, 16:19, 26:9, 26:13, 26:20, 27:25, 29:23
discretion - 6:19
discretionary - 21:18
discussion - 27:11
disposed [2] 4:13, 4:17
dissatisfied - 24:6
dissident [2] 25:13, 25:13
document [2] 14:24, 18:8
documents [5] 9:12, 19:14, 19:17, 20:15, 20:16
dollars [3] 11:11, 14:25, 23:4
dominated - 8:6
door - 8:5
drives - 31:2
drop [2] 13:19, 13:25
dropped - 13:16
drops - 13:16
due [4] 14:6, 14:11, 20:24, 21:3
dynamic - 27:24

**E**

EDWARD - 1:15
effect [2] 8:8, 18:7
effort - 27:18
efforts - 11:9
egregious - 14:14
either [4] 11:19, 16:15, 19:16, 20:25
element - 7:22
emails - 29:17
employees [2] 16:25, 16:25
enables - 8:11
encumbered [3] 4:14, 4:18, 4:25
ending - 8:24
enforcement [4] 2:10, 4:12, 5:9, 5:11
enjoining - 2:19
enter [2] 25:15, 31:9
entered [7] 10:8, 23:22, 25:24, 26:14, 27:10, 27:23, 30:7
enters - 12:20
entire - 27:6
entities [8] 11:7, 19:16, 20:23, 21:10, 21:10, 21:12, 30:2, 31:10, 31:12
entity [11] 11:8, 11:8, 12:23, 13:10, 19:12, 21:10, 22:13, 22:15, 23:22, 24:14
especially - 7:7
ESQ [4] 1:15, 1:16, 1:19, 1:19
essentially [2] 9:19, 24:25
establish - 2:20
estate [2] 7:18, 13:3
evading - 21:22
kvaiveness - 5:24
event - 31:9
everybody - 23:6
everything [2] 3:8, 10:2
evidence [29] 2:13, 4:6, 4:24, 5:12, 5:18, 6:2, 8:9, 8:16, 8:17, 8:18, 9:20, 9:20, 9:21, 9:24, 10:3, 10:6, 13:14, 13:15, 20:10, 20:22, 22:15, 22:19, 23:10, 23:18, 24:13, 26:19, 28:6, 28:10, 28:11
evidentiary - 31:20
exactly - 11:11
excuse - 16:11
execute - 26:14
existence [2] 14:17, 25:5
expensive - 22:21
explain - 8:24
extending - 10:18
extension - 11:3

**F**

facility - 15:2
factual [2] 18:23, 31:21
failed [3] 8:15, 20:24, 21:16
fails [2] 2:13, 11:8
failure [4] 6:2, 6:24, 6:25, 11:14
fairly - 21:16
fairness - 21:19
false [2] 11:3, 20:25
family - 20:2
fashioned [2] 25:19, 26:17
favor [2] 3:11, 4:13
featured - 8:11
February [2] 10:20, 11:3
feel - 22:3
figure - 16:5
figured - 15:16
filed - 17:18
filing [3] 18:5, 18:12, 19:7
finds [2] 15:24, 15:25
firm - 6:11
flees - 10:22
florida [3] 7:13, 7:20, 7:20
focus [3] 5:7, 14:11, 14:12
follow [2] 29:16, 29:22
followed [2] 29:15, 31:18
foreign [5] 7:8, 7:16, 7:17, 12:13, 21:6
formalities - 6:24
formed [5] 7:2, 7:13, 7:16, 8:6, 20:22
former - 6:11
forms - 11:7
forum [2] 6:16, 24:11
forward - 15:6
fraud [4] 5:15, 5:17, 6:22, 7:22
fraudulent [2] 2:5, 11:13
fruitful - 4:5
frustrate [5] 4:11, 5:8, 5:11, 16:6, 16:8
fully - 27:22
fund [2] 11:2, 2:5
fundamentally - 21:20
funding - 20:2
funds [4] 19:22, 19:23, 19:25, 29:12

