# EXHIBIT 43

*PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P. VS.*
*KWOK HO WAN*

---

*KWOK HO WAN*
*December 11, 2019*

---



*Original File 293035A.txt*
*Min-U-Script® with Word Index*

1  SUPREME COURT OF THE STATE OF NEW YORK

2  COUNTY OF NEW YORK
   ----------------------------------------X
3  PACIFIC ALLIANCE ASIA OPPORTUNITY
   FUND L.P.,
4
                       Plaintiff,
5
                 - against -
6
   KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO
7  WEN GUI, a/k/a GUO WENGUI, a/k/a GUO
   WEN-GUI, a/k/a WAN GUE HAOYUN, a/k/a
8  MILES KWOK, a/k/a HAOYUN GUO,

9                      Defendant.

10 Index No.: 652077/2017
   ----------------------------------------X
11

12                     605 Third Avenue
                       New York, New York
13
                       December 11, 2019
14                     9:39 a.m.

15

16            CONTINUED VIDEOTAPED EXAMINATION

17 BEFORE TRIAL of HO WAN KWOK, before Melissa

18 Gilmore, a Shorthand Reporter and Notary Public

19 of the State of New York.

20

21

22

23       ELLEN GRAUER COURT REPORTING CO., LLC
           126 East 56th Street, Fifth Floor
24            New York, New York 10022
                   212-750-6434
25                 REF: 293035A

```
 1   A P P E A R A N C E S:

 2

 3   O'MELVENY & MYERS LLP

 4   Attorneys for Plaintiff

 5        7 Times Square

 6        New York, New York 10036

 7   BY:  EDWARD MOSS, ESQ.

 8        STUART SARNOFF, ESQ.

 9        ELI A. GROSSMAN, ESQ.

10        PHONE 212-728-5651

11        E-MAIL emoss@omm.com

12                 ssarnoff@omm.com

13                 egrossman@omm.com

14

15

16   HODGSON RUSS LLP

17   Attorneys for Defendant

18        605 Third Avenue, Suite 2300

19        New York, New York 10158

20   BY:  MARK A. HARMON, ESQ.

21        JILLIAN MARIE SEARLES, ESQ.

22        PHONE 646-218-7616

23        E-MAIL mharmon@hodgsonruss.com

24                 jsearles@hodgsonruss.com

25
```

```
 1   A P P E A R A N C E S:   (Cont'd)

 2

 3   LAWALL & MITCHELL, LLC

 4   Attorneys for the Genever Entities

 5        55 Madison Avenue

 6        Morristown, New Jersey 07960

 7   BY:  AARON A. MITCHELL, ESQ.

 8        PHONE 914-760-8963

 9        E-MAIL aaron@lmesq.com

10

11

12   ALSO PRESENT:

13        JAMES LIN, Mandarin Interpreter

14        UNA WILKINSON, Mandarin Check Interpreter

15        YVETTE WANG, Genever

16        DANIEL PODHASKIE, Golden Spring (New York)

17        DAN MACOM, Videographer

18

19

20

21

22

23

24

25
```

```
 1                        KWOK
 2   contract in March of 2011 which is a personal
 3   guarantee, with Pacific Alliance Group?
 4              MR. HARMON:  He has answered your
 5        question.
 6              MR. MOSS:  He just said he didn't
 7        answer it, Mark.
 8              MR. HARMON:  He has answered your
 9        question in the best way he can.  You're
10        putting a document in front of him which
11        is in English, which might as well be in
12        gibberish, because it would mean the same
13        to him.  He can't read the document.
14   A.    I don't read English.
15   Q.    Did you sign this document?
16   A.    I don't read English.
17   Q.    Take a look at the signature page.
18   A.    I don't even sure.  I don't sure
19   that's not signature.
20              MR. MOSS:  I'm sorry?
21              THE INTERPRETER:  I'm not even sure
22        that is my signature.
23              MR. HARMON:  Again, this is
24        testimony which has been gone over at the
25        last deposition at length.
```

```
 1                         KWOK
 2       A.    Well, if you're going to put me
 3  under oath in front of a court and you can ask
 4  me that question, is that my signature or not,
 5  and then my answer to your question is I can
 6  guarantee you, hundred percent, that is not my
 7  signature.
 8       Q.    So we are done with that document.
 9             THE CHECK INTERPRETER:  The witness
10       said something.
11       A.    And I guarantee you, you know, if
12  you want to, you can do forensic on that
13  signature.
14       Q.    Mr. Kwok, did you enter into --
15       A.    Wait, wait, wait a minute.  Am I
16  supposed to keep that document?
17             MR. HARMON:  No.  They are done
18       asking questions about it.
19       Q.    Mr. Kwok, did you enter into a
20  settlement with Pacific Alliance in which
21  Pacific Alliance agreed to forgive the debt
22  that it says you owed to them in exchange for
23  getting three apartments in the Beijing Pangu
24  Plaza?
25             MR. HARMON:  Object to the form of
```

