# EXHIBIT 45

2    SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK:  CIVIL TERM : PART 61
3    ----------------------------------------X
     PACIFIC ALLIANCE ASIA OPPORTUNITY
4    FUND L.P.,

5                          Plaintiff,

                                     Index No.
6               -against-            652077/2017

7    KWOK HO WAN, A/K/A KWOK HO, A/K/A GWO
     WEN GUI, A/K/A GUO WENGUI, A/K/A GUO
8    WEN-GUI, A/K/A MILES KWOK, A/K/A HAOYUN
     GUO, GENEVER HOLDINGS CORPORATION, AND
9    GENEVER HOLDINGS LLC,

                                     **MOTION VIA SKYPE**
10                       Defendants.
     ----------------------------------------X
11   OFFICIAL ADDRESS:      60 Centre Street
                            New York, New York 10007
12                          July 7, 2020

13

     B E F O R E:   (Via Skype)
14

                 HON. BARRY OSTRAGER, Justice of the Supreme Court
15

     A P P E A R A N C E S:   (Via Skype)
16

     O'MELVENY & MYERS, LLP
17   Attorneys for the Plaintiff
     Times Square Tower
18   7 Times Square
     New York, New York 10036
19   BY: EDWARD N. MOSS, ESQ.
         LAURA S. ARONSSON, ESQ.
20

     HODGSON RUSS LLP
21   Attorneys for Defendant Kwok
     605 Third Avenue, Suite 2300
22   New York, New York 10158
     BY: MARK A. HARMON, ESQ.
23

24         *    *    *    *    *    *    *    *    *    *    *    *
                          LAURA L. LUDOVICO
                          Senior Court Reporter
25                   60 Centre Street - Room 420
                       New York, New York 10007
26

FILED: NEW YORK COUNTY CLERK 07/20/2020 05:01 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 406
RECEIVED NYSCEF: 07/20/2020

2   APPEARANCES:  (continued)

3

    LAWALL & MITCHELL, LCC
4   Attorneys for Defendants
    Genever Holdings Corporation and
5   Genever Holdings, LLC
    162 East 64th Street
6   New York, New York 10065
    BY: AARON A. MITCHELL, ESQ.
7

8

9   ALSO PRESENT: (Via Skype)

10  ROSEANN MAGALDI, Law Secretary

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1                          Proceedings

2                THE COURT:  Okay.  I want to preface everything

3       by saying this case is scheduled for trial on October 5th

4       and if there are trials in the New York Supreme Courthouse

5       on October 5th, this case will go to trial on October 5th.

6       If, for whatever reason, there aren't trials on

7       October 5th, particularly jury trials, this case will be

8       scheduled for the first available trial date even if I have

9       to move what were previously scheduled for other dates in

10      October and November.

11               So I'm putting all of the attorneys on notice

12      that resolving this case on the merits is the No. 1

13      priority on this part's docket.  This is a 2017 case and it

14      needs to be resolved on the merits.  So you're all on

15      notice of that and I expect everyone to make their plans

16      accordingly.

17               MR. MOSS:  Your Honor, this is Edward Moss for

18      the Plaintiff.  May I just address the trial date briefly?

19               THE COURT:  Yes.

20               MR. MOSS:  So we had witnesses who will be coming

21      in from Hong Kong and right now there's a travel ban and so

22      as I recalled our discussion from a month ago, we were

23      going to revisit whether or not we would be keeping the

24      October trial in light of the evolving COVID situation and

25      we just can't be sure that we will be able to have our

26      witnesses come to this country.  They are willing and able

                          Laura L. Ludovico, SCR

```
 1                          Proceedings

 2       and they will, but if there is a travel ban or if there are

 3       extenuating circumstances given the virus, I just want to

 4       be sure that we won't be prejudiced by having that trial

 5       date and not being able to bring our witnesses given the

 6       circumstances outside of our control.

 7              THE COURT:  Well, if we're dealing with some kind

 8       of force majeure issue where it's impossible for the

 9       witnesses to be here, obviously that circumstance will be

10       accommodated, but barring that circumstance, we're going to

11       proceed.  I think it's very much in everyone's interest to

12       get this case resolved on the merits.

13              MR. MOSS:  All right.  We will speak with our

14       client and do the best we can, Your Honor.

15              And as far as the merits, we do plan to file -- I

16       was just saying that as for the merits, the plaintiff does

17       intend to file a summary judgment motion and we are hopeful

18       that the Court will have time before trial to consider that

19       motion.

20              THE COURT:  Then you should file your motion by

21       Order to Show Cause.  It's not that the motion is untimely,

22       but the more time that the Court has to review the motion,

23       the more likely it is that the motion can be decided

24       sufficiently in advance of the trial date so that there are

25       no unnecessary expenses.

26              MR. MOSS:  Because right now the way we have it,
```

                          Laura L. Ludovico, SCR

1    Proceedings

2    Judge, is that because we think this motion may impact the

3    scope of the summary judgment, the sanctions motion that

4    you will be hearing today, I believe our motion for summary

5    judgment is due as per our last call with you 21 days after

6    a ruling on this motion, and so because of that -- I mean,

7    maybe we can do it a little more quickly, but because of

8    that, I don't know --

9         THE COURT:  That's fine.  That's fine.  What we

10   previously agreed to is fine.

11        All right.  So let's proceed with the sanctions

12   motion.

13        MR. MOSS:  Okay.  Thank you, Your Honor.  Edward

14   Moss for the Plaintiff.

15        And as the Court knows, the reason for the motion

16   here today is that Mr. Kwok repeatedly gave false testimony

17   at his deposition about the central issue in this case when

18   he denied that he entered into the March 2011 personal

19   guarantee and loan facility that we are suing on in this

20   case, as well as several related contracts.  Mr. Kwok

21   testified that those were fake documents with his

22   signatures forged, and as we covered in the briefs and I'll

23   cover it, it's indisputable that that testimony was not

24   untruthful, but also that his lawyers knew that to be the

25   case.

26        We do not bring this motion lightly, Your Honor.

1        Proceedings

2        After the deposition we wrote to opposing counsel and we

3        gave them a chance to correct the false testimony.  They

4        refused to take any remedial action and so here we are.

5            I think it's important to give the Court a little

6        bit of background on the merits to put this testimony in

7        context and just how critical it is to the case.  So the

8        parties began their relationship in 2008.  Pacific Alliance

9        lent Mr. Kwok money to finish an apartment complex in

10       Beijing that he and his companies were building.  Mr. Kwok

11       made repayments in 2009.  He repaid some of the money.

12       There were then a series of agreements through the years

13       and in March 2011 the parties entered into a new loan

14       facility, a new personal guarantee and they agreed in those

15       documents that there was still $46 million due and owing

16       even though there were payments in 2009.

17           The March 2011 guarantee is the document Pacific

18       Alliance is suing under.  Mr. Kwok never repaid any of the

19       money due and owing under the March 2011 personal guarantee

20       and by April of 2013 the parties tried to settle the debt.

21       Mr. Kwok said I'll give you, Pacific Alliance, three

22       apartments in the Beijing complex that I was building to

23       settle the debt.  It was memorialized in an April 2013

24       settlement agreement, but there were conditions precedent

25       to that settlement, including, most importantly, Mr. Kwok

26       had to give Pacific Alliance title because they were going

                        Laura L. Ludovico, SCR

1                          Proceedings

2        to sell the apartments and try to recoup some of the money

3        that he'd owed them.

4                He admits in his papers that he never gave them

5        title and so by the settlement agreement's express terms,

6        because the conditions precedent were not satisfied, the

7        debt reverted and the personal guarantee reverted.

8        Throughout this entire case before this Court Mr. Kwok has

9        taken the position that he settled the debt because he

10       substantially performed under that 2013 agreement; he gave

11       Pacific Alliance the keys and they signed the contract even

12       though title was never transferred.  That was his defense.

13               There was never a question about whether any of

14       these contracts were authentic.  So we were all -- I think

15       both sides of the table were very surprised at his

16       deposition last year on what is supposed to be the last day

17       of discovery when Mr. Kwok testified that all of these

18       documents were fake contracts with his signatures forged by

19       the Chinese government.  He testified that the March 2011

20       loan facility and personal guarantee were fake.  He said

21       the April 2013 settlement relating to the apartments was

22       fake and there were four extensions; the settlement

23       agreement -- there were four extensions and those make the

24       seven key agreements; the guarantee, the facility, the

25       settlement and the four extensions.  And so Mr. Kwok, his

26       story at his deposition was that "I made some payments in

                          Laura L. Ludovico, SCR

FILED: NEW YORK COUNTY CLERK 07/20/2020 05:01 PM    INDEX NO. 652077/2017

NYSCEF DOC. NO. 406    20-12411-jlg    Doc 14-45    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 45   8    RECEIVED NYSCEF: 07/20/2020

Pg 9 of 36

```
1              Proceedings

2     2009 and all the documents after that, the 2011 documents,

3     the 2013 settlement, they were all fake."

4          Now, I'm going to walk through this using the

5     April 2013 deed of settlement as an example.  I put in

6     front of him -- I said to him:  "Did you sign this?  What

7     is it?"  He said:  "I mean, this is so ridiculous.  It's so

8     ridiculous.  You forged something like this.  You tried to

9     accuse me.  This is so fake."  And he had similar testimony

10    about all of the other key contracts.  There is no way,

11    Judge, no way to reconcile this with Mr. Kwok's admissions

12    and his positions in this case.

13         On the forum non conveniens motion, the first

14    motion in this case, Mr. Kwok submitted an affidavit by

15    someone named Fiona Yu.  She swore -- Ms. Yu swore under

16    penalty of perjury that she was an appointed person of

17    Mr. Kwok and that she was attaching, quote, true and

18    correct copies, quote, of the key contracts, including the

19    guarantee, the facility, the deeds of settlement and the

20    extensions.  So that is Docket No. 11.  These documents

21    were put in front of the Court, filed with the Court by

22    Mr. Kwok at the beginning of this case before discovery.

23    These weren't our copies of the agreements that we gave him

24    and he gave to you, these were his copies.  He put the

25    documents in in this case and said they were true and

26    correct copies.
```

Laura L. Ludovico, SCR

1                          Proceedings

2              Then we served Pacific Alliance's Request for

3      Admission at the beginning of the case.  We docketed these

4      as Docket No. 347.  We said to him, for example, "Admit

5      that you, Shiny Times, Beijing Pangu and Pacific Alliance

6      executed a Deed of Settlement dated April 19, 2013."  We

7      didn't have to give him the document, he had already

8      docketed it.  He knew exactly what the document was and

9      because he knew what it was, he said in his response, it's

10     highly caveated, of course, with a lot of boilerplate, but

11     he says:  "Kwok admits only that he, Shiny Times, Beijing

12     Pangu and Pacific Alliance executed an agreement dated

13     April 19, 2013." Then that's one of the documents he said

14     in his deposition didn't even exist, it's a fake.

