# EXHIBIT 49

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PACIFIC ALLIANCE ASIA OPPORTUNITY
FUND L.P.,

*Plaintiff*,

-against-

KWOK HO WAN *a/k/a* KWOK HO *a/k/a* GWO
WEN GUI *a/k/a* GUO WENGUI *a/k/a* GUO
WEN-GUI *a/k/a* WAN GUE HAOYUN *a/k/a*
MILES KWOK *a/k/a* HAOYUN GUO, GENEVER
HOLDINGS CORPORATION, and GENEVER
HOLDINGS LLC,

*Defendants*.

Index No. 652077/2017

Hon. Barry R. Ostrager
IAS Part 61

Motion Sequence Nos. 7 & 8

---

**DEFENDANT KWOK'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
IN SUPPORT OF HIS CROSS-MOTION FOR LEAVE TO REARGUE**

---

**HODGSON RUSS LLP**
Mark A. Harmon
Jillian M. Searles
605 Third Avenue, Suite 2300
New York, New York 10158
(212) 751-4300

*Attorneys for Defendant Kwok*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS .................................................................................. 3

    A.    PAX's Motion for Partial Summary Judgment .......................... 3

    B.    Kwok's Motion for Leave to Reargue ...................................... 6

LEGAL ARGUMENT ...................................................................................... 8

    I.    LEAVE TO REARGUE IS DULY WARRANTED
        IN THIS MATTER ................................................................ 8

    A.    The Court Erred in Finding that Kwok is Judicially
        Estopped from Challenging the Authenticity of Certain
        Agreements ....................................................................... 8

        1)    Legal Standard for Judicial Estoppel .............................. 9

        2)    Judicial Estoppel is Inapplicable Here ............................ 9

    II.    PAX HAS FAILED TO DEMONSTRATE ENTITLEMENT
        TO SUMMARY JUDGMENT .................................................. 12

    A.    Summary Judgment Standard ............................................. 12

    B.    Issues of Fact Exist Regarding PAX's Failure to
        Mitigate its Damages for Kwok's Alleged Breach .................. 14

        1.    Hong Kong Law Regarding Mitigation .......................... 15

        2)    Documents and Testimony Demonstrate
            That PAX Failed to Mitigate its Losses ......................... 15

CONCLUSION ............................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aguas Lenders Recovery Group, LLC v. Suez, S.A.*,
   585 F.3d 696 (2d Cir. 2009)..................................................................6

**State Cases**

*Alvarez v. Prospect Hosp.*,
   68 N.Y.2d 320 (1986) ........................................................................13

*Black v. Loomis*,
   236 A.D.2d 338 (1st Dep't 1997) .........................................................14

*Borges v. Placeres*,
   64 Misc. 3d 92 (App. Term 2d Dep't 2019) ........................................11

*Clifton Country Rd. Assocs. v. Vinciguerra*,
   252 A.D.2d 792 (3d Dep't 1998)...........................................................9

*Daliendo v. Johnson*,
   147 A.D.2d 312 (2d Dep't 1989) .........................................................14

*Ferreira v. Wyckoff Heights Med. Ctr.*,
   24 Misc. 3d 91 (App. Term 2d Dep't 2009) ...................................11, 12

*Gilbert Frank Corp. v. Fed. Ins. Co.*,
   70 N.Y.2d 966 (1988) ........................................................................13

*Hartford Accident & Indem. Co. v. Wesolowski*,
   33 N.Y.2d 169 (1973) ........................................................................13

*Hirsch v. S. Berger Import & Mfg. Corp.*,
   67 A.D.2d 30 (1st Dep't 1979) ...........................................................14

*Holender v. Fred Cammann Prod., Inc.*,
   78 A.D.2d 233 (1st Dep't 1980)...........................................................12

*Islamic Republic of Iran v. Pahlavi*,
   62 N.Y.2d 474 (1984) ..........................................................................6

*Lopez v. Beltre*,
   59 A.D.3d 683 (2d Dep't 2009) ..........................................................13

FILED: NEW YORK COUNTY CLERK 08/17/2020 10:41 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 495
20-12411-jlg    Doc 14-49    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 49
Pg 5 of 26
RECEIVED NYSCEF: 08/17/2020

## <u>TABLE OF AUTHORITIES</u> (cont.)

**Page(s)**

*Lorenzo v Kahn,*
    954 N.Y.S.2d 331 (4th Dep't 2012)........................................................................9

*Maas v. Cornell Univ.,*
    253 A.D.2d 1 (1999)........................................................................9

*Mason v. Dupont Direct Fin. Holdings, Inc.,*
    302 A.D.2d 260 (1st Dep't 2003)........................................................................12

*Nestor v. Britt,*
    270 A.D.2d 192 (1st Dep't 2000)........................................................................9

*Ortiz v. Varsity Holdings, LLC,*
    18 N.Y.3d 335 (2011)........................................................................13

*Pacheco v. Fifteen Twenty Seven Assocs.,*
    275 A.D.2d 282 (1st Dep't 2000)........................................................................14

*Pierre v Mary Manning Walsh Nursing Home Co.,*
    93 A.D.3d 541 (1st Dep't 2012)........................................................................9

*RGH Liquidating Tr. v. Deloitte & Touche LLP,*
    47 A.D.3d 516 (1st Dep't 2008)........................................................................9

*Riordan v. ACandS, Inc.,*
    Index No. 121447/1999 (HEF), 2000 WL 36724028
    (Sup. Ct., NY County June 29, 2000)........................................................................9, 10

*Ruiz v. Griffin,*
    71 A.D.3d 1112 (2d Dep't 2010)........................................................................14

*Stone v. Continental Insurance Co.,*
    234 A.D.2d 282 (2d Dep't 1996)........................................................................12

