# EXHIBIT 51

FILED: NEW YORK COUNTY CLERK 09/25/2020 05:43 PM
NYSCEF DOC. NO. 576
20-12411-jlg    Doc 14-51    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 51
Pg 2 of 18
INDEX NO. 652077/2017
RECEIVED NYSCEF: 09/25/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.,

        Plaintiff,

    v.

KWOK HO WAN, *a/k/a* KWOK HO, *a/k/a* GWO WEN GUI, *a/k/a* GUO WENGUI, *a/k/a* GUO WEN-GUI, *a/k/a* WAN GUE HAOYUN, *a/k/a* MILES KWOK, *a/k/a* HAOYUN GUO, GENEVER HOLDINGS CORPORATION, and GENEVER HOLDINGS LLC,

        Defendants.

Index No. 652077/2017

Hon. Barry Ostrager

Part 61

Mot Seq. No. __

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.'S CPLR 5229 MOTION AND REQUEST FOR TRO**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    I.    The Court Should Grant PAX's Application Under CPLR 5229. ......................... 2

    II.    The Court Should Preserve the Status Quo by Temporarily Enjoining Kwok from Dissipating His Assets Until the Hearing on PAX's 5229 Application. ............................................................................................................ 4

        A.    PAX Will Suffer Irreparable Harm if Kwok is Not Restrained From Dissipating His Assets. ............................................................ 5

        B.    PAX Is Likely to Succeed on the Merits of Its CPLR 5229 Application. ................................................................................................ 11

        C.    The Balance of Hardships Favors PAX. .................................................. 11

CONCLUSION ............................................................................................................................. 12

## TABLE OF AUTHORITIES

**Pages**

**Cases**

*Ayro Comm'ns, Inc. v. Jaymer Comm'ns Corp.*,
  No. 38836/04, 2005 WL 351070 (N.Y. Sup. Ct. Feb. 9, 2005) .................................................. 10

*Coley v. Vannguard Urban Improvement Ass'n, Inc.*,
  12-CV-5565 (PKC) (RER), 2016 WL 7217641 (E.D.N.Y. Dec. 13, 2016) .............................. 2

*Demirovic v. Ortega*,
  296 F. Supp. 3d 477 (E.D.N.Y. 2017) ........................................................................................ 4

*Gallegos v. Elite Model Mgmt. Corp.*,
  1 Misc.3d 200 (N.Y. Sup. Ct. 2003) .................................................................................. 2, 3, 4

*Ibanez v. Pfeiffer*,
  76 Misc.2d 363 (N.Y. Civ. Ct. 1973) ......................................................................................... 3

*Jacobowitz v. Jacobowitz*,
  No. 16605/04, 2004 WL 2532297 (N.Y. Sup. Ct. Oct. 25, 2004) ............................................ 10

*Leser v. U.S. Bank Nat'l Ass'n*,
  No. CV 2009–2362, 2013 WL 867153 (E.D.N.Y. 2013) .......................................................... 4

*Loew v. Kolb*,
  No. 03Civ.5064, 2003 WL 22077454 (S.D.N.Y. Sept. 8, 2003) ............................................... 2

*Morgenthau v. A.J. Travis Ltd.*,
  184 Misc.2d 835 (N.Y. Sup. Ct. 2000) ..................................................................................... 11

*Nobu Next Door, LLC v. Fine Arts Housing, Inc.*,
  4 N.Y.3d 839 (2005) ................................................................................................................... 5

*Prudential Secs. Credit Corp. v. Teevee Toons, Inc.*,
  Index No. 603112/02, 2003 WL 346440 (N.Y. Sup. Ct. Feb. 7, 2003) .............................. 11, 12

*Pudalov v. Pudalov*,
  6 Misc.3d 558 (N.Y. Sup. Ct. 2004) ......................................................................................... 11

*Sequa Cap. Corp. v. Nave*,
  921 F. Supp. 1072 (S.D.N.Y. 1996) ....................................................................................... 2, 5

*Weston Cap. Advisors, Inc. v. PT Bank Mutiara, TBK*,
  No. 13 CIV. 6945 (PAC), 2017 WL 571511 (S.D.N.Y. Feb. 13, 2017) .................................... 4

## PRELIMINARY STATEMENT[1]

PAX has prevailed on the merits of its breach-of-contract claim against Miles Kwok, and the only issue left for the Court to decide on that claim is the quantum of damages. There is no question that PAX imminently will have a very large judgment against Kwok. And this Court has discretion to enforce that judgment before it is entered under CPLR 5229, which was intended to address situations just like this one— where there is a time interval between the Court's finding of liability and its determination of damages. Indeed, the *only* requirement PAX must satisfy under CPLR 5229 is that a decision has been rendered in its favor. PAX already has met that requirement.

