# EXHIBIT A

Apt. No.: *1801*

Shares: *2,950*

# THE SHERRY-NETHERLAND, INC.

*Lessor,*

TO

*GENEVER HOLDINGS LLC*

*Lessee.*

## Proprietary Lease

This Proprietary lease was adopted by shareholders at the Annual Meeting of Shareholders held on June 11, 1992, supercedes all prior proprietary leases and becomes effective on October 1, 1996, as amended by vote of shareholders on November 29, 2012.

SN 0379

## INDEX

Page

ARTICLE I - CASH REQUIREMENTS, RENT, POWER OF BOARD OF DIRECTORS
1.1  Cash Requirements............................................................................................. 2
1.2  Rent..................................................................................................................... 2
1.3  Power of Board of Directors.............................................................................. 3

ARTICLE II  -  OBLIGATIONS OF THE LESSOR AND LIMITATIONS THEREON
2.1  Lessor's Repairs................................................................................................. 4
2.2  Maintenance and Hotel Service......................................................................... 4
2.3  Damage to the Building...................................................................................... 5
2.4  Books of Account .............................................................................................. 5
2.5  Terraces............................................................................................................... 6
2.6  Accompanying Shares to be Specified in Proprietary Leases............................ 7
2.7  Changes in Terms and Conditions of Proprietary Leases.................................. 7
2.8  Quiet Enjoyment................................................................................................ 8

ARTICLE III - OBLIGATION OF THE LESSEE
3.1  Payment of Rent................................................................................................. 8
3.2  Electric Service.................................................................................................. 8
3.3  Certain Consequences of Default...................................................................... 9
3.4  Receipt of Rent from Subtenant on Default in Payment of Rent...................... 10
3.5  Failure to Fix Cash Requirements..................................................................... 10
3.6  House Rules........................................................................................................ 10
3.7  Use and Occupancy of Premises........................................................................ 10
3.8  Fire Insurance Rates and Requirements of Law................................................ 12
3.9  Subletting............................................................................................................ 12
3.10  Assignment....................................................................................................... 13
3.11  Release of Lessee upon Assignment................................................................ 13
3.12  No Implied Consent......................................................................................... 14
3.13  Consequences of Unauthorized Assignment or Subletting.............................. 14
3.14  Pledge of Shares............................................................................................... 14
3.15  Lessee's Repairs............................................................................................... 14
3.16  Alterations........................................................................................................ 15
3.17  Removal of Fixtures Installed by Lessee.......................................................... 16
3.18  Surrender of Possession................................................................................... 16
3.19  Lease Subordinate to Mortgages...................................................................... 16
3.20  Mechanics' Liens.............................................................................................. 17
3.21  Entry for Examination and Repair.................................................................... 17
3.22  No Implied Wavier........................................................................................... 18
3.23  Reimbursement of Lessor's Expenses.............................................................. 18
3.24  Special Services................................................................................................ 18

SN 0380

Page

3.25 Lessor's Immunities................................................................................................ 18
3.26 Notice of Defects................................................................................................... 19
3.27 Lessor's Right to Perform at Lessee's Expense.................................................. 19
3.28 Lessee's Indemnity of Lessor.............................................................................. 20
3.29 Injunction.............................................................................................................. 20
3.30 Insurance............................................................................................................... 20
3.31 Cooperation........................................................................................................... 21

ARTICLE IV - TERMINATION BY CONDITIONAL LIMITATION
4.1 Conditional Limitation........................................................................................... 22
4.2 Waiver of Right of Redemption............................................................................. 24
4.3 Liability of Lessee upon Termination; Surrender of Possession......................... 24
4.4 Sale of Shares......................................................................................................... 24

ARTICLE V - CANCELLATION AT OPTION OF LESSEE
5.1 Lessee's Option to Cancel...................................................................................... 25
5.2 Removal of Fixtures, Surrender of Possession and Payments............................ 25
5.3 Additional Payments by Lessee; Replacements.................................................. 26
5.4 Effect of Subleases................................................................................................. 26
5.5 Permission to Show and Occupy Premises.......................................................... 26
5.6 Cancellation of Lease; Transfer of Shares........................................................... 26
5.7 Cancellation by Holders of Two-Thirds of Shares............................................. 27

ARTICLE VI - MISCELLANEOUS
6.1 Restrictions on Transfer......................................................................................... 27
6.2 Headings.................................................................................................................. 28
6.3 No Oral Changes..................................................................................................... 28
6.4 Application of Covenants....................................................................................... 28
6.5 More Than One Lessee........................................................................................... 28
6.6 Waiver of Trial by Jury.......................................................................................... 28
6.7 Notices..................................................................................................................... 28
6.8 Partial Invalidity..................................................................................................... 29

SN 0381

# PROPRIETARY LEASE

**INDENTURE OF LEASE**, made the 6TH day of March, 2015, by and between THE SHERRY-NETHERLAND, INC. (formerly known as "Fifth Avenue & 59th Corporation"), a corporation organized under the laws of the State of New York (hereinafter called the "Lessor") and GENEVER HOLDINGS LLC, (hereinafter called the "Lessee").

**WHEREAS**, the Lessor is the owner of the land and the building in the Borough of Manhattan, New York, N.Y., known as "The Sherry-Netherland" and by the street number 781 Fifth Avenue (hereinafter called the "Building"); and

**WHEREAS**, the Lessor is a cooperative housing corporation and has leased the apartments in the Building to the several owners of its capital shares by instruments known as proprietary leases; and

**WHEREAS**, the Lessee owns 2,950 shares of the Lessor which have been allocated to the room or suite herein designated as the apartment, and which are appurtenant to this lease;

**NOW, THERFORE**, in consideration of the premises and of the rents, covenants and agreements hereinafter provided and contained, the Lessor hereby leases to the Lessee, subject to the terms and conditions hereinafter expressed, and the Lessee hereby hires and takes from the Lessor, all of that certain apartment in the Building, known as Apartment 1801 (hereinafter called the "apartment").

**TO HAVE AND TO HOLD** the apartment, with the furniture, furnishings and equipment therein belonging to the Lessee and the appurtenances, unto the Lessee, and the executors, administrators, and authorized assigns of the Lessee, upon the terms and conditions herein set forth, from the 6th day of March, 2015, until the 30th day of September 2046 (unless the term shall sooner expire as hereinafter in this lease provided), at a rent for each year, or portion of a year, during said term equal to the proportionate share as hereinafter provided of the aggregate amount of the cash requirements of the Lessor, as hereinafter defined for such year or portion of a year, together with all additional rent, special maintenence charges and other sums due from the Lessee to the Lessor hereunder.

For the purpose of fixing and determining such cash requirements and rental, the rental year shall be deemed to be the calendar year, except that the first year of the term hereunder shall be deemed to begin on the date on which such term commences and to end on the 31st day of December next ensuing, and the last year of the term hereunder shall be deemed to begin on the 1st day of January, 2046 and to end on the 30th day of September, 2046.

