# EXHIBIT C

1

1  SUPREME COURT OF THE STATE OF NEW YORK
   NEW YORK COUNTY : CIVIL TERM : PART 61
2  --------------------------------------------X
   PACIFIC ALLIANCE
3
                              Plaintiff
4         – against –                    Ind. No.
                                         652077/17
5  KWOK HO WAN, a/k/a KWOK HO, a/k/a
   GUO WENGUI, a/k/a GUO WEN-GUI, a/k/a
6  WAN GUE HAOYUN, a/k/a MILES KWOK, a/k/a
   HAOYUN GUO, GENEVER HOLDINGS LLC, and
7  GENEVER HOLDINGS CORPORATION,
                              Defendants
8  --------------------------------------------X
                              Microsoft Teams
9                             New York, New York
                              December 18, 2020
10
11 B E F O R E :

12         HONORABLE BARRY R. OSTRAGER

13                              Justice

14 A P P E A R A N C E S :

15         O'MELVENY & MYER LLP
           Attorneys for Plaintiff
16         7 Times Square
           New York, NY  10036
17         BY:  EDWARD MOSS, ESQ.
                STUART SARNOFF, ESQ.
18

19

20

21

22

23

24

25

           KATHY Y. JONES, OFFICIAL COURT REPORTER

1           BAKER & HOSTETLER LLP
            Attorneys for Defendant Kwok
2           45 Rockefeller Plaza
            New York, NY  10111
3           BY:  JOHN SIEGAL, ESQ.
                 MELISSA CARVALHO, ESQ.
4

5           LAWALL & MITCHELL LLC
            162 East 64th Street
6           New York, NY  10065
            BY:  AARON A. MITCHELL, ESQ.
7

8

9

10

11

12

13

14

15

16

17

18

19

20                              Kathy Y. Jones
                                Official Court Reporter
21

22

23

24

25

            KATHY Y. JONES, OFFICIAL COURT REPORTER

3

Proceedings

1         THE COURT:  Good morning.

2         All right.  This is a hearing on damages.

3         So, Mr. Moss, I'll hear you.

4         MR. MOSS:  Thank you, your Honor.

5         Good morning.

6         Your Honor, we're here on a very straightforward

7    issue as you note, what are PAX's damages resulting from

8    Mr. Kwok's breach of the personal guarantee.

9         We've submitted a calculation.  Mr. Kwok has not

10   disputed that.  The only argument he makes is that PAX

11   should have mitigated its damages.

12        This argument, as the Court suggested in a prior

13   hearing, has always always been duties and perhaps it's

14   100 percent wrong and because Mr. Kwok has sort of

15   contorted himself to try to explain why this Court should

16   apply a doctrine that is simply inapplicable as a matter

17   of Hong Kong law as a result is an argument that is

18   confused and confusing but it's not confusion for a jury

19   to decide because there are no disputed facts.  It's a

20   purely legal issue.

21        I want to start with the key question and I'd

22   like to cut through this and see if I could set forth the

23   proper framework for the Court to analyze the issue.

24        The key question is which contract did PAX

25   supposedly have a duty to mitigate under.  It's hard to

4

Proceedings

1  know because Mr. Kwok keeps changing his position on that

2  question but he answered in the personal 2011 personal

3  guarantee.  PAX sued Mr. Kwok because he owed a debt that

4  arose.  The Court found that Mr. Kwok breached that

5  guarantee by not retaining any portion of the debt.  That

6  is the contract.  That is the breach.

7          The problem for Mr. Kwok, your Honor, is that

8  under well settled Hong Kong law the concept of

9  mitigation does not apply to claims for repayment of a

10 debt.  Our expert on Hong Kong law says but you don't

11 have to take his word for it because their expert says

12 the same thing.

13         In paragraph seven of his new affidavit, docket

14 number 667, their expert says I agree with Mr. Melwani

15 which is our expert that the principal of mitigation does

16 not apply to a claim for repayment of a debt where that

17 claim is made under a loan agreement or a personal

18 guarantee.

19         That is based on uncontroverted Black Letter law

20 from Hong Kong's highest appellate court.

21         Your Honor, it's that simple.  You can reject

22 this mitigation argument as a matter of undisputed,

23 undisputable Black Letter Hong Kong law with which both

24 parties agree.  The rational would be airtight for doing

25 so.

