**Hearing Date: February 3, 2021**
**Hearing Time: 10:00 a.m.**

Stuart Sarnoff
Edward Moss
O'Melveny & Myers LLP
7 Times Square
New York, NY 10036
Telephone: 212-326-2000
Email: ssarnoff@omm.com
      emoss@omm.com

Douglas E. Spelfogel
Alissa M. Nann
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-2329
E-Mail: dspelfogel@foley.com
      anann@foley.com

*Attorneys for Pacific Alliance Asia Opportunity Fund L.P.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| GENEVER HOLDINGS LLC, | Case No. 20-12411-jlg |
| Debtor. | |

---------------------------------------------------------------------X

**PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.'S REPLY (I) IN FURTHER SUPPORT OF ITS MOTION TO MODIFY THE AUTOMATIC STAY TO PROCEED WITH STATE COURT LITIGATION, AND RELATED RELIEF, AND (II) IN RESPONSE TO OBJECTIONS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1
ARGUMENT .................................................................................................................................. 4
    I.    The Court Should Lift the Stay to Allow PAX's Claims to Proceed Outside of Bankruptcy. ........................................................................................ 4
    II.    The Bankruptcy Court Should Decline to Opine on Where and How PAX's Claims Will Proceed. ................................................................................. 9
CONCLUSION ............................................................................................................................ 12

# TABLE OF AUTHORITIES

                                                                                                                       **Page(s)**

**Cases**

*Celotex Corp. v. Edwards,*
   514 U.S. 300 (1995) ............................................................................................................. 10

*In re 68 W. 127th St., LLC,*
   285 B.R. 838 (Bankr. S.D.N.Y. 2002) .................................................................................... 6

*In re Abeinsa Holding, Inc.,*
   2016 WL 5867039 (Bankr. D. Del. Oct. 6, 2016) ................................................................... 9

*In re Balco Equities Ltd., Inc.,*
   312 B.R. 734 (Bankr. S.D.N.Y. 2004) .................................................................................... 6

*In re Castro*,
   503 F. App'x 612 (10th Cir. 2012) ....................................................................................... 10

*In re Consol. Distribs.*,
   Case No. 13-40350 (NHL), 2013 WL 3929851 (Bankr. E.D.N.Y. July 23,
   2013) ................................................................................................................................... 4, 7

*In re C-TC 9th Ave. P'ship,*
   113 F.3d 1304 (2d. Cir 1997) ............................................................................................. 5, 6

*In re G.S. Distrib. Inc.*,
   331 B.R. 552 (Bankr. S.D.N.Y 2005) ..................................................................................... 4

*In re Project Orange Assocs., LLC,*
   432 B.R. 89 (Bankr S.D.N.Y. 2010) ....................................................................................... 7

*Matter of Cohoes Indus. Terminal, Inc.*,
   931 F.2d 222 (2d Cir. 1991) .................................................................................................... 6

*Matter of Little Creek Dev. Co.*,
   779 F.2d 1068 (5th Cir. 1986) ................................................................................................. 6

*Presidential Gardens Assocs. v. U.S. ex rel. Sec. of Hous. & Urb. Dev.,*
   175 F.3d 132 (2d Cir. 1999) .................................................................................................. 10

*Sapphire Dev., LLC v. McKay*,
   549 B.R. 556 (D. Conn. 2016) ................................................................................................ 7

*Sonnax Indus., Inc. v. Tri-Component Prods. Corp. (In re Sonnax Indus., Inc.),*
   907 F.2d 1280 (2d Cir. 1990) .................................................................................................. 1

*Tower Auto. Mexico, S.A. de R.L. de C.V. v. Grupo Proeza, S.A. de C.V.(In re
   Tower Auto., Inc.)*,
   356 B.R. 598 (Bankr. S.D.N.Y. 2006) .................................................................................... 9

**Treatises**

7 Collier on Bankruptcy ¶ 1112 ..................................................................................................... 7

