TROUTMAN PEPPER
HAMILTON SANDERS LLP
Francis J. Lawall
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799
Telephone: (215) 981-4000
Facsimile:  (215) 981-4750
francis.lawall@troutman.com

*Counsel for Bravo Luck Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genever Holdings LLC, | Case No. 20-12411 (JLG) |
| Debtor. | **Re: ECF No. 35, 36, 37** |

**OBJECTION OF BRAVO LUCK LIMITED TO MOTION OF PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P. FOR AN ORDER UNDER 11 U.S.C. § 1112(b) CONVERTING THE DEBTOR'S CASE TO A CASE UNDER CHAPTER 7 OR, IN THE ALTERNATIVE, FOR AN ORDER UNDER 11 U.S.C. § 1104(a) APPOINTING A TRUSTEE TO ADMINISTER THE DEBTOR'S ESTATE**

Bravo Luck Limited ("Bravo Luck"), by and through its counsel, hereby objects (this "Objection")[1] to the *Motion of Pacific Alliance Asia Opportunity Fund L.P. for an Order Under 11 U.S.C. § 1112(b) Converting the Debtor's Case to a Case Under Chapter 7 or, in the Alternative, for an Order Under 11 U.S.C. § 1104(a) Appointing a Trustee to Administer the Debtor's Estate* (ECF No. 35) (the "Motion") filed by Pacific Alliance Asia Opportunity Fund L.P. ("PAX") in the bankruptcy case of the above-captioned debtor and debtor in possession (the "Debtor"). In support of this Objection, Bravo Luck respectfully states as follows:

---

[1] By filing this Objection, Bravo Luck does not submit to general bankruptcy or United States jurisdiction. This Objection is only to be construed as a limited appearance of Bravo Luck necessitated by the PAX Motion's potential effect on Bravo Luck and in order for Bravo Luck to protect its rights as a major party-in-interest in this bankruptcy case.  Bravo Luck does not waive, and specifically preserves, all of its procedural and substantive defenses to any claims that may be asserted against Bravo Luck by PAX, the Debtor, or any other party in this case.

1

#112910281 v8

## BACKGROUND

1. On October 12, 2020, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of New York (this "Court").

2. As set forth in the Debtor's Declaration Pursuant to Local Bankruptcy Rule 1007-2 (ECF No. 1) (the "Debtor's Declaration"), this chapter 11 bankruptcy case was commenced in order to allow time to properly resolve the competing claims of ownership against the Debtor's primary asset[2]—the Sherry-Netherland Residence. *See id.* at ¶ 10. Simply put, the resolution of ownership is a gating issue that must be addressed before the Debtor can formulate a plan, as it has told the Court it intends to do. *See id.* at ¶ 12.[3]

3. On January 12, 2021, PAX filed the Motion, a memorandum of law in support of the Motion (ECF No. 36),[4] and a supporting declaration of Edward Moss, Esq. (ECF No. 37). By the Motion, PAX seeks either the conversion of the Debtor's bankruptcy case to a case under chapter 7 or appointment of a chapter 11 trustee. *See* Motion at ¶ 2 (Proposed Order).

## PRELIMINARY STATEMENT

---

[2] Although Bravo Luck asserts that it is the ultimate owner of the Residence, it refers to the Residence herein as being the Debtor's primary asset because the Sherry-Netherland co-op shares for the Residence are held in the name of the Debtor for the benefit of Bravo Luck.

[3] Pursuant to the Debtor's Declaration, the Debtor made clear that it filed this chapter 11 bankruptcy case so that "[b]efore the Premises [i.e., the Residence] become further entangled in litigation involving competing claims of ownership, the Debtor . . . [can] gain the needed flexibility to be in a position to maximize value under the rehabilitative power of the Bankruptcy Court." Debtor's Declaration at ¶ 10. Additionally, the Debtor provided that: "an important threshold goal of the Chapter 11 case is to obtain a resolution of the competing claims relating to the Premises· as between Bravo and Pacific Alliance. Once this issue is resolved or settled, the matter involving Pacific Alliance will be clarified and the Debtor will then be in a position to promulgate a plan of reorganization. Pending such a determination, Chapter 11 will help the Debtor preserve the status quo." *Id.* at ¶ 12.

