UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re:                                                          Chapter 11

Genever Holdings LLC,                          Case No. 20-12411-JLG

                                Debtor.

---------------------------------------------------------------x

**DEBTOR'S AMENDED MOTION TO APPROVE ATTACHED STIPULATION
OF SETTLEMENT WITH BRAVO LUCK AND PAX**

The motion of Genever Holdings LLC (the "Debtor") pursuant to Bankruptcy Rule 9019(a) seeking approval of the Stipulation of Settlement with Pacific Alliance Asia Opportunity Fund L.P. ("PAX") and Bravo Luck Limited ("Bravo Luck"), a copy of which is annexed hereto as Exhibit "A" (the "Settlement"), represents and shows this Court as follows:

**Background**

1. The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on October 12, 2020 and thereafter has continued in possession and management of its assets as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2. The Debtor's chief asset consists of the 18th floor apartment and auxiliary units in the Sherry Netherland Hotel located at 781 Fifth Avenue, New York, New York 10022. (collectively, the "Residence").

3. Prior to the commencement of the Chapter 11 case, disputes existed in NYS court and in BVI involving, among others,, the Debtor, the Debtor's BVI parent company, PAX and Bravo Luck (collectively, the "Litigation Disputes").

4. The Settlement is principally designed to enable the Debtor to proceed with a sale of the Residence while the Litigation Disputes continue to be adjudicated.

1

5. PAX previously filed a motion to modify the automatic stay to proceed with the State Court Action and related relief relating to veil-piercing claims against the Debtor (ECF No. 12-14) (the "Lift Stay Motion").

6. On January 5, 2021, Bravo Luck (ECF No. 21) and the Debtor (ECF No. 22) each filed opposition to the Lift Stay Motion.

7. On January 12, 2021, PAX filed a motion for the conversion of the case to Chapter 7, or, alternatively, for the appointment of a Chapter 11 trustee (ECF No. 35-37) (the "Conversion Motion").

8. On January 27, 2021, Bravo Luck filed its opposition to the Conversion Motion (ECF No. 44).

9. Thereafter, the respective motions have been adjourned from time to time, while the Debtor, Bravo Luck and PAX engaged in extensive negotiations in an effort to resolve disposition of the motions, largely predicated upon an agreed framework for a sale of the Residence. The Settlement also contemplates that adjudication of the Litigation Disputes will continue pending the sale process. Hence, the Stipulation also contains provisions for a consensual vacatur of the automatic stay.

10. In order to promote a fully transparent sale process and minimize disputes going forward regarding the sale, the Debtor, Bravo Luck and PAX have agreed under the Settlement to seek the appointment of an independent third party officer, designated as the Sales Officer, who can exercise independence regarding the sale and marketing process subject ultimately to Bankruptcy Court approval, and the right of Bravo Luck and PAX to object. The parties are still discussing the identity of the proposed Sales Officer, which will be sought pursuant to separate application, once identified.

11. The Settlement took many weeks to negotiate, and has now come to include the imprimatur of the Sherry Netherland regarding the terms of the sale and marketing process. Besides the appointment of a Sales Officer, the parties will also to seek to retain a very experienced and qualified broker, which will be the subject of a separate application as well.

12. All of the major creditors and stakeholders in the Chapter 11 case have participated in the negotiation of the final terms of the Settlement. The Debtor is seeking Bankruptcy Court approval of the Settlement on notice to the Office of the U.S. Trustee, which is questioning the statutory basis for the appointment of a Sales Officer despite the parties' agreement.

13. The signatories to the Settlement believe that there is authority for the appointment of a Sales Officer under, among other sections, the provisions of Sections 105 and 363 of the Bankruptcy Code.

## Highlights of the Settlement

14. The Settlement is a comprehensive document, but for the sake of continuity, the major provisions are highlighted below. In highlighting certain terms, the Debtor is not intending to change or otherwise alter the precise terms of the Settlement, which control over any discussion herein.

   a. *Appointment of the Designated Sales Officer*. The **SO** shall oversee the sale of the Residence through a bankruptcy process, in consultation with Bravo Luck and PAX. The SO is not a chapter 11 trustee or examiner but shall have powers consistent with those of the debtor/trustee in bankruptcy, limited to the terms of overseeing a sale process as delineated in Section "6" of the Settlement.

   b. *Broker*. An experienced real estate broker shall be employed by the Debtor's estate. Bravo Luck and PAX shall be allowed to propose/recommend parties to the SO for the role of Broker. Bravo Luck and PAX shall have the right to interview the prospective Brokers. Bravo Luck and PAX shall consult with the Broker and the SO for purposes of establishing the timing and realization of maximum value for the Residence. The Broker's retention and compensation

3

        remain subject to Bankruptcy Court approval with right of objection by Bravo Luck and PAX.

c. *Marketing Terms.* The mutual goal of all concerned is to obtain maximum value for the Residence based upon a comprehensive marketing plan as set forth in the Settlement.

d. *Sales Procedures.* The Settlement also contains detailed, but conventional, sale procedures, including:

   (1)   the sale shall be in cash payable at closing and shall be subject to higher and better offers. If more than one Qualified Offer is received, the SO, in consultation with Bravo Luck and PAX, may schedule an auction at which all Qualified Buyers can participate.

