UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE:                        .      Case No. 20-12411-JLG
                              .
                              .
GENEVER HOLDINGS LLC,         .      One Bowling Green
                              .      New York, NY 10004
                              .
                              .
            Debtor.           .      March 9, 2021
. . . . . . . . . . . . ..            12:01 p.m.

TRANSCRIPT OF:

    1) CASE CONFERENCE (DOC #3); ADJ FROM 12/8/2020, CONTINUED
FROM 1/12/2021, CONTINUED FROM 2/3/2021, CONTINUED FROM
2/11/2021, ADJ FROM 2/18/2021.

    2) MOTION TO EXTEND EXCLUSIVITY PERIOD FOR FILING A
CHAPTER 11 PLAN AND DISCLOSURE STATEMENT (DOC #51); ADJ FROM
3/3/2021.

    3) MOTION FOR RELIEF FROM STAY (DOC #12); MEMORANDUM OF
LAW (DOC #13); DECLARATION OF EDWARD MOSS, ESQ. (DOC #14);
RESPONSE TO MOTION AND RESERVATION OF RIGHTS (DOC #22);
OBJECTION OF BRAVO LUCK LIMITED (DOC #21); PACIFIC ALLIANCE
ASIA OPPORTUNITY FUND L.P.'S REPLY (DOC #41); DECLARATION OF
EDWARD MOSS, ESQ., IN SUPPORT (DOC #42); ADJ FROM 1/12/2021,
CONTINUED FROM 2/3/2021, CONTINUED FROM 2/11/2021, ADJ FROM
2/18/2021.

    4) MOTION OF PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.
FOR AN ORDER UNDER 11 U.S.C. 1112(B) CONVERTING THE DEBTORS
CASE TO A CASE UNDER CHAPTER 7 OR, IN THE ALTERNATIVE, FOR AN
ORDER UNDER 11 U.S.C. 1104(A) APPOINTING A TRUSTEE TO
ADMINISTER THE DEBTORS ESTATE (DOC #35); MEMORANDUM OF LAW (DOC
#35); DECLARATION OF EDWARD MOSS IN SUPPORT (DOC #37);
OBJECTION OF BRAVO LUCK LIMITED TO MOTION (DOC #44); CONTINUED
FROM 2/3/2021, CONTINUED FROM 2/11/2021, ADJ FROM 2/18/2021.

            BEFORE HONORABLE JAMES L. GARRITY, JR.
            UNITED STATES BANKRUPTCY COURT JUDGE


Proceedings recorded by electronic sound recording, transcript
            produced by transcription service.
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311   Fax No. (609) 587-3599**

TELEPHONIC APPEARANCES:

For the Debtor:            Goldberg Weprin Finkel Goldstein LLP
                           By:  KEVIN J. NASH, ESQ.
                           1501 Broadway, 22nd Floor
                           New York, NY 10036

For Pacific Alliance       Foley & Lardner LLP
Asia Opportunity Fund      By:  DOUGLAS E. SPELFOGEL, ESQ.
L.P.:                      90 Park Avenue
                           New York, NY 10016

For the Sherry-            Stroock & Stroock & Lavan LLP
Netherland Hotel:          By:  GABRIELLE SASSON, ESQ.
                                CURTIS C. MECHLING, ESQ.
                           180 Maiden Lane
                           New York, NY 10038

For Bravo Luck Limited:    Troutman Pepper Hamilton Sanders LLP
                           By:  FRANCIS J. LAWALL, ESQ.
                           3000 Two Logan Square
                           Eighteenth and Arch Streets
                           Philadelphia, PA 19103

For the U.S. Trustee:      Office of The United States Trustee
                           By:  RICHARD C. MORRISSEY, ESQ.
                           U.S. Federal Office Building
                           201 Varick Street, Suite 1006
                           New York, NY 10014

- - -

3

1              THE COURT:  All right.  Now we turn to Genever

2    Holdings, Case Number 20-12411.  Could I get appearances,

3    please?

4              MR. NASH:  Good morning, Your Honor.  Kevin Nash for

5    the debtor.

6              THE COURT:  All right.  Mr. Nash.

7              MR. LAWALL:  Good morning, Your Honor.  Fran Lawall

8    for Bravo Luck.

9              THE COURT:  Mr. Lawall.

10             MR. SPELFOGEL:  Good morning, Your Honor.  Doug

11   Spelfogel from Foley & Lardner on behalf of Pacific Alliance.

12             THE COURT:  Mr. Spelfogel.

13             MR. SASSON:  Good morning, Your Honor.  Gabriel

14   Sasson from Stroock & Stroock & Lavan on behalf of The Sherry-

15   Netherland.  I believe Curt Mechling from Stroock is on as

16   well.

17             THE COURT:  All right.  Terrific.  Thank you.

18             MR. MORRISSEY:  And actually good afternoon, Your

19   Honor.  Richard Morrissey for the U.S. Trustee.

20             THE COURT:  Thank you, Mr. Morrissey.  Okay.  I think

21   we have one matter on the calendar, is that right?  I know we

22   have our status conference, but we also have the motion to

23   extend the exclusive period, is that on for today?

24             MR. NASH:  Yes, Your Honor.  I think we moved it from

25   -- it was on the 4th and we moved it to be coterminous so to

4

1 speak with the status conference.

2       THE COURT:  All right.  Why don't we start with

3 exclusivity so we can take care of that, and then let's turn to

4 the status conference, and let's talk about the settlement

5 agreement.

6       MR. NASH:  Yes, Your Honor.  Kevin Nash for the

7 debtor.  In many respects the motion on exclusivity maintains

8 status quote, and it dovetails into the proposed settlement

9 agreement.  Under the terms of the proposed settlement

10 agreement there is a sales process that has been I would say in

11 a, and it's not exaggerating, carefully negotiated among

12 various parties, and the end game would be to complete a sale

13 through a confirmed plan.

14       So I did think it was a good idea to move to extend

15 exclusivity.  I don't believe anybody has opposed it, and it

16 really does set the stage I think for the proposed settlement.

