UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

In re

GENEVER HOLDINGS, LLC,

           Debtor.

-----------------------------------------------------------x

Case No. 20-12411 (JLG)

Chapter 11

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
THE UNITED STATES TRUSTEE FOR THE APPOINTMENT
OF A CHAPTER 11 TRUSTEE PURSUANT TO
SECTION 1104 OF THE BANKRUPTCY CODE**

William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**"), respectfully submits this memorandum in support of his motion for the appointment of a chapter 11 trustee in the above-referenced case pursuant to sections 1104(a) and (b) of title 11, United States Code (the "**Bankruptcy Code**"). In support of this motion (the "**Motion**"), the United States Trustee respectfully states as follows:

**PRELIMINARY STATEMENT**

A chapter 11 trustee should be appointed to administer this chapter 11 case because Genever Holdings LLC, the debtor herein (the "**Debtor**"), has capitulated to the demand of its largest creditor that it relinquish control of its principal asset. The Debtor has entered into an agreement whereby it has abdicated its responsibility as a debtor-in-position to oversee the marketing and sale of that asset. Under the agreement, the Debtor would hand over the management of the sale process to loosely defined purported independent third party designated as a "Sales Officer," who essentially would act as a privately selected chapter 11 trustee with

1

limited powers. The Bankruptcy Code does not authorize either the appointment of privately selected trustee or a trustee acting with limited powers to manage a sales process. If the Debtor is unwilling or unable to manage its affairs, it cannot remain a debtor-in-possession, and the Court should direct the appointment of a truly independent chapter 11 trustee who would be able to oversee the marketing and sale process, as well as all other aspects of the case.

## FACTS

*Background*

1. On October 12, 2020, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. ECF Doc. No. 1.

2. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor remains in control of its assets.

3. Due to lack of creditor interest, the United States Trustee has been unable to appoint an Official Committee of Unsecured Creditors. *See* Declaration of Richard C. Morrissey ("**Morrissey Decl.**"), attached to this Motion, ¶ 2.

**The Debtor's Property**

4. This case centers on an apartment in the Sherry-Netherland Hotel in Manhattan (the "**Property**"). *See* Debtor's Declaration Pursuant to Local Bankruptcy Rule 1007-2 (the "**1007-2 Declaration**"), ¶ 3, ECF Doc. No. 1, pg. 5 of 15. The Debtor's interest in the Property is represented by approximately 3,000 shares of Sherry-Netherland cooperative stock and proprietary leases. *Id.*

5. In 2015, the Debtor purchased the Property for approximately $70 million in 2015. *See id.* at ¶ 4. The Debtor states that, by virtue of funding pursuant to a trust agreement,

2

Bravo Luck Limited ("**Bravo Luck**") is the beneficial owner of the Property. The Debtor further states that Bravo Luck is owned by the son of the Debtor's manager (the "**Debtor's Principal**"). *See id.*

6. The Property is subject to non-payment proceedings brought by the Sherry-Netherland Hotel for unpaid maintenance charges of approximately $1 million. *Id.* at ¶ 7.

7. The Debtor has stated its intention to sell the Premises, if necessary, during the pendency of this chapter 11 case, and to resolve "the competing claims relating to the [Property] as between Bravo [Luck] and [PAX]." *See id.* at ¶¶ 10-12.

**The PAX Litigation**

8. Since 2017, the Debtor and the Debtor's Principal have been engaged in litigation against an entity called the Pacific Alliance Opportunity Fund ("**PAX**") in the Supreme Court, New York County. *See id.* at ¶ 6. Among other claims, PAX asserts that the Debtor is the Debtor's Principal's alter ego. *See id.*

9. On December 16, 2020, PAX filed a Motion to Modify the Automatic Stay to Proceed with State Court Action (the "**Lift Stay Motion**"). ECF Doc. Nos. 12-14; *see also* Morrissey Decl., ¶3. In the Lift-Stay Motion, PAX alleged that the Petition had been filed in bad faith, calling the Debtor "a mere shell formed only to hold and shield" the Property. Memorandum of Law in Support of Lift-Stay Motion, ¶¶ 1, 2.

