UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                                          Chapter 11

Genever Holdings LLC,                        Case No. 20-12411 (JLG)

                                    Debtor.
------------------------------------------------------------x

## DEBTOR'S MOTION TO ENGAGE AND RETAIN MELANIE L. CYGANOWSKI, ESQ. TO ACT AS THE DULY APPOINTED SALES OFFICER FOR THE DEBTOR'S BANKRUPTCY ESTATE

Genever Holdings LLC (the "Debtor"), as and for its motion (the "Motion") to engage and retain Melanie L. Cyganowski, Esq. to act as the duly appointed Sales Officer for the Debtor's Bankruptcy Estate pursuant to 11 U.S.C. §§ 105 and 363 in accordance with the attached Engagement Letter annexed hereto as Exhibit "A", represents and shows this Court as follows:

### Background

1.      The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on October 12, 2020 and thereafter has continued in possession and management of its assets as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2.      The Debtor's chief asset consists of the 18th floor apartment and auxiliary units in the Sherry Netherland Hotel located at 781 Fifth Avenue, New York, New York 10022 (collectively, the "Residence").

3.      Prior to the commencement of the Chapter 11 case, disputes existed involving, among others, the Debtor, the Debtor's BVI parent company, Pacific Alliance Asia Opportunity Fund L.P. ("PAX") and Bravo Luck Limited ("Bravo Luck") concerning the State Court Action and certain actions pending in the BVI, to wit, the BVI Litigation, as defined in the Settlement

Agreement filed as docket number 60. These disputes continue to be litigated in the Supreme Court, New York County and British Virgin Islands (collectively, the "Litigation Disputes").

4. After the filing of the Chapter 11 case, the Debtor's primary creditors engaged in extensive negotiations over a period of several weeks to resolve pending motions filed by PAX to vacate the automatic stay and to convert the Chapter 11 case to a case under Chapter 7 or appoint an operating trustee under 11 U.S.C. §1104(a). The motions were opposed by the Debtor and Bravo Luck. The negotiations proved successful and resulted in a global settlement (the "Proposed Settlement") which remains subject to Bankruptcy Court approval pursuant to a separate but companion motion, to be heard contemporaneously herewith pursuant to Bankruptcy Rule 9019(a).

5. Among other things, the Proposed Settlement provides an agreed framework for the sale of the Residence, while the automatic stay is vacated to permit the Litigation Disputes to continue in non-bankruptcy forums. In order to promote a fully transparent process, the Debtor (with the consent of Bravo Luck and PAX) has agreed to the appointment of a disinterested and independent third party officer, designated as the Sales Officer under the Proposed Settlement. It is anticipated that the Sales Officer shall exercise independent judgment regarding the sale and marketing process subject in the final analysis to Bankruptcy Court approval, and the right of Bravo Luck and PAX to object to any decision with respect to such sale and marketing process.

6. In contemplation that the Proposed Settlement will be approved, the Debtor is hereby simultaneously moving to retain and engage former judge, Melanie L. Cyganowski, Esq. ("Judge Cyganowski"), as the proposed Sales Officer pursuant to 11 U.S.C. §§105 and 363.

## Proposed Retention of Judge Cyganowski

7. A core component of the Proposed Settlement is that the Sales Officer should be a highly respected and experienced person who can bring a sense of stability and confidence to the

position. Although the Litigation Disputes are complex and highly contentious, there is unanimous agreement among the parties that Judge Cyganowski is an ideal candidate, as her experience and judgment are beyond reproach. Indeed, given her long experience as a jurist and attorney, Judge Cyganowski is highly qualified to serve in this role. Judge Cyganowski has already consulted with counsel for each of the Debtor, PAX and Bravo Luck, is fully familiar with the intended functions of the Sales Officer, as outlined in the Proposed Settlement and summarized below, and is prepared to undertake the engagement promptly upon Bankruptcy Court approval of the Proposed Settlement and her retention hereunder.

