TROUTMAN PEPPER
HAMILTON SANDERS LLP
Francis J. Lawall
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799
Telephone: (215) 981-4000
Facsimile:  (215) 981-4750
francis.lawall@troutman.com

*Counsel for Bravo Luck Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genever Holdings LLC, | Case No. 20-12411 (JLG) |
| Debtor. | **Re: ECF No. 64, 65** |

**OBJECTION OF BRAVO LUCK LIMITED TO**
**UNITED STATES TRUSTEE'S MOTION FOR AN ORDER**
**DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE**
**PURSUANT TO SECTION 1104 OF THE BANKRUPTCY CODE**

Bravo Luck Limited ("Bravo Luck"), by and through its counsel, hereby objects (this "Objection")[1] to the *United States Trustee's Motion for an Order Directing the Appointment of a Chapter 11 Trustee Pursuant to Section 1104 of the Bankruptcy Code* (ECF No. 64) (the "Motion") filed by Office of the United States Trustee ("U.S. Trustee") in the bankruptcy case of the above-captioned debtor and debtor in possession (the "Debtor"). In support of this Objection, Bravo Luck respectfully states as follows:

---

[1] By filing this Objection, Bravo Luck does not submit to general bankruptcy or United States jurisdiction. This Objection is only to be construed as a limited appearance of Bravo Luck necessitated by the Motion's potential effect on Bravo Luck and in order for Bravo Luck to protect its rights as a major party-in-interest in this bankruptcy case.  Bravo Luck does not waive, and specifically preserves, all of its procedural and substantive defenses to any claims that may be asserted against Bravo Luck by any party in this case.

1

**PRELIMINARY STATEMENT[2]**

1. The U.S. Trustee's Motion is built solely upon unfounded assertions from the Conversion/Chapter 11 Trustee Motion filed by Pacific Alliance Asia Opportunity Fund L.P. ("PAX"). Bravo Luck objected to that motion and thoroughly rebutted each and every allegation. Most importantly, Bravo Luck's objection to the Conversion/Chapter 11 Trustee Motion pointed out that PAX did not allege, much less provide evidence of, a single instance of fraud, self-dealing, malfeasance or other impropriety by the Debtor in this bankruptcy case and that there is no award of damages or judgment entered against the Debtor in the New York state court litigation. To be clear, PAX does not hold an allowed claim in this case, nor does Bravo Luck believe it ever will. Thus, the entire foundation of the U.S. Trustee's Motion which is based upon the same "facts" asserted by PAX remains baseless. Therefore, Bravo Luck strongly contests these false allegations and opposes the relief sought in the Motion. Moreover, recent agreements among the major constituencies in this case regarding a path forward as evidenced by pleadings now pending before this Court clearly demonstrate why conversion or the appointment of a trustee is not only unwarranted, but harmful to the interests of creditors.

2. Bravo Luck hereby incorporates by reference its objection (ECF No. 44) to the Conversion/Chapter 11 Trustee Motion.

3. By it Motion, the U.S. Trustee—a non-economic party in this case—is trying to derail this case's progress, notwithstanding a proposed Settlement which will maximize value for the estate and its creditors, and avoid costly litigation. Based on its interactions with the Debtor in negotiating the Settlement, it is clear the Debtor is neither unwilling nor unable to manage its affairs, but rather is trying to move this case forward in the most efficient, economical, and

---

[2] Capitalized but undefined terms used but in the Preliminary Statement are as defined later in the Objection.

#114677344 v3

smoothest manner possible. Except for the duties carved out for the Sales Officer, the Debtor will remain in control and is actively fulfilling its fiduciary duties.

4. Nor was the Settlement a capitulation by the Debtor to PAX's demands. To the contrary, the Settlement was the result of Bravo Luck's forceful objection to such demands which resulted in a structure designed to advance this case and maximize the value of estate assets. The Settlement avoids unnecessary litigation that would delay progress. Furthermore, if the U.S. Trustee's Motion was granted, the estate and creditors would be harmed, forcing them all back to square one in terms of what issues need to be litigated in this case versus in other venues and additional fees and costs to the estate would accrue by virtue of the chapter 11 trustee and its professionals getting up to speed—all of which would harm the estate and creditors and delay this case's progress, which the parties have worked towards tirelessly.

