O'MELVENY & MYERS LLP
Stuart Sarnoff
Edward Moss
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2224
Email: ssarnoff@omm.com
        emoss@omm.com

-and-

FOLEY & LARDNER LLP
Douglas E. Spelfogel
Alissa Nann
90 Park Avenue
New York, NY 10016
Telephone:  (212) 682-7474
Facsimile: (212) 687-2329
Email: dspelfogel@foley.com
        anann@foley.com

*Attorneys for Pacific Alliance Asia Opportunity Fund L.P.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| GENEVER HOLDINGS LLC, | Case No. 20-12411 (JLG) |
| Debtor. | |

**PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.'S OPPOSITION
TO THE UNITED STATES TRUSTEE'S MOTION FOR AN ORDER
DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE
PURSUANT TO SECTION 1104 OF THE BANKRUPTCY CODE**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND FACTS ....................................................................................................... 4

A.    PAX Is the Largest Creditor in this Chapter 11 Case ........................................... 4

B.    PAX Brought the Motions to Protect Its Interests ................................................ 5

C.    The Global Settlement Agreement Resolves the Motions and Is Approved By All
      Major Constituencies In the Case .......................................................................... 6

ARGUMENT ......................................................................................................................... 7

A.    The Global Settlement Among All Major Constituencies In This Chapter 11 Case
      Obviates the Need for a Chapter 11 Trustee .......................................................... 7

B.    There Is No Prohibition Against the Appointment of the Sales Officer In Lieu of a
      Chapter 11 Trustee ............................................................................................... 11

      (1)    The Appointment of an Independent Officer Is Not an All
             or Nothing Proposition ................................................................................ 11

      (2)    The UST Asserts the False Premise that Only the Debtor or
             a Chapter 11 Trustee Can Manage the Sale Process ..................... 14

C.    The Creditors In this Case Have Already Determined that Appointment of a
      Trustee *Is Not* In Their Best Interests ................................................................ 16

CONCLUSION .................................................................................................................... 19

4814-9487-2549

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aereo, Inc.*,
    Case No. 14-13200 (SHL) (Bankr. S.D.N.Y. Dec. 24, 2014) ................................................... 14

*In re Aldephia*,
    336 B.R. 610 (Bankr. S.D.N.Y. 2006) ........................................................................................ 14

*In re Bally Total Fitness of Greater N.Y., Inc.*,
    Case No. 07-12395 (BRL) (Bankr. S.D.N.Y. Aug 21, 2007)................................................... 14

*In re Bayou Group, LLC*,
    564 F.3d 541 (2d Cir. 2009) ..................................................................................................... 18

*In re Blockbuster Inc.*,
    Case No. 10-14997(BRL) (Bankr. S.D.N.Y. Oct. 27, 2010)................................................... 14

*In re Blue Stone Real Estate, Const. & Dev. Corp.*,
    392 B.R. 897 (Bankr. M.D. Fla. 2008) ................................................................................ 8, 14

*In re Chemtura*,
    2009 Bankr. LEXIS 5760 (Bankr. S.D.N.Y. 2009)................................................................... 13

*In re Curlew Valley Associates*,
    14 B.R. 506 (Bankr. D. Utah 1981)........................................................................................... 12

*In re Dana Corp.*,
    Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006)................................................. 14

*In re Fairway Group Holdings Corp.*,
    Case No. 16-11241(MEW) (Bankr. S.D.N.Y. June 3, 2016) ................................................... 14

*In re Gaslight Club, Inc.*,
    782 F.2d 767 (7th Cir. 1986) ...............................................................................8, 10, 12, 15, 16

*In re K.G. I.M. LLC*,
    620 B.R. 469 (Bankr. S.D.N.Y. 2020) ........................................................................... 8, 15, 16

*In re Lehman Bros. Holdings, Inc.*,
    Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Dec. 17, 2008)................................................. 14

*In re Lyon & Reboli, Inc.*,
    24 B.R. 152 (Bankr. E.D.N.Y. 1982)................................................................................... 12, 13

i

*In re Nine West Holdings, Inc.*,
  Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. July 2, 2018) ..................................... 14

*In Re North Star Contracting Corp.*,
  128 B.R. 66 (Bankr. S.D.N.Y. 1991) ....................................................................... 18

*Matter of Plantation Inn Partners*,
  142 B.R. 561 (Bankr. S.D. Ga 1992) ....................................................................... 13

*In re PRC, LLC*,
  Case No. 08-10238 (MG) (Bankr. S.D.N.Y. Feb. 27, 2008) ................................... 14

*In re Roxwell Performance Drilling, LLC*,
  2013 WL 6799118 (Bankr. N.D. Tex. Dec. 20, 2013) .............................................. 13

*In re School Specialty, Inc.*,
  Case No. 13-10125 (KJC) (Bankr. D. Del. Feb. 25, 2013) ...................................... 14

*In re Stein and Day, Inc.*,
  87 B.R. 290 (Bankr. S.D.N.Y. 1988) ....................................................................... 18

*In re Stillwater Asset Backed Offshore Fund Ltd.*,
  Case No. 12-14140 (ALG) (S.D.N.Y. 2013) ................................................. 9, 13, 14

*In re Swift Energy*,
  Case No. 15-12670 (MFW) (Bankr. D. Del. Feb. 1, 2016) ..................................... 14

