| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>---------------------------------------------------------------x<br>In re:<br><br>Genever Holdings LLC,<br><br>                         Debtor.<br>---------------------------------------------------------------x | Hearing Date and Time:<br>May 11, 2021 at 11:00 a.m.<br><br>Chapter 11<br><br>Case No. 20-12411 (JLG) |

### DEBTOR'S OPPOSITION TO THE MOTION OF THE U.S. TRUSTEE SEEKING THE APPOINTMENT OF AN OPERATING TRUSTEE UNDER 11 U.S.C. §1104

**TO:  THE HONORABLE JAMES L. GARRITY JR.
      UNITED STATES BANKRUPTCY JUDGE**

Genever Holdings LLC (the "Debtor"), as and for its Opposition to the motion of the United States Trustee ("UST") seeking the appointment of an Operating Trustee pursuant to 11 U.S.C. §1104(a), respectfully states and alleges as follows:

**Preliminary Statement**

1.  Notwithstanding that the major stakeholders and creditors have reached a unified and comprehensive settlement (subject to Bankruptcy Court approval) which moves the Chapter 11 case forward without rancor, and avoids potentially protracted, expensive and uncertain litigation, the UST is seeking to override the will of the settling parties through the appointment of an Operating Trustee. Respectfully, this is not the province of the UST and the motion should be denied in favor of approving the proposed settlement and appointment of Former Judge Cyganowski as the Sales Officer, consistent with the terms of the Settlement Agreement.

2.  One would think that the UST would have welcomed a comprehensive global settlement that enables the Debtor the opportunity to maximize its assets under a stable and well-structured process. For this reason, it is disappointing that the UST seeks to isolate one aspect of

1

the settlement (relating to the appointment of the Sales Officer) to undermine the entire process. Nevertheless, policy concerns do not excuse the UST from the burden of actually establishing cause for the appointment of an Operating Trustee as required under 11 U.S.C. §1104, which is also lacking here.

**Genesis of the Settlement**

3. In invoking Chapter 11, the Debtor had the stated goal of seeking to sell the cooperative apartments at the Sherry Netherland (the "Units") notwithstanding ongoing litigation between Pacific Alliance Asia Opportunity Fund ("PAX") Bravo Luck Limited ("Bravo Luck") and Miles Kwok, the principal of the Debtor, as to the beneficial ownership. As truly unique assets, the Units cannot be properly marketed if there is doubt or uncertainty regarding the ability to close due to pending litigation. It is virtually axiomatic that would-be buyers (which are very limited even on a world-wide basis) will not likely entertain paying tens of millions of dollars only to be caught up in the spectre of ongoing litigation. The bankruptcy addresses this very practical and fundamental issue head on, while the settlement provides necessary structure and framework for a sale process to unfold.

4. As a fiduciary, the Debtor saw the benefit of gaining agreement among Bravo Luck, PAX and the Sherry Netherland so that the marketplace would have absolute confidence in the Debtor's ability to proceed. Also, as a fiduciary, the Debtor negotiated with each of the major creditors and stakeholders, to wit, PAX, Bravo Luck and the Sherry Netherland, to develop a consensual framework for a sale. A fiduciary many times occupies the role of a consensus builder, and the fact that the Debtor (and the other creditors and stakeholders for that matter) saw the benefit of engaging an independent sales officer is not an abdication of authority, but a recognition of the demands of this Chapter 11 case.

2

5.  Given the contentiousness of the litigation in other forums, it should come as no surprise that a key component of the sale process is the involvement of an independent third party neutral. In reaching a settlement, the parties rejected the need for an Operating Trustee or Examiner, and developed the concept of a Sales Officer as a proper alternative. Thereafter, the Debtor, Bravo Luck and PAX agreed on the nomination of Former Judge Cyganowski to serve in this capacity, adding even greater credibility to the sale process.

6.  In the Debtor's view, the appointment of a Sales Officer is consistent with the Jay Alix Protocol, which allows the Debtor to retain third party "restructuring-type officers" pursuant to Section 363 of the Bankruptcy Code, while providing relevant disclosures for purposes of Section 327. Although Former Judge Cyganowski is not being requested to serve as a Corporate Restructuring Officer *per se*, her function under the proposed settlement is certainly analogous. Thus, the authority that supports retention of a restructuring professionals in bankruptcy should also apply to support the retention of Former Judge Cyganowski as the parties' designated Sales Officer.

**No Evidentiary Basis has been Established for the Appointment of an Operating Trustee**

7.  The UST's Motion is based entirely on PAX's highly contested allegations involving Bravo Luck and Miles Kwok (ECF #12-14 and 35-37). But these allegations are just that – allegations – and do not constitute proven fact to warrant an Operating Trustee. PAX's prior allegations were rebutted in detail by Bravo Luck in its submissions in reply (ECF #21 and 44).

