## AMENDED AND RESTATED SETTLEMENT AGREEMENT

This Amended and Restated Settlement Agreement (the "**Settlement Agreement**") is entered into as of ~~February 26,~~ May ___, 2021, by and among Genever Holdings, LLC, ("**Debtor**"), Pacific Alliance Asia Opportunity Fund L.P. ("**PAX**") and Bravo Luck Limited ("**Bravo Luck**") (each a "**Party**" and collectively, the "**Parties**").[1]

### W I T N E S E T H:

WHEREAS, on October 12, 2020, Debtor filed its Chapter 11 Case.

WHEREAS, on December 16, 2020, PAX filed its motion to *Modify the Automatic Stay to Proceed with State Court Action and Related Relief* (the "**Lift Stay Motion**") [Dkts 12-14], which included, *inter alia*, a request to try PAX's veil piercing claims against the Debtor in the State Court Action.

WHEREAS, on January 5, 2021, the Debtor filed a response to the Lift Stay Motion and Bravo Luck also filed its objection thereto [Dkts 21 and 22].

WHEREAS, on January 12, 2021, PAX filed its motion for an *Order Under 11 U.S.C. 1112(b) Converting the Debtor's Case to a Case Under Chapter 7 or, in the Alternative, for an Order Under 11 U.S.C. 1104(a) Appointing a Trustee to Administer the Debtor's Estate* ("**Conversion Motion**") [Dkts 35-37].

~~WHEREAS,~~ WHEREAS, on May 10, 2021, the Debtor filed its opposition to the Conversion Motion [Dkt 84] and on January 27, 2021, Bravo Luck filed its opposition to the Conversion Motion [Dkt 44].

WHEREAS, the Debtor, PAX and Bravo Luck entered in a settlement agreement on February 26, 2021 (the "**Initial Agreement**") to resolve the Lift Stay and Conversion Motion.

WHEREAS, the Debtor moved (the "**Motion**") for approval of the Initial Agreement entered into on February 26, 2021 pursuant to Bankruptcy Rule 9019(a) [Dkt 62].

WHEREAS, with approval from PAX and Bravo Luck, the Debtor also moved to retain Hon. Melanie L. Cyganowski (Ret.) (hereinafter, "**Judge Cyganowski**") as the Sales Officer for purposes of settlement pursuant to 11 U.S.C. §§105 and 363(b) [Dkt 72] (the "**Motion to Appoint Judge Cyganowski**").

WHEREAS, in support of the Motion to Appoint Judge Cyganowski, the Debtor filed the Declaration of Disinterestedness by Melanie L. Cyganowski [Dkt. 73] (the "**Cyganowski Declaration**").

---

[1] Capitalized terms shall have the meaning provided below, or if not otherwise defined, in the Motions.

WHEREAS, the Office of the U.S. Trustee ("UST") has objected to the Initial Agreement, and the Parties have agreed to amend and restate the Initial Agreement to address these concerns and objections.

WHEREAS, the Parties desire to resolve their differences as described herein without resorting to further litigation, and, as a result of negotiations among the Parties, the Parties have agreed to resolve the Lift Stay Motion and the Conversion Motion, as well as establish procedures for the sale of the Residence through the Chapter 11 Case while preserving the rights of all Parties, as set forth below.

NOW, THEREFORE, for the consideration of the promises and the mutual covenants contained herein, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby CONSENT, AGREE, and STIPULATE as follows:

1. *Definitions.* Capitalized terms used herein but not otherwise defined shall have the following meanings:

    a.    **"Approval Order"** shall mean the order entered by the Bankruptcy Court approving this Settlement Agreement.

    b.    **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the Southern District of New York.

    c.    **"BVI"** shall mean the British Virgin Islands.

    d.    **"BVI Litigation"** shall mean those certain actions filed by PAX in the BVI in 2020 under case No. BVIHCM 2020/0137 against: (i) Genever BVI, (ii) Bravo Luck, (iii) Kwok, and (iv) Guo, seeking, among other things, to enforce (a)the Judgment arising in the State Court Action; and (b) the Defense and Counterclaim filed on January, 14, 2021, by Bravo Luck and Guo against PAX.

