# GENEVER HOLDINGS CORPORATION

## GENEVER HOLDINGS LLC

- Designation of Authorized Person

The undersigned, being an Authorized Person of Genever Holdings Corporation, a British Virgin Islands limited company (the "Corporation"), hereby makes the following delegation of authority:

**THE AUTHORIZED PERSON** hereby designates each of Ira Gilbert, Esq. and Steven Simkin, Esq., acting alone or jointly, as an "Authorized Person" of Genever Holdings LLC ( "Genever New York"), a New York limited liability company of which the Corporation is the sole member,  and delegates authority to and directs each of them to enter into a purchase agreement with Sherry 1800s LLC, as seller, for the purchase of certificates of stock in The Sherry-Netherland, Inc., a cooperative apartment located at 781 Fifth Avenue, New York City, New York (the "Sherry-Netherland") with respect to UNITS 1801, 1804, 1807, 1809, 1811, and Servant's Room 1519) on terms and conditions as have been discussed among representatives of the Corporation and Genever New York and the director and sole shareholder of the Corporation. This authority is non-delegable by either of Messrs. Gilbert and Simkin.

   **Pursuant to this designation of authorized person,** Messrs. Gilbert and Simkin are each authorized to take such other actions and make such revisions to the purchase documents as such person deems advisable or necessary in order to carry out the actions authorized in this designation, the approval of such revised documents being evidence of such authorized person's determination.

Dated as of February 12, 2015

Michael F. O'Connor
Authorized Person

# New York LLC

## Evidence of Formation

SN 0195

```
DOSPITECS           CORPORATIONS PUBLIC INQUIRY SYSTEM           02/17/15
                        CURRENT STATUS INFORMATION
CURR NAME GENEVER HOLDINGS LLC


NAME ASSMD ********* TYPE 01DA A STATUS A
   EFFECTIVE DATE 02/17/2015       BIENNIAL RPT
ORIG NAME GENEVER HOLDINGS LLC


INC. DATE   COUNTY   DURATION    JURISDICTION      FOR. INC.   NFP TYPE
02/17/2015  NEWY                                    __/__/____
                                                  CORPID 4711112


Process Name CORPORATION SERVICE COMPANY_____
Address      80 STATE STREET_____
City,St,Zip  ALBANY_____ , NY_ 12207  - 2543

CEO Name     _____
Address      _____
City,St,Zip  _____ , ___   - ____
INF101 - PRESS APPROPRIATE FUNCTION KEY FOR DESIRED ACTION
===> _____
1=CERT SEAL 2=       3=PREVIOUS 4=LIST     5=HISTORY  6=STOCK
7=          8=       9=NAMES   10=CURR ADD 11=BIEN RPT 12=NAME ENTRY
```

| | | | | | |
|---|---|---|---|---|---|
| | Increase Font | Decrease Font | Disconnect | AT OFF | |

SN 0196

# New York LLC

# Operating Agreement

SN 0197

# LIABILITY COMPANY AGREEMENT

## OF

### · GENEVER HOLDINGS LLC

LIMITED LIABILITY COMPANY AGREEMENT made as of the 13th day of February, 2015 by and among (a) GENEVER HOLDINGS LLC (the "Company"), and (b) the persons identified on Schedule A as members of the Company (hereinafter referred to as the "Members" and each individually, a "Member").

The Members are entering into this Agreement in order to form the Company as a New York limited liability company by organizing the Company in accordance with the New York Limited Liability Company Law, as amended from time to time (the "Act").

The parties hereto desire to set forth the terms and conditions for the operation of the Company. This Agreement sets forth fully the agreements and understandings of the Members in respect of the Company.

NOW, THEREFORE, in consideration of the covenants and agreements hereinafter set forth, the parties hereto agree as follows:

1.     Definitions.

1.1     "Family Group," with respect to any Member, includes (i) with respect to any Member who is an individual, such Member's spouse and descendants, (ii) with respect to any Member that is a trust, any beneficiary of the trust and the spouse and descendants of any beneficiary and (iii) with respect to any Member that is an entity, any beneficial owner of such entity and the spouse and descendants of any such beneficial owner.

1.2     "Membership Interest" means the ownership interest of a Member in the Company. The Membership Interest of each of the Members as of the date hereof is set forth on Schedule A.

1.3     "Property" shall have the meaning set forth in Section 5.

2.     Name: The name of the Company shall be GENEVER HOLDINGS LLC.

3.     Articles; Certificates. The Members, from time to time as such Members deem advisable, may, by written instrument, elect one or more additional natural persons and designate them as "authorized persons" of the Company. The Members or any officer or authorized person shall execute, deliver and file any other articles and/or certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in any jurisdiction in which the Company may wish to conduct business.

SN 0198

    4.   Term. This Agreement shall be effective as of the filing of the Company's Articles of Organization with the Secretary of State of New York and shall have perpetual existence.

    5.   Purposes. The purposes of the Company are to acquire, own, hold, manage, operate, maintain, repair, improve, renovate, sell, finance, refinance and otherwise use or deal with the property described on Schedule B hereto, such other real property as the Members shall determine to acquire and any tangible personal property usually located therein or used or of use in connection therewith (collectively, the "Property"); and to engage in any other lawful business or activities for which limited liability companies may be organized under the Act. In furtherance of its purposes, the Members shall have the power and are hereby authorized to take any and all actions and engage in such activities as may be necessary, convenient, advisable or incidental with respect to the conduct of the business of the Company as determined by the Members in their sole discretion (but subject to the further provisions of this Agreement), including, but not limited to, acquiring, maintaining, improving, selling, leasing, and mortgaging real property, and the Members shall have and exercise all of the power and rights conferred upon limited liability companies formed pursuant to the Act.

    6.   Powers. The Company shall have the power to do all things necessary or desirable in the conduct of its business to the fullest possible extent. Limited Liability. Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Members shall not be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member of the Company.

    8.   Office. The principal office and place of business of the Company shall be located at such place as the Members may from time to time determine. Management. Management of the Company shall be vested in the Members. The Members shall have full, exclusive and complete discretion to manage and control the business and affairs of the Company and to take all such actions as the Members deem necessary or appropriate to accomplish the purposes of the Company as set forth herein.

    9.1.1   The Members shall have sole power to bind the Company, except and to the extent that such power is expressly delegated to any other person or entity by the Members, and such delegation shall not cause the Members to cease to have such powers. The Members and/or, to the extent determined by the Members, any officers appointed by the Members in accordance with Section 9.3 shall each have the power and authority to do any and all acts necessary or convenient to or for the furtherance of the purposes of the Company set forth in this Agreement.

    9.1.2   If any vote or consent of the Members is required by the Act at a time when there is only one Member, then the vote of such Member shall be considered the vote or consent of the Members. If there is more than one Member, then, unless a greater majority is required by the Act or this Agreement, the vote of Members holding a majority of the Membership Interests in the Company shall be considered the

SN 0199

vote or consent of the Members. Any action of the Members may be taken by written consent without a meeting and without prior notice.

9.2    In addition to the powers granted by law, the Members shall have full power to do everything in administering the Company that the Members may deem advisable, to the full extent that an individual owning property would have and without prior court authority, including the power:  To retain so long as the Members may deem advisable and to acquire by purchase or otherwise, any kind of real property or personal property; to sell for cash or on credit (at public or private sale), exchange, mortgage, lease for any period (either as landlord or tenant and including renewals of the term) and modify, extend or cancel leases, grant options or otherwise dispose of or deal with any real or personal property, all without regard to statutory restrictions, in such manner and upon such terms and conditions as they deem advisable without first obtaining a court order; to erect, renovate or alter buildings or otherwise improve and manage buildings and property; demolish buildings; make ordinary and extraordinary repairs; grant easements and make party wall contracts; dedicate roads; subdivide; adjust boundary lines and partition; to distribute in kind or in money or partly in each, even if shares be composed differently; to hold property in the names of nominees or so that it will pass on delivery; to renew, assign, alter, extend, compromise, abandon or release or arbitrate claims asserted by or against the Company; to engage and rely on brokers and investment counsel, accountants, appraisers and other experts and legal counsel and to compensate them; to employ custodians of the assets and bookkeepers and clerks and other assistants; and to borrow money for any purpose.

9.3    Officers. The Members may, from time to time as they deem advisable, select one or more natural persons and designate them as officers of the Company (the "Officers") and assign titles (including, without limitation, President, Vice President, Secretary, and Treasurer) to any such person. The Members may, by written instrument, delegate to any Officer or any other agent of the Company any of the Members' powers under this Agreement, including, without limitation, the power to bind the Company. Any delegation pursuant to this Section 9.3 may be revoked at any time by the Members. An Officer may be removed with or without cause by the Members. Any Officer may resign at any time by giving written notice to the Members. Any vacancy in any office, due to death, incapacity, resignation or removal, shall be filled by the Members. Officers may be Members or non-Members.

9.4    Fiduciary Duty of the Members and Officers. In exercising the powers granted by this Agreement and in performing the duties required by this Agreement with respect to the management and operation of the Company, each Member and Officer, pursuant to general principles of law, has a fiduciary duty to act reasonably in (or not opposed to) the best interests of the Company and the Members.

10.    Other Business. The Members and any person or entity affiliated with any of the Members may engage in or possess an interest in other business ventures (unconnected with the Company) of every kind and description, independently or with others. None of the Company or the other Members shall have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

4

11.   Liability and Indemnity.

11.1   To the fullest extent permitted by applicable law, no Member, Officer, employee or agent of the Company ("Covered Person") shall be liable to the Company, any Member or any other person or entity who is a party to or otherwise bound by this Agreement for any liability, loss, damage or claim suffered or incurred by reason of any act or omission performed or omitted by such Covered Person, except that a Covered Person shall be liable for any such liability, loss, damage, cost or claim suffered or incurred by reason of such Covered Person's (a) gross negligence or willful misconduct, (b) violation of any express provision of this Agreement or of the implied contractual covenant of good faith and fair dealing, and/or (c) breach of such Covered Person's duty of loyalty ("Unprotected Acts and Omissions"). Consistent with the preceding sentence, each Covered Person may act or refrain from acting without liability to the Company or to any Member in reliance upon any opinion of any consultant or advisor on any matter which the Covered Person reasonably believes to be within the consultant or advisor's professional competence.

11.2   To the fullest extent permitted by applicable law, and to the extent of its assets, the Company shall indemnify, defend and hold harmless any Covered Person for any liability, loss, damage, cost or claim suffered or incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in connection with the Company, provided, however, that (i) no Covered Person shall be entitled to be indemnified in respect of any such liability, loss, damage, cost or claim suffered or incurred by such Covered Person by reason of such person's Unprotected Acts and Omissions, and (ii) any indemnity under this Section 11.2 shall be provided out of, and to the extent of, Company assets only, and no Member shall have personal liability on account thereof.

11.3   To the fullest extent permitted by law, expenses ((including, without limitation, reasonable attorneys' fees and expenses) incurred in defending any action, suit or proceeding subject to this Section 11 shall be paid or reimbursed by the Company in advance of the final disposition of any proceeding and without any determination as to the Covered Person's ultimate entitlement to indemnification; provided, however, that the payment of such expenses incurred in advance of the final disposition of a proceeding shall be made only upon delivery to the Company of a written affirmation by such person of his good faith belief that he or she has met the standard of conduct necessary for indemnification under this Section and a written undertaking, by or on behalf of such person, to repay all amounts so advanced if it shall ultimately be determined that such person is not entitled to be indemnified.

12.   Registered Agent. The Secretary of State is designated as agent of the limited liability company upon whom process against it may be served. The address within or without this state to which the Secretary of State shall mail a copy of any process against the limited liability company served upon him or her is: c/o Brad Karp, Paul, Weiss, Rifkind, Wharton & Garrison, LLP, 1285 Avenue of the Americas, New York, New York 10019-6064.

**SN 0201**

13. <u>Capital Contributions</u>. The initial Members agree to contribute to the capital of the Company the cash or property described on <u>Schedule A</u>. In exchange for such contribution, each Member shall receive a Membership Interest in the Company in the percentage set forth on <u>Schedule A</u>. The Company shall maintain a separate Capital Account for each Member in accordance with Treasury Regulations promulgated from time to time under Section 704(b) of the Code.

14. <u>Additional Contributions/Member Loans</u>. No Member is required to make any additional capital contributions to the Company. A Member may extend credit to the Company with an affirmative vote of the Members. Member loans shall not constitute Capital Contributions.

15. <u>Allocations</u>.

15.1 <u>Profits and Losses</u>. The Company's profits and losses shall be allocated to the Members pro rata, in accordance with their Membership Interests. The allocations set forth in this section shall have economic effect equivalence within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(i) and, solely for tax purposes, be made in accordance with the Regulations promulgated under Code Section 704(c).

15.2 <u>Use of Property</u>.

15.2.1 If the Property is not being leased to a tenant, the Members and any one or more of any Member's Family Group may use the Property in an equitable fashion to be determined by the Members by a vote of a majority in interest of the Members.

15.2.2 Persons who are neither Members nor members of a Family Group of any Member may use the Property only upon the prior unanimous approval of the Members.

15.2.3 Nothing herein shall preclude any Member from inviting guests to stay at the Property while such Member or members of any Member's Family Group are using the Property in accordance with Section 15.2.1 above.

16. <u>Distributions</u>. Distributions shall be made to the Members at the times and in the aggregate amounts determined by the Members. Such distributions shall be allocated among the Members in the same proportion as their then positive capital account balances. Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make a distribution to any Member on account of its interest in the Company if such distribution would violate the Act or other applicable law.

17. <u>Sale of the Property</u>. Any part or all of the Property may be sold upon the vote of the Members.

6

18.    <u>Assignment of Membership Interests</u>.

18.1    A Member shall have the right to sell, assign, mortgage, pledge, or otherwise voluntarily transfer or encumber any portion or all of such Member's Membership Interest with the consent of a majority in interest of the Members other than the Member requesting such assignment, <u>provided, however</u>, that no such transfer may be made that would cause the Company to violate any rules, regulations, bylaw or other governing arrangements of any cooperative association or other legal person of which the Company is a shareholder or member, and any purported sale, assignment, mortgage, pledge or other transfer or encumbrance not in conformity with this Section 18.1 shall be null and void.

18.2    In addition, any interest as a Member that is held by a custodian for a minor under a Uniform Gifts to Minors Act, Uniform Transfers to Minors Act or any similar act shall be fully transferable and assignable to the minor when the minor reaches the age of termination of such custodianship under the applicable statute. Any interest held by an entity may be fully transferable and assignable to the beneficial owners thereof.

18.3    Any assignee who receives a Membership Interest in accordance with this Section shall be admitted as a Member only upon his, her or its delivery to the Company of a written instrument by which he, she or it approves and adopts all of the provisions of this Agreement, as amended. Such admission shall be deemed effective immediately prior to the transfer, and, in the case of a transfer of all of a transferor Member's Interest in the Company, immediately following such admission, the transferor Member shall cease to be a Member of the Company. In the event of an assignment and admission of a transferee in accordance with this Section 18.3, the Company shall continue without dissolution.

19.    <u>Admission of Additional Members by the Company</u>. One or more additional Members of the Company may be admitted to the Company with the consent of the Members and upon his, her or its delivery to the Company of a written instrument by which he, she or it approves and adopts all of the provisions of this Agreement, as amended.

20.    <u>Withdrawal of a Member</u>. A Member may withdraw from the Company at any time.

21.    <u>Dissolution</u>.

21.1    The Company shall dissolve and its affairs shall be wound up upon the first to occur of the following:   (i) upon the unanimous vote of the Members; (ii) any time there are no Members of the Company unless the Company is continued in accordance with this Agreement and the Act; or (iii) as otherwise required in the Act.

21.2    Upon dissolution of the Company, the Members shall (i) wind up the affairs of the Company, (ii) pay all outstanding expenses, real property taxes and other debts and liabilities of the Company (including without limitation to any

**SN 0203**

7

Member), (iii) establish any reserves against liabilities or obligations of the Company that the Members deem appropriate and (iv) distribute the remaining assets of the Company to the Members (a) in proportion to their positive capital accounts until such capital accounts reach zero and (b) thereafter in accordance with their respective Membership Interests.

22.    Tax Matters. The Company shall designate a "tax matters partner" in accordance with Section 6231(a)(7) of the Code. In the event that the Company has more than one Member, it shall be treated as a partnership for federal and state income tax purposes. In the event that the Company has a single Member, it shall be treated as a sole proprietorship and a disregarded entity for federal and state income tax purposes.

23.    Amendments. This Agreement may be modified, altered, supplemented or amended from time to time only upon the unanimous written consent of the Members.

24.    Binding Agreement; Successors and Assigns. The Members agree that this Agreement shall be binding upon the parties hereto and their respective successors and permitted assigns and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns.

25.    Separability of Provisions. Each provision of this Agreement shall be considered separable, and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

26.    Counterparts. This Agreement may be executed in any number of counterparts, including by facsimile or electronic signature, each of which shall be deemed an original of this Agreement.

27.    Entire Agreement. This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, and supersedes all prior understandings or agreements between the parties with respect to such subject matter.

28.    Governing Law. This Agreement shall be governed by, and construed under, the laws of the State of New York (without regard to any otherwise applicable conflict of laws principles), all rights and remedies being governed by said laws.

29.    Rule Against Perpetuities. If this Agreement or any covenants or provisions herein would otherwise be unlawful, void or voidable for violation of the Rule Against Perpetuities, then this Agreement, or such covenant or provision, as the case may be, shall terminate twenty-one (21) years after the death of the survivor of all of the descendants of King George V of England living on the date hereof.

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date first above written.

**MEMBER:**

**SN 0204**

8

GENEVER HOLDINGS CORPORATION

By: _____

Michael O'Connor, Authorized Person
Name and Title

GENEVER HOLDINGS LLC

By: Genever Holdings Corporation, sole
Member

By: _____
Name and Title

Michael O'Connor

Authorized Person

SN 0205

## Schedule A

| Member | Membership Interest |
| --- | --- |
| Genever Holdings Corporation | 100% |
| TOTAL | 100% |

SN 0206