O'MELVENY & MYERS LLP
Stuart Sarnoff
Edward Moss
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2224
Email: ssarnoff@omm.com
        emoss@omm.com

-and-

FOLEY & LARDNER LLP
Douglas E. Spelfogel
Alissa Nann
90 Park Avenue
New York, NY 10016
Telephone:  (212) 682-7474
Facsimile: (212) 687-2329
Email: dspelfogel@foley.com
        anann@foley.com

*Attorneys for Pacific Alliance Asia Opportunity Fund L.P.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| GENEVER HOLDINGS LLC, | Case No. 20-12411 (JLG) |
| Debtor. | |

**SUPPLEMENTAL BRIEF OF PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.
IN (I) FURTHER SUPPORT OF DEBTOR'S AMENDED MOTION TO APPROVE
STIPULATION OF SETTLEMENT AND (II) OPPOSITION TO U.S. TRUSTEE'S
<u>OBJECTION TO THE SETTLEMENT AGREEMENT</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT .........................................................................................................................3

A.     The Settlement Agreement and Debtor's Delegation to the Sales Officer Is a
Matter of Corporate Governance Permissible Under State Law and Unaffected by
the Chapter 11 Case ....................................................................................................3

B.     The Settlement Agreement and Delegation to the Sales Officer Is Appropriate and
Permissible Under the Bankruptcy Code....................................................................6

C.     The Settlement Agreement Is Fair, Reasonable and In the Best Interests of the
Debtor's Estate .........................................................................................................10

D.     Failure to Approve the Settlement Agreement Will Harm the Estate and Creditors.........14

CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 1031 Tax Group, LLC,*
374 B.R. 78 (Bankr. S.D.N.Y. 2007) ...................................................................................8, 13

*In re Bayou Group, LLC,*
564 F.3d 541 (2d Cir. 2009) ................................................................................................ 6

*In re Blue Stone Real Estate, Const. & Dev. Corp.,*
392 B.R. 897 (Bankr. M.D. Fla. 2008) ............................................................................ 13

*In re Gaslight Club, Inc.,*
782 F.2d 767 (7th Cir. 1986) ........................................................................................7, 8, 9

*In re Johns-Manville Corp.,*
801 F.2d 60 (2d Cir. 1980).............................................................................................5, 6

*In re K.G. IM, LLC,*
620 B.R. 469 (Bankr. S.D.N.Y. 2020) .......................................................5, 7, 8, 9, 10, 11, 12

*LNYC Loft, LLC v. Hudson Opportunity Fund I, LLC,*
154 A.D.3d 109 (1st Dept. Aug. 15, 2017)...................................................................... 4

*In re Pewzner,*
47 Misc.3d 1214(A) (Surr. Court Kings Cty. Apr. 21, 2015)...................................... 3

*In re Stillwater Asset Backed Offshore Fund Ltd.,*
Case No. 12-14140 (ALG) (S.D.N.Y. 2013)................................................................12, 13

**Statutes**

Sections 105 and 1107(a) of the Bankruptcy Code ........................................................8, 9

Article IV of the New York LLC Act ................................................................................. 3

Pacific Alliance Asia Opportunity Fund L.P. ("PAX"), by its undersigned attorneys, hereby files its Supplemental Brief in (i) Further Support of Debtor's Amended Motion [Dkt. 62] (the "Motion")[1] to Approve Stipulation of Settlement (as amended and restated on or about May 24, 2021, the "Settlement Agreement") with Bravo Luck Limited ("Bravo Luck") and PAX, and (ii) Opposition to any objection[2] of the United States Trustee ("UST"), and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      As set forth in the Motion, and in PAX's objection to the Trustee Motion [Dkt. 81] (the "PAX Objection"),[3] the UST's opposition to the Settlement Agreement is a solution in search of a problem.  The Settlement Agreement represents a heavily negotiated, hard fought settlement by and among the Debtor and every major constituent in this Chapter 11 Case, which provides the framework for an orderly and agreed process for administering the Chapter 11 Case and to protect and monetize the primary asset – the Residence.  The Settlement Agreement also provides for stay relief to address non-core claims outside of the Bankruptcy Court and resolution of the PAX motions for stay relief [Dkt. 12] (the "Stay Motion") and to convert the

---

[1] Any capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Motion.

[2] The UST did not formally object to the Motion, but objected to the Settlement Agreement through its Motion to Appoint a Chapter 11 Trustee [Dkt. 64] (the "Trustee Motion") and has raised objections before the Court and informally.  This supplemental briefing is intended to address any and all objections raised by the UST to the Settlement Agreement and appointment of the Sales Officer.

[3] The Court is referred to the Motion as well as the PAX Objection for a full recitation of the facts, which are both fully incorporated herein.

Chapter 11 Case [Dkt. 28] (the "Conversion Motion" and together with the Stay Motion, the "PAX Motions").[4]

2.       Significantly, all parties in interest have signed on to the Settlement Agreement and support the Motion, including the Debtor, PAX, Bravo Luck and the Sherry Netherland. Further, pursuant to the Settlement Agreement, the sale of the Residence will be overseen by an agreed to third party "sales officer," retired Judge Melanie Cygnaowski (the "Sales Officer"). The Sales Officer has a sterling reputation in this Court, and was selected with the consent of the main case constituents, to run a transparent sale process and achieve the collective goal of maximizing value for the estate and all creditors – the foundational purpose of Chapter 11.

3.       Absent approval of the Settlement Agreement, PAX is concerned there is little value in the bankruptcy process, which it believes has always been of dubious merit.  If the Settlement Agreement is not approved, thereby causing further delay and potential loss of value to the detriment of creditors, PAX reserves its right to move to dismiss the bankruptcy case. PAX's forbearance to date has been due to the apparent consensus among all of the major stakeholders regarding the orderly sale of the Residence, as well as the resolution of the PAX Motions.

4.       Notwithstanding such agreement and consent among all major stakeholders, the UST, with no pecuniary interest in maximizing value for creditors, raises technical objections to the Settlement Agreement, challenging the Debtor's business judgment to enter into the Settlement Agreement and the authority to appoint the Sales Officer as a matter of the Debtor's corporate governance.  As set forth in detail below, while the UST's concerns regarding the

---

[4] The Settlement Agreement also includes a proviso for stay relief to the Sherry-Netherland to pay post-petition maintenance and assessments from its security deposit.  A proposed order granting such relief was submitted by the Sherry-Netherland and is unopposed.

4829-2708-5802

Settlement Agreement and appointment of a Sales Officer may be well intentioned, they miss the

mark and are contrary to established precedent.  Rather, the Debtor has the authority under both

the Bankruptcy Code and settled state law to delegate its powers and authority to the Sales

Officer as a matter of corporate governance, and in furtherance of its business judgment – *and

the will of its creditors*.  In addition, the Debtor has the authority in its business judgment to enter

into a fair and reasonable compromise or settlement, which in this case, is an agreement among

the Debtor and every major creditor in the Chapter 11 Case, clearly in the best interests of the

estate.

       5.       Accordingly, for the reasons detailed below, and the PAX Objection to the

Trustee Motion, the UST's collateral attack on the Settlement Agreement should be overruled,

and the Settlement Agreement approved as expressly authorized under the Debtor's corporate

documents, state law and the Bankruptcy Code.

## **ARGUMENT**

**A.**    **The Settlement Agreement and Debtor's Delegation to the Sales Officer Is a Matter
of Corporate Governance Permissible Under State Law and Unaffected by the
Chapter 11 Case**

       6.       At the outset, the appointment of the Sales Officer is permitted under applicable

State law and the Debtor's operating agreement.  The Debtor is a New York LLC with a sole

member, Genever Holdings Corporation (the "Member").  The Debtor operates under the

Limited Liability Company Agreement of Genever Holdings LLC (the "Operating Agreement").

       7.       "One of the basic principles underlying the [New York] limited liability

corporation law is that its members are permitted broad flexibility in structuring the limited

liability company pursuant to an operating agreement." *In re Pewzner*, 47 Misc.3d 1214(A), *4

(Surr. Court Kings Cty. Apr. 21, 2015).  "Article IV of the New York LLC Act makes clear that

the operating agreement of an LLC governs the relationships among members and the powers

and authority of members and manager." *LNYC Loft, LLC v. Hudson Opportunity Fund I, LLC*,

154 A.D.3d 109, 114 (1st Dept. Aug. 15, 2017).  Indeed, "[o]ne attraction of the LLC form of

entity is the statutory freedom granted to members to shape, by contract, their own approach to

common business relationship problems."  *Id*. (quoting *Obeid v. Hogan*, 2016 WL 3356851, *5

(Del. Ch. June 10, 2016)).

8.      Here, section 9.3 of the Operating Agreement allows the Member to designate

officers and delegate any of the Member's authority under the Operating Agreement to that

officer, including the power to bind the LLC.  In addition, section 23 of the Operating

Agreement provides in relevant part that the Agreement "may be modified, altered,

supplemented or amended from time to time only upon the unanimous written consent of the

Members."  Upon information and belief, on or about May 24, 2021, the Debtor, by its Member,

passed a resolution (the "<u>Resolution</u>") to approve the Settlement Agreement, amend the

Operating Agreement, and retain and appoint Judge Cyganowski as an employee of the Debtor to

serve as its Sales Officer with all of the responsibilities and powers detailed in the Motion and

Settlement Agreement.  Specifically, by the Resolution, the Debtor has resolved to amend the

Operating Agreement to, among other things, limit the Debtor's ability to remove or terminate

Judge Cyganowski as Sales Officer (or revoke her powers), which removal or termination (or

revocation) can only occur subject to Bankruptcy Court approval.  In addition, the Resolution

specifically authorizes the Debtor to enter into the Settlement Agreement (as revised).

9.      Accordingly, through the Resolution, pursuant to its authority under the Operating

Agreement and New York law, the Debtor, by its Member, irrevocably appointed and delegated

its authority to run the sale process in this Chapter 11 Case to the Sales Officer.  These corporate

4

governance measures taken by the Debtor clearly provide the corporate authority to approve the Settlement Agreement and appoint the Sales Officer.

10.      Importantly, the Debtor's rights under New York State law and the Operating Agreement to alter its management structure post-petition is an appropriate exercise of its corporate governance rights and permissible under the Bankruptcy Code.  Post-petition, the Debtor's state law governance rights persist "and neither [State] law nor the Bankruptcy Code gives the UST special rights to block the exercise or transfer of governance rights in the absence of appointment of a chapter 11 trustee." *In re K.G. IM, LLC*, 620 B.R. 469, 482 (Bankr. S.D.N.Y. 2020).  Indeed, the Second Circuit has confirmed that a corporation's corporate governance rights are unaffected by a Chapter 11 filing.  In *In re Johns-Manville Corp.*, 801 F.2d 60, 63 (2d Cir. 1980), the court held that a chapter 11 proceeding did not preclude the right of shareholders to compel a meeting for the purpose of electing a new board of directors.  And in interpreting that decision, this Court held, "[t]he [Second] circuit noted that the shareholders' right to govern their corporation is a 'perogative ordinarily uncompromised by reorganization' and that the 'law of [the Second] circuit directs that the shareholders' natural wish to participate in this matter of corporate governance be respected.'"  *K.G. IM, LLC*, 620 B.R. at 482 (quoting *In re Johns-Manville Corp.*, 801 F.2d at 63).

11.      Accordingly, in *K.G. IM*, this Court rejected the U.S. Trustee's argument that appointment of a CRO as manager of the Debtor was not done in compliance with state law and held, consistent with "well established precedent in this circuit … that the Debtor's state law governance rights were not altered by the filing of these chapter 11 cases."  *Id*.  Nor are the Debtor's well-established governance rights affected here, and there can be no question that the

5

Debtor's decision to appoint and delegate its powers with respect to the sale of the Residence to the Sale Officer is entirely proper under well-established New York law.

12.       Relatedly, in *In re Bayou Group, LLC*, 564 F.3d 541, 548 (2d Cir. 2009), the Second Circuit rejected the U.S. Trustee's "collateral attack on the Order" and motion to appoint a Chapter 11 trustee to replace the receiver, because the District Court had appointed him not only as receiver, "but also as 'new management of the debtors' with the authority and capacity to manage the bankruptcy proceedings as the debtor-in-possession."  In upholding the District Court's order and appointment, the Second Circuit pointed out that (*like the Settlement Agreement here*) the appointment was authorized under the law, and the receiver's efforts in the bankruptcy proceedings "have been endorsed by all of [the debtor's] creditors."  *Id*. at 544-45. In addition, the Second Circuit made clear that "from a purely practical perspective, [the debtor] has been effectively managed since [the receiver] was appointed."  *Id*. at 547.  Similarly here, and as described in the PAX Objection, the UST's objections to the Settlement Agreement seek to derail the Debtor's consensual delegation of its powers *and* the agreement among the Debtor and all of its major creditors, without *any* evidence or reason to believe it would not be effective in resolving those creditors' concerns – and contrary to applicable state law on corporate governance.  Consistent with the Second Circuit's holdings in *Johns-Manville Corp.* and *Bayou*, as well as applicable state law and the Bankruptcy Code, the consensual Settlement Agreement among the stakeholders in this Chapter 11 Case should be approved.

**B.     The Settlement Agreement and Delegation to the Sales Officer Is Appropriate and Permissible Under the Bankruptcy Code**

13.       While the UST does not (and cannot) dispute the Debtor's authority under state law to appoint and delegate powers to officers and agents to oversee and control a business as a matter of corporate governance, it argues that the appointment of and delegation to the Sales

Officer is impermissible under the Bankruptcy Code because an irrevocable appointment and

delegation means the Sale Officer "is accountable to no one." *See, e.g.,* Trustee Motion at 14.

There is no basis for the UST's position.

14.     Indeed, this Court previously rejected the *exact same* argument raised by the UST

here.  In *K.G. IM*, the debtors and their secured lender, BSP, settled BSP's motion to lift stay (as

the Settlement Agreement does here) by entering into a stipulation and order appointing a chief

restructuring officer (CRO) who would operate and manage the debtors in their Chapter 11

cases.  Specifically, through that stipulation, the debtors consensually "granted the CRO 'sole

and exclusive power to exercise all of the management, voting rights, consent rights and powers

of each of the Debtors, without regard to, or requirement of, any management, voting rights,

consent rights, consultation rights or powers of any person who has such rights or powers under

any of the Debtors' Operating Agreements.'" *K.G. IM*, 620 B.R. at 476.

15.     In *K.G. IM*, the U.S. Trustee sought reconsideration of the order approving the

parties' stipulation appointing a CRO and argued (as the UST does here) that the CRO lacked

any independent oversight and is a "responsible person," "accountable to no one." *Id*. at 482.  In

rejecting that argument, this Court found that the U.S. Trustee misread the authority on which it

relied and pointed to *In re Gaslight Club, Inc.*:

> In *Gaslight*, as here, the debtor's principal agreed with creditors to
> the appointment of a third party 'to exercise its debtor in
> possession powers.'  When the debtor's principal later changed
> course and sought to oust the third party, the court refused to
> appoint an alternative. ***The initial designation of a responsible
> third party, with the consent of debtor and creditor, was
> permissible***; it was the subsequent attempt at replacement that was
> not.

4829-2708-5802

*Id*. at 483 (emphasis added) (citations omitted).[5]  Accordingly, this Court specifically rejected

the notion that an irrevocable delegation by the Debtor to an independent CRO is somehow

improper.  *Id*.  To the contrary, once a responsible third party is designated on the consent of the

debtor and creditors – *as is the case here* – this Court confirmed that it is only the subsequent

attempt to replace that third party that is improper.  *Id*.  This decision further confirms – where

the Court rejected the Debtor's principal's attempt to replace the Court-ordered CRO – that

Court approval is required to terminate or replace a CRO (or in this case, the Sales Officer, if

approved).

16.    Similarly, in *In re 1031 Tax Group, LLC*, 374 B.R. 78, 90 (Bankr. S.D.N.Y.

2007), this Court denied the U.S. Trustee's motion to appoint a Chapter 11 trustee based on

wrongdoing by the Debtor's sole member where that sole member "'irrevocably delegated' all

management authority to [a CRO]."  The Court found that such irrevocable delegation removed

any taint associated with the prior member, obviating the need for a Chapter 11 trustee.  *Id*.

17.    Further, in *K.G. IM*, this Court rejected the application of *In re Adelphia* as a bar

to appointment of a CRO, which the UST relies on here (*see* Trustee Motion at 13):

> At issue in the *Adelphia* decision was an attempt by a Noteholders
> Committee to seek recusal by the debtors' directors and to foist
> an 'alternative fiduciary' on the debtors in lieu of a chapter 11 trustee.
> That is not the case here, however, where the Court has neither
> been asked to remove the Debtors' management nor appoint an
> independent fiduciary.  Rather, BSP and the Debtors have
> requested that the Court approve a consensual delegation of
> authority by the Debtors' former management to an independent
> CRO.

---

[5]  In *In re Gaslight*, the 7th Circuit relied on another decision, *In re FSC Corp.*, 38 Bankr. 346, 350 (Bankr. W.D. Penn. 1983), which confirmed the appointment of a "Responsible Officer" to perform the duties of the debtor-in-possession and held, among other things, "the court is satisfied that the grant of authority to the Responsible Officer was contemplated by sections 1107(a) and 105 of the Bankruptcy Code."  *Id*. at 771-72.

8

*K.G. I.M.*, 620 B.R. at 482.  ***The same is true here***.  By the Settlement Agreement, the parties are

not seeking to remove and unilaterally "foist" a fiduciary on the Debtor.  To the contrary, under

the Settlement Agreement, every major stakeholder in this Chapter 11 Case requests that the

Court approve a consensual delegation of authority *by the Debtor* to an independent third party

officer.

18.     Indeed, approving the Settlement Agreement and the delegation of powers of the

Debtor to the Sales Officer – upon the consent of the Debtor and every major creditor in this

Chapter 11 Case – is entirely consistent with the Court's power under the Bankruptcy Code.  The

rights, powers, functions and duties prescribed on a debtor-in-possession under § 1107(a) are

specifically "subject to … *such limitations or conditions as the court prescribes*."  11 U.S.C. §

1107(a) (emphasis added).  In *In re Gaslight Club, Inc.*, 782 F.2d 767, 769-71 (7th Cir. 1986),

the Seventh Circuit upheld a similar agreement to appoint an independent third party, relying on

the court's powers under Bankruptcy Code §§ 105 and 1107(a), where, critically, *and like here*,

all of the major constituents in the case approved the agreement:

> Sections 105(a) and 1107(a) of the Bankruptcy Code provide
> adequate authority for the bankruptcy court to approve the
> replacement of the person designated to perform the duties and
> exercise the rights of the debtor in possession ***if the creditors'
> committee, the person presently in control and the majority and
> controlling shareholder of the debtor agree to this course of
> action***.

*Id*. at 771 (emphasis added).  Therefore, as confirmed by *Gaslight*, § 1107(a) specifically

provides that limitations can be placed on the functions of a debtor-in-possession in order to

protect the interests of creditors.

19.     Accordingly, it is clear that the appointment of a third party officer, in this case

the Sales Officer, and the irrevocable delegation of certain powers of the Debtor to the Sales

4829-2708-5802

Officer, is authorized under the Bankruptcy Code as confirmed by numerous decisions in and

outside of this District.  The UST's argument otherwise is without merit and should be rejected.

**C.**    **The Settlement Agreement Is Fair, Reasonable and In the Best Interests of the Debtor's Estate**

20.    As established above, the Settlement Agreement and delegation of powers to the

Sales Officer is authorized and proper under both State law and the Bankruptcy Code.  And as

described above, the Settlement Agreement is the result of arm's length negotiations between all

of the major creditors and stakeholders in this Chapter 11 Case – the Debtor, PAX, the Sherry-

Netherland and Bravo Luck.  The Settlement Agreement resolves both PAX Motions and is

predicated on an agreed framework for the sale of the Debtor's primary asset, the Residence.  By

appointing an independent third party Sales Officer, the stakeholders are satisfied there will be a

transparent sale process that will achieve the collective goal of maximizing value for the estate

and all creditors.

21.    Against this backdrop, the Settlement Agreement is fair, reasonable and in the

best interest of the Debtor's estate and the Motion seeking approval of the Settlement Agreement

should be approved.  The Settlement Agreement is also a reasonable and proper exercise of the

Debtor's business judgment, which should not be ignored.

22.    "Settlements and '[compromises] are favored in bankruptcy' as they minimize

costly litigation and further parties' interests in expediting the administration of the bankruptcy

estate.  Before approving a settlement, a court must determine that it 'is fair and equitable and in

the best interests of the estate.'"  *K.G. IM*, 620 B.R. at 483 (citations omitted).  To make this

determination, the court must consider the following factors:

> (1) the balance between the litigation's possibility of success and
> the settlement's future benefits; (2) the likelihood of complex and
> protracted litigation, "with its attendant expense, inconvenience,
> and delay," including the difficulty in collecting on the judgment;

10

        (3) "the paramount interests of the creditors," including each
affected class's relative benefits "and the degree to which creditors
either do not object to or affirmatively support the proposed
settlement;" (4) whether other parties in interest support the
settlement; (5) the "competency and experience of counsel"
supporting, and "[t]he experience and knowledge of the
bankruptcy court judge" reviewing, the settlement; (6) "the nature
and breadth of releases to be obtained by officers and directors;"
and (7) "the extent to which the settlement is the product of arm's
length bargaining."

*Id.* (citations omitted). Although approval of a settlement is a matter within the court's

discretion, "the debtor's business judgment should not be ignored." *Id.* at 484 (internal quotation

marks and citation omitted). "[T]he court may 'give weight to the informed judgments of the . . .

debtor-in-possession and their counsel that a compromise is fair and equitable.'" *Id.* (internal

quotation marks and citation omitted).

       23.     Here, the factors weigh overwhelmingly in favor of approving the Settlement

Agreement:

- The Debtor's likelihood of success on the PAX Motions was far from certain; indeed, the Debtors' prospects were poor. Further, the PAX Motions are contested and include allegations of fraud. On the other hand, the benefits of an approved Settlement Agreement are significant, and will allow the Debtor and creditors to resolve the PAX Motions and proceed with the sale of the Residence expeditiously.

- The Debtor and creditors are involved in complex and protracted litigation with their attendant significant expense, inconvenience and delay. Indeed, the parties are litigating in the State Court Commercial Division and the British Virgin Islands. Absent the approved Settlement Agreement, there is a real concern the Chapter 11 Case will become another battle ground of protracted litigation, while the value of the estate is severely diminished. The Settlement Agreement provides the best means of managing the Chapter 11 Case process to resolve significant issues without which PAX will be forced to reconsider its strategy.

- The creditors will benefit from the appointment of an independent restructuring officer (who happens to be a former bankruptcy judge). No creditors have objected to the settlement. Only the UST – with no pecuniary interest – has taken issue with the Settlement Agreement, and the UST's objections are inconsistent with, and unsupported by, the law, as detailed above.

4829-2708-5802

- The Settlement Agreement is the product of arm's length bargaining among all major constituents in this Chapter 11 Case. The Debtor and creditors, including the Sherry Netherland, engaged in good faith, and there is no evidence that the negotiations were in any way tainted.

24.     Indeed, the parties here did exactly what the Bankruptcy Code encourages – settle – and failure to approve the Settlement Agreement would hurt the Debtor and the creditors. Accordingly, the Settlement Agreement 'is fair and equitable and in the best interests of the estate.'" *K.G. IM*, 620 B.R. at 483 (citations omitted). Moreover, the Court should not ignore the Debtor's business judgment especially when the Debtor and every major creditor agreed to this negotiated and mutually agreed solution.

25.     Overwhelmingly, courts in this District, and others, have supported similar agreements appointing an independent third party officer to assume various duties and functions of a debtor-in-possession. For example, as described above, in *K.G. I.M.,* this Court approved a settlement that resolved a secured creditor's stay relief motion by appointing a CRO to operate and manage the debtors in their Chapter 11 cases. 620 B.R. at 475-76. In *K.G. IM*, this Court approved – indeed, *encouraged* – the agreement reached by the parties, holding that the stipulation and order was within the "sound exercise of the [d]ebtor's business judgment" and would result in "reasonable and appropriate relief" where the debtor and creditor had a contentious relationship. *Id.* at 485.

26.     Similarly, an analogous agreement was approved by this Court in *In re Stillwater Asset Backed Offshore Fund Ltd.*, Case No. 12-14140 (ALG) (S.D.N.Y. 2013) ("_Stillwater_"). In *Stillwater*, the creditors' committee filed a motion to appoint a Chapter 11 trustee based on similar alleged conduct as that raised in the PAX Motions. To avoid costly and protracted litigation, the debtor and creditors' committee settled the pending issues through an agreement providing for the appointment of an independent third party restructuring officer that would

oversee the debtor and recovery of allegedly diverted assets.  Notably, in *Stillwater*, the United

States Trustee signed off on such agreement, which was approved by this Court.[6]  Here, as in

*Stillwater*, the appointment of an independent third party Sales Officer, is an appointment by the

Debtor, approved by all major stakeholders, to resolve contested issues and avoid engaging in

costly and time-consuming litigation, and should similarly be approved.

27.    Moreover, Courts have consistently held that the appointment of an independent

third party officer, such as the Sales Officer here, is an appropriate measure to address a Debtor's

issues in lieu of appointing a Chapter 11 trustee.  For example, and as described above, in *1031

Tax Grp.*, 374 B.R. at 88-90, this Court denied the U.S. Trustee's motion to appoint a Chapter 11

trustee finding that notwithstanding the debtors' bad acts prepetition, it was not necessary to

appoint a trustee because of the appointment of a CRO.  In addition, the court in *In re Blue Stone

Real Estate, Const. & Dev. Corp.*, 392 B.R. 897, 906 (Bankr. M.D. Fla. 2008) approved the

debtors' motion to appoint a CRO over the objection of the U.S. Trustee and, notwithstanding

the U.S. Trustee's pending motion to appoint a Chapter 11 trustee, held that "[t]he CRO Motion

presents the perfect opportunity to address the Debtors' problems, as identified by the United

States trustee [in its motion for trustee], immediately."  Similarly here, *as agreed by the Debtor

and all major creditors and parties in interest*, the Settlement Agreement and appointment of the

Sales Officer sufficiently addresses the concerns raised by the UST and is fair, reasonable and in

the best interests of the estate.

---

[6] *Stillwater* Dkt. 70 (Order (I) Authorizing the retention and Employment of GlassRatner Advisory & Capital Group, LLC and (II) Designating Evan Blum as Chief Restructuring Officer to the Debtor *Nunc Pro Tunc* to March 8, 2013).

4829-2708-5802

**D.** **Failure to Approve the Settlement Agreement Will Harm the Estate and Creditors**

28.     The inherent reasonableness and sound business judgment in entering the
Settlement Agreement is informed, in part, by the current state of the real estate market in New
York City, where the time to sell is now, and failure to approve the Settlement Agreement will
undermine the value of the Residence to the detriment of the Debtor and its creditors.

29.     During the past year during the pandemic, 300,000 people left New York City.[7]
While the exodus from NYC appears to be coming to an end, "the new luxury condominium
market 'is burdened with a tremendous amount of supply.'"[8]  To put it mildly, there are enough
obstacles in the way of selling the Residence without the UST attempting to torpedo the
Settlement Agreement.

30.     The parties to this action have used their creativity and extraordinary effort to
craft a tailored solution that will allow the Debtor to sell the Residence during the peak spring
selling season (which is rapidly coming to a close).  Indeed, the parties have a small window to
sell a luxury apartment in a volatile market during COVID-19.  Failure to approve and
implement the Settlement Agreement in a timely fashion will damage the creditors and the
Debtor, a perverse result that undermines the purpose of the Bankruptcy Code.

31.     The Settlement Agreement is also critical as it resolves a number of issues beyond
the appointment of a third party Sales Officer, including (i) providing an agreed framework for
administering the Chapter 11 Case and the marketing and sale of the Residence; and (ii)
resolving the PAX Motions and providing for stay relief to allow PAX to proceed with its State

---

[7] Gloria Pazmino, *New York Will Tax Its Top Earners, But Not All Mayoral Candidates Agree It will Speed Up Recovery*, Spectrum News NY 1 (Apr. 6, 2021), https://www.ny1.com/nyc/all-boroughs/politics/2021/04/07/mayoral-candidates-react-to-increased-taxes-for-wealthy-new-yorkers.

[8] James Tarmy, *New York Luxury Real Estate Could Be A Bargain In 2021* (Dec. 23, 2020), https://www.bloomberg.com/news/articles/2020-12-23/new-york-luxury-real-estate-bargains-in-2021-and-other-predictions

4829-2708-5802

Court Action.[9]   Failure to approve the Settlement Agreement would also force the parties back into litigation.  In such event, as noted above, PAX reserves its right to move to dismiss the bankruptcy case.  PAX's forbearance to date has been due to the apparent consensus among all of the major stakeholders regarding the orderly sale of the Residence, as well as the resolution of the PAX Motions.

32.     In sum, for all of the reasons described above, the Settlement Agreement and appointment of the Sales Officer is entirely consistent with well-established law and precedent providing for the appointment of a third party officer where, as here, all major constituencies agree it is in their best interests.  Accordingly, the Settlement Agreement should be approved over the sole objection of the non-stakeholder UST.

### CONCLUSION

For all of the reasons stated above, and while reserving all other rights and remedies, PAX respectfully requests that this Court: (i) overrule any objection by the UST to the Settlement Agreement, (ii) grant the Motion approving the Settlement Agreement and appointment of a Sales Officer as provided for therein, and (iii) grant such other and further relief as the Court may deem just and proper.

---

[9] Under the Settlement Agreement the Parties also agreed to stay relief in favor of the Sherry-Netherland to authorize payment of post-petition maintenance fees and assessments.  As noted above, the Sherry-Netherland filed a proposed order to approve such relief, which was unopposed.

15

4829-2708-5802

Dated:  May 24, 2021
        New York, New York

                                  Respectfully submitted,

                                  **O'MELVENY & MYERS LLP**

                                      */s/ Edward Moss*

                                  By: Edward Moss
                                        Stuart Sarnoff
                                        7 Times Square
                                        New York, NY 10036
                                        Telephone: (212) 326-2000
                                        Email: emoss@omm.com
                                                      ssarnoff@omm.com

                                          -and-

                                  **FOLEY & LARDNER LLP**

                                      */s/ Douglas Spelfogel*

                                  By: Douglas E. Spelfogel
                                        Alissa Nann
                                        90 Park Avenue
                                        New York, NY 10016
                                        Telephone: (212) 338-3566
                                        Email:  dspelfogel@foley.com
                                                      anann@foley.com

                                  *Attorneys for Pacific Alliance Asia*
                                  *Opportunity Fund L.P.*