TROUTMAN PEPPER
HAMILTON SANDERS LLP
Francis J. Lawall
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799
Telephone: (215) 981-4000
Facsimile:  (215) 981-4750
francis.lawall@troutman.com

*Counsel for Bravo Luck Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genever Holdings LLC, | Case No. 20-12411 (JLG) |
| Debtor. | **Re: ECF No. 62** |

**BRIEF OF BRAVO LUCK LIMITED IN SUPPORT OF**
**DEBTOR'S AMENDED MOTION TO APPROVE ATTACHED**
**STIPULATION OF SETTLEMENT WITH BRAVO LUCK AND PAX**

Bravo Luck Limited ("Bravo Luck"), by and through its counsel, hereby files this brief (this "Brief")[1] in support of the *Debtor's Amended Motion to Approve Attached Stipulation of Settlement with Bravo Luck and PAX* (ECF No. 62) (the "Settlement Motion") filed by the above-captioned debtor and debtor in possession (the "Debtor").  In support of the Settlement motion, Bravo Luck respectfully states as follows:

---

[1] By filing this Brief, Bravo Luck does not submit to general bankruptcy or United States jurisdiction.  This Brief is only to be construed as a limited appearance of Bravo Luck necessitated by the Settlement Motion's potential effect on Bravo Luck and in order for Bravo Luck to protect its rights as a major party-in-interest in this bankruptcy case.  Bravo Luck does not waive, and specifically preserves, all of its procedural and substantive defenses to any claims that may be asserted against Bravo Luck by any party in this case.

1

**PRELIMINARY STATEMENT**[2]

1.  There is no question that limited liability companies were created to provide members with greater flexibility in the operation of their business than what is otherwise permitted under the more rigid requirements of corporate law.  Here, the Debtor simply proposes to exercise its reasonable business judgment to appoint a sales officer to which it will partially delegate the authority to conduct the marketing and sale of its primary asset with oversite from this Court.  Because appointment of the sales officer is technically outside the ordinary course of business, court approval of such appointment is necessary.  Likewise, requiring court approval for the termination of such sales officer does nothing more than provide the Debtor with confirmation that doing so is a reasonable exercise of its business judgment and provides further transparency into the sales process.  This proposed procedure does not violate state law, is fully consistent with the Bankruptcy Code and presents the best path forward for the estate and creditors.  As such, amending the Debtor's Operating Agreement to reflect the terms of appointment and termination of the Sales Officer should be approved by this Court.

**BACKGROUND**

2.  On March 5, 2021, the Debtor filed the Settlement Motion, whereby the Debtor sought approval of that certain Settlement Agreement, dated February 26, 2021, by and between the Debtor, Pacific Alliance Asia Opportunity Fund L.P. ("PAX"), and Bravo Luck (as attached to the Settlement Motion, the "Settlement").  The Settlement would appoint an independent third party Sales Officer with authority to exercise independence regarding the sale and marketing of the 18th Floor apartment of the Sherry-Netherland, Inc., 781 Fifth Avenue, New York, New York 10022 (including certain personalty and servant's rooms located at units

---

[2] Capitalized but undefined terms used but in the Preliminary Statement are as defined later in the Brief.

-2-

#116151369 v4

2219 and 719, collectively, the "Residence"[3]) and, in exchange, litigation brought by PAX in this case would be resolved—all while litigation between the parties in New York state court and the British Virgin Islands proceeded.  *See* Settlement Motion, ¶¶ 3, 10; *see generally* Settlement.

3. On March 22, 2021, the U.S. Trustee filed the *United States Trustee's Motion for an Order Directing the Appointment of a Chapter 11 Trustee Pursuant to Section 1104 of the Bankruptcy Code* (ECF No. 64) (the "Chapter 11 Trustee Motion").

4. On April 9, 2021, the Debtor filed the *Debtor's Motion to Engage and Retain Melanie L. Cyganowski, Esq. to Act as the Duly Appointed Sales Officer for the Debtor's Bankruptcy Estate* (ECF No. 72), seeking to retain and appoint Judge Melanie L. Cyganowski (Ret.) as the Sales Officer.

5. On May 12, 2021, the Debtor filed an amended and restated form of the proposed Settlement (ECF No. 86-1) (the "Amended Settlement") to clarify, among other things, that the Debtor as debtor in possession remains an essential party to the sale marketing and approval process,  approval of the highest and best offer for the Residence shall be subject to approval by the Debtors' member(s) and manager(s), and approval or non-approval by the Debtor's member(s) and manager(s) will be subject to the review and final approval of this Court upon notice.  *See* Amended Settlement, ¶¶ 2–6, 27(C).

6. On May 11 and 14, 2021, this Court held a hearing on the Settlement Motion and Chapter 11 Trustee Motion.  The Court asked for supplemental briefing by the parties on the issue of whether the termination of the Sales Officer constitutes a matter of business judgment or is a matter of corporate governance under state and bankruptcy law in this context.

---

[3] Although Bravo Luck asserts that it is the ultimate owner of the Residence, it refers to the Residence herein as being an asset of the Debtor because the Sherry-Netherland co-op shares for the Residence are held in the name of the Debtor for the benefit of Bravo Luck.

-3-

**ARGUMENT IN SUPPORT OF SETTLEMENT**

    **A.**    **Under New York Law and the Amended Operating Agreement, a Delegation of Authority as Proposed by the Amended Settlement is Appropriate.**

    7.    The Debtor is a New York limited liability company governed by the New York Limited Liability Company Law, NY LLC L §§ 101 *et. seq.*, and that certain Liability Company Agreement of Genever Holdings, LLC, dated February 13, 2015 (the "<u>Operating Agreement</u>"; attached hereto as **Exhibit A**).  Pursuant to the New York Limited Liability Company Law and the Debtor's Operating Agreement and Amended Operating Agreement, a delegation of authority by the Debtor to the Sales Officer as is proposed by the Amended Settlement is valid and appropriate.

    8.    Section 202 of the New York Limited Liability Company Law provides that:

> Unless the articles of organization provide otherwise and subject to any limitations provided in this chapter or any other law of this state, a limited liability company may:
>
> (h) elect or appoint managers, employees and agents of the limited liability company, define their duties and fix their compensation;
>
> (j) make and alter its operating agreement, not inconsistent with its articles of organization or with the laws of this state, concerning the business of the limited liability company and the conduct of its affairs;
>
> (q) have and exercise all powers, in addition to those set forth in subdivisions (a) through (p) of this section, not inconsistent with law, necessary or convenient to effect any or all of the purposes for which the limited liability company is formed. In order for a limited liability company to exercise the powers enumerated in this chapter, it is not necessary to set forth such powers in the articles of organization.

NY LLC L § 202 (h), (j), (q).  Furthermore, Section 417 of the New York Limited Liability Company Law provides that a limited liability company's members:

> shall adopt a written operating agreement that contains any provisions not inconsistent with law or its articles of organization

> relating to (i) the business of the limited liability company, (ii) the conduct of its affairs and (iii) the rights, powers, preferences, limitations or responsibilities of its members, managers, employees or agents, as the case may be.

NY LLC L § 417(a). "The operating agreement is, therefore, the primary document defining the rights of members, the duties of managers and the financial arrangements of the limited liability company[.]" *Goldsein v Pikus*, 2015 N.Y. Misc. LEXIS 2849, *28, 2015 NY Slip Op 31455[U], 25 [Sup Ct, NY County 2015] (internal citation omitted) (quoting *Willoughby Rehabilitation and Health Care Ctr., LLC v Webster*, 831 N.Y.S.2d 357 [Sup Ct, Nassau County 2006], *affd* 849 N.Y.S.2d 887 [2d Dept 2007]) (holding that "as under the terms of the Operating Agreement, the Managers expressly delegated their authority to manage the Property to [management company] alone (Operating Agreement § 5.2), plaintiffs also are entitled to a declaration that [management company], and not [defendant manager], has the authority to manage the Property under the Operating Agreement[]").

9. Thus, the key document related to the Debtor's authority to appoint agents, such as the Sales Officer, and delegate duties to them is the Operating Agreement, which expressly provides that:

> The Members may, from time to time as they deem advisable, select one or more natural persons and designate them as officers of the Company (the "Officers") and assign titles (including, without limitation, President, Vice President, Secretary, and Treasurer) to any such person. *The Members may, by written instrument, delegate to any Officer or any other agent of the Company any of the Members' powers under this Agreement, including, without limitation, the power to bind the Company*.

Operating Agreement, ¶ 9.3 (emphasis added). Officers appointed pursuant to the Operating Agreement must also act in the best interest of the Company. *See* Operating Agreement, ¶ 9.4.[4]

---

[4] "In exercising the powers granted by this Agreement and in performing the duties required by this Agreement with respect to the management and operation of the Company, each Member and Officer, pursuant to general principles of law, has a fiduciary duty to act reasonably in (or not opposed to) the best interests of the Company and the Members." Operating Agreement, ¶ 9.4.

10.    Furthermore, the New York Limited Liability Company Law expressly provides that a limited liability company may amend its operating agreement "concerning the business of the limited liability company and the conduct of its affairs[,]" as long as the amendment is not "inconsistent with [the LLC's] articles of organization or with the laws of this state[.]"  NY LLC L § 202(j).

11.    In order to reflect the Amended Settlement's provision that the Sales Officer cannot be removed without Court approval, the Debtor is amending Section 9.3 of its Operating Agreement (the "<u>Amended Operating Agreement</u>"[5]) to provide that the delegation to the Sales Officer shall be irrevocable during the pendency of the bankruptcy case absent approval by the Bankruptcy Court upon notice.

12.    Additionally, Section 414 of the New York Limited Liability Company Law provides: "**Except as provided in the operating agreement**, any or all managers of a limited liability company may be removed or replaced with or without cause by a vote of a majority in interest of the members entitled to vote thereon."   NY LLC L § 414 (emphasis added).  While Section 414 relates to how a limited liability company's managers may be removed or replaced, this Section is analogous to the appointment of officers and clearly contemplates the purpose of the New York Limited Liability Company Law of creating limited liability companies to be flexible entities governed as members best see fit, and provide for, in the operating agreement.  *See, e.g.*, *Tzolis v. Wolff*, 39 A.D.3d 138, 143 [1st Dept 2007] *affd* 10 N.Y.3d 100 [2008] ("The Limited Liability Company Law is a hybrid of the corporate and limited partnership forms, offering the tax benefits and operating flexibility of a limited partnership with the limited liability protection a corporation provides.").

---

[5] Bravo Luck understands that the Amended Operating Agreement is being finalized and executed today. The parties will file a copy of the Amended Operating Agreement as soon as it is finalized.

13. Here, the Debtor's Operating Agreement authorizes it to select officers and delegate to such officers any of the member's powers under the Operating Agreement, including, without limitation, the power to bind the Company. *See* Operating Agreement, ¶ 9.3. Moreover, the Amended Operating Agreement, also as permitted under state law, provides that the Sales Officer will remain in place for the duration of this bankruptcy case, unless the Sales Officer's removal by the Debtor is approved, upon notice, by this Court. Clearly, the delegation of these duties to the Sales Officer, as well as the restriction on termination of the Sales Officer, are valid exercises of the Debtor's rights under New York law and reflect the intentional flexibility of governance of limited liability companies.

    **B.    The Sales Officer's Role Will be to Sell the Debtor's Primary Asset, Which is Outside of the Ordinary Course of Business; Therefore, Section 363 Court Approval Applies Both as to the Sales Officer's Appointment and Removal.**

14. Section 363(b) of the Bankruptcy Code provides "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b). The requirement for Court approval pursuant to section 363(b) has been applied in contexts beyond a motion to use, sell or lease estate property, such as with respect to entry into non-ordinary transactions. *See Medical Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997) (holding that debtor's cancellation of its malpractice insurance was outside of the ordinary course of business, such that notice under section 363(b)(1) was required); 3 COLLIER ON BANKRUPTCY P 363.02 (16 ed. 2021) ("Section 363(b) has been applied to other uses that one might not ordinarily posit as a question of use of property, but rather as entering into transactions out of the ordinary course of business. This seems appropriate, because nearly any kind of transaction will involve use, sale or lease of property of the estate, even if only cash."). For an action to be considered "in the ordinary course of a debtor's business", it must satisfy: "(1) the 'creditor's expectation test' also known as the 'vertical test,' and (2) the 'industry-wide test' also called the 'horizontal test.'" *Medical*

-7-

*Malpractice*, 114 F.3d at 384 (2d Cir. 1997). "Under this two-part analysis, 'the touchstone of "ordinariness" is thus the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business.'" *Id.* at 384-85 (quoting *In re The Drexel Burnham Lambert Group*, 157 B.R. 532, 537 (S.D.N.Y. 1993)).

15. "Under the vertical test, the court 'views the disputed transaction from the vantage point of a hypothetical creditor and inquires whether the transaction subjects a creditor to economic risks of a nature different from those he accepted when he decided to' enter into a contract with the debtor." *Id.* at 385 (quoting *In re Dant & Russell*, 853 F.2d 700, 705 (9th Cir. 1988)). Additionally,

> [e]ven though something is the type of transaction in which this debtor could be expected to take part, is it the type of transaction that is in the *ordinary* course of business? Some transactions either by their size, nature or both are not within the day-to-day operations of a business and are therefore extraordinary.

*In re Crystal Apparel*, 220 B.R. 816, 831 (Bankr. S.D.N.Y. 1998) (quoting *In re Waterfront Cos.*, 56 B.R. 31, 35 (Bankr. D. Minn. 1985)) (emphasis in original). The vertical test inquiry also "includes whether 'the nature of the [transaction] ventures beyond the domain of transactions that a hypothetical creditor would reasonably expect to be undertaken *in the circumstances*.'" *Id.* at 831-32 (quoting *Roth American*, 975 F.2d. 949, 954 (3d Cir. 1992)) (emphasis in original). In contrast, the horizontal test asks "whether the postpetition transaction is of a type that other similar businesses would engage in as ordinary business." *Id.* (quoting *In re Dant & Russell*, 853 F.2d at 704)). Moreover, "if either dimension of the test is not satisfied, the disputed transaction is not in the ordinary course of business." *In re Crystal Apparel*, 220 B.R. at 831.

16. Here, the disputed transaction would be whether the Debtor can remove the Sales Officer without notice and approval of this Court. When Bravo Luck[6] entered into the

---

[6] Instead of viewing the disputed transaction from the perspective of a hypothetical creditors, Bravo Luck asserts that it makes sense to analyze the vertical test from the perspective of the Debtor's actual creditors, given the

-8-

#116151369 v4

Amended Settlement, it was taking on and giving up different economic risks, but were balanced out in part by the Debtor's agreement to subject its removal of the Sales Officer to Court approval after notice. Thus, if the Debtor was able to terminate the Sales Officer without notice or Court approval, then the disputed transaction would subject Bravo to "economic risks of a nature different from those [they] accepted when [they] decided to enter into a contract with the debtor." *Med. Malpractice*, 114 F.3d at 384. Furthermore, termination of the Sales Officer is not something that creditors would expect to occur, under the circumstances of this case, without notice because the Sales Officer's role of marketing and leading the sale process for the Debtor's primary asset, the Residence, is already outside of the ordinary course of business (hence, why the Sales Officer retention is subject to section 363(b) approval[7]) and the sale of the Residence is one of the major goals of this bankruptcy case. Therefore, removal of the Sales Officer without notice or Court approval is not an action that a creditor would expect to occur, and the result is that the action fails the vertical test, is outside of the Debtor's ordinary course of business, and subject to Court approval pursuant to section 363(b). Because the transaction at issue fails the vertical test, the Court does not need to evaluate the horizontal test—the termination of the Sales Officer is outside the Debtor's ordinary course of business and, pursuant to the above and the Debtor's Amended Operating Agreement, Court approval is required if the Debtor attempts to remove the Sales Officer during the pendency of this case.

17. The U.S. Trustee argues that such a restriction on the Debtor's right to terminate the Sales Officer creates a *de facto* limited chapter 11 trustee. Requiring Court

---

small creditor body. Additionally, while the Sherry-Netherland is not a signatory to the Amended Settlement, it has consented to the process proposed by the Amended Settlement so it should be viewed similarly to PAX's and Bravo Luck's positions in the vertical test.

[7] *See*, *e.g.*, *K.G. I.M. LLC*, 620 B.R. 469 (Bankr. S.D.N.Y. 2020) (approving retention of chief restructuring officer as exercise of debtor's reasonable business judgment under section 363(b), where retention of chief restructuring officer was product of stipulation between debtors and their secured lender to settle secured lender's motion to lift stay).

approval of the removal of an officer appointed with Court approval, however, makes sense under the Bankruptcy Code and in light of the circumstances of this case. Furthermore, this provision is not an absolute bar to the removal of the Sales Officer by the Debtor. The provision simply requires that if the Debtor terminates the Sales Officer, the Debtor must provide notice, and, if a party objects to the termination, the Debtor must demonstrate to the satisfaction of this Court that it exercised its appropriate fiduciary duties and reasonable business judgment in its decision to remove the Sales Officer.

18. Furthermore, under the Amended Operating Agreement, the member is not being removed from the decision-making process, but rather an additional layer of protection is simply being imposed. It is also important to note that a trustee would have absolute domain over all aspects of this bankruptcy process, but here, again, the member remains in control and has simply partially delegated pursuit of the sale process to a sales officer with unanimous creditor consent.

19. Based on all of the above, the terms relating to the appointment and termination of the Sales Officer under the Amended Settlement and Amended Operating Agreement are an exercise of the Debtor's reasonable business judgment, do not violate state law, and are supported by section 363 of the Bankruptcy Code, requiring that actions outside of a debtor's ordinary course of business be approved by a bankruptcy court. Thus, this Court should approve the Amended Settlement, overrule the U.S. Trustee's objection to the Amended Settlement, and deny the U.S. Trustee's Chapter 11 Trustee Motion.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Bravo Luck respectfully requests that the Court grant the relief requested in the Settlement Motion.

*[Signature page follows]*

-10-

#116151369 v4

Dated: May 24, 2021
      Philadelphia, PA

TROUTMAN PEPPER HAMILTON SANDERS LLP

By: /s/ *Francis J. Lawall*
Francis J. Lawall (PA Bar No. 43932)
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799
Telephone: (215) 981-4000
Facsimile:  (215) 981-4750
E-mail: francis.lawall@troutman.com

*Counsel for Bravo Luck Limited*

#116151369 v4