**G**

game - 15:5
games - 14:4
gave [3] 9:9, 19:23, 22:18
Genovar [24] 2:8, 2:13, 11:7, 12:23, 12:25, 17:11, 17:12, 17:25,

17:25,
19:10, 19:12,
20:22, 21:10,
21:12, 24:6, 25:22,
25:23, 28:9, 29:5,
30:12, 31:8, 31:10,
31:12, 31:14
Geneva's - 2:15
gets - 27:16
gift - 1:2
given [3] 14:22,
27:15, 30:3
gives - 11:3
goes [3] 8:19,
16:22, 17:4
gonna [5] 5:16, 7:7,
10:25, 15:5, 15:19
gotten [2] 26:9,
26:13
government [2]
10:21, 11:25
granted - 25:21
grounds - 4:10
GUR - 1:6
GUI [2] 1:5, 1:6
GUO [3] 1:6, 1:6,
1:6
guys - 15:12
GWO - 1:5

### H
hallmark - 22:25
Hamptons - 7:14
handed - 9:4
handout [2]
HAOYUN [2] 1:6, 1:6
happen - 24:25
happened [4] 14:12,
14:13, 14:14, 27:23
happy [2] 22:2, 28:2
Harmon [13] 11:19,
2:25, 3:7, 3:11,
3:21, 9:7, 18:5,
21:24, 21:25, 30:9,
30:11, 31:12, 32:3
harness [2] 12:7,
12:8
harp - 30:14
hastily - 23:10
haven't [3] 3:13,
26:9, 26:15
having - 18:3
he'll - 16:16
he's [13] 4:18,
4:19, 4:25, 5:2,
10:25, 11:4, 14:17,
15:5, 15:17, 15:18,
15:19, 29:11, 29:25
hear - 2:22
heard - 13:1
hearing [3] 18:9,
25:4, 31:20
heart [3] 8:19,
14:7, 14:8
heavy - 2:5
held - 18:5
hide - 27:19
himself [2] 15:18,
2:21
HO [2] 1:5, 1:5
HODGSON - 1:17
holding [8] 4:22,
7:25, 12:10, 12:16,
13:22, 16:22, 29:4,
30:6
HOW - 1:10
Hong [4] 13:9, 13:9,
22:10, 23:4
Honor [10] 2:23,
2:24, 3:7, 3:12,
3:21, 3:22, 4:2,
4:3, 5:13, 6:15,
8:13, 8:25, 9:8,
15:5, 16:10, 18:6,
20:9, 20:19, 21:18,
21:23, 21:24,
22:20, 23:23, 25:4,
25:7, 25:17, 25:19,
26:2, 26:17, 26:21,
27:3, 27:19, 27:21,
28:3, 29:2, 29:9,
30:4, 30:9, 30:24,
32:2
Honor's [2] 25:12,
27:14
host - 14:7
houses - 13:3

### I
idea [4] 3:2, 20:6,
29:22, 29:24
ignored [2] 27:14,
27:15
ignoring - 8:17
illegitimate - 15:23
impacted - 25:6
include - 10:25
included - 9:4

including [2] 5:3,
6:10
incoherent - 6:3
inconceivable [3]
23:15, 27:13, 30:19
incurring - 5:21
index - 1:4
individual - 8:3
industry - 12:15
inequity - 6:22
infer - 5:18
inferred - 5:15
inform - 5:12
information [3]
5:17, 11:13, 21:2
injunction [2] 2:18,
26:4
injustice - 6:17
ink - 9:13
inquired - 24:21
inquiring - 13:22
inquiry [2] 6:20,
24:21
inserted - 9:3
instructed [2] 16:2,
18:7
intact - 16:4
intend - 16:6
intended - 16:8
intent [5] 2:9,
2:14, 5:7, 5:10,
5:11
interest [4] 17:4,
18:25, 19:7, 30:7
interim - 28:13
international [2]
13:9, 13:10
irrefutable [2]
8:20, 8:21
irrelevant - 14:10
island - 18:1
issuance - 23:24
issue [5] 20:3,
25:7, 25:10, 31:7,
31:21
issued [3] 2:2,
16:17, 27:21
issues - 26:13

### J
JACQUELINE [2] 1:22,
32:7
January - 10:19
judge - 17:20
judgement - 16:8
judgements - 25:15
judgment [11] 2:11,
4:12, 5:9, 15:19,
15:20, 16:6, 21:21,
26:10, 26:14,
26:15, 30:6
JULIIAN - 1:19
June [6] 2:13, 11:4,
13:15, 18:7, 18:10,
31:19
jurisdiction [2]
6:8, 6:10
Justice - 1:17

### K
Kane [2] 7:9, 7:11
kept - 10:18
knowledge [3] 6:6,
20:14, 21:13
known - 14:6
knows [4] 6:9, 6:15,
10:24, 18:6
Kong [4] 13:9,
13:10, 22:10, 23:4
Kwok [28] 1:5, 1:5,
1:6, 4:10, 5:8,
5:16, 7:15, 7:16,
10:9, 14:16, 15:3,
15:22, 16:4, 17:10,
21:20, 22:21,
23:16, 24:12,
25:22, 28:15,
29:20, 29:23,
30:11, 30:15,
30:17, 30:17,
30:22, 30:23
Kwok's [6] 2:8,
2:14, 10:20, 16:25,
17:3, 18:25

### L
L.P - 1:2
lack - 6:18
later [2] 11:7, 17:2
law [2] 7:20, 7:20
lava - 15:18
lawsuit [8] 5:3,
14:9, 14:10, 14:12,
14:13, 14:15,

15:24, 16:21
learned [4] 4:20,
4:24, 11:14, 17:21
least [2] 10:9, 12:24
letting - 27:9
level - 22:9
liability - 7:6
liable - 8:2
lien [2] 18:14, 18:6
liens - 10:16
likely - 21:7
liquidated - 13:19
litigation - 15:9
living - 15:17
LLC [3] 7:17, 12:11,
12:12
LLC's - 21:5
LLP - 1:14
loan [3] 10:18, 20:3,
22:14
loaned [2] 22:12,
24:14
loans - 24:17
logistics - 27:15
LP - 21:8
luck [2] 22:10, 29:7
luxury [2] 23:5,
23:5

### M
mafia - 15:13
makes - 19:11
making - 18:1
malfeasance [2]
6:22, 7:22
manager - 24:4
March [4] 1:18,
18:16, 31:20, 31:22
MARIN - 1:19
Mark [2] 1:19, 21:25
marked [2] 22:23,
26:25
matter [2] 25:8,
27:16
maybe - 11:24
meaning - 18:2
meant - 21:19
meet [3] 2:5, 8:11,
21:16
meeting - 13:5
merit [3] 26:2,
26:13, 27:25
messages [2] 15:8,
15:16
met [3] 21:17, 29:9,
30:4
MILES - 1:6
million [4] 11:10,
14:21, 14:25, 23:4
misrepresentatio [6]
14:7, 16:20, 17:1,
17:23, 18:2, 29:12
misrepresented -
21:9
mixed [2] 10:10,
10:16
money [26] 7:3, 7:15,
10:9, 11:6, 12:8,
12:18, 12:20,
12:22, 12:24,
14:19, 14:22, 20:4,
20:6, 21:7, 22:9,
22:11, 22:16,
22:18, 23:4, 23:7,
24:14, 24:16, 24:24,
25:16, 26:22,
26:23, 28:6
months [2] 13:17,
23:24
morning - 3:23
More [10] 1:15,
2:23, 3:22, 9:11,
24:20, 28:3, 28:5,
29:2, 31:6, 32:2
mostly - 9:16
motion [5] 2:12,
2:21, 3:18, 6:7,
16:4, 16:18, 16:19,
17:14, 17:15,
17:18, 17:19,
18:21, 19:22, 19:5,
26:7
mounting - 6:10
move - 8:9
MYERS - 1:14
myself - 3:19
mystery - 25:7

### N
national - 25:13
necessarily - 6:21
needs [2] 11:12,
17:13
negotiates - 11:2
Netherlands [17]
11:24, 12:5, 12:14,
17:8, 22:6, 23:9,
23:11, 24:2, 24:4,

24:10, 24:22,
24:24, 27:5, 27:7,
28:20, 28:23, 29:19
nobody [2] 20:6,
23:7
noted [2] 3:15, 7:20
notes - 32:5
nothing [6] 3:4,
3:17, 19:6, 24:11,
27:9, 27:23
notice [5] 7:24,
27:7, 28:12, 28:20,
28:22
notify - 25:24
noting - 3:13
notion [2] 27:17,
31:18
MY [2] 1:15, 1:18

### O
O'MELVENY - 1:14
objection - 9:24
observe - 6:24
obtain [2] 12:2,
24:3
obtained [2] 11:15,
26:19
OFFICER - 31:24
onto - 8:9
open - 9:13
opening - 7:10
opportunity [3] 1:2,
2:5, 3:19
oppose - 19:24
opposition - 18:21
oral - 31:18
order [31] 2:22,
3:23, 3:25, 7:23,
13:24, 14:5, 16:11,
16:14, 16:17,
23:25, 25:21,
25:22, 26:20, 27:9,
27:10, 27:14,
27:21, 27:21,
27:23, 28:12,
28:13, 28:21,
30:16, 30:19,
30:23, 30:25, 31:9,
31:19, 31:20,
31:23, 31:24
ordered - 4:3
orders - 15:25
ordinarily - 5:15
original [2] 15:2,
32:4
OSTRAGHA - 1:10
outside [2] 16:15,
16:18
owe - 14:19
owed [3] 7:7, 7:12,
11:11
owes - 21:21
owing - 21:4
owned [5] 11:17,
11:20, 23:21, 24:9,
24:10
owner [2] 29:6, 29:8
owners - 24:9
ownership [3] 17:4,
19:7, 24:23
owns [6] 17:5, 19:9,
19:10, 19:12,
19:15, 25:23

### P
Pacific [2] 1:2, 2:4
packet [4] 2:24,
3:4, 3:17, 9:5
papers [6] 3:18,
5:4, 6:18, 8:22,
10:4, 14:17
paragraph - 2:3
parked - 12:18
parties [4] 2:18,
5:5, 10:8, 31:22
party [6] 5:4, 6:17,
14:4, 26:4, 31:13,
31:14
pattern [2] 5:21,
31:16
Paul - 11:18
PAX [5] 6:15, 21:6,
22:7, 23:25, 27:13
pay [5] 7:13, 15:14,
15:19, 16:2, 16:2
pendency - 5:3
percent - 24:5
performed - 18:3
perpetrate - 6:16
personal [2] 6:6,
21:13
Phat - 6:18
phony - 21:11
piece [2] 20:7,
26:16
pieces - 4:24
pierce - 6:14
piercing [5] 2:15,

14:8, 16:23, 20:21,
27:6
plaintiff [14] 1:13,
2:12, 2:16, 2:20,
7:23, 8:7, 22:17,
22:17, 24:15,
25:20, 25:24, 27:3,
30:20, 31:17
plaintiff's - 8:18
plaintiffs [6] 1:3,
8:8, 25:20, 26:24,
27:8, 27:22
play - 15:5
playing - 14:4
Please - 31:24
pled - 5:2
pledge [11] 17:24,
17:24, 18:9, 18:11,
18:16, 20:10,
20:11, 23:4, 25:6,
25:10, 30:2
pledged [11] 4:3,
17:20, 17:25,
18:15, 18:15,
18:17, 18:18, 20:8,
20:12, 20:12, 29:25
pledges [6] 5:6,
17:15, 17:16,
20:14, 21:10, 25:11
point [5] 13:12,
22:6, 28:19, 30:6,
31:6
points [2] 13:15,
8:19
position [2] 22:18,
29:20
post - 26:19
practical [2] 22:8,
27:16
Precise - 11:11
precisely - 8:25
preconditions -
11:12
prejudgment - 2:21
preliminary [3]
2:18, 8:11, 26:4
premises - 23:12
present - 31:22
presented - 26:22
preserve - 2:16
pressured [2] 23:25,
23:16
pretenses - 12:3
price [4] 13:16,
13:17, 13:20, 13:25
principal - 14:25
prior [3] 14:17,
23:24, 31:18
priority [3] 25:9,
25:9, 30:3
privilege - 6:15
problem - 29:4
problematic [2]
30:14, 31:17
proceed - 2:7
proceedings - 5:24
proceeds - 31:11
process [2] 11:15,
27:6
produce - 6:2
profile [2] 23:5,
27:17
promote - 21:19
prong - 5:7
proof [2] 14:17,
23:23
proper - 26:4
protected - 8:7
protection - 26:2
protests - 27:22
prove [6] 4:6, 4:7,
4:9, 7:23
proven - 29:10
provides - 2:13
public - 23:1
publicly - 9:16
purchase [10] 7:18,
13:4, 19:25, 21:3,
22:5, 22:16, 23:10,
23:20, 24:6, 24:18
purchased - 23:22
purchaser - 27:16
purchasing - 2:9
purported - 2:8
purpose - 12:12
putting [2] 13:22,
23:3

### Q
quickly [3] 12:4,
18:19, 23:20
quo - 2:17
quote [2] 12:25,
15:10

### R
raise - 5:16
raised [3] 25:5,
30:12, 31:7
real [2] 7:18, 13:3
reality - 8:18
reason - 17:16
receive - 14:25
recommended - 11:8
record - 31:22
red - 9:15
relating - 19:17
relationship [2]
13:2, 28:8
released [3] 18:11,
18:12, 18:16
relevant [3] 8:23,
8:25, 19:4
relief - 2:20
remedy [3] 21:18,
25:19, 26:18
remove - 4:15
removing - 25:16
rendered - 4:13
renew - 2:12
renewed - 2:21
repayment - 20:10
Reporter [2] 1:23,
32:8
representation -
3:16
representations [2]
19:12, 21:11
representative [2]
12:25, 28:8
request - 30:5
require - 6:21
required [3] 5:9,
5:10, 25:22
requiring - 7:21
residence [7] 2:10,
2:19, 4:20, 20:23,
21:6, 21:18, 31:10
residency - 5:2
residents - 7:15
resolve - 31:21
resolved [2] 27:25,
31:3
respect - 7:23
respectfully - 9:7
respond - 9:9
responded - 24:24
response - 15:16
reticence [2] 25:12,
25:18
reversal - 7:25
risk - 15:21
road - 22:4
rules [2] 6:19, 15:6
RUSS - 1:17

### S
salient - 10:16
SARNOFF - 1:16
satisfactory - 10:25
satisfied [2] 14:18,
30:21
satisfy [4] 10:17,
11:4, 11:5, 30:22
saying [2] 29:17,
30:17
says [4] 6:18,
14:24, 15:3, 30:24
scamming - 15:12
scenario - 22:20
Schiller - 6:11
scope [3] 16:1,
16:16, 16:18
searched - 15:9
SHARLAB - 1:19
Secrecy - 5:19
secret - 27:18
secreted [2] 4:14,
4:18
secreting [2] 22:25,
23:2
secretive - 23:2
secreting - 26:10
seek [3] 3:19, 26:4
seeking [3] 2:18,
15:17, 16:5
seek - 2:10
seized [4] 10:21,
10:23, 10:24, 11:25
Senior [2] 1:23,
32:8
sent - 29:17
settle - 10:11
settlement [2] 11:2,
11:4
shareholder - 17:10
shares [2] 17:6,
20:12
shed - 2:17
shedding - 11:10
sheet - 11:23
shell [7] 6:25, 7:2,

FILED: NEW YORK COUNTY CLERK 03/21/2019 02:41 PM INDEX NO. 652077/2017

NYSCEF DOC. NO. 281    20-12411-jlg    Doc 14-41    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 41    RECEIVED NYSCEF: 03/21/2019

Pg 36 of 36

35

7:4,
7:5, 7:8, 8:6,
12:19
**Sherry [20]** 11:23,
12:5, 12:14, 17:8,
22:6, 22:6, 23:9,
23:11, 23:25, 24:4,
24:10, 24:22,
24:24, 27:5, 27:7,
27:10, 27:12,
28:20, 28:23, 29:18
**Sherry-netherlan** -
21:2
**shield [8]** 7:6,
7:18, 11:6, 12:14,
13:24, 14:5, 20:23,
29:13
**shiny [10]** 10:9,
12:24, 12:25, 13:8,
21:7, 22:12, 22:12,
22:13, 22:14, 28:8
**showed** - 11:23
**showing** - 11:16
**shows [2]** 15:4,
22:11
**signature** - 14:23
**signed** - 14:21
**significant [2]**
8:18, 12:21
**signing** - 12:4
**simple [3]** 25:2,
30:17, 31:3
**simply** - 3:13
**sited** - 7:9
**sizable** - 11:23
**skip** - 3:24
**slide [24]** 3:24,
7:10, 8:12, 10:2,
14:16, 14:21, 15:6,
15:10, 15:21,
16:10, 16:11,
16:19, 16:23, 17:3,
17:13, 18:3, 18:13,
19:6, 19:11, 19:11,
19:21, 20:17, 20:12,
20:19
**snipped** - 8:12
**sole [3]** 17:10,
20:10, 20:10
**somebody [6]** 17:21,
21:12, 24:21, 29:7,
29:8, 30:3
**someone** - 6:5
**somewhat** - 3:18
**somewhere [3]** 7:5,
12:9, 12:20
**son [3]** 14:2, 24:23,
29:18
**son's [6]** 4:21,
4:23, 13:21, 13:23,
24:20, 29:14
**sorry** - 24:3
**specific** - 6:20
**spent [2]** 20:20,
26:16
**square** - 1:14
**standard [6]** 4:8,
14:8, 21:16, 21:17,
29:10, 30:4
**standards [2]** 8:12,
8:19
**stapled** - 9:12
**start [2]** 4:8, 10:6
**started** - 3:25
**state [3]** 1:1, 4:15,
7:19
**statement** - 8:15
**statements** - 19:4
**states [2]** 2:4,
25:14
**status [2]** 2:17,
21:9
**stenographic** - 32:4
**straight** - 15:7
**straightforward** -
26:12
**strategic** - 13:3
**Street** - 1:9
**striking** - 8:13
**structure [4]** 8:4,
12:11, 16:22, 21:5
**STUART** - 1:16
**stuff** - 14:9
**submit** - 21:15
**submitted [4]** 6:5,
16:24, 19:8, 21:10
**suffice** - 6:23
**suggested** - 26:2
**summarise** - 20:19
**summarised** - 10:3
**summary** - 3:4
**summarize** - 20:21
**summarized** - 7:10
**support** - 18:23
**Supreme [2]** 1:1,
1:11
**Sweeney [3]** 7:9,
7:11, 12:13
**swore [2]** 20:4, 20:5
**sworn** - 19:3

**T**

**taken [2]** 4:2, 28:20
**takes** - 30:21
**taking [2]** 17:22,
25:15
**tells** - 12:5
**terms [4]** 5:13,
6:13, 7:21, 28:11
**testified [5]** 15:22,
17:9, 18:23, 21:7,
28:7
**testifies** - 17:2
**testimony** - 6:2
**text [2]** 15:8, 15:16
**thank [6]** 2:23,
3:22, 21:23, 21:24,
32:2, 32:3
**themselves** - 26:2
**thereby** - 8:8
**therein** - 8:3
**they've** - 26:19
**thing [2]** 4:9, 6:13
**thinks [2]** 15:4,
15:11
**third [5]** 1:18, 5:4,
5:5, 12:20, 14:3
**third-party** - 20:2
**though** - 19:19
**thugs** - 15:13
**ties** - 24:13
**Time's** - 10:9
**timing** - 8:4
**title** - 10:14
**titled** - 25:23
**today [2]** 5:23, 18:7
**top [3]** 12:21, 17:3,
17:8
**topic** - 6:7
**Tower** - 1:14
**transcript [2]**
31:25, 32:4
**transfer [7]** 13:21,
28:21, 28:24, 29:3,
29:4, 29:5, 30:12
**transfers** - 5:19
**translator** - 19:2
**trap** - 19:24
**tried [6]** 4:18,
4:21, 4:22, 10:10,
23:7, 29:14
**tries** - 11:6
**true [5]** 19:14,
19:19, 20:17,
29:16, 32:4
**trust [7]** 4:21,
4:23, 8:21, 8:22,
13:21, 13:23, 29:14
**truth** - 13:12
**turn** - 9:18
**twice** - 5:2

**U**

**uncover** - 8:15
**uncovered [2]** 8:10,
9:20
**understand [3]** 12:6,
25:12, 25:18
**understatement** - 4:4
**understood [2]** 3:21,
28:13
**unencumbered** - 10:15
**unfair** - 21:20
**unhappy** - 24:5
**unique** - 24:11
**United** - 25:14
**unprecedented [2]**
12:6, 21:4
**unrelated** - 20:3
**untort** - 23:23
**uses [2]** 11:9, 15:18
**using [2]** 7:5, 12:13
**utterly** - 8:5

**V**

**Vanaguard** - 5:25
**veil [5]** 2:14, 6:14,
16:23, 20:20, 20:22
**verse** - 17:5
**versus [2]** 7:9, 7:11
**Virgin** - 18:5
**voluminous** - 3:18
**volunteered** - 13:2

**W**

**walk [3]** 4:25, 5:22,
6:7
**walked** - 9:14
**WAN [2]** 1:5, 1:6
**Wang [4]** 16:23,
17:2, 17:9, 18:23
**wanted [2]** 12:8,

18:13
**wanting** - 31:7
**we'll [3]** 10:12,
30:5, 31:21
**we're [8]** 4:2, 5:9,
5:10, 22:3, 27:20,
30:20, 30:21, 31:2
**we've [4]** 21:17,
22:4, 29:24, 30:4
**Weiss** - 11:19
**WEN [2]** 1:5, 1:6
**WENGUI** - 1:6
**weren't** - 10:16
**what's [4]** 3:2,
3:14, 3:17, 24:2
**whatever [6]** 24:17,
26:18, 26:20,
26:20, 30:24, 31:21
**whether [5]** 5:8,
16:16, 18:4, 22:5,
25:5
**whoever** - 25:22
**whom** - 22:18
**Williams** - 11:19
**wit** - 1:1
**witness [3]** 12:14,
20:10, 29:19
**wouldn't** - 16:9
**wouldn't** - 11:18
**writing** - 11:18
**wrong [2]** 6:17, 27:9
**wrongdoing** - 6:21

**Y**

**York [20]** 1:1, 1:1,
1:9, 1:9, 1:15,
1:18, 7:11, 7:15,
7:18, 7:19, 7:21,
10:22, 11:8, 12:11,
22:22, 23:6, 23:13,
23:15, 27:4, 27:18
**you'll [3]** 14:23,
15:10, 17:6
**yourself** - 7:6

**Z**

**zero** - 6:5