1                        KWOK

2        the question.

3        A.    How can you expect me to answer a

4    made-up story and the nonsense of fact?  How

5    you expect me to answer that?

6              If I says yes, and then this is

7    going to be the end of me.  If I said no,

8    because that means I don't know, even, it --

9    somebody make up a story.  How can you

10   answer -- how can you answer that question with

11   a true answer?

12       Q.    So did you or did you not enter into

13   a settlement agreement in April of 2013

14   relating to three apartments in Pangu Plaza

15   with PAG?

16             MR. HARMON:  Object to the form of

17        the question, asked and answered.

18       A.    I don't know.

19       Q.    Well, in April of 2013, did you

20   personally owe Pacific Alliance any money?

21       A.    No.  No.

22             MR. MOSS:  We are going to do these

23        together as one document, and we're

24        getting a clip, but why don't we introduce

25        it now?  This is Plaintiff's 15.

```
 1                      KWOK

 2              (Plaintiff's Exhibit 15, E-mail with

 3         attachment, Bates Stamped PAX-KWOK-035048

 4         through 35068, marked for identification.)

 5         Q.    Mr. Kwok, Plaintiff's Exhibit 15,

 6   which you have just been handed, is an e-mail

 7   chain and an attachment.  The e-mail chain

 8   starts with PAX-KWOK-35048, and the attachment

 9   goes through 35068.  And on the first page of

10   the attachment, 35051, the title page is an

11   April 19, 2013, deed of settlement in relation

12   to the facility letter, dated March 16, 2011.

13         A.    I don't read English again.

14         Q.    So in this document, I'll represent

15   to you, Mr. Kwok, that Stevenson Wong wrote to

16   PAG and they said, "Please find the sealed deed

17   of settlement as attached for your record."

18              Stevenson Wong, were they or were

19   they not your lawyers at the time in connection

20   with this deed of settlement?

21              MR. HARMON:  Object to the form of

22         the question, and asked and answered.

23         A.    He was representative for Pangu.

24   Well, but I can tell you definite he does

25   not -- he did not represent me.
```

1              KWOK

2      Q.    At any time did Stevenson Wong ever

3    represent you in connection with any business

4    dealings?

5      A.    I don't remember.  I don't know.

6      Q.    Let's look at the attachment.  The

7    last page is -- the signature page is 35065.

8            Are any of these your signatures?

9      A.    I strongly urge you and advise you

10   to do some forensic if -- and also if any of

11   this signature belongs to me, I will take full

12   responsibility and I will give up all --

13   everything.  And you should take -- you can

14   take it down what I just said.

15           Any Chinese person or even a Chinese

16   pig -- I mean, this is ridiculous.  It's so

17   ridiculous.  You forge something like this, you

18   try to accuse me.

19           This is so fake.  Have you ever seen

20   the dragon on Pangu building?  And I have been

21   signing my signature for over 30 years.  I

22   mean, this is so fake.  It's not even funny.

23           And, again, I want to repeat this

24   again.  I strongly urge you and I strongly

25   demand you to do some forensic on -- can you

```
 1                        KWOK
 2    show me the first -- show me the first
 3    evidence?  Can I see that again?
 4         Q.    What's the first evidence?
 5               MS. SEARLES:  Exhibit 11.
 6               MR. MOSS:  Sure.
 7               THE WITNESS:  I can use the pen,
 8         sir?  I can use the pen?
 9               MR. HARMON:  No, no, no, no, no.
10         A.    I can sign.  I can sign -- I can
11    sign right now.  And I can prove to you and
12    just looking at this two signature, any person
13    with a common sense, you can tell right away,
14    right now, right away, at this moment, it's not
15    the same person sign these two signature.
16               And right now I want a very firm
17    swear that if any of this, any of this are my
18    signature, I will take hundred percent of
19    responsibility.  If forensic find out they are
20    not mine, you guys will take hundred percent of
21    responsibility.
22               And now I'm going to ask you do
23    something very simple.  Use your naked eyes,
24    use your common sense to just look at these two
25    signatures.  Are those two belongs to one
```

1                           KWOK
2    person or not?
3              And I can tell you that one exhibit,
4    this one page, this exhibit, this is not from
5    the same person.
6              You got to be joking here.  You
7    know, just look at the stroke.  Look at the
8    signature.  This is not from the same person.
9    You can use your common sense and just try to
10   identify it.
11      Q.    Mr. Kwok, I will represent to you
12   that these documents were sent by e-mail to PAG
13   from Stevenson Wong.
14              Is it your testimony that Stevenson
15   Wong forged the documents?
16              MR. HARMON:  Object to the form of
17         the question.  One doesn't have anything
18         to do with the other.  The predicate to
19         your question has nothing to do with your
20         question.  Object to the form of the
21         question.
22              MR. MOSS:  Try to limit the speaking
23         objections.  You're doing it a lot.  It's
24         inappropriate.
25              MR. HARMON:  I will continue to

1                              **KWOK**

2          represent my client.  Thank you.

3          A.    All I want to tell you is my answer

4    to you is this is a hundred percent forged.

5    They are fake.

6                Don't tell me where they are coming

7    from when my answer to you is very firm.  It is

8    hundred percent -- they are hundred percent

9    fake.

10         Q.    Do you have any information,

11   Mr. Kwok, as to who forged these signatures?

12         A.    I'm not law enforcement.  I'm not a

13   police and I don't know who did it, and I

14   really want to know who did that, too.

15         Q.    Do you have any recollection of

16   having any discussions with Pacific Alliance

17   discussing where they would get three

18   apartments in exchange for forgiving a debt

19   owed?

20                MR. HARMON:  Object to the form of

21        the question.

22         A.    No.  No.

23         Q.    Do you recall entering into any --

24   since you don't recall entering into the

25   settlement agreement, I assume you don't recall

```
 1                        KWOK
 2   entering into any extensions of the settlement
 3   agreement?
 4              MR. HARMON:  Object to the form of
 5        the question.
 6        A.    This is fake.  It's simple.
 7        Q.    So is the answer you don't recall
 8   having any discussions about extending the
 9   settlement agreement?
10              MR. HARMON:  Object to the form of
11        the question.
12        A.    This is fake.
13              MR. HARMON:  And when he says this,
14        he's referring to which exhibit number?
15              THE INTERPRETER:  It was Plaintiff
16        15.
17              MR. HARMON:  Thank you.
18        Q.    Did you have any discussions with
19   Pacific Alliance about conditions precedent for
20   the purchase of three Beijing Pangu apartments
21   in connection with the settlement?
22              THE CHECK INTERPRETER:  I believe
23        the interpreter did not correctly
24        interpret the question.
25              Can you do that again?
```

1                        KWOK

2              (Interpreter retranslates question.)

3      A.    I don't recall.

4      Q.    Did you have any discussions about

5   trying to get title for any apartments in

6   Beijing Pangu Plaza in order to give the title

7   to PAG in connection with a settlement?

8              MR. HARMON:  Object to the form of

9          the question.

10     A.    I don't recall.

11             (Plaintiff's Exhibit 16, E-mail with

12         attachment, Bates Stamped PAX-KWOK-024077

13         through 24087, marked for identification.)

14     Q.    Mr. Kwok, you have been handed

15   Exhibit 16.  It's an e-mail chain Bates stamped

16   24077 and an attachment that goes through

17   24087.

18             The top e-mail is an e-mail from

19   Aaron Xie, X-I-E, at Stevenson Wong, to PAG,

20   attaching a supplemental deed of settlement.

21             Do you know who Aaron Xie is?

22     A.    I don't have a clear recollection of

23   this person's name or Aaron Xie.

24     Q.    And if you turn to page 24087, are

25   any of those your signatures?

                        KWOK

1

2       A.     Do you feel those are signed by the

3  same person?  Hundred percent forged.  You

4  crazy?

5              Even a pig can tell this is not

6  signed by the same person.  I don't even know

7  this is in Chinese or Japanese.

8              MR. HARMON:  When he holds up two

9         exhibits, can you tell us which number of

10        the two exhibits he's comparing?

11             THE INTERPRETER:  This is

12        Exhibit 15.

13             MR. HARMON:  15 and --

14             THE INTERPRETER:  Page 5065.

15             MR. HARMON:  And the other one?

16             THE INTERPRETER:  Exhibit 16, page

17        4087.  And this is one is Exhibit 11,

18        page 660.

19             MR. HARMON:  Thank you.

20  BY MR. MOSS:

21       Q.     Do you recall having any discussions

22  about this supplemental deed of settlement

23  which extended the deadline to satisfy the

24  conditions precedent relating to the sale of

25  the apartments?

KWOK

1

2          MR. HARMON:  Object to the form of

3     the question.

4     A.    No.  Got to be crazy.

5          (Plaintiff's Exhibit 17, Second

6     Supplemental Deed of Settlement, Bates

7     stamped KWOK1195 through 1199, marked for

8     identification.)

9     Q.    Mr. Kwok, you have been handed

10   Exhibit 17, which is the second supplemental

11   deed of settlement, Bates stamped KWOK1195

12   through 1199.  Please direct your attention to

13   page 1199.

14          Are any of those your signatures?

15          MR. HARMON:  Object to the form of

16     the question.

17          MR. MOSS:  Sorry.  What's the

18     problem with the question, Mark?  I will

19     rephrase it.

20          MR. HARMON:  Okay.  You're

21     representing that the document is what it

22     says to be.  If you say a document

23     entitled, then I would not object to the

24     form of the question.

25          MR. MOSS:  I asked, are any of those

```
 1                        KWOK
 2      your signatures.
 3             MR. HARMON:  But the whole question
 4      starts out with a representation that the
 5      document is the second supplemental deed
 6      of settlement, and it hasn't been
 7      established that it is.
 8             MR. MOSS:  Well, it was produced
 9      from your files with your Bates numbers on
10      it.
11             MR. HARMON:  You can ask whatever
12      question you want.  I just said object to
13      the form of the question.
14             You asked me why.  I told you why.
15      Stand on your question.  It's up to you.
16   BY MR. MOSS:
17      Q.    Mr. Kwok, are these -- on page 1199,
18   are any of these your signatures?
19      A.    Hundred percent no.
20      Q.    Did you have any discussions about
21   this second supplemental deed of settlement or
22   extending the conditions precedent in
23   connection with this document?
24             MR. HARMON:  Object to the form of
25      the question.
```

```
 1                          KWOK
 2          A.    No.
 3                 (Plaintiff's Exhibit 18, Third
 4          Supplemental Deed of Settlement, dated
 5          July 11, 2014, Bates Stamped KWOK1200
 6          through 1205, marked for identification.)
 7          Q.    Mr. Kwok, you have been handed
 8   Exhibit 18, which is entitled "This Third
 9   Supplemental Deed of Settlement," dated
10   July 11, 2014, Bates stamped KWOK1200 through
11   1205.
12                 Please direct your attention to
13   page 1204.  Are any of those your signatures?
14          A.    Hundred percent, they are fakes.  To
15   me, it's a shock.  This is the first time I
16   have ever seen this kind of document.  Wow.  I
17   will take hundred percent responsibility if I
18   signed that.
19          Q.    Mr. Kwok, given your testimony that
20   this is the first time you have ever seen this
21   kind of document, can you explain how these
22   documents came from your files?
23                 MR. HARMON:  Object to the form of
24          the question.
25          A.    I'm talking about the signature.  I
```

```
 1                        KWOK
 2    want to make sure I'm talking about first time
 3    I saw signature like this.
 4              You know, I want to be -- I want to
 5    make sure that, you know, don't misunderstood
 6    what I said.
 7              You know, I don't know anything
 8    about the document.  I didn't mean, you know,
 9    the first time I saw it was those signature.  I
10    don't know anything about this document.
11        Q.    Can you explain how this document
12    came to be produced by your lawyers purportedly
13    from your files to us in this litigation?
14              MR. HARMON:  Object to the form of
15         the question.
16        A.    I totally disagree with your -- now,
17    when you talking about my current attorney, you
18    know, got this document from me because he got
19    from the attorney I fired, David Boies, and he
20    got those document from Steven Wong.
21              And, you know, as I said earlier,
22    Steven Wong was kidnapped by the Chinese
23    government.  He is controlled by the Chinese
24    police.  And he is making all kinds of fake
25    document daily, every day.
```

1                          KWOK

2               I like to hear what the other lawyer

3     has to say.

4               MR. HARMON:  I don't think we are

5          allowed to do that as much as we'd like

6          to.

7               THE INTERPRETER:  But he says

8          something.  He says something quite loud.

9          I like to know what he said about it.

10        Q.    And when you refer to Steven Wong

11    being kidnapped, are you referring to Hank Lo

12    at Stevenson Wong?

13              THE CHECK INTERPRETER:  What he said

14         is, do you mean that the lawyer, Hank Lo,

15         in Stevenson Wong?

16        A.    Well, he's an attorney for the law

17    firm at Hank & Lo.

18              THE CHECK INTERPRETER:  Hank Lo is

19         the attorney in Stevenson Wong, the firm.

20              MR. SARNOFF:  That's right.

21        A.    My answer is yes.

22        Q.    Do you know why Boies Schiller got

23    documents from Stevenson Wong?

24              MR. HARMON:  Okay.  Translate, but

25         don't answer, please, yet.

1                        KWOK

2              I caution the witness not to

3         disclose conversations with counsel which

4         would be subject to an attorney/client

5         privilege.

6         A.    All right.

7         Q.    So you can't answer the question

8    without disclosing?

9         A.    That's right.

10              THE INTERPRETER:  Counsel, can I get

11        a couple minutes bathroom break?

12              MR. MOSS:  Sure.  Of course.

13              THE VIDEOGRAPHER:  We are now off

14        the record.  The time is 10:40 a.m.

15              (Recess taken.)

16              THE VIDEOGRAPHER:  This marks the

17        beginning of tape number 2.  We are now

18        back on the record.  The time is

19        10:55 a.m.

20              (Plaintiff's Exhibit 19, Fourth

21        Supplemental Deed of Settlement, dated

22        February 10, 2015, Bates Stamped KWOK1206

23        through 1211, marked for identification.)

24   BY MR. MOSS:

25        Q.    Mr. Kwok, you are being handed

```
 1                         KWOK
 2   Exhibit 19, which is titled "Fourth
 3   Supplemental Deed of Settlement," February 10,
 4   2015, Bates stamped KWOK1206 through KWOK1211.
 5              MR. HARMON:  I hate to interrupt,
 6         but didn't you just mark that as 19?
 7              MR. MOSS:  Yeah, I just gave him 19.
 8              MS. SEARLES:  I think the confusion
 9         is you gave us an additional copy.  I
10         think that's where we're getting confused.
11              MR. HARMON:  You handed it to me
12         like it was a new exhibit.  So that's why
13         I was --
14              MR. MOSS:  I think we handed it to
15         you before the break.
16              MR. HARMON:  You did.
17   BY MR. MOSS:
18         Q.   Mr. Kwok, Exhibit 19, if you could
19   please direct your attention to page KWOK1210.
20              Are any of those your signatures?
21         A.   No.
22         Q.   Do you know who any of the
23   signatures are?
24         A.   No, I do not know.
25         Q.   Do you know how this document came
```

1                          **KWOK**

2     to be produced from your files?

3               MR. HARMON:  Object to the form of

4          the question.

5          A.    I believe they came from Stevenson

6     Wong's law firm.

7          Q.    Did you have any discussions with

8     Pacific Alliance about this document or about

9     extending the terms of the deed of settlement?

10         A.    I don't recall.

11         Q.    Did you tell Boies Schiller that

12    Stevenson Wong used to be your lawyers?

13    DI          MR. HARMON:  Direct the witness not

14         to answer.  Attorney/client privilege

15         communication.

16         A.    I'm going to follow my attorney's

17    direct not to answer this question.

18         Q.    Did you ever tell Hodgson Russ that

19    Stevenson Wong were your lawyers in connection

20    with dealings with Pacific Alliance?

21    DI          MR. HARMON:  I direct the witness

22         not to answer.  Attorney/client privileged

23         communication.

24         Q.    Have you ever told --

25               THE CHECK INTERPRETER:  But --

```
 1                        KWOK

 2         sorry.  The interpreter did not even

 3         interpret the question to --

 4              MR. HARMON:  It's okay, because I'm

 5         not going to let him answer it.

 6         Attorney/client privilege --

 7              THE INTERPRETER:  I don't usually --

 8         the interpreter is going to make a

 9         clarification.

10              I don't usually, when counsel direct

11         his client not to answer the question, I

12         usually not to interpret.  If you want --

13         if everybody, all party want me to do

14         that, I can do that.  I have no problem.

15              MR. MOSS:  I think it's fine.

16              THE INTERPRETER:  Thank you.

17   BY MR. MOSS:

18         Q.   Have you ever communicated to

19   anybody that Stevenson Wong represented you in

20   connection with dealings with Pacific Alliance

21   other than communications with counsel?

22              MR. HARMON:  Interpret the question

23         and wait, please.

24              So he can answer the question only

25         to the extent that his answer does not
```

1                    KWOK

2           include conversations he's had with

3           counsel.

4           A.    I don't recall.

5           Q.    Where were you living on

6     February 10, 2015?

7           A.    New York.

8           Q.    As of February 10, 2015, had the

9     Chinese authorities seized the Beijing Pangu

10    Plaza?

11          A.    It was seized.  But, you know, I

12    want to be clear that I don't recall the exact

13    time.

14          Q.    Mr. Kwok, you've testified during

15    the last deposition about Bruno Wu.

16                Do you recall that testimony?

17          A.    Yes.

18          Q.    And you filed a complaint in federal

19    court in New York against Mr. Wu; is that

20    correct?

21          A.    Yeah.  He's their partner.

22          Q.    And Foley Hoag represented you in

23    filing that lawsuit, the law firm Foley Hoag?

24          A.    Yes.

25          Q.    When you were referring to Mr. Wu

```
 1                          KWOK
 2    and you said, he is their partner, did you mean
 3    he was Pacific Alliance's partner?
 4                 THE INTERPRETER:  I just instructed
 5        the witness, let me interpret the question
 6        before he answer, and he said I'm sorry.
 7        A.    Well, he is cooperate with PAG.
 8        Q.    Is Foley Hoag working for the
 9    Chinese government?
10        A.    I don't know.  Who is Foley Hoag?
11        Q.    I think you just testified that they
12    were your lawyers who represented you in
13    connection with suing Mr. Wu; is that right?
14        A.    Yeah.  You are talking about the law
15    firm -- okay.  So, well, I'm not certain any
16    question of the names in English.  I'm not
17    familiar with all names or any names in
18    English.
19                 So I'm not going to answer that
20    question.
21                 (Plaintiff's Exhibit 20, Complaint
22        filed by Guo Wengui against Bruno Wu,
23        marked for identification.)
24        Q.    Mr. Kwok, you have been handed
25    Exhibit 20, which is a complaint filed by Guo
```

1              C E R T I F I C A T E

2

3   STATE OF NEW YORK )

4                           :ss

5   COUNTY OF RICHMOND)

6

7              I, MELISSA GILMORE, a Notary Public

8   within and for the State of New York, do hereby

9   certify:

10             That HO WAN KWOK, the witness whose

11   deposition is hereinbefore set forth, was duly

12   sworn by me and that such deposition is a true

13   record of the testimony given by such witness.

14             I further certify that I am not

15   related to any of the parties to this action by

16   blood or marriage; and that I am in no way

17   interested in the outcome of this matter.

18             IN WITNESS WHEREOF, I have hereunto

19   set my hand this 16th day of December, 2019.

20

21

22

23   _____

24

25   MELISSA GILMORE