15             Then we had an evidentiary hearing on the

16     attachment phase of the case.  Pacific Alliance included on

17     the joint exhibit list all of these key contracts, all of

18     them.  Mr. Kwok represented in a letter to the Court that

19     he, quote, does not dispute the authenticity of any of

20     plaintiff's exhibits.  How could he?  They were his

21     documents.  There are arguments in the briefing from the

22     other side about how their documents -- Mr. Kwok's

23     admissions don't mean what they say and we addressed those

24     in the briefing, but I don't think I need to waste the

25     Court's time with that here.

26             The documents, Your Honor, are clear as day and

1                          Proceedings

2        the suggestion that the law firm didn't know that the

3        testimony was false lacks any and all credibility.

4                 Docket No. 167; this is the Hodgson Russ brief

5        relating to the attachment proceedings and they were

6        arguing about likelihood of success on the merits and here

7        is what they said in Docket No. 167:  "For example,

8        substantial performance of the April 19, 2013 Deed of

9        Settlement may have occurred."

10                It would be unconscionable to allow PAX to obtain

11       full repayment of the loan in this action in addition to

12       the windfall of three valuable apartments meant to satisfy

13       that same loan facility.  The loan is the March 2011 loan,

14       the facility is the March 2011 facility, the Deed of

15       Settlement that they say he substantially performed under

16       is the April deed, 2013.  Mr. Kwok testified that these

17       documents don't exist, that he never signed them.

18                In addition to their representations, we have

19       dozens and dozens and dozens of contemporaneous e-mails

20       from our clients served with metadata that we produced in

21       this case.  We have witnesses who will testify that they

22       sent and received those e-mails in realtime.  They include

23       e-mails like the one on our slide deck, Docket No. 354.

24       This is an e-mail on March 16, 2011, the date of the

25       facility from Stevenson, Wong, Mr. Kwok's lawyers, to our

26       client, Pacific Alliance.  It contains three attachments;

                          Laura L. Ludovico, SCR

FILED: NEW YORK COUNTY CLERK 07/20/2020 05:01 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 406
20-12411-jlg   Doc 14-45   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 45
RECEIVED NYSCEF: 07/20/2020
Pg 12 of 36

1                        Proceedings

2      the loan facility, the personal guarantee, and the lawyers

3      write -- Mr. Kwok's lawyers write to us:  "Dear Steffi --"

4      that's an in-house lawyer at Pacific Alliance -- "Attached

5      please find herewith documents signed by Mr. Kwok Ho Wan

6      for your further handling."  And it attaches the executed

7      copies of the personal guarantee and of the loan facility.

8                It is crystal clear, and the cases are just as

9      clear, Your Honor, that the Court has the discretion to

10     impose sanctions for frivolous conduct, and frivolous

11     conduct includes asserting material factual statements that

12     are false.  We've asked for attorneys' fees, we've asked

13     for monetary sanctions and we've also asked the Court to

14     use its discretion to preclude Mr. Kwok from advancing this

15     argument.  This is an argument he put on us in the last day

16     of discovery that was diametrically opposed to all of his

17     other positions in this case.

18               THE COURT:  Let me ask you this, Mr. Moss.

19               MR. MOSS:  Of course.

20               THE COURT:  You're suing Mr. Kwok for

21     $46 million.

22               MR. MOSS:  Well, there was interest on the loan,

23     Your Honor.

24               THE COURT:  More than $46 million.

25               MR. MOSS:  It's now actually up to about 110.

26               THE COURT:  So you're suing Mr. Kwok for

                        Laura L. Ludovico, SCR

1          Proceedings

2          $110 million.  Of what benefit to you would the monetary

3          sanction be?

4                    MR. MOSS:  Sure.  Well, in terms of the monetary

5          sanction, the $10,000 per occurrence, my understanding,

6          Your Honor, is that that does not come to us -- that's

7          really punitive -- it goes to lawyer's funds and it's meant

8          to discourage further conduct.  And as far as the

9          attorneys' fees go, we expended attorneys' fees.

10         Mr. Kwok's deposition was a waste of time and we felt that

11         we needed to bring this briefing -- bring this issue to the

12         Court's attention, and so our client would be reimbursed

13         for the attorneys' fees spent sort of dealing with this

14         issue.

15                   And as we all know, you know, Mr. Kwok knows he

16         has not paid his rent on the Sherry-Netherland.  Who knows

17         where he is right now.  You know, we believe that a message

18         should be sent that you can't lie under oath and that there

19         should be penalties, and we also believe that we should be

20         reimbursed for the attorneys' fees, but the preclusion is

21         important here, Judge, because we need some focus on the

22         summary judgment.  Either this is -- either these are real

23         contracts and we have to argue substantial performance and

24         see if they actually have any defense, which we believe

25         they don't, they never gave us title, or we need to argue

26         something, I guess, about how his self-serving testimony

1                          Proceedings

2          alone can't create a genuine issue of fact on whether or

3          not these documents are real.

4                  If the document is real -- if the March 2011

5          document is real and all of the evidence, every single

6          thing except for his self-serving uncorroborated made up

7          testimony, suggests that it is real, if it is real, it's

8          game over.  His only defense is that he made some payments

9          in 2009.  This document was entered into in 2011 and it's

10         undisputed that he didn't pay a penny under this document

11         and so this is a summary judgment case if it is not moneyed

12         up by making us chase down all of these rabbit holes

13         because Mr. Kwok decided to go rogue at his deposition.

14                 So that's why we believe that preclusion is

15         appropriate here, Your Honor, and the Court has power --

16         the Court has discretion to fashion a remedy that's meant

17         to rectify abuses of the discovery process.  We cite a lot

18         of cases in our brief where the Court strikes pleadings

19         based upon false testimony, but the Hurricane Sandy cases,

20         303 F.R.D. 17, it's an Eastern District case, in that case

21         the Court precluded a party from relying on an expert

22         because the discovery abuse precluded a party from making

23         certain arguments and the Court noted that that was a less

24         significant sanction than striking pleadings, which New

25         York Courts routinely do.

26                 And if the Court didn't want to do this as a

                          Laura L. Ludovico, SCR

1                          Proceedings

2        sanction, you can do it as judicial estoppel, Your Honor,

3        because Mr. Kwok has made representations to this Court

4        that these contracts are real and the Court relied on those

5        representations in dismissing the case for forum non

6        conveniens.  On forum non conveniens Mr. Kwok put in front

7        of you the contracts.  He argued that they contained choice

8        of law provisions in Hong Kong and so you should dismiss

9        the case and let it proceed in Hong Kong because you would

10       have to be applying Hong Kong Law.  The Court granted that

11       motion.  The Court granted that motion in part because, and

12       I quote from the Court's decision, the transaction was,

13       quote, governed by Hong Kong Law.  The only reason the

14       Court held that was because Mr. Kwok gave you the

15       contracts, pointed you to the choice of law provision and

16       said look, Judge, Hong Kong Law, choice of law provision,

17       you need to dismiss the case.

18            Their only answer was that that wasn't a final

19       judgment, so judicial estoppel doesn't apply.  That's

20       wrong.  We cite cases in our reply brief showing that

21       judicial estoppel can apply to bar a party from taking one

22       position in a proceeding and then a completely inconsistent

23       position and it's meant for precisely cases like this, to

24       make sure that somebody does not abuse the judicial process

25       by flip-flopping, taking a position in front of the Court

26       and then completely changing its stance.

                        Laura L. Ludovico, SCR

FILED: NEW YORK COUNTY CLERK 07/20/2020 05:01 PM    INDEX NO. 652077/2017

NYSCEF DOC. NO. 406    20-12411-jlg    Doc 14-45    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 45    RECEIVED NYSCEF: 07/20/2020

Pg 16 of 36

1                      Proceedings

2          So, Your Honor, they make the argument here that

3 this is just about summary judgment.  This is not just

4 about summary judgment, this is about trying to do the

5 right thing.  We are not worried about summary judgment.

6 He cannot create -- Mr. Kwok cannot create a genuine issue

7 of fact on the authenticity of the March 2011 guarantee

8 with self-serving testimony when all of his admissions, all

9 of the e-mails of all of our witnesses make quite clear

10 that that was a real document.  Once that's a real

11 document, it's summary judgment and so we are not worried

12 about this from a summary judgment standpoint.  This is

13 about making sure that people cannot just come into courts

14 here and give false testimony that is completely

15 diametrically opposed from a position they have been taking

16 for years in a litigation.

17          Look, I don't envy Mr. Harmon in this situation.

18 I think what really happened, there was surprise in that

19 room when this testimony came, I think on both sides.  I

20 don't envy the position Mr. Harmon is in in this case, but

21 we brought this to their attention and they did not do the

22 right thing.  You are supposed to -- under the Rules of

23 Professional Conduct you are supposed to remedy false

24 testimony and there is no question, no question, that this

25 was false.

26          THE COURT:  All right.  Let me hear from

Laura L. Ludovico, SCR

FILED: NEW YORK COUNTY CLERK 07/20/2020 05:01 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 406
20-12411-jlg   Doc 14-45   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 45
RECEIVED NYSCEF: 07/20/2020
Pg 17 of 36

1                    Proceedings

2     Mr. Harmon.

3                    MR. HARMON:  Thank you.  Good morning, Your

4     Honor.

5                    This motion is a motion for sanctions, but this

6     motion is all about summary judgment.  If the motion was

7     for sanctions, if that was really the object, then they

8     could have made a motion for summary judgment and sanctions

9     at the same time, but they have not made a motion for

10    summary judgment.  What they are looking to do is to set up

11    a motion for summary judgment by having this Court, in

12    essence, grant summary judgment on a motion for sanctions.

13                   So let me look at some of the issues that have

14    been raised by Mr. Moss.  Since our appearance in this

15    case, and we were not original counsel, so I'm talking

16    about from the time that we were in this case, PAX has

17    taken umbrage any time Mr. Kwok has not agreed with a

18    factual assertion that PAX has made.  Our answer to the

19    complaint denied the material allegations of the complaint.

20                   Following PAX's receipt of our denial of the

21    allegations in the complaint, they wrote letters chastising

22    us for denying nearly every allegation in the complaint,

23    referring to their allegations as incontrovertible facts,

24    so the notion at the beginning of this case -- the

25    allegations regarding the loans that were made, not to

26    Mr. Kwok because Mr. Kwok is not a borrower here, Mr. Kwok

FILED: NEW YORK COUNTY CLERK 07/20/2020 05:01 PM    INDEX NO. 652077/2017

NYSCEF DOC. NO. 406    20-12411-jlg    Doc 14-45    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 45    RECEIVED NYSCEF: 07/20/2020

Pg 18 of 36

1                        Proceedings

2        was never a borrower here of any loan or any investment or

3        any facility, he was a personal guarantor of one of the

4        loans at one time, something which he has never denied, but

5        from the beginning of this case, Mr. Kwok, in his answer,

6        denied the material allegations of the complaint.

7                Mr. Moss spoke about the Request for Admissions,

8        but the Request for Admissions did not attach any document

9        and asked for its authentication.  That's how a request for

10       admission is supposed to work; you attach a document to

11       your request and you ask that the other party authenticate

12       the document, admit that it is an authentic document.  And

13       we pointed that out to PAX on more than one occasion, that

14       their request for us to discuss documents, which they had

15       not attached, was an improper way of asserting or

16       requesting an admission.  And this is significant because

17       Mr. Kwok does not read English, so in order for him to be

18       able to look at a document, he doesn't just have to have it

19       referred to, he has to see it.

20               And notwithstanding that, we repeatedly told PAX

21       that their Request for Admissions were improper and faulty.

22       They refused to either -- to re-serve them and attach

23       copies of the documents.  They were asking us to admit or

24       make specific reference to a document to which we could

25       look so that the responses could be made and so our Request

26       for Admissions did not admit the authenticity of any

                    Laura L. Ludovico, SCR

1            Proceedings

2    document because no document was specifically attached or

3    otherwise identified.  And Mr. Kwok has not denied that he

4    has signed documents.  At his deposition he denied that the

5    signatures on the documents he was shown were not

6    authentic.  That is not the same thing as saying that he

7    denies any document in the case, but he has denied that the

8    signatures of the documents he was shown at his deposition

9    are his signatures.

10         THE COURT:  Well, let me ask you this, Mr. Moss.

11    I meant Mr. Harmon rather.

12         Mr. Moss referred to the documents that Mr. Kwok

13    submitted in connection with the forum non conveniens

14    motion and he affirmatively sponsored those documents as

15    true and correct copies of the documents that are at issue

16    in this sanctions motion, so how can it be that the

17    documents that Mr. Kwok tendered to the Court as authentic

18    and controlling are not true and correct copies of the

19    documents that Mr. Moss is relying on?

20         MR. HARMON:  So, Your Honor, the answer to that

21    question comes in two parts.  The first part is that those

22    questions were asked of Mr. Kwok at his deposition and at

23    his deposition Mr. Kwok said that he had not seen the

24    affidavit or the declaration before.  It was submitted that

25    he had not been shown the documents that were attached,

26    that he was not aware of how Ms. Yu obtained the documents

1                          Proceedings

2       to attach them.  He also testified that he is now unable to

3       determine the answer to those questions because Ms. Yu, as

4       have many of the Kwok family members who reside in China,

5       have disappeared, they cannot be found.  They have either

6       been detained or arrested or have hidden out.  So he cannot

7       contact her to find out what the answer to those questions

8       are as to how she got them, from where she got them.

9       That's part one, Your Honor.

10                     Part two, Your Honor, is that you may be in a

11      position on a motion for summary judgment to make a

12      determination that the submission of those documents by

13      Ms. Yu at an early stage in this case outweighs Mr. Kwok's

14      denial at his deposition, but we are not talking here about

15      preponderance of the evidence or the determination of

16      disputed questions of fact.  This is a motion for

17      sanctions, not a motion for summary judgment and what PAX

18      has asked us as Mr. Kwok's counsel to do is to be the

19      judge, jury and executioner of our client who swears under

20      oath at his deposition that he did not sign the documents

21      and that he does not know where Ms. Yu or his prior counsel

22      obtained them from in order to make that submission.

23                     So ultimately, Your Honor, at an appropriate

24      time, either on a motion for summary judgment, if you are

25      so inclined, or on a trial of the merits of the action,

26      somebody may determine that the evidence that the documents

                     Laura L. Ludovico, SCR

1                              Proceedings

2      were signed outweighs Mr. Kwok's testimony, that it's not

3      his signature.  But that is not the motion that we have

4      here.  The motion we have here is to sanction Mr. Kwok and

5      his counsel for not stepping up and saying, yes, Mr. Kwok

6      lied at his deposition, and this is intended to be the

7      setup for the summary judgment motion, but is not the

8      summary judgment motion.

9              And the other indicia to which Mr. Moss points is

10     no stronger than the Request for Admissions.  There is no

11     stipulation that was entered on the authenticity of

12     documents in connection with the prejudgment attachment

13     hearings, Your Honor.  We entered into a so-ordered

14     stipulation and the so-ordered stipulation to which we

15     agreed specifically said that Mr. Kwok would not, for the

16     purpose of the prejudgment attachment hearing, contest the

17     merits of the case, but that he reserved the right to

18     contest the merits at a later date.  That's after the

19     prejudgment attachment hearing was decided.

20             The Court -- we submitted a letter to the Court

21     providing documents in which he said that the authenticity

22     of the documents was not at issue, which was entirely

23     consistent with the formal stipulation which we had

24     negotiated and entered and which Your Honor had so ordered.

25     Had we not done that, it would have been antithetical that

26     we not have any prejudgment attachment here because that is

                        Laura L. Ludovico, SCR

1    Proceedings

2    actually the position we would have been in if that had

3    happened.

4    Your Honor, we, as counsel, cannot be expected to

5    make a decision as to whether our client's sworn testimony

6    is true or not.  Throughout the case, and starting with our

7    answer, we denied the material allegations of the

8    complaint.  We do not admit to the authenticity of the

9    documents in the request for admission and Mr. Kwok has not

10    denied that he signed documents.  What he testified to at

11    his deposition is that the documents -- the signature on

12    the documents he was shown was not his.

13    Now, Your Honor, Mr. Kwok has been suspicious and

14    rightfully so, about the positions that PAX has taken

15    throughout this case.  The complaint and the amended

16    complaint and every appearance that we have had before Your

17    Honor has consisted of PAX telling Your Honor that Mr. Kwok

18    borrowed $30 million and never repaid a penny of that

19    money.  Today is the first day that PAX has ever conceded

20    that substantial monies were repaid on the loans that it

21    made.  It was not until we obtained document discovery and

22    began the deposition of PAX'S client -- PAX's witnesses

23    that it became clear that there were two loans made of

24    $100,000,000; one for 70 million and one for 30 million,

25    and in 2009 the full principal amount of both of those

26    loans was repaid.

Laura L. Ludovico, SCR

FILED: NEW YORK COUNTY CLERK 07/20/2020 05:01 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 406
20-12411-jlg   Doc 14-45   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 45
RECEIVED NYSCEF: 07/20/2020
Pg 23 of 36

1            Proceedings

2            For reasons that PAX has not explained, but for

3       internal purposes, it chose to treat the unpaid amount as a

4       continuation of the $30 million original loan that was

5       made, even though its own documents -- its own board

6       minutes, its own reports of Deloitte to the Risk Committee,

7       all of them acknowledge that the physical $30 million had

8       been repaid.  So Mr. Kwok, who was -- and even here today

9       they talk about Mr. Kwok getting the money and Mr. Kwok not

10      repaying.  Mr. Kwok was not a borrower, the entities were

11      borrowers and it wasn't Mr. Kwok who was entering into

12      agreements or talking about providing apartments, which he

13      did not own, to the plaintiffs in repayment of a loan.  The

14      apartments were owned by the entity to which the loans were

15      made.  Mr. Kwok is being sued on his personal guarantee and

16      Mr. Kwok is denying that his personal guarantee on the full

17      unpaid amount continued past a certain date.

18            To us, Your Honor, these raise questions of fact

19      and as I said, the day may come when a Court -- when Your

20      Honor, either on a motion for summary judgment or a jury on

21      a trial, will rule that Mr. Kwok's statement that he didn't

22      sign the documents is not believable given the

23      preponderance of the evidence, but this is not a motion for

24      summary judgment and it need not have been made separately

25      either.  We believe PAX was trying to set the stage for its

26      motion for summary judgment, which, as you have heard, has

Laura L. Ludovico, SCR

1                          Proceedings

2          yet to be made.

3                    Thank you.

4                    THE COURT:  All right.  Is Mr. Mitchell going to

5          say anything?

6                    MR. MITCHELL:  No, Your Honor, the motion doesn't

7          really involve my clients, quite frankly.

8                    THE COURT:  All right.  Last word, Mr. Moss.

9                    MR. MOSS:  Thank you, Your Honor.  I'll be brief

10         and I'll just hit a few of the points.

11                   First of all, the suggestion that we did

12         something improper by not attaching to the RFA's their own

13         documents that they had submitted to the Court and that

14         they didn't know what documents we were talking about; we

15         described the parties, we described the year.  They had the

16         documents and under CPLR 3123(A) you don't need to attach

17         the documents if copies have already been furnished and

18         this was a case where they were their documents that we

19         were asking to stipulate to.

20                   As far as Ms. Yu, the suggestion that Mr. Kwok

21         was not able to cross-examine or Hodgson Russ was able to

22         cross-examine Ms. Yu on what she said in her affidavit,

23         well, those questions should have been asked before

24         Mr. Kwok authorized her.  As he testified in his

25         deposition -- Mr. Harmon doesn't know this point --

26         Mr. Kwok admitted at his deposition that he authorized

                          Laura L. Ludovico, SCR

FILED: NEW YORK COUNTY CLERK 07/20/2020 05:01 PM    INDEX NO. 652077/2017

NYSCEF DOC. NO. 406    20-12411-jlg    Doc 14-45    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 45 24    RECEIVED NYSCEF: 07/20/2020

Pg 25 of 36

1                              Proceedings

2       Ms. Yu to put in the affidavit on his behalf and he should

3       have asked her the questions before whether or not these

4       were really true and correct copies before making a

5       representation to Your Honor that they were.  Of course,

6       Boise Schiller vetted it and of course Boise Schiller knew

7       these were true and correct copies.  They got documents

8       from somewhere.  Either Mr. Kwok gave it to them or they

9       got them from Mr. Kwok's law firm in Hong Kong, but the

10      suggestion that he put in some affidavit with Boise

11      Schiller and Hodgson Russ didn't have a chance to

12      cross-examine Mr. Kwok's own witness, really, Your Honor,

13      is beyond the pale.

14              The stipulation that we're talking about,

15      Mr. Harmon is right, we put in a stipulation that said we

16      did not have to prove the merits -- likelihood of success

17      on the merits on the attachment proceedings because we were

18      going to be focused on fraud and we were going to be

19      focused on veil piercing, but we had that stipulation.  We

20      then gave them an exhibit list, a proposed joint exhibit

21      list, which included all of the contracts.  They objected

22      to the admissibility of those contracts on the basis that

23      they were merits so they were subject to the stipulation

24      and they were irrelevant to the attachment proceeding, but

25      they then included in their letter a clear as day

26      statement, defendant -- this is Docket 325:  "Defendant

                        Laura L. Ludovico, SCR

FILED: NEW YORK COUNTY CLERK 07/20/2020 05:01 PM        INDEX NO. 652077/2017

NYSCEF DOC. NO. 406        20-12411-jlg    Doc 14-45    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 45    RECEIVED NYSCEF: 07/20/2020

Pg 26 of 36

1                          Proceedings

2      Kwok does not dispute the authenticity of any of

3      plaintiff's exhibits."  They didn't say they were disputing

4      it for purposes of one hearing.  A document is either

5      authentic or it's not authentic.  It's not authentic in one

6      proceeding and authentic in a different proceeding.

7              And this whole idea about the 100 million and the

8      30 million, the simple fact of the matter is that the

9      March 2011 agreement set forth the debt.  Mr. Kwok has

10     never repaid that debt.  That is the document that we are

11     suing him on, that is the debt that we are suing him on and

12     there is really no dispute that there were no payments

13     under that March 2011 facility.  That facility was taken

14     out by Mr. Kwok's company that he wholly owned and he

15     personally guaranteed it and so it really is just as

16     straightforward.

17             Mr. Harmon makes the argument, you know, they

18     didn't sue on other documents.  He repaid on other

19     documents, but he never repaid this particular facility.

20             Thank you, Your Honor.

21             THE COURT:  All right.  Respectfully, to the

22     movant, given the nature of this case, the concept of

23     sanctions for what would appear to be questionable

24     testimony is not something I'm inclined to do.  However,

25     I'm satisfied that Mr. Kwok is judicially estopped from

26     contesting the authenticity of the documents that he, on

                        Laura L. Ludovico, SCR

1 ║                    Proceedings

2 ║    more than one occasion, sponsored to the Court as authentic

3 ║    documents.  So if-as-and-when we have a trial of this case,

4 ║    those documents will be admitted into evidence as true and

5 ║    authentic copies of documents that Mr. Kwok is judicially

6 ║    estopped from disputing the authenticity of and that's the

7 ║    disposition of this motion.

8 ║              So please order a copy of the transcript and we

9 ║    will issue a short form order denying the motion for

10 ║   sanctions, but confirming that Mr. Kwok is judicially

11 ║   estopped from contesting the authenticity of these

12 ║   documents.

13 ║              Anything further?

14 ║              MR. MOSS:  Your Honor, may I just revisit the

15 ║   issue of the trial date briefly?

16 ║              THE COURT:  Yes.

17 ║              MR. MOSS:  Your Honor, would we be permitted to

18 ║   push the trial date as the plaintiff in this case because

19 ║   we really do believe that kicking off the trial date will

20 ║   most likely result in the preservation of resources here

21 ║   because we do think this is a summary judgment case and we

22 ║   want to make sure that the Court has sufficient time to

23 ║   rule on our summary judgment motion and we're very

24 ║   concerned about the state of the world.

25 ║              THE COURT:  You have requested a jury.  I'm not

26 ║   in a position to evaluate whether or not the Court will

                        Laura L. Ludovico, SCR

FILED: NEW YORK COUNTY CLERK 07/20/2020 05:01 PM
INDEX NO. 652077/2017

NYSCEF DOC. NO. 406
20-12411-jlg    Doc 14-45    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 45
RECEIVED NYSCEF: 07/20/2020

Pg 28 of 36

1                          Proceedings

2        accommodate jury trials on October 5th.  I'm also not in a

3        position to evaluate whether witnesses from Hong Kong will

4        be allowed to travel to the United States.  We will

5        schedule a pretrial conference for -- bear with me one

6        moment.

7                (Brief pause in the record.)

8                THE COURT:  -- September 8th, and in advance of

9        that conference, I'll presumably have received and ruled on

10       the forthcoming summary judgment motion and if the case is

11       decided on motion, there will be no October 5th trial, if

12       the case is not decided on motion, on September 8th we will

13       discuss the October 5th trial date in light of any

14       circumstances, but it's not my intention to move the

15       long-scheduled trial date of this 2017 case because all of

16       the trials that were scheduled for late March, April, May,

17       June and July have all been slotted into dates in the

18       latter part of 2020 and for most of the available dates in

19       2021 and I'm not going to reschedule this case for a 2021

20       date unless there's some force majeure jour reason why it

21       can't proceed on October 5th, and there may be such a

22       reason, but we will discuss that on September 8th, all

23       right?

24               MR. MOSS:  Thank you, Your Honor.

25               MR. HARMON:  Very good.

26               THE COURT:  Have a nice day.

                          Laura L. Ludovico, SCR

FILED: NEW YORK COUNTY CLERK 07/20/2020 05:01 PM
NYSCEF DOC. NO. 406
INDEX NO. 652077/2017
RECEIVED NYSCEF: 07/20/2020
20-12411-jlg   Doc 14-45   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 45
Pg 29 of 36

```
 1                          Proceedings

 2              MR. MOSS:  Thank you.

 3              MR. HARMON:  Thank you.

 4              THE COURT:  Please order a copy of the

 5      transcript.

 6                      *    *    *    *    *

 7              I, Laura L. Ludovico, a senior court reporter for

 8      the State of New York, do hereby certify that the foregoing

 9      is a true and accurate transcription of my original

10      stenographic notes.
                              /s/ Laura L. Ludovico
11      _____

12                      Laura L. Ludovico
                        Senior Court Reporter
13

14      SO ORDERED July 20, 2020

15
             BARRY R. OSTRAGER, J.S.C.
16

17

18

19

20

21

22

23

24

25

26
```

MR. HARMON: [4] 16/3 18/20 27/25
28/3
MR. MITCHELL: [1] 23/6
MR. MOSS: [14] 3/17 3/20 4/13 4/26
5/13 11/19 11/22 11/25 12/4 23/9
26/14 26/17 27/24 28/1
THE COURT: [19] 2/26 3/19 4/7 4/20
5/9 11/18 11/20 11/24 11/26 15/26
18/10 23/4 23/8 25/21 26/16 26/25
27/8 27/26 28/4

## $
$10,000 [1] 12/5
$100,000,000 [1] 21/24
$110 [1] 12/1
$110 million [1] 12/1
$30 [3] 21/18 22/4 22/7
$30 million [3] 21/18 22/4 22/7
$46 [3] 6/15 11/21 11/24
$46 million [2] 6/15 11/21

## -
----------------------------------X [2] 1/3
1/10
-against [1] 1/6

## 1
100 million [1] 25/7
10007 [2] 1/11 1/25
10036 [1] 1/18
10065 [1] 2/6
10158 [1] 1/22
11 [1] 8/20
110 [1] 11/25
16 [1] 10/24
162 [1] 2/5
167 [2] 10/4 10/7
17 [1] 13/20
19 [3] 9/6 9/13 10/8

## 2
2008 [1] 6/8
2009 [5] 6/11 6/16 8/1 13/9 21/25
2011 [14] 5/18 6/13 6/17 6/19 7/19 8/2
10/13 10/14 10/24 13/4 13/9 15/7 25/9
25/13
2013 [10] 6/20 6/23 7/10 7/21 8/3 8/5
9/6 9/13 10/8 10/16
2017 [3] 1/6 3/13 27/15
2020 [2] 1/12 27/18
2021 [2] 27/19 27/19
21 [1] 5/5
2300 [1] 1/21

## 3
30 [1] 21/24
30 million [1] 25/8
303 [1] 13/20
3123 [1] 23/16
325 [1] 24/26
347 [1] 9/4
354 [1] 10/23

## 4
420 [1] 1/25

## 5
5th [8] 3/3 3/5 3/5 3/7 27/2 27/11 27/13
27/21

## 6
60 [2] Pg 3/25 of 36
605 [1] 1/21
61 [1] 1/2
64th [1] 2/5
652077/2017 [1] 1/6

## 7
70 [1] 21/24

## 8
8th [3] 27/8 27/12 27/22

## A
AARON [1] 2/6
able [6] 3/25 3/26 4/5 17/18 23/21
23/21
about [24] 5/17 7/13 8/10 9/22 10/6
11/25 12/26 15/3 15/4 15/4 15/5 15/12
15/13 16/6 16/16 17/7 19/14 21/14
22/9 22/12 23/14 24/14 25/7 26/24
abuse [2] 13/22 14/24
abuses [1] 13/17
accommodate [1] 27/1
accommodated [1] 4/10
accordingly [1] 3/16
accurate [1] 28/9
accuse [1] 8/9
acknowledge [1] 22/7
action [3] 6/4 10/11 19/25
actually [3] 11/25 12/24 21/1
addition [2] 10/11 10/18
address [2] 1/11 3/18
addressed [1] 9/23
admissibility [1] 24/22
admission [4] 9/3 17/10 17/16 21/9
admissions [8] 8/11 9/23 15/8 17/7
17/8 17/21 17/26 20/10
admit [5] 9/4 17/12 17/23 17/26 21/8
admits [2] 7/4 9/11
admitted [2] 23/26 26/4
advance [2] 4/24 27/8
advancing [1] 11/14
affidavit [5] 8/14 18/24 23/22 24/2
24/10
affirmatively [1] 18/14
after [4] 5/5 6/1 8/2 20/18
against [1] 1/6
ago [1] 3/22
agreed [4] 5/10 6/14 16/17 20/15
agreement [5] 6/24 7/10 7/23 9/12
25/9
agreement's [1] 7/5
agreements [4] 6/12 7/24 8/23 22/12
all [30]
allegation [1] 16/22
allegations [6] 16/19 16/21 16/23 16/25
17/6 21/7
ALLIANCE [11] 1/3 6/8 6/18 6/21 6/26
7/11 9/5 9/12 9/16 10/26 11/4
Alliance's [1] 9/2
allow [1] 10/10
allowed [1] 27/4
alone [1] 13/1
already [2] 9/7 23/17
also [5] 5/24 11/13 12/19 19/2 27/2
amended [1] 21/15
amount [3] 21/25 22/3 22/17
answer [7] 14/18 16/18 17/5 18/20
19/3 19/7 21/7

## (Index continued — right column)
antithetical [1] 22/25
any [16] 2/8 4/16 7/9 8/21 10/3 12/24
16/17 17/2 17/2 17/3 17/8 17/26 18/7
20/26 25/2 27/13
anything [2] 23/5 26/13
apartment [1] 6/9
apartments [6] 6/22 7/2 7/21 10/12
22/12 22/14
appear [1] 25/23
appearance [2] 16/14 21/16
apply [2] 14/19 14/21
applying [1] 14/10
appointed [1] 8/16
appropriate [2] 13/15 19/23
April [9] 6/20 6/23 7/21 8/5 9/6 9/13
10/8 10/16 27/16
April 19 [3] 9/6 9/13 10/8
April 2013 [3] 6/23 7/21 8/5
are [27] 3/4 3/6 3/8 4/7 4/24 5/19
6/4 9/21 9/26 11/8 11/12 12/22 13/3
14/4 15/5 15/11 15/22 15/23 16/10
18/9 18/15 18/18 19/8 19/14 19/24
25/10 25/11
aren't [1] 3/6
argue [2] 12/23 12/25
argued [1] 14/7
arguing [1] 10/6
argument [4] 11/15 11/15 15/2 25/17
arguments [2] 9/21 13/23
ARONSSON [1] 1/19
arrested [1] 19/6
as [39]
ASIA [1] 1/3
ask [3] 11/18 17/11 18/10
asked [8] 11/12 11/12 11/13 17/9
18/22 19/18 23/23 24/3
asking [2] 17/23 23/19
asserting [2] 11/11 17/15
assertion [1] 16/18
attach [5] 17/8 17/10 17/22 19/2 23/16
attached [4] 11/4 17/15 18/2 18/25
attaches [1] 11/6
attaching [2] 8/17 23/12
attachment [8] 9/16 10/5 20/12 20/16
20/19 20/26 24/17 24/24
attachments [1] 10/26
attention [2] 12/12 15/21
attorneys [4] 1/17 1/21 2/4 3/11
attorneys' [5] 11/12 12/9 12/9 12/13
12/20
authentic [10] 7/14 17/12 18/6 18/17
25/5 25/5 25/5 25/6 26/2 26/5
authenticate [1] 17/11
authentication [1] 17/9
authenticity [10] 9/19 15/7 17/26 20/11
20/21 21/8 25/2 25/26 26/6 26/11
authorized [2] 23/24 23/26
available [2] 3/8 27/18
Avenue [1] 1/21
aware [1] 18/26

## B
background [1] 6/6
ban [2] 3/21 4/2
bar [1] 14/21
barring [1] 4/10
BARRY [1] 1/14
based [1] 13/19
basis [1] 24/22
be [39]

bear [1]  27/5
became [1]  21/23
because [24]  4/26 5/2 5/6 5/7 6/26 7/6
 7/9 9/9 12/21 13/13 13/22 14/3 14/9
 14/11 14/14 16/26 17/16 18/2 19/3
 20/26 24/17 26/18 26/21 27/15
been [12]  15/15 16/14 18/25 19/6
 20/25 21/2 21/13 22/8 22/24 23/17
 23/23 27/17
before [8]  4/18 7/8 8/22 18/24 21/16
 23/23 24/3 24/4
began [2]  6/8 21/22
beginning [4]  8/22 9/3 16/24 17/5
behalf [1]  24/2
Beijing [4]  6/10 6/22 9/5 9/11
being [2]  4/5 22/15
believable [1]  22/22
believe [7]  5/4 12/17 12/19 12/24
 13/14 22/25 26/19
benefit [1]  12/2
best [1]  4/14
beyond [1]  24/13
bit [1]  6/6
board [1]  22/5
boilerplate [1]  9/10
Boise [3]  24/6 24/6 24/10
borrowed [1]  21/18
borrower [3]  16/26 17/2 22/10
borrowers [1]  22/11
both [3]  7/15 15/19 21/25
brief [5]  10/4 13/18 14/20 23/9 27/7
briefing [3]  9/21 9/24 12/11
briefly [2]  3/18 26/15
briefs [1]  5/22
bring [4]  4/5 5/26 12/11 12/11
brought [1]  15/21
building [2]  6/10 6/22

C
call [1]  5/5
came [1]  15/19
can [6]  4/14 4/23 5/7 14/2 14/21 18/16
can't [4]  3/25 12/18 13/2 27/21
cannot [6]  15/6 15/6 15/13 19/5 19/6
 21/4
case [44]
cases [5]  11/8 13/18 13/19 14/20
 14/23
Cause [1]  4/21
caveated [1]  9/10
central [1]  5/17
Centre [2]  1/11 1/25
certain [2]  13/23 22/17
certify [1]  28/8
chance [2]  6/3 24/11
changing [1]  14/26
chase [1]  3/12
chastising [1]  16/21
China [1]  19/4
Chinese [1]  7/19
choice [3]  14/7 14/15 14/16
chose [1]  22/3
circumstance [2]  4/9 4/10
circumstances [3]  4/3 4/6 27/14
cite [2]  13/17 14/20
CIVIL [1]  1/2
clear [6]  9/26 11/8 11/9 15/9 21/23
 24/25
client [5]  4/14 10/26 12/12 19/19 21/22

clients [2]  3/22 26/6
come [4] 9/24 9/26 19/13 22/19
comes [1]  18/21
coming [1]  3/20
Committee [1]  22/6
companies [1]  6/10
company [1]  25/14
complaint [8]  16/19 16/19 16/21 16/22
 17/6 21/8 21/15 21/16
completely [3]  14/22 14/26 15/14
complex [2]  6/9 6/22
conceded [1]  21/19
concept [1]  25/22
concerned [1]  26/24
conditions [2]  6/24 7/6
conduct [4]  11/10 11/11 12/8 15/23
conference [2]  27/5 27/9
confirming [1]  26/10
connection [2]  18/13 20/12
consider [1]  4/18
consisted [1]  21/17
consistent [1]  20/23
contact [1]  19/7
contained [1]  14/7
contains [1]  10/26
contemporaneous [1]  10/19
contest [2]  20/16 20/18
contesting [2]  25/26 26/1
context [1]  6/7
continuation [1]  22/4
continued [2]  2/2 22/17
contract [1]  7/11
contracts [12]  5/20 7/14 7/18 8/10 8/18
 9/17 12/23 14/4 14/7 14/15 24/21
 24/22
control [1]  4/6
controlling [1]  18/18
conveniens [4]  8/13 14/6 14/6 18/13
copies [12]  8/18 8/23 8/24 8/26 11/7
 17/23 18/15 18/18 23/17 24/4 24/7
 26/5
copy [2]  26/8 28/4
CORPORATION [2]  1/8 2/4
correct [7]  6/3 8/18 8/26 18/15 18/18
 24/4 24/7
could [4]  9/20 16/8 17/24 17/25
counsel [6]  6/2 16/15 19/18 19/21 20/5
 21/4
country [1]  3/26
COUNTY [1]  1/2
course [4]  9/10 11/19 24/5 24/6
court [36]
Court's [3]  9/25 12/12 14/12
Courthouse [1]  3/4
courts [2]  13/25 15/13
cover [1]  5/23
covered [1]  5/22
COVID [1]  3/12
CPLR [1]  23/16
create [3]  13/2 15/6 15/6
credibility [1]  10/3
critical [1]  6/7
cross [3]  23/21 23/22 24/12
cross-examine [3]  23/21 23/22 24/12
crystal [1]  11/8

D
date [13]  3/8 3/18 4/5 4/24 10/24 20/18
 22/17 26/15 26/18 26/19 27/13 27/15

07/20
dated [2]  26/9 26/12
dates [3]  3/9 27/17 27/18
day [7]  7/16 9/26 11/15 21/19 22/19
 24/25 27/26
days [2]  5/5
dealing [2]  4/7 12/13
Dear [1]  11/3
debt [7]  6/20 6/23 7/7 7/9 25/9 25/10
 25/11
decided [5]  4/23 13/13 20/19 27/11
 27/12
decision [2]  14/12 21/5
deck [1]  10/23
declaration [1]  18/24
deed [5]  8/5 9/6 10/8 10/14 10/16
deeds [1]  8/19
defendant [3]  1/21 24/26 24/26
Defendants [2]  1/10 2/4
defense [3]  7/12 12/24 13/8
Deloitte [1]  22/6
denial [2]  16/20 19/14
denied [9]  5/18 16/19 17/4 17/6 18/3
 18/4 18/7 21/7 21/10
denies [1]  18/7
denying [3]  16/22 22/16 26/9
deposition [18]  5/17 6/2 7/16 7/26 9/14
 12/10 13/13 18/4 18/8 18/22 18/23
 19/14 19/20 20/6 21/11 21/22 23/25
 23/26
described [2]  23/15 23/15
detained [1]  19/6
determination [2]  19/12 19/15
determine [2]  19/3 19/26
diametrically [1]  11/16 15/15
did [8]  8/6 15/21 17/8 17/26 19/20
 22/13 23/11 24/16
didn't [10]  9/7 9/14 10/2 13/10 13/26
 22/21 23/14 24/11 25/3 25/18
different [1]  25/6
disappeared [1]  19/5
discourage [1]  12/8
discovery [6]  7/17 8/22 11/16 13/17
 13/22 21/21
discretion [3]  11/9 11/14 13/16
discuss [3]  17/14 27/13 27/22
discussion [1]  3/22
dismiss [2]  14/8 14/17
dismissing [1]  14/5
disposition [1]  26/7
dispute [3]  9/19 25/2 25/12
disputed [1]  19/16
disputing [2]  25/3 26/6
District [1]  13/20
do [16]  4/14 4/15 5/7 5/26 13/25 13/26
 14/2 15/4 15/21 16/10 19/18 21/8
 25/24 26/19 26/21 28/8
docket [7]  3/13 8/20 9/4 10/4 10/7
 10/23 24/26
docketed [2]  9/3 9/8
document [21]  6/17 9/7 9/8 13/4 13/5
 13/9 13/10 15/10 15/11 17/8 17/10
 17/12 17/12 17/18 17/24 18/1 18/2
 18/7 21/21 25/4 25/10
documents [51]
does [7]  4/16 9/19 12/6 14/24 17/17
 19/21 25/2
doesn't [4]  14/19 17/18 23/6 23/25
don't [8]  5/8 9/23 9/24 10/17 12/25
 15/15 15/20 23/16

done [1] 20/25
down [1] 13/12
dozens [3] 10/19 10/19 10/19
due [3] 5/5 6/15 6/19

**E**

e-mail [1] 17/21
e-mails [4] 10/19 10/22 10/23 15/9
early [1] 19/13
East [1] 2/5
Eastern [1] 13/20
EDWARD [3] 1/19 3/17 5/13
either [9] 12/22 12/22 17/22 19/5 19/24 22/20 22/25 24/8 25/4
English [1] 17/17
entered [6] 5/18 6/13 13/9 20/11 20/13 20/24
entering [1] 22/11
entire [1] 7/8
entirely [1] 20/22
entities [1] 22/10
entity [1] 22/14
envy [2] 15/17 15/20
ESQ [4] 1/19 1/19 1/22 2/6
essence [1] 16/12
estopped [3] 25/25 26/6 26/11
estoppel [3] 14/2 14/19 14/21
evaluate [2] 26/26 27/3
even [6] 3/8 6/16 7/11 9/14 22/5 22/8
ever [1] 21/19
every [3] 13/5 16/22 21/16
everyone [1] 3/15
everyone's [1] 4/11
everything [1] 3/2
evidence [5] 13/5 19/15 19/26 22/23 26/4
evidentiary [1] 9/15
evolving [1] 3/24
exactly [1] 9/8
examine [3] 23/21 23/22 24/12
example [3] 8/5 9/4 10/7
except [1] 13/6
executed [3] 9/6 9/12 11/6
executioner [1] 19/19
exhibit [3] 9/17 24/20 24/20
exhibits [2] 9/20 25/3
exist [2] 9/14 10/17
expect [1] 3/15
expected [1] 21/4
expended [1] 12/9
expenses [1] 4/25
expert [1] 13/21
explained [1] 22/2
express [1] 7/5
extensions [4] 7/22 7/23 7/25 8/20
extenuating [1] 4/3

**F**

F.R.D [1] 13/20
facility [15] 5/19 6/14 7/20 7/24 8/19 10/13 10/14 10/14 10/25 11/2 11/7 17/3 25/13 25/13 25/19
fact [5] 13/2 15/7 19/16 22/18 25/8
facts [1] 16/23
factual [2] 11/11 16/18
fake [7] 5/21 7/18 7/20 7/22 8/3 8/9 9/14
false [8] 5/16 6/3 10/3 11/12 13/19 15/14 15/23 15/25

Narrative Index
far [3] 4/8 4/8 25/50
fashion [1] 4/21
faulty [1] 17/21
fees [5] 11/12 12/9 12/9 12/13 12/20
felt [1] 12/10
few [1] 23/10
file [3] 4/15 4/17 4/20
filed [1] 8/21
final [1] 14/18
find [2] 11/5 19/7
fine [3] 5/9 5/9 5/10
finish [1] 6/9
Fiona [1] 8/15
firm [2] 10/2 24/9
first [5] 3/8 8/13 18/21 21/19 23/11
flip [1] 14/25
flip-flopping [1] 14/25
flopping [1] 14/25
focus [1] 12/21
focused [2] 24/18 24/19
Following [1] 16/20
force [2] 4/8 27/20
foregoing [1] 28/8
forged [3] 5/22 7/18 8/8
form [1] 26/9
formal [1] 20/23
forth [1] 25/9
forthcoming [1] 27/10
forum [4] 8/13 14/5 14/6 18/13
found [1] 19/5
four [3] 7/22 7/23 7/25
frankly [1] 23/7
fraud [1] 24/18
frivolous [2] 11/10 11/10
front [4] 8/6 8/21 14/6 14/25
full [3] 10/11 21/25 22/16
FUND [1] 1/4
funds [1] 12/7
furnished [1] 23/17
further [3] 11/6 12/8 26/13

**G**

game [1] 13/8
gave [10] 5/16 6/3 7/4 7/10 8/23 8/24 12/25 14/14 24/8 24/20
GENEVER [4] 1/8 1/9 2/4 2/5
genuine [2] 13/2 15/6
get [1] 4/12
getting [1] 22/9
give [5] 6/5 6/21 6/26 9/7 15/14
given [4] 4/3 4/5 22/22 25/22
go [3] 3/5 12/9 13/13
goes [1] 12/7
going [8] 3/23 4/10 6/26 8/4 23/4 24/18 24/18 27/19
good [2] 16/3 27/25
got [4] 19/8 19/8 24/7 24/9
governed [1] 14/13
government [1] 7/19
grant [1] 16/12
granted [2] 14/10 14/11
guarantee [13] 5/19 6/14 6/17 6/19 7/7 7/20 7/24 8/19 11/2 11/7 15/7 22/15 22/16
guaranteed [1] 25/15
guarantor [1] 17/3
guess [1] 12/26
GUI [2] 1/7 1/8
GUO [3] 1/7 1/7 1/8

31 of 36

fg 32 of 36
had [17] 3/20 6/26 8/9 9/7 9/15 17/14 18/23 18/25 20/23 20/24 20/25 21/2 21/16 22/7 23/13 23/15 24/19
handling [1] 11/6
HAOYUN [1] 1/8
happened [2] 15/18 21/3
HARMON [8] 1/22 15/17 15/20 16/1 18/11 23/25 24/15 25/17
has [25] 4/22 7/8 11/9 12/16 13/15 13/16 14/3 16/16 16/17 16/18 17/4 17/19 18/3 18/4 18/7 19/18 21/9 21/13 21/14 21/17 21/19 22/2 22/26 25/9 26/22
have [39]
having [2] 4/4 16/11
he [68]
he'd [1] 7/3
hear [1] 15/26
heard [1] 22/26
hearing [5] 5/4 9/15 20/16 20/19 25/4
hearings [1] 20/13
held [1] 14/14
her [4] 19/7 23/22 23/24 24/3
here [17] 4/9 5/16 6/4 9/25 10/6 12/21 13/15 15/2 15/14 16/26 17/2 19/14 20/4 20/4 20/26 22/8 26/20
hereby [1] 28/8
herewith [1] 11/5
hidden [1] 19/6
highly [1] 9/10
him [8] 8/6 8/6 8/23 9/4 9/7 17/17 25/11 25/11
his [41]
hit [1] 23/10
HO [3] 1/7 1/7 11/5
HODGSON [4] 1/20 10/4 23/21 24/11
HOLDINGS [4] 1/8 1/9 2/4 2/5
holes [1] 13/12
HON [1] 1/14
Hong [8] 3/21 14/8 14/9 14/10 14/13 14/16 24/9 27/3
Honor [32]
hopeful [1] 4/17
house [1] 11/4
how [8] 6/7 9/20 9/22 12/26 17/9 18/16 18/26 19/8
However [1] 25/24
Hurricane [1] 13/19

**I**

I'll [5] 5/22 6/21 23/9 23/10 27/9
I'm [8] 3/11 8/4 16/15 15/24 25/25 26/25 27/2 27/19
idea [1] 25/7
identified [1] 18/3
impact [1] 5/2
important [2] 6/5 12/21
importantly [1] 6/25
impose [1] 11/10
impossible [1] 4/8
improper [3] 17/15 17/21 23/12
inclined [2] 19/25 25/24
include [1] 10/22
included [3] 9/16 24/21 24/25
includes [1] 11/11
including [2] 6/25 8/18
inconsistent [1] 14/22

incontrovertible [1] 16/23
Index [1] 1/5
indicia [1] 20/9
indisputable [1] 5/23
intend [1] 4/17
intended [1] 20/6
intention [1] 27/14
interest [2] 4/11 11/22
internal [1] 22/3
investment [1] 17/2
involve [1] 23/7
irrelevant [1] 24/24
is [93]
issue [10] 4/8 5/17 12/11 12/14 13/2
15/6 18/15 20/22 26/9 26/15
issues [1] 16/13
it [38]
it's [19] 4/8 4/11 4/21 5/23 6/5 8/7 9/9
9/14 11/25 12/7 13/7 13/9 13/20 14/23
15/11 20/2 25/5 25/5 27/14
its [7] 11/14 14/26 17/9 22/5 22/5 22/6
22/25

J

joint [2] 9/17 24/20
jour [1] 27/20
judge [5] 5/1 8/11 12/21 14/16 19/19
judgment [27] 4/17 5/3 5/5 12/22 13/11
14/19 15/3 15/4 15/5 15/11 15/12 16/6
16/8 16/10 16/11 16/12 19/11 19/17
19/24 20/7 20/8 22/20 22/24 22/26
26/21 26/23 27/10
judicial [4] 14/2 14/19 14/21 14/24
judicially [3] 25/25 26/5 26/10
July [2] 1/12 27/17
June [1] 27/17
jury [5] 3/7 19/19 22/20 26/25 27/2
just [13] 3/18 3/25 4/3 4/16 6/7 11/8
15/3 15/3 15/13 17/18 23/10 25/15
26/14
Justice [1] 1/14

K

keeping [1] 3/23
key [4] 7/24 8/10 8/18 9/17
keys [1] 7/11
kicking [1] 26/19
kind [1] 4/7
knew [4] 5/24 9/8 9/9 24/6
know [9] 5/8 10/2 12/15 12/15 12/17
19/21 23/14 23/25 25/17
knows [3] 5/15 12/15 12/16
Kong [8] 3/21 14/8 14/9 14/10 14/13
14/16 24/9 27/3
KWOK [64]
Kwok's [12] 8/11 9/22 10/25 11/3
12/10 19/13 19/18 20/2 22/21 24/9
24/12 25/14

L

L.P [1] 1/4
lacks [1] 10/3
last [5] 5/5 7/16 7/16 11/15 23/8
late [1] 27/16
later [1] 20/18
latter [1] 27/18
LAURA [4] 1/19 1/24 28/7 28/12
law [9] 2/10 10/2 14/8 14/10 14/13
14/15 14/16 14/16 24/9

lawyer [1] 33/9
lawyer's [1] 33 of 36
lawyers [4] 5/24 10/25 11/2 11/3
LCC [1] 2/3
lent [1] 6/9
less [1] 13/23
let [5] 11/18 14/9 15/26 16/13 18/10
let's [1] 5/11
letter [3] 9/18 20/20 24/25
letters [1] 16/21
lie [1] 12/18
lied [1] 20/6
light [2] 3/24 27/13
lightly [1] 5/26
like [3] 8/8 10/23 14/23
likelihood [2] 10/6 24/16
likely [2] 4/23 26/20
list [3] 9/17 24/20 24/21
little [2] 5/7 6/5
litigation [1] 15/16
LLC [2] 1/9 2/5
LLP [2] 1/16 1/20
loan [13] 5/19 6/13 7/20 10/11 10/13
10/13 10/13 11/2 11/7 11/22 17/2 22/4
22/13
loans [6] 16/25 17/4 21/20 21/23 21/26
22/14
long [1] 27/15
long-scheduled [1] 27/15
look [5] 14/16 15/17 16/13 17/18 17/25
looking [1] 16/10
lot [2] 9/10 13/17
LUDOVICO [3] 1/24 28/7 28/12

M

made [16] 6/1 7/26 13/6 13/8 14/3
16/8 16/9 16/18 16/25 17/25 21/21
21/23 22/5 22/15 22/24 23/2
MAGALDI [1] 2/10
mail [1] 10/24
mails [4] 10/19 10/22 10/23 15/9
majeure [2] 4/8 27/20
make [10] 3/15 7/23 14/24 15/2 15/9
17/24 19/11 19/22 21/5 26/22
makes [1] 25/17
making [4] 13/12 13/22 15/13 24/4
many [1] 19/4
March [13] 5/18 6/13 6/17 6/19 7/19
10/13 10/14 10/24 13/4 15/7 25/9
25/13 27/16
March 16 [1] 10/24
March 2011 [10] 5/18 6/13 6/17 6/19
7/19 10/14 13/4 15/7 25/9 25/13
MARK [1] 1/22
material [4] 11/11 16/19 17/6 21/7
matter [1] 25/8
may [9] 3/18 5/2 10/9 19/10 19/26
22/19 26/14 27/16 27/21
maybe [1] 5/7
me [6] 8/9 11/18 15/26 16/13 18/10
27/5
mean [3] 5/6 8/7 9/23
meant [5] 10/12 12/7 13/16 14/23
18/11
members [1] 19/4
memorialized [1] 6/23
merits [13] 3/12 3/14 4/12 4/15 4/16
6/6 10/6 19/25 20/17 20/18 24/16
24/17 24/23

message [1] 12/17
metadata [1] 16/20
MILES [1] 1/8
million [11] 6/15 11/21 11/24 12/1
21/18 21/24 21/24 22/4 22/7 25/7 25/8
minutes [1] 22/6
MITCHELL [3] 2/3 2/6 23/4
moment [1] 27/6
monetary [3] 11/13 12/2 12/4
money [6] 6/9 6/11 6/19 7/2 21/19 22/9
moneyed [1] 13/11
monies [1] 21/20
month [1] 3/22
more [6] 4/22 4/23 5/7 11/24 17/13
26/1
morning [1] 3/17
MOSS [11] 1/19 3/17 5/14 11/18 16/14
17/7 18/10 18/12 18/19 20/9 23/8
most [3] 6/25 26/20 27/18
motion [46]
movant [1] 25/22
move [2] 3/9 27/14
Mr [1] 10/16
Mr. [84]
Mr. Harmon [7] 15/17 15/20 16/1 18/11
23/25 24/15 25/17
Mr. Kwok [56]
Mr. Kwok's [12] 8/11 9/22 10/25 11/3
12/10 19/13 19/18 20/2 22/21 24/9
24/12 25/14
Mr. Mitchell [1] 23/4
Mr. Moss [8] 11/18 16/14 17/7 18/10
18/12 18/19 20/9 23/8
Ms. [8] 8/15 18/26 19/3 19/13 19/21
23/20 23/22 24/1
Ms. Yu [8] 8/15 18/26 19/3 19/13
19/21 23/20 23/22 24/1
much [1] 4/11
my [4] 12/5 23/7 27/14 28/9
MYERS [1] 1/16

N

named [1] 8/15
nature [1] 25/22
nearly [1] 16/22
need [6] 9/24 12/21 12/25 14/17 22/24
23/16
needed [1] 12/11
needs [1] 3/14
negotiated [1] 20/24
Netherland [1] 12/16
never [11] 6/18 7/4 7/12 7/13 10/17
12/25 17/2 17/4 21/18 25/10 25/19
new [17] 1/2 1/2 1/11 1/11 1/18 1/18
1/22 1/22 1/25 1/25 2/6 2/6 3/4 6/13
6/14 13/24 28/8
nice [1] 27/26
no [13] 1/5 4/25 8/10 8/11 15/24 15/24
18/2 20/10 20/10 23/6 25/12 25/12
27/11
No. [6] 3/12 8/20 9/4 10/4 10/7 10/23
No. 1 [1] 3/12
No. 11 [1] 8/20
No. 167 [2] 10/4 10/7
No. 347 [1] 9/4
No. 354 [1] 10/23
non [4] 8/13 14/5 14/6 18/13
not [70]
noted [1] 13/23
notes [1] 28/10

notice [2]  3/11 3/15
notion [1]  16/24
notwithstanding [1]  17/20
November [1]  3/10
now [7]  3/21 4/26 8/4 11/25 12/17 19/2
21/13

**O**

O'MELVENY [1]  1/16
oath [2]  12/18 19/20
object [1]  16/7
objected [1]  24/21
obtain [1]  10/10
obtained [3]  18/26 19/22 21/21
obviously [1]  4/9
occasion [2]  17/13 26/2
occurred [1]  10/9
occurrence [1]  12/5
October [10]  3/3 3/5 3/5 3/7 3/10 3/26
27/2 27/11 27/13 27/21
October 5th [8]  3/3 3/5 3/5 3/5 3/7 27/2
27/11 27/13 27/21
off [1]  26/19
OFFICIAL [1]  1/11
Okay [2]  2/26 5/13
Once [1]  15/10
one [13]  9/13 10/23 14/21 17/3 17/4
17/13 19/9 21/24 21/24 25/4 25/5 26/2
27/5
only [4]  9/11 13/8 14/13 14/18
OPPORTUNITY [1]  1/3
opposed [2]  11/16 15/15
opposing [1]  6/2
order [6]  4/21 17/17 19/22 26/8 26/9
28/4
ordered [3]  20/13 20/14 20/24
original [3]  16/15 22/4 28/9
OSTRAGER [1]  1/14
other [8]  3/9 8/10 9/22 11/17 17/11
20/9 25/18 25/18
otherwise [1]  18/3
our [23]  3/22 3/25 4/5 4/6 4/13 5/4 5/5
8/23 10/20 10/23 10/25 12/12 13/18
14/20 15/9 16/14 16/18 16/20 17/25
19/19 21/5 21/6 26/23
out [4]  17/13 19/6 19/7 25/14
outside [1]  4/6
outweighs [2]  19/13 20/2
over [1]  13/8
owed [1]  7/3
owing [2]  6/15 6/19
own [6]  22/5 22/5 22/6 22/13 23/12
24/12
owned [2]  22/14 25/14

**P**

PACIFIC [12]  1/3 6/8 6/17 6/21 6/26
7/11 9/2 9/5 9/12 9/16 10/26 11/4
paid [1]  12/16
pale [1]  24/13
Pangu [2]  9/5 9/12
papers [1]  7/4
part [6]  1/2 14/11 18/21 19/9 19/10
27/18
part's [1]  3/13
particular [1]  25/19
particularly [1]  3/7
parties [4]  6/8 6/13 6/20 23/15
parts [1]  18/21

past [1]  19/3
pause [1]  2/4
PAX [11]  10/10 16/16 16/18 17/13
17/20 19/17 21/14 21/17 21/19 22/2
22/25
PAX's [3]  16/20 21/22 21/22
pay [1]  13/10
payments [4]  6/16 7/26 13/8 25/12
penalties [1]  12/19
penalty [1]  8/16
penny [2]  13/10 21/18
people [1]  15/13
per [2]  5/5 12/5
performance [2]  10/8 12/23
performed [2]  7/10 10/15
perjury [1]  8/16
permitted [1]  26/17
person [1]  8/16
personal [10]  5/18 6/14 6/19 7/7 7/20
11/2 11/7 17/3 22/15 22/16
personally [1]  25/15
phase [1]  9/16
physical [1]  22/7
piercing [1]  24/19
plaintiff [6]  1/5 1/17 3/18 4/16 5/14
26/18
plaintiff's [2]  9/20 25/3
plaintiffs [1]  22/13
plan [1]  4/15
plans [1]  3/15
pleadings [2]  13/18 13/24
please [3]  11/5 26/8 28/4
point [1]  23/25
pointed [2]  14/15 17/13
points [2]  20/9 23/10
position [10]  7/9 14/22 14/23 14/25
15/15 15/20 19/11 21/2 26/26 27/3
positions [3]  8/12 11/17 21/14
power [1]  13/15
precedent [2]  6/24 7/6
precisely [1]  14/23
preclude [1]  11/14
precluded [2]  13/21 13/22
preclusion [2]  12/20 13/14
preface [1]  3/2
prejudgment [4]  20/12 20/16 20/19
20/26
prejudiced [1]  4/4
preponderance [2]  19/15 22/23
preservation [1]  26/20
presumably [1]  27/9
pretrial [1]  27/5
previously [2]  3/9 5/10
principal [1]  21/25
prior [1]  19/21
priority [1]  3/13
proceed [4]  4/11 5/11 14/9 27/21
proceeding [4]  14/22 24/24 25/6 25/6
proceedings [2]  10/5 24/17
process [2]  13/17 14/24
produced [1]  10/20
Professional [1]  15/23
proposed [1]  24/20
prove [1]  24/16
providing [2]  20/21 22/12
provision [2]  14/15 14/16
provisions [1]  14/8
punitive [1]  12/7
purpose [1]  17/26

purposes [2]  22/14 24/12
posh [1]  13/12
push [1]  11/8
put [9]  6/6 8/5 8/21 8/24 11/15 14/6
24/2 24/10 24/15
putting [1]  3/11

**Q**

question [4]  7/13 15/24 15/24 18/21
questionable [1]  25/23
questions [7]  18/22 19/3 19/7 19/16
22/18 23/23 24/3
quickly [1]  5/7
quite [2]  15/9 23/7
quote [5]  8/17 8/18 9/19 14/12 14/13

**R**

rabbit [1]  13/12
raise [1]  22/18
raised [1]  16/14
rather [1]  18/11
re [1]  17/22
re-serve [1]  17/22
read [1]  17/17
real [9]  12/22 13/3 13/4 13/5 13/7 13/7
14/4 15/10 15/10
really [9]  12/7 15/18 16/7 23/7 24/4
24/12 25/12 25/15 26/19
realtime [1]  10/22
reason [5]  3/6 5/15 14/13 27/20 27/22
reasons [1]  22/2
recalled [1]  3/22
receipt [1]  16/20
received [2]  10/22 27/9
reconcile [1]  8/11
record [1]  27/7
recoup [1]  7/2
rectify [1]  13/17
reference [1]  17/24
referred [2]  17/19 18/12
referring [1]  16/23
refused [2]  6/4 17/22
regarding [1]  16/25
reimbursed [2]  12/12 12/20
related [1]  5/20
relating [2]  7/21 10/5
relationship [1]  6/8
relied [1]  14/4
relying [2]  13/21 18/19
remedial [1]  6/4
remedy [2]  13/16 15/23
rent [1]  12/16
repaid [9]  6/11 6/18 21/18 21/20 21/26
22/8 25/10 25/18 25/19
repaying [1]  22/10
repayment [2]  10/11 22/13
repayments [1]  6/11
repeatedly [2]  5/16 17/20
reply [1]  14/20
reporter [3]  1/24 28/7 28/12
reports [1]  22/6
representation [1]  24/5
representations [3]  10/18 14/3 14/5
represented [1]  9/18
request [10]  9/2 17/7 17/8 17/9 17/11
17/14 17/21 17/25 20/10 21/9
requested [1]  26/25
requesting [1]  17/16
reschedule [1]  27/19
reserved [1]  20/17
reside [1]  19/4

resolved [2]  3/14 4/12
resolving [1]  3/12
resources [1]  26/20
Respectfully [1]  25/21
response [1]  9/9
responses [1]  17/25
result [1]  26/20
reverted [2]  7/7 7/7
review [1]  4/22
revisit [2]  3/23 26/14
RFA's [1]  23/12
ridiculous [2]  8/7 8/8
right [14]  3/21 4/13 4/26 5/11 12/17
  15/5 15/22 15/26 20/17 23/4 23/8
  24/15 25/21 27/23
rightfully [1]  21/14
Risk [1]  22/6
rogue [1]  13/13
room [2]  1/25 15/19
ROSEANN [1]  2/10
routinely [1]  13/25
rule [2]  22/21 26/23
ruled [1]  27/9
Rules [1]  15/22
ruling [1]  5/6
RUSS [4]  1/20 10/4 23/21 24/11

S

said [16]  6/21 7/20 8/6 8/7 8/25 9/4 9/9
  9/13 10/7 14/16 18/23 20/15 20/21
  22/19 23/22 24/15
same [3]  10/13 16/9 18/6
sanction [5]  12/3 12/5 13/24 14/1 20/4
sanctions [12]  5/3 5/11 11/10 11/13
  16/5 16/7 16/8 16/12 18/16 19/17
  25/23 26/10
Sandy [1]  13/19
satisfied [2]  7/6 25/25
satisfy [1]  10/12
say [4]  9/23 10/15 23/5 25/3
saying [4]  3/3 4/16 18/6 20/5
says [1]  9/11
schedule [1]  27/5
scheduled [5]  3/3 3/8 3/9 27/15 27/16
Schiller [3]  24/6 24/6 24/11
scope [1]  5/3
Secretary [1]  2/10
see [2]  12/24 17/19
seen [1]  18/23
self [3]  12/26 13/6 15/8
self-serving [3]  12/26 13/6 15/8
sell [1]  7/2
senior [3]  1/24 28/7 28/12
sent [2]  10/22 12/18
separately [1]  22/24
September [3]  27/8 27/12 27/22
September 8th [3]  27/8 27/12 27/22
series [1]  6/12
serve [1]  17/22
served [2]  9/2 10/20
serving [3]  12/26 13/6 15/8
set [3]  16/10 22/25 25/9
settle [2]  6/20 6/23
settled [1]  7/9
settlement [12]  6/24 6/25 5/7 5/21 7/22
  7/25 8/3 8/5 8/19 9/6 10/9 10/15
setup [1]  20/7
seven [1]  7/24
several [1]  5/20

Sherry [16]  4/8 4/9 10/4 11/8 11/9
  13/19 15/25 16/21 16/21 17/5 17/11
  17/12 17/22 18/4 25/17 28/9
Sherry-Nathan [1]  12/16
Shiny [2]  9/5 9/11
short [1]  26/9
should [7]  4/20 12/18 12/19 12/19 14/8
  23/23 24/2
Show [1]  4/21
showing [1]  14/20
shown [4]  18/5 18/8 18/25 21/12
side [1]  9/22
sides [2]  7/15 15/19
sign [3]  8/6 19/20 22/22
signature [2]  20/3 21/11
signatures [5]  5/22 7/18 18/5 18/8 18/9
signed [6]  7/11 10/17 11/5 18/4 20/2
  21/10
significant [2]  13/24 17/16
similar [1]  8/9
simple [1]  25/8
Since [1]  16/14
single [1]  13/5
situation [2]  3/24 15/17
SKYPE [4]  1/9 1/13 1/15 2/9
slide [1]  10/23
slotted [1]  27/17
so [44]
so-ordered [2]  20/13 20/14
some [9]  4/7 6/11 7/2 7/26 12/21 13/8
  16/13 24/10 27/20
somebody [2]  14/24 19/26
someone [1]  8/15
something [5]  8/8 12/26 17/4 23/12
  25/24
somewhere [1]  24/8
sort [1]  12/13
speak [1]  4/13
specific [1]  17/24
specifically [2]  18/2 20/15
spent [1]  12/13
spoke [1]  17/7
sponsored [2]  18/14 26/2
Square [2]  1/17 1/18
stage [2]  19/13 22/25
stance [1]  14/26
standpoint [1]  15/12
starting [1]  21/6
state [3]  1/2 26/24 28/8
statement [2]  22/21 24/26
statements [1]  11/11
States [1]  27/4
Steffi [1]  11/3
stenographic [1]  28/10
stepping [1]  20/5
Stevenson [1]  10/25
still [1]  6/15
stipulate [1]  23/19
stipulation [8]  20/11 20/14 20/14 20/23
  24/14 24/15 24/19 24/23
story [1]  7/26
straightforward [1]  25/16
Street [3]  1/11 1/25 2/5
strikes [1]  13/18
striking [1]  13/24
stronger [1]  20/10
subject [1]  24/23
submission [2]  19/12 19/22
submitted [5]  8/14 18/13 18/24 20/20
  23/13
substantial [3]  10/8 12/23 21/20

substantially [2]  7/10 7/10
success [2]  10/5 24/18
such [1]  27/21
sue [1]  25/18
sued [1]  22/15
sufficient [1]  26/22
sufficiently [1]  4/24
suggestion [4]  10/2 23/11 23/20 24/10
suggests [1]  13/7
suing [6]  5/19 6/18 11/20 11/26 25/11
  25/11
Suite [1]  1/21
summary [26]  4/17 5/3 5/4 12/22 13/11
  15/3 15/4 15/5 15/11 15/12 16/6 16/8
  16/10 16/11 16/12 19/11 19/17 19/24
  20/7 20/8 20/20 22/24 22/26 26/21
  26/23 27/10
supposed [4]  7/16 15/22 15/23 17/10
SUPREME [3]  1/2 1/14 3/4
sure [6]  3/25 4/4 12/4 14/24 15/13
  26/22
surprise [1]  15/18
surprised [1]  7/15
suspicious [1]  21/13
swears [1]  19/19
swore [2]  8/15 8/15
sworn [1]  21/5

T

table [1]  7/15
take [1]  6/4
taken [4]  7/9 16/17 21/14 25/13
taking [3]  14/21 14/25 15/15
talk [1]  22/9
talking [5]  16/15 19/14 22/12 23/14
  24/14
telling [1]  21/17
tendered [1]  18/17
TERM [1]  1/2
terms [2]  7/5 12/4
testified [7]  5/21 7/17 7/19 10/16 19/2
  21/10 23/24
testify [1]  10/21
testimony [16]  5/16 5/23 6/3 6/6 8/9
  10/3 12/26 13/7 13/19 15/8 15/14
  15/19 15/24 20/2 21/5 25/24
than [5]  11/24 13/24 17/13 20/10 26/2
Thank [8]  5/13 16/3 23/3 23/9 25/20
  27/24 28/1 28/3
that [184]
that's [13]  5/9 5/9 9/13 11/4 12/6 13/14
  13/16 14/19 15/10 17/9 19/9 20/18
  26/6
their [12]  3/15 6/8 9/22 10/18 14/18
  15/21 16/23 17/14 17/21 23/12 23/18
  24/25
them [14]  6/3 7/3 7/4 9/18 10/17 17/22
  19/2 19/8 19/8 19/22 22/7 24/8 24/9
  24/20
then [10]  4/20 6/12 9/1 9/13 9/15 14/22
  14/26 16/7 24/20 24/25
there [24]  3/4 3/6 4/2 4/2 4/24 6/12
  6/15 6/16 6/24 7/13 7/22 7/23 8/10
  9/21 11/22 12/18 15/18 15/24 20/10
  21/23 25/12 25/12 27/11 27/21
there's [2]  3/21 27/20
these [16]  7/14 7/17 8/20 8/23 8/24 9/3
  9/17 10/16 12/22 13/3 13/12 14/4
  22/18 24/3 24/7 26/11
they [47]

thing [4]  13/6 15/5 15/22 18/6
think [8]  4/11 5/2 6/5 7/14 9/24 15/18
  15/19 26/21
Third [1]  1/21
this [82]
those [15]  5/21 6/14 7/23 9/23 10/22
  14/4 18/14 18/21 19/3 19/7 19/12
  21/25 23/23 24/22 26/4
though [3]  6/16 7/12 22/5
three [3]  6/21 10/12 10/26
through [2]  6/12 8/4
throughout [3]  7/8 21/6 21/15
time [10]  4/18 4/22 9/25 12/10 16/9
  16/16 16/17 17/4 19/24 26/22
Times [4]  1/17 1/18 9/5 9/11
title [4]  6/26 7/5 7/12 12/25
today [4]  5/4 5/16 21/19 22/8
told [1]  17/20
Tower [1]  1/17
transaction [1]  14/12
transcript [2]  26/8 28/5
transcription [1]  28/9
transferred [1]  7/12
travel [3]  3/21 4/2 27/4
treat [1]  22/3
trial [17]  3/3 3/5 3/8 3/18 3/24 4/4 4/18
  4/24 19/25 22/21 26/3 26/15 26/18
  26/19 27/11 27/13 27/15
trials [5]  3/4 3/6 3/7 27/2 27/16
tried [2]  6/20 8/8
true [9]  8/17 8/25 18/15 18/18 21/6
  24/4 24/7 26/4 28/9
try [1]  7/2
trying [2]  15/4 22/25
two [3]  18/21 19/10 21/23

U

ultimately [1]  19/23
umbrage [1]  16/17
unable [1]  19/2
unconscionable [1]  10/10
uncorroborated [1]  13/6
under [11]  6/18 6/19 7/10 8/15 10/15
  12/18 13/10 15/22 19/19 23/16 25/13
understanding [1]  12/5
undisputed [1]  13/10
United [1]  27/4
unless [1]  27/20
unnecessary [1]  4/25
unpaid [2]  22/3 22/17
until [1]  21/21
untimely [1]  4/21
untruthful [1]  5/24
up [5]  11/25 13/6 13/12 16/10 20/5
upon [1]  13/19
us [10]  11/3 11/15 12/6 12/25 13/12
  16/22 17/14 17/23 19/18 22/18
use [1]  11/14
using [1]  8/4

V

valuable [1]  10/12
veil [1]  24/19
very [4]  4/11 7/15 26/23 27/25
vetted [1]  24/6
VIA [4]  1/9 1/13 1/15 2/9
virus [1]  4/3

walk [1]  8/6
WAN [2]  1/7 11/5
want [4]  3/2 4/3 13/26 26/22
was [53]
wasn't [2]  14/18 22/11
waste [2]  9/24 12/10
way [4]  4/26 8/10 8/11 17/15
we [91]
we're [4]  4/7 4/10 24/14 26/23
we've [3]  11/12 11/12 11/13
well [6]  4/7 5/20 11/22 12/4 18/10
  23/23
WEN [2]  1/7 1/8
WEN-GUI [1]  1/8
WENGUI [1]  1/7
were [50]
weren't [1]  8/23
what [17]  3/9 5/9 7/16 8/6 9/8 9/9 9/23
  10/7 12/2 15/18 16/10 19/7 19/17
  21/10 23/14 23/22 25/23
whatever [1]  3/6
when [7]  5/17 7/17 15/8 15/19 22/19
  22/19 26/3
where [6]  4/8 12/17 13/18 19/8 19/21
  23/18
whether [7]  3/23 7/13 13/2 21/5 24/3
  26/26 27/3
which [15]  12/24 13/24 17/4 17/14
  17/24 20/9 20/14 20/21 20/22 20/23
  20/24 22/12 22/14 22/26 24/21
who [7]  3/20 10/21 12/16 19/4 19/19
  22/8 22/11
whole [1]  25/7
wholly [1]  25/14
why [2]  13/14 27/20
will [20]  3/5 3/7 3/20 3/25 4/2 4/9 4/13
  4/18 5/4 10/21 22/21 26/4 26/9 26/19
  26/26 27/3 27/4 27/11 27/12 27/22
willing [1]  3/26
windfall [1]  10/12
witness [1]  24/12
witnesses [8]  3/20 3/26 4/5 4/9 10/21
  15/9 21/22 27/3
won't [1]  4/4
Wong [1]  10/25
word [1]  23/8
work [1]  17/10
world [1]  26/24
worried [2]  15/5 15/11
would [10]  3/23 10/10 12/2 12/12 14/9
  20/15 20/25 21/2 25/23 26/17
write [2]  11/3 11/3
wrong [1]  14/20
wrote [2]  6/2 16/21

Y

year [2]  7/16 23/15
years [2]  6/12 15/16
yes [3]  3/19 20/5 26/16
yet [1]  23/1
YORK [15]  1/2 1/2 1/11 1/11 1/18 1/18
  1/22 1/22 1/25 1/25 2/6 2/6 3/4 13/25
  28/8
you [40]
you're [3]  3/14 11/20 11/26
your [35]
Yu [9]  8/15 8/15 18/26 19/3 19/13
  19/21 23/20 23/22 24/1