*Tilles Inv. Co. v. Town of Oyster Bay,*
    207 A.D.2d 393 (2d Dep't 1994)........................................................................9

*Vega v. Restani Constr. Corp.,*
    18 N.Y.3d 499 (2012)........................................................................13

*Viola v. City of New York,*
    13 A.D.3d 439 (2d Dep't 2004)........................................................................8

*William P. Pahl Equip. Corp. v. Kassis,*
    182 A.D.2d 22 (1st Dep't 1992)........................................................................8

- iii -

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

*Winegrad v. New York Univ. Med. Ctr.*,
    64 N.Y.2d 851 (1985) ...........................................................................................13

*Zuckerman v. City of New York*,
    49 N.Y.2d 557 (1980) ...........................................................................................13

**Rules**

CPLR 2106(a) ...................................................................................................................20

CPLR 2221(a) .....................................................................................................................8

CPLR 2221(d) ..................................................................................................................1, 8

CPLR 2221(d)(3) .................................................................................................................8

CPLR 3212(b) ...................................................................................................................12

Defendant Kwok Ho Wan ("Kwok"), by his attorneys Hodgson Russ LLP,

respectfully submits this memorandum of law in opposition to plaintiff Pacific Alliance Asia

Opportunity Fund L.P.'s ("PAX") motion for partial summary judgment (Dkt. No. 408) (the

"Motion") and in support of his cross-motion (the "Cross-Motion"), brought pursuant to CPLR

2221(d), for leave to reargue the Court's Decision and Order dated July 7, 2020 (Dkt. No. 404).

## PRELIMINARY STATEMENT

Shortly before PAX filed the instant motion seeking partial summary judgment,

the Court ruled that Kwok was judicially estopped from challenging the authenticity of any of

the agreements he submitted in connection with his motion to dismiss for *forum non conveniens*

that was filed at the outset of this case. In so doing, the Court relieved PAX of its evidentiary

burden to establish the authenticity of the agreements upon which it seeks judgment. Without

the benefit of the Court's ruling, PAX would be unable to sustain its evidentiary burden on a

motion for summary judgment regarding authenticity because it can offer no witness who

observed Kwok's alleged execution of said agreements. Instead, the issue would have to be

presented to a trier of fact for determination.

Kwok respectfully submits that the Court's decision was made in error and that

judicial estoppel is inapplicable here for three reasons. First, there was no prior judicial

determination that the agreements at issue were authentic because the Court's decision on

Kwok's motion to dismiss for *forum non conveniens* did not adopt any position with respect

thereto. Second, because the Court's decision ultimately was overturned on appeal, there was no

final determination in Kwok's favor. After all, a final determination in Kwok's favor necessarily

would have required this case to have been dismissed in favor of being heard in a different

forum. Third, PAX cannot claim that it was prejudiced by any position that Kwok took in

connection with his motion to dismiss for *forum non conveniens* because, from the time issue was joined, PAX was on notice that Kwok denied the allegations of its complaint pertaining to the agreements in question. Indeed, PAX was provided the opportunity to conduct full merits discovery following what it has characterized as Kwok's change of position regarding the authenticity of the agreements. For these reasons, as further explained below, Kwok seeks leave to reargue the Court's decision.

Even assuming the Court does not grant leave to reargue, PAX's motion seeking partial summary judgment should be denied because PAX failed to mitigate its alleged damages as is required under Hong Kong law. Multiple emails and witness testimony make evident that, despite being given the opportunity by the police in Beijing, China to obtain title to the three apartments that PAX agreed to accept in satisfaction of funds it alleged it was owed pursuant to the deeds of settlement, PAX ignored that opportunity and chose to pursue Kwok (the guarantor) personally in New York. Specifically, the emails and testimony demonstrate an ongoing, internal discussion between PAX employees across multiple departments regarding the open offer of assistance. By ultimately choosing to disregard that offer of assistance, PAX failed to take the reasonable steps required to mitigate its losses. As such, pursuant to Hong Kong law, PAX is prohibited now from seeking to recover for those avoidable losses.

At a minimum, though, the documentary and testimonial evidence raise questions of fact – a point that PAX concedes in its moving papers – regarding PAX's interactions with the Beijing Police and their offer of assistance. Questions of fact regarding whether PAX failed to mitigate its losses when presented with a reasonable opportunity to do so are sufficient to defeat its Motion seeking partial summary judgment. Accordingly, PAX's Motion should be denied.

FILED: NEW YORK COUNTY CLERK 08/17/2020 10:41 PM
NYSCEF DOC. NO. 495

20-12411-jlg    Doc 14-49    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 49
Pg 9 of 26

INDEX NO. 652077/2017
RECEIVED NYSCEF: 08/17/2020

## STATEMENT OF FACTS

### A.    PAX's Motion for Partial Summary Judgment[1]

From the outset, PAX has mischaracterized this action as a "straightforward

breach of contract case" in which Kwok "and his controlled entities borrowed millions of dollars

from [PAX] but have failed to pay _any_ of the amount owed to [PAX] under binding written

agreements." _See_ PAX's complaint dated April 18, 2017 (the "Complaint") (Dkt. No. 2 at ¶ 1)

(emphasis added).  Specifically, PAX's original Complaint alleged that, in 2008, it entered into

an agreement with Spirit Charter Investment Limited ("Spirit Charter") for a $30,000,000 loan

facility that was conditioned on Kwok's execution of a personal guarantee.  _Id._ at ¶ 2.  PAX then

alleged that, in 2009, Shiny Times Holdings Limited ("Shiny Times") assumed Spirit Charter's

debt, and Kwok once again executed a personal guarantee.  _Id._ at ¶ 3.

According to PAX's original Complaint, in 2011, PAX entered into another

agreement with Shiny Times (the "Facility Letter"), and Kwok executed yet another personal

guarantee (the "Personal Guarantee").  _Id._ at ¶¶ 4-5.   PAX further alleged that, to date, "neither

Shiny Times nor Kwok have paid _any amount owed_ to [PAX] under either the 2011 Facility

Letter or the Personal Guarantee."  _Id._ at ¶ 6 (emphasis added).  According to PAX's original

Complaint, when Shiny Times "_did not repay any portion of the loan principal or interest_" due

and owing under the Facility Letter, the parties entered into a series of deeds of settlement in an

effort to grant Kwok and his entities the ability to repay what was owed to PAX (_Id._ at ¶¶ 28-37),

---

[1]    By virtue of the Court's Decision and Order dated July 7, 2020 (Dkt. No. 404), Kwok is judicially estopped, in opposition to PAX's summary judgment motion, from challenging the authenticity of any of the underlying agreements, including a subset of agreements as to which, during his deposition, he challenged that it was his signature affixed to the document.  In opposing partial summary judgment, Kwok has cross-moved for leave to reargue the July 7, 2020 decision (Dkt. No. 404) and, accordingly, reserves his right to dispute those facts in the event that the Court grants his cross-motion and reverses its original decision.

but Kwok failed to "repay any of the money due and owing to [PAX]" under the Personal Guarantee. *Id.* at ¶¶ 46, 50.

PAX's amended complaint, filed on April 18, 2019 (the "Amended Complaint") (Dkt. No. 309), repeated and expanded upon these allegations, seeking to portray Kwok as a deadbeat debtor who borrowed millions of dollars yet "refused to repay a penny of his debt." *See* Amended Complaint at ¶ 7.

Following the April 26, 2019 evidentiary hearing on PAX's third motion for prejudgment attachment, merits discovery commenced. *See* Dkt. Nos. 281 at 31:15-23 and 330. At that time, PAX produced thousands of documents and emails related to the purported underlying transactions. PAX also produced witnesses to testify about the underlying transactions and documents. Both served to undermine PAX's "straightforward" narrative.

For example, evidence demonstrates that the "straightforward" narrative originally created by PAX in its Complaint and Amended Complaint – that a $30,000,000 loan to Spirit Charter was secured by a personal guarantee executed by Kwok and never repaid – is not accurate.[2] Rather, two separate investments totaling $100,000,000 were made by PAX in February and March 2008 to facilitate the completion of the Pangu Plaza real estate project located in Beijing, China ("Pangu Project"). *See* Affirmation of Jillian M. Searles, dated August 17, 2020 ("Searles Aff."), Ex. 1 at PAX-KWOK-0073183.[3] Specifically, PAX entered into (i) a $30,000,000 loan facility with Spirit Charter guaranteed by Kwok, and (ii) a $70,000,000 bridge loan with Spirit Charter secured with a 49% equity interest in the Pangu Project.[4] When the

---

[2]    While, up to now, PAX steadfastly ignored the $70,000,000 bridge loan, it appears that PAX finally has acknowledged its existence in connection with this Motion. *See* Dkt. No. 410 at ¶ 2.

[3]    *See also,* Searles Aff., Ex. 2 (PAX-KWOK-063878) and Ex. 3 (PAX-KWOK-019201-02).

[4]    *Id.*, Ex. 1 (PAX-KWOK-0073183); *see also*, Dkt. No. 410 at ¶ 2.

- 4 -

FILED: NEW YORK COUNTY CLERK 08/17/2020 10:41 PM
NYSCEF DOC. NO. 495
INDEX NO. 652077/2017
RECEIVED NYSCEF: 08/17/2020
20-12411-jlg   Doc 14-49   Filed 12/16/20   Entered 12/16/20 15:47:19   Exhibit 49
Pg 11 of 26

$70,000,000 bridge loan was made in consideration for the 49% equity interest in the Pangu Project, the $30,000,000 loan simultaneously was restated.[5]

Moreover, PAX's claim in its Motion that none of the $30,000,000 loan facility was repaid is contradicted directly by PAX's own records, which show that $70,000,000 in principal on the bridge loan was repaid fully in September 2009, and that $30,000,000 in principal on the loan facility was repaid fully in November 2009.[6] PAX then documented what it claims was an unpaid return on investment, $31,800,000, as a new loan.[7] No new funds, however, were advanced.[8] This repurposed transaction appears to have been intended to shore up PAX's financial picture for its investors.[9] Whatever PAX's ultimate goal in repurposing the $100,000,000 investment, it does nothing to change that – according to its own internal records – the principal on both the $30,000,000 and the $70,000,000 was repaid fully.

Finally, evidence demonstrates that PAX received – and ultimately ignored – an offer of assistance from the police in Beijing China (the "Beijing Police") to obtain title to the three apartments that PAX agreed to accept in satisfaction of funds it alleged was owed pursuant to the deeds of settlement (the last of which terminated in June 2015).[10] Specifically, internal PAX emails dating back to July 2015 and involving close to a dozen different PAX employees show an ongoing discussion regarding an open offer of assistance from the Beijing Police to

---

[5]  *See* Dkt. No. 410 at ¶ 10.

[6]  *See* Searles Aff., Ex. 2 (PAX-KWOK-063878), Ex. 3 (PAX-KWOK-019201-02), Ex. 4 (PAX-KWOK-052948-50), Ex. 1 (PAX-KWOK-0073183), Ex. 5 (PAX-KWOK-046298), Ex. 6 (PAX-KWOK-019138), Ex. 7 (PAX-KWOK-039194), and Ex. 8 (PAX-KWOK-041797).

[7]  *Id*., Ex. 3 (PAX-KWOK-019201-02), Ex. 7 (PAX-KWOK-039194), and Ex. 8 (PAX-KWOK-041797).

[8]  *Id*., Ex. 4 (PAX-KWOK-052949), Ex. 8 (PAX-KWOK-041797), and Ex. 1 (PAX-KWOK-0073183).

[9]  *Id*., Ex. 6 (PAX-KWOK-019138) and Ex. 4 (PAX-KWOK-052948).

[10]  *See* Dkt. No. 432, Ex. 40.

- 5 -

obtain title to the apartments.[11]  In addition, each of PAX's witnesses – Derek Crane, Catherine

Yang, and Jon Lewis – testified that, despite PAX's knowledge and internal discussion of the

offer of assistance, no one at PAX took the reasonable steps necessary to pursue the

opportunity.[12]

## B.  **Kwok's Motion for Leave to Reargue**

At the outset of this case, Kwok's prior counsel[13] filed a motion seeking dismissal

on *forum non conveniens* grounds and argued that, on balance, the relevant factors favored

dismissal (Dkt. No. 7) (the "Dismissal Motion").[14]  In the context of that Dismissal Motion,

where the Court had to accept as true the allegations in PAX's Complaint,[15] Kwok's prior

counsel submitted an affirmation from Fiona Yu (Dkt. No. 11) (the "Yu Affirmation").  The

purpose of the Yu Affirmation was to demonstrate that the alleged transactions giving rise to

PAX's claims occurred in, and were governed by, a foreign jurisdiction and that documents and

witnesses likewise were located in that foreign jurisdiction.[16]

---

[11]  *See* Searles Aff., Ex. 9 (PAX-KWOK-017288-89), Ex. 10 (PAX-KWOK-019048), and Ex. 11 (PAX-KWOK-019469-71).

[12]  *See generally*, Searles Aff., Exs. 12-14.

[13]  Hodgson Russ replaced Kwok's prior counsel after the motion to dismiss for *forum non conveniens* initially had been granted by the Court.  *See* Dkt. No. 114.

[14]  Although no one factor is controlling, New York courts typically consider several factors in evaluating *forum non conveniens* motions: (i) whether the transactions giving rise to the cause of action occurred primarily in a foreign jurisdiction; (ii) the non-residency of the parties; (iii) the existence of an adequate alternative forum; (iv) the potential hardship to the defendant; (v) the location of potential witnesses and documents; (vi) the applicability of foreign law; and (vii) the burden on New York courts and taxpayers.  *See Islamic Republic of Iran v. Pahlavi*, 62 N.Y.2d 474, 479 (1984).

[15]  *See Aguas Lenders Recovery Group, LLC v. Suez, S.A.*, 585 F.3d 696, 697 (2d Cir. 2009).

[16]  While Yu indicated that her affirmation was based on personal knowledge and a review of the records, it is unclear what personal knowledge she possessed given that the Yu Affirmation makes clear that Yu was not involved in the underlying transactions and had no access to any of the relevant individuals who were involved in the underlying transactions as they were no longer employed by the relevant entities at the time the suit was commenced.  *See* Dkt. No. 11.

On March 3, 2020, PAX filed a motion seeking monetary sanctions against Kwok and his counsel based on purportedly false deposition testimony given by Kwok (Dkt. No. 343) (the "Sanctions Motion"). As support for its Sanctions Motion, but not as separate relief requested, PAX argued that Kwok should be "judicially estopped from asserting forgery because the Court relied on Kwok's representations that the contracts were authentic in granting [the Dismissal Motion]." *See* Dkt. No. 344 at 17. Kwok opposed PAX's Sanctions Motion. *See* Dkt. Nos. 370-390.

Following briefing by the parties, the Court held oral argument in connection with PAX's Sanctions Motion. In accordance with the decision on the record at oral argument, the Court, in a Decision and Order dated July 7, 2020, denied the Sanctions Motion insofar as sought monetary costs or sanctions. *See* Searles Aff., Ex. 18 (Dkt. No. 404). The Court, however, held that Kwok was "judicially estopped from challenging, in opposition to [PAX's] summary judgment motion or at trial, the authenticity of documents [Kwok] previously sponsored in proceedings before this Court, notwithstanding that [Kwok] sought to disavow his signature on those documents during his deposition. *Id*. The Court further ordered that, "[s]hould the matter proceed to trial, those documents will be admitted into evidence." *Id*. In the absence of the Court's legal determination that judicial estoppel applies, PAX – who bears the burden of proof – would be required to rebut Kwok's testimony although it has not identified a single competent witness who could testify that she witnessed Kwok sign the disputed documents.

# **LEGAL ARGUMENT**

## **I.**

## **LEAVE TO REARGUE IS DULY WARRANTED IN THIS MATTER**

CPLR Rule 2221 governs motions to reargue.[17]  Pursuant to CPLR 2221(d),[18] a

motion for reargument "shall be based upon matters of fact or law allegedly overlooked or

misapprehended by the Court in determining the prior motion."  New York courts have

consistently held that "[m]otions for reargument are addressed to the sound discretion of the

court which decided the prior motion and may be granted upon a showing that the court

overlooked or misapprehended the facts or law or mistakenly arrived at its earlier decision." *See*

*Viola v. City of New York*, 13 A.D.3d 439 (2d Dep't 2004) (internal citations omitted); *see also,*

*William P. Pahl Equip. Corp. v. Kassis*, 182 A.D.2d 22 (1st Dep't 1992) (a motion for leave to

reargue may be granted upon a showing that the court overlooked or misapprehended the facts or

the law or mistakenly arrived at its earlier decision) (internal citations and quotations omitted).

### A.    **The Court Erred in Finding That Kwok is Judicially Estopped**
####      **from Challenging the Authenticity of Certain Agreements**

It is respectfully submitted that reargument in the present case should be granted

because, in ordering that "Kwok is judicially estopped from challenging, in opposition to

plaintiff's summary judgment motion or at trial, the authenticity" of any of the alleged

agreements between the parties (Searles Aff., Ex. 17), the Court misapprehended the facts and

law which do not support such a finding.  And absent such a finding, PAX will be faced with a

---

[17]  A motion for leave to reargue must be made to the same judge who signed the order at issue, unless that judge is unable to hear the motion.  *See* CPLR 2221(a).

[18]  A motion for leave to reargue "shall be made within thirty days after service of a copy of the order determining the prior motion and written notice of its entry."  *See* CPLR 2221(d)(3).  Here, the Court's decision was issued on July 7, 2020.  *See* Searles Aff., Ex. 18 (Dkt. No. 404).  PAX, however, has yet to file or serve a notice of its entry.

clear question of fact as to the authenticity of the subset of agreements that Kwok has contested.

As such, the Court relieved PAX of is evidentiary burden based solely on the Yu Affirmation

submitted in connection with Kwok's ultimately unsuccessful Dismissal Motion, which was filed

at the outset of the case and prior to any merits discovery.

    1)   <u>Legal Standard for Judicial Estoppel</u>

        The doctrine of judicial estoppel has been applied to preclude a party "from

inequitably adopting a position directly contrary to or inconsistent with an earlier assumed

position in the same proceeding." *See Maas v. Cornell Univ.*, 253 A.D.2d 1, 5, aff'd, 94 N.Y.2d

87 (1999); *see also, Nestor v. Britt*, 270 A.D.2d 192, 193 (1st Dep't 2000); *Clifton Country Rd.*

*Assocs. v. Vinciguerra*, 252 A.D.2d 792, 793 (3d Dep't 1998). Yet, this doctrine is applied in

New York <u>*only*</u> where the party to be precluded obtained a ruling in its favor based on the

assumed position. *See Pierre v Mary Manning Walsh Nursing Home Co.*, 93 A.D.3d 541 (1st

Dep't 2012); *RGH Liquidating Tr. v. Deloitte & Touche LLP*, 47 A.D.3d 516, 517 (1st Dep't

2008); *Lorenzo v Kahn*, 954 N.Y.S.2d 331 (4th Dep't 2012); 57 N.Y. Jur. 2d, Estoppel,

Ratification and Waiver § 54. Moreover, judicial estoppel applies <u>*only*</u> where a party has

secured a final determination in its favor. *See Tilles Inv. Co. v. Town of Oyster Bay*, 207 A.D.2d

393, 394 (2d Dep't 1994); *Riordan v. ACandS, Inc.*, Index No. 121447/1999 (HEF), 2000 WL

36724028, at *1 (Sup. Ct., NY County June 29, 2000).

    2)   <u>Judicial Estoppel is Inapplicable Here</u>

        Here, judicial estoppel is inapplicable and the Court's decision finding otherwise

was made in error. First, there never was a judicial determination that the agreements at issue

were authentic. That is because, in deciding Kwok's Dismissal Motion, the Court did not adopt

any position with respect to the authenticity of the agreements. Rather, in weighing the relevant

factors, the Court merely held that there was "no substantial nexus with New York" given that the dispute was "between a Hong Kong investment fund and a citizen of the People's Republic of China with respect to a transaction governed by Hong Kong law[19] relating to real estate in the PRC" and there were "indisputably documents and witnesses in Hong Kong" where "the transactions out of which the claim arises occurred." *See* Dkt. No. 102.

Second, there was *no final determination in Kwok's favor* as the Court's decision on the Dismissal Motion was overturned by the Appellate Division and did not become the law of the case. While it does not appear that, in New York, the issue of judicial estoppel ever has been raised in the context of a *forum non conveniens* dismissal subsequently overturned by the Appellate Division – as is the case here – prior court decisions in the context of bankruptcy proceedings are instructive with respect to what constitutes a final determination in a party's favor so as to trigger the doctrine of judicial estoppel. For example, the Court in *Goodman v. Skanska USA Civil, Inc.* found that judicial estoppel did not apply to limit recovery in a bankruptcy trustee's personal injury action on behalf of the debtor, even though the debtor's initial personal injury action was dismissed based on his failure to include the claim as an asset in his bankruptcy proceeding. 169 A.D.3d 1010 (2d Dep't 2019). The Court reached this decision because, when the bankruptcy proceeding was reopened, the court found that it nullified the final determination upon which judicial estoppel could have been predicated. *Id*. The circumstances are similar here. When the Court's decision on the Dismissal Motion was overturned, it nullified any finding in Kwok's favor upon which PAX could assert its judicial estoppel claim. Nevertheless, PAX's Sanctions Motion focused exclusively on the Court's

---

[19] Kwok's deposition testimony did not dispute the authenticity of every agreement, but merely a subset of those agreements. As such, the Court's original determination that the parties' transactions were "governed by Hong Kong law" was and remains true.

decision on the Dismissal Motion, while ignoring its reversal on appeal. In doing so, PAX sought to have it both ways. Notwithstanding that the agreements were submitted as ancillary evidence to support the Dismissal Motion, PAX argued that their inclusion served to bind Kwok on the issue of authenticity even though Kwok ultimately did not prevail on his Dismissal Motion. If Kwok had prevailed on his Dismissal Motion – irrespective of the Court's specific reasons for its ruling – this case would have proceeded in Hong Kong, not New York. Because it did not, and because Kwok did not obtain a final determination in his favor, judicial estoppel does not apply.[20]

Third, assuming that Kwok's subsequent deposition testimony regarding the authenticity of a subset of the alleged agreements constituted a change of position from the Yu Affirmation, PAX can make no showing of resulting prejudice. Rather, following the Court's decision on Kwok's Dismissal Motion (and its subsequent reversal by the Appellate Division), the parties were given a full opportunity to conduct merits discovery. *See Ferreira v. Wyckoff Heights Med. Ctr.*, 24 Misc. 3d 91, 96 (App. Term 2d Dep't 2009), *aff'd*, 81 A.D.3d 587 (2d Dep't 2011) (plaintiff properly was permitted to assert at trial that the baby was stillborn, even though she originally had alleged in her complaint and in opposition to defendants' prior summary judgment motion that the baby had been born alive, noting that "although there [are] instances where judicial estoppel could apply when contradictory positions [are] taken in the

---

[20] In the memorandum of law submitted in connection with its Sanctions Motion, PAX relied on *Borges v. Placeres*, 64 Misc. 3d 92, 94 (App. Term 2d Dep't 2019), for the proposition that Kwok "should not be permitted to lead a court to find a fact one way, *prevail on that theory*, and then contend that the same fact should be found otherwise." *See* Dkt. No. 344 at 21 (emphasis added) (internal quotations omitted). Setting aside that the facts in *Borges* bear no similarity to the present case, the idea that Kwok "prevailed" on his Dismissal Motion is preposterous. As the Court is aware, its decision on the Dismissal Motion was overturned on appeal. Irrespective of Kwok's efforts to have this matter heard in the forum where many of the documents and witnesses were located and where many of the underlying transactions occurred, this case presently is being heard in New York. There simply is no conceivable way to characterize that as Kwok "prevailing" on his Dismissal Motion.

context of the same lawsuit, inasmuch as [the parties] had been given a full opportunity to

conduct discovery after plaintiff changed her position, [defendants] would not be prejudiced by

plaintiff's change in position."). Moreover, from the time issue was joined, PAX was given fair

warning and was on notice that Kwok denied the allegations of the Complaint (and subsequently

the Amended Complaint).[21] As a result, PAX cannot argue that it was prejudiced by any position

Kwok took with respect to the Dismissal Motion, which occurred before issue was joined or

merits discovery had commenced. *Ferreira,* 24 Misc. 3d at 96.

Because the Court's decision was made in error, and without it, PAX would not

be in a position to sustain its summary judgment burden on the authenticity of the subset of

agreements to which Kwok has objected, the Court should grant Kwok's Cross-Motion seeking

leave to reargue.

## II.
### PAX HAS FAILED TO DEMONSTRATE
### ENTITLEMENT TO SUMMARY JUDGMENT

### A.    Summary Judgment Standard

Summary judgment motions are governed by CPLR 3212(b), which "requires the

proponent of a motion for summary judgment to demonstrate the absence of genuine issues of

material fact . . ." as a matter of law. *See Stone v. Continental Insurance Co.*, 234 A.D.2d 282

(2d Dep't 1996). Because "the granting of a summary judgment motion is the procedural

equivalent of a trial, such drastic relief should not be granted where there is any doubt as to the

existence of a triable issue." *See Holender v. Fred Cammann Prod., Inc.,* 78 A.D.2d 233, 237

(1st Dep't 1980); *see also*, *Mason v. Dupont Direct Fin. Holdings, Inc.*, 302 A.D.2d 260, 262

---

[21]  PAX conceded as much when it cited Kwok's denial of the allegations in the Complaint as justification for serving Kwok with seventy-eight requests for admission that largely tracked word-for-word the language in its Complaint. *See* Searles Aff., Ex. 17.

FILED: NEW YORK COUNTY CLERK 08/17/2020 10:41 PM
NYSCEF DOC. NO. 495

INDEX NO. 652077/2017

RECEIVED NYSCEF: 08/17/2020

20-12411-jlg    Doc 14-49    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 49
Pg 19 of 26

(1st Dep't 2003) (it is "axiomatic that summary judgment is a drastic remedy"). Accordingly, the summary judgment standard is appropriately rigorous and demands that the movant conclusively demonstrate that it is entitled to judgment as a matter of law. *See Alvarez v. Prospect Hosp.*, 68 N.Y.2d 320, 324 (1986); *Hartford Accident & Indem. Co. v. Wesolowski*, 33 N.Y.2d 169, 172 (1973).

A movant seeking summary judgment is required to make a *prima facie* showing of entitlement to judgment as a matter of law by offering sufficient evidence to eliminate any material issues of fact. *Winegrad v. New York Univ. Med. Ctr.*, 64 N.Y.2d 851, 853 (1985).[22] Failure to make a *prima facie* showing of entitlement to summary judgment "requires a denial of the motion, regardless of the sufficiency of the opposing papers." *See Winegrad v. New York Univ. Med. Ctr.*, 64 N.Y.2d 851, 853 (1985). Only if a movant has made a *prima facie* showing of entitlement to judgment as a matter of law, does the burden shift to the opposing party who must then demonstrate the existence of a triable issue of fact. *Alvarez v. Prospect Hosp.*, 68 N.Y.2d 320, 324 (1986); *Zuckerman v. City of New York*, 49 N.Y.2d 557 (1980); *Gilbert Frank Corp. v. Fed. Ins. Co.,* 70 N.Y.2d 966, 967 (1988) (a party opposing a summary judgment motion "must produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact on which [its] claim rests.").

The court's function on a motion for summary judgment is "to determine whether material factual issues exist, not to resolve such issues." *See Lopez v. Beltre*, 59 A.D.3d 683, 685 (2d Dep't 2009). As such, the focus of the Court's inquiry is the determination of whether the factual issues alleged by the plaintiff in the complaint are "genuine or unsubstantiated." *See*

---

[22] In the context of a summary judgment motion, the "facts must be viewed 'in the light most favorable to the non-moving party.'" *See Vega v. Restani Constr. Corp.*, 18 N.Y.3d 499, 503 (2012) (quoting *Ortiz v. Varsity Holdings, LLC*, 18 N.Y.3d 335, 339 (2011)).

*Pacheco v. Fifteen Twenty Seven Assocs.*, 275 A.D.2d 282, 284 (1st Dep't 2000); *Hirsch v. S. Berger Import & Mfg. Corp.*, 67 A.D.2d 30, 34 (1st Dep't 1979). Therefore, a motion for summary judgment "should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility." *Ruiz v. Griffin*, 71 A.D.3d 1112, 1115 (2d Dep't 2010) (internal citations omitted). In other words, "[w]here the court entertains any doubt as to whether a triable issue of fact exists, summary judgment should be denied." *Daliendo v. Johnson*, 147 A.D.2d 312, 317 (2d Dep't 1989) (citations omitted); *see also*, *Black v. Loomis*, 236 A.D.2d 338 (1st Dep't 1997) (the existence of a single *bona fide* issue raised by evidentiary facts will suffice to defeat summary judgment).

### B. Issues of Fact Exist Regarding PAX's Failure to Mitigate its Damages for Kwok's Alleged Breach

Evidence in this case demonstrates that, despite being given the opportunity by the Beijing Police to obtain title to the three apartments that PAX agreed to accept in satisfaction of funds it alleges it was owed pursuant to the deeds of settlement (the last of which terminated in June 2015),[23] PAX chose to ignore that opportunity in favor of bringing this suit against Kwok personally in New York.[24] As set forth below, PAX's actions – or rather, inaction – with respect to the offer of assistance from Beijing Police are laid bare in its internal emails and the deposition testimony of its own witnesses.[25] This evidence, at a minimum, raises questions of fact as to whether PAX failed to take reasonable steps to mitigate its losses as is required by

---

[23]   *See* Dkt. No. 432, Ex. 40.

[24]   *See* Dkt. No. 410 at ¶ 71.

[25]   *See generally,* Searles Aff., Exs. 9-15.

- 14 -

Hong Kong law.[26]  A failure to mitigate its losses would preclude PAX from now seeking to recover for those avoidable losses.[27]

    1)    <u>Hong Kong Law Regarding Mitigation</u>

    Hong Kong law governs the contracts at issue in this case.  Under Hong Kong law, a plaintiff "must take all reasonable steps to mitigate" its losses and "cannot recover damages for any such loss which [it] could…have avoided but failed, through unreasonable action or inaction, to avoid."[28]  In other words, avoidable losses cannot be recovered from a defendant.[29]  Whether a plaintiff has taken the reasonable steps necessary to mitigate its losses is primarily a question of fact, not law.[30]

    2)    Documents and Testimony Demonstrate
                 <u>That PAX Failed to Mitigate its Losses</u>

    Multiple emails, dating back to July 2015,[31] involving close to a dozen different PAX employees demonstrate that there existed at that time an ongoing, sustained discussion regarding an open offer of assistance from the Beijing Police to obtain title to the apartments that were the subject of the deeds of settlement – an offer of assistance that ultimately was disregarded.[32]  In addition, each of PAX's witnesses testified at their respective depositions that, despite PAX's knowledge and internal discussions of the offer of assistance, no one at PAX took reasonable steps necessary to pursue the opportunity.  For example, Derek Crane ("Crane"),

---

[26]  *See* Affirmation of Phillip Loukis Georgiou, dated August 17, 2020 ("Georgiou Aff.") at ¶¶ 18.3 and 21.

[27]  *Id*. at ¶¶ 18.1, 18.2, and 22.

[28]  *Id*. at ¶ 18.1.

[29]  *Id*. at ¶ 18.2.

[30]  *Id*. at ¶ 18.3.

[31]  A plain reading of the emails makes clear that PAX's internal discussions regarding the offer of assistance from the Beijing Police did not begin in July 2015.  *See* Searles Aff., Ex. 9 (PAX-KWOK-017288-89), Ex. 10 (PAX-KWOK-019048), and Ex. 11 (PAX-KWOK-019469-71).

[32]  *Id*.

PAX's Chief Operating Officer, testified that he came to the understanding that the Beijing

Police would assist in transferring title on the three apartments to PAX based upon discussions

with PAX's legal and finance teams.[33]  Nevertheless, Crane was unaware what, if any, follow-up

PAX made regarding the Beijing Police's offer of assistance.[34]

When Catherine Yang ("Yang"), an attorney in PAX's legal department, first was

questioned about when she became aware of the offer of assistance from the Beijing Police, she

started to explain what one of her colleagues had done in connection therewith.[35]  At that point,

however, she was interrupted by PAX's legal counsel, advised not to discuss privileged work,

and ultimately instructed not to answer the question.[36]  Notwithstanding PAX's obvious efforts

to shield details regarding the offer of assistance behind attorney-client privilege, Yang later

testified that, despite being aware of the offer of assistance, neither she, nor anyone else with

whom she spoke, followed up with the Beijing Police.[37]  She further testified that no one at PAX

made any effort to work with the Beijing Police in order to obtain title to the three apartments.[38]

Similarly, Jon Lewis ("Lewis"), PAX's general counsel – who first became aware

of the offer of assistance via an email from Yang that was sent sometime after the apartments

were seized in February 2015 – testified that he never spoke with the Beijing Police and did not

know who at PAX did.[39]  And while Lewis testified that he did not believe that the Beijing

---

[33]  *See* Searles Aff., Ex. 12 at 246:8-16.

[34]  *Id*. at 252:9–253:7.

[35]  *Id*., Ex. 14 at 151:19–152:4.

[36]  Yang started to testify that "[i]t was one of [her] legal department colleagues who had written.…" At that point, Yang was interrupted by PAX's legal counsel and advised not to "discuss privileged legal work." Yang replied that she was not "sure if it's privileged or not," and a discussion of privilege ensued that ended with PAX's counsel directing her not to answer the question. *Id.* at 151:19–153:9.

[37]  *Id*. at 153:15-21.

[38]  *Id*. at 153:10-14.

[39]  *Id*., Ex. 13 at 152:23–153:12 and 153:18–154:6.

FILED: NEW YORK COUNTY CLERK 08/17/2020 10:41 PM
NYSCEF DOC. NO. 495

INDEX NO. 652077/2017

RECEIVED NYSCEF: 08/17/2020

20-12411-jlg    Doc 14-49    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 49
Pg 23 of 26

Police were in a position to assist in obtaining title to the apartments, he conceded that other individuals at PAX – including Chris Gradel (Managing Partner), Philip Skevington (head of the Risk Department), and Derek Crane (Chief Operating Officer) – believed the Beijing Police "could actually deliver" to PAX title to the three apartments.[40]  Nevertheless, no one at PAX followed up with the Beijing Police regarding their offer of assistance because, in Lewis's view, PAX was not "in contract" with the Beijing Police (i.e. the Beijing Police were not the entity selling the apartments to PAX).[41]  Irrespective of Lewis' personal opinions, however, PAX's own PRC property law expert, Shitong Qiao, testified that the Beijing Police did, in fact, possess the authority to "unseize" the apartments because they were the governmental entity that had seized the apartments in the first place.[42]

In its Motion, PAX concedes that questions of fact exist with respect to the offer of assistance from the Beijing Police.  *See* Dkt. No. 409 at 24.  It seeks, however, to downplay those issues of fact by citing only one of the relevant August 2015 emails[43] and arguing that it had no duty to "pursue self-help if Kwok and Beijing Pangu failed to deliver during the [final deed of settlement's] term," which expired in June 2015.  *Id*.  In other words, after using the attorney-client privilege to shield relevant information from Kwok during discovery, PAX now feigns ignorance about the entire issue and characterizes the offer of assistance as "irrelevant." *Id*.  Yet, as demonstrated above, PAX's internal discussions regarding the offer of assistance from the Beijing Police began well before August 2015 and were not limited to one internal

---

[40]  *See* Searles Aff., Ex. 13 at 154:24–155:19.

[41]  *Id*. at 154:7-23.

[42]  *Id*., Ex. 15 at 137:11–138:6.

[43]  *See* Dkt. No. 432, Ex. 57.

email as PAX implies.[44]  Rather, there existed an ongoing discussion involving multiple PAX

employees across different departments.[45]  Moreover, the exact date that those internal

discussions began is of no legal consequence because any alleged breach would not relieve PAX

of its obligation to mitigate its damages stemming from that alleged breach.[46]

     In light of the substantial documentary and testimonial evidence which, at a

minimum, raises questions of fact as to whether PAX failed to mitigate its losses when presented

with a reasonable opportunity to do so, PAX has failed to show entitlement to the

$113,071,713.96 it now seeks from Kwok.

## **CONCLUSION**

     For the foregoing reasons, Kwok respectfully requests that the Court deny PAX's

Motion in its entirety, grant Kwok's Cross-Motion, and grant such other and further relief as it

deems proper.

Dated: New York, New York
     August 17, 2020

                       HODGSON RUSS LLP

                       By: /s/ Jillian M. Searles
                          Mark A. Harmon
                          Jillian M. Searles
                       605 Third Avenue, Suite 2300
                       New York, New York 10158
                       (212) 751-4300
                       mharmon@hodgsonruss.com
                       jsearles@hodgsonruss.com

                       *Attorneys for Defendant Kwok*

---

[44]  *See* Searles Aff., Ex. 9 (PAX-KWOK-017288-89), Ex. 10 (PAX-KWOK-019048), and Ex. 11 (PAX-KWOK-019469-71).

[45]  *See generally*, Searles Aff., Exs. 12-14; *see also*, Ex. 9 (PAX-KWOK-017288-89), Ex. 10 (PAX-KWOK-019048), and Ex. 11 (PAX-KWOK-019469-71).

[46]  *See* Georgiou Aff. at ¶¶ 19 (a)-(c).  This is especially true since, according to PAX, it did not serve its first notice of demand until October 2015 – months after both the alleged breach and the internal discussions regarding the offer of assistance from the Beijing Police.  *See* Dkt. No. 410 at ¶ 64.

## CERTIFICATION OF WORD-COUNT COMPLIANCE

Jillian M. Searles certifies that I am a member of Hodgson Russ LLP, attorneys for defendant Kwok, and that, in accordance with Rule 17 of the Commercial Division Rules, this brief contains fewer than 7000 words, excluding the caption, table of contents, table of authorities, and signature block which are exempted from the word count by Rule 17.

Dated: August 17, 2020

_____/s/Jillian M. Searles_____
Jillian M. Searles

## AFFIRMATION OF SERVICE

Jillian M. Searles, under the penalties of perjury, and pursuant to CPLR 2106(a),

affirms that I am a member of Hodgson Russ LLP, attorneys for defendant Kwok, and on August

17, 2020, pursuant to the Commercial Division Rules, a true and correct copy of the foregoing

was served by filing it with the New York State Court's Electronic Filing System ("NYSCEF")

upon all counsel of record.


                                        _____/s/Jillian M. Searles_____
                                             Jillian M. Searles