But here, relief under CPLR 5229 is all the more appropriate because, as PAX has previously detailed for the Court and as summarized below, Kwok has a long history of shielding assets and abusing the litigation process. This evidence demonstrates a real risk that Kwok will not comply with the judgment here. Thus, to protect PAX's opportunity to collect on the imminent damages award, there is a strong need to preserve the status quo by restraining Kwok from disposing of and/or secreting his assets in the period before a final judgment is entered. Accordingly, PAX respectfully requests that the Court (i) schedule a hearing on PAX's application under CPLR 5229 for the earliest possible date, and (ii) in the interim, issue a TRO under CPLR 6301 *et seq.* temporarily enjoining Kwok from dissipating his assets.

---

[1] Unless otherwise noted, all emphasis is added and all citations and quotations are omitted and all defined terms have the same meaning as in Plaintiff's Memorandum of Law in Support of its Motion for Partial Summary Judgment (Dkt. No. 409). The Affirmation of Edward Moss in Support of Plaintiff's CPLR 5229 Motion and Request for TRO by Order to Show Cause is referred to herein as the "Moss Aff." The Affirmation of Jon Lewis in Support of Plaintiff's CPLR 5229 Motion and Request for TRO by Order to Show Cause is referred to herein as the "Lewis Aff."

# ARGUMENT

## I. The Court Should Grant PAX's Application Under CPLR 5229.

CPLR 5229 provides unambiguously that the Court has discretion to enforce a judgment before it is entered upon the motion of a prevailing party:

> In any court, before a judgment is entered, upon motion of the party in whose favor a verdict or decision has been rendered, the trial judge may order examination of the adverse party and order him restrained with the same effect as if a restraining notice had been served upon him after judgment.

New York law is clear that a favorable merits decision is ***the sole prerequisite*** to obtaining relief under CPLR 5229. *Gallegos v. Elite Model Mgmt. Corp.*, 1 Misc.3d 200, 202 (N.Y. Sup. Ct. 2003), *aff'd*, 807 N.Y.S.2d 44 (1st Dep't. 2005) ("The only statutory requirement is that the application for CPLR 5229 relief be made by the prevailing party."); *Loew v. Kolb*, No. 03Civ.5064, 2003 WL 22077454, at *2 (S.D.N.Y. Sept. 8, 2003) ("Other than having received a favorable verdict or decision, there are no prerequisites to obtaining the relief provided in CPLR 5229."); *Sequa Cap. Corp. v. Nave*, 921 F. Supp. 1072, 1076 (S.D.N.Y. 1996) (same); *see also Coley v. Vannguard Urban Improvement Ass'n, Inc.*, 12-CV-5565 (PKC) (RER), 2016 WL 7217641, at *6 (E.D.N.Y. Dec. 13, 2016) (granting relief under CPLR 5229 based on default judgment before a final damages award was entered and explaining that "the moving party need not make a particular showing of the danger of dissipation of assets"). It is also well-settled that the trial court has discretion both to determine whether to grant relief under CPLR 5229 and the scope of that relief. *Sequa Cap. Corp.*, 921 F. Supp. at 1076.

CPLR 5229 is designed to address the exact situation presented here—when there is a time interval between the issuance of a summary judgment decision on liability and a damages award. *See, e.g., id.* (restraining defendant from transferring any property in which he has an interest, ***following entry of summary judgment, but before a determination on damages***); *see*

2

*also* CPLR 5229; Siegel, Practice Commentaries, C5229:1 ("Perhaps the scene of CPLR 5229's ***highest utility is where there is some hiatus between the verdict or decision and the judgment*** . . . for example, [where] the decision was one ***granting summary judgment*** for the plaintiff [] against the defendant [] ***on liability***, but with the ***damages issues then referred to a magistrate***. The CPLR 5229 restraint was granted pending the damages determination.").

To prevail on its motion under CPLR 5229, therefore, PAX is not actually required to demonstrate that Kwok intends to dissipate his assets or otherwise try to make himself judgment-proof. *See, e.g.*, *Gallegos*, 1 Misc.3d at 207 ("Neither the[] cases, the commentaries, nor the statute itself requires the prevailing party to submit evidence that assets are definitively being disposed of or diverted as a prerequisite to obtaining injunctive relief. Such evidence often may only surface on examination of the adverse party, ordered pursuant to CPLR 5229. A requirement of a showing that the adverse party has already disposed of assets runs counter to the purpose of CPLR 5229, which is a preventative measure designed to frustrate the adverse party from disposing of assets before such disposition takes place."). Nevertheless, as explained in its prior applications and as detailed in the next section, PAX has ample evidence that Kwok intends to do precisely that.

Thus, an order (i) restraining Kwok from disposing of any assets in the United States, and (ii) giving PAX discovery into those assets, is particularly necessary and appropriate at this time. *See* Weinstein, Korn, & Miller, New York Civil Practice, ¶ 5229.02; *Ibanez v. Pfeiffer*, 76 Misc.2d 363, 365 (N.Y. Civ. Ct. 1973) (ordering defendant to appear before the court at a set time for examination and restraining disposition of any of defendant's property prior to judgment pursuant to CPLR 5229); *Demirovic v. Ortega*, 296 F. Supp. 3d 477, 481 (E.D.N.Y. 2017); *Weston Cap. Advisors, Inc. v. PT Bank Mutiara, TBK*, No. 13 CIV. 6945 (PAC), 2017 WL

3

571511, at *4 (S.D.N.Y. Feb. 13, 2017), *aff'd*, 738 F. App'x 19 (2d Cir. 2018) (enjoining "the transfer, encumbrance of, or alteration in the rights of the Contemnor Assets" under 5229 because under New York law, "the Court may order the Contemnors to deliver those [ownership] certificates to this district, even if they are located outside New York"); *Leser v. U.S. Bank Nat'l Ass'n*, No. CV 2009–2362, 2013 WL 867153, *2 (E.D.N.Y. 2013) (finding that the prevailing party was entitled to relevant documents and deposition pursuant to CPLR 5229).

II. **The Court Should Preserve the Status Quo by Temporarily Enjoining Kwok from Dissipating His Assets Until the Hearing on PAX's 5229 Application.**

PAX's application under CPLR 5229 is, essentially, a request for preliminary relief—to allow PAX to begin to take discovery into Kwok's U.S. assets and to enjoin him from dissipating those assets during the short interval until a judgment is entered, when PAX will be afforded that relief permanently. Although PAX need not establish the typical preliminary-injunction requirements in order to prevail on its application under CPLR 5229, as discussed below, it can readily establish those elements because, among other things, there is strong evidence that Kwok will attempt to dissipate his assets or otherwise try to avoid the judgment in this case, which PAX anticipates will be nine figures (the debt continues to accrue 15% interest per annum and is currently approximately $114 million, exclusive of enforcement costs).[2] As a result, PAX respectfully requests that the Court at this juncture grant PAX, under CPLR 6301 *et seq.*, just a portion of the relief it seeks on its 5229 application—and enjoin Kwok from dissipating his assets—so as to preserve the status quo and PAX's ability to collect on the forthcoming judgment in this case.

---

[2] *See* Lewis Aff. at ¶ 5.

4

FILED: NEW YORK COUNTY CLERK 09/25/2020 05:43 PM
NYSCEF DOC. NO. 576
20-12411-jlg    Doc 14-51    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 51
Pg 9 of 18
INDEX NO. 652077/2017
RECEIVED NYSCEF: 09/25/2020

New York courts routinely grant such applications. *See, e.g.*, *Gallegos*, 1 Misc.3d at 207 (temporarily restraining defendants from transferring or selling any of their property before granting CPLR 5229 relief for prevailing plaintiff defendant's conduct included misleading statements and evasions); *Sequa Cap. Corp.*, 921 F. Supp. at 1074 (S.D.N.Y. 1996) (temporarily restraining defendant's assets on the day plaintiff moved for CPLR 5229 relief before later granting relief under CPLR 5229). And as discussed below, PAX can satisfy all three elements of a claim for preliminary relief under CPLR 6301 *et seq*. See *Nobu Next Door, LLC v. Fine Arts Housing, Inc.*, 4 N.Y.3d 839, 840 (2005) ("The party seeking a preliminary injunction must demonstrate a probability of success on the merits, danger of irreparable injury in the absence of an injunction and a balance of equities in its favor.").

### A. PAX Will Suffer Irreparable Harm if Kwok is Not Restrained From Dissipating His Assets.

There is overwhelming evidence that Kwok will take steps to dissipate his assets or otherwise frustrate the judgment in this case, rendering it unenforceable and PAX's injury irreparable.

*First*, the record contains ample grounds to doubt that Kwok will voluntarily pay the judgment. To begin, Kwok has not repaid a penny of the nearly decade-old debt, and as the Court recognized in its summary judgment order, Kwok did not even "argue that either he or Shiny Times made any payments under the 2011 Loan Facility or the 2011 Personal Guarantee to satisfy the debt."[3] The chronology demonstrates that Kwok's failure to pay was deliberate.

After Kwok failed to repay by the original repayment deadline, the parties attempted to settle the outstanding debt through a series of deeds of settlements, including a 2013 Deed of

---

[3] Dkt. No. 549 ("Order") at 7.

FILED: NEW YORK COUNTY CLERK 09/25/2020 05:43 PM
NYSCEF DOC. NO. 576

INDEX NO. 652077/2017
RECEIVED NYSCEF: 09/25/2020

20-12411-jlg    Doc 14-51    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 51
Pg 10 of 18

Settlement, which provided for Kwok to settle the debt by transferring to PAX three apartments in the Beijing Pangu Plaza.[4] But Kwok negotiated the final extension to satisfy the conditions precedent to that settlement in February 2015—when it was clear that he could *never* satisfy those conditions because the Chinese government already had seized the three apartments.[5]

By early 2015, Kwok owed PAX approximately $77 million, but rather than repaying his debt, he used most of that amount (over $65 million) to purchase a luxury Residence at the Sherry-Netherland Hotel and shield it through a double LLC structure.[6] The Sherry-Netherland Executive Vice President and Chief Operating Officer Michael Ullman testified that this structure was "unique" and unprecedented—one that he had "never seen before and [had] never seen since."[7]

To support his application to purchase the Residence, Kwok submitted false financial records to the Sherry-Netherland Board for a company called Beijing Zenith Holdings Company Limited ("Beijing Zenith"), which he then represented he owned and controlled.[8] But when asked about Beijing Zenith at his deposition, Kwok testified that he did not "have any ownership interest in Beijing Zenith" when he submitted those financials, and that he had no idea why his attorneys submitted them to the Sherry-Netherland.[9] When shown Kwok's testimony on this

---

[4] *Id.* at 2.

[5] Lewis Aff. at ¶ 5.

[6] *See* Moss Aff. at ¶ 6. Despite applying to purchase the Residence and residing there, in an effort to avoid attachment, Kwok has denied even owning the Residence. At his October 3, 2018 deposition, he testified that the Residence actually was owned by a mysterious Chinese prisoner named Zhang Wei. *See id.* at ¶ 8.

[7] *Id.*

[8] *See id.* at ¶ 6.

[9] *Id.*

matter, Sherry-Netherland CEO Michael Horvitz testified that he believed the Sherry-Netherland had been "defrauded."[10]

After purchasing the residence, Kwok took further steps to shield it. Indeed, in June 2016, after PAX had sent him a demand letter, Kwok's representatives asked the Sherry-Netherland for permission to "undertake some restructuring in relation to the property so that the ultimate beneficial ownership will pass to his son," by transferring ownership of Genever New York to "a trust of which the son is a beneficiary."[11]

Kwok's conduct throughout this litigation has provided even more evidence that he will not repay, even in the face of a judgment. After PAX filed this lawsuit, Kwok tweeted "I neither have to nor should I repay this amount of boring money irrelevant to me for them."[12] Kwok was then asked point-blank at his deposition whether he would pay a judgment if one were entered against him in this litigation, and after his lawyers instructed him not to answer, he refused to answer the question.[13] The answer appears to be "no" based on Kwok's abuse of the litigation process. He has made countless misrepresentations to this Court, culminating in his deposition testimony that he never signed the 2011 Personal Guarantee or related contracts.[14] But contrary to that false deposition testimony, Kwok previously repeatedly had affirmed those contracts to the Court as authentic—and even ***filed his own copies*** with the Court.[15]

---

[10] *Id.*

[11] *Id.* at ¶ 8

[12] Lewis Aff. at ¶ 5.

[13] *Id.*

[14] *See* Moss Aff. at ¶ 8.

[15] *See* Order at 2–3; *see also* Dkt. Nos. 11, 16–17.

Kwok also attempted to avoid attachment of the Residence based on false testimony and representations that the Residence had been pledged to a third-party. For example, Kwok's employee Yvette Wang submitted an affidavit in which she swore to this Court that "the assets of Genever BVI, which by virtue of its ownership of Genever [New York] include the [Residence], were pledged to Roscalitar 2."[16] At her deposition, however, she admitted that *she in fact knew absolutely nothing about pledges*, had "no idea" if the Residence or the Genever entities had been pledged, and had never spoken to Kwok about any pledges.[17] To make matters worse, when confronted by the Sherry-Netherland about the unequivocal statement in Ms. Wang's affidavit that the Residence had been pledged to Roscalitar 2, Kwok's lawyers argued that the affidavit "*made no such representation*" that the Residence had been pledged.[18]

Kwok ultimately avoided attachment based at least in part on false testimony about the Residence. At the April 26, 2019 hearing on PAX's attachment motion, Ms. Wang testified that the Residence was not for sale.[19] Although she testified that it had been taken off the market "[a]bout one month" prior to the hearing, the only evidence PAX has seen thus far suggests that the Residence was actually taken off the market *the very day of the hearing*.[20] On February 13, 2020, the Residence was once again listed for sale for $63,500,000; less than one month later, Kwok dropped the price to $55,000,000.[21] As of September 21, 2020, the Residence remains on the market.[22]

---

[16] Moss Aff. at ¶ 8.

[17] *Id.*

[18] *Id.*

[19] *See id.*

[20] *Id.*

[21] *See id.*

[22] *See id.*

8

*Second*, there is strong evidence that, even if Kwok were willing to pay the judgment, he lacks the financial ability to do so. Although Kwok claims publicly to be a billionaire, recent evidence, including his own under-oath testimony, shows that claim may be exaggerated (or at least that his financial position has changed). As an initial matter, it has been widely reported that Kwok's assets across the world have been frozen.[23] And in January 23, 2019, Kwok testified under oath at a deposition in a case in the Eastern District of Virginia that his net worth was **"negative,"** that he **didn't "have any more money,"** that he **does not "[i]n reality, under the law" "own any assets in the United States,"** that he has **no "income from any sources,"** and that he has **"not a penny left."**[24]

Moreover, the Sherry-Netherland Hotel, Inc. recently sued Defendant Genever Holdings LLC seeking to evict Kwok from the Residence for failure to pay hundreds of thousands of dollars in maintenance fees (which he had not paid since January 2020). And just about a month ago, Kwok was sanctioned by the Eighth Judicial District Court in Clark County, Nevada, for avoiding the opposing party's attempts to take discovery on a $196,940.39 judgment he had obtained against Kwok.[25] It is also worth noting that the *Wall Street Journal* reported on August 19, 2020, that the FBI and SEC were investigating whether a media company linked to Kwok had violated the securities laws in connection with a $300 million private offering (and that the New York Attorney General's Office also was investigating the matter) and that Kwok had confirmed the probe in an online video.[26] The *Journal* article also reported that the company's

---

[23] *See* Lewis Aff. at ¶ 6.

[24] *See* Moss Aff. at ¶ 7; *see also* Lewis Aff. at ¶ 6.

[25] *See* Moss Aff. at ¶ 7.

[26] *See* Lewis Aff. at ¶ 6.

investors were pushing for refunds and lodging complaints and that several banks (JPMorgan, Wells Fargo, and Bank of America) had either frozen or closed accounts tied to the company.[27]

The evidence also suggests that Kwok has taken steps to shield other of his assets. For example, he appears to be recorded in a YouTube audio recording instructing his associates to quickly and quietly sell his boat and plane.[28] Kwok originally disputed the audio's authenticity, and so PAX's counsel played the recording during his deposition to ask whether the voice was in fact his. Following his counsel's instructions, Kwok refused to answer whether it was his voice (the Court may recall from the video at the attachment hearing that Kwok stuck his fingers in his ears).[29] Since April 2020, Kwok has listed his yacht, the Lady May, for sale with an asking price of $27,900,000.[30]

In light of this evidence, it is necessary to restrain any assets in which Kwok has any interest to ensure that the judgment to be entered in PAX's favor can be satisfied. In the event this Court does not restrain Kwok from dissipating his assets in advance of the imminent judgment, PAX may well be unable to recover on its nearly decade-long quest and, thus, will suffer irreparable harm. *See, e.g.*, *Ayro Comm'ns, Inc. v. Jaymer Comm'ns Corp.*, No. 38836/04, 2005 WL 351070, at *4 (N.Y. Sup. Ct. Feb. 9, 2005) ("Generally, [] a preliminary injunction is granted where injunctive relief will prevent the potential dissolution of an existing valuable asset or some comparable potential irreparable harm."); *Jacobowitz v. Jacobowitz*, No. 16605/04, 2004 WL 2532297, at *5 (N.Y. Sup. Ct. Oct. 25, 2004) (explaining that "the purpose []of a preliminary injunction[]" is to "preserve the status quo" and prevent dissipation of property that

---

[27] *See id.*

[28] *See* Moss Aff. at ¶ 8.

[29] *See id.*

[30] *See id.*

FILED: NEW YORK COUNTY CLERK 09/25/2020 05:43 PM
NYSCEF DOC. NO. 576
INDEX NO. 652077/2017
RECEIVED NYSCEF: 09/25/2020

20-12411-jlg    Doc 14-51    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 51
Pg 15 of 18

could render a "judgment ineffectual"); *Prudential Secs. Credit Corp. v. Teevee Toons, Inc.*, Index No. 603112/02, 2003 WL 346440, at *3 (N.Y. Sup. Ct. Feb. 7, 2003) ("[W]ithout an injunction against dissipation or transfer of the assets, plaintiff's rights therein are at risk of irreparable harm and any future judgment in its favor might be rendered futile.").[31]

      **B.**      **PAX Is Likely to Succeed on the Merits of Its CPLR 5229 Application.**

PAX easily satisfies the preliminary-relief requirement of likelihood of success on the merits. As discussed above, (i) the Court has discretion to grant relief under CPLR 5229, (ii) the only requirement to prevail is a decision on the merits, and (iii) CPLR 5229 was designed for cases just like this one, where there is a time interval between when the Court grants summary judgment for the plaintiff on liability and it issues its judgment on damages.

      **C.**      **The Balance of Hardships Favors PAX.**

Kwok has avoided paying his debt for nearly a decade, and—after chasing Kwok across the globe—PAX finally has a judicial order holding Kwok liable for his breach of contract. Kwok can no longer dispute that he owes a debt—and a significant one—to PAX. Kwok will be enjoined from dissipating assets as soon as a judgment is entered. There is no legitimate harm to him in beginning that process now, when judgment will likely be entered within weeks. On the other hand, PAX will suffer greatly if, after finally locating Kwok and litigating for more than three years, the judgment it obtains is uncollectible because Kwok took steps to shield his assets after receiving an adverse decision on liability. Indeed, as noted *supra* at note 31, Kwok's

---

[31] Yesterday afternoon, PAX counsel Edward Moss telephoned Kwok counsel Jillian Searles to inquire whether this emergency motion could be obviated by Kwok's agreement not to dissipate any of his assets in the period before the damages award issued. As anticipated, Ms. Searles responded that Kwok would not agree to such an arrangement, further highlighting PAX's need for the relief requested herein. *See* Moss Aff. at ¶ 10.

FILED: NEW YORK COUNTY CLERK 09/25/2020 05:43 PM
NYSCEF DOC. NO. 576
INDEX NO. 652077/2017
RECEIVED NYSCEF: 09/25/2020

20-12411-jlg    Doc 14-51    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 51
Pg 16 of 18

counsel stated that Kwok would not voluntarily commit to preserving his assets during this interim period.

Thus, the balance of hardships heavily favors PAX. *See, e.g., Morgenthau v. A.J. Travis Ltd.*, 184 Misc.2d 835, 844 (N.Y. Sup. Ct. 2000) (granting preliminary injunction upon a finding that "[w]hatever hardship the defendants may have as a result of this [frozen funds] arrangement is far outweighed by the possibility that the assets in question may become unavailable in the absence of the requested relief"); *see also Pudalov v. Pudalov*, 6 Misc.3d 558, 562 (N.Y. Sup. Ct. 2004) (holding that "the equitable scales . . . tip in favor of the movant" where the notion that the nonmovant would pay a judgment absent a preliminary injunction was "speculative and a bit naïve" considering the animosity between the parties, and where the nonmovant's "extensive resources and/or the ability to access them" meant that it would "suffer no great hardship by a limited preliminary injunction"); *Prudential*, 2003 WL 346440, at *3 (granting TRO and explaining that "[t]he equities tip decidedly in plaintiff's favor [and] [p]reservation of the assets . . . presents no undue hardship for the defendants, while it is ***essential*** to plaintiff's rights").

## CONCLUSION

For the reasons stated above, PAX respectfully requests that this Court issue an order, under CPLR 5229, (i) enjoining and restraining Defendant Kwok, with the same effect as if a restraining order had been served upon him after judgment, from making or causing any sale, assignment, transfer, or interference with any property in which he has an interest, or from paying over or otherwise disposing of any debt now due or thereafter coming due to him subject to the exceptions set forth in CPLR 5222; (ii) permitting PAX to issue restraining notices permitted by CPLR 5222 with respect to Defendant Kwok; (iii) permitting PAX to conduct the disclosure permitted by CPLR 5229, including disclosure as set forth in CPLR 5223 and 5224;

FILED: NEW YORK COUNTY CLERK 09/25/2020 05:43 PM
NYSCEF DOC. NO. 576

INDEX NO. 652077/2017
RECEIVED NYSCEF: 09/25/2020

20-12411-jlg    Doc 14-51    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 51
Pg 17 of 18

and (iv) granting PAX such other, further, and different relief as this Court deems just and proper.

PAX also respectfully requests that, in the event the Court sets a briefing schedule and a hearing on PAX's request under CPLR 5229, the Court preserve the status quo by issuing an order, under CPLR 6301 *et seq.*, temporarily restraining Kwok, until that hearing, from making or causing any sale, assignment, transfer, or interference with any property in which he has an interest, or from paying over or otherwise disposing of any debt now due or thereafter coming due to him subject to the exceptions set forth in CPLR 5222.

DATED: September 25, 2020
          New York, New York

Respectfully submitted,

O'MELVENY & MYERS LLP
By: */s/ Edward Moss*
Stuart Sarnoff (ssarnoff@omm.com)
Edward Moss (emoss@omm.com)
7 Times Square
New York, NY 10036
(212) 326-2000

-and-

Robert W. Seiden
(rseiden@seidenlegal.com)
1120 Avenue of the Americas
New York, NY 10036
(212) 626-6708

*Attorneys for Plaintiff Pacific Alliance
Asia Opportunity Fund L.P.*

FILED: NEW YORK COUNTY CLERK 09/25/2020 05:43 PM
NYSCEF DOC. NO. 576

INDEX NO. 652077/2017
RECEIVED NYSCEF: 09/25/2020

20-12411-jlg    Doc 14-51    Filed 12/16/20    Entered 12/16/20 15:47:19    Exhibit 51
Pg 18 of 18

## CERTIFICATION OF WORD COUNT

PAX hereby certifies that this document complies with the word count provisions of Commercial Division Rule 17. This memorandum of law was prepared using Microsoft Word, and the total number of words in this memorandum of law, exclusive of the caption, title, and signature block, is less than 7,000 words.

DATED: September 25, 2020
       New York, New York

Respectfully submitted,

O'MELVENY & MYERS LLP
By: */s/ Edward Moss*
Edward Moss (emoss@omm.com)
7 Times Square
New York, NY 10036
(212) 326-2000

*Attorneys for Plaintiff Pacific Alliance Asia Opportunity Fund L.P.*