## ARTICLE I

## CASH REQUIREMENTS, RENT, POWER OF BOARD OF DIRECTORS

**1.1 Cash Requirements**. The cash requirements above referred to for each year or portion thereof are hereby defined and shall be deemed to be such aggregate sum as the board of directors of the Lessor from time to time, by a resolution or resolutions adopted during such year or portion thereof or the proceeding year, shall determine in its judgment is to be paid by all the lessees under proprietary leases then in force (after deducting any expected rents or incomes to be received during such year or portion thereof other than rents under proprietary leases) on account of the estimated expenses and outlays of the Lessor to the close of such year, growing out of or connected with the ownership, maintenance and operation of the Building, which sum may include among other things taxes, assessments, water rates, insurance premiums, operating expenses, alterations, replacements and repairs, expenses and liabilities incurred by the Lessor under or by reason of this or other leases, interest on mortgage indebtedness, payments on account of principal secured by mortgages, the payment of any other liens or charges, the payment of any deficit remaining from a previous period, the creation of a reasonable reserve or surplus fund and expenses for other corporate purposes. The board of directors of the Lessor may, by resolution or resolutions duly adopted from time to time, up to the close of the year for which cash requirements have been so fixed and determined, increase or diminish (within the limits and on the conditions hereinabove provided) the amount previously fixed or determined for such year or portion thereof. The board of directors may include in the cash requirements for the year or portion thereof (of which a share to be fixed as aforesaid shall be payable by the Lessee as rent for such year) any liabilities or items of expense which accrued or became payable in a previous year, or which might have been included in the cash requirements of a previous year but were not included therein and also any sums which the board of directors may deem it necessary or prudent to provide as a reserve against liabilities or items of expense then accrued or thereafter to accrue although not payable in that year.

**1.2 Rent**. The rent payable by the Lessee in and for each year or portion thereof, of the term shall be a sum (within the limits and on the conditions hereinabove provided) bearing to the aggregate amount of such cash requirements for such year or portion thereof, as the case may be, determined as aforesaid, the same ratio as that which the number of shares of the Lessor, owned by the Lessee at the time of the execution hereof as stated in the recitals of this proprietary lease, bears to the aggregate of the shares similarly specified in all the proprietary leases in effect at the time of the fixing and determination of such cash requirements, and such rent shall be payable in equal monthly installments in advance on the first day of each month, unless the board of directors of the Lessor shall otherwise direct. The board of directors of the Lessor may, at any time and from time to time, by resolution duly adopted, determine and direct what portion of said rent payable by the lessees under all such proprietary leases or other receipts for any year or years, but not more than such sums as are used or to be used to meet a cash requirement of the Lessor for payments on account of

- 2 -

SN 0383

principal of any mortgage on the property of the Lessor or other capital expenditures, shall be credited upon the corporate books of the Lessor as paid-in surplus.

The Lessee shall also pay the Lessee's pro-rata share (determined in the same manner as rent) of any special maintenance charge that may be levied by Lessor from time to time to pay for any repair, alteration, or improvement to the corporate property, or any deficit from operations for a prior period, or other cash requirements. Such special maintenance charge shall be deemed additional rent and shall be payable in a lump sum or in periodic installments, with or without interest, and upon such other terms and conditions as the board of directors of the Lessor shall determine.

The Lessee shall also pay such additional rent as may be provided for herein when due. The term "additional rent" shall include any and all sums due hereunder other than rent, whether or not such sums are denominated as "additional rent".

The rent hereunder shall begin to accrue on the date of the commencement of the term herein granted.

**1.3 Power of Board of Directors.** The board of directors of the Lessor shall have discretionary power to describe the manner of maintaining and operating the Building and to determine the cash requirements of the Lessor and any special maintenance charges to be paid as aforesaid by the lessees under proprietary leases. Every such determination by the board of directors shall be final and conclusive as to all lessees, and any expenditures made by the Lessor's officers, under the direction or with the approval of the Lessor's board of directors, shall, as against the lessees, be deemed necessarily and properly made for such purposes.

The power and authority to determine and establish the amount of and to require payment of the rent above provided for shall be possessed only by the board of directors of the Lessor elected by its shareholders and shall not pass to or be exercised by:

(a) Any creditor, receiver or trustee of the Lessor or any representative of any such creditor, receiver or trustee;

(b) Any board of directors elected by any such creditor receiver or trustee or by any representative of any such creditor, receiver or trustee.

- 3 -

SN 0384

## ARTICLE II

## OBLIGATIONS OF THE LESSOR AND LIMITATIONS THEREON

**2.1** Lessor's Repairs. The Lessor shall keep in good repair the Building's foundations, sidewalks, walls (except interior walls of apartments, floor and ceilings, unless repairs thereto are necessitated by the failure of Lessor to make repairs for which it is by this paragraph 2.1 responsible), supports, beams, roofs, gutters, fences, cellars, chimneys, restaurants, bars and all lobbies, public spaces, entrances, street and court doorways, main halls, main stairways, elevators, pumps, tanks and all main and principal pipes for carrying water, gas or steam through the Building and all main drain pipes and electrical conduits, together with all plumbing, heating and other apparatus intended for the general service of the Building, except those portions of any of the foregoing which it is the duty of the Lessee to maintain and keep in good repair as hereinafter provided in section 3.15 hereof (Lessee's Repairs), it being agreed that the Lessee shall give the Lessor prompt notice of any accident or defect known to the Lessee and requiring repairs to be made. Subject to the foregoing limitations, all repairs required to be made by the Lessor shall be at the expense of the Lessor, unless the same shall have been rendered necessary by the wrongful act or neglect or carelessness of the Lessee, or the Lessee's spouse, children, grandchildren, parents, grandparents, brothers or sisters, or the spouses of any of the foregoing (collectively hereinafter referred to as the Lessee's "family"), agents, servants, guests, employees or subtenants of the Lessee, in which case the Lessor shall be entitled to reimbursement from the Lessee for all expenses incurred in connection therewith, whether or not paid by the Lessor, and such reimbursements shall be due as additional rent on the first day of the calendar month following demand thereof by the Lessor on the Lessee.

**2.2** Maintenance and Hotel Service. Subject to the provisions of section 3.25 hereof (Lessor's Immunities), the Lessor shall maintain the Building as a luxury hotel and may engage a managing agent or management company to manage the building as such; shall keep the lobbies, public spaces, elevators and the public halls and stairways clean and properly lighted and heated; shall provide restaurant and bar facilities and room service of food and beverages (including alcoholic beverages); shall provide elevator service and the requisite number of attendants for the care and service of the Building; and shall provide the apartment with the usual high class hotel service, a sufficient supply of electricity (subject to section 3.2 hereof (Electric Service)), hot and cold water and of heat.

The covenants by the Lessor herein contained are subject, however, to the discretionary power of the board of directors of the Lessor to prescribe the manner of maintaining and operating the Building and to determine the cash requirements of the Lessor and any special maintenance charges, as hereinabove stated. Interruption or curtailment, for whatever reason, of any services or facilities to be furnished by the Lessor shall not constitute a constructive or partial eviction nor entitle the Lessee to any compensation or abatement of rent.

- 4 -

SN 0385

**2.3  Damage to the Building**.  In case the building shall be damaged by fire or other cause, the same shall be restored, repaired or replaced as speedily as is reasonably possible at the expense of the Lessor, so as to conform substantially to the condition of the Building immediately preceding such fire or other casualty.  Anything in this section or section 2.1 (Lessor's Repairs) to the contrary notwithstanding, unless such damage is caused by the Lessor, or the agents or employees of the Lessor, the Lessor's obligation to restore, repair and replace pursuant to this section shall not apply to any additions, improvements, equipment, fixtures, furniture, furnishings, decorations, fine art or objets d'art placed or installed in the apartment by the Lessee or any of the Lessee's predecessors in interest, it being within the determination of the Lessee to maintain insurance to cover these items, nor shall the Lessor be obligated to repaint or replace wallpaper or other decorations in the apartment or to refinish floors located therein.

In case the damage resulting from fire or other cause shall be so extensive as to render the apartment partly or wholly untenantable, or if the means of access thereto shall be destroyed, the rent hereunder shall proportionately abate until the apartment shall, in the Lessor's reasonable opinion, again be rendered wholly tenantable or the means of access restored; but if said damage shall be caused by the act or negligence of the Lessee or the agents, employees, guests or members of the family of the Lessee or any occupant of the apartment, such rent shall abate only to the extent of the rental value insurance, if any, collected by Lessor with respect to the apartment.

If the board of directors of the Lessor shall determine that (i) the Building is totally destroyed by fire or other cause, or (ii) the Building is so damaged that it cannot be repaired within a reasonable time after loss shall have been adjusted with the insurance carriers, or (iii) the destruction or damage was caused by hazards which are not covered under the Lessor's insurance policies then in effect, and if in any such case the record holders of at least two-thirds of the issued shares at a shareholders' meeting duly called for that purpose held within one (1) year after the determination by the board of directors, shall vote not to repair, restore or rebuild, then upon the giving of notice pursuant to section 4.1 hereof (Conditional Limitation), this Lease and all other proprietary leases and all right, title and interest of the parties thereunder and the tenancies thereby created, shall thereupon wholly cease and expire and rent shall be paid to the date of such destruction or damage.  The Lessee hereby waives any and all rights under Section 227 of the Real Property Law and in no event shall the Lessee have any option or right to terminate this Lease, except as provided herein.

**2.4  Books of Account**.  The Lessor shall keep full and correct books of account and the same shall be open upon prior appointment during all reasonable hours to inspection by the Lessee or a representative of the Lessee.

- 5 -

SN 0386

**2.5  Terraces.**  A Lessee of an apartment having a direct access to a terrace or a portion of the roof adjoining an apartment (the "Terrace") shall have and enjoy the exclusive use of the portion of such Terrace which immediately adjoins the apartment, subject to: (i) the provisions of this paragraph, (ii) all other applicable provisions of the lease, (iii) the use of such Terrace by the Lessor to enable it to fulfill its obligations under this or any other proprietary lease entered into by the Lessor, including, but not limited to, its obligations to maintain and repair, (iv) such rules and regulations as the board of directors may, from time to time, enact and (v) the rules and regulations of the Board of Fire Underwriters and of all governmental authorities having jurisdiction over the Building.  The Lessee shall not, in the use of such Terrace, endanger the safety of any person or the property of the Lessor or that of any such person or use the Terrace so as to interfere with or annoy the lessee or occupant of any apartment underneath the same.

It shall be the Lessee's duty, at the Lessee's own cost and expense, to keep the Terrace clean and free from debris and to maintain all screens and drain boxes in good condition.  It shall be the Lessor's duty to keep the Terrace in good repair, subject to reasonable wear and tear and the provisions contained in this paragraph.  The Lessor shall not be obligated, however, to maintain or repair the tiles and brick work on the Terrace.

No structures of any kind, including but not limited to, plantings, planters, fences and lattices (the "Structures"), shall be placed, erected, installed or reinstalled following removal, for any reason whatsoever, on such Terrace without the prior written approval of the Lessor.  In the event of such placement, erection, installation or reinstallation without such approval, the Lessor shall have the right, at the Lessee's expense, to remove the Structures; further, should the Lessor, in its sole discretion, determine that repairs to such Terrace or to the apartment or to any other part of the Building, including, but not limited to any apartment in the Building, are required because of the existence of any Structures, whether or not said Structures have been approved by the Lessor, the Lessor may make such repairs, and the Lessee shall reimburse the Lessor for all of the costs of such repairs; such reimbursement shall be paid by the Lessee immediately on demand and such costs shall be deemed to be additional rent.

Any Structure erected, placed, installed or reinstalled by the Lessee or its predecessor in interest, whether or not in compliance with the provisions of this paragraph, may be removed, temporarily or permanently, in the sole discretion of the Lessor, by the Lessor, at the sole expense of the Lessee, for the purpose of insuring safety, complying with the applicable law, making repairs, or maintaining the Building.

No surfaces or walls of a Terrace shall be painted or otherwise covered by the Lessee without the prior written approval of the Lessor.

The Lessor shall have an unlimited right of access to such Terrance (i) to enforce compliance with the provisions of this paragraph, (ii) for any purpose set forth in this

- 6 -

SN 0387

paragraph and in this lease, and (iii) to otherwise enable it to comply with any applicable law or regulation.

The Lessor, for itself or other Lessees, shall have the right to erect, on the roof or on the outside wall of the Building, radio or television aerials and antennas or other equipment for its use and the use of the lessees in the Building and the Lessor shall have the right to access thereto for such installation and for the maintenance and repair thereof.

**2.6  Accompanying Shares to be Specified in Proprietary Leases.**  In every proprietary lease heretofore executed by the Lessor there has been specified, and in every proprietary lease hereafter executed by it there will be specified, the number of shares of the Lessor owned by the lessee therein named, which number, in relation to the aggregate of all numbers of shares similarly specified in all the proprietary leases at the time in force, shall constitute the basis for fixing, as hereinbefore provided, the proportionate share of the aggregate amount of the cash requirements of the Lessor, as hereinbefore defined, which shall be payable as rent by the Lessee.  In the event that, after the fixing of the amounts payable as rent by the lessees under proprietary leases for any period of time, one or more additional proprietary leases be made, thus increasing the aggregate number of shares specified in all proprietary leases, the rent to be paid under such additional lease or leases, unless and until otherwise fixed by the board of directors, shall be at the same rate per share for each share specified in such additional lease or is applicable to the shares specified in all other proprietary leases in effect at the time of the fixing and determination of such cash requirements; and the rent payable by lessees under such other proprietary leases, unless and until otherwise fixed by the board of directors, shall not be modified or affected by any ncrease in the aggregate number of shares specified in all proprietary leases.

**2.7  Changes in Terms and Condition of Proprietary Leases.**  Each proprietary lease shall be in the form of this Lease, except with respect to the number of shares of the Lessor owned by the Lessee, unless (i) a variation to a particular lease is authorized by lessees owing at least two-thirds (2/3) of the Lessor's shares then issued and outstanding accompanying proprietary leases then in force and such variation is agreed to in writing by the Lessor and the lessee affected or (ii) a change or amendment to the form of this lease (as distinct from house rules) shall be approved by lessees owning at least two-thirds (2/3) of the Lessor's shares then issued and outstanding accompanying proprietary leases then in force, and such changes shall be binding on all lessees even if they did not vote for such changes, except that the proportionate share of cash requirements payable by any lessee may not be increased nor may such lessee's right to cancel this lease under the conditions set forth in section 5.1 (Lessee's Right to Cancel) be eliminated or impaired without such lessee's express consent.  Approval by lessees as provided for herein shall be evidenced by written consent, or by affirmative vote, taken at a meeting called for such purpose.

- 7 -

**SN 0388**

**2.8 Quiet Enjoyment.** The Lessee, upon paying the rent and charges and performing the covenants and complying with the conditions on the part of the Lessee to be performed, as herein set forth, shall, at all times during the term hereby granted, quietly have, hold and enjoy the apartment without any suit, trouble or hindrance from the Lessor, subject however to the rights of present tenants or occupants of the apartment, and subject to any and all mortgages and underlying leases of the land and Building as provided in section 3.19 below (Lease Subordinate to Mortgages).

## ARTICLE III

## OBLIGATIONS OF THE LESSEE

**3.1 Payment of Rent.** The Lessee will pay to the Lessor the rent upon the terms, at the times and in the manner herein provided, without any abatement of, or deduction, counterclaim or set off against rent or additional rent, and if the Lessee shall fail to pay within thirty (30) days of its due date any installment of rent, additional rent or any other amount due hereunder, including but not limited to charges for special services pursuant to section 3.24 (Special Services), from the time when the same becomes due, the Lessee shall pay interest thereon at the rate of twenty percent (20%) per annum, or such other amount as may be approved from time to time by the board of directors of the Lessor, from the date when such installment shall have become due to the date of the payment thereof, and such interest shall be deemed additional rent hereunder and shall be due on the first day of the calendar month following the Lessor's demand or bill therefor. All rent and additional rent payable hereunder shall be payable in lawful money of the United States which shall be legal tender for payment of all debts and dues, public and private, at the time of payment.

**3.2 Electric Service.** If the Lessor, in its sole discretion, determines to convert the supply of electric current to the apartment to a submetered basis, the Lessor shall, at the Lessor's expense, furnish and install a submeter to measure the Lessee's consumption of electric current in the apartment. The Lessee agrees to provide access to the apartment to the Lessor, its agents and contractors for the installation, maintenance and repair of any such submeter, and all wiring associated therewith. From and after the installation of such submeter, the Lessee shall pay the Lessor for the amount of electric current as shall be indicated by the submeter furnished therefor by the Lessor. The rates payable by the Lessee for said current shall be the same as those charged by such public service corporation for consumption similar to that of the Lessee. Payments shall be due as and when bills shall be rendered and the Lessee shall comply with rules, regulations and contract provisions similar to those then prescribed by said public service corporation. Any amount as to which the Lessee shall at any time be in default for or in respect to the use of electric current, or for or in respect to any other service that shall at any time be furnished by the Lessor, shall be deemed to be additional rent that shall be due and payable by the Lessee to the Lessor on the

- 8 -

**SN 0389**

first day of the calendar month following the Lessor's demand therefor. The Lessor reserves the right to discontinue use of the submeters and provide electric current to the apartment without charge to the Lessee. The Lessor also reserves the right to discontinue furnishing electric current to the Lessee in the apartment at any time upon not less than ninety (90) days notice, provided that (i) Lessor shall discontinue furnishing electric current to all apartments in the building leased under proprietary leases and (ii) unless otherwise required by law, ordinance, order, regulation or requirement of any public authority having jurisdiction over the Building, the Lessor shall postpone such discontinuance for a sufficient amount of time so as to allow the Lessee to arrange to obtain electric current directly from the public utility company furnishing electric current to the Building, provided, however, that the Lessee shall, at the Lessee's expense, diligently arrange to obtain electric current from such public utility company upon receipt of the Lessor's notice that the Lessor intends to discontinue furnishing electric current to the apartment.

   **3.3  Certain Consequences of Default.**  In the event the Lessor resumes possession of the apartment, either by summary proceedings, action of ejectment or otherwise, because of a default by the Lessee in the payment of any rent, or additional rent, or any part of the same, or on the expiration of the term pursuant to a notice given as provided in section 4.1 (Conditional Limitation) of this lease upon the happening of any event specified in subsections (a) to (f), inclusive, of section 4.1, the Lessee shall continue to remain liable for payment of the rent or additional rent which would have become due hereunder and shall pay the same in installments from time to time as hereinbefore provided. No suit brought to recover any installment of such rent or additional rent shall prejudice the right of the Lessor to recover any subsequent installment. After resuming possession, the Lessor may, at its option, either (a) relet the apartment for the Lessor's own account or (b) from time to time relet the apartment as the agent of or for the account of the Lessee for a term or terms which may be less than or greater than the period which would otherwise have constituted the balance of the term of this lease, and may grant concessions or free rent in its discretion. The fact that the Lessor may have relet the apartment as agent for the Lessee shall not prevent the Lessor from thereafter notifying the Lessee that it proposes to relet the apartment for its own account and will no longer relet the apartment as agent for the Lessee. If the Lessor relets the apartment as the agent of, or for the account of, the Lessee, it shall, after reimbursing itself for its expenses in connection therewith, including leasing commissions and a reasonable amount for decorations, alterations and repairs in and to the apartment, apply the remaining avails of such reletting to the payment of any and all sums then due from the Lessee to the Lessor, or which would thereafter have become due from the Lessee under the provisions of this lease if the Lessor had not so resumed possession, accounting to the Lessee at the expiration of each of the several terms of such reletting for the surplus, if any. If, at any time or from time to time before the expiration of the term originally demised hereunder, there shall be a deficiency between the avails of such reletting and such sums as would have become due hereunder, the Lessee agrees to pay such deficiency for each month of the period which would otherwise have constituted the balance of the term of this lease. No demand need be made by the Lessor for the amounts of such

- 9 -

SN 0390

deficiency and suit may be brought therefor from time to time as the same shall arise. Any suit brought to collect the amount of such deficiency shall not in anyway prejudice the right of the Lessor to collect and sue for any deficiency in any subsequent month. The failure or refusal of the Lessor to relet the apartment or any part thereof shall not release or affect the Lessee's liability hereunder.

**3.4  Receipt of Rent from Subtenant on Default in Payment of Rent.**  If the Lessee shall at any time sublet the apartment and shall default for a period of one month in the payment of any rent or additional rent, the Lessor may, at its option, so long as such default shall continue, demand and receive from any subtenant of the Lessee occupying the apartment the rent due or becoming due from such subtenant to the Lessee, up to an amount sufficient to pay all sums due from the Lessee to the Lessor, and any such payment of such rent to the Lessor shall be sufficient payment and discharge of such subtenant, as between such subtenant and the Lessee, to the extent of the amount so paid; and any such demand or acceptance of rent from any subtenant, or from any assignee hereof, shall not be deemed a consent or approval of any subletting or assignment by the Lessee.

**3.5  Failure to Fix Cash Requirements.**  The omission by the board of directors of the Lessor to determine the Lessor's cash requirements for any year or portion thereof shall not be deemed a waiver or modification in any respect of the covenants and provisions hereof, or a release of the Lessee from the obligation to pay the rent or any installment thereof, but the rent last determined for any year or portion thereof shall thereafter continue to be the rent until cash requirements shall be redetermined.

**3.6  House Rules.**  The Lessor may from time to time establish such reasonable house rules as its board of directors may deem appropriate for the management and control of the Building, and may also from time to time alter, amend and repeal such rules, and this lease shall be in all respects subject to such rules, which, when a copy thereof has been furnished to the Lessee, shall be taken to be part hereof, and the Lessee shall obey all such rules and see that they are faithfully observed by the family, guests, employees and subtenants of the Lessee, it being understood that such rules shall apply to and be binding upon all of the tenants of the Building, whether sharcholders of the Lessor or not, but that the Lessor shall not be responsible to the Lessee for the non-observance or violation of such rules by any other lessee or person. Breach of a house rule by the Lessee, or failure by the Lessee or the Lessee's family to use reasonable efforts to ensure compliance with house rules by any other occupant of the apartment, shall be a default under this lease.

**3.7  Use and Occupancy of Premises.**  The Lessee shall not, except as provided in section 3.9 (Subletting), without the written consent of the Lessor on such conditions as Lessor may prescribe, occupy or use the apartment, or the furniture or furnishings therein, or permit the same or any part thereof to be occupied or used for any purpose other than as a private dwelling for the Lessee and Lessee's family and domestic employees. In addition to the foregoing, the apartment may be occupied from time to time

SN 0391

by guests of the Lessee for periods of time not exceeding thirty days, in the aggregate, dining any calendar year, unless a longer period is approved in writing by the Lessor, as long as such occupancy is not violative of applicable zoning laws, building code or other rules and regulations of governmental authorities having jurisdiction (collectively, "Occupancy Laws"). If any guest is to occupy the apartment during any period in which the permitted adult residents are not in occupancy, the Lessee shall notify the Lessor in writing prior to the arrival of such guest(s), the name(s) of such guest(s) and the period during which such guest(s) will be in occupancy. Guests permitted under this Section 3.7 may not be charged for the use of the apartment. If a violation of any Occupancy Law is alleged to exist, and the Lessor elects not to contest such violation, the Lessee, at the Lessee's sole cost and expense, after written notice to the Lessor, may contest, by appropriate proceedings prosecuted diligently and in good faith, such violation, and the Lessor shall cooperate with the Lessee in such contest, provided that (b) the Lessor shall not be subject to criminal penalty or to prosecution for a crime, nor shall the Building, the land on which it is situated, or any part thereof be subject to condemnation or being vacated by reason of non-compliance or otherwise by reason of such contest; (c) the Lessee indemnities the Lessor against the cost of any such contest or proceedings and against all liability for damages, interest, penalties, and expenses (including attorneys' fees and expenses), resulting from or incurred in connection with such contest or non-compliance; (d) such non-compliance or contest shall not constitute or result in any violation of any mortgage on the Building or the land on which it is situated, or if any such mortgage shall permit such non-compliance or contest on condition of the taking of action or furnishing of security by the Lessor, such action shall be taken and such security shall be furnished at the expense of the Lessee; and (e) the Lessee shall keep the Lessor advised as to the status of such proceedings. Consent of the Lessor to the use of the premises for other than the uses permitted in this section 3.7 may be granted on such conditions as of the Lessor, in its discretion, may deem appropriate, including the payment of additional rent.

    **3.8  Fire Insurance Rates and Requirements of Law.**  The Lessee shall not permit or suffer anything to be done or kept in the apartment which will increase the rate of fire insurance on the Building or the contents thereof, or which will interfere with the tights of other tenants, or annoy such tenants by unreasonable noises, odors or otherwise, or which will obstruct the public halls or stairways of the Building. The Lessee will comply with all the requirements of the Board of Health and all other governmental authorities and with all laws, ordinances, rules and regulations with respect to the apartment; and if, by reason of the occupancy or use of the apartment by the Lessee, the rate of fire insurance on the Building or its contents shall be increased, the Lessee shall become personally liable for the additional insurance premiums upon all policies covering the Building, and the Lessor shall have the right to collect the same, as additional rent hereunder on the first day of the calendar month following demand therefor by the Lessor.

    The Lessee will not clean, nor require, permit, suffer or allow any window in the apartment to be cleaned from the outside, in violation of Section 202 of the Labor Law

- 11 -

**SN 0392**

(or any successor statute) or of the rules of the Board of Standards and Appeals, or of any other board or body having or asserting jurisdiction; and the Lessee hereby agrees to indemnify the Lessor, its employees and other lessees, from and against any and all claims, losses, damages, fines, attorneys' fees and related costs suffered by them as a result of the Lessee's requiring, permitting, suffering or allowing any window in the Building to be leaned from the outside in violation of the requirements of the aforesaid laws, ordinances, regulations and rules.

**3.9 Subletting.**  The Lessee shall not sublet the whole or any part of the apartment for any term to any person or persons nor, except as provided in section 3.7 (Use and Occupancy), permit the same to be occupied or used by any persons other than members of the Lessee's family and domestic servants, unless consent thereto shall have been duly given by an instrument in writing which is to be signed (a) by a majority of the directors of the Lessor or (b) by an officer of the Lessor when duly authorized by a resolution of the Lessor's board of directors or by a resolution adopted at any annual or special meeting of shareholders, or unless the Lessee shall have entered into a rental agreement (a "rental agreement") with the Lessor for the renting of the apartment.  Any such rental agreement shall be upon such terms and conditions as the board of directors may, in its sole discretion, reasonably impose from time to time.  Whenever the Lessee applies to the Lessor for consent to a subletting, the Lessor may require as a condition thereto such conditions as the directors or shareholders, as the case may be, may impose consistent with Lessor's obligation to act reasonably as set forth in the next succeeding sentence, including the obligation for the Lessee to pay a sublet fee to the Lessor in an amount fixed from time to time by the board of directors in its sole discretion in a rental agreement and the obligation for the Lessee deliver to the Lessor a copy of the sublease to which consent is requested.  The Lessor shall not unreasonably withhold consent to a subletting provided, however, that consent shall not be granted until the Lessee cures all defaults hereunder and pays the sublet fee charged by the Lessor, together with a sum to be fixed by the board of directors of the Lessor to cover reasonable legal and other out-of-pocket expenses of the Lessor in connection with such subletting.

**3.10 Assignment.**  The Lessee shall not assign this lease, or any interest therein, and no such assignment shall take effect as against the Lessor for any purpose, unless and until all of the following requirements have been complied with and satisfied:

(a) An instrument of assignment executed by the assignor shall have been delivered to the Lessor;

(b) An agreement, in form approved by the Lessor, containing a covenant by the assignee assuming and agreeing to perform and comply with all the covenants and conditions of this lease to be performed or complied with by the Lessee on and after the effective date of said assignment must be executed and acknowledged by the assignee and delivered to the Lessor, but no such assumption agreement shall be required if the assignee

- 12 -

SN 0393

surrenders the assigned lease and enters into a new lease for the remainder of the term as hereinafter provided;

      (c) All shares of the Lessor accompanying this lease must be transferred to the assignee with the required transfer stamps affixed;

      (d) All sums due from the Lessee, together with a sum to be fixed by the board of directors of the Lessor to cover reasonable legal and other out-of-pocket expenses of the Lessor in connection with such assignment and transfer of shares, must be paid to the Lessor; and

      (e) A written consent to such assignment, either (1) signed by or authorized by a majority of the board of directors of the Lessor or (2) signed by or authorized by lessees owning of record at least two-thirds of the shares of the Lessor accompanying proprietary leases then in force, must be delivered to the Lessor. If the Lessee shall die, such consent shall not be unreasonably withheld to any assignment of this lease and the accompanying shares to a financially responsible member of the Lessee's family other than the Lessee's spouse, as to whom no consent is required. There shall be no limitation, except as above specifically provided, on the right of the directors or lessees to grant or withhold consent, for any reason or for no reason, to an assignment.

      (f) Effective for all assignments of this lease pursuant to a contract of sale submitted for the Lessor's consent after December 31, 2013 (regardless of the date of the closing), the assignee shall deliver to the Lessor an amount equal to two (2%) percent (the "Transfer Fee") of the gross proceeds of sale of the apartment and appurtenant shares of the Lessor. The Transfer Fee shall be paid on the date of closing, by certified or bank check payable to the order of the Lessor. Notwithstanding the foregoing, the Transfer Fee shall not be payable with respect to an assignment of this lease and the transfer of the appurtenant shares of the Lessor by the Lessee (i) to the spouse, children, or parents of the Lessee (or if the Lessee is an entity, to a shareholder, owner, member or in the case of a trust, beneficiary of such entity) such as by means of a gift, (ii) by the Lessee or the Lessee's executor, administrator or personal representative to an entity (including a trust or limited liability company) for the benefit of Lessee or the spouse, children or parents of the Lessee, in each case, without consideration, such as by means of a gift or (iii) by testamentary bequest, trust transfer or similar disposition or operation of law, without consideration, from a deceased Lessee or from an executor, administrator or other personal representative of a deceased Lessee.

      **3.11** <u>Release of Lessee upon Assignment.</u>  Whenever the Lessee shall, under the provisions of this lease, be permitted to assign and shall so assign the same, and the assignee shall assume all of the unfilled obligations of the assignor hereunder, either by an instrument in writing delivered to the Lessor or by surrendering the assigned lease and entering into a new lease for the remainder of the term, the assignor shall have no further liability on any of the covenants of this lease to be thereafter performed. At the option and

- 13 -

SN 0394

election of the Lessor, any assigned lease may be surrendered and cancelled, and a new lease for the remainder of the term of this lease, in the same form, shall in such case be entered into between the Lessor and the assignee.

**3.12  No Implied Consent.**  No demand or acceptance of rent from any subtenant or from any assignee hereof or other person in possession or occupancy shall constitute or be deemed to constitute a consent to or approval of any assignment, sublease or occupancy.

**3.13  Consequences of Unauthorized Assignment or Subletting.**  No executor, administrator, personal representative or successor of the Lessee, or trustee, or anyone to whom the interest of the Lessee hereunder shall pass by law, shall be entitled to assign this lease, or to sublet the apartment, or any part thereof, except upon compliance with the requirements of this lease.  The character of and restriction upon the occupancy of the apartment, and upon assignment of this lease, as hereinbefore expressed, restricted and limited are an especial consideration and inducement for the granting of this lease by the Lessor to the Lessee; and in the event of a violation by the Lessee of the provisions hereof, this lease may be terminated and shall expire at the option of the Lessor as hereinafter provided, and the Lessor may restrain and prevent the occupancy of the apartment by any one other than the Lessee or the family of the Lessee.

Nothing herein contained shall be construed as preventing or prohibiting the renting of the apartment on a transient basis, provided such renting is effected with the approval of, and through, the Lessor pursuant to a rental agreement.

**3.14  Pledge of Shares.**  The Lessee shall not pledge or assign this lease or the shares to which this lease is appurtenant (the "shares") as security for a loan, nor permit the creation of a security interest or lien in such shares or this lease.

**3.15  Lessee's Repairs.**  The Lessee has inspected the apartment and accepts the same in its present condition without any warranty or representation of any kind whatsoever on the part of the Lessor.  The Lessee shall keep the interior of the apartment in good repair, shall repair, maintain, replace and install all windows, window panes, window frames, sashes and sills in the apartment, shall do all the painting and decorating required for the apartment, including painting of the window frames, sashes and sills, and shall be solely responsible for the maintenance, repair and replacement of plumbing, gas and heating fixtures and equipment such as refrigerators, dishwashers, removable and through-the-wall heating and cooling units, washing machines, dryers, ranges and other appliances as may be in the apartment.  "Plumbing, gas and heating fixtures" as used herein shall include exposed gas, steam and water pipes attached to fixtures, appliances and equipment and the fixtures, appliances and equipment to which they are attached, and any special pipes or equipment which the Lessee may install within the wall or ceiling, or under the floor, but shall not include gas, steam, water or other pipes or conduits within the walls, ceilings or floors or

- 14 -

SN 0395

heating equipment which is part of the standard Building equipment. The Lessee shall be solely responsible for the maintenance, repair and replacement of all lighting and electrical fixtures, appliances and equipment in the apartment, and all meters, fuse boxes or circuit breakers and electrical wiring and conduits from the junction box of the riser into and through the Lessee's apartment. Any ventilator or any heating and cooling unit which shall be visible from the outside of the Building shall at all times be painted by the Lessee in the standard color which the Lessor may select for the Building and shall be maintained in accordance with the specifications of the Lessor. The Lessor shall not be held answerable for any damage in or to the foregoing, or for any damage to the apartment, or to any of its contents, caused by electric current or by the leakage or overflow of water, gas or steam from any water pipe, gas pipe, steam pipe, drain pipe, basin, tub or other receptacle belonging or appertaining to any other apartment in the Building, unless the damage shall have been caused by the act or neglect of the Lessor or of its employees.

**3.16 Alterations.** The Lessee shall not, without first obtaining the written consent of the Lessor, which consent shall not be unreasonably withheld, make in the apartment or any terrace appurtenant thereto, any alteration, enclosure or addition, whether structural or otherwise, nor any enclosure or alteration of the water, gas or steam risers or pipes, heating or air conditioning system or units serving the Building generally, electric conduits, wiring or outlets, plumbing lines, intercommunication or alarm systems, or any installation or facility serving the Building generally, nor, except as hereinafter authorized, shall the Lessee remove any additions, improvements or the furniture, furnishings or fixtures from the apartment owned by the Lessor. Decoration such as painting, wallpapering, carpeting, installation of cabinetry and similar work shall not be deemed an alteration requiring the Lessor's consent, but shall be performed only after written notice to the Lessor and delivery to the Lessor of evidence of the contractor's liability insurance, which shall be in amounts reasonably satisfactory to the Lessor. The performance by the Lessee of any work in the apartment shall be in accordance with any applicable rules and regulations of the Lessor and governmental agencies having jurisdiction thereof. Any consent to proposed alterations may be subject to such terms and conditions as the board of directors of the Lessor shall reasonably impose, including, without limitation, the Lessee's execution of an agreement in form and substance satisfactory to the Lessor setting forth the terms and conditions upon which such alteration may be made, including delivery by the Lessee of a security deposit securing proper performance of the alteration and compliance with the alteration agreement. Consent shall not be granted until the Lessee cures all defaults under the lease and pays a sum to be fixed by the board of directors of the Lessor to cover reasonable legal, architectural, engineering and other out-of-pocket expenses of the Lessor and its managing agent, if any, in connection with such proposed alterations. The Lessee shall not in any case install any appliances or electrical or other equipment which shall exceed the available load for the existing electrical, plumbing or other service facilities serving the Building generally.

- 15 -

SN 0396

**3.17 Removal of Fixtures Installed by Lessee.** If the Lessee shall have heretofore placed or shall hereafter place, or if any prior proprietary lessee shall have heretofore placed, in the apartment any special additions, improvements or fixtures, such as mantels, refrigerators, ranges, air conditioning equipment, woodwork, panelling, ceilings or doors which can be removed without structural alterations, then the Lessee shall have the right, prior to the termination of this lease, to remove the same at the Lessee's own expense, provided: (a) that the Lessee at the time of such removal shall not be in default in the payment of rent, additional rent or in the performance of any other provision of condition of this lease, (b) that before any such removal the Lessee shall have given written notice to the Lessor specifying any of the foregoing which the Lessee proposes to remove and specifying in detail the proposed replacements to be made by the Lessee and shall have obtained the Lessor's written approval of the replacement specifications, which approval shall not be unreasonably withheld, (c) that the Lessee shall pay the cost of any such removal and reinstallation and shall, at its own cost and expense, repair any damage resulting therefrom and (d) that the Lessee shall replace and reinstall, at the Lessee's own expense, all articles, materials, or equipment owned by the Lessor that were in the apartment at the beginning of the term, or replace such articles, materials and equipment with others of a kind and quality customary in this type of Building and satisfactory to the Lessor, and all such replacements shall be first-class in workmanship, materials and finish, and as specified in the notice provided for in clause (b) of this section.

**3.18 Surrender of Possession.** On the expiration of the term hereby granted, or upon an earlier termination of this lease, the Lessee shall surrender to the Lessor possession of the apartment with all additions, improvements and fixtures then included therein except as provided in Section 3.17 (Removal of Fixtures Installed by Lessee). Any additions, improvements, furniture, furnishings or fixtures or other personal property not removed by the Lessee at the termination of this lease shall, at the option of the Lessor, either (a) be deemed abandoned and become the property of the Lessor, in which case they may be disposed by the Lessor without accountability or liability to the Lessee, or (b) be removed by the Lessor to any place for storage and stored for the account of the Lessee without the Lessor in any way being liable for trespass, conversion or negligence by reason of any acts of the Lessor or of the Lessor's agents, or of any carrier employed for transporting such property to the place of storage or by reason of the negligence of any person in caring for such property while in storage. Any costs incurred by the Lessor in such disposal, removal or storage shall be paid by the Lessee as additional rent on the first day of the calendar month following demand therefor by the Lessor.

**3.19 Lease Subordinate to Mortgages.** This lease is and shall be subject and subordinate to the mortgages which are now liens upon the Building and security interests in the contents thereof and to any and all extensions, modifications, renewals and replacements thereof and this lease shall be subject and subordinate to the lien of any other mortgage or mortgages or security interests which shall at any time be placed on the Building or its contents. This clause shall be self-operative and no further instrument of subordination

- 16 -

SN 0397

shall be required by any such mortgagee or secured party. The Lessee shall at any time and from time to time, on demand, execute any instruments that may be required by any mortgagee, or by the Lessor, for the purpose of more formally subjecting this lease to the lien of any such mortgage or mortgages, and the duly elected officers, for the time being, of the Lessor are each hereby irrevocably appointed the attorney-in-fact and agent of the Lessee to execute the same upon such demand, and the Lessee hereby ratifies any such instrument hereafter executed by virtue of the power of attorney hereby given.

   **3.20 Mechanics' Liens.**  In case there shall be filed a notice of mechanics' lien against the Building for, or purporting to be for, labor or material alleged to have been furnished or delivered at the Building or the apartment to or for the Lessee, or anyone claiming under the Lessee, the Lessee shall forthwith cause such lien to be discharged by payment, bonding or otherwise; and if the Lessee shall fail to cause such lien to be discharged within twenty (20) days after the filing of such notice, the Lessor may cause such lien to be discharged by bonding or by paying the amount thereof or otherwise, without investigation as to the validity thereof or of any offsets or defenses thereto, and shall have the right to collect, as additional rent, all amounts so paid and all costs and expenses paid or incurred in connection therewith, including reasonable attorney's fees and disbursements, together with interest thereon from the time or times of payment. The failure of the Lessee to discharge the lien within twenty (20) days after the filing of such notice shall be deemed a default under this lease.

   **3.21 Entry for Examination and Repair.**  The Lessor, its employees, agents and workers shall be permitted to enter the apartment and any storage space used by the Lessee at any reasonable hour of the day, to examine or inspect the apartment or to make or facilitate repairs in any part of the Building and to remove such portions of the walls, floors and ceilings of the apartment as may be required for the purpose of making such repairs. In order that the Lessor shall at all times have access to the apartment for the purposes provided for in this lease, the Lessee shall provide the Lessor with a key to each lock providing access to the apartment, and if any lock shall be altered or a new lock installed, the Lessee shall provide the Lessor with a key thereto immediately upon installation. If the Lessee shall not be personally present to open and permit an entry into the apartment at any time when for any reason an entry therein shall be necessary or permissible hereunder and shall not have furnished a key to the Lessor, the Lessor or the Lessor's agents may forcibly or otherwise enter the apartment without rendering the Lessor or such agents liable to any claim or cause of action for damages by reason thereof if during such entry the Lessor shall accord reasonable care to the Lessee's property, and such entry shall not in any manner affect the obligations and covenants of this lease. The right and authority hereby reserved do not impose, nor does the Lessor assume by reason thereof, any responsibility or liability whatsoever for the care or supervision of the apartment, or any of the pipes, fixtures, appliances or appurtenances therein contained or therewith in any manner connected, except as may be herein specifically provided.

SN 0398

**3.22 No Implied Waiver.** The failure of the Lessor to insist, in any one or more instances, upon a strict performance of any of the provisions of this lease, or to exercise any right or option herein contained, or to serve any notice, or to institute any action or proceeding, or otherwise to act as though this lease had expired pursuant to the provisions of Article IV hereof, shall not be construed as a waiver, or a relinquishment for the future, of such provision, option or right thereafter to serve notice and to have this lease expire under the provisions of said Article, but such provision, or option or right shall continue and remain in full force and effect. The receipt by the Lessor of rent, with knowledge of the breach of any covenant hereof, shall not be deemed a waiver of such breach, and no waiver by the Lessor of any provision hereof shall be deemed to have been made unless expressed in writing and signed by an officer of the Lessor pursuant to authority contained in a resolution of its board of directors; and even though a consent to an assignment hereof, or to any subletting, be given, no further assignment or subletting shall be made without express consent in writing given as hereinbefore provided.

**3.23 Reimbursement of Lessor's Expenses.** If the Lessee shall at any time be in default hereunder, and the Lessor shall incur any expense (whether paid or not) in connection with such default or in performing acts which the Lessee is required to perform, or in instituting an action or proceeding based upon such default, or defending, or asserting a counterclaim in, any action or proceeding brought by the Lessee, the expense thereof to the Lessor, including reasonable attorney's fees and disbursements, shall be paid by the Lessee to the Lessor, on demand as additional rent on the first day of the calendar month following demand therefor by the Lessor.

**3.24 Special Services.** The Lessee will pay and discharge all obligations incurred by the Lessee or by any person occupying the apartment or by any guest of the Lessee or of any such person for meals, beverages, telephone service, laundry, or other hotel services (except those Lessor is obligated to furnish as provided in section 2.2) rendered to and sums advanced by the Lessor to or for the Lessee, the Lessee's family and employees, and the Lessee will make such payment upon the presentation of a bill therefor, except to the extent otherwise provided in any rental agreement, and in case of the failure on the part of the Lessee to pay the same, the Lessor at its option may add the amount thereof to the next installment of rent due and the same shall be deemed additional rent.

**3.25 Lessor's Immunities.** The Lessor shall not be liable for any failure, interruption or curtailment of heat, water supply, electric current, elevator service or other service to be supplied by the Lessor hereunder, or for injury or damage to person or property caused by the elements or by another tenant or person in the Building, or resulting from steam, gas, electricity, water, rain or snow which may leak or flow from any part of the Building, or from any of its pipes, drains, conduits, radiators, boilers, tank, appliances or equipment, unless caused by or due to the negligence of the Lessor; and no diminution or abatement of rent or other compensation due the Lessor shall be claimed or allowed therefor, or for failure to make, delay in making or inconvenience or discomfort arising from the

SN 0399

making of repairs or improvements to the Building or to its appliances, or for any space taken to comply with any law, ordinance, or order of a governmental authority. The Lessor shall not be liable for interference with light or other incorporeal hereditaments by the Lessor or anybody other than the Lessor. Mechanical refrigeration, if any, is installed for the accommodation of the Lessee, and the Lessor shall not be responsible for any failure of refrigeration, leakage or damage caused by, or the result of such mechanical refrigeration for any reason whatsoever. The Lessor shall not be responsible for any package or article left with or entrusted to any employee of the Lessor. If the Lessor shall before, during or after the term of this lease, furnish to the Lessee the use of any storage space, vault space, laundry or other facility outside of the apartment, the same shall be furnished gratuitously by the Lessor, and if any person shall use the same, such use shall be entirely at the risk of such person, and the Lessor shall not be liable for any loss of property therein, or for any damage or injury whatever to person or property therein or in connection therewith.

   **3.26 Notice of Defects.** No notice of alleged defect requiring the Lessor's attention shall be deemed valid or effective unless in writing and delivered to the Lessor in accordance with section 6.6 hereof (Notices).

   **3.27 Lessor's Right to Perform at Lessee's Expense.** If the Lessee shall fail to make repairs to any part of the apartment or appurtenances as herein required, or shall fail to comply with any other covenant or condition of this lease on the Lessee's part to be performed, the Lessor may, but is not obligated to, after ten (10) days' notice to the Lessee, enter the apartment and make such repairs or comply with such covenant or condition or arrange for others to do the same, without liability on the part of the Lessor. If the Lessee or any person occupying the apartment shall expressly request the Lessor, its agents or servants, to perform any act not hereby required to be performed by the Lessor, or in case of emergency, the Lessor may, but is not obligated to, without notice, enter the apartment and perform such act or take such steps as are appropriate in light of the emergency, or arrange for others to do the same, without liability on the part of the Lessor. In all such cases, the Lessor, its agents, servants and contractors shall, as between the Lessor and the Lessee, be conclusively deemed to be acting as agents of the Lessee and all contracts therefor made by the Lessor shall be so construed whether or not made in the name of the Lessee. The Lessor shall be entitled to recover from the Lessee all expenses incurred or for which it has contracted hereunder, such expenses to be payable by the Lessee as additional rent on the first day of the calendar month following demand therefor by the Lessor.

   If, in the Lessor's sole judgment, any of the Lessee's equipment or appliances shall result in damage to the Building or poor quality or interruption of service to other portions of the Building or overloading of or damage to facilities maintained by the Lessor for the supplying of water, gas, electricity or air conditioning to the Building, or if any such appliances visible from the outside of the Building shall become rusty or discolored, the Lessee shall promptly, on notice from the Lessor, remedy the condition and, pending such remedy, shall cease using any appliance or equipment which may be creating the

- 19 -

SN 0400

objectionable condition. In the event that due to the negligence or carelessness of the Lessee or the Lessee's family, domestic employees, subtenants, other occupants of the apartment and guests, the Building shall be otherwise damaged, then the Lessee shall reimburse the Lessor for the cost of repairing such damage.

**3.28  Lessee's Indemnity of Lessor.**  The Lessee agrees to save the Lessor and its managing agent, if any, harmless from all liability, loss, damage and expense, including, without limitation, reasonable attorneys' fees and disbursements, arising from injury to person or property occasioned by the failure of the Lessee to comply with any provision hereof, or due wholly or in part to any wrongful act, negligence or omission of the Lessee or default by the Lessee in performing an obligation imposed under this Lease on the Lessee, the Lessee's family or of any person dwelling or visiting in the apartment, or by the Lessor, its agents, servants or contractors when acting as agent for the Lessee as in this lease provided.

**3.29  Injunction.**  In addition to other legal remedies hereinbefore or hereinafter provided for, in case of violations of any covenants by the Lessee, the same shall be restrainable by injunction and neither the mention herein nor the election hereafter of one or more of the remedies provided shall preclude the Lessor from enforcing any other right, remedy, option, election or priority allowed by law, whether or not herein specifically set forth.

**3.30  Insurance.**  The Lessee shall, at the Lessee's own cost and expense, obtain and keep in full force and effect throughout the term of this lease (a) comprehensive public liability and property damage insurance, with a minimum limit of liability of $1,000,000 for injury or death and damages to any one person, $1,000,000 for injury or death arising out of one occurrence, and $1,000,000 for damage to property, against any and all claims for personal injury, death or property damage (including, but not limited to, loss due to water damage) occurring in, upon, adjacent to or connected with the apartment or any part thereof, and (b) comprehensive all risk property damage insurance, with a minimum limit of liability of $100,000 in respect of property damage occurring in, upon, adjacent to or connected with the apartment or any part thereof (including, but not limited to, loss due to water damage), such insurance to include an endorsement for tenant's improvements and betterments on a replacement cost basis. The limits of liability set forth in (a) and (b) above may be increased by the board of directors of the Lessor from time to time to such reasonable amounts as may reflect inflation. The insurance required in (a) above shall name the Lessor as additional insured, as its interest may appear, and is to be written in form reasonably satisfactory to the Lessor by good and solvent insurance companies of recognized standing, admitted to do business in the State of New York which shall be reasonably satisfactory to the Lessor. Upon ten (10) days' written notice from the Lessor, the Lessee shall deliver to the Lessor either a duplicate original of the aforesaid policies or certificates evidencing such insurance, naming the Lessor as an additional insured, and, at least thirty (30) days prior to the expiration of said policies, the Lessee shall deliver renewals to the Lessor. Such policies

- 20 -

**SN 0401**

shall contain a provision that no act, omission or negligence of the Lessee, its contractors, licensees, agents, servants, employees, invitees or visitors will affect or limit the obligation of the insurance company to pay the amount of any loss sustained and such policy shall be non-cancellable except upon thirty (30) days' written notice to the Lessor. In the event the Lessee shall fail to obtain the insurance required in (a) and (b) above, and/or to pay all premiums and charges therefor, the Lessor may, but shall not be obligated to, obtain the same, in which event the amount of the premiums paid by the Lessor shall be paid by the Lessee to the Lessor as additional rent on the first day of the calendar month following demand therefor by the Lessor. The failure of the Lessee to obtain and maintain, throughout the term of this lease, the insurance required in (a) and (b) above shall be a default under the lease.

The Lessor and the Lessee agree to use best efforts to include in each of its policies insuring against property damage a waiver of the insurer's right of subrogation against the other party. If such waiver shall not be, or shall cease to be, obtainable without additional charge, the Lessee shall promptly notify the Lessor. In such case, if the Lessor shall so elect and shall pay the insurer's additional charge therefor, such waiver shall be included in the policy. Each party hereby releases the other party with respect to any claim (including a claim for negligence) which it might otherwise have against the other party for loss, damage or destruction with respect to its property occurring during the term of this lease to the extent to which the same party is insured under a policy containing a waiver of subrogation. If, notwithstanding the recovery of insurance proceeds by either party for loss, damage or destruction of its property, the other party is liable to the first party with respect thereto or is obligated under this lease to make replacement, repair or restoration, then provided the first party's right of full recovery under its insurance policies is not thereby prejudiced or otherwise adversely affected, the amount of the net proceeds of the first party's insurance against such loss, damage or destruction shall be off-set against the second party's liability to the first party therefor or shall be made available to the second party to pay for the replacement, repair or restoration, as the case may be.

The waiver of subrogation, if obtainable, referred to above shall extend to the agents and employees of the Lessor and all permitted occupants of the apartment. Nothing contained in this section 3.30 shall be deemed to relieve either party from any duty imposed elsewhere in this lease to repair, restore or rebuild.

**3.31 Cooperation.** The Lessee shall always in good faith endeavor to observe and promote the cooperative purposes for the accomplishment of which the Lessor is incorporated.

- 21 -

SN 0402

## ARTICLE IV

## TERMINATION BY CONDITIONAL LIMITATION

    **4.1  Conditional Limitation.**  If, upon, or at any time after, the happening of any of the events mentioned in sections (a) to (h), inclusive, of this section 4.1, the Lessor shall give to the Lessee a notice stating that the term hereof will expire on a date at least thirty (30) days thereafter, or if, upon, or at any time after, the happening of the event mentioned in subdivision (h) hereof, the Lessor shall give to the Lessee a notice stating that the term hereof will expire on a September 30 at least three months after the giving of such notice, this lease shall expire on the date so fixed in the notice, it being the intention of the parties here to create hereby a conditional limitation, and it shall thereupon be lawful for the Lessor to re-enter the apartment and to remove all persons and personal property therefrom, either by summary dispossess proceedings, or by any suitable action or proceeding at law or in equity, or by force or otherwise, and to repossess the apartment in its former estate as if this lease had not been made.

    (a) **Lessee Ceasing to Own Accompanying Shares.** If at any time during the term of this lease the Lessee shall cease to be the owner of all of the shares of the Lessor which are hereinbefore stated to be owned by the Lessee and allocated to this lease, or if this lease shall pass or be assigned to anyone who is not then the owner of all of said shares.

    (b) **Bankruptcy of Lessee.** If at any time during the term of this lease (1) the Lessee shall be adjudicated a bankrupt under the laws of the United States or adjudicated insolvent or take the benefit of any Insolvency Statute; or (2) a receiver or trustee of all of the property of the Lessee or of this lease shall be appointed under any provisions of the laws of the State of New York, or under any statute of the United States, or any statute of any state of the United States and the order appointing such receiver or trustee shall not be vacated within sixty (60) days; or (3) the Lessee shall make a general assignment for the benefit of creditors; or (4) any of shares owned by the Lessee and appurtenant to this lease shall be duly levied upon under the process of any court whatever unless such levy shall be discharged within sixty (60) days; or (5) this lease or the shares appurtenant thereto shall pass by operation of law or otherwise to anyone other than the Lessee herein named or a person to whom such Lessee has assigned this lease in the manner herein permitted, but this clause (5) shall not be applicable if this lease or its appurtenant shares shall pass to the executors or administrators of the Lessee or by will or intestacy to the spouse or ascendants or descendants of the named Lessee.

    (c) **Unauthorized Assignment, Subletting or Pledge.** If at any time there shall be an assignment or pledge of this lease, or any subletting of the apartment, without full compliance with the requirements of Section 3.9 hereof (Subletting), Section 3.10 hereof (Assignment) or Section 3.14 hereof (Pledge of Shares), as the case may be.

SN 0403