KATHY Y. JONES, OFFICIAL COURT REPORTER

Proceedings

1              Now, because this Hong Kong law is fatal to

2      Mr. Kwok's argument, he's come up with a new argument

3      that this supposed duty to mitigate arose under the 2013

4      date of settlement.  That argument is not only wrong.

5      It's precluded by the law of the case because your Honor

6      has already held otherwise.

7              As a refresher here, Judge, Mr. Kwok failed to

8      pay under the guarantee and Pacific Alliance wanted to

9      recover something.  It agreed in this 2013 Deed of

10     Settlement to take three of Mr. Kwok's apartments in

11     Beijing free of charge to settle the debt.  Mr. Kwok had

12     just satisfied 10 conditions precedent before the

13     settlement agreement could take effect and the parties

14     kept extending that deadline the Court will recall until

15     June 30, 2015.

16             The Court already ruled on summary judgment that

17     Mr. Kwok's failure to satisfy the conditions precedent

18     meant that the personal guarantee reverted.  Quoting from

19     the summary judgment order, by the plain terms of the

20     2013 Deed of Settlement, the failure to satisfy the

21     conditions precedent to the settlement by June 30, 2015,

22     would result in reverting to the 2011 personal guarantee

23     being enforced full force and effect.

24             The Court further found that according to the

25     documentary evidence sponsored by both sides that the

Proceedings

1     mitigation opportunity came up in July after June 30,

2     2015, and that by then "the 2013 Deed of Settlement had

3     already been nullified in its entirely and the 2011

4     personal guarantee was in full force and effect.

5            This was not a breach.  It was a failure to meet

6     conditions precedent to effectuating the settlement.

7            Because it was not a breach, you can't have

8     mitigation.  That issue has already been decided.

9            Not only was it decided, your Honor, but

10    Mr. Kwok needs to agree that the mitigation opportunity,

11    supposed opportunity, was under the personal guarantee,

12    not the Deed of Settlement.  He's only changing his

13    argument now because of how fatal this Black Letter law

14    is.

15           Here is what he wrote on page 10 of docket

16    number 36 which is his damages opposition.

17           Pacific Alliance had a continuing duty of

18    mitigation of damages under a personal guarantee under

19    which it is now suing the expiration of the Deed of

20    Settlement expiration.  They agreed that it expired, not

21    that it was breached.

22           The expiration of the Deed of Settlement is

23    irrelevant for purposes of mitigation.

24           Mr. Kwok is changing his tune now because of

25    this Black Letter law with which his own expert agrees

7

Proceedings

1    because it dooms him but he was right the first time that

2    any duty arose under the personal guarantee as was the

3    Court.  The debt arose under the guarantee.  Mr. Kwok

4    breached the guarantee.  So, if there was any possible

5    mitigation, the duty was under the guarantee and you

6    can't have such a duty under Hong Kong law because it's a

7    contract for the repayment of a debt.

8         Even, your Honor, if the Court were to reverse

9    itself and entertain the notion that there might be a

10   duty to mitigate under this 2013 Deed of Settlement,

11   there wasn't and you can conclude that as a matter of law

12   too.

13        First, that's also in the contract for the

14   repayment of a debt.  It's just that the repayment

15   currency was real estate instead of cash.

16        Our expert explains that that doesn't make a

17   difference.  That doesn't change the analysis.  Their

18   expert says it does but he doesn't cite a single Hong

19   Kong case to support that.

20        Second, as the Court is aware, this is an

21   independent basis to reject any mitigation under the 2013

22   Deed of Settlement.

23        As the Court is aware, a mitigation opportunity

24   must be reasonable under Hong Kong law.  The opportunity

25   here was unreasonable as a matter of law.  It does not

Proceedings

1    turn on any disputed facts.

2         They are going to cite a lot of documents and

3    they say they're going to introduce some evidence at

4    trial that's not even in the record but there is no

5    factual dispute even if you take their preferred

6    narrative.  There is no dispute that this supposed duty

7    to mitigate happened in 2015.  They have this bogus

8    February 2015 date which is based on contorting the

9    general counsel testimony.

10        The Court already found that it happened in July

11   of 2015 based on the documentary evidence sponsored by

12   both parties but that doesn't matter.

13        Let's just say it happened some time in 2015.

14   At that time, the debt was 70 something million dollars.

15   Even under their view of the law, the documents they

16   cite, PAX's documents, the apartment at the time in 2015

17   were worth 27 million dollars and PAX would have had to

18   pay 17 million dollars to buy them.  So, at best we would

19   have had to risk 17 million dollars to potentially earn a

20   10 million dollar profit.  Damages at the time were 70

21   something million dollars.  That would have only

22   mitigated damages by 10 million dollars.  We would have

23   had to take a risk that was almost double the amount we

24   could have knocked off the damages.  That is unreasonable

25   and they don't cite any case otherwise.

9

Proceedings

1          The only case they cite, that involved spending

2     $300,000 to completely eradicate 22 million dollars of

3     debt.  It's apples and oranges.

4          Your Honor, I haven't gotten into the weeds

5     today because I don't want to confuse the issue.

6          Now, I haven't gotten into some of these details

7     because I don't want to confuse the issues because they

8     are not relevant to the issue before the Court today but

9     you're going to hear them from Mr. Siegal.

10          You're going to hear some factual assertions and

11    I want to preview you what you're going to hear, your

12    Honor, and the preview is that they are backed.  They're

13    backed.

14          I'm going to give the law firm the benefit of

15    the doubt because they're new to the case.  I'm going to

16    assume that these distortions are not deliberate.

17    They're just based on not knowing the record but I want

18    to point out two briefly.

19          First, Mr. Kwok features in his briefing a

20    document in the internal PAX document discussing the fact

21    that the apartments were worth about the same amount of

22    the loan.  They used that document to suggest that we

23    want the apartment somehow instead of cash.  It's a 2011

24    document.  We explained this in our reply but the other

25    side continued to cite it without explaining its

10

Proceedings

1   relevance.  It has no bearing on the supposed mitigation

2   opportunity in 2015.

3         If you get to reasonableness, you need to look

4   at the value of the apartments in 2015 when these

5   supposed opportunities came up.  That's 27 million

6   dollars.  You don't look at documents from 2011 four

7   years earlier talking about what the value of the

8   apartments might have been then.  It's totally

9   irrelevant.

10        Finally, I need to address one thing because it

11  is just -- it's irresponsible and I need to highlight for

12  you, Judge, that you can't trust the spin that they put

13  on these facts at all.  This is page 13 of their

14  surreply.  They say the evidence at trial will show that

15  plaintiff purposely decided not to mitigate its damages

16  opting to pursue litigation against Mr. Kwok personally

17  for "the sheer satisfaction it would create."

18        They are suggesting that we had an opportunity

19  to mitigate and we said, no, we want to sue them instead

20  out of spite.  That's the suggestion from their brief.

21  They called this Exhibit 9 to Mr. Siegal's affidavit.

22  That's actually a typo.  It's actually Exhibit 8.

23        But an innocent email from 2012 before PAX and

24  Mr. Kwok entered into the Deed of Settlement in 2013, PAX

25  was debating internally whether to sue Mr. Kwok

KATHY Y. JONES, OFFICIAL COURT REPORTER

11

Proceedings

1    personally or to try to settle by taking the three

2    apartments because they were doing everything they could

3    to recover something.  Despite talking about some

4    benefits of a lawsuit, they agreed to settle a year later

5    in 2013 and entered into that Deed of Settlement.  To

6    suggests that this presettlement 2012 document means that

7    our client purposefully decided not to mitigate in 2015

8    is irresponsible.  It's incredibly misleading and it's

9    the type of misrepresentation that infects all of their

10   papers.

11         I can go on with these types of examples, your

12   Honor, but the upshot is that there is no trial to be had

13   here.  Mr. Kwok doesn't even have any evidence.  He

14   testified -- let's remember this.  He testified that he

15   didn't even enter into the Deed of Settlement.  He didn't

16   even know what it was.  So, he has no foundation to offer

17   any evidence about the apartments.

18         He doesn't have any experts.  He doesn't have

19   any other witnesses.  And in a trial it would be

20   nonsense.  It would be a circus.

21         Your Honor, you have a clear legal path, a clear

22   path that involves no disputed facts that you could take

23   all of theirs as true and that would allow you to

24   correctly reject this last ditch argument.  It would

25   allow you to finally after a decade of Pacific Alliance

12

Proceedings

1    chasing Mr. Kwok allow them to get to a judgment.

2         The Court correctly decided summary judgment.

3    There is no need to reverse.  No basis to reverse the law

4    of the case.  The Court was correctly dubious of this

5    argument, this mitigation argument from the outset and

6    the Court should reject it once and for all as a matter

7    of law.

8         As for the number, your Honor, it's undisputed

9    there was 46 million dollars and change in principle set

10   forth in the Deed of Settlement.  Similar interest at

11   15 percent per year.  We put in our filing on

12   September 21st when we filed our brief our damages

13   motion.  Damages were 114,196,443.  The Court only needs

14   to go to Exhibit A of Mr. Lewis' affirmation docket

15   number 564.  We set forth the calculation which again

16   Mr. Kwok has never challenged and recalculate how

17   interest run at $19,079.38 per day.  We've done the math

18   for you.  I did last night.  Somebody can check me before

19   judgment is entered.  It's been 86 days since we filed

20   our motion on September 21st.

21        So, if judgment were entered today, that number

22   would be $115,837,270.00 and then of course we would have

23   the issue of legal fees for another day as the Court has

24   suggested we take that up later on.

25        That's all I have for today, your Honor.
     KATHY Y. JONES, OFFICIAL COURT REPORTER

13

Proceedings

1          Thank you.

2          Thank you for hearing me.

3          THE COURT:  What was the $115 million number

4     again?

5          MR. MOSS:  $115,837,270.00.  That's based on

6     114,196,443 as of September 21st plus 86 days of interest

7     at $19,079.38.

8          THE COURT:  115,887,270?

9          MR. MOSS:  115,837,270.

10          THE COURT:  All right.  Let me hear from your

11     adversary.

12          MR. MOSS:  Thank you, your Honor.

13          MR. SIEGAL:  Good morning, your Honor.

14          Your Honor, I'm John Siegal with the Baker

15     Hostetler law firm representing the defendant Mr. Kwok.

16          We appreciate, your Honor, the opportunity to

17     address these issues this morning and we appreciate the

18     briefing process that the Court has directed and

19     permitted to fully brief the issues at this point in the

20     hearing.

21          We are not here to argue the facts because this

22     is not a fact finding hearing.  The purpose here is for

23     the Court to determine whether a trial on damages is

24     required to resolve factual issues.

25          So, your Honor, I don't think my role here this

14

Proceedings

1    morning is to vigorously present to the Court evidence or

2    describe evidence that would be introduced at a damages

3    trial on things that are clearly factual issues.  I'm not

4    going to argue the facts of valuation although there are

5    clearly triable issues about the value of these

6    apartments.  And the extent to which they exceeded we

7    would submit at trial, substantially and profitably

8    exceeded the amount of money that was required to pay off

9    the government lien on the apartments and release them

10   but that's not the issue we are for today.

11          Nor is the issue for today arguing the parties'

12   views of the conflicting evidence as to when the

13   mitigation opportunity arose.  That is a triable issue.

14          Certainly, I'm not here to contort, confuse,

15   mislead, misrepresent or do any of the things that

16   counsel stated.  That's for the Court to determine, of

17   course.

18          What I'm here to do is to explain the

19   defendant's reasons why the law, the law, requires a

20   trial as to whether the mitigation opportunity was

21   available, whether it was reasonable and whether it was

22   required under the parties' relationship at the time

23   whenever that was that the jury determines that the

24   opportunity arose.

25          Now, there are disputed issues of fact back and

15

Proceedings

1    forth on virtually all of that but let's start with where

2    there is actually clarity and no disagreement as a matter

3    of law.  And that is here.

4         As a matter of Hong Kong law, this Court has

5    before it no authority, no authority whatsoever, on which

6    it could base a holding that if the Deed of Settlement

7    was the governing document at the time that the

8    mitigation opportunity arose, there was a mitigation

9    requirement under that arrangement.

10        There is a statement in the plaintiff's expert

11   affidavit and no authority cited.

12        The Deed of Settlement was an agreement not for

13   the repayment of debt but for the conveyance of

14   apartments that the plaintiff agreed would satisfy the

15   prior debt but at the time that the Deed of Settlement

16   was in effect from 2011 through the end of June 2015, the

17   commercial arrangement between the parties was that the

18   defendant needed to clear title to the apartments and

19   convey them to the plaintiff in complete satisfaction of

20   obligations under that agreement.

21        Paragraph 22 of the second affidavit of our Hong

22   Kong expert Mr. Georgiou sets forth the Hong Kong law for

23   why that deed of repayment is not akin to an agreement

24   for payment of a sum certain.  It's not a note.  It's not

25   at that point a guarantee of a sum certain.  It is an

16

Proceedings

1   agreement for the conveyance of property and it

2   admittedly and agreed upon very valuable set of

3   properties.  So valuable that the plaintiff agreed to

4   extend that Deed of Settlement year after year because

5   they wanted the apartments.  And the purpose of the

6   arrangement at that point was for the defendant to convey

7   the property to the plaintiffs.  That's what they wanted.

8   That was the deal.

9          Now, what plaintiff says about that Deed of

10   Settlement is really not that there was no mitigation

11   requirement under it.  What plaintiff says about it is,

12   first of all, that it had expired but that's a fact issue

13   whether mitigation arose before or after June 30th.  And

14   plaintiff argues that the deed wasn't in effect because

15   conditions precedent had not been met and there the Hong

16   Kong experts differ.

17          How that law applies to the facts here, we

18   assert it is a triable issue, but neither of those

19   arguments rebut and plaintiff offers no authority

20   whatsoever that if the Deed of Settlement was the

21   operative document at the time the mitigation opportunity

22   arose, there was a mitigation requirement that the

23   argument that the Deed of Settlement wasn't in effect

24   when the mitigation opportunity arose is not proven.

25   That's a triable issue for reasons I will explain.  And

17

Proceedings

1     the argument that the deed wasn't in effect because the

2     ten conditions of paragraph section 3.2 of the Deed of

3     Settlement somehow were conditions precedent, and until

4     all of them, they were conditions to closing, to

5     transfer, not to the operative effect of the agreement.

6     So, that argument is not correct.

7          But what is uncompletely clear is that there is

8     no authority in this record holding that mitigation was

9     not required when the Deed of Settlement was in force and

10    effect.

11         Now, when the mitigation opportunity arose is a

12    triable issue.  The one thing that's clear on the factual

13    record here is that the mitigation opportunity arose some

14    time between the February seizure of the three apartments

15    by the government and the July 24th email when

16    Mr. Skevington laid out to the plaintiff's staff the

17    precise terms that would be required to release the

18    government lien, clear title and be able to take title to

19    the properties.

20         When between the February seizure and that

21    July 24th email the opportunity arose is not determined.

22    That is an issue that needs to be presented to a jury

23    which will make that determination based on a

24    preponderance of the evidence and each side can argue why

25    under a preponderance standard it's more likely than not

18

Proceedings

1    we would argue that that mitigation opportunity arose

2    some time in that February to July period, and it's more

3    likely than not that it arose prior to June 30th.

4    Plaintiff can assert the other but that's a triable issue

5    and that's for the jury to determine.

6         There is no conclusive evidence on it.  There is

7    no evidence that if this issue were a summary judgment

8    issue and this issue was not the subject of the summary

9    judgment decision, the Court did not need to decide and

10   did not make a factual finding with citations to the

11   record as to when the mitigation opportunity arose

12   because that wasn't the issue on summary judgment.

13        The Court held on summary judgment that the

14   conditions of the -- the 10 conditions of 3.2 had not

15   been met by June 30th and therefore the Deed of

16   Settlement was gone after June 30th.  Okay.  That's where

17   we are but that does not resolve the issue of whether

18   mitigation arose prior to the Deed of Settlement no

19   longer being in force and effect.  And as the Court noted

20   in its summary judgment decision, the issue of mitigation

21   goes to damages.

22        So, the factual finding, the factual issue of

23   when the mitigation opportunity arose is not law of the

24   case as Mr. Moss submits.  It was not necessary for the

25   Court to make a finding on that issue on summary judgment

19

Proceedings

1    because there was a breach.  The Court's statement in the

2    summary judgment decision regarding the timing of

3    mitigation is not a factual finding.  It's not linked to

4    record evidence or anything else in the record of the

5    summary judgment motion because in fact the record is

6    indeterminant on this issue and the Court did state in

7    its October 15th decision that Mr. Kwok could present

8    damages of proof at trial.

9         We're not arguing that that statement is law of

10   the case but we're respectfully submitting that that

11   statement that Mr. Kwok could present damages, proof of

12   damages at trial is the correct ruling here.

13        Now, on the issue of the reasonableness of the

14   mitigation, reasonableness being quintessentially a

15   factual issue, and there are numerous valuations in the

16   record.  Most of them, perhaps all of them, commissioned

17   by the plaintiff at various times.  There the record is

18   suffused with evidence that the plaintiff's own staff

19   people felt that the price required to release the lien

20   was a good price, that it would lead to an immediate

21   write-up and the like but we're not here to argue the

22   facts of reasonableness.

23        The issue before the Court is whether the

24   reasonableness of the mitigation opportunity is a factual

25   issue requiring a trial.  And there the law both in New

Proceedings

```
 1        York and Hong Kong is controlling and conclusive.

 2              We point the Court in our brief to the Malihan

 3        case from the First Department.  The Malihan case is

 4        really, although in a New York context in a different

 5        context, exactly what happened here.

 6              Plaintiff had a contract, a Deed of Settlement

 7        that entitled it to conveyance of the properties.  It was

 8        supposed to get title.  It was supposed to own the

 9        properties.  The government imposed an impediment and the

10        seller says that the impediment of the government should

11        have been cleared by the buyer as a mitigation to protect

12        the value of the asset and to ensure the result for which

13        the buyer bargained under the Deed of Settlement.

14              Well, that's what happened in the Malahan case.

15        In the Malahan case, there was a tax lien on the property

16        and the First Department held that the buyer under its

17        duty of mitigation was required to pay off the tax lien

18        to clear the title.  Now, I acknowledge that was $12,000.

19        And claiming the title of these three highly valuable

20        properties in a world class development in Pangu Plaza in

21        Beijing was a couple more digits than $12,000 but it

22        doesn't matter.  Reasonableness and whether that higher

23        amount of money was a reasonable mitigation for a

24        plaintiff that has 40 billion dollars in assets under

25        management is a factual issue.
```

21

Proceedings

1          The First Department held in Malahan that when

2    you're a buyer and you have a contract to buy a property

3    and there is a government lien on it, that if it's a

4    reasonable proposition, you should pay off the lien to

5    clear title and get the property and then you can go

6    after the seller for the amount that you had to spend on

7    mitigation just as plaintiff would do here, could do here

8    with Kwok.  So, that's the New York law.  It's very

9    clear.

10          Think about this in the context of a New York

11   real estate transaction.  You have a huge private equity

12   fund here that's trying to bargain for to take control of

13   a valuable asset and there is an impediment imposed by an

14   extraneous government situation, whether it's a tax lien,

15   whether it's a complaint by Kwok's competitor about the

16   square footage advertised, whether it's in a New York

17   context some Martin Act claim that leads to some

18   impediment to transfer of the property, whatever it is,

19   if it's a reasonable mitigation, the buyer has to do it.

20   And whether it's reasonable is a factual issue.

21          Now, under Hong Kong law, it's the same and

22   Mr. Georgiou cites numerous cases in his affidavit

23   regarding the duty of mitigation under Hong Kong law.  I

24   really can't pronounce the name but I'll try the GE

25   Qingfu versus L & A International.  That's a situation

22

Proceedings

1    where the Hong Kong Court held that a company was

2    required to make a substantial expenditure to purchase

3    its own shares in order to put the counter party, to

4    restore the counter party to the share percentage that it

5    was supposed to have.  The company had to buy back its

6    own shares, spend a lot of money to do it to put the

7    counter party in the position that it was supposed to be

8    in.

9          In a more pedestrian non-corporate setting

10   Lagden versus O'Connor, the Hong Kong court held that

11   it's reasonable for someone to pay to rent a car to

12   replace their car where they had to pay a higher rate for

13   the car rental than the other party would have had to pay

14   because of their particular circumstance but it was

15   reasonable for them to spend the money and do it and that

16   it was a reasonable and appropriate mitigation.

17         So, that's where we're at here under the Deed of

18   Settlement.

19         And the valuation of those apartments and

20   whether it was reasonable is a fact issue that we will

21   attempt to prove at the hearing was reasonable for

22   Pacific Alliance, would have been profitable for Pacific

23   Alliance, would have put Pacific Alliance in exactly a

24   position that it wanted to be in under the Deed of

25   Settlement which was a contract for the conveyance of

23

Proceedings

1       these apartments.

2              The other argument asserted by plaintiff to

3       attack the Deed of Settlement and they have to do that,

4       they have to attack the Deed of Settlement because there

5       is no law in the record holding that mitigation was not

6       required if the Deed of Settlement was in force and

7       effect.  So, the ten obligations under section 3.2, this

8       is addressed by Mr. Georgiou in his affidavit, were very

9       clearly conditions that had to be met not for the Deed of

10      Settlement to go into effect but for the plaintiff to

11      close on the conveyance and for the requirement met

12      before there was a closing before Pacific had to pay the

13      money, but from 2011 to 2015 all of the evidence shows

14      that these parties understood, agreed and knew that their

15      arrangement was governed by the Deed of Settlement.  And

16      to argue now that the Deed of Settlement never took

17      effect when they continually extended it for that four

18      year period is contrary to Hong Kong law according to

19      Mr. Georgiou and it doesn't make commercial sense.

20             You have a contract for the sale of a property.

21      The parties are bound by that contract until it's

22      breached.  When and if there is an opportunity to

23      mitigate, the buyer has to do what's required to

24      mitigate, to save, to protect and preserve the asset to

25      ensure it's conveyance.

KATHY Y. JONES, OFFICIAL COURT REPORTER

24

Proceedings

1        THE COURT:  I think I understand your argument,

2   Mr. Siegal.  You've repeated it three or four times.

3        MR. SIEGAL:  Let me just finish up here.

4        Here, the Hong Kong experts have a disagreement

5   but the Court has to look at the law and it's based on a

6   factual dispute in an agreement where the facts need to

7   be presented for the jury and the jury to decide.

8        So, I do appreciate the Court's patience in

9   listening.  If you have any questions, I'd be glad to

10  answer them.

11       THE COURT:  All right.  Mr. Moss, do you have

12  anything else to say?

13       MR. MOSS:  If I could just touch very briefly,

14  your Honor.

15       I just heard Mr. Siegal argue at length about

16  the duty to mitigate under the 2013 Deed of Settlement.

17  Let me just read to you again the brief that he wrote

18  just two months ago.  Docket 603.  Pacific Alliance had a

19  continuing duty of mitigation.

20       Your Honor, the brief Mr. Siegal submitted

21  before his most recent one said Pacific had a continuing

22  duty of mitigation of damages under the personal

23  guarantee on which it is now suing.  The expiration of

24  the Deed of Settlement is irrelevant for purposes of

25  mitigation.

KATHY Y. JONES, OFFICIAL COURT REPORTER

25

Proceedings

1    We all agree that the Deed of Settlement

2    expired.  Mr. Kwok agrees.  Your Honor held that on

3    summary judgment.  So, all of this stuff about the Deed

4    of Settlement is not relevant.

5         The duty if any was under the personal guarantee

6    and as a matter of law there's no duty under the personal

7    guarantee.

8         This argument about the Deed of Settlement

9    having some sort of mitigation duty is completely

10   confused.  You need a breach for a mitigation duty and

11   here there was no breach.

12        THE COURT:  You made that point.  I understand.

13        MR. MOSS:  Okay, your Honor.

14        Thank you.  I'm happy to wrap up, your Honor.

15        THE COURT:  Okay.  So, let me ask you, we have an

16   issue with respect to a boat that I enjoined Mr. Kwok from

17   moving which he may or may not have moved in violation of

18   the Court's order.

19        Where are we with respect to that issue?

20        MR. MOSS:  We've never heard back from the other

21   side.

22        I've spoken to Ms. Carvalho I think once or

23   twice and asked her response and have been told that

24   we're going to receive one and we have not received one.

25        MR. SIEGAL:  Your Honor, John Siegal.

KATHY Y. JONES, OFFICIAL COURT REPORTER

26

Proceedings

1    We have responded and Ms. Carvalho can provide

2    to the Court the information that we've been able to

3    provide in response.

4         MS. CARVALHO:  Yes, your Honor.  Melissa Carvalho

5    for defendant Kwok.

6         On November 9th we provided the ownership

7    information to plaintiff's counsel pursuant to this

8    Court's order to do so.  The owner of the yacht is an

9    entity that 100 percent owns the yacht.  Mr. Moss is

10   aware of all of that information and it's been provided.

11   We have been told that Mr. Kwok does not have any

12   ownership interests in the yacht.

13        MR. MOSS:  Your Honor, the information I'm talking

14   about is the information about where the boat is and when

15   it was moved.  That is what violated your order if that

16   happened.  That's what we want to know.  I keep hearing

17   this suggestion about Mr. Kwok not owning the boat.

18        Mr. Mitchell represents Mr. Kwok in another case

19   and he signed a pleading where he referred to that yacht

20   as Mr. Kwok's boat.  So, this is nonsense that this is

21   not Mr. Kwok's boat.

22        MR. MITCHELL:  Your Honor, this assertion that the

23   pleading that he's talking about wasn't referring to

24   ownership.  It was referring to the fact that Mr. Kwok was

25   on that boat while he was being stalked by a person who was

      KATHY Y. JONES, OFFICIAL COURT REPORTER

27

Proceedings

1    driving around the boat determining weaknesses and

2    broadcasting saying this is where somebody could attack the

3    boat.  This is where somebody could shoot a rifle at the

4    boat.  There was no implication in any way as to ownership,

5    just merely the fact that Mr. Kwok was on the boat.

6            It was my pleading.  It wasn't a document by

7    Mr. Kwok.  It wasn't affirmed, anything like that and

8    this was a reference to occupation such as, with all due

9    respect, your Honor, this is your courtroom so to speak.

10   The New York state court owns it.  His does not

11   necessarily define ownership.  It's an absurd reliance by

12   Mr. Moss.

13           THE COURT:  Where is the boat?

14           MR. MITCHELL:  Quite frankly, your Honor, Mr. Moss

15   is the one who told us it was gone.  He should be aware.

16   He cited some tracking device.  There was some site that he

17   was able to find where it was.  We can try and confirm but

18   Mr. Moss told us where it was.

19           We will be certainly happy to get you that

20   information.

21           THE COURT:  It seems to me I ordered the boat not

22   be moved.

23           MR. MITCHELL:  Well, frankly, your Honor, my

24   understanding is and it's second hand admittedly but it has

25   to go down south at least to a minimum to the warm weather.

KATHY Y. JONES, OFFICIAL COURT REPORTER

28

Proceedings

1   It would be destroyed up here in the north.  And you have

2   the staff on the boat who don't live in the north who go

3   home.  I believe it's from Florida is my understanding.

4        It has to move, quite frankly, your Honor, with

5   all due respect but it's not Mr. Kwok's boat to, you

6   know, sort of decide that frankly.

7        I would be glad to try and speak with Mr. Siegal

8   and see if we can get more information but I think

9   Mr. Moss is posturing here.

10        MR. MOSS:  And I recall, your Honor, that

11   Mr. Siegal asked if the boat could be moved and the Court

12   said no, not until you make a motion.  And then we found

13   out that the boat was moved.  We asked for information

14   about where it is.  They should know better than we.

15   Mr. Kwok certainly had something to do with the boat and

16   got no response to that.

17        THE COURT:  All right.  Well, if there is going to

18   be a motion for contempt made, you will make the motion for

19   contempt.  I'll decide what's before me.  And you will hear

20   from me shortly.

21        This is also supposed to be a status conference.

22        So, are there issues to be tried separate and

23   apart from the issues that were argued this morning?

24        MR. MOSS:  Yes, your Honor.  There is the veil

25   piercing claim?
     KATHY Y. JONES, OFFICIAL COURT REPORTER

29

Proceedings

1    THE COURT:  How do you want to deal with the veil

2    piercing claim?

3         One of the Genever entities is in bankruptcy and

4    the other is not?

5    MR. MOSS:  Correct.  So, what we've done, your

6    Honor, we put in a stipulation, all three parties, to

7    continue the trial by 90 days and we have also moved in the

8    bankruptcy to lift the stay.  And what we're hoping is that

9    by the time Covid clears a little bit and we are able to

10   have an in-person trial, by that time there will be a lift

11   of the stay for the veil piercing trial to proceed.

12   THE COURT:  So, you're in effect stipulating to a

13   stay of the alter ego trial?

14   MR. MOSS:  Correct, your Honor, for 90 days.

15        The hope is that by March or April we will be

16   able to be in person in the courtroom because I think we

17   would all prefer to be in person especially if it's going

18   to be a jury trial.  I think we have to do it that way.

19   We're hoping that at that point there won't be a stay in

20   effect.

21   THE COURT:  There is not going to be any jury

22   trials in 90 days.  So, we'll give you an adjourned date

23   for a trial on the alter ego issue some time in the fall.

24   MR. MOSS:  Okay, your Honor.

25   THE COURT:  All right.  I think that's everything

KATHY Y. JONES, OFFICIAL COURT REPORTER

30

Proceedings

1    that needs to be done today.  I'll decide what's before me

2    as promptly as I can and we'll have a status conference

3    perhaps in March of 2021.  Okay.  Thank you.

4              MR. MOSS:  Thank you.

5              MR. MITCHELL:  Thank you, your Honor.

6              THE COURT:  Thank you.

7              MR. MOSS:  Thank you.

8              THE COURT:  You will order a copy of the

9    transcript.

10

11              C E R T I F I C A T E

12         Certified to be a true and accurate transcript of the

13   proceedings.

14

15   _____
                                    *Kathy Jones*

16   Kathy Y. Jones
     Official Court Reporter

17

18

19

20

21

22

23

24

25

         KATHY Y. JONES, OFFICIAL COURT REPORTER