Pacific Alliance Asia Opportunity Fund L.P. ("PAX"), by its counsel, O'Melveny & Myers LLP and Foley & Lardner LLP, as and for its reply (i) in further support of its motion (the "Motion" or "Mot.")[1] under 11 U.S.C. § 362(d) for the entry of an order modifying the automatic stay to allow PAX to conclude its New York State Court lawsuit, Docket No. 652077/2017, (the "State Court Action") pending before Justice Barry R. Ostrager against the Debtor and its principal, Miles Kwok ("Kwok") and related relief, and (ii) in response to (a) the Debtor's response and reservation of rights with respect to the Motion (the "Response"), and (b) the objection of Bravo Luck Limited ("Bravo Luck") to the Motion (the "Objection" and together with the Response, the "Objections"), respectfully states as follows:

## PRELIMINARY STATEMENT

1. PAX demonstrated in its Motion that the Court should modify the automatic stay to allow PAX to conclude the State Court Action against the Debtor, and to address any attendant claims by any other non-debtor third parties, including but not limited to Bravo Luck, up through entry of final judgment, but excluding enforcement of any such judgment as against the Debtor.

2. PAX clearly has established that (i) it is entitled to such relief because the Petition was filed in bad faith, and (ii) even without bad faith, the stay should still be modified because the factors articulated by the Second Circuit in *Sonnax Indus., Inc. v. Tri-Component Prods. Corp.* (*In re Sonnax Indus., Inc.*), 907 F.2d 1280 (2d Cir. 1990) militate in favor of such relief.

3. Although the Debtor and Bravo Luck both filed Objections, those submissions only confirm that the Court should modify the stay as requested in the Motion. Indeed, both the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Debtor and Bravo Luck concede as much. The Debtor admits there is no question "whether the litigation should proceed outside of bankruptcy,"[2] and that an analysis of the *Sonnax* factors "militates in favor of resolution outside of bankruptcy."[3] The Debtor further states that "[t]he Chapter 11 case was filed with due recognition that . . . the underlying litigation would invariably proceed elsewhere."[4]

4.     Thus, PAX's Motion is essentially unopposed. While both the Debtor and Bravo Luck contend that the purported Bravo Luck ownership issue should be decided before the veil-piercing trial in the State Court Action proceeds—and that the ownership issue should be decided by the court in the BVI Action—neither disputes that both of these matters should be decided ***outside of this Court***. But there is no reason and no basis for this Court to decide whether and how the State Court Action should proceed vis-à-vis the BVI Action, particularly because this determination is irrelevant to whether cause exists to modify the automatic stay—given that the Debtor is ***not*** a party and has not sought relief in the BVI Action. Rather, the Court should modify the stay so that PAX's entire claim can be adjudicated elsewhere, and allow Justice Ostrager and the BVI court to determine how, where, and when that task is to be accomplished.

5.     As explained in detail below, cause exists to grant PAX's Motion and allow its claims (and the Bravo Luck issue, if an as appropriate) to be adjudicated outside of bankruptcy because in addition to bad faith, which PAX conclusively has established, (i) both the Debtor and Bravo Luck concede that those issues should be adjudicated elsewhere, and (ii) the Debtor concedes (and Bravo Luck does not dispute) that PAX satisfies the *Sonnax* factors—meaning

---

[2] Response ¶ 2.

[3] *Id.* at 3, n.2.

[4] *Id.* at ¶ 3.

that PAX has met its burden even without showing bad faith.  Of course, PAX has established bad faith in spades, and the Debtor does not even try to refute Kwok's history of perjury, fraud, and abuse of the judicial process.  Nor does the Debtor try to dispute that Kwok masterminded this bankruptcy filing as part of his "shell game" to try to prevent PAX from collecting on its judgment in a two-party dispute, where there is nothing to reorganize, and where PAX holds over 99% of the non-insider debt.  Nor could it, when the stated purpose of the bankruptcy was to have Kwok's son—rather than PAX—deemed the owner of the Residence (or at least a priority creditor).

6.   Instead, the Debtor argues that the sales process should happen in this proceeding and should be supervised by this Court.  PAX does not disagree, so long as appropriate safeguards are in place.  Indeed, the only reason PAX did not move to dismiss the obviously sham Petition is because it has no objection to a Court-supervised sale of the Residence, so long as it is fairly administered by an independent third party and the sales proceeds are preserved in a Court-supervised escrow account.  But whether or not a sale proceeds herein has nothing to do with modifying the automatic stay for the limited purposes of adjudicating the State Court Action.  Selling the Residence and lifting the stay are entirely separate issues.  For these and the other reasons below, the Court should grant the Motion.

# ARGUMENT

### I. The Court Should Lift the Stay to Allow PAX's Claims to Proceed Outside of Bankruptcy.

7.  PAX demonstrated in the Motion that there is cause to modify the automatic stay under Bankruptcy Code section 362(d)(1), and the Debtor's and Bravo Luck's[5] Objections confirm—indeed concede—as much.

8.  *First*, there is no dispute that PAX's claims should be resolved outside of the Bankruptcy Court, because the Debtor itself admits that "[t]he Chapter 11 case was filed with due recognition that . . . the underlying litigation would invariably proceed elsewhere,"[6] and that "the pending litigation over beneficial ownership of the Debtor's equity does not present core bankruptcy matters arising in or under the Bankruptcy Code."[7]  ***Thus, the core relief that PAX requests is uncontested.***

9.  *Second*, the Court should modify the stay even without a showing of bad faith (which PAX, in any event, has made), if the *Sonnax* factors are met—which the Debtor also concedes.  Indeed, ***the Debtor admits that the Sonnax factors "militate[] in favor of resolution outside of bankruptcy*.**"[8]  This provides an independent basis to grant the Motion.  *See, e.g.*, *In re G.S. Distrib. Inc.*, 331 B.R. 552, 568 (Bankr. S.D.N.Y 2005) (lifting stay upon review of the *Sonnax* factors); *In re Consol. Distribs., Inc.*, No. 13-40350 (NHL), 2013 WL 3929851, at *12 (Bankr. E.D.N.Y. July 23, 2013) (same).

---

[5] As Bravo Luck does not contest anything in the Motion other than to argue that PAX's claims should proceed in the BVI (where the Debtor is not even a party) rather than the State Court Action, its Objection is irrelevant.  Nevertheless, PAX addresses the Objection in Section II below.

[6] *Id*.

[7] *Id.* at 3, n.2.

[8] *Id.* (emphasis added).

4

10.     *Third*, the Court should modify the stay because PAX has shown that the Petition was filed in bad faith.  PAX has demonstrated—in great detail, comprising nearly 20 pages of briefing and over 60 exhibits—that the Debtor (through Kwok) has acted in the utmost bad faith and that each of the factors establishing bad faith are met.  For the better part of a decade, Kwok (who controls the Debtor) has engaged in a wrongful pattern and practice of dishonesty in avoiding repaying his debt to PAX and obstructing the State Court Action, including routinely committing perjury and misleading Justice Ostrager—who has held that Kwok has "misle[]d" him and is playing a "shell game" with his assets.[9]  Indeed, Kwok caused the Debtor to file this Petition just after Justice Ostrager restrained him from dissipating his assets, and on the eve of having a nine-figure judgment entered against him—solely to delay and attempt to create another road-block for PAX.  The Debtor has, and so offers, no response to this overwhelming evidence of bad faith.

11.     Instead, the Debtor offers up a handful of baseless arguments that the Court should summarily reject.  To begin, in an effort to rebut PAX's showing that every single one of the *C-TC* factors[10] for subjective bad faith weighs in PAX's favor, the Debtor mischaracterizes several fundamental facts.  For example:

- The Debtor claims that it has more than one asset because the Residence is made up of multiple apartments on the same floor (a main apartment and a maid's unit) and the Sherry-Netherland has a security deposit.[11]  But (i) there is no realistic expectation (nor has there been any discussion) of selling the units separately; and (ii) the security deposit would become available only upon the sale of the

---

[9] Mot. Ex. 54 at 21:10–22:14.

[10] *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1311–12 (2d Cir. 1997).

[11] Response ¶ 19.

5

      Residence.  Accordingly, the Debtor has only a single asset, which the Petition itself confirms.[12]

- The Debtor claims that this is not a two-party dispute because there are multiple creditors.[13]  But the Debtor's Petition confirms that PAX holds more than 95% of the non-insider debt.  All of the other creditors (besides the Sherry-Netherland, which holds a security deposit)—*i.e.*, Kwok's company Golden Spring, and his son[14]—are, like Bravo Luck, insiders.

- The Debtor baldly asserts that the Petition was filed to protect the value of the Residence and not to delay or frustrate the State Court Action.[15]  But the Petition itself set this case up as a PAX vs. Bravo Luck ownership fight—a clear next step in the "shell game" Kwok has been playing for years to try to hide his assets from PAX.  Moreover, the Sherry-Netherland dispute has been ongoing for months; nothing changed to necessitate the bankruptcy filing—except that Kwok was on the cusp of having a huge State Court judgment entered against him and felt the walls closing in.

12.    Even if a factor or two did not weigh in PAX's favor, the Court should still find bad faith because *C-TC* and its progeny require an analysis of the totality of the circumstances.[16] In fact, the Debtor itself concedes that "[t]he existence of 'bad faith' depends not on any one specific factor but on a combination of factors determined after careful examination of the facts of the particular debtor's case."[17]  As detailed in the Motion, a more damning case of bad faith would be difficult to find.

---

[12] ECF No. 1 at 2 (describing Debtor's business as "Single Asset Real Estate").

[13] Response ¶ 19.

[14] ECF No. 4 at 9.

[15] Response ¶ 19.

[16] 113 F.3d at 1312 ("[A] determination of bad faith requires a full examination of all the circumstances of the case; it is a highly factual determination but also one that may sweep broadly.") (citing *Matter of Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 227 (2d Cir. 1991) and *Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986)).

[17] Response ¶ 18 (quoting *In re 68 W. 127th St., LLC*, 285 B.R. 838, 844 (Bankr. S.D.N.Y. 2002)).

13.     Moreover, while not required (given satisfaction of the *Sonnax* factors and the subjective bad faith test under *C-TC* and *Syndicom*[18]), PAX also demonstrates the Debtor's inability to restructure, satisfying the objective futility test.  Here, the Debtor cannot restructure given that PAX, by far its largest creditor, would oppose any such plan, and the other creditors (*de minimis* creditors and Bravo Luck, an insider, who would be impaired and thus not entitled to vote) could not overcome that opposition.[19]  The Debtor completely ignores this reality, and offers only the conclusory *non sequitur* that because it "owns an unencumbered asset having a value of tens of millions of dollars even in a bad market, it cannot be said that the Debtor is incapable of confirming a plan of reorganization."[20]  However, the Debtor's representation that there is sufficient value in the Residence to pay PAX is knowingly false.  PAX's damages award exceeds $115 million, which is more than double the likely value of the assets.  Accordingly, the Debtor's assets do not far exceed the liabilities; in fact, the exact opposite is true.

14.     Nor does the Debtor address the even more obvious reason why it cannot confirm

---

[18] Courts in this Circuit have held that subjective bad faith is sufficient to demonstrate cause for stay relief under Bankruptcy Code section 362(d)(1).  *See, e.g.*, *In re Project Orange Assocs., LLC*, 432 B.R. 89, 113 (Bankr. S.D.N.Y. 2010) (court only looks to subjective bad faith element (but found cause on other grounds)); *In re Balco Equities Ltd., Inc.*, 312 B.R. 734, 748–49 (Bankr. S.D.N.Y. 2004) (bad-faith lift-stay analysis based upon the *C-TC* subjective factors, but lifting stay on other grounds); *Consol. Distribs.*, 2013 WL 3929851, at *8 (noting that the *C-TC* factors subsume both the subjective and objective tests; "'[t]he majority of the *C-TC* factors are 'objective,' in that they can be gauged by objective facts. . . . [The] fifth factor touches on subjective intent – the debtor's 'intent.'  Once the movant has established both subjective bad faith and objective futility, 'a rebuttable presumption of bad faith arises . . . .'" (citations omitted)).  *See also Sapphire Dev., LLC v. McKay*, 549 B.R. 556, 568 (D. Conn. 2016) (finding that the Second Circuit does not require both objective futility and subjective bad faith for purposes of dismissing a debtor under section 1112(b)); *accord* 7 Collier on Bankruptcy ¶ 1112.07(6)(a) (because the "[a]bsence of a reasonable likelihood of rehabilitation" is already an enumerated cause in Section 1112(b)(4)(A), "adding a requirement of objective futility [to a bad faith analysis] . . . may effectively negate bad faith filing as a separate basis for dismissal or conversion of the case.").

[19] *See* Mot. ¶ 68 and 27 n.112.

[20] Response ¶ 18.

7

a plan: there is nothing to reorganize. The Debtor is a mere shell formed only to hold and shield a single asset:[21] the Residence. It serves no other purpose— there is thus no entity to reorganize. The Debtor has no employees,[22] no income,[23] no ability to generate income, and has never paid for the expenses relating to the Residence, including maintenance and repairs.[24] The Debtor's filings, including the operating reports, show that the Debtor has no cash flow or income, and cannot meet its current expenses, which include payment of maintenance, property taxes, and other charges accruing at a rate of over $70,000 per month.[25] Further, the Debtor has even acknowledged that it plans to sell the Residence[26] and that the proceeds will pay off creditors.[27] Once that occurs, there will be nothing left of the Debtor.

15.     Accordingly, and as detailed in the Motion, PAX has demonstrated cause to modify the stay under Bankruptcy Code section 362(d)(1), and the Motion should be granted.[28]

---

[21] Mot. Ex. 14 at 47:19–22, 100:8–101:19.

[22] *Id.* at 36:17–19, 96:18–20.

[23] *Id.* at 26:4–13, 86:16–87:22, 100:8–25.

[24] Debtor's Decl. ¶¶ 4–5.

[25] *See* ECF Nos. 24–26, 32–34 (Monthly Operating Reports).

[26] PAX notes that the Debtor has failed to file a sale motion, bid procedures, or retain a broker, despite being in bankruptcy for over 3 months. Further, the Debtor attempts to twist the fact that PAX has engaged in discussions with Debtor over an agreed-upon sale process. Response ¶ 5. This is irrelevant to the instant Motion, and is not an admission that the Debtor can or should remain in control. Any sale process requires removing the Debtor as the decision-maker, given Kwok's history of fraud and malfeasance.

[27] PAX discusses in detail the factors that support conversion or appointment of a trustee, including the Debtor's objective futility, in its recent motion to convert the Chapter 11 Case, or in the alternative, to appoint a Chapter 11 trustee (ECF No. 29, the "Conversion Motion"), at 36–40.

[28] By its final reservation, the Debtor objects to the Motion to the extent PAX seeks relief to enforce any potential judgment against the Residence. Response ¶ 21. As made clear by the Motion, PAX seeks relief to modify the automatic stay to allow PAX to conclude the State Court Action against the Debtor, *up through entry of final judgment, but excluding enforcement of any such judgment as against the*

**II.     The Bankruptcy Court Should Decline to Opine on Where and How PAX's Claims Will Proceed.**

16.     Both the Debtor and Bravo Luck offer their irrelevant opinions that PAX's claims should proceed in the BVI Action rather than the State Court Action before Justice Ostrager.[29] These Objections, however, ignore that *the State Court Action names the Debtor while the BVI action does not*—meaning that any stay is totally irrelevant in the BVI.  The Objections likewise ignore that PAX claims in the State Court Action that the Debtor is an alter ego of Kwok, while there are no alter ego claims in the BVI.  Thus, the actions do not completely overlap, as the Objections seem to suggest.  They involve different parties and different claims, and there is no good reason to stay the State Court Action in favor of the BVI action.

17.     Further, PAX respectfully submits that the role of this Court is not to decide the proper forum for a two-party dispute that admittedly does not implicate any bankruptcy issues.[30] Just as the bankruptcy court would not hear third-party disputes that are collateral to the bankruptcy, neither should it hear the even more tangential issue of where and how such third

---

*Debtor*.  Mot. at 34–35.  Given the limited relief requested by PAX, Debtor's objection on this basis is moot.

[29] Response ¶¶ 7–8 ("Pacific Alliance and Bravo Luck are already joined in the BVI Action, as compared to the New York Action which does not include Bravo Luck.  Conversely, the Debtor is not a party in the BVI Action, so stay relief is not required at this time, and the Debtor would not have to expend any resources therewith."); Objection ¶¶ 10–11 ("[T]he ownership issues [between PAX and Bravo Luck] will be more efficiently and economically resolved in the BVI.")

[30] *See, e.g., In re Abeinsa Holding, Inc.*, 2016 WL 5867039, *4 (Bankr. D. Del. Oct. 6, 2016) (granting stay relief where creditor had alternative option to proceed against non-debtor parent in an arbitration proceeding, and noting the creditor's concern that the debtor was "using [its opposition to stay relief] offensively to force their choice of forum"); *accord Tower Auto. Mexico, S.A. de R.L. de C.V. v. Grupo Proeza, S.A. de C.V. (In re Tower Auto., Inc.)*, 356 B.R. 598, 603 (Bankr. S.D.N.Y. 2006) (dismissing adversary proceeding brought by non-debtor subsidiary against non-debtor third party which was party to a litigation relating to (but not against) the debtor, and noting that just because the outcome of the litigation may impact the debtor, this was not sufficient to grant the bankruptcy court jurisdiction over a dispute between two non-debtors).

9

party disputes should be adjudicated. *See generally, Celotex Corp. v. Edwards,* 514 U.S. 300, 308 n.6 (1995) (holding bankruptcy courts have no power to hear third-party disputes that are collateral to the bankruptcy); *Presidential Gardens Assocs. v. U.S. ex rel. Sec. of Hous. & Urb. Dev.,* 175 F.3d 132, 142 (2d Cir. 1999) (accord).[31]

18. The issue before the Court on this Motion is whether to allow the State Court Action—which has been pending for nearly four years and would have concluded with a trial this month but for the pandemic—to proceed to its conclusion. That is a straightforward inquiry, and PAX has more than carried its burden of demonstrating that modifying the stay is warranted. In the event an application is made in the future before Justice Ostrager or the BVI Court regarding the interplay between and staging of those pending actions (and no such application has been made yet), one of those courts can rule on that application. But there is no reason or basis for this Court to wade into those waters now.

19. Moreover, although the Debtor and Bravo Luck both claim that they are not forum shopping and perpetuate the façade that Bravo Luck is separate and distinct from Kwok (who controls the Debtor), that is obviously not the case. Bravo Luck is not even a party to the State Court Action, yet is arguing that it should not proceed,[32] and the Debtor is not even a party to the BVI Action yet is arguing that it should proceed. These two entities are both advancing

---

[31] Bravo Luck's request that this Court deem the BVI Action the appropriate forum in which to adjudicate non-debtor third party claims is not only meritless, it is also procedurally improper. Such an application must be made by motion, so that PAX would have a full and fair opportunity to be heard, including the chance to file an opposition brief.

[32] Because Bravo Luck is not even a party to the State Court Action and is not affected by the Motion, its standing to contest the Motion is questionable at best. *See In re Castro*, 503 F. App'x 612, 614 (10th Cir. 2012) ("[t]he proper party to oppose a request for relief from the stay is 'generally the trustee or the debtor in possession.' . . . Congress's intent to circumscribe the number of contestants to a § 362(d) request flows from its understanding that 'the only issue [presented] will be the claim of the creditor and the lack of adequate protection [of a property interest] or existence of other cause for relief from the stay.'").

10

the same exact argument, and the common thread is obvious: both are controlled by Kwok, who is engaged in gamesmanship and directing the bad-faith procedural maneuvering to try to thwart PAX's legitimate collection efforts.

20.  Indeed, Bravo Luck's positions should be met with great skepticism by the Court. Bravo Luck is more than an insider: it is Kwok himself.  And Kwok (through the shield of Bravo Luck) is trying to weaponize the automatic stay for his own benefit, seeking relief that has ***nothing*** to do with the Debtor or its estate.  Rather, Bravo Luck seeks to use the stay and bankruptcy case as its own shield so that "the ownership issues [between non-debtors PAX and Bravo Luck] can be determined by the BVI court"[33]—not Justice Ostrager, who already sees Kwok for what he is—in an entirely separate proceeding in which the Debtor is not even a party.

21.  Putting aside the impropriety of this tactic, it is a last-ditch attempt to shield the Residence that has no basis in fact.  In four years of litigation in the State Court Action, despite arguing that the Residence had been pledged to other third parties, Kwok (or the Debtor, also a defendant) ***never once*** argued that the Debtor held the Residence in trust for Bravo Luck, or that Bravo Luck was the actual owner.  And for good reason—contrary to its assertions now—Bravo Luck does not actually own the Residence.  PAX detailed in its Motion why Bravo Luck's ownership claim here is false, and ***counsel for Kwok's son (who claims to own and control Bravo Luck) has just confirmed it***.  In a September 22, 2020 email that was recently made public in the BVI—***after the BVI court rejected Bravo Luck's strenuous efforts to keep it and other documents sealed***—Kwok's son's counsel responded as follows to a request that it "elaborate on the nature of [Bravo Luck's] business":

---

[33] Objection ¶ 8.

11

>We have taken instructions from our client. [Bravo Luck] **holds no assets**. It is **purely a paper company for contractual negotiations**.[34]

22.  It is no wonder that Kwok tried so hard to keep this email—sent by Kwok's son's counsel just weeks before the Petition was filed, in which Kwok (through the Debtor) argued that Bravo Luck owned the Residence—from seeing the light of day.[35]

23.  Nor is it a surprise, given Kwok's ever-changing positions, that he (through the Debtor and Bravo Luck) cannot even get his story straight before this Court. The Debtor argues in the bankruptcy filing that it is not the beneficial owner of the Residence;[36] it is unclear why and how the filing—seeking to protect an asset the Debtor asserts it does not even own—serves to advance any legitimate business purpose. Further, although it claims that "the Debtor commenced its [Chapter 11 Case] in order to resolve issues related to competing claims of ownership against the Debtor's primary asset—the Sherry-Netherland Residence," it at the same time "objects to PAX's Motion because the ownership issues related to the Genever Entities and its assets are best decided in the British Virgin Islands."[37]

## CONCLUSION

For all of the reasons stated above and in the Motion, and while reserving all other rights and remedies, PAX respectfully requests that this Court: (i) overrule the Objections; (ii) grant the Motion and modify the automatic stay to allow PAX to conclude the State Court Action against

---

[34] Declaration of Edward Moss, Esq., in Support of Pacific Alliance Asia Opportunity Fund L.P.'s Reply (i) in Further Support of its Motion to Modify the Automatic Stay to Proceed with State Court Litigation, and Related Relief, and (ii) in Response to Objections ("Moss Reply Decl.") Ex. 68 at EMM 135.

[35] Bravo Luck also fought to keep other relevant documents sealed, excerpts of which are included in Moss Reply Decl. Ex. 68. But the BVI Court has denied this request. *See id*. Ex. 69.

[36] Debtor's Decl. ¶ 4.

[37] Objection ¶¶ 5–6.

12

the Debtor, and to address any attendant claims by any other non-debtor third-parties that may be joined as parties, including but not limited to Bravo Luck, up through entry of final judgment, but excluding enforcement of any such judgment as against the Debtor; and (iii) grant such other and further relief as the Court may deem just and proper.

DATED: January 22, 2021
        New York, New York

Respectfully submitted,

O'MELVENY & MYERS LLP
By: */s/ Edward Moss*
Stuart Sarnoff (ssarnoff@omm.com)
Edward Moss (emoss@omm.com)
7 Times Square
New York, NY 10036
(212) 326-2000

-and-

FOLEY & LARDNER LLP
By: */s/ Douglas E. Spelfogel*
Douglas E. Spelfogel
(dspelfogel@foley.com)
Alissa Nann (anann@foley.com)
90 Park Avenue
New York, NY 10016
212-338-3566

*Attorneys for Pacific Alliance Asia Opportunity Fund L.P.*

13