[4] Terms capitalized but not defined herein shall be ascribed the definitions set forth in PAX's *Memorandum of Law in Support of Motion for an Order Under 11 U.S.C. § 1112(b) Converting the Debtor's Case to a Case Under Chapter 7 or, in the Alternative, for an Order Under 11 U.S.C. § 1104(a) Appointing a Trustee to Administer the Debtor's Estate* (ECF No. 36) (the "Memo of Law").

-2-

4. There is little doubt that PAX is attempting to wrest control of the Debtor's bankruptcy case even though it does not hold an allowed claim against the Debtor. PAX spends virtually its entire Motion attempting to re-litigate the State Court Action against Kwok Ho Wan ("Kwok"), which award of damages Kwok has appealed[5] and for which judgment has not even been entered by the State Court yet— *moreover, and most importantly, the award of damages and forthcoming judgment is not against the Debtor itself*.  PAX does not and cannot cite to a single instance of fraud, self-dealing, malfeasance or other impropriety by the Debtor in this bankruptcy case.  Conversion of the case and appointment of a chapter 7 trustee, or the appointment of a chapter 11 trustee, will only lead to unnecessary administrative expenses and delay in the sale of the Residence to the detriment of all of the Debtor's valid creditors, including Bravo Luck.  Despite PAX's hyperbole and unwarranted accusations of conflicts of interest, nothing PAX has said undercuts the singular fact that the Debtor clearly has the greatest interest in maximizing the value of the sale of the Residence.

5. Contrary to PAX's unfounded assertions, the Debtor made clear that this bankruptcy case was commenced in order to stay litigation pending directly against it while the currently pending litigation to resolve competing claims of ownership against the Residence is decided.  *See* Debtor's Declaration at ¶ 10.  After resolution of this gating issue, the Debtor has committed to formulating a plan to address its debts to all valid creditors.  *See id.* at ¶ 12.  Thus, Bravo Luck does not believe that the Debtor has been forum shopping or using this bankruptcy case as a strategy to avoid a judgment by PAX, but rather the Debtor is simply attempting to preserve the value of the Residence for all interested parties so that it can be sold in a

---

[5] A Notice of Appeal (State Court Action, NYSCEF Doc. No. 634) of the September 15, 2020, Decision and Order on PAX's motion for summary judgement against Kwok was filed on October 16, 2020, and a Notice of Appeal (State Court Action, NYSCEF Doc. No. 697) of the December 18, 2020, award of damages against Kwok was filed on January 12, 2021. Assuming the judgment is entered against Kwok, Bravo Luck expects that Kwok will appeal the judgment as well.

#112910281 v8

commercially reasonably manner and maximize the return for all. In contrast, PAX itself has filed multiple litigations related to the Residence in different jurisdictions. First, PAX filed the State Court Action against Kwok, later bringing in the Genever Entities as defendants. Then, after obtaining an award of damages solely against Kwok—and while the award of damages and (to be entered) judgment is on appeal—PAX filed a proceeding in the British Virgin Islands ("BVI") against Kwok, Genever BVI, Bravo Luck, and Qiang Guo (the "BVI Proceeding"), all of which are related to the State Court Action judgment as well as asserting claims against Bravo Luck in connection with the Trust Agreement. Now PAX is trying to control the Debtor's bankruptcy case, which the Debtor filed because it quite properly believed chapter 11 provided the best path forward for the sale of the Residence while ownership litigation between PAX and Bravo Luck proceeded under the PAX-initiated BVI Proceeding. *See* Debtor's Stay Relief Response (defined below) at ¶ 3.[6] In fact, the Debtor has been trying to reach an agreement between the parties, including PAX and Bravo Luck, on how to run an independent consensual sale process for the Residence.

6. The extensive background on the State Court Action as set forth by PAX in its Motion is irrelevant (and, Bravo Luck believes, in many cases, misstated) for purposes of this Court's determination of the relief sought in the Motion—such issues are for Kwok's appeal of the State Court Action and the PAX-initiated BVI Proceeding. Bravo Luck vigorously disputes PAX's characterizations of itself and Qiang Guo but believes that it would be an unnecessary distraction to the core issues of this Motion to address them here. Bravo Luck,

---

[6] "The Chapter 11 case was filed with due recognition that although the underlying litigation would invariably proceed elsewhere, the framework of the Bankruptcy Code and Rules nevertheless provides the best path forward to market the units. This is no easy task, given the super high-end values involved and the limitations imposed by the current Covid-19 restrictions. In fact, the Debtor's primary asset (*i.e.*, apartment units at the Sherry Netherland Hotel) has always presented unique challenges, which were exacerbated by uncertainty over ownership. Notably, outside of bankruptcy, the apartment units are effectively rendered unsaleable in the face of the ongoing disputes and uncertainty as to ownership, not to mention the impact of the Sherry Netherland's consent rights." Debtor's Stay Relief Response at ¶ 3 (footnote omitted).

-4-

however, is fully prepared to forcefully rebut PAX's contentions at the appropriate time in PAX's pending BVI Proceeding. As for its interest and standing in this bankruptcy case, Bravo Luck and its principal, Qiang Guo, undisputedly advanced tens of millions of dollars to the Debtor in order to purchase the Residence.[7] Additionally, if the BVI court were to determine that Bravo Luck was not the rightful owner of the shares of the Genever Entities and the Residence, Bravo Luck will nevertheless hold a claim against the Debtor for the millions of dollars it advanced and, as such, Bravo Luck is a major party-in-interest in the Debtor's bankruptcy case.[8]

7. Bravo Luck continues to believe that the most efficient and economical path forward in this bankruptcy case is to allow the Debtor to remain as debtor in possession and to move forward with a process—overseen by this Court—for the sale of the Residence, while the BVI Proceeding simultaneously goes forward to determine the ownership dispute between Bravo Luck and PAX.

## OBJECTION

### A. PAX Fails to Demonstrate that "Cause" Exists to Convert the Debtor's Case to Chapter 7

8. Courts in this district have found that "[s]ection 1112(b)(1) of the Code is intended to preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." *In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995) (citations omitted). In that case, the *Lizeric* court found that "the term 'rehabilitate' means 'to put back in good condition; re-establish on a firm, sound basis.' It is not synonymous with the term 'reorganize'." *Id.* (internal citations and

---

[7] Bravo Luck will be filing a claim in the alternative against the Debtor in the approximate amount of $70 million, which was advanced by Bravo Luck to purchase the Residence.

[8] It is uncontroverted that the monies used to fund the purchase the Residence were sourced from Bravo Luck bank accounts.

quotations omitted).  In this case and as described further in this Objection, the Debtor is *not* gambling at the creditors' expense—the Debtor has every interest in maximizing the value of the estate assets and rehabilitating itself after addressing claims of its valid creditors.  The relief sought by PAX is merely another litigation tactic designed to enhance PAX's own end goal to the detriment of the Debtor's other creditors.

9. PAX incorrectly asserts that there are four reasons why "cause" exists to convert the Debtor's case from chapter 11 to chapter 7.  Each of PAX's reasons, however, is inaccurate.  Simply stated, cause does not exist.

10. First, PAX argues that "Kwok is a serial fraudster who caused the Petition to be filed in bad faith[.]"  Motion at ¶ 70.  The Debtor responded to each of PAX's individual allegations of bad faith in the *Debtor's Response and Reservation of Rights with Respect to the Motion of Pacific Alliance Asia Opportunity Fund for Relief from the Automatic Stay* (ECF No. 22) ("Debtor's Stay Relief Response").  PAX illogically argues that the Debtor cannot get its story straight about who owns the Residence asset and Bravo Luck and why the Debtor would file a bankruptcy to protect an asset that it claims not to own.  *See id.* at ¶ 75.  The Debtor has been very clear about why it filed for bankruptcy—the Debtor has multiple creditors demanding payment with two of those creditors (Bravo Luck and PAX) both claiming to be entitled to the full value of the Residence asset.  If the Debtor was the fraudster which PAX claims it to be, it could have long ago simply transferred legal title to the Residence into Bravo Luck's name, but it did not.  Thus, the Debtor filed this bankruptcy to stay the demands and claims against it while the appropriate courts decide such ownership issues, dual-tracked with the Debtor's attempts to sell the Residence and rehabilitate itself.  It is also telling and, contrary to PAX's assertions that there is no reason for the Debtor's bankruptcy beyond being a strategic move by Kwok, that PAX is asking for conversion or appointment of a trustee and not outright dismissal of the bankruptcy case.

11. As to ownership of Bravo Luck, it will be demonstrated in the BVI Proceeding that Qiang Guo, with the exception of the four month period from January to May 2015, is and was the sole owner of Bravo Luck from its inception. Moreover, Qiang Guo is and has been the 100% owner of Bravo Luck since May of 2015, long before the commencement of the State Court Action, which ownership is supported by contemporaneous documents that validly effectuated a share transfer from Kwok to Qiang Guo under BVI law. The alleged Bravo Luck ownership issue raised by PAX is a red herring that can and will be resolved in the BVI Proceeding.

12. Next, PAX asserts through a series of half-truths and outright misstatements that Kwok has a pattern of fraud and dishonesty such that he cannot be entrusted with the fiduciary duties as manager of the Debtor.[9] *See* Motion at ¶ 70. PAX, however, notwithstanding these half-truths and misstatements, does not allege and cannot establish any specific fraudulent acts or malfeasance by Kwok or the Debtor in the bankruptcy case itself. While baldly asserting that Kwok has no intention of complying with the Debtor's fiduciary duties, PAX has provided no evidence to show that the Debtor has done anything other than fully abide by the requirements of a debtor in possession under chapter 11. PAX alleges that Kwok violated the Debtor's fiduciary duties to PAX as the largest non-insider creditor (*see* Motion at ¶ 80), but PAX conveniently forgets once again that *PAX does not hold a claim against the*

---

[9] PAX's allegations of Kwok's fraud and dishonesty all relate to occurrences in the State Court Action. Not only are many of PAX's allegations misstated, but the award of damages remains on appeal. It is certainly not appropriate to re-litigate the State Court Action here. Moreover, PAX's references to the State Court Action are without the larger context of Kwok fleeing China to avoid government persecution as a result of him being a prominent political dissident speaking out against the Chinese government. *See*, *for example*, "China Tightens Grip on Homegrown Fintech Firms After Ant Debacle", *Bloomberg Businessweek*, Jan. 21, 2021, https://www.bloomberg.com/news/articles/2021-01-21/china-tightens-grip-on-fintech-after-jack-ma-s-ant-crackdown (last accessed Jan. 23, 2021) ("[Beijing is] wary of executives who get very rich, powerful, and outspoken."); "In Dramatic Sweep, Police in Hong Kong Arrest Dozens of Opposition Figures", *NPR*, Jan. 6, 2021, https://www.npr.org/2021/01/06/953844625/in-dramatic-sweep-police-in-hong-kong-arrest-dozens-of-opposition-figures (last accessed Jan. 23, 2021).

#112910281 v8

*Debtor*. PAX alleges that Kwok has no intention of protecting and conserving the Residence for the benefit of creditors—again confusing Kwok's individual creditors with creditors of the Debtor—however the Debtor has done nothing but demonstrate that it filed this bankruptcy case to maximize the value of the Residence through a sale and hold such proceeds for the benefit of its valid creditors. Additionally, according to the Company Resolutions filed with the Debtor's petition, Kwok is not guiding the Debtor's actions in this case, but appointed Yan Ping Wang as the Debtor's representative and authorized her to act on behalf of the Debtor in relation to prosecuting the bankruptcy case. *See* ECF No. 1 at p. 10.

13. PAX alleges that Kwok has no intention of fulfilling the Debtor's fiduciary duties because Bravo Luck is his alter ego and that PAX has demonstrated that the Trust Agreement is fraudulent. *See* Motion at ¶ 82.[10] Both assertions could not be further from the truth, have not been legally determined by any court, and are currently the subject of BVI Proceeding, **which proceeding was initiated by PAX**. Bravo Luck is vigorously defending these claims in the BVI Proceeding and will demonstrate in that litigation that Qiang Guo is and has been in control of Bravo Luck, Bravo Luck is not Kwok's alter ego, and Bravo Luck is the ultimate owner of the Residence. If anyone is forum shopping and trying to litigate the same

---

[10] Bravo Luck was and is not a party to the State Court Action and further, as admitted by PAX in the Motion, PAX was informed of the trust relationship during the State Court Action. Moreover, it was not until April of 2019 that the Debtor was added to the State Court Action and, again, Bravo Luck was never a party. In any event this—and all of PAX's other factual misstatements—are issues being litigated in the BVI Proceeding and do not affect this Court's determination of whether cause exists for conversion or appointment of a trustee for the Debtor.

On January 22, 2021, Edward Moss filed another declaration (ECF No. 42) (the "Moss Declaration") in support of PAX's *Reply (i) in Further Support of its Motion to Modify the Automatic Stay to Proceed with State Court Litigation and Related Relief, and (ii) in Response to Objections* (ECF No. 41). The Court should disregard the Moss Declaration, if not entirely strike it from the record. The materials included in, and attached to, this Moss Declaration are not properly authenticated nor is a foundation laid. Moreover, exhibit 68 to the Moss Declaration contains incomplete records and misconstrues BVI counsel's emails; the cited-to statement merely made clear that Bravo Luck does not trade because it is a holding company. These issues are already teed up in the BVI Proceeding, where Bravo Luck will present evidence demonstrating their true purpose.

-8-

issues in multiple courts, it is PAX who initiated the State Court Action and the BVI Proceeding and is now trying to re-litigate the same issues in this bankruptcy case.

14. Third, PAX claims that the Debtor's estate has continuing losses and will not be able to rehabilitate itself. *See* Motion at ¶ 70. To be clear, Bravo Luck believes that the Residence, which was purchased in 2015 for approximately $70 million, is worth in excess of $50 million dollars today. Moreover, the property is unencumbered. Thus, if PAX would simply stop the unnecessary rhetoric and let the Debtor do its job, there will be substantial monies in the estate. Moreover, there is a multi-million dollar deposit[11] being held by Sherry-Netherland, Inc., which was made by Bravo Luck, that can be used to fund maintenance and other fees during the marketing effort. PAX nevertheless claims that estate administrative expenses are accruing and there is estate diminution that somehow warrants conversion. *See id.* at ¶ 86. With respect to U.S. Trustee and legal fees, these are ordinary course administrative expenses that are incurred in every chapter 11 case and, on their own, cannot establish cause for conversion and, in any event, will be paid. Thus, there are no continuing losses to the estate for remaining in chapter 11 and, in any event, there will be plenty of funds to satisfy those expenses. As for PAX's argument about the Debtor's ability to rehabilitate itself, the Debtor's Stay Relief Response addressed that misplaced assertion.

15. Fourth, PAX claims that the Debtor cannot confirm a plan "over the opposition of PAX, the largest creditor." Motion at ¶ 70. PAX, however, is not yet—and may never be—a creditor of the Debtor. *See* Debtor's Schedule of Assets and Liabilities at 3.4 on p. 9 (listing PAX with a disputed claim). PAX should not be able to dictate the course of the Debtor's bankruptcy case when it has not even established itself as a valid creditor and the

---

[11] *See Schedule A/B* (ECF No. 4) at 7.1 on p. 2 (listing a five year security deposit with The Sherry Netherland in the amount of $3,312,850.20).

Debtor has other undisputed creditors with substantial interests at stake in this case. Moreover, PAX is fundamentally misunderstanding bankruptcy law because, so long as the absolute priority rule is not violated, there are multiple pathways to confirm a plan, even over PAX's objection. Lastly, this case is just over three months old and the Debtor has stated that it intends to formulate a plan in connection with, or just after, the sale of the Residence. Thus, it is premature for PAX to conclude that the Debtor will never be able to effectuate a plan.

    **B.    PAX Fails to Demonstrate that "Cause" Exists to Appoint a Chapter 11 Trustee**

    16.    Appointment of a chapter 11 trustee is extraordinary relief and PAX fails to satisfy the high bar of clear and convincing evidence required for such relief to be granted:

> The appointment of a chapter 11 trustee is an extraordinary remedy. *In re Euro-American Lodging Corp.*, 365 B.R. 421, 426 (Bankr. S.D.N.Y. 2007) (noting "the appointment of a § 1104 trustee is an extraordinary remedy"); *In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3d Cir. 1989) ("It is settled that appointment of a trustee should be the exception, rather than the rule.") (collecting cases). There is a strong presumption that a debtor should remain in possession absent a showing of need for the appointment of a trustee. *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 167 (Bankr. S.D.N.Y. 1990); 7 COLLIER ON BANKRUPTCY P 1104.02[3][b] (15th ed. 2006). The party seeking appointment of a chapter 11 trustee has the burden of showing, by clear and convincing evidence, "cause" under § 1104(a)(1), or the need for a trustee under § 1104(a)(2). *Euro-American Lodging Corp.*, 365 B.R. at 426; *In re Adelphia Communs. Corp.*, 336 B.R. 610, 656 (Bankr. S.D.N.Y. 2006) (citing *In re Marvel Entertainment Group*, 140 F.3d 463, 471 (3d Cir. 1998)). Although § 1104 requires a bankruptcy court to appoint a trustee if the requirements of the statute are met, a court has wide discretion in considering the relevant facts. *In re Sharon Steel Corp.*, 871 F.2d at 1226; *Adelphia*, 336 B.R. at 656 ("The decision to appoint a chapter 11 trustee is a factual determination entrusted to the discretion of the bankruptcy judge.").

*In re 1031 Tax Group, LLC*, 374 B.R. 78, 85-86 (Bankr. S.D.N.Y. 2007). In requesting appointment of a chapter 11 trustee, PAX largely relies on the same arguments as with its conversion request, which Bravo Luck disputes as set forth above.

-10-

17. With respect to PAX's allegations of conflicts of interest in the bankruptcy case related to Kwok, it is first important to reiterate that Yan Ping Wang is overseeing this bankruptcy case on behalf of the Debtor, not Kwok (*see* ECF No. 1), and the Debtor has offered, even though not required or necessary, to abide by certain other procedures in order to ensure an additional layer of oversight over the sale process. Moreover, PAX does not—and cannot—point to any instance of fraud, dishonesty or criminal conduct in management of the Debtor during this bankruptcy case.

18. Furthermore, no sale can be approved without notice to all parties-in-interest and, more importantly, approval by this Court. Additionally, despite any (wrongful) allegations of conflicts of interest, the Debtor has every interest in maximizing the sale proceeds. Appointment of a trustee—whether in chapter 7 or chapter 11—will only result in unnecessary delay as well as additional fees and expenses of the trustee and its professionals (which additional administrative expenses one would think PAX would be concerned with in light of its conversion arguments regarding alleged losses to the estate). Furthermore, PAX's conflict of interest arguments all speak to what might be done with proceeds *after* conclusion of the sale. But that argument is also misplaced, as again, no proceeds can be distributed without further order of this Court. At this point, the Debtor should be allowed to proceed with its proposed sale of the Residence with any proceeds held in escrow pending the outcome of the Bravo Luck ownership issues in the BVI Proceeding (which, again, was initiated by PAX itself in the BVI). PAX—a disputed creditor of the Debtor—should not be granted the relief requested in its Motion and be able to dictate how the Debtor handles its bankruptcy case based on what PAX "thinks" might happen in this bankruptcy case without any actual evidence in this case as to the need for conversion or a trustee.

#112910281 v8

**CONCLUSION**

WHEREFORE, for the reasons set forth above, Bravo Luck respectfully requests that the Court deny the Motion.

Dated: January 27, 2021
      Philadelphia, PA

TROUTMAN PEPPER HAMILTON SANDERS LLP

By: /s/ Francis J. Lawall
Francis J. Lawall (PA Bar No. 43932)
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799
Telephone: (215) 981-4000
Facsimile:  (215) 981-4750
E-mail: francis.lawall@troutman.com

*Counsel for Bravo Luck Limited*

#112910281 v8