   (2)   Selection of the winning Qualified Buyer shall be made by the SO in consultation with the Broker, and Bravo Luck and PAX.

   (3)   The sale of the Residence shall be subject to Bankruptcy Court approval pursuant to separate application.

   (4)   The sale process shall include consultation rights for Bravo Luck and PAX.

   (5)   The sale shall be subject to the Sherry-Netherland's approval process, and the terms of the underlying proprietary leases.

   (6)   The proceeds of sale shall be held in an agreed escrow account subject to further order of the Court as provided in the Settlement.

e. *Other terms.* The Settlement provides for stay relief to allow PAX to prosecute, and the Debtor to defend, the State Court Action. In addition, nothing in the Settlement Agreement prejudices the rights of any party, including Bravo Luck and PAX, to proceed with the BVI Litigation as detailed in the Settlement Agreement.

## The Settlement Should Be Approved

15. The fact that a global settlement has been reached will enable the Debtor to move forward with its primary goal of selling the Residence under a structured process aimed at maximizing fair market value. In the exercise of its business judgment, the Debtor submits that the Settlement should be approved pursuant to Fed. R. Bankr. P. 9019(a) as falling within the

range reasonableness. *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2nd Cir. 1983), cert. denied, 464 U.S. 822, 104 S. Ct. 89 (1983).

    16.    As the Hon. Sean H. Lane has previously explained:

> In approving a settlement, a court must "review the reasonableness of the proposed settlement [and] … make an informed judgment as to whether the settlement is fair and equitable and in the best interests of the estate." *In re WorldCom, Inc.* 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006); *see also Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)* 156 B.R. 414, 426 (S.D.N.Y 1993). The Court, however, need not "conduct a 'mini trial' on the issue. The Court need only 'canvas the issues' to determine if the 'settlement falls below the lowest point in the range of reasonableness.'" *WorldCom*, 347 B.R. at 137) *quoting In re Teltronics Serv., Inc.*, 762 F.2D 185, 189 (2d Cir. 1985)).

> "Settlements or compromises are favored in bankruptcy and, in fact, encouraged… .. "In administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which are substantial and reasonable doubts." *In re Adelphia Communs. Corp.*, 368 B.R. 140 226 (Bankr.S.D.N.Y.2007) (*quoting Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 20 L.Ed.2D 1 (1968)). "The decision whether to accept or reject a compromise lies within the sound discretion of the court." *Adelphia*, 368 B.R. at 226. And "[w]hile the bankruptcy court may consider the objections lodged by parties in interest, such objections are not controlling. Similarly, although weight should be given to the opinions of counsel for the debtors and any creditors' committees on the reasonableness of the proposed settlement, the bankruptcy court must still make informed and independent judgement. The Court must consider whether the proposed compromise is fair and equitable by appraising itself of all the factors relevant to an 'assessment of the wisdom of the proposed compromise.' '' *WorldCom*, 347 B.R. at 137 (*quoting TMT Trailer*, 390 U.S. at 424, 88 S.Ct. 1157).

*In re AMR Corp.*, 502 B.R. 23, 42-43 9 (Bankr. S.D.NY.2013)

    17.    In reviewing the Settlement, the Court should consider the following factors:

    (1)    the balance between the litigation's possibility of success and the settlement's future benefits;

    (2)    the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on a judgement;

    (3)    the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

    (4)    whether other parties in interest support the settlement;

    (5)    the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement;

    (6)    the nature and breadth of releases to be obtained by officers and directors; and

    (7)    the extent to which the settlement is the product of arm's length bargaining.

*In re Iridium Operating LLC,* 478 F.3d 452, 462 (2d Cir.2007).

18. The Settlement stacks up favorably under the *Iridium* factors. To begin with, the Settlement avoids the time, expense and uncertainty of protracted litigation, as the pending motions present contested issues of fact and law. At the same time, the Settlement preserves all of the parties' respective rights, claims and defenses while allowing the sale of the Residence to proceed in bankruptcy without the entanglement created by the Litigation Disputes. Thus, the first two *Iridium* factors are met.

19. Additionally, the Settlement has the support of the three purported major stakeholders in the Chapter 11 case, who are in agreement as to the benefit of a transparent sale process with the aid of an independent Sales Officer and experienced broker. Thus, *Iridium* factors three and four are also met.

20. Finally, the Settlement was negotiated by experienced counsel who proceeded in good faith to generate a carefully worded Settlement that aids the Debtor's estate. Thus, *Iridium* factors five and seven are likewise met.

21. Factor number six does not apply since there are no releases being given under the Settlement.

WHEREFORE, the Debtor respectfully prays for the entry of an Order approving the Settlement, and for such other relief as may be just and proper.

Dated: New York, New York
      March 5, 2021

                    GOLDBERG WEPRIN FINKEL
                    GOLDSTEIN LLP
                    Attorney for the Debtor
                    1501 Broadway, 22nd Floor
                    New York, New York 10036
                    (212) 221-5700

                    By:   /s/ Kevin J. Nash, Esq.