17       THE COURT:  All right.  And the dates that you would

18 like for the exclusivity.

19       MR. NASH:  Right.  I -- Kevin Nash again, I didn't

20 want to go out too far to get ahead of ourselves, so I believe

21 we did 60 days extending exclusivity with the corresponding 60

22 days on solicitation.  If we needed a further extension,

23 depending on where things were, we would move at that time, but

24 I didn't want to get too far ahead, so that's why I did it that

25 way.

1          THE COURT:  All right.  Does anyone wish to be heard?

2   So what you're asking for is to extend the debtor's exclusive

3   period to file a plan from February the 9th to April the 12th,

4   2021, and the -- that period to solicit acceptances from April

5   12th, 2021 to June 11th, 2021.

6          MR. NASH:  That's correct, Judge.

7          THE COURT:  All right.  Is there anyone who'd like to

8   be heard with respect to this motion?

9                    (No audible response)

10         THE COURT:  All right.  There being no response, I

11  reviewed the motion, and I find that the debtor has established

12  cause for the requested relief.  The request to extend

13  exclusivity of a 60 period -- 60-day period as I've just set

14  forth on the record is granted, and, Mr. Nash, you'll please

15  submit an order.

16         MR. NASH:  I will do that, Your Honor.

17         THE COURT:  All right.  Great.  Thank you.  All

18  right.  Let's talk about the status of the case, and where you

19  are with the settlement.

20         MR. NASH:  Yes, Your Honor.  Kevin Nash for the

21  debtor.  Your Honor, as Your Honor knows, we've been carefully

22  negotiating a proposed settlement among the major parties in

23  interest.  At this point we started with a term sheet.  The

24  term sheet developed into a formal stipulation of settlement,

25  and the formal stipulation of settlement then developed into a

6

1  formal 9019 motion, which is filed, but not yet noticed because

2  we wanted to have the opportunity to discuss scheduling and

3  noticing with Your Honor and so forth.

4        So we did file it on the docket.  I believe my office

5  did submit a letter to Your Honor indicating that the motion

6  had been filed, and it is filed.  It's an agreement that was

7  reached between the debtor, Mr. Spelfogel on behalf of PAX and

8  Mr. Lawall on behalf of Bravo Luck.

9        The U.S. Trustee has raised issues as to the

10 statutory basis of the sales officer.  We've given him our

11 views of the statutory basis.  I suppose that he's going to

12 weigh in on that at the hearing, but we believe that there is a

13 proper basis for the sales officer, and we have already

14 consulted the likely sales officer, Melanie Cyganowski, that

15 was agreed to by PAX, the debtor, and Bravo Luck.  And so we

16 intend at some point, if Your Honor permits, to move forward in

17 that direction.

18        THE COURT:  All right.  Does anyone else wish to be

19 heard with respect to these matters?

20        MR. SPELFOGEL:  Your Honor, it's Mr. Spelfogel for

21 Pacific Alliance.

22        THE COURT:  Yes, Mr. Spelfogel.

23        MR. SPELFOGEL:  Thank you.  Briefly just a few items.

24 Number 1, I just want to point out that this was a very hard

25 fought negotiation, and we're pleased to have arrived at the

7

1  resolution.  It also does incorporate some comments from

2  Sherry-Netherland, which we believe obviously speak for

3  themselves, we believe are supportive of the framework.

4       Number 2, the agreements just in broad strokes it

5  creates a process for the sale of the primary asset here, and

6  also provides for stay relief, essentially addressing our two

7  motions that are pending for trustee and for stay relief.  So

8  that the issues and claims can be addressed in the state court

9  and the BVI court.

10      In terms of timing, just one important thing to note,

11 for the real estate we're advised that we're coming into the

12 selling season for real estate in general and certainly for

13 high end property as we get into the spring and nicer weather.

14 Also we're advised that with the rollout and hopefully

15 continued positive rollout of the vaccine that should create a

16 better climate for the sales.

17      So we are pleased that we're hopefully moving in a

18 expeditious process to get a -- to get an independent party in

19 place and also engagement of a broker to get the property sold

20 during what we believe the next -- starting in the near term

21 over the next four to six months will be a critical period

22 prior to the weather turning again for the sale.

23      And the last couple of things just in terms of

24 clarification, the -- what's proposed right now is a 9019

25 settlement, as Mr. Nash stated, which just for clarity there

1   will be a separate motion -- this is not a motion to engage the

2   sale officer or even the broker.  There would be a separate

3   motion contemplated, which our view of that can be teed up for

4   the same time, but there would be a separate motion

5   contemplated for the approval of the sale officer.

6        We believe that the trustee questions that were

7   raised and we've in discussion with them to -- in an effort to

8   try to resolve those consensually, but we believe that those

9   issues raised are not really 9019 type settlement objections,

10  but more in the nature of objections to the mechanics and the

11  framework for a sale officer engagement, which again would be a

12  separate motion, and the hope is to work those out.

13       And just the last of couple things, in terms of the

14  name use sale officer, there's been some questions or concerns

15  raised with that.  Frankly, it is a CRO type of entity because

16  this is a one-asset real estate case, and there are not day-to-

17  day operations because of the nature and the narrowed scope of

18  engagement.  The main important piece of the case is to get the

19  property preserved, maximized and sold, hence the name sale

20  officer.  We're hopeful that people don't get hung up with the

21  name.

22       Then, lastly, Your Honor, we believe that in terms of

23  the scope, and obviously we would address this further at the

24  hearing to approve, but in terms of the scope, we believe that

25  the scope is proper.  We believe that would be fleshed out more

1 in detail in the sale officer motion, but we believe that it's

2 proper and that courts in the Southern District have approved

3 independent restructuring type officers with a wider -- with a

4 wide variety of scope anywhere from taking full control over a

5 debtor to some hybrid to assist frankly where there are

6 difficulties and issues between a debtor and major creditor

7 groups or a creditor committee in moving the case forward and

8 where it would be beneficial to have the input and the insights

9 of a third party.  The engagement would be by the debtor, but

10 reporting and engaged by the Court by court order.

11       So with those clarifications or additions in mind, we

12 just wanted to conclude by saying that we would ask the Court,

13 obviously subject to everybody else's comment, but we ask the

14 Court to put -- to schedule this, again, subject to Your

15 Honor's calendar, on some kind of shorten notice for approval

16 for the settlement.

17       We would also envision, again, subject to everybody

18 else's weigh in, but we would envision having a motion for

19 engagement, a separate motion for engagement of a sale officer

20 that could be teed up on a similar time frame, and just because

21 of the selling fees and then the fact that there are several

22 moving parts and that once -- assuming approval, once the sale

23 officer is appointed they would then need to engage with a

24 broker.  We're hopeful to be able to move that as promptly as

25 possible, so that we can have a chance at maximizing value.

1  Thank you, Your Honor.

2          THE COURT:  All right.  Anyone else?  Mr. Lawall, do

3  you wish to be heard?

4          MR. LAWALL:  Judge, thanks, and, again, good

5  afternoon.  Bottom line here, nothing happens without Your

6  Honor's approval, and it's an independent who will come in,

7  market the property, which is obviously very unique, and then

8  the sale proceeds will go into escrow.

9          So I think the ultimate goal, Your Honor, that we

10  told you we were trying to accomplish we have, including

11  providing a vehicle for paying the go forward maintenance fees

12  for the Sherry.  So that's all I have, Your Honor.  Thank you.

13          THE COURT:  All right.  Thank you.  Mr. Sasson, do

14  you wish to be heard?

15          MR. SASSON:  Yes, thank you, Your Honor.  Just to I

16  think reiterate some of the comments, we are supportive -- the

17  Sherry is supportive of the framework that's set forth in the

18  settlement agreement.  There are, as you mentioned, some

19  provisions that probably belong more in an order.  So we would,

20  you know, like to see the proposed order approving the

21  settlement agreement to make sure some of them are in there.

22  For instance, lifting the stay to allow the Sherry to apply the

23  go forward maintenance payment against the deposit it holds,

24  things like that.  So we'd reserve on that.  But, again, to

25  reiterate we are supportive of the framework.

11

1        THE COURT:  All right.  Thank you.  Mr. Morrissey, do

2   you wish to be heard?

3        MR. MORRISSEY:  Yes, Your Honor.  Thank you.  Richard

4   Morrissey for the U.S. Trustee.  First, just to note a calendar

5   matter.  In addition to the case conference and exclusivity

6   motion, I believe that Pacific Alliance or PAX's motion to lift

7   the stay and to convert or have a Chapter 11 Trustee appointed

8   are also on today's calendar, although obviously they're not

9   going forward today.  I just wanted to note that for the

10  record.

11       Your Honor, also as a purely administrative matter,

12  anticipating that the Court might ask this question, the debtor

13  is current with respect to operating reports through January.

14  The fourth quarter quarterly fee has not been paid yet by the

15  debtor.  It's only a minimum of $325, but I thought I would get

16  that minor issue out of the way at the beginning.

17       Your Honor, with respect to the 9019 motion, I've had

18  a few discussions with Mr. Spelfogel on this, and although, as

19  he says, the 9019 settlement is not tantamount to approval of

20  the retention of this what they're calling a sales officer, it

21  sort of -- that retention is integral to the 9019 motion I

22  believe.  It's not something that it seems could be severed.

23       Now, the U.S. Trustee would not have an issue with

24  other aspects of the 9019 motion.  For example, the provision

25  that certain matters are going forward in state court or in the

1 BVI court, the U.S. Trustee has no issue with that.

2 But we do have an issue, Your Honor, with this

3 concept of something that we've never heard before, which was a

4 sales officer, and although we've certainly had discussions, as

5 Mr. Spelfogel has mentioned, sort of the question of what's in

6 a name, the CRO is a concept that is not found in the

7 Bankruptcy Code, but having said that, we've had plenty of

8 chief restructuring officers in cases.

9 The U.S. Trustee would not be opposed to a chief

10 restructuring officer in this case provided that it is in

11 compliance with what we call the J. Alix protocol for such

12 officers, someone who is going to run the case, not just be a

13 sales officer, but do the case, do the plan and everything that

14 goes along with it.  And this is not that complicated a case,

15 so I don't see this being a case where a CRO would have to be

16 involved in, you know, claims objections regarding multiple

17 claims, but it would have to get involved in more than just the

18 sale.

19 Your Honor, the settlement agreement and the motions

20 for approval of the settlement agreement, it's a little

21 internally inconsistent in that in some places it seems that

22 the debtor is to do the retention of the person, not only of

23 the sale officer, but also of the broker, and in other cases it

24 seems that it's supposed to be an independent third party that

25 the parties collectively are retaining the person.  So I think

13

1 that has to be cleared up.

2 With respect to the broker, Your Honor, there's a

3 provision in the settlement agreement, and I realize that's not

4 on for adjudication today, but I think it's helpful to bring

5 this up now, it says that the sales officer shall select the

6 real estate broker to be employed by the debtor's estate in the

7 sales officer's business judgment.  There's an easy fix to

8 that, Your Honor, which I mentioned before which would be the

9 retention of a CRO.  A CRO could certainly select a real estate

10 broker to be employed by the debtor's estate in the CRO's

11 business judgment.

12 So I think that if we resolved the CRO issue, the

13 broker issue that we have would be resolved right along with

14 it.  So I think that would be a much easier approach, but I

15 don't think, Your Honor, that we can bifurcate or separate or

16 sever the notion of the sales officer retention from the 9019

17 motion.  Obviously the two could be heard on the same day, but

18 the U.S. Trustee cannot imagine a scenario where we would not

19 object to the 9019 motion, but we would object to the retention

20 of the sales officer.  The U.S. Trustee --

21 THE COURT:  (indiscernible) --

22 MR. MORRISSEY:  -- of course stands -- go ahead.

23 THE COURT:  I'm sorry.  I apologize, Mr. Morrissey.

24 Your point is or am I correct that your point is that your

25 office in the current status of the 9019 and of the settlement

1  agreement, your office isn't able at this point to support it

2  because you're looking at this saying in effect that really the

3  -- you're not at this point prepared to recognize the sale

4  officer, and so your point is, look, if we're going to be

5  objecting to that, right, we really ought to hear everything at

6  once because you can't get approval of the 9019, or at least

7  where things stand from your office's perspective, it's almost

8  irrelevant who the sale officer might be.  The issue is can

9  they move in that direction, can they through their agreement

10 create the office of sale -- you know, sale officer and then

11 fill it later, right, is that your point, or at least that

12 you've got to resolve whether or not they can appoint the so

13 called sale officer before he can do anything else?

14          MR. MORRISSEY:  That is correct, Your Honor.

15          THE COURT:  All right.  I interrupted you, and I

16 apologize for that.  You were saying some other things.

17          MR. MORRISSEY:  Yeah, again, the U.S. Trustee

18 certainly stands ready to talk to the parties about installing

19 a CRO because the only alternative that I see, Your Honor, is

20 what PAX wanted originally, which was the appointment of a

21 Chapter 11 Trustee, and either the debtor can be the debtor-in-

22 possession, the debtor retaining a broker to sell under a

23 conventional Chapter 11 DIP arrangement, or we can have a CRO,

24 as I just described, or the debtor's -- or PAX's motion for a

25 Chapter 11 Trustee or in the alternative for a Chapter 7

1 Trustee can be granted.

2       But the U.S. Trustee, if this matter is not resolved,

3 will be filing a Chapter 11 Trustee motion which is something

4 that we don't want to do, Your Honor.  As Mr. Spelfogel said,

5 and I heard him loudly and clearly, as well as Mr. Nash, they

6 want this process to move quickly and not get delayed or held

7 up by these matters, and that's why the U.S. Trustee certainly

8 would welcome a discussion of a conventional CRO in the case,

9 so we don't have to take that step of going for a -- the

10 appointment of a Chapter 11 Trustee.

11       THE COURT:  All right.  Okay.  Is there anyone else

12 who wants to be heard?

13              (No audible response)

14       THE COURT:  I've some questions that I'd like to ask

15 about the agreement, and one of the things that I'm curious

16 about, and if I've missed this in the agreement, I apologize, I

17 was looking at it earlier this morning, and just a couple of

18 questions, (1) in the agreement it seems to me that there are

19 obligations on the part of -- bear with me one second -- on the

20 part of Mr. Kwok and is it -- and his son, is that -- I'm going

21 to mispronounce his name, if somebody could help me.

22       MR. SPELFOGEL:  I think it's Qiang Guo if I'm --

23       THE COURT:  Yes.

24       MR. SPELFOGEL:  My Mandarin -- my Chinese is not very

25 good.  We refer to him as Mileson (phonetic) and that would be

1  the son.

2          THE COURT:  Okay.  My point is they are identified as

3  parties.  They're defined terms in the definitions, Paragraph

4  1(h) and (i), now -- and they seem to be -- there seem to be

5  obligations in the agreement that relate to them, or that they

6  will have -- and I -- where I'm coming to is this, if they are

7  parties to the agreement, I don't see where they're

8  represented.

9          MR. SPELFOGEL:  No, Your Honor, I don't think -- I

10  think the intent certainly was it's Bravo Luck is the party to

11  the agreement.

12          THE COURT:  Right.

13          MR. SPELFOGEL:  And Bravo Luck is, you know, the

14  asserted party here as either creditor and/or owner of the

15  property.  So in any event, that's certainly the view, Your

16  Honor.

17          THE COURT:  All right.  Okay.  And as I said, I

18  didn't --

19          MR. NASH:  Your Honor --

20          THE COURT:  -- have a chance -- yes?

21          MR. NASH:  Your Honor, I think they appear -- Kevin

22  Nash for the debtor, I think they appear in the definition

23  because one or both are parties to the -- either the state

24  litigation or the BVI --

25          THE COURT:  Oh, and the BVI.  Yes, I see it.

1       MR. NASH:  Yeah.

2       THE COURT:  I see it.  Thank you.  Thank you.  May I

3 can ask another question, in -- on Paragraph -- on Page 5, and

4 I'm working off of Document 62-1 and five of nine, and in

5 particular I'm looking at Paragraph Number 7, which is entitled

6 maintenance fees and other terms, right, and then afer that you

7 talk about stay relief, in (a) is stay relief, (b) that's

8 basically -- but basically this addresses in seven is the stay

9 relief, and I'm wondering is that the correct title for the --

10 for this paragraph?  Are we missing something?

11      MR. NASH:  Kevin Nash for the debtor.  Your Honor, I

12 think the concept there was the Sherry-Netherlands was -- if

13 I'm recalling properly, the Sherry-Netherlands was -- they

14 wanted to make sure that there was no issue about the

15 application of the security deposit to the maintenance arrears.

16 And so I think they brought in the concept of stay relief as to

17 that aspect, which is different than the overall stay relief as

18 to the New York and the BVI actions, if I'm recalling it

19 correctly.

20      THE COURT:  Okay.  Oh, so what you're saying is that

21 this was to address subpart (e).

22      MR. SPELFOGEL:  Your Honor, this is Mr. Spelfogel.  I

23 think there's two stay reliefs contemplated, (1) the first

24 subparagraph of that section is for stay relief for Pacific

25 Alliance to proceed with the state court litigation, and then,

1  as Mr. Nash said --

2            THE COURT:  Yes.

3            MR. SPELFOGEL:  -- the later paragraph is to deal

4  with Sherry-Netherland.  I think, as Mr. Sasson indicated, we

5  would look to include in the proposed order, assuming we get

6  that far, language to make clear that the stay is modified to

7  -- consistent with this agreement to make sure that Pacific

8  Alliance can proceed with the state litigation and also

9  obviously address the Sherry issue.

10           THE COURT:  All right.  I also had a question about

11  -- okay, here's one of the places -- okay, look please in (b),

12  Paragraph 7(b), nothing herein shall prejudice the rights of

13  any party, including Bravo Luck and PAX, to proceed with the

14  BVI litigation provided that PAX, Bravo Luck, Kwok and Guo, and

15  I apologize for that, or any of his or its affiliates reserve

16  the right to assert claims in the bankruptcy court relating to

17  a status of a creditor, and PAX reserve all right to oppose

18  such claims on any ground.

19           It goes on to say, in addition, notwithstanding

20  anything contained herein to the contrary, nothing in this

21  agreement shall prejudice the rights of any party, including

22  Bravo Luck or PAX, from proceeding with any and all claims, if

23  any, against anyone, including Bravo Luck, Kwok, Guo and any of

24  his or its affiliates and PAX or any of its affiliates in the

25  BVI, state court or otherwise.  And Bravo Luck and PAX reserve

 1 | all rights to oppose such claims in the applicable form.  What

 2 | is the "or otherwise" supposed to address?

 3 |          MR. LAWALL:  Your Honor, Frank Lawall for Bravo Luck.

 4 | You know, this is -- sometimes this is a document when you get

 5 | a bunch of lawyers involved always trying to look for, you

 6 | know, the what ifs and the ghost and what have you.  I think

 7 | the intent of this agreement in large part is the litigation

 8 | between PAX and the other parties are -- is going to proceed

 9 | either in the BVI where it's already commenced and/or the state

10 | court where they have the piercing the corporate veil argument.

11 | And then --

12 |          THE COURT:  Right.

13 |          MR. LAWALL:  -- conceptually it was the -- to the

14 | extent the litigation -- to the extent it would be determined

15 | that Bravo Luck was not the ultimate owner of the Sherry, then

16 | because Bravo Luck and other parties, you know, infused

17 | substantial monies into the -- for the acquisition of the

18 | Sherry, that the claim, and, in fact, the proof of claim has

19 | already been filed, could be pursued in the bankruptcy court

20 | should there be proceeds from the sale of the Sherry.

21 |          The "or otherwise" was really just to the extent that

22 | because of the complexity of this, that something else should

23 | come up that nobody is foreseeing at the moment, nobody -- at

24 | least from my client's perspective wanted to have a waiver of

25 | that.  Is there anything that we're currently think of?  No.

1    But this was more just to say the concern would be that
2    somebody would say, you've absolutely waived any right at any
3    time in the future, notwithstanding unforeseen circumstances
4    where an issue might come up before Your Honor, and I think
5    that's what it was intended for.
6              MR. SPELFOGEL:  And, Judge, this is Mr. Spelfogel.
7              THE COURT:  Well, wait, I'm sorry.  I'm sorry.
8              MR. SPELFOGEL:  Okay.
9              THE COURT:  Excuse me.  I'm sorry.  I'm sorry.  Wait.
10   So, Mr. Lawall, so now if litigation goes forward in state
11   court, and are you saying that it's in state court that it's
12   determined, the ownership issue is determined, is that what
13   you're saying --
14             MR. LAWALL:  No, no, no.
15             THE COURT:  -- or in -- I'm sorry, or in the BVI the
16   ownership issue is determined?
17             MR. LAWALL:  That issue is now currently in play in
18   the BVI and --
19             THE COURT:  Right, and so now -- and I'm sorry to
20   interrupt you, but now you go forward and in the BVI it's
21   determined -- are we saying that it's determined that the
22   debtor does not own the property?  That's a possibility.
23             MR. LAWALL:  In the BVI, yes, that issue I understand
24   is in play in the BVI.
25             THE COURT:  Okay.  And what we're saying here is in

21

1   the first part of subparagraph (b) is that PAX, Bravo Luck,

2   Kwok and Guo, right, reserve the right to assert claims in the

3   bankruptcy.  Now, again, the individuals aren't a party to this

4   agreement, and -- but what you're saying is those -- the

5   parties to the agreement, as well as the two non-parties,

6   reserve rights to assert claims in the bankruptcy case if it's

7   determined that they are creditors, if it's determined -- are

8   we saying that after the BVI litigation is resolved, if it's

9   determined that, what, that one of these entities is the owner

10  that they then have the right to assert a claim?

11          MR. LAWALL:  No, Your Honor, I think it would play

12  out -- and I apologize for the complexity.  We've all been

13  dealing with this for a while.  It is if the owner -- if Bravo

14  were to be determined to be the owner of this asset, then

15  effectively I would expect that the bankruptcy would probably

16  be dismissed, although I know that Mr. Spelfogel would say,

17  well, we still have the piercing argument, and he would be

18  correct.  That would still have to be resolved.

19          THE COURT:  Yeah, but -- excuse me, I'm sorry to

20  interrupt -- wait, Mr. Lawall, I apologize.

21          MR. LAWALL:  Sure.

22          THE COURT:  The piercing argument is in front of the

23  state court.

24          MR. LAWALL:  Right.

25          THE COURT:  So are we saying that the BVI action goes

22

1  forward and the state court goes forward at the same time?

2          MR. LAWALL:  Well, they -- I think that's the intent,

3  Your Honor, is that they would both be running on parallel

4  tracks.

5          THE COURT:  All right.  So how then do you resolve

6  the piercing complaint if you don't know who owns -- I'm just

7  confused.

8          MR. LAWALL:  No, it's a really good point, and, no,

9  it's -- again, Lawall, Your Honor, for Bravo.  I agree it gets

10 -- it will be complex.  I'm not sure that anybody has worked

11 that through yet, and given that we've got two courts here

12 whose trial calendars are both obviously impacted by COVID and

13 what have you, nobody knows for sure exactly when either of

14 those issues are going to be tried.

15         And so I think we would just have to work it out as

16 we get down the road and see what rulings come out of either

17 sets of litigation.

18         THE COURT:  Well, let me just tell you one of my

19 concerns.  I have real -- there are a lot of arguments being

20 made as to why this case doesn't belong in bankruptcy, and I'm,

21 you know, prepared to move forward and to try to get something

22 set up so that you get this asset sold and get people paid.

23 What I am not interested in is having all that litigation

24 brought into this court because there is no basis for us to be

25 doing that in my view.

1          MR. SPELFOGEL:  Judge -- okay.

2          THE COURT:  And -- I'm sorry.

3          MR. SPELFOGEL:  I didn't want to interrupt, Judge.

4   It's Mr. Spelfogel.  I just wanted to add to a couple of

5   clarifications from Mr. Lawall's conversation, but I'll -- when

6   you're done, Your Honor.

7          THE COURT:  No, no, so my point is that as I'm

8   looking at this and I'm not looking at it from a selfish

9   perspective, I am looking at it from the perspective of, you

10  know, again, the number of creditors, the fact that there are

11  other jurisdictions available to resolve these claims, and a

12  very strong feeling, very strong questions about the viability

13  of any case in this -- you know, in this court short of an

14  agreement for folks to get something sold and divide the assets

15  up.

16         I just want to put that out there as we move forward

17  and maybe, maybe as you're thinking about the things like what

18  the sales officer might do, and whether it's Judge Cyganowski

19  or not, whoever it is, and I'm not -- it doesn't matter who it

20  is from my perspective until the issue is put before me, that

21  person, we might consider whether that person could be helpful

22  in resolving some of these issues that might not be resolved

23  through the litigation in the various other form.

24         Now, I just put that out there.  I'm not advocating

25  it.  I'm not asking you to do it.  I'm just mentioning it.  As

1 you are trying to deal with what is, you know, clearly a

2 challenging problem, it's a creative solution that you folks

3 are bringing forward, and I think it's just something you might

4 want to think about as you try to find the right way to deal

5 with these matters.  Mr. Spelfogel, I interrupted you.  Did you

6 want to say something?

7        MR. SPELFOGEL:  Yes, thank you, Your Honor, and we

8 appreciate the comments, and I think those are very good

9 suggestions.  Just in terms of clarity, the -- you know, I

10 think as everybody has agreed and said in their papers the idea

11 is for these issues to be dealt with either in BVI or in state

12 court or some combination.

13        I think, as Mr. Lawall said, depending upon the

14 rulings, there's a possibility that there's an issue and simply

15 what was money advanced and loaned and is that something

16 payable, so just more of a basic 101 bankruptcy issue, which

17 doesn't go to the heart of any of the disputes.  So I think

18 that's what the idea of the reservation is.  You know, I think

19 with lots of attorneys involved and cooks here, the language,

20 you know, could have been cleaner, but that was I think the

21 genesis of multiple negotiations.

22        In terms of what can happen, there is the claim which

23 is right now in the BVI as to ownership of the property, but

24 there's other claims that are teed up that could affect the

25 rights of the property that are outside of the court also.  For

1  instance, without getting into, you know, any of the detail,

2  but, for instance, Pacific Alliance, you know, asserts an

3  objecting creditor that they own anything that Kwok owns, and

4  they assert that Kwok owns Bravo Luck, and it's a sham.

5       So it's a little bit circular, but the point of all

6  that is that we believe those issues would be addressed in the

7  state court or BVI and that the reservation is very limited.  I

8  do think potentially having some kind of mediation more

9  globally could be something that would be effective.

10      I think, you know, at least from my training, you

11 know, over the years, the melting asset or the melting ice cube

12 is the (indiscernible), so that was what I think the parties

13 unanimously were in agreement that let's see if we can get that

14 teed up for sale for the spring, the spring selling season,

15 maximize that, and then hopefully if that results in monetizing

16 the asset and cashes in a bank preserve under, you know, the

17 Court's supervision, these other issues that takes more time,

18 that's not as detrimental.

19      So, anyway, that was the genesis of where we are and

20 why we're proceeding in the fashion we are.

21      THE COURT:  All right.  And just -- I don't -- please

22 don't misunderstand the source of my questions.  I don't mean

23 at all in asking these questions to criticize what's in the

24 contents of the agreement.  I know this is a hard agreement to

25 deal with and to structure.  These are just things that have

1  popped out to me in my looking at it and then perhaps a

2  different perspective than you folks.  So I don't mean to

3  suggest that -- or nitpick at this.

4          But I'll mention something else.  Paragraph 26, time

5  is of the essence, now I know there's the 180-day period, and

6  if that -- but there's also language in the agreement that

7  gives people the opportunity to modify dates.  I just didn't

8  know whether the time of the essence is consistent with that.

9          MR. SPELFOGEL:  Judge, it's Mr. Spelfogel.  We would

10 ask, you know, obviously subject to Your Honor's availability,

11 if we can put on -- get a date maybe two weeks out for the 9019

12 and also to bring the sale of the -- the sale agent motion to

13 Your Honor for that date as well with the -- and carry out

14 motions to that date for holding purposes with the idea that we

15 would work with the parties, the sale officer, and also the

16 U.S. Trustee to try to resolve these issues.

17         We do think that the name is just a name, and we

18 don't think that that should be an impediment, and we do think

19 the scope -- there's a lot of authority to have a wider ray of

20 scope in what the restructuring officer does here, but we don't

21 think that there is a lot besides the sale to do in this case,

22 other than presumably file a plan, which would be -- we would

23 think to disburse assets pursuant to the rulings by the BVI and

24 the state court, but that said, I think discussions with the

25 U.S. Trustee to try to resolve that would be very helpful.

27

1        THE COURT:  And what -- there's no provision in here

2   for compensating the sale officer.  How is he or she going to

3   be compensated?  At least I didn't see it.  Paragraph 2 talks

4   about the appointment of the designated sale officer.

5        MR. SPELFOGEL:  And, again, and obviously Mr. Nash

6   can jump in as well, this is Mr. Spelfogel, but we would

7   envision that that would be dealt with in part of an agreement

8   with the sale officer.  That would be a separate standalone

9   agreement.  We weren't presuming to try to frame an agreement

10  for -- you know, before we got somebody in place, so that has

11  to be worked through.

12       MR. NASH:  Your Honor, yes --

13       THE COURT:  All right.  Is that --

14       MR. NASH:  -- that is exactly correct.

15       THE COURT:  All right.  Is the sale officer permitted

16  to retain advisors?  Can he or she retain counsel or other

17  advisors in fulfilling his or her job?

18       MR. LAWALL:  That's another question, Your Honor,

19  where we haven't worked out -- this is Lawall again.  I guess

20  the hope, Your Honor, because Judge Cyganowski is a practicing

21  lawyer with a good firm that it might not be necessary, but I

22  think that's one of those we'd have to cross the bridge after I

23  think Mr. Nash has some further conversations with Judge

24  Cyganowski, and then I'm sure Mr. Spelfogel and myself will

25  want to have some conversations, but our sense is --

1          THE COURT:  Oh, yes --

2          MR. LAWALL:  -- we're just going to have to work out

3    that issue.

4          THE COURT:  No, and that's fine.  I guess my point is

5    that you can retain Judge Cyganowski assuming everything gets

6    worked out, but you've not retained her firm.  Now, of course

7    the understanding is that she's free to retain the firm to

8    advise her on, you know, matters.  Nothing sort of jumps out at

9    me as being problematic, and maybe it makes sense.

10         My point is just that that's -- and I understand now

11   a little bit better why this hasn't been addressed in this kind

12   of detail in Paragraph 2 or otherwise because the expectation

13   is that is going to be vetted and resolved in connection with

14   the motion seeking the appointment of the individual.

15         All right.  Bear with me one second.  And just one

16   last question, and, again, it may be just that I haven't

17   studied this, you know, sufficiently, in the sale procedures in

18   Paragraph 5, at the bottom of Page 3, the parties agree to the

19   following regarding the sale of the residence, and there in (a)

20   it's a sale and cash closing subject to higher and better

21   offers, et cetera, and we have those procedures.

22         In six the approval powers, at best the sale officer

23   would overseeing the sale process, et cetera, and that the sale

24   officer shall have final approval power after prior

25   consultation and subject to the bankruptcy court approval with

1  the right to object regarding the marketing and sale of the

2  residence, including the following, to decide the sale process

3  whether through traditional means, private sale option or a

4  combination.  Is that consistent with five?

5              UNIDENTIFIED ATTORNEY:  Your Honor, I --

6              THE COURT:  I thought -- I'm sorry, I thought that in

7  five what the parties were doing was saying, okay, look, this

8  is the process we're going to agree to, and in six you're

9  saying -- and the person who's going to oversee it is a sale

10  officer, right, and that she or -- if it's Judge Cyganowski,

11  she's going to have to make some calls, you know, who's a

12  qualified buyer, who's a qualified officer, you know, those

13  sorts of things.

14             But it just struck me that in (a) you seem to be

15  saying that she is also the one to decide what the process is

16  going to be, whether through traditional means, a private sale

17  auction, or a combination, and that seemed to be inconsistent

18  with what was in five.

19             MR. SPELFOGEL:  Your Honor, this is Mr. Spelfogel.  I

20  think the preamble in six provides for all that is subject to

21  bankruptcy approval and the right for Bravo Luck and Pacific

22  Alliance to weigh in.  So I think what's contemplated is to

23  have some kind of separate procedures -- specific procedures

24  approved for -- you know, as this moves forward.  This was

25  supposed to lay out sort of the broad strokes on this, but give

30

1  some flexibility to the sale officer, and I think it's going to

2  depend on the interest here and the level of the sale.

3         But certainly from at least our standpoint we always

4  believe that anything should be subject to higher and better

5  offer, that the sale officer with their expertise and in

6  consultation with the parties would need to weigh in and let

7  the parties know their recommendations on how to best maximize

8  things.

9         But I think this is more of a general blueprint, and

10 the specific -- for instance, the sale itself would be subject

11 to obviously approval by the Court and the -- any sort of

12 specific protocols would also be subject to further approval of

13 the Court.

14         THE COURT:  All right.  Does anyone else --

15         MR. NASH:  Judge, in Paragraph 5 --

16         THE COURT:  Yes.

17         MR. NASH:  I'm sorry, Judge.  We did contemplate a

18 sale motion, which is a bidding procedures type of motion, and,

19 you know, when we did 6(a), I think we just wanted to cover all

20 possible bases and maybe trying to cover everything possible

21 that, you know, you could read it, and I see how you do read

22 it, that there's a possible inconsistently.

23         So, but that was the thought, that there will be a

24 motion on bidding procedures.  There would be a motion on sale

25 approval.  There would be two sets of motions, but whether it's

31

1  a private sale per se, I think that's -- you know, given the

2  nature of the asset, that is probably -- everybody thinks it

3  will probably go because there is an interview process with the

4  Sherry-Netherland.  So, you know, 6(a) is an effort to capture

5  possibilities we weren't thinking of.

6          THE COURT:  All right.  Just bear with me one second.

7  Mr. Morrissey, is there anything else?  I know that your office

8  has got a lot of questions or at least some questions.  And

9  you've laid out on the record, you know, the concerns, and I

10 don't need to hear them again, but is there anything else you'd

11 like to add to what you have already set forth?

12         MR. MORRISSEY:  Your Honor, once again Richard

13 Morrissey for the U.S. Trustee.  The comments that Your Honor

14 made a few minutes ago about what's happening in the wider

15 world of this case, namely the litigation in other courts and

16 how they're going to interact, I'm hoping that the Court's

17 comments, and I'm speaking to Your Honor obviously, but I'm

18 really speaking to the party, that I'm hoping that the Court's

19 comments will make it even clearer than it already is that what

20 this case needs is a quarterback, and if it's not going to be a

21 Chapter 11 Trustee, but the parties, namely PAX, you know, is

22 not comfortable with the debtor as a straight debtor-in-

23 possession in the case, I really think that the CRO

24 alternative, the conventional CRO alternative is still the best

25 approach, even more so given the Court's concerns about what's

32

1  going on in the other court.

2        The passage from -- that Your Honor read regarding

3  what's happening in the other courts, the SO or sales officer

4  was not included in that, and I think that the person who

5  should be, as I put it, the quarterback of this operation

6  should definitely be involved in that process because we can

7  bring the whole case together with one person in charge, and

8  that person -- and I think the parties don't necessarily

9  disagree with the concept, but that a CRO should be in charge

10 of the whole thing in accordance with the J. Alix protocol, and

11 I certainly hope the parties will consider that, especially in

12 light of the Court's comments regarding the other litigation.

13        And also, by the way, all the confusion regarding the

14 sale process would vanish because there would just be, as Mr.

15 Nash was saying, you'd have a conventional bidding procedures

16 motion, you'd have a sale motion, et cetera, et cetera, and

17 it's all being done by the one party.  And I think in the

18 interest of efficiency it would certainly be a better approach

19 because when it comes to the other litigation, I really wonder

20 who is in charge of that, who is in charge of quarterbacking

21 all of that, and I think right now, unless it's a straight

22 debtor-in-possession case, the answer is nobody.

23        And so I think short of a Chapter 11 Trustee

24 solution, I think the conventional CRO solution would work.

25              THE COURT:  All right.  Thank you.  All right.

33

1  Anyone else wish to be heard?

2           MR. LAWALL:  Your Honor --

3           THE COURT:  All right.  Here --

4           MR. LAWALL:  -- Fran Lawall.

5           THE COURT:  I'm sorry.  Go ahead.

6           MR. LAWALL:  No, that's all right, Your Honor.

7           THE COURT:  Mr. Lawall.

8           MR. LAWALL:  Just closure on that last point, and I

9  appreciate the U.S. Trustee's concerns, but I think Your Honor

10 gets the sense of how difficult this agreement was to

11 negotiate, and a CRO would put a hole right in the middle of it

12 with all respect to the U.S. Trustee.  And so -- and I know

13 this issue can come up, Your Honor, if we can tee up on the

14 9019 motion, but, again, the CRO would create problems on my

15 client's side just because of how hard it was to get to where

16 we are right now.

17          THE COURT:  All right.  All right.  I need to consult

18 with Ms. Rodriguez or -- I can't do this in the next two weeks

19 just given the stuff that I have on my calendar and stuff that

20 needs to be done.

21          So, first, what I'd ask you folks to do is to come

22 back with some other days that you have in mind, preferably in

23 early April, and I apologize, but it's just a function of the

24 press of other matters.  It would give you an opportunity to

25 see if you can get the closure with the U.S. Trustee, and also

1  put you in a position to tee up all the other -- the other

2  motions that you're going to be filing, right, because what you

3  want is approval of the 9019, the retention of the sale officer

4  and the retention of a broker, am I right about that?  I think

5  --

6          UNIDENTIFIED ATTORNEY:  Yes, Your Honor.

7          THE COURT:  -- not the broker, but the sale officer.

8          UNIDENTIFIED ATTORNEY:  Yes.

9          THE COURT:  Okay.  All right.  Because the sale

10 officer will be involved in the selection --

11         UNIDENTIFIED ATTORNEY:  Correct.

12         THE COURT:  -- of the broker.

13         UNIDENTIFIED ATTORNEY:  Correct.

14         THE COURT:  Right.  So I would ask you to get back to

15 Ms. Rodriguez.  We'll try to accommodate it.  I just can't do

16 it in the next few weeks.  I need some time to work with her

17 to, you know, get some dates that work for us.

18         So, please -- so what we'll do is -- first, thank you

19 very much for getting the draft to us.  It's very, very -- it's

20 been very helpful to me.  This conversation I think has been

21 very, very useful, and, you know, I'm hopeful that we're going

22 to be able to get to some resolution here.

23         And, Mr. Morrissey, I know that from your office's

24 perspective there is the J. Alix protocol.  There are other

25 things people have -- back in the olden days when we didn't

1  have those sorts of things, you know, we had mediators that

2  although they were mediators they had, you know, more specific

3  or sometimes, you know, broad ranging assignments to help

4  resolve specific claims and then other issues that might come

5  up.  I don't know if it's a -- can be done a similar thought as

6  to this -- the individual who's going to, you know, oversee the

7  -- whose job would be to oversee the sale process, be the

8  honest broker, if you would, and maybe there are other things

9  that she could be retained to look after to get something more

10 in line with something the U.S. Trustee is more -- not just

11 familiar with, but be willing to address.

12         So, all that being said, what I ask is that you get

13 back to Ms. Rodriguez.  We'll try to accommodate your

14 schedules.  You know, this is as a practical matter will happen

15 early in April.  So that gives you, you know, time to get the

16 other stuff done, try to work something out, finalize your deal

17 with the sale, of the -- Judge Cyganowski and get it front of

18 us.  Okay.

19         MR. NASH:  Thank you, Judge.

20         MR. SPELFOGEL:  Your Honor, this is Mr. Spelfogel.

21 Just as one housekeeping in terms of the Pacific Alliance's

22 motion for stay and trustee, if we can carry that over to

23 whatever date we're going to be --

24         THE COURT:  Yes.

25         MR. SPELFOGEL:  -- choosing, that would be helpful.

1            THE COURT:  Of course.  Thank you very much.

2            MR. SPELFOGEL:   Thank you.

3            THE COURT:  All right.  Does anyone else wish to be

4    heard?

5            UNIDENTIFIED ATTORNEY:  Your Honor, the status

6    conference as well.

7            THE COURT:  Yes, so the next time -- yes, yes, we can

8    carry the status conference.  We'll carrying everything, but,

9    you know, we're going to have the 9019 motion, and I assume the

10   other motions as well will be on.

11           UNIDENTIFIED ATTORNEY:  Thank you, Judge.

12           THE COURT:  Okay.  Great.  Thank you very much.

13           UNIDENTIFIED ATTORNEY:  Thanks, Judge.

14           UNIDENTIFIED ATTORNEY:  Thank you.  Take care.

15           THE COURT:  All right.  Thank you.

16           UNIDENTIFIED ATTORNEY:  Thank you.

17                         *  *  *  *  *

18

19

20

21

22

23

24

25

# C E R T I F I C A T I O N

I, COLETTE MEHESKI, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


/s/ Colette Meheski

COLETTE MEHESKI

J&J COURT TRANSCRIBERS, INC.      DATE: March 18, 2021