10. Subsequently, on January 8, 2021, PAX filed a Motion for an Order Under 11 U.S.C. § 1112(b) Converting the Debtor's Case to a Case Under Chapter 7 or, in the Alternative, for an Order Under 11 U.S.C. § 1104(a) Appointing a Trustee to Administer the Debtor's Estate (the "**Conversion/Chapter 11 Trustee Motion**"). ECF Doc. Nos. 28-30; *see also* Morrissey

3

Decl. ¶ 3.  In the Conversion/Chapter 11 Trustee Motion, PAX argued that the Debtor's principal's past malfeasance demonstrates that "he cannot (and should not) be trusted as a debtor-in-possession to administer the estate."  Memorandum of Law in Support of Conversion/Chapter 11 Trustee Motion, ¶ 7, ECF Doc. No. 36.  Specifically, PAX alleged that the Debtor "cannot be entrusted to comply with the Debtor's fiduciary duty to protect and conserve" the Property.  *Id.* at ¶ 8.  Accordingly, PAX concluded, the Court should either convert the case to chapter 7 or direct the appointment of a chapter 11 trustee, so as to avoid "the taint of conflicts, self-dealing and general impropriety, which currently abound.  *Id.* at ¶¶ 7, 9.

11.    In response to the Debtor's opposition to the Lift-Stay Motion,[1] PAX, in its Reply in further support of the Lift-Stay Motion, reiterated that the Petition had been filed in bad faith, and added that the Debtor had conceded that the issues between PAX and the Debtor, as well as its principal, could and should be adjudicated in different courts.  *See* Reply in Further Support of Lift-Stay Motion, ¶¶ 2-4, ECF Doc. No. 41.  PAX also called into question the Debtor's motives with respect to the disposition of the property by noting that the Debtor had not taken any of the usual steps to sell the Property – no sale motion, no bid procedures, no retention of a broker – during the first three (3) months of the case.  *Id.* at ¶ 14 n.26.  PAX also insisted that ""[a]ny sale process requires removing the Debtor as the decision-maker. . . ."  *Id.*

12.    Both the Lift-Stay Motion and the Conversion/Chapter 11 Trustee Motion are pending before this Court.  ECF Docket Report; Morrissey Decl. ¶ 4.

---

[1] The Debtor's Response to the Lift-Stay Motion was filed at ECF Doc. No. 22.  Bravo Luck filed a separate Objection to the Lift-Stay Motion at ECF Doc. No. 21.  Bravo Luck also filed an Objection to the Conversion/Chapter 11 Trustee Motion at ECF Doc. No. 44.  The Sherry-Netherland filed a Joinder and Reservation of Rights in support of the Conversion/Chapter 11 Trustee Motion at ECF Doc. No. 45.

**The Amended Settlement Motion and Settlement Agreement**

13. On March 5, 2021, the Debtor filed an Amended Motion to Approve Attached Stipulation of Settlement with Bravo Luck and PAX (the "**Amended Settlement Motion**"). ECF Doc. No. 62; *see also* Morrissey Decl. ¶ 5. Attached to the Amended Settlement Motion is a Settlement Agreement, dated February 26, 2021 (the "**Settlement Agreement**"). ECF Doc. No. 62-1; *see also* Morrissey Decl. ¶ 5.

14. Under the Settlement Agreement, the Debtor has agreed to relinquish control of the sale process to "an independent third party to be designated as the Debtor's Sales Officer." Settlement Agreement, ¶ 2, pg. 2 of 9, ECF Doc. 62-1. The Amended Settlement Motion, in turn, states that "the Debtor, Bravo Luck and PAX have agreed . . . to seek the appointment of an independent third party officer, designated as the Sales Officer." Amended Settlement Motion, ¶ 10. ECF Doc. No. 62. The Sales Officer "shall have the powers consistent with those of the debtor/trustee in bankruptcy," *id.* at ¶ 14a., but only in connection with "overseeing a sale process. . . ." *Id.*[2]

15. The Amended Settlement Motion further provides that "the parties will also seek to retain a . . . broker." *Id.* at ¶ 11. According to the Settlement Agreement, the Sales Officer "shall select the real estate broker(s) . . . to be employed by the Debtor's estate in the [Sales Officer's] business judgment. . . ." Settlement Agreement, ¶ 3. Bravo Luck and PAX would retain the right to object to the Sales Officer's selection. *See id.*

16. Once the broker is in place, the Sales Officer "shall have the final approval

---

[2] The Amended Settlement Motion states that "the Settlement has the support of the three purported major stakeholders in the Chapter 11 case," and that these stakeholders have agreed to a "transparent sale process with the aid of an independent Sales Officer. Amended Settlement Motion, ¶ 19.

5

power" over the sales and marketing process, though such power will be subject to the approval of this Court, "with right to object by Bravo Luck and PAX." *Id.* at ¶ 6.

### III. DISCUSSION

The facts of this case warrant the appointment of a chapter 11 trustee pursuant to 11 U.S.C. §§ 1104(a)(1) and (a)(2).

**A.    Legal Authority – Chapter 11 Trustee**

The Bankruptcy Code is designed to allow a debtor-in-possession to retain management and control of the debtor's business operations. *See* 11 U.S.C. §§ 1007, 1008; *In re Sillerman*, 605 B.R. 631, 640 (Bankr. S.D.N.Y. 2019); *In re Eurospark Indus.*, 424 B.R. 621, 627 (Bankr. E.D. N.Y. 2010). It is well recognized, however, that a debtor-in-possession owes fiduciary duties to the bankruptcy estate, *In re Smart World Techs., LLC*, 423 F.3d 166, 175 (2d Cir. 2005), and must, among other things, "protect and . . . conserve property in [its] possession for the benefit of creditors" and "refrain [] from acting in a manner which could damage the estate, or hinder a successful reorganization of the business." *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990) (quoting *In re Sharon Steel Corp.*, 86 B.R. 455, 457 (Bankr. W.D. Pa. 1988), *aff'd*, 871 F.2d 1217 (3d Cir. 1989)). "The willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee." *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 526 (Bankr. E.D. N.Y. 1989). If a debtor-in-possession defaults in that respect, then the debtor may be dispossessed of its officers and alternative management may be appointed in the form of a Chapter 11 trustee. *See Schuster v. Dragone*, 266 B.R. 268, 271 (D. Conn. 2001).

The Bankruptcy Code sets forth two separate standards for the Court's determination of the necessity of appointing a trustee: Section 1104(a)(1) and (a)(2). The sections provide, in pertinent part:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor. . . .
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor [ ].

11 U.S.C. § 1104(a)(1), (a)(2).

A finding of "cause" under § 1104(a)(1) mandates the appointment of a trustee. *Sillerman*, 605 B.R. at 642; *USHA SoHa Terrace, LLC v. RGS Holding, LLC, et al.* (*In re Futterman*), 584 B.R. 609, 616 (Bankr. S.D.N.Y. 2018); *1031 Tax Group*, 374 B.R. 78, 86 (Bankr. S.D.N.Y. 2007); *Oklahoma Refining Co. v. Blaik (In re Oklahoma Refining Co.)*, 838 F.2d 1133, 1136 (10th Cir. 1988). The list of wrongs constituting "cause" warranting the appointment of a trustee is non-exclusive. Factors relevant for a court's consideration to the appointment of a trustee under Section 1104(a)(1) include conflicts of interest, including inappropriate relations between corporate parents and the subsidiaries; misuse of assets and funds; inadequate record keeping and reporting; various instances of conduct found to establish fraud or dishonesty; and lack of credibility and creditor confidence. *In re Altman*, 230 B.R. 6, 16

7

(Bankr. D. Conn. 1999), *aff'd in part, vacated in part*, 254 B.R. 509 (D. Conn. 2000). The "court need not find any of the enumerated wrongs to find cause for appointing a trustee." *Oklahoma Refining*, 838 F.2d at 1136. The appointment of a Chapter 11 trustee is,

> in the appropriate case, . . . critical for the court to exercise in order to preserve the integrity of the bankruptcy process and to insure that the interests of creditors are served.

*In re Lopez-Munoz*, 553 B.R. 179, 189 (1st Cir. BAP 2016), quoting *In re Nartron Corp.*, 330 B.R. 573, 591-92 (Bankr. W.D. Mich. 2005).

A court is given "wide latitude" to determine whether the challenged conduct rises to the level of "cause." *In re Ashley River Consulting, LLC*, Case Nos. 14-13406, 14-13407, 2015 WL 1540941, *10 (Bankr. S.D.N.Y. 2015). In addition, matters of concern that raise suspicions that a debtor's management has acted fraudulently and that necessitate an investigation can be deemed sufficient cause to appoint a trustee. *In re Soundview Elite, Ltd.*, 503 B.R. 571, 581-82 (Bankr. S.D.N.Y. 2014). In determining whether cause exists to warrant the appointment of a chapter 11 trustee, courts will consider a debtor's management's pre- and post-petition conduct. *Sillerman*, 605 B.R. at 654; *1031 Tax Grp.*, 374 B.R. at 86.

Through Section 1104(a)(1) of the Bankruptcy Code, Congress has mandated that a Chapter 11 debtor-in-possession, who acts as a fiduciary of the bankrupt estate, be an honest broker. *See Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 355 (1985) ("[T]he willingness of courts to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.'"). When a debtor-in-possession, or its management, has exhibited an inability or unwillingness to comply with their basic fiduciary duties, there is but one remedy

8

established by Congress to supplant management while allowing the case to remain in chapter 11: The appointment of a trustee pursuant to 11 U.S.C. § 1104(a). *See In re V. Savino Oil*, 99 B.R. at 526 ("And if the debtor-in-possession defaults in this respect, [s]ection 1104(a)(1) [of the Bankruptcy Code] commands that stewardship of the reorganization effort must be turned over to an independent trustee.").

In turn, section 1104(a)(2) of the Bankruptcy Code allows appointment of a trustee even when no "cause" exists. *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989); *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990). Under Section 1104(a)(2), the Court may appoint a trustee, in its discretion, to address the "interests of the creditors, any equity security holders, and other interests of the estate." 11 U.S.C. § 1104(a)(2). *See*, *e.g.*, *Sharon Steel*, 871 F.2d at 1226; *Comm. of Dalkon Shield Claimants v. A.H. Robins Co.*, 828 F.2d 239, 242 (4th Cir. 1987); *see also The 1031 Tax Group*, 374 B.R. at 90 (Section 1104(a)(2) standard is "flexible" so as to give court discretion to appoint trustee where such appointment would benefit the parties and estate). Even "in the absence of fraud or dishonesty," the appointment of a Chapter 11 is appropriate where "the debtor-in-possession suffers from conflicts of interest which impact its ability to fulfill its fiduciary duties." Lopez-Munoz, 553 B.R. 179 at 196; *see also In re Ridgemour Meyer Props., LLC,* 413 B.R. 101, 113 (Bankr.S.D.N.Y.2008) (independent trustee should be appointed when debtor and its managers "suffer from material conflicts of interest").

### B. Cause Exists for the Appointment of a Chapter 11 Trustee Under Section 1104(a)(1)

In the instant case, there is ample cause for the Court to appoint a Chapter 11 trustee under subsection (a)(1) of Section 1104 of the Bankruptcy Code. Although there is no indication

9

that, as of the Petition Date, the Debtor did not intend to administer its case in all respects, the Debtor has reached an agreement with PAX and Bravo Luck to relinquish control of a major aspect of this case, namely the sale of the Property.  *See* Amended Settlement Motion, ¶ 10, ECF Doc. No. 62; Settlement Agreement, ¶ 2, pg. 2 of 9, ECF Doc. 62-1.  Under the agreement among the aforementioned parties, the Debtor would delegate control of the sale process to a third-party "Sales Officer," whose "powers [would be]consistent with those of the debtor/trustee in bankruptcy," though such powers would limit this officer to the oversight of the sale process.  Amended Settlement Motion, ¶ 14a.

Both the Amended Settlement Motion and the Settlement Agreement leave little doubt that the sale process is to be conducted under the auspices not of the Debtor, but rather of the Sales Officer.  For example, the parties to the settlement have agreed to a "transparent sale process with the aid of an independent Sales Officer."  Amended Settlement Motion, ¶ 19.

Moreover, the Sales Officer, not the Debtor, would "select the real estate broker(s) . . . to be employed by the Debtor's estate in the [Sales Officer's] business judgment. . . ."  Settlement Agreement, ¶ 3.  Bravo Luck and PAX would retain the right to object to the Sales Officer's selection.  *See id.*  Under this arrangement, it appears that the Debtor would not be able to file the application to retain the broker under section 327(a) of the Bankruptcy Code, as debtors can only file such applications for professionals whom they employ.  *See* 11 U.S.C. § 327(a).

Finally, the Sales Officer "shall have the final approval power" over the sales and marketing process, subject only to the approval of this Court, "with right to object by Bravo Luck and PAX."  Settlement Agreement, ¶ 6.  Tellingly, the Debtor, which, as a debtor-in-possession, is supposed to be in control of its case, will neither run the sale process nor select the broker.  *See id.* at ¶¶ 3, 6.  In fact, according to the Settlement Agreement, the Debtor, unlike

Bravo Luck and PAX, cannot even object to the sales and marketing process. *See id.* at ¶ 6. In short, the Debtor, which in a debtor-in-possession case is supposed to manage the sale process, has apparently agreed to consign itself to the role of a spectator. The relegation of the Debtor to the sidelines is especially noteworthy where, as here, the asset to be sold is the Debtor's principal asset.

It is readily apparent that PAX, which filed both the Lift-Stay Motion and the Conversion/Chapter 11 Trustee Motion, wants to remove the Debtor from control of the Property, and that includes the sale and marketing process for the Property. PAX's lack of trust in the Debtor can perhaps best be summed up in this statement from the Lift-Stay Motion: "It is difficult to imagine a more egregious example of a Petition filed in bad faith than this one. . . ." Memorandum of Law in Support of Lift-Stay Motion, ¶ 51, pg. 25 of 39, ECF Doc. No. 13. PAX adds color to this statement by pointing to the curious fact that "the Debtor asserts that it is not the 'true' owner of the [Property][3] . . . but nevertheless has filed chapter 11 to protect that asset." *Id.* at ¶ 53, pg. 26 of 39.

Turning its attention to the possible sale of the Property, PAX questions whether the Debtor's principal "should be trusted as a steward of this chapter 11 case to sell [the Property]." *Id.* at ¶ 76, pg. 38 of 39. In fact, PAX asserts that "it could not be clearer that the Debtor . . . will not carry out its fiduciary duties." Memorandum of Law in Support of Conversion/Chapter 11 Trustee Motion, ¶ 83, pg. 39 of 50, ECF Doc. No. 36. With respect to the Property, PAX states that the Debtor has "incurable conflicts of interest" that will prevent the Debtor from being able

---

[3] As PAX explains in the Lift-Stay Motion, the Debtor has asserted that Bravo Luck is the true beneficial owner of the Property and that Bravo Luck should receive the proceeds from the sale of the Property. Memorandum of Law in Support of Lift-Stay Motion, ¶ 39, pg. 20 of 39, ¶ 52, pg. 25 of 39, ECF Doc. No. 13.

to "comply with [its] fiduciary duty to fairly marshal the [Property] for the benefit of *all* creditors." *Id.* at ¶ 98, pg. 47 of 50 (emphasis in original). Specifically, PAX fears that the Debtor, if left in control, would manipulate the sale process to benefit the principal and Bravo Luck, and not the estate and its creditors. *See id.* Although PAX would not necessarily oppose the sale of the property through the bankruptcy case, it added the caveat that any sale process must "include[s] oversight by an experienced, disinterested third-party, with appropriate safeguards, and oversight by non-insider creditors, including PAX, the U.S. Trustee, and the Court." Memorandum of Law in Support of Lift-Stay Motion, ¶ 77, pg. 38 of 39.

By means of the Settlement Agreement, PAX has convinced the Debtor to agree to surrender control of the sale process to a "disinterested third-party" – namely the "Sales Officer." At the same time, PAX has addressed another of its concerns, whether the Debtor should be permitted to retain a broker to market and sell the Property. PAX warned in the Conversion/Chapter 11 Trustee Motion that the Debtor's principal was going to "create[] another conflict in the case" by retaining a broker who was the principal's "long-time associate" who "was involved with [the principal] when he attempted to transfer title of the [Property] to [his] son . . . to shield and improperly divert this asset from creditors." Memorandum of Law in Support of Conversion/Chapter 11 Trustee Motion, ¶ 83, n. 128, pg. 40 of 50, ECF Doc. No. 36. PAX's fears in this regard have apparently been allayed by the Settlement Agreement, under which the Debtor has agreed to delegate to the Sales Officer the choice of a broker to market and sell the Property. Settlement Agreement, ¶ 3.

C.  **The Bankruptcy Code Does Not Authorize the Retention of A "Sales Officer" To Run the Sale Process in the Debtor's Place**

The only express authorization in the Bankruptcy Code for the Court to direct the appointment of a fiduciary who supplants a debtor-in-possession is the Court's authority to direct the appointment of a chapter 11 trustee under section 1104.[4] *See* 11 U.S.C. § 1104. *See also In re Adelphia Comm. Corp.*, 336 B.R. 610, 664 (Bankr. S.D.N.Y. 2006) (court could not appoint independent fiduciary because no Bankruptcy Code provision authorized such appointment). Chapter 11 trustees have statutorily defined duties, obligations, and limitations under the Bankruptcy Code. *See, e.g.*, 11 U.S.C. § 321 (defining eligibility to serve as trustee); 11 U.S.C. § 322 (imposing bonding requirements for trustee): 11 U.S.C. § 323 (establishing trustee as the representative of the estate and providing that trustee has capacity to sue and be sued); 11 U.S.C. § 324 (establishing mechanism for removal of trustee); 11 U.S.C. § 326 (placing limitations on compensation of a trustee); 11 U.S.C. § 327 (authorizing trustee to employ professionals to represent or assist the trustee in carrying out the trustee's duties); 11 U.S.C. § 1106 (defining duties of a trustee). Permitting a "Sales Officer" to perform some, but not all, of the Debtor's functions puts the estate at risk for actions taken under that officer's *ad hoc* authority. For example, the Bankruptcy Code does not state whether such a person is able to hire professionals or to file periodic reports, functions normally reserved to debtors-in-possession or chapter 11 trustees. The Court – or an appellate court – may reverse any actions taken under the Sales

---

[4] A recent set of amendments to the Bankruptcy Code further demonstrates that the Bankruptcy Code does not countenance the appointment of an independent third party to manage one part of a chapter 11 case while a debtor-in-possession manages other aspects of the case. The Small Business Reorganization Act of 2019, Pub Law No. 116-54, 133 Stat 1079 (the "SBRA"), 11 U.S.C. §§ 1181 *et seq.* created the first and only statutory scheme in which a debtor-in-possession and trustee serve simultaneously. *See, e.g.,* 11 U.S.C. § 1183. Congress chose to carve out a special exception in the SBRA to the general rule that a debtor-in-possession and an independent third party cannot serve simultaneously. It chose not to sanction the kind of power-sharing agreement at issue here.

13

Officer's authority. In contrast, a chapter 11 trustee has clearly defined powers under the Bankruptcy Code to hire professionals and to act as the representative of the estate.

Here, the Settlement Agreement purports to call into being an independent Sales Officer who – through that officer's retention of a broker and ultimate sale of the property is subject to Court approval – is accountable to no one. *See* Amended Settlement Motion, ¶ 14a . ECF Doc. No. 62 (with respect to the Property, Sales Officer "shall have the powers consistent with those of the debtor/trustee in bankruptcy"). The Settlement Agreement would authorize the Sales Officer to assume complete control of the sale and marketing process, including the retention of a broker. *See* Settlement Agreement, ¶ 3, EDF Doc. No. 62-1 ("the real estate broker(s) . . . to be employed by the Debtor's estate in the [Sales Officer's] business judgment. . . .") Bravo Luck and PAX would retain the right to object to the Sales Officer's selection. *See id.* The Debtor, meanwhile, would be on the outside, looking in. *See id.*

Once the broker is in place, the Sales Officer "shall have the final approval power" over the sales and marketing process, though such power will be subject to the approval of this Court, "with the right to object by Bravo Luck and PAX." *Id.* at ¶ 6. Although both Bravo Luck and PAX could object to the Sales Officer's actions, the Sales Officer would have no obligation to answer to anyone – not to the Debtor, not to Bravo Luck, not to PAX. *See id.*

PAX has questioned the Debtor's motives with respect to the Property, and has noted that, in the first three (3) months of this chapter 11 case, the Debtor had not retained a broker or filed either a bid procures or sale motion. *See* Reply in Further Support of Lift-Stay Motion, ¶¶ 14 n. 26, ECF Doc. No. 41. PAX also takes the position that "[a]ny sale process requires removing the Debtor as the decision-maker. . . ." *Id.* The Bankruptcy Code, however, gives PAX only two alternatives: Either allow the debtor to manage the case – including the sale

14

process – as a debtor-in-possession or proceed with the Conversion/Chapter 11 Trustee Motion. *See* 11 U.S.C. § 1107(a) ("a debtor in possession . . . shall perform all the functions and duties . . . of a trustee serving in a case under this chapter"); *see also In re Roxwell Performance Drilling, LLC*, 2013 Bankr. LEXIS 5345, 2013 WL 6799118 at *4 (Bankr. N.D. Tex. 2013) ("[T]he authority under chapter 11 to manage the debtor's assets and affairs lies exclusively with either the debtor as the debtor in possession or a chapter 11 trustee."). There is no third way or hybrid. *In re Plantation Inn Partners*, 142 B.R. 561, 564; (citing Collier on Bankruptcy, ¶ 1104.01[e] at 1104-29,30). No agreement among the parties can limit a chapter 11 trustee's duties enumerated in section 1106(a) of the Bankruptcy Code, nor can a debtor in possession surrender some, but not all, of its duties under section 1107(a). *See id.* Thus, the parties' proposal under the Settlement Agreement for the Debtor to delegate some, but not all, of the Debtor's functions is not sanctioned anywhere in the Bankruptcy Code and should not be approved.

Only a chapter 11 trustee would be in a position to conduct the necessary investigations, pursue appropriate remedies in the best interest of the estate and its creditors, and manage a marketing and sale process, if appropriate.[5] The Bankruptcy Code provides a remedy to address a corporate governance problem such as exists here, where the Debtor's largest creditor insists upon removing the Debtor from the sale and marketing process. Turning control of the Debtor and its assets over to a chapter 11 trustee would reassure creditors and other parties-in-interest

---

[5] Section 1106 (a)(1) provides as follows:
(a)    A trustee shall— (1)    perform the duties of the trustee, as specified in paragraphs (2), (5), (7), (8), (9), (10), (11), and (12) of section 704(a).

Section 704(a), in turn, reads, in part, as follows:
   (a)  The trustee shall—
…
(2)  be accountable for all property received;
…

15

that the estate's fiduciary is looking out for *them*. It is evident that an independent fiduciary in whom the Court and the parties can have confidence must be appointed, especially in light of the obvious mistrust and acrimony between PAX on the one hand and the Debtor and Bravo Luck on the other. *See In re Marvel Entm't Group*, 140 F.3d 463, 472-74 (3d Cir. 1998) (finding sufficient cause under 11 U.S.C. § 1104(a)(1) where irreconcilable conflicts between the debtor and creditors existed).

Accordingly, "cause" exists under 11 U.S.C. § 1104(a)(1) for the appointment of a Chapter 11 Trustee as an independent fiduciary – not a "Sales Officer," but a fiduciary whose appointment is authorized under the Bankruptcy Code.

### D. Because the Appointment of a Chapter 11 Trustee Would Be in the Interests of Creditors and other Interests of the Estate, Appointment of a Chapter 11 Trustee is Warranted Under Section 1104(a)(2)

Similarly, even if the Court finds that the United States Trustee has failed to demonstrate cause for the appointment of a trustee under subsection (a)(1) of Section 1104, a Chapter 11 trustee would be in the best interests of creditors. Accordingly, the appointment is warranted under Section 1104(a)(2) of the Bankruptcy Code. See 11 U.S.C. § 1104(a)(2). Under Section 1104(a)(2), courts "eschew rigid absolutes and look to the practical realities and necessities." *See In re Taub*, 427 B.R. 208, 227 (Bankr. E.D.N.Y. 2010) (quoting *In re Adelphia Communication Corp.*, 336 B.R. 610, 658 (Bankr. S.D.N.Y. 2006)); *In re Euro-American Lodging Corp.*, 365 B.R. 421, 427 (Bankr. S.D.N.Y. 2007). As a court noted in *Schuster v. Dragone*, 266 B.R. 268 (D. Conn. 2001):

> In determining whether the appointment of a trustee is in the best interests of creditors, a bankruptcy court must necessarily resort to its broad equity powers." In equity, "courts eschew rigid absolutes and look to the practical realities and necessities inescapably involved in reconciling competing interests . . . .

16

> Moreover, equitable remedies are a special blend of what is necessary, what is fair, and what is workable.

*Id*. at p. 272-73 (quotations omitted). Accordingly, the standard for appointment of a Chapter 11 trustee under Section 1104(a)(2) is flexible. *See* 124 Cong.Rec. H11, 102 (daily ed. Sept. 28, 1978); S17,419 (daily ed. October 6, 1978). The House Report summarizes the reasons for Congress' adoption of a flexible standard for the appointment of trustees. The House Report, in part, reads as follows:

> The twin goals of the standard for the appointment of a trustee should be protection of the public interest and the interests of creditors, as contemplated in current chapter X and facilitation of a reorganization that will benefit both the creditors and the debtors, as contemplated in current chapter XI. Balancing the goals is a difficult process, and requires consideration of many factors.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 232 (1977), U.S. Code Cong. & Admin. News 1978, p. 6192.

Among the factors considered by the courts in assessing motions brought under this section include: (1) the trustworthiness of the debtor, (2) the debtor's past and present performance and prospects for rehabilitation, (3) the confidence – or lack thereof – of the business community and of creditors in present management, and (4) the benefits derived from the appointment of a trustee, balanced against the cost of the appointment. *In re China Fishery Group Limited (Cayman)*, 16-11895, 2016 WL 6875903, at *14 (Bankr. S.D.N.Y. Oct. 28, 2016); *Euro-American*, 365 B.R. at 427. Still another factor in determining whether the appointment of a Chapter 11 trustee is appropriate is whether the debtor-in-possession would be willing – or even able – to pursue causes of action on behalf of the estate. *See William H. Vaughan & Co., Inc.*, 40 B.R. 524, 526 (Bankr. E.D. Pa. 1984) (unwillingness or inability of management of pursue estate causes of action among grounds for appointment of Chapter 11

17

trustee). Finally, courts will also consider such factors as "conflicts of interest, inappropriate relations between corporate parents and subsidiaries, [and] misuse of assets and funds. . . ." *In re Ancona*, No. 140-10532 (MKV), 2017 WL 7868696, at *9 (Bankr. S.D.N.Y. Nov. 30, 2016).

Here, the Debtor's agreement – albeit at PAX's insistence – to relinquish control of the sale process makes the continuation of this case as a debtor-in-possession case untenable. Moreover, PAX has stated quite plainly that it has "absolutely *no* confidence that the Debtor's assets will be property preserved and marshalled by [the Debtor's principal] (emphasis in original)." Memorandum of Law in Support of Conversion/Chapter 11 Trustee Motion, ¶ 83, pg. 40 of 50, ECF Doc. No. 36. PAX obviously believes that the principal, if left in control of the Property, will continue to "shield" it from PAX. *Id.* at ¶ 83, pg. 39 of 50. The Debtor may have one or more causes of action against its principal. *See In re Soundview Elite, Ltd.*, 503 B.R. 571, 583 (Bankr. S.D.N.Y. 2014) (Court directed appointment of Chapter 11 trustee, noting that "I have no faith that the Debtors' current managers are capable of acting independently and in the best interests of the estates, or in objectively investigating themselves"). The Debtor cannot be expected to investigate any possible causes of action against the principal. *See Oklahoma Refining*, 838 F.2d at 1135 (chapter 11 trustee appointed where debtor "was in the awkward position of having to decide whether or not to sue itself").

Moreover, the need for a chapter 11 trustee is acute in that the Debtor's management has already agreed to surrender in part control of the Debtor. Where, as here, the Debtor has announced its agreement to play only a limited role, a chapter 11 trustee should be appointed to administer the entire chapter 11 case.

Accordingly, it is in the interest of the estate and its creditors at this juncture to put these cases into the hands of an independent fiduciary who can, among other things, (1) assume

control of the Debtors' assets, (2) investigate the validity and extent of the competing claims to the Property, (3) retain a broker to market and sell the Property, and (4) formulate a viable Chapter 11 plan. The appointment of a chapter 11 trustee would remove any doubt over the authority of the person administering the estate and further the interests of creditors.

## IV. **CONCLUSION**

WHEREFORE, the United States Trustee respectfully requests direct the appointment of a Chapter 11 trustee pursuant to section 1104(a) of the Bankruptcy Code, and grant such other and further relief as may be deemed just and proper.

Dated: New York, New York
March 22, 2021

        Respectfully submitted,

        WILLIAM K. HARRINGTON
        UNITED STATES TRUSTEE, Region 2

By:   */s/ Richard C. Morrissey*
      Richard C. Morrissey
      Trial Attorney
      201 Varick Street, Room 1006
      New York, New York 10014
      Tel. (212) 510-0500