### Scope of Services

8. Pursuant to the Proposed Settlement, Judge Cyganowski will perform a variety of sale related services, as generally highlighted by the following:

   a. Judge Cyganowski shall chiefly oversee the sale of the Residence through a conventional bankruptcy-type sale process, in consultation with Bravo Luck and PAX. The Sales Officer is not a chapter 11 trustee or examiner, but Judge Cyganowski will have powers consistent with those of the debtor/trustee in bankruptcy, albeit limited solely to supervising and directing the sale process as delineated in Section "6" of the Proposed Settlement.

   b. Judge Cyganowski shall select the real estate broker ("Broker) (including filing a motion on behalf of the Debtor for engagement of such)"), subject to the right of Bravo and PAX to object. The broker shall have expertise selling luxury residential Manhattan real estate and employed by the Debtor's Bankruptcy Estate. Bravo Luck and PAX shall be allowed to recommend and interview parties to fill the role of Broker in conjunction with Judge Cyganowski.

   c. Judge Cyganowski shall also oversee the establishment of a marketing program and sales procedures that are designed to maximize value of the Residence. Procedures and the ultimate approval of any sale shall be subject to further application to the Court consistent with the Settlement Agreement.

9. Additionally, Judge Cyganowski's long-standing professional reputation overseeing mediations makes her ideally suited in this matter to render mediation services, if necessary.

10.     In sum, Judge Cyganowski will lead the Debtor's efforts to sell the Residence utilizing her business judgment as a fiduciary for the Debtor, all creditors, and the Court. Judge Cyganowski shall operate in a manner akin to a Chief Restructuring Officer, with delineated functions as set forth in the Settlement Agreement.

### Judge Cyganowski's Disinterestedness

11.     To the best of the Debtor's knowledge, information, and belief, Judge Cyganowski: (a) has no prior or current connection with the Debtor, its creditors, any member of the Kwok family, or other parties in interest; and (b) does not hold any interest adverse to the Debtor, the Debtor's estate, PAX or Bravo Luck.

12.     Although the engagement of Judge Cyganowski is not governed by Section 327 of the Bankruptcy Code *per se*, she has no disqualifying relationships involving any creditors or parties in interest, and qualifies as a "disinterested person" within the meaning of Section 101(14) of the Bankruptcy Code to the extent applicable.

### Terms of Compensation

13.     As set forth in the Engagement Letter, Judge Cyganowski has requested and will be paid on an hourly basis predicated on a current billing rate of $1,400 per hour. Although Judge Cyganowski's firm, Otterbourg P.C. ("Otterbourg"), is not being separately retained, Judge Cyganowski will be assisted by a junior lawyer and a paralegal and, from time to time if required, by one or more senior lawyers (collectively, the "Assisting Personnel") as needed and where appropriate in furtherance of her performance as the Sales Officer. The junior lawyer and paralegal will be compensated on an hourly basis predicated on a current billing rate of $450 per hour and $325 per hour, respectively, and the senior lawyers (if required) will be compensated on an hourly basis predicated on a current billing rate ranging from $450 per hour to $850 per hour.

4

14. Judge Cyganowski has agreed that her compensation and the compensation of the Assisting Personnel shall be paid from the sale proceeds generated from the sale of the Residence. Pending a sale of the Residence, Judge Cyganowski and the Assisting Personnel shall accrue their fees and expenses.

15. In the regular course of practice, Judge Cyganowski (and Otterbourg professionals and paraprofessionals) maintains time sheets and daily billings which identify the time incurred and services provided through reasonably detailed descriptions. The status of accrued time charges shall be filed with the Court monthly upon notice to parties having filed notices of appearance and the U.S. Trustee.

### Basis for Relief

16. The position of Sales Officer represents a compromise between the parties, which created a hybrid position designed to promote neutrality and independence in the pursuit of a sale of the Residence. Judge Cyganowski is not a trustee or examiner, and more closely resembles a Chief Restructuring Officer with defined functions.

17. The U.S. Trustee has raised certain issues regarding the statutory predicate for the position. In the Debtor's view, the position of Sales Officer can be approved on the same basis as a Chief Restructuring Officer with more limited powers. Judge Cyganowski is being appointed by the Debtor as an officer as provided for under the Engagement Letter and will fundamentally function as an independent and disinterested responsible party, designated by the Debtor as its chief officer over the sale process as detailed more particularly in the Settlement Agreement and operating with the consent of all major creditors. Such designation through a stipulation of the major constituencies is within the "sound exercise of the Debtor's business judgment" and would result in "reasonable and appropriate relief" where the Debtor and creditors had a contentious

5

relationship and the restructuring officer would allow the case to move forward. *See In re K.G. I.M. LLC*, 620 B.R. 469 (Bankr. S.D.N.Y. 2020).

18. As to the scope of Judge Cyganowski's appointment, courts have also provided that the duties of a restructuring officer can vary widely depending on the needs of a case, and may be limited. In *In re Chemtura*, 2009 Bankr. LEXIS 5760 (Bankr. S.D.N.Y. 2009), the CRO did not manage the company day-to-day, instead the CRO's role was limited to assisting with identifying cost reductions in the business, developing possible restructuring plans or strategic alternatives including assets sales, and acting as a liaison to stakeholders in the bankruptcy. *See also In re Nine West Holdings, Inc.*, Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. July 2, 2018); *In re Fairway Group Holdings Corp.*, Case No. 16-11241 (MEW) (Bankr. S.D.N.Y. June 3, 2016); *In re Swift Energy*, Case No. 15-12670 (MFW) (Bankr. D. Del. Feb. 1, 2016); *In re Aereo, Inc.*, Case No. 14-13200 (SHL) (Bankr. S.D.N.Y. Dec. 24, 2014); *In re School Specialty, Inc.*, Case No. 13-10125 (KJC) (Bankr. D. Del. Feb. 25, 2013); *In re Blockbuster Inc.*, Case No. 10-14997 (BRL) (Bankr. S.D.N.Y. Oct. 27, 2010); *In re Lehman Bros. Holdings, Inc.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Dec. 17, 2008); *In re PRC, LLC*, Case No. 08-10238 (MG) (Bankr. S.D.N.Y. Feb. 27, 2008); *In re Bally Total Fitness of Greater N.Y., Inc.*, Case No. 07-12395 (BRL) (Bankr. S.D.N.Y. Aug 21, 2007); *In re Dana Corp.*, Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006).

19. Here the role of the third party responsible officer is necessarily more limited, *i.e.*, to oversee the marketing and sale of the Residence. The Debtor's management will retain all other rights and obligations unrelated to the sale of the Residence, which here are fairly narrow, and includes monthly reporting, payment of all required trustee fees, and efforts to emerge from Chapter 11.

6

20. Ultimately, the Debtor likely intends to file a liquidating plan to either distribute the net sale proceeds if the Litigation Disputes are resolved, or to escrow the net sale proceeds pending final determination of the litigation. In either event, the exit strategy is straight forward, and will be refined with the input of the creditors, in an effort to achieve a fully consensual agreement.

21. Additionally, the authority to appoint Judge Cyganowski also flows from the Debtor's authority to sell the Residence pursuant to Section 363 of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under Section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *see also In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 WL 6090194, at *5 (Bankr. D. Del. Nov. 20, 2012) (noting that it is "well-settled" that a debtor may use its assets outside the ordinary course where such use "represents the sound exercise of business judgment"); *In re Phoenix Steel Corp.,* 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (stating that judicial approval under Section 363 of the Bankruptcy Code requires a showing that the proposed action is fair and equitable, in good faith, and supported by a good business reason). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

7

22.     The decision to retain Judge Cyganowski, with the consent of the Debtor's major creditors, should be authorized because it is based on a sound exercise of the Debtor's business judgment and adds an experienced and independent leader for the sale process. Indeed, Judge Cyganowski's engagement provides assurances that ongoing disputes between the Debtor, Bravo Luck and PAX will not encroach upon the sale of the Residence.

23.     In view of all of the foregoing, the retention of Judge Cyganowski as the Debtor's Sales Officer is a sound exercise of business judgment and is clearly in the best interests of all creditors. For all of these reasons, the appointment should be approved.

WHEREFORE, the Debtor respectfully prays for the entry of an Order consistent with the foregoing.

Dated: New York, New York
       April 9, 2021

                                    GOLDBERG WEPRIN FINKEL
                                    GOLDSTEIN LLP
                                    Attorney for the Debtor
                                    1501 Broadway, 22nd Floor
                                    New York, New York 10036
                                    (212) 221-5700


                                    By:    /s/ Kevin J. Nash, Esq.