5. All of the parties in interest in this case are in agreement with respect to the plan for the immediate future of this case as set forth in the Settlement, including the Debtor remaining a debtor in possession. Even The Sherry-Netherland, Inc., while not a party to the Settlement, has agreed with respect to the sale and marketing process described in the Settlement. *See* Settlement Motion, ¶ 11.

6. Bravo Luck believes that the Debtor has demonstrated throughout this case that it has every interest in maximizing value for the sale of the Property. By virtue of the Settlement, the economic parties—who have the greatest financial stake in the sale of the Property—clearly believe that the appointment of a Sales Officer, while the Debtor remains a debtor in possession, is the best way to maximize return to the estate and creditors, which should be the determining factor.

## BACKGROUND

7. On October 12, 2020, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of New York (this "Court").

8. As set forth in the Debtor's Declaration Pursuant to Local Bankruptcy Rule 1007-2 (ECF No. 1) (the "Debtor's Declaration"), this chapter 11 bankruptcy case was commenced in order to allow time to properly resolve the competing claims of ownership against the Debtor's primary asset[3]—the Sherry-Netherland Residence. *See id.* at ¶ 10. Simply put, the resolution of ownership is a gating issue that must be addressed before the Debtor can formulate a plan, as it has told the Court it intends to do. *See id.* at ¶ 12.[4]

9. On March 5, 2021, the Debtor filed the *Debtor's Amended Motion to Approve Attached Stipulation of Settlement with Bravo Luck and PAX* (ECF No. 62) (the "Settlement Motion"), whereby the Debtor sought approval of that certain Settlement Agreement, dated February 26, 2021, by and between the Debtor, PAX, and Bravo Luck (as attached to the Settlement Motion, the "Settlement"). The Settlement would appoint an independent third party Sales Officer with authority to exercise independence regarding the sale and marketing of the Property and, in exchange, litigation brought by PAX in this case would be

---

[3] Although Bravo Luck asserts that it is the ultimate owner of the Property, it refers to the Property herein as being an asset of the Debtor because the Sherry-Netherland co-op shares for the Property are held in the name of the Debtor for the benefit of Bravo Luck.

[4] Pursuant to the Debtor's Declaration, the Debtor made clear that it filed this chapter 11 bankruptcy case so that "[b]efore the Premises [i.e., the Residence] become further entangled in litigation involving competing claims of ownership, the Debtor . . . [can] gain the needed flexibility to be in a position to maximize value under the rehabilitative power of the Bankruptcy Court." Debtor's Declaration at ¶ 10. Additionally, the Debtor provided that: "an important threshold goal of the Chapter 11 case is to obtain a resolution of the competing claims relating to the Premises as between Bravo and Pacific Alliance. Once this issue is resolved or settled, the matter involving Pacific Alliance will be clarified and the Debtor will then be in a position to promulgate a plan of reorganization. Pending such a determination, Chapter 11 will help the Debtor preserve the status quo." *Id.* at ¶ 12.

resolved—all while litigation between the parties in New York state court and the British Virgin Islands proceeded.  *See* Settlement Motion, ¶¶ 3, 10; *see generally* Settlement.

10. On March 22, 2021, the U.S. Trustee filed the Motion, a memorandum of law in support of the Motion (ECF No. 64-1),[5] and a supporting declaration of Richard C. Morrissey (ECF No. 64-2).  By the Motion, the U.S. Trustee seeks the appointment of a chapter 11 trustee.

## OBJECTION

### A. The U.S. Trustee Fails to Demonstrate that "Cause" Exists to Appoint a Chapter 11 Trustee Under Section 1104(a)(1)

11. Appointment of a chapter 11 trustee is extraordinary relief, and the U.S. Trustee fails to satisfy the high bar of clear and convincing evidence required for such relief to be granted:

> The appointment of a chapter 11 trustee is an extraordinary remedy. *In re Euro-American Lodging Corp.*, 365 B.R. 421, 426 (Bankr. S.D.N.Y. 2007) (noting "the appointment of a § 1104 trustee is an extraordinary remedy"); *In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3d Cir. 1989) ("It is settled that appointment of a trustee should be the exception, rather than the rule.") (collecting cases). There is a strong presumption that a debtor should remain in possession absent a showing of need for the appointment of a trustee. *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 167 (Bankr. S.D.N.Y. 1990); 7 COLLIER ON BANKRUPTCY P 1104.02[3][b] (15th ed. 2006). The party seeking appointment of a chapter 11 trustee has the burden of showing, by clear and convincing evidence, "cause" under § 1104(a)(1), or the need for a trustee under § 1104(a)(2). *Euro-American Lodging Corp.*, 365 B.R. at 426; *In re Adelphia Communs. Corp.*, 336 B.R. 610, 656 (Bankr. S.D.N.Y. 2006) (citing *In re Marvel Entertainment Group*, 140 F.3d 463, 471 (3d Cir. 1998)). Although § 1104 requires a bankruptcy court to appoint a trustee if the requirements of the statute are met, a court has wide discretion in considering the relevant facts. *In re Sharon Steel Corp.*, 871 F.2d at 1226; *Adelphia*, 336 B.R. at 656 ("The

---

[5] Terms capitalized but not defined herein shall be ascribed the definitions set forth in the U.S. Trustee's *Memorandum of Law in Support of Motion of the United States Trustee for the Appointment of a Chapter 11 Trustee Pursuant to Section 1104 of the Bankruptcy Code* (ECF No. 64-1) (the "Memo of Law").

-5-

> decision to appoint a chapter 11 trustee is a factual determination entrusted to the discretion of the bankruptcy judge.").

*In re 1031 Tax Group, LLC*, 374 B.R. 78, 85-86 (Bankr. S.D.N.Y. 2007).

12. The U.S. Trustee admits "there is no indication that, as of the Petition Date, the Debtor did not intend to administer its case in all respects . . . ." Memo of Law, 9–10. The U.S. Trustee's Motion instead argues that the appointment of the Sales Officer to oversee the sale process for the Property is a delegation of the Debtor's duties in bankruptcy and a capitulation to PAX based on the allegations laid out in PAX's Lift Stay Motion and Conversion/Chapter 11 Trustee Motion, which the U.S. Trustee appears to accept at face-value as true. *See* Memo of Law, 9–12.

13. The U.S. Trustee overlooks section 2 of the Settlement, which requires the Sales Officer "be reasonably acceptable to the Debtor . . . ." Settlement, § 2. Thus, the appointment of the Sales Officer to manage the marketing and sale of the Property, including selection of a real estate broker, is no different than a debtor selecting and appointing a chief restructuring officer, independent director, or responsible person to make certain independent decision on behalf of a debtor in possession. The Sales Officer's selection of a broker is analogous to a chief restructuring officer choosing to use his or her own firm to support his role, even though the retention application for both the chief restructuring officer and their staff is filed by the debtor as debtor in possession.

14. Even if the Sales Officer is running the sale process, nothing in the Settlement absolves the Debtor of fulfilling its fiduciary duties or supplants the Sales Officer in place of the Debtor in its role as debtor in possession, nor has the Debtor exhibited an inability or unwillingness to comply with its fiduciary duties. Rather, the Debtor abided by its duties in negotiating the Settlement, including the appointment of the Sales Officer as an independent

party overseeing the sale process while the Debtor remains a debtor in possession, because the Settlement represents the best outcome for the estate and its creditors.

15. The U.S. Trustee also argues that the Sales Officer will be "accountable to no one." Memo of Law, 14. That is simply not true. While the Settlement may provide that the Debtor cannot object to the Sales Officer's actions with respect to the marketing and sale process (because the Sales Officer is to be an independent officer on behalf of the Debtor), the U.S. Trustee loses sight of the fact that it is this Court that has the ultimate authority to approve the marketing and sale process and any successful bidder. Additionally, there are active creditors in this case who not only want to see the value of the Property maximized, but have expressly retained the right to consult and object to various actions to be taken by the Sales Officer, all of which serves as a further check and balance in this process.

16. Lastly, in a throwaway paragraph at the end of its argument, the U.S. Trustee argues that there is a corporate governance problem because PAX as the largest creditor "insists upon removing the Debtor from the sale and marketing process." Memo of Law, 15. First, PAX does not hold an allowed claim in this case and thus, is not the Debtor's largest creditor. The U. S. Trustee loses sight of the fact that no award of damages or judgement has been entered against the Debtor in favor of PAX. On the other hand, Bravo Luck undisputedly invested more than $70 million in the Debtor. Moreover, this argument cuts against the U.S. Trustee's representation that "there is no indication that, as of the Petition Date, the Debtor did not intend to administer its case in all respects . . . ." Memo of Law, 9–10. Other than noting an acrimonious relationship between the Debtor/Bravo Luck and PAX, the U.S. Trustee does not make allegations or submit evidence that the Debtor has a corporate governance problem. *See* Memo of Law, 15–16. Conflicts and disagreements between a debtor and its creditors related to how a bankruptcy case should proceed are not new or unique. In contrast to many cases, here the parties have come together and mutually agreed on how to best move this case and the sale

process forward, and the U.S. Trustee should not be permitted to impede that progress to the detriment of the estate and creditors.

> B. **Appointment of a Chapter 11 Trustee is Not in the Best Interests of the Debtor's Estate or its Creditors.**

17. Again, appointment of a chapter 11 trustee is extraordinary relief, and the U.S. Trustee fails to satisfy the high bar of clear and convincing evidence required for such relief to be granted, under section 1104(a)(1) of the Bankruptcy Code, as well as section 1104(a)(2). The U.S. Trustee cites to congressional history related to the "flexible standard for the appointment of trustees", Memo of Law, 17, that "[t]he twin goals of the standard for the appointment of a trustee should be protection of the public interest and the interests of creditors, as contemplated in current chapter X and facilitation of a reorganization that will benefit both the creditors and the debtors, as contemplated in current chapter XI." H.R. Rep. No. 595, 95th Cong., 1st Sess. 232 (1977), U.S. Code Cong. & Admin. News 1978, p. 6192. What the U.S. Trustee fails to recognize is that Congress intended that a debtor in possession was and is the favored structure in chapter 11 and that only in extraordinary circumstances should that status quo be changed, which circumstances clearly do not exist here.

18. In this case, the Settlement—authorizing the appointment of the Sales Officer while allowing the Debtor to remain a debtor in possession, resolving litigation among the parties in this case, and avoiding the expense and delay related to the appointment of a chapter 11 trustee and its professionals—represents what is best for the creditors and this estate. Virtually all the Debtor's creditors are party to, or support, the Settlement, including the largest creditors. If these creditors did not believe that the Settlement was in their best interests, they would not have entered the Settlement and PAX would have proceeded with its Lift Stay Motion and Conversion/Chapter 11 Trustee Motion. The creditors' support for the Settlement should be

all the evidence this Court needs to find that appointment of a chapter 11 trustee is not in the best interests of this estate and its creditors.

19. Additionally, denying the U.S. Trustee Motion and approving the Settlement is in the best interests of this estate because the appointment of a chapter 11 trustee would further delay this case's progress, which has been pending since October, and would result in additional expenses for the trustee and its professionals that are likely to exceed the expense of the Sales Officer and broker.

20. The U.S. Trustee also references PAX's lack of confidence in the Debtor's ability to preserve property and then incorrectly extrapolates that statement to mean that the Debtor cannot be expected to investigate any possible causes of action. Memo of Law, 18. Once again, however, the U.S. Trustee fails to provide any support for its assertions other than by picking and choosing citations to unfounded allegations in various pleadings filed by PAX, which allegations the Debtor, Bravo Luck, and other parties in the New York state court litigation have consistently disputed.[6] Nor has the U.S. Trustee or PAX alleged, much less provided evidence, that the Debtor engaged in any fraud, self-dealing, malfeasance or other impropriety in this case. Moreover, PAX entered into the Settlement and resolved its Lift Stay Motion and Conversion/Chapter 11 Trustee Motion. Therefore, allegations in those tabled motions should not be used as support for the U.S. Trustee's Motion, which if granted would result in negating the Settlement.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Bravo Luck respectfully requests that the Court deny the Motion.

---

[6] *See* ECF Nos. 21, 22, 44; various pleadings in New York state action, Index No. 652077/2017.

-9-

#114677344 v3

Dated: April 20, 2021
      Philadelphia, PA

TROUTMAN PEPPER HAMILTON SANDERS LLP

By: /s/ *Francis J. Lawall*
Francis J. Lawall (PA Bar No. 43932)
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4000
Facsimile: (215) 981-4750
E-mail: francis.lawall@troutman.com

*Counsel for Bravo Luck Limited*

#114677344 v3