*In re The 1031 Tax Grp., LLC*,
  374 B.R. 78 (Bankr. S.D.N.Y. 2007) .................................................................. 8, 18

## Statutes

Section 1104 of the Bankruptcy Code .............................................................................. 1

Section 1106(a) of the Bankruptcy Code ...................................................................... 12

Bankruptcy Code § 1107(a) ...................................................................... 11, 12, 13, 14

Bankruptcy Code §§ 1107(a) and 105 ..................................................................... 13, 16

Pacific Alliance Asia Opportunity Fund L.P. ("PAX"), by its counsel, O'Melveny &

Myers LLP and Foley & Lardner LLP, as and for its opposition (the "Opposition") to the United

States Trustee's Motion for the Appointment of a Chapter 11 Trustee Pursuant to Section 1104

of the Bankruptcy Code [Dkt. 64] (the "Motion" or "Mot."),[1] respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Motion by the United States Trustee (the "UST") is best described as a

solution in search of a problem.  It is no secret that there were numerous issues and

disagreements in this Chapter 11 case among the primary stakeholders including the Debtor and

primary creditors PAX, the Sherry-Netherland Hotel (the "Sherry-Netherland") and Bravo Luck

Limited ("Bravo Luck").  However, those issues, which were implicated in PAX's prior Motion

to Lift Stay [Dkt. 12-14] (the "Lift Stay Motion") and Motion to Convert the Chapter 11 Case or,

alternatively, Appoint a Chapter 11 Trustee [Dkt. 35-37] (the "Conversion Motion" and together

with the Lift Stay Motion, the "Motions"), led to the global Settlement Agreement (defined

below) now before this Court for approval, *which fully resolves the Motions and has been*

*approved by every major constituency in this Chapter 11 case*.

2.      The intended purpose and benefit of the Settlement Agreement is two-fold: the

consensual agreement provides for an agreed framework for administering the Chapter 11 case

through appointment of an independent restructuring officer, *i.e.*, the Sales Officer, that will allay

the concerns of the major constituencies and ensure an independent and trustworthy sales

---

[1]  Any capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Motion.

process, while avoiding costly and protracted litigation over the Motions (and now, the UST's

Motion), which the Debtor has advised it would vehemently contest.[2]

3.      Courts in this District, and others, routinely have supported similar agreements

appointing an independent third party officer to assume various duties and functions of a debtor-

in-possession, where, as here, every major creditor and stakeholder has either joined or expressed

its support for the Settlement Agreement.

4.      Notwithstanding the parties' global settlement, and this Court's repeated support

for similar agreements, the UST now seeks to intervene and undermine the will of the primary

stakeholders in this case by installing a Chapter 11 trustee, which will blow up the settlement and

necessitate protracted and costly litigation, significantly delaying (and ultimately jeopardizing)

any resolution and recovery in this case, to the detriment of the very creditors whose interests the

UST purports to protect.  Importantly, the very "cause" the UST cites for appointment of a

trustee is based on the *exact same* concerns about the current Debtor previously raised by PAX in

the Motions, *which concerns have now been resolved through the Settlement Agreement*.  *See,

e.g.*, Mot. at 9-12.  As a result, the Motion serves no valid purpose and will only cause

unnecessary delay and expense where there are *no relevant issues* left to address.

5.      Moreover, each argument raised by the UST directly contradicts well-established

authority supporting the proposed settlement in this case and the appointment of an independent

third party Sales Officer in lieu of a Chapter 11 trustee.

6.      *First*, the Bankruptcy Code specifically provides that limitations can be placed on

the functions otherwise reserved for a debtor-in-possession – in this case, the sale of the Debtor's

---

[2] The Settlement Agreement also provides for stay relief to allow the underlying State Court litigation to proceed
and the Sherry-Netherland to draw on its security deposit to pay post-petition maintenance fees.

4814-9487-2549

sole asset – without appointment of a Chapter 11 trustee. In arguing otherwise, the UST conflates the Court's ability to limit the duties of a debtor-in-possession and a Chapter 11 trustee. Here, removing the Debtor's power to oversee the sale process of its sole asset is clearly within the Court's authority in order to prevent potential abuse.

7.      _Second_, the UST creates a false dilemma by arguing there are only two options for addressing potential abuse of the sale process in this case – either leave it to the Debtor or appoint a Chapter 11 trustee. To the contrary, this Court and others throughout the country have routinely appointed an independent third party restructuring officer to assume certain powers and obligations of a debtor-in-possession.

8.      _Third_, the appointment of a Chapter 11 trustee is _not_ in the best interests of creditors where, by their Settlement Agreement, those same creditors have indicated _the exact opposite_. In fact, the UST has no economic stake in the transaction at issue, yet seeks to substitute its judgment as to the best course for the case for that of all of the major constituencies. These constituencies have analyzed the issues and determined that the relief sought in the Settlement Agreement will be the most efficient way to resolve the case and obtain the best recovery for all classes.

9.      Accordingly, for all of the reasons described herein, PAX respectfully requests that the Motion be denied as entirely unnecessary and in fact counterproductive in light of the global Settlement Agreement, which resolves the exact same issues raised by the UST's Motion and already fully reflects the interests of each major constituency in this Chapter 11 case.

4814-9487-2549

## BACKGROUND FACTS

### A.   PAX Is the Largest Creditor in this Chapter 11 Case

10.   PAX is the largest creditor in this Chapter 11 case, with a claim in excess of $116 million, arising out of a judgment (the "Judgment") entered the state court litigation against Miles Kwok ("Kwok"), the controlling party of his alter ego, the Debtor here.

11.   This is a single asset case; the Debtor's sole asset is a luxury residence in the Sherry-Netherland in New York City, which was purchased by the Debtor (through Kwok) in 2015 for approximately $70 million (the "Residence"). Mot. ¶¶ 4-5. PAX asserts a claim against the Debtor, and an interest in the Residence, based on the fact that the Debtor is Kwok's alter ego and therefore, equally liable for the Judgment against Kwok. *Id*. ¶ 8. There is no valid dispute as to PAX's claim. As detailed in the Motions, the Debtor is a shell entity established – and utterly dominated and controlled – by Kwok and his insiders, for the sole purpose of purchasing and holding the Residence out of reach of creditors like PAX. *See*, *e.g*., Dkt. 36 (Conversion Motion) ¶¶ 2, 5, 19-20, 25-32.

12.   Besides PAX, there are two other primary alleged creditors asserting claims against the Debtor. Bravo Luck asserts a claim as the purported beneficial owner of the Residence (which PAX disputes). Mot. ¶ 5. The Sherry-Netherland asserts a claim for various unpaid maintenance and other fees related to the Residence (which PAX does not dispute). *Id*. ¶ 6.

13.   As detailed in the Motions, the purported claim of Bravo Luck in this case is Kwok's latest ruse – based upon a bogus claim, and fabricated "Trust Agreement" through which Bravo Luck asserts to be the beneficial owner of the Residence, not the Debtor. *See*, *e.g*., Dkt. 36 (Conversion Motion) ¶¶ 45-56. Indeed, this is a transparent attempt by Kwok to try to further

4

shield the Residence from PAX through Bravo Luck – another alter ego controlled and dominated by Kwok. *Id*.[3]

14.     PAX filed an action in BVI against, amongst others, Kwok and Bravo Luck to enforce the Judgment, challenging Bravo Luck's claim to ownership in the Residence, and raising numerous other claims grounded in malfeasance.  The action is currently pending.[4]

**B.     PAX Brought the Motions to Protect Its Interests**

15.     On December 16, 2020, PAX filed the Motion to Lift Stay alleging, among other things, that the Debtor's Petition was filed in bad faith in order to further a scheme to defraud PAX and avoid its enforcement efforts against Kwok and the Residence.  Dkt. 12-14; Mot. ¶ 9. The Motion to Lift Stay also sought relief to permit PAX to continue certain state court litigation outside of the Bankruptcy Court.  *Id*.

16.     On January 8, 2021, PAX filed the Conversion Motion seeking to convert the Chapter 11 case to a Chapter 7 or alternatively, for an order appointing a Chapter 11 trustee. Dkt. 35-37; Mot. ¶ 10.  Through the Conversion Motion, PAX argued, among other things, that the Debtor suffered from conflicts of interest and could not be trusted to satisfy its fiduciary duties as the debtor-in-possession.  *Id*.  In particular, PAX filed the Conversion Motion to ensure that the Residence would be properly preserved and its value maximized, whether through a sale or otherwise.  *Id*.

---

[3] Not only is the so-called Trust Agreement a blatant fraud (*see id*. ¶ 46), the assertion that the Trust Agreement exists and grants an interest in the Residence to Bravo Luck, belies prior testimony and evidence in the state court litigation against Kwok and, tellingly, was never raised in the state court litigation, but rather, produced for the first time on April 19, 2019, despite the fact that it was responsive to earlier discovery requests. *Id*. ¶¶ 45-56.

[4] Bravo Luck also filed an objection to the UST's Motion [Dkt. 76].  PAX disputes certain assertions therein but concurs in Bravo Luck's objection to the Motion and request that the Settlement Agreement be approved.

4814-9487-2549

17.    The Sherry-Netherland joined the Conversion Motion [Dkt. 45].  Bravo Luck

opposed both Motions [Dkt. 21, 44] and the Debtor opposed the Motion to Lift Stay [Dkt. 22].

**C.    The Global Settlement Agreement Resolves the Motions and Is Approved By All
Major Constituencies In the Case**

18.    Following extended, arm's-length negotiations by and among, the Debtor, PAX,

Bravo Luck and the Sherry-Netherland – representing each major stakeholder and party-in-

interest in this Chapter 11 case – the parties reached a global settlement of the Motions and all

related issues in this Chapter 11 case.  The global settlement is memorialized in a settlement

agreement dated February 26, 2021 between the Debtor, PAX and Bravo Luck, with express

approval by the Sherry-Netherland (the "Settlement Agreement").  *See* Dkt. 62, 62-1.

19.    The Settlement Agreement is predicated upon an agreed framework for the sale of

the Residence, but addresses several key issues, including:

- Appointment of a Designated Sales Officer.  The Sales Officer shall oversee
  the sale of the Residence through a bankruptcy sale process, in consultation
  with Bravo Luck and PAX.
- Broker.  An experienced real estate broker shall be employed by the Debtor's
  estate.
- Marketing Terms.  A marketing plan is established to obtain maximum value
  for the Residence.
- Sales Procedure.  An agreed sales process is established to preserve, protect
  and maximize the value of the Residence.
- Stay Relief.  The parties are authorized to proceed and adjudicate non-core
  state law claims in New York and the BVI.
- Stay Relief for the Sherry-Netherland.  The Sherry-Netherland is authorized to
  satisfy its claim from the security deposit held on behalf of the Debtor.

*Id.*

20.    The intended purpose of the Settlement Agreement is to allay the concerns of the

major constituencies and ensure an independent and trustworthy sale process for the Residence,

6

while avoiding costly and protracted litigation over the Motions, which the Debtor has advised it would vehemently contest.

21.    In addition, providing stay relief to proceed with non-core state law claims is consistent with the Court's prior indication that such claims are more appropriately heard outside of the Bankruptcy Court.

22.    Accordingly, the global Settlement Agreement will allow the Debtor, on behalf of its estate and creditors, to move forward expeditiously with the sale of the Residence under a structured process aimed at maximizing fair market value, while creditors and parties in interest may proceed with various non-bankruptcy claims in the underlying actions.  Absent the foregoing, PAX is concerned that the case will devolve into a *free-for-all*, with the attendant uncertainty and delay likely to undermine the ability to preserve and maximize the value of the estate.

## ARGUMENT

### A.    The Global Settlement Among All Major Constituencies In This Chapter 11 Case Obviates the Need for a Chapter 11 Trustee

23.    As detailed above, the Settlement Agreement is the result of arm's length negotiations between all of the major creditors and stakeholders in this Chapter 11 case – the Debtor, PAX, the Sherry-Netherland and Bravo Luck.  The Settlement Agreement resolves both Motions and is predicated on an agreed framework for the sale of the Debtor's primary asset, the Residence.  By appointing an independent third party Sales Officer, the stakeholders are satisfied that there will be a transparent sale process that will achieve the collective goal of maximizing value for the estate and all creditors.

24.    Overwhelmingly, courts in this District, and others, have supported similar agreements appointing an independent third party officer to assume various duties and functions

7

of a debtor-in-possession.  For example, in *In re K.G. I.M. LLC,* 620 B.R. 469, 475-76 (Bankr.

S.D.N.Y. 2020), the debtors and their secured lender, BSP, settled BSP's motion to lift stay (as

the Settlement Agreement does here) by entering into a stipulation and order appointing a chief

restructuring officer (CRO) who would operate and manage the debtors in their Chapter 11

cases.  In *K.G. IM*, this Court approved – indeed, *encouraged* – the agreement reached by the

parties, holding that the stipulation and order appointing a restructuring officer "was a sound

exercise of the Debtor's business judgment" and constituted "reasonable and appropriate relief

[that] was approved in settlement of the dispute raised in the Stay Relief Motion."  *Id*. at 484-85.

The *K.G. IM* Court overruled objections by the U.S. Trustee who contended that the appointment

of a CRO effectively permitted the CRO to serve as a *de facto* chapter 11 trustee.  *Id*. at 481-82.

The Court dismissed that argument and noted that, consistent with a long line of case law, "[t]he

initial designation of a responsible third party, with the consent of debtor and creditor, was

permissible . . ."  *Id*. at 483 (discussing the analogous holding in *In re Gaslight Club, Inc.*, 782

F.2d 767 (7th Cir. 1986)).

25.     Similarly, Courts have consistently held that the appointment of a Chapter 11

trustee is unnecessary where the issues allegedly supporting such appointment have already been

resolved by the appointment of an independent third party.  For example, in *In re The 1031 Tax

Grp., LLC*, 374 B.R. 78, 88-90 (Bankr. S.D.N.Y. 2007), this Court denied the United States

Trustee's motion to appoint a Chapter 11 trustee finding that notwithstanding the debtors' bad

acts prepetition, it was not necessary to appoint a trustee because of the appointment of a CRO.

In addition, the court in *In re Blue Stone Real Estate, Const. & Dev. Corp.*, 392 B.R. 897, 906

(Bankr. M.D. Fla. 2008) approved the debtors' motion to appoint a CRO over the objection of

the United States Trustee and, notwithstanding the U.S. Trustee's pending motion to appoint a

4814-9487-2549

Chapter 11 trustee, held that "[t]he CRO Motion presents the perfect opportunity to address the Debtors' problems, as identified by the United States trustee [in its motion for trustee], immediately."[5]  Similarly here, the Settlement Agreement addresses *and resolves* the very concerns raised by the UST as the basis for its Motion, rendering the Motion unnecessary and counterproductive.

26.    Moreover, an analogous agreement was approved by this Court in *In re Stillwater Asset Backed Offshore Fund Ltd.*, Case No. 12-14140 (ALG) (S.D.N.Y. 2013) ("*Stillwater*").  In *Stillwater*, the creditors' committee filed a motion to appoint a Chapter 11 trustee based on similar alleged conduct as that raised in the Motions (and now, in the UST's Motion).  To avoid costly and protracted litigation, the debtor and creditors' committee settled the pending issues through an agreement providing for the appointment of an independent third party restructuring officer that would oversee the debtor and recovery of allegedly diverted assets.  Notably, in *Stillwater*, the United States Trustee signed off on such agreement, which was approved by this Court.  *Stillwater* Dkt. 70 (Order (I) Authorizing the Retention and Employment of GlassRatner Advisory & Capital Group, LLC and (II) Designating Evan Blum as Chief Restructuring Officer to the Debtor *Nunc Pro Tunc* to March 8, 2013).  Here, as in *Stillwater*, the appointment of an independent third party Sales Officer, is an appointment by the Debtor, approved by all major stakeholders, to resolve contested issues and avoid engaging in costly and time-consuming litigation, and should similarly be approved.

27.    Notwithstanding the parties' global Settlement Agreement, and the well-recognized precedent for similar agreements discussed above, the UST objects to the Settlement

---

[5]  The court expressed disappointment that "the United States trustee has sought to advance its own view of its role in preserving the integrity of the system ahead of the apparently critical need of the Debtors to change management immediately." *Id.*

4814-9487-2549

Agreement and, by its Motion, seeks the appointment of a Chapter 11 trustee instead.

Importantly, the "cause" cited by the UST is based on the exact same concerns about the current

Debtor that were previously raised by PAX in the Motions – *which concerns have now been*

*resolved through the Settlement Agreement*. *See, e.g.*, Mot. at 9-12.  As a result, the Motion

serves no valid purpose, but rather, seeks counterproductively to supplant the will and interests

of the stakeholders in this case with the unilateral will of the UST, while adding unnecessary

delay and expense where there are *no relevant issues* left to address.

28.     This is particularly true where every major creditor and stakeholder in the case

has signed off on the Settlement Agreement.  In *In re Gaslight Club, Inc.*, 782 F.2d at 769-71,

the Seventh Circuit upheld a like agreement to appoint an independent third party, without

appointing a trustee.  Critical to that decision was the fact that, like here, all of the major

constituents in the case approved the agreement:

> Sections 105(a) and 1107(a) of the Bankruptcy Code provide
> adequate authority for the bankruptcy court to approve the
> replacement of the person designated to perform the duties and
> exercise the rights of the debtor in possession ***if the creditors'***
> ***committee, the person presently in control and the majority and***
> ***controlling shareholder of the debtor agree to this course of***
> ***action***.

*Id*. at 771 (emphasis added).  The court held that because of the agreement of the parties to

designate an independent third party, there was no need to appoint a trustee.  *Id.*

29.     As in *Gaslight*, the Settlement Agreement by all of the major stakeholders

resolves all of the disputed issues in the Motions (which are the basis for the UST's Motion) and

obviates the need and basis for appointment of a Chapter 11 trustee in this case.

10

**B.      There Is No Prohibition Against the Appointment of the Sales Officer In Lieu of a Chapter 11 Trustee**

30.      Importantly, the UST does not dispute the underlying basis for the appointment of an independent third party in this case.  Indeed, throughout the Motion, the UST parrots PAX's concerns raised in the Motions – *i.e.*, that the Debtor, under its current management, is not an independent fiduciary whom the major creditors in this Chapter 11 case can trust will put their interests first with respect to the Debtor's sole asset, the Residence.  *See*, *e.g.*, Mot. at 11-12.  However, the UST takes the unsupported position that the Court cannot appoint a Sales Officer as proposed, but can *only* appoint a Chapter 11 trustee.  *Id*. at 13-15.  This position is directly counter to numerous, well-established authority, described below.

**(1)      The Appointment of an Independent Officer Is Not an All or Nothing Proposition**

31.      The UST argues that "the parties' proposal under the Settlement Agreement for the Debtor to delegate some, but not all, of the Debtor's functions is not sanctioned anywhere in the Bankruptcy Code and should not be approved."  *Id*. at 15.  This argument misses the mark.  There is no bar on the Court's inherent power to impose limits upon the rights of the debtor-in-possession.  Nor is there a per se "all or nothing rule" in connection with appointment of an independent third party.

32.      The UST relies on Bankruptcy Code § 1107(a) for this proposition, but notably omits a key provision.  *Id*.  The rights, powers, functions and duties prescribed on a debtor-in-possession under § 1107(a) are specifically "subject to … *such limitations or conditions as the court prescribes*." 11 U.S.C. § 1107(a) (emphasis added).[6]  Indeed, as detailed above, courts

---

[6] The UST cites § 1107(a) as follows: "a debtor in possession … shall perform all the functions and duties … of a trustee serving in a case under this chapter." Mot. at 15.

4814-9487-2549

have consistently held that § 1107(a) *authorizes* the Court to limit the functions of a debtor-in-possession. *See*, *e.g.*, *In re Gaslight Club*, 782 F.2d at 771, *supra*. Accordingly, based on the very statute upon which the UST relies, a debtor-in-possession's duties may absolutely be delegated without appointing a Chapter 11 trustee.

33.     In arguing otherwise, the UST appears to conflate the ability to limit the duties of a debtor-in-possession and a Chapter 11 trustee. The UST argues "[n]o agreement among the parties can limit a chapter 11 trustee's duties enumerated in section 1106(a) of the Bankruptcy Code, *nor can a debtor in possession surrender some, but not all, of its duties under section 1107(a)*." Mot. at 15 (emphasis added). However, the Bankruptcy Code clearly distinguishes between the ability to limit a debtor-in-possession and a trustee. In *In re Curlew Valley Associates*, 14 B.R. 506, 510 (Bankr. D. Utah 1981), the court considered the limitations on a debtor-in-possession under § 1107(a) and a trustee under § 1108:[7]

> Section 1107(a) … confers the powers of a trustee on the debtor in possession 'subject to … such limitations or conditions as the court prescribes.' Section 1107(a) thus permits judicial oversight where the debtor in possession acts as trustee. This permission does not appear in Section 1108. Such particularized draftsmanship suggests a desire to monitor debtors in possession but to allow fuller rein for trustees in the management of the estate.[8]

*See also*, *In re Lyon & Reboli, Inc.*, 24 B.R. 152, 154-55 (Bankr. E.D.N.Y. 1982) (same); *In re Gaslight Club, Inc.*, 782 F.2d at 770 (citing the limitation in § 1107(a) and holding "[t]he case law demonstrates that the court has considerable authority to interfere with the management of a

---

[7] While the UST references § 1106, § 1108 authorizes a trustee to operate the debtor's business.

[8] *In re Curlew* further holds: "Sections 1108 and 1107(a) bifurcate treatment of trustees and debtors in possession, remaining silent concerning judicial authority over the former, but allowing supervision over the latter. The implications are two-fold: reduced involvement by the court in the administration estates, and a distinction between judicial surveillance of trustees and debtors in possession. 14 B.R. at 511, n. 6 (citing 5 Collier on Bankruptcy para. 1108.03 – 1108-5 (15th ed. 1980)).

12

debtor corporation in order to protect the creditors' interests."). In other words, § 1107(a) (upon which the UST relies) specifically provides that limitations can be placed on the functions of a debtor-in-possession in order to protect the interests of creditors.[9]

34.     Moreover, this Court has approved the appointment of independent third party restructuring officers to assume some, but not all, of the duties otherwise prescribed to a debtor-in-possession. For example, in *In re Chemtura*, 2009 Bankr. LEXIS 5760, *46 (Bankr. S.D.N.Y. 2009), the court-appointed CRO expressly did not supplant management and did not manage the company day to day. Rather, the CRO's role was limited to overseeing financial issues related to moving the bankruptcy forward, such as identifying ways to cut costs, interfacing with creditors and key constituents and assisting with bankruptcy filings. *Id*. Similarly, in *Stillwater*, the CRO was appointed to oversee the debtor and recovery of allegedly diverted assets, but the debtor-in-possession retained, among other things, the duty to prepare and file monthly operating reports and the plan.

35.     Further, in *In re Lyon*, the court considered whether it could appropriately review the salary structure of the debtors-in-possession, clearly a function otherwise left to the debtor-in-possession. 24 B.R. at 154. The court determined that under Bankruptcy Code §§ 1107(a) and 105, the court could make a determination as to the propriety of the salaries of insiders where there is the potential for abuse and "it must remain free to protect the rights of interested parties where exigent circumstances are present." *Id*. at 154-55.

---

[9] The cases relied on by the UST are entirely inapposite. Both *In re Roxwell Performance Drilling, LLC,* 2013 WL 6799118, *4 (Bankr. N.D. Tex. Dec. 20, 2013) and *Matter of Plantation Inn Partners,* 142 B.R. 561 (Bankr. S.D. Ga 1992) involve state court receiverships and potential conflicts with the Bankruptcy Code if such receivers retained their powers and did not turnover estate property under section 543. Critically, neither case considers section 1107(a) and the Court's ability to limit certain powers of the debtor-in-possession.

13

36.    Accordingly, contrary to the UST's false "all or nothing" proposition, § 1107(a)

clearly provides that the Court can remedy potential abuse by limiting a debtor-in-possession's

power without the need to appoint a Chapter 11 trustee.  Here, removing the Debtor's current

management's power to oversee the sale process of its only asset will prevent the Debtor,

through its controlling principal, Kwok, from derailing or otherwise impeding the sale, and will

result in the best recovery for creditors – *as approved by every major creditor in this case*

*through the Settlement Agreement.*

### (2)    The UST Asserts the False Premise that Only the Debtor or a Chapter 11 Trustee Can Manage the Sale Process

37.    The UST further argues: "[t]he Bankruptcy Code, however, gives PAX only two

alternatives: Either allow the debtor to manage the case – including the sale process – as a

debtor-in-possession or proceed with the Conversion/Chapter 11 Trustee Motion."  Mot. at 14-

15.  But, as noted above, this Court and others throughout the country have specifically rejected

such a false alternative – routinely appointing an independent third party restructuring officer,

*and not a Chapter 11 trustee*, to assume certain powers and obligations of a debtor-in-

possession.  *See*, *e.g.*, *K.G. IM, 1031 Tax Group, Blue Stone,* and *Stillwater*, *supra*.[10]

38.    In addition, the UST cites *In re Aldephia,* 336 B.R. 610, 664 (Bankr. S.D.N.Y.

2006), as support for its argument that the court's only authority to supplant the debtor-in-

possession is the authority to appoint a trustee.  Mot. at 13.  However, this argument is

---

[10]  *See also, In re Nine West Holdings, Inc.,* Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. July 2, 2018); *In re Fairway Group Holdings Corp.*, Case No. 16-11241(MEW) (Bankr. S.D.N.Y. June 3, 2016); *In re Swift Energy,* Case No. 15-12670 (MFW) (Bankr. D. Del. Feb. 1, 2016); *In re Aereo, Inc.*, Case No. 14-13200 (SHL) (Bankr. S.D.N.Y. Dec. 24, 2014); *In re School Specialty, Inc.*, Case No. 13-10125 (KJC) (Bankr. D. Del. Feb. 25, 2013); *In re Blockbuster Inc.,* Case No. 10-14997(BRL) (Bankr. S.D.N.Y. Oct. 27, 2010); *In re Lehman Bros. Holdings, Inc.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Dec. 17, 2008); *In re PRC, LLC*, Case No. 08-10238 (MG) (Bankr. S.D.N.Y. Feb. 27, 2008); *In re Bally Total Fitness of Greater N.Y., Inc.*, Case No. 07-12395 (BRL) (Bankr. S.D.N.Y. Aug 21, 2007); *In re Dana Corp.*, Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006).

14

inconsistent with the weight of the case law, *see supra*, and *Adelphia* was expressly rejected in

*K.G. IM*:[11]

> At issue in the *Adelphia* decision was an attempt by a Noteholders
> Committee to seek recusal by the debtors' directors and to foist an
> 'alternative fiduciary' on the debtors in lieu of a chapter 11 trustee.
> That is not the case here, however, where the Court has neither
> been asked to remove the Debtors' management nor appoint an
> independent fiduciary.  Rather, BSP and the Debtors have
> requested that the Court approve a consensual delegation of
> authority by the Debtors' former management to an independent
> CRO.

*In re K.G. I.M. LLC* 620 B.R. at 482.  **_The same is true here_**.  By the Settlement Agreement, the

parties are not seeking to remove and unilaterally "foist" a fiduciary on the Debtor.  To the

contrary, under the Settlement Agreement, every major stakeholder in this Chapter 11 case

requests that the Court approve a consensual delegation of authority *by the Debtor* to an

independent third party officer.

39.    Further, the *K.G. IM* Court pointed to *In re Gaslight Club, Inc.*:

> In *Gaslight*, as here, the debtor's principal agreed with creditors to
> the appointment of a third party 'to exercise its debtor in
> possession powers.'  When the debtor's principal later changed
> course and sought to oust the third party, the court refused to
> appoint an alternative.  **_The initial designation of a responsible
> third party, with the consent of debtor and creditor, was
> permissible_**; it was the subsequent attempt at replacement that was
> not.

---

[11] As described above, this Court's decision in *In re K.G. I.M. LLC* is particularly instructive and analogous to the
case at hand where the debtors and their secured lender, BSP, settled BSP's motion to lift stay by entering into a
stipulation and order appointing a CRO.  *In re K.G. I.M. LLC*, 620 B.R. at 475-76.  In *K.G. IM*, the United States
Trustee objected to the stipulation and order appointing a CRO arguing that "the terms of the Stipulation and Order
and CRO Retention Application effectively permit the CRO to serve as a *de facto* chapter 11 trustee in violation of
the Bankruptcy Code."  *Id.* at 481-82.  The *K.G. I.M.* Court overruled the objection finding that the appointment of
a CRO, not a trustee, was the appropriate remedy therein.

4814-9487-2549

*Id*. at 483 (emphasis added) (citations omitted).[12]  Accordingly, this Court in *K.G. IM* affirmed

its approval of the stipulation and order appointing a CRO, holding such appointment appropriate

and *not* prohibited by the Bankruptcy Code.  *Id*.

40.     Similarly, in *K.G. IM*, this Court also rejected the argument (raised here by the

UST) that the proposed CRO could not be retained because it was "accountable to no one."  *Id*.

at 482; Mot. at 14.  Specifically, in *K.G. IM*, the United States Trustee took the position that "the

Court lacks the power to appoint a 'responsible person.'"  *In re K.G. I.M. LLC*, 620 B.R. at 482.

The Court determined that the United States Trustee misread the authority on which it relied and

found that it had the power to approve appointment of a restructuring officer over the objection

of the United States Trustee.  *Id*. at 483.

41.     Accordingly, it is clear that the appointment of an independent third party officer,

in this case the Sales Officer, in lieu of a Chapter 11 trustee, is authorized under the Bankruptcy

Code as confirmed by numerous decisions in and outside of this District.  The UST's argument

that the choice is binary – limited to either a debtor-in-possession or Chapter 11 trustee – is

without merit and should be rejected.

**C.     The Creditors In this Case Have Already Determined that Appointment of a
Trustee *Is Not* In Their Best Interests**

42.     Lastly, by its Motion, the UST attempts to unilaterally decide what is in the best

interests of the creditors in this Chapter 11 case.  Specifically, the UST argues that "a Chapter 11

trustee would be in the best interests of creditors" separately warranting appointment of a

Chapter 11 trustee under § 1104(a)(2).  Mot. at 16.  However, every significant creditor in this

---

[12]  In *In re Gaslight*, the 7th Circuit relied on another decision, *In re FSC Corp.*, 38 Bankr. 346, 350 (Bankr. W.D. Penn. 1983), which confirmed the appointment of a "Responsible Officer" to perform the duties of the debtor-in-possession and held, among other things, "the court is satisfied that the grant of authority to the Responsible Officer was contemplated by sections 1107(a) and 105 of the Bankruptcy Code."  *Id*. at 771-72.

16

Chapter 11 case has determined that the Settlement Agreement and appointment of the Sales

Officer, *not a Chapter 11 trustee*, are in their best interests, in order to ensure that there will be a

transparent sale process that will achieve the collective goal of maximizing value for the estate

and all creditors, while avoiding costly and protracted litigation.

43.    Indeed, the Conversion Motion previously filed by PAX requested conversion or

alternatively, the appointment of a trustee.  As noted above, PAX, with the agreement of every

other significant creditor is this Chapter 11 case, has now resolved that motion by entering the

Settlement Agreement and seeking appointment of the Sales Officer.  Accordingly, when the

UST states that "a chapter 11 trustee would reassure creditors and other parties-in-interest that

the estate's fiduciary is looking out for them" (Mot. at 15-16), it speaks only for itself, and

directly contradicts the *actual* wishes of the creditors and parties in interest in this case.

44.    Importantly, by the UST's own admission, the goals in appointing a trustee under

§ 1104(a)(2) should be the protection of the interests of creditors and the facilitation of a

reorganization that will benefit both the creditors and the debtors.  Mot. at 17.  Here, the

appointment of a Chapter 11 trustee *will do neither*, where both the Debtor and creditors have

already determined, *and agreed*, that their interests are best served through the Settlement

Agreement and appointment of the Sales Officer who will independently and efficiently sell the

Residence for their benefit through an agreed upon process.  Moreover, where the Debtor and

creditors have so agreed and settled, it is entirely unclear on whose behalf the UST (a non-

stakeholder) is advocating.

45.    Indeed, as the UST himself states "[u]nder Section 1104(a)(2), courts 'eschew

rigid absolutes and look to the practical realities and necessities.'"  *Id*. at 16 (quoting *In re Taub*,

427 B.R. 208, 227 (Bankr. E.D.N.Y. 2010) (further citations omitted)).  Yet, the purpose of

17

appointing a Chapter 11 trustee in this case would be to adhere to the rigid absolute urged by the

UST (and counter to the well-established authority described above) that only a Chapter 11

trustee can manage the estate, without looking to the practical reality that the creditors and the

Debtor have reached an agreement, which will address the valid concerns of both the UST and

PAX about the Debtor's conduct and willingness to enter into a good-faith sale process.

46.     Not surprisingly, this rigid (and improper) application of the law advocated by the

UST, *which goes directly against the will of all of the stakeholders in this Chapter 11 case,* is not

countenanced by courts in this District.  *See, e.g., In re Bayou Group, LLC*, 564 F.3d 541, 547

(2d Cir. 2009) (the Second Circuit affirmed a bankruptcy court order denying appointment of a

Chapter 11 trustee where, among other things, the appointment was not in the best interests of

the creditors because it was opposed by all of the creditor constituencies in the matter.).  Rather,

creditor consent (or lack thereof) is an important consideration when determining whether the

Court should appoint a Chapter 11 trustee.  *See, e.g., In re The 1031 Tax Grp., LLC*, 374 B.R. at

82, 93 (denying motion to appoint trustee where creditors opposed motion and the debtors and

creditors had been working together to close the case); *In re Stein and Day, Inc.*, 87 B.R. 290,

295 (Bankr. S.D.N.Y. 1988) (denying motion to appoint trustee where creditors "vigorously

oppose[d] the appointment of a trustee"); *In Re North Star Contracting Corp.*, 128 B.R. 66, 67,

70 (Bankr. S.D.N.Y. 1991) (denying motion to appoint trustee where all but one member of the

creditors' committee opposed appointment).

47.     Here, where all of the creditor constituencies and the Debtor agreed to the

Settlement Agreement, that determination and consensus similarly should not be ignored and

replaced with the unilateral will of the UST.

18

48.     The cases cited by the UST do not hold differently and are all factually

distinguishable.  First, none of them involve a situation where all of the parties in interest are

opposed to the appointment, and have signed on to a separate settlement agreement.  In addition,

most of them involve the appointment of a trustee over an operating businesses.  By contrast, this

is a single asset case, and there are no business operations to be managed.  The appointment of

the Sales Officer will manage the disposition of the only asset in the estate, subject to Court

oversight, and the right of PAX and other creditors to object, which will protect the interests of

these parties without imposing unnecessary costs on the estate.

49.     In sum, for the reasons provided above, the UST's Motion should be denied.

Long established precedent provides for appointment of a restructuring officer in lieu of a trustee

where, as here, the major constituencies approve of that approach.  Moreover, despite the UST's

contention, it is also well settled that the Court has the authority to limit the duties of a debtor-in-

possession to prevent potential abuse.  Finally, appointment of a Chapter 11 trustee is not in the

best interest of creditors where by entering into the Settlement Agreement, they have expressly

indicated the exact opposite.

## **CONCLUSION**

For all of the reasons stated above, and while reserving all other rights and remedies,

PAX respectfully requests that this Court: (i) deny the UST's Motion, and (ii) grant such other

and further relief as the Court may deem just and proper.

4814-9487-2549

Dated:  May 4, 2021                              Respectfully submitted,
        New York, New York

**O'MELVENY & MYERS LLP**

        */s/ Edward Moss*
By: Edward Moss
     Stuart Sarnoff
     7 Times Square
     New York, NY 10036
     Telephone: (212) 326-2000
     Email: emoss@omm.com
            ssarnoff@omm.com

     -and-

**FOLEY & LARDNER LLP**

        */s/ Douglas Spelfogel*
By: Douglas E. Spelfogel
     Alissa Nann
     90 Park Avenue
     New York, NY 10016
     Telephone: (212) 338-3566
     Email:  dspelfogel@foley.com
            anann@foley.com

*Attorneys for Pacific Alliance Asia
Opportunity Fund L.P.*

4814-9487-2549