8.  There is no finding in any court that the Debtor is or was guilty of fraud, mismanagement or waste in the ownership or disposition of the Units. The UST has presented no actual evidence of any misconduct in support of the Motion as required under Section

3

1104(a)(1).  Moreover, the impact of PAX's disputed allegations have been diminished (if not effectively rendered moot) by PAX's subsequent agreement to the proposed settlement.  In fact, the Debtor expects that PAX will likewise oppose the appointment of an Operating Trustee.

9. The appointment of an Operating Trustee is not a magic elixir, and brings a whole host of added and unnecessary costs and expenses.  Thus, the UST's view that there is no place under the Bankruptcy Code for a Sales Officer should not be lightly adopted, and runs counter to dozens of Chapter 11 cases successfully utilizing the services of third party restructuring-type officers, including Judge Chapman's opinion in *Nine West Holdings, Inc*, 588 B.R. 678, 690 (Bankr. S.D.N.Y. 2018), in which the Court overruled the notion that "… it is only permissible for the Court to approve a section 363 retention if the U.S. Trustee approves."

## Background

10. The Debtor's primary assets consist of its ownership interest in the entire 18th Floor Apartment and auxiliary units in the Sherry Netherland Hotel located at 781 Fifth Avenue, New York, NY 10022 (previously defined as the "Units"), as memorialized by approximately 3,000 shares of Sherry Netherland cooperative stock and corresponding proprietary leases.

11. PAX and Mr. Kwok have been engaged in litigation pending in the Supreme Court, New York County (Index No. 652077/2017) (previously defined as the "New York Action") in connection with Mr. Kwok's guaranty of a debt owed to PAX unrelated to the Debtor or the acquisition of the Units.  PAX was previously granted summary judgment against Mr. Kwok on the guaranty.  A trial on the remaining cause of action on veil piercing theories will likely be held later this year, subject to scheduling and the Covid-19 pandemic.

12. Besides the New York Action, PAX commenced a separate litigation in the British Virgin Islands concerning the beneficial ownership of the Units, which is also being

actively defended by Bravo Luck. The proposed settlement contemplates that the automatic stay will be vacated to permit the continuation of both of these litigations while the sale process unfolds.

13. Early on, PAX filed a motion to modify the automatic stay to proceed with a state court action and related relief relating to veil-piercing claims against the Debtor (ECF No. 12-14) (the "Lift Stay Motion"). Bravo Luck (ECF No. 21) and the Debtor (ECF No. 22) each filed opposition to the Lift Stay Motion on January 5, 2021.

14. On January 12, 2021, PAX filed a motion for the conversion of the case to Chapter 7, or, alternatively, for the appointment of a Chapter 11 trustee (ECF No. 35-37) (the "Conversion Motion"). Bravo Luck filed its opposition to the Conversion Motion (ECF No. 44) on January 27, 2021. The Debtor was intending to oppose the Conversion Motion, but did not formally file a response because the hearing was adjourned prior to the deadline for reply. Thereafter, the parties made substantial progress toward a settlement, obviating the need for the filing of opposition. At any rate, the Debtor intends to file a statement on the docket so the pursuit of a settlement should not be viewed as acquiescence.

15. At this point, the Debtor has moved for approval of the Settlement Agreement pursuant to Bankruptcy Rule 9019(a) (ECF #62), and to approve the retention of Former Judge Melanie L. Cyganowski to act as the Sales Officer (ECF #72). In response, and as the sole objector, the UST filed the instant Motion for the appointment of an Operating Trustee.

**The UST Motion for the Appointment of an Operating Trustee Should be Denied**

**A.    There is No Actual Showing of Misconduct Warranting an Operating Trustee**

16. In reviewing a motion for the appointment of any Operating Trustee, the Court should be guided by the extraordinary nature of the remedy:

5

> The appointment of a chapter 11 trustee is an extraordinary remedy. There is a strong presumption that a debtor should remain in possession absent a showing of need for the appointment of a trustee.

*In re The 1031 Tax Grp., LLC*, 374 B.R. 78, 85 (Bankr. S.D.N.Y. 2007) (internal citations omitted).

17.  The UST has a significant burden of proof on this Motion, which is amplified by the fact that the other parties oppose the appointment. Simply put, on this record, the UST has not established any, let alone clear and convincing proof for the appointment of an Operating Trustee. *See, In re Marvel Ent. Grp., Inc.*, 140 F.3d 463, 471 (3d Cir. 1998) ("The party moving for appointment of a trustee . . . must prove the need for a trustee under either subsection by clear and convincing evidence."). *Marvel* has been cited favorably by several Judges in this Court. *See, In re Ashley River Consulting, LLC*, No. 14-13406 (MG), 2015 WL 1540941, at *9 (Bankr. S.D.N.Y. Mar. 31, 2015); *In re The 1031 Tax Grp., LLC*, *supra*, 374 B.R. at 85; *In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 656 (Bankr. S.D.N.Y.), *aff'd,* 342 B.R. 122 (S.D.N.Y. 2006). Indeed, other than parroting certain disputed submissions made by PAX, the UST offers no independent proof of misconduct that would warrant the appointment of an Operating Trustee under Section 1104. Moreover, PAX's execution of the proposed settlement is a clear indication that PAX is no longer pressing for conversion or the appointment of an Operating Trustee.

18.  The UST wrongly argues that the mere fact that the parties seek appointment of a Sales Officer is sufficient "cause" for the appointment of an Operating Trustee. In this regard, the UST misconstrues the function of the Sale Officer, and misapplies the case law under Section 1104.

19.  First, the UST contends that there is no statutory basis for the appointment of the Sales Officer to act on behalf of the Debtor:

> The only express authorization in the Bankruptcy Code for the Court to direct the appointment of a fiduciary who supplants a debtor-in-possession is the Court's authority to direct the appointment of a chapter 11 trustee under section 1104.4 See 11 U.S.C. § 1104. *See also In re Adelphia Comm. Corp.*, 336 B.R. 610, 664 (Bankr. S.D.N.Y. 2006) (court could not appoint independent fiduciary because no Bankruptcy Code provision authorized such appointment).

UST Motion for Appointment of Trustee, ECF #64, p. 13. However, the Court in *Adelphia* did not foreclose the possibility of the retention of a Sales Officer, as the UST suggests. In *Adelphia*, the Court first found that there were insufficient grounds for the appointment of an Operating Trustee under Section 1104, and then further denied the creditor's alternative relief of appointing an operating under Section 105. In holding that Section 105 could not be used to obtain the appointment of an Operating Trustee in the face of the specific statutory provisions relating to Operating Trustees under Section 1104, the Court did not rule on whether lesser types of fiduciaries, such as a sales officer, restructuring officer or similar third party could act on behalf of a Chapter 11 debtor with respect to discrete, carefully defined matters.

20. Second, the UST contends that by bringing in a third party to oversee the sale of the Debtor's primary asset, the parties are attempting to bypass Section 1104 by establishing an impermissible hybrid system, citing to *In re Roxwell Performance Drilling, LLC*, No. 13-50301-RLJ-11, 2013 WL 6799118, at *1 (Bankr. N.D. Tex. Dec. 20, 2013) and *Matter of Plantation Inn Partners*, 142 B.R. 561 (Bankr. S.D. Ga. 1992). However, both of these cases involved pre-petition receivers whose post-petition continuation was opposed on the ground that the limited grant of authority to a state court receiver is inconsistent with the ability to meet with fiduciary duties of a debtor-in-possession.

21. Here, on the other hand, the parties are not seeking to cede authority and decision making to a third party, such as receiver, for the entire Chapter 11 case, but to retain the Sales Officer for a carefully defined role. Thus, neither *Roxwell* nor *Plantation* addresses the issue

7

presented in this case, particularly since the Debtor has retained all of its other functions and duties, including negotiating and filing a plan of reorganization, and objecting to claims.

22. The UST cites to the employment of personnel and filing of reports as fiduciary duties which cannot be delegated to the Sales Officer. Again, the UST misconstrues the Debtor's continuing functions under the settlement. While the Sales Officer will select a broker to market the Units, the Settlement Agreement specifically provides for the retention of the broker by the Debtor. Moreover, all required monthly financial reporting will continue to be made by the Debtor, which shall be the seller under any contract of sale and responsible to obtain Bankruptcy Court approval and effectuate a closing.

23. Thus, unlike the other cases cited by the UST, the Sales Officer's role here has been specifically tailored solely to facilitate a smooth sale process. Most importantly, the Debtor was an active participant in the negotiating process, and made substantial contributions regarding the sale of the Units, including (i) the decision to conduct a Section 363 sale; (ii) the appointment of the Sales Officer; (iii) the establishment of the outline for sale procedures; (iv) the scope of the Sales Officer's duties; and (v) the selection of Former Judge Cyganowski to act as Sales Officer. Counsel for the Debtor took a key role in negotiating and drafting the settlement documents as well as the motion to approve the Settlement Agreement, and the retention of Former Judge Cyganowski. Additional, Debtor's counsel primary negotiated the terms of her engagement letter. In short, the Debtor was and will remain an active participant in its Chapter 11 case.

24. Finally, in the alternate, the UST also wrongly contends that the appointment of an Operating Trustee is warranted under Section 1104(a)(2) as being in the best interest of creditors. Here, of course, the creditors have already spoken in a clear and unified voice against

the appointment of an Operating Trustee. Indeed, it is difficult to comprehend how the appointment of an Operating Trustee can be said to be in the best interests of creditors when the creditors themselves have clearly stated the contrary, and will oppose the Motion.

WHEREFORE, the Debtor for all of the reasons cited above, the Motion of the UST should be denied.

Dated:    New York, New York
          May 4, 2021

                                        Goldberg Weprin Finkel Goldstein LLP
                                        *Attorneys for the Debtor*
                                        1501 Broadway, 22nd Floor
                                        New York, NY 10036
                                        (212) 221-5700

                                        By:   /s/Kevin J. Nash