    e.    **"Chapter 11 Case"** shall mean the underlying chapter 11 bankruptcy case captioned *GENEVER HOLDINGS LLC.*, filed by the Debtor in the Bankruptcy Court, case number 20-12411.

    f.    **"Effective Date"** shall mean the date on which the Approval Order has been entered by the Bankruptcy Court and is a final order.

    g.    **"Genever BVI"** shall mean Genever Holdings Corporation, a British Virgin Islands corporation and 100% owner of the Debtor.

    h.    **"Guo"** shall mean Qiang Guo.

    i.    **"Kwok"** shall mean Kwok Ho Wan aka Miles Kwok.

    j.    **"Residence"** shall mean the entire 18th floor apartment and auxiliary units in the Sherry Netherland Hotel located at 781 Fifth Avenue, New York, New York 10022.

k. **"Sale Motion"** shall mean a motion to be filed by the Debtor seeking approval by the Bankruptcy Court to sell the assets of the Debtor, including but not limited to, the Residence, and for approval of sale procedures in connection with same.

l. **"Sherry-Netherland Co-op Board"** shall mean the cooperative board of the Sherry-Netherland.

2. *Appointment of the Designated Sales Officer*. Debtor shall agreehereby exercises it business judgment to the appointment ofappoint Judge Cyganowski as an independent third partyexecutive employee to be designatedserve as the Debtor's Sales Officer (the "**SO**"), solely to control and oversee the sale of the Residence as provided hereunder, who shall havethe parties believe has the requisite expertise selling luxury residential Manhattan real estate and Co-ops, through a bankruptcy process, and who will oversee and interface with the retained real estate broker as provided below. The SO to beJudge Cyganowski, as selected hereunder, is reasonably acceptable to the Debtor, Bravo Luck and PAX, and shall have final authority as delegated hereunder, subject to Bankruptcy Court approval with right of objection by Bravo Luck and PAX and in consultation with the Debtor, over Debtor's decision making, the sale process and the selection of (i) Qualified Buyer (defined below) and Qualified Offer (defined below) and (ii) successful and backup offers for the sale of the Residence. In the exercise of such powers, the SO shall consult with the Debtor, Bravo Luck and PAX. The SO is not a chapter 11 trustee or examiner but shall have the same type of powers consistent with those of the debtor/utilized by a trustee in bankruptcy, limited strictly to the terms of appointment hereunder. and without displacing the Debtor from its role as a debtor in possession.

3. *Broker*. The SO shall select the real estate broker(s) (the "**Broker**") to be employed by the Debtor's estate in the SO's business judgment, as delegated herein in consultation with the Debtor, and subject to the right of Bravo Luck and PAX to object. Bravo Luck and PAX shall be allowed to propose/recommend parties to the SO for the role of Broker. Bravo Luck and PAX shall have the right to interview the prospective Brokers. Bravo Luck and PAX shall consult with the Broker and the SO for purposes of establishing the timing and realization of maximum value for the Residence. The Broker will be compensated consistent with market terms, subject to Bankruptcy Court approval with right of objection by Bravo Luck and PAX. The SO will consult Bravo Luck and PAX regarding Broker's compensation. Broker shall be disinterested and free of conflicts, as described below. A draft Broker Agreement and Affidavit of Disinterest shall be provided to Bravo Luck and PAX for review and comment prior to filing by the Debtor, which shall include disclosure of all past and present conflicts, connections, and financial relationships between the Broker, and its representatives, with Miles Kwok, members of Kwok's family and their respective counsel, associates, affiliates and interests, as well as any past connection with Bravo Luck and PAX as well as their respective counsel, associates, affiliates and interests. Broker shall have expertise selling luxury residential Manhattan real estate.

4. *Marketing Terms*. The Parties agree to the following terms for the marketing of the Residence: to be established by the SO in consultation with the Debtor:

a. Floor price to be set by the SO for minimum offers for any sale in consultation with Bravo Luck and PAX.

  b. The SO may consider imposing limitations on an insider offer or by PAX or an affiliate thereof, in consultation with Bravo Luck and PAX.

  c. The Broker shall fully disclose all fees, costs and any other direct or indirect compensation to be received by the Broker and its representatives.

  d. The SO shall coordinate with the Broker ~~on protocol~~in consultation with the Debtor, Bravo Luck and PAX on protocols for sale of the Residence, including staging, marketing strategy and process, identifying prospective buyers, international outreach, setting floor and target sale price, counteroffers, negotiated concessions, etc. and coordination with the Sherry-Netherland, as necessary.

  e. Other protocols and procedures for sale of the Residence shall be developed by the SO and the Broker in consultation with the Debtor, Bravo Luck and PAX, including duration, minimum sale price, target sale price, and time, place, and manner of any sale of the Residence. Notwithstanding anything contained herein to the contrary, the duration of the sale process shall be limited to 180 days from the retention of the Broker, subject to extension upon written agreement of the Debtor, Bravo Luck and PAX, or by further order of the Court for cause shown.

  f. Parties residing at the Residence shall make the Residence available for showing upon 24 hours advance notice.

5. *Sales Procedures.* The Parties agree to the following regarding the sale of the Residence:

  a. The sale shall be in cash payable at closing and shall be subject to higher and better offers. If more than one Qualified Offer is received, the SO, in consultation with the Debtor, Bravo Luck and PAX, shall schedule an auction at which all Qualified Buyers can participate.

  b. Selection of the winning Qualified Buyer shall be made by the SO in consultation with the Debtor, the Broker, ~~and~~ Bravo Luck and PAX.

  c. Sale shall be subject to Bankruptcy Court approval per sale motion to be prepared and filed by the Debtor; draft motion to be provided to Bravo Luck and PAX for review and approval prior to filing.

  d. Notwithstanding any other provision of this Settlement Agreement, and subject to applicable law, the sale of the Residence shall be subject to assignment of that certain Proprietary Lease by and between the Sherry-Netherland and the Debtor (the "Proprietary Lease"); all rights and obligations of the parties, whether under the Proprietary Lease or under applicable law, are expressly reserved.

  e. Bravo Luck and PAX shall have access to the SO and the Broker and shall be kept fully informed regarding the status of the sale process, all offers received, and all material issues relating to the negotiation and eventual sale of the Residence.

4

~~#113069674 v8~~

  f. The sale process shall include consultation rights for the Debtor, Bravo Luck and PAX, with the SO to have final authority in the event of any dispute.

  g. Gross proceeds of sale less customary closing costs and expenses (including reasonable fees and expenses of the SO and the Broker subject to approval by the Bankruptcy Court upon notice to all Parties), without other deduction, shall be placed in escrow as provided below, subject to release solely with Bankruptcy Court approval on prior notice, including prior notice to Bravo Luck and PAX.

  h. Gross proceeds of sale, as described above, shall be deposited in a nationally recognized collateralized bank reasonably acceptable to the Debtor, Bravo Luck and PAX and subject to Bankruptcy Court approval.

  i. Sherry-Netherland Co-op Board shall be consulted to confirm process and timing for Board approvals necessary to conduct and complete the sale of the Residence.

6. *Approval Powers.* The SO shall oversee the sale process, and the Residence shall be initially marketed through the Broker in a commercially reasonable manner consistent with the stature of the Residence in an effort to identity one or more acceptable competing offers (each, a "**Qualified Offer**") from one or more acceptable competing buyers ((each, a "**Qualified Buyer**"). An auction may be conducted if the SO determines it would result in a higher and better offer or upon further order of the Bankruptcy Court. The SO shall have the final approval power, after prior consultation with the Debtor, Bravo Luck and PAX, and subject to Bankruptcy Court approval with right to object by Bravo Luck and PAX, regarding the marketing and sale of the Residence, including the following:

  a. To decide sale process, whether through traditional means, private sale, auction, a combination thereof, or other process;

  b. To determine which potential buyers are Qualified Buyers;

  c. To determine which offers are Qualified Offers;

  d. To schedule an auction and determine the auction process, if necessary, including break-up fees, required overbids and other procedures;

  e. To determine which Qualified Offer is the highest and otherwise best offer and which is the next highest and otherwise best offer;

  f. To reject any offer that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Sales Procedures (as set forth in section 5 above) or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtor and its estate;

  g. To waive any term and condition set forth herein with respect to any potential buyer;

  h. To impose additional terms and conditions with respect to any potential buyer and the successful purchaser;

  i. To extend the deadlines set forth herein;

  j. To except, as set forth herein, adjourn or cancel any auction and/or sale hearing without further notice;

  k. To modify the Sales Procedures; and/or

  l. To withdraw the Sale Motion at any time with or without prejudice.

7. *Maintenance, Fees and Other Terms.*

  a. Stay relief is granted to allow PAX to prosecute, and the Debtor to defend, the state court action currently pending in the New York Supreme Court under Docket No. 652077/2017 (the "State Court Action"), with the stay to otherwise remain in place for all other purposes, including relating to enforcement or collection of any judgment entered against the Debtor in the State Court Action, pending further order of the Bankruptcy Court upon further notice to all Parties. Nothing herein shall be construed as an acknowledgment of the appropriate forum outside the bankruptcy court to address any such issues, with all Parties' rights expressly reserved.

  b. Nothing herein shall prejudice the rights of any party, including Bravo Luck and PAX to proceed with the BVI Litigation, provided that PAX, Bravo Luck, Kwok, Guo or any of his or its affiliates reserve the right to assert claims in the Bankruptcy Court relating to its status as a creditor of the Debtor, and PAX reserves all rights to oppose such claims on any grounds. In addition, notwithstanding anything contained herein to the contrary, nothing in this Agreement shall prejudice the rights of any Party, including Bravo Luck and PAX, from proceeding with any and all claims, if any, against anyone, including Bravo Luck, Kwok, Guo, or any of his or its affiliates, and PAX or any of its affiliates, in BVI, State Court, or otherwise, and Bravo Luck and PAX reserve all rights to oppose such claims in the applicable forum.

  c. PAX shall withdraw its Conversion Motion expressly as provided below. PAX will not support or encourage a motion for the appointment of a trustee or conversion by any other party herein. However, notwithstanding anything contained herein to the contrary, to the extent any substantive term of this Settlement Agreement is breached by the Debtor, Bravo Luck, Kwok, Guo, or any of their related entities, there shall be no limitation on PAX's right to renew or file its Conversion Motion, including appointment of a trustee, nor will there be any limitation upon the Debtor's or Bravo Luck's right to oppose such action on any ground, including inter alia, that such breach did not occur. To the extent PAX breaches any substantive term under this Agreement, then PAX shall have no further right to renew or file its Conversion Motion, including appointment of a trustee, provided however, that there shall be no limitations upon PAX's right to seek a Bankruptcy Court declaration that such breach did not occur. Other than as expressly provided for under this Agreement, all Parties' rights and remedies are expressly reserved.

6
#113069674-v8

      d.      Recommendation and Appointment of the SO: ~~Prior to~~In connection with execution of this Agreement, the Debtor, Bravo Luck and PAX have agreed upon Judge Cyganowski as the designed SO. In the event that paragraph 27(D)(f) is triggered, then Bravo Luck and PAX shall designate a total of four candidates for consideration as the designed SO, two by Bravo Luck and two by PAX (total of four by all Parties) (the "List"). The Parties shall confer to select an agreed SO from such List. If an agreement on selection of an SO cannot be reached by the Parties, then the Bankruptcy Court shall appoint the SO from such List, unless the Court finds an irreconcilable conflict to exist, after which the Office of the United States Trustee, after consultation with Bravo Luck and PAX, may submit recommendations to the Court for other independent and disinterested persons to serve as SO.

      e.      Stay relief is granted to allow the Sherry-Netherland to apply all accrued and owing post-petition maintenance fees and assessments as of the date hereof, and thereafter on a monthly basis, from the current security deposit, with the stay to otherwise remain in place for all other purposes

    8.    *Bankruptcy Court Approval.* This Settlement Agreement is subject to approval by the Bankruptcy Court and shall only be effective and binding on and from the Effective Date. ~~Within two (2) Business Days of execution of this Settlement Agreement by the Parties, Debtor shall file a motion with the Bankruptcy Court seeking approval of the Settlement Agreement and entry of the Approval Order.~~ The Parties hereby agree to waive the 14-day appeal period with respect to the effect of the Approval Order. In its motion to approve the Settlement Agreement, Debtor shall request that the Bankruptcy Court make the Approval Order a final, non-appealable order immediately upon entry. Bravo Luck and PAX have and shall continue to take all reasonable steps to seek approval of the Settlement Agreement and entry of the Approval Order and defend against any objections to the Settlement Agreement or appeals from the Approval Order.

    9.    *Conditions Precedent.* The obligations of the Parties set forth in this Settlement Agreement are subject to the occurrence of the Effective Date. If the Bankruptcy Court declines to enter the Approval Order, or if the Approval Order is vacated or reversed on appeal, this Settlement Agreement shall be of no further force or effect, and each of the Parties' respective interests, rights, remedies and defenses shall be restored without prejudice as if this Settlement Agreement had never been formed and concluded/entered.

    10.    *Representations and Warranties.* Each Party represents and warrants to the other Parties that: (a) it is authorized to execute and deliver this Settlement Agreement and perform its obligations hereunder; (b) each believes its own best interests are served by settling the matters encompassed by this Settlement Agreement, as provided in this Settlement Agreement; (c) no promise, agreement, inducement, representation, or warranty has been offered to any Party except as expressly provided in this Settlement Agreement; (d) this Settlement Agreement is not in violation of or in conflict with any other agreement of any Party; (e) this Settlement Agreement is executed voluntarily with full knowledge of the consequences and implications of the terms and obligations contained herein; (f) each Party has been represented by counsel of that Party's choice throughout the negotiations that preceded the execution of this Settlement Agreement, and in connection with the preparation and execution of this Settlement Agreement;

(g) each Party has carefully and thoroughly reviewed this Settlement Agreement in its entirety and has resolved all questions concerning the meaning, legal nature, and binding effect of this Settlement Agreement with counsel of each Party's choosing; and (h) this Settlement Agreement is contractual and not merely recital, and that each Party has read, understands, and fully agrees to the terms of this Settlement Agreement.

11.    *No Admission of Liability.*  Nothing in this Settlement Agreement shall be construed as an admission of liability or fault by any Party, and such liability and fault are expressly denied.

12.    *Further Assurances.*  Each Party shall execute and deliver any document or instrument reasonably requested by another Party after the date of this Settlement Agreement to effectuate the intent of this Settlement Agreement.

13.    *Assignment.*  No Party may assign any of its respective benefits, obligations or liabilities under or in respect of this Settlement Agreement without (a) the prior written consent of each other Party, which may be withheld in its absolute discretion, or (b) by order of the Bankruptcy Court.

14.    *Successors.*  This Agreement shall be binding upon and inure to the benefit of each Party and its respective successors, heirs, estates and personal representatives.

15.    *Amendments.*  This Agreement may be modified or amended only by a writing signed by a duly authorized representative of each Party hereto.

16.    *Integration.*  The provisions of this Settlement Agreement are integrated, essential and non-severable terms of this Settlement Agreement.

17.    *Counterparts; Facsimile Signatures.*  This Settlement Agreement may be executed in counterparts, each such counterpart will constitute an original document and such counterparts, taken together, will constitute one and the same document. Electronically transmitted or facsimile copies shall be deemed to be originals.

18.    *Headings.*  The headings of this Settlement Agreement are inserted solely as a matter of convenience and for reference and do not define, limit or describe the scope of this Settlement Agreement or the scope or content of any of its provisions.

19.    *Governing Law.*  This Settlement Agreement shall be governed by and construed in accordance with the Bankruptcy Code.

20.    *Continuing Jurisdiction.*  The Bankruptcy Court shall retain jurisdiction to resolve any dispute relating to the interpretation or enforcement of this Settlement Agreement.

21.    *Entire Agreement.*  This Settlement Agreement constitutes the entire agreement and understanding of the Parties regarding this Settlement Agreement and the subject matter thereof.

22. *Dual Construction.* If any provision of this Settlement Agreement may be construed in two or more ways, one of which would render the provision invalid or otherwise voidable or unenforceable and another of which would render the provision valid and enforceable, such provision shall have the meaning that renders it valid and enforceable.

23. *All Parties Drafted the Settlement Agreement.* The rule of construction that provides that ambiguities in a contract shall be construed against the drafter shall not apply to this Settlement Agreement because each Party drafted its terms, and all Parties waive applicability of such rule of construction in interpreting this Settlement Agreement.

24. *Conferring Benefits.* Nothing in this Settlement Agreement shall be construed to confer any benefit upon any person or entity, other than the Parties.

25. *Recitals.* The recitals are true and correct and are incorporated herein as if set forth at length.

26. *Time Is of the Essence.* Time is of the essence in relation to this Settlement Agreement.

[SIGNATURE PAGE FOLLOWS]

27.  *Additional Provisions to Address the Concerns of the UST.*

A.  The Debtor is hereby authorized to retain Judge Cyganowski as the designated Sales Officer and Senior Executive under its limited liability company operating agreement and bylaws to carry out such duties and obligations and exercise such rights all as specifically set forth in and limited by the Settlement Agreement.

B.  Judge Cyganowski will be paid on an hourly basis predicated on a current billing rate of $1,400 per hour. Although Judge Cyganowski's firm, Otterbourg P.C. ("**Otterbourg**"), is not being separately retained, Judge Cyganowski will be assisted by a junior lawyer and a paralegal and, from time to time if required, by one or more senior lawyers (collectively, the "**Assisting Personnel**") as needed and where appropriate in furtherance of her performance as the Sales Officer. The junior lawyer and paralegal will be compensated on an hourly basis predicated on a current billing rate of $450 per hour and $325 per hour, respectively, and the senior lawyers (if required) will be compensated on an hourly basis predicated on a current billing rate ranging from $450 per hour to $850 per hour. All compensation and reimbursement due to, and other rights of Judge Cyganowski and Assisting Personnel shall be treated and allowed as administrative expenses in accordance with Section 503 of the Bankruptcy Code.

C.  The rights, duties and obligations of the Sales Officer shall be carried out without the necessity for further approvals from the Debtor's member(s) and manager(s) (based upon the fact that such approvals have already been given); provided, that, (i) the Sales Officer shall report periodically to the Debtor's member(s) and manager(s); (ii) approval of the highest and best offer for the sale of the Residence shall be subject to further approval by the Debtor's member(s) and manager(s), further provided however that notwithstanding the foregoing, any such approval shall not be unreasonably withheld, and (iii) in all respects the approval or non-approval by the Debtor's member(s) and manager(s) shall be subject to review and final determination by the Bankruptcy Court upon notice.

D.  The Debtor's retention of Judge Cyganowski as the Sales Officer in accordance with this Settlement Agreement, as approved by the Bankruptcy Court, shall be subject to the following general limitations.

a.  Judge Cyganowski (and any agent and/or related entity) shall not act in any other capacity (for example, and without limitation, as a financial advisor, examiner, trustee or investor/acquirer) in connection with the above-captioned case;

b.  Solely upon written consent of the Debtor, Bravo Luck and PAX, the Debtor may seek to have Judge Cyganowski assume duties that are different than the functions envisioned in the Settlement Agreement, or to materially change the terms of the engagement; modifying the functions provided thereunder; adding new executive officers, or altering or expanding the scope of the engagement, which relief shall be sought by motion to modify the retention filed with the Court;

c.  No principal or employee associated with Judge Cyganowski shall serve as a director of the Debtor during the pendency of the above-captioned case;

d.      Judge Cyganowski shall file or cause to be filed with the Court and provide notice to parties having filed notices of appearance (the UST, Bravo Luck, and PAX) in this Chapter 11 case, reports of compensation earned and expenses incurred on a monthly basis;

e.      Judge Cyganowski, the Assisting Personnel and Otterbourg shall be entitled to advancement and indemnification by the Debtor's estate for all judgments, costs, and expenses, including reasonable legal fees (which shall be paid under the indemnity after court approval as they arise), arising from or related to any and all claims of whatsoever type brought against any of them in their capacity as Sales Officer or her agent, except for gross negligence, willful misconduct, fraud, or breach of fiduciary duty determined by a final order no longer subject to appeal. Nothing herein shall limit the immunity of Judge Cyganowski, the Assisting Personnel or Otterbourg allowed by law or deprive any of them of indemnity for any act or omission for which they have immunity; and

f.      In the event of death, incapacity, resignation, or removal, a replacement Sales Officer shall be selected through the same process as the initial selection of the Sales Officer in accordance with the Settlement Agreement and further order of the Court.

E.      Judge Cyganowski, in consultation with the Debtor, PAX and Bravo Luck, shall make decisions in accordance with the terms of the Settlement Agreement regarding the sale and marketing of the Residence, utilizing her business judgment after consultation with the Debtor and subject to Bankruptcy Court approval as applicable. In addition, the Debtor's operating documents shall be deemed modified to the extent necessary, solely to recognize and facilitate the within appointment of Judge Cyganowski as the SO. Notwithstanding the foregoing, nothing contained herein shall divest the Debtor from its duties as a debtor-in-possession.

F.      Notwithstanding anything to the contrary in the Debtor's Operating Agreement, Judge Cyganowski's authority hereunder may be revoked and/or she may be removed by the Debtor's member(s) provided, however, notwithstanding there shall be no such revocation and/or removal without review and approval by the Bankruptcy Court upon notice.

G.      To the extent there is inconsistency between the terms of the Settlement Agreement, the Motion, the Engagement Letter and the Order approving the Settlement Agreement, the terms of the Settlement Agreement shall govern to the extent they relate to any concerns or objections raised by the UST, it being acknowledged that the Settlement Agreement is being amended specifically to address these concerns and objections.

Dated:  ~~February 26,~~May __, 2021

| Genever Holdings LLC |
| --- |
| By: */s/Kevin J. Nash* |
| Kevin J. Nash |

11

#113069674-v8

| |
|---|
| Goldberg Weprin Finkel Goldstein LLP<br>1501 Broadway, 22nd Floor<br>New York, NY 10022-5520<br>212-301-6944<br>KNash@gwfglaw.com<br><br>Attorneys for Debtor, Genever Holdings, LLC |
| Pacific Alliance Asia Opportunity Fund L.P.<br><br>By: */s/ Douglas E. Spelfogel*<br>Douglas E. Spelfogel<br>Foley & Lardner LLP<br>90 Park Avenue<br>New York, NY 10016-1314<br>212-682-7474<br>dspelfogel@foley.com<br><br>Attorneys for Pacific Alliance Asia Opportunity Fund L.P. |
| Bravo Luck Limited<br><br>By: */s/ Fran J. Lawall*<br>Francis J. Lawall<br>Troutman Pepper Hamilton Sanders LLP<br>3000 Two Logan Square<br>Eighteenth and Arch Streets<br>Philadelphia, PA 19103-2799<br>215-981-4000<br>Francis.lawall@troutman.com<br><br>Attorneys for Bravo Luck Limited |

#113069674 v8