UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

In re

GENEVER HOLDINGS, LLC,

               Debtor.

----------------------------------------------------------x

Case No. 20-12411 (JLG)

<u>Chapter 11</u>

### REPLY OF THE UNITED STATES TRUSTEE REGARDING DEBTOR'S APPLICATION TO EMPLOY A SALES OFFICER, AND MOTION OF THE UNITED STATES TRUSTEE FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE <u>PURSUANT TO SECTION 1104 OF THE BANKRUPTCY CODE</u>

William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**"), respectfully submits this Reply regarding the Application, as revised, to employ a Sales Officer (the "**SO Application**"), filed by Genever Holdings, LLC ("**Debtor**"), and in further support of his motion for the appointment of a chapter 11 trustee in the above-referenced case pursuant to sections 1104(a) and (b) of title 11, United States Code (the "**Bankruptcy Code**"). In opposition to the SO Application, and in support of his motion (the "**UST Motion**"), the United States Trustee respectfully states as follows:

## I. <u>PRELIMINARY STATEMENT</u>

The recently filed supplemental pleadings in support of the SO Application and in opposition to the UST Motion only serve to further expose the central problem with the SO Application: The Debtor's main creditor, Pacific Alliance Asia Opportunity Fund L.P. ("**PAX**") does not trust the Debtor -- or an employee under the control of the Debtor's principal -- to handle the marketing and sale of the Debtor's apartment (the "**Primary Asset**"). Although the

Debtor, rather than risking the appointment of a Chapter 11 Trustee or conversion to Chapter 7, has consented to surrender its authority over the sale of its Primary Asset to an *in rem* receiver (albeit called a "Sales Officer"), this solution does not pass muster under the Bankruptcy Code.

Where there is acrimony between a debtor and its creditors such that the debtor cannot exercise its fiduciary duties, the Bankruptcy Code's solution is not to appoint an independent third party to act as a *de* facto receiver, but rather the appointment of a chapter 11 trustee. Although the SO Application satisfies PAX's demand that the Sales Officer act independently of the Debtor, it does so in a manner that violates Bankruptcy Code section 105(b)'s express language prohibiting the appointment of an *in rem* receiver.

The recently filed Resolution Ratifying and Approving Certain Actions Amended the debtor's Operating Agreement the "**Corporate Resolution**"), ECF Doc. No. 101, does not cure the fatal flaws in the SO Application. Intended to address one of the problematic issues raised by the United States Trustee – namely, that the Court was being asked to override the Operating Agreement's provision that the delegation of authority by the Debtor's managing member is revocable – the Corporate Resolution only highlights the central problem with the SO Application: The Debtor surrenders any authority it may have over the Primary Asset – not to the Sales Officer – but to the Bankruptcy Court. This is clear because if approved, the Debtor will not have the power to terminate the Sales Officer. That corporate governance decision will have to be made by the Court.

Due to the continued tension between the Debtor and PAX that has resulted in an agreement that is inconsistent with the Bankruptcy Code, the case has stalled. The only viable solution is the appointment of a chapter 11 trustee, a solution that would both comply with the

2

Bankruptcy Code and satisfy PAX's concern that the disposition of the Primary Asset – as well as other aspects of the case -- be managed by an independent actor.

## II. <u>FACTS</u>

1.      The facts set forth in the UST Motion, ECF Doc. No. 64, and in the Objection of the United Sates Trustee to Debtor's Application to Employ a Sales Officer, and Reply in Further Support of the Motion of the United States Trustee for the Appointment of a Chapter 11 Trustee Pursuant to Section 1104 of the Bankruptcy Code (the "**UST Objection**"), ECF Doc. No. 94, are incorporated by reference herein and are made a part hereof.

2.      On May 24, 2021, the parties filed supplemental pleadings, as follows:  The UST Objection, ECF Doc. No. 94; Supplemental Memorandum of Law of the Debtor and Statement/Appendix of Documents Relative to the Settlement Agreement (the "**Debtor's Supplemental Brief**"), ECF Doc. Nos. 95, 97; Supplemental Brief of Pacific Alliance Asia Opportunity Fund L.P. in (I) Further Support of Debtor's Amended Motion to Approve Stipulation of Settlement and (II) Opposition to U.S. Trustee's Objection to the Settlement Agreement ("**PAX's Supplemental Brief**"), ECF Doc. No. 96; and Amended Brief of Bravo Luck Limited ("**Bravo Luck**") )in Support of Debtor's Amended Motion to Approve Attached Stipulation of Settlement with Bravo Luck and PAX, ECF Doc. No. 99.

3.      On May 26, 2021, the Debtor filed a Resolution Ratifying and Approving Certain Actions Amended the Debtor's Operating Agreement (the "Corporate Resolution"), ECF Doc. No. 101.

### III. <u>DISCUSSION</u>

A.    **The SO Application Should be Denied, and the UST
      Motion Should Be Granted, Because The SO Application
      Contemplates The Appointment of an Independent Actor
      who, in Both Her Advisory and Operational Capacities,
      <u>is to be Ultimately Accountable Only to the Court</u>**

As has been stated in the United States Trustee's prior pleadings, the Bankruptcy Code

does not authorize the Court to appoint an "alternative fiduciary" in the place of a chapter 11

trustee. *See In re Adelphia Comm. Corp.*, 336 B.R. 610, 664 (Bankr. S.D.N.Y. 2006) (court

declined to use section 105(a) to "[a]ppoint a trustee equivalent"). The only true fiduciary that

can supplant a debtor-in-possession in a chapter 11 case is a chapter 11 trustee. 11 U.S.C. §

1104; *see Adelphia*, 336 B.R. at 664 (section 1104 calls for only "two types of fiduciaries,

trustees and examiners") (footnotes omitted). The Debtor is being compelled to bring on the

Sales Officer, who is to wear two hats: First, she is an attorney to serve (along with certain of

her law firm colleagues) in a professional advisory capacity. Second, she is to serve as an officer

of the Debtor in an operational capacity. Although the courts in this and other districts have

approved such arrangements (albeit usually with financial advisors instead of attorneys), the

Amended Settlement Agreement cannot be approved, as it contemplates the "alternative

fiduciary" that courts disfavor.

Based on the statements made by the parties in their respective supplemental pleadings

regarding Chief Restructuring Orders ("**CRO**'s"), some clarification on that subject is in order.

Although the employment of a CRO is within the scope of section 363(b) of the Bankruptcy

Code, a CRO is not entirely a creature of 363(b). The J. Alix Protocol, which was discussed in

the UST Objection, is a hybrid arrangement agreed to by the United States Trustee and

professionals in this district. Under that arrangement, professionals (commonly financial

4

professionals) are "employed" by debtors-in-possession as both professionals in an advisory

capacity and as officers in an operational capacity.  In their advisory capacity, they are permitted

to bring in associates from their firms to assist them.  The J. Alix Protocol enables the debtors to

hire CROs  who -- given that a CRO's firm could not be retained under section 327(a) because of

the conflict issues that would arise – would otherwise be disqualified from serving as

professional advisors.

But in order to qualify under the Protocol, the CRO must meet certain requirements.

Among those requirements is that the CRO, in her dual role as a professional advisor and an

employee, cannot be an independent actor, immune from termination by Debtor's managing

member absent court approval.  Otherwise, the CRO would be effectively giving her professional

advice to herself.[1]

Second, although under certain circumstances, a CRO's role could be limited to certain

aspects of a case, a CRO appointment cannot violate an express provision of the Bankruptcy

Code.  Here, as noted in the UST Objection, the Sales Officer is to assume the role of an *in rem*

receiver with respect to the Primary Asset.  The relief the parties seek directly contravenes

section 105(b) of the Bankruptcy Code.  The parties cannot invoke section 105(a) to trump

section 105(b).  *See Law v. Siegel*, 571 U.S. 415, 420-21 (2014) (court cannot use section 105(a)

to overturn other sections of the Bankruptcy Code.)[2]

---

[1] Under the Protocol, the CRO reports to, and takes direction from, a board of directors.  Although the Protocol may be adapted to substitute the LLC's managing member for a board of directors in the supervisory role, the Protocol cannot be modified to give the "officer" independence merely because the Debtor is a limited liability corporation and not a corporation with a board of directors.

[2] It bears noting that none of the cases cited by the parties to the Settlement Agreement involve the employment or appointment of a *de facto* receiver by the Bankruptcy Court.  See, *e.g.*, *In re Gaslight Club, Inc.*, 782 F.2d 767, 769-71 (7th Cir. 1986) (court approved independent third party to manage the debtor's business, not to take on limited role of *in rem* receiver with respect to debtor's property);  *K.G. IM, LLC*, 620 B.R. 469, 482 (Bankr. S.D.N.Y. 2020)

Finally, most of the cases cited in support of the SO Application are atypical of CRO cases. The J. Alix Protocol has been adopted in this district for many years. Its requirements are well known to those familiar with chapter 11 practice. It is worth noting that the parties to the Amended Settlement Agreement, in their valiant search for unusual cases where courts allowed the appointment of responsible officers, almost completely ignored the dozens and dozens of cases where CROs have been appointed in accordance with the Protocol. The parties' approach to the problem should not leave the Court with the misimpression that certain of cases where Courts have carved out exceptions to accommodate the wishes of consenting parties is in any way comparable to the much longer list of cases where the parties have complied with the requirements of the Protocol. In any event, there is absolutely no precedent for the appointment under section 363(b) -- or any other Code provision – of an "officer" whose limited mandate bears an uncanny resemblance to that of a receiver in violation of section 105(b) of the Bankruptcy Code. *See Craig v. McCarty Ranch Trust* (*In re Cassidy Land and Cattle Co., Inc.*), 836 F.2d 1130, 1133 (8th Cir. 1988) (section105(b) precludes appointment of receiver in lieu of a trustee); *Rudin v. The Tax Comm'n of the City of New York, et al.* (*In re Olympia & York Maiden Lane Co., LLC*), 233 B.R. 662, 667 (Bankr. S.D.N.Y. 1999) (same).[3]

---

(permitting appointment of "Responsible Person" to manage the debtor, not *in rem* receiver or Sales Officer to market and sell property)

[3]Although *In re Bayou Group, LLC*, 564 F.3d 541, 548 (2d Cir. 2009), does concern the appointment of a "receiver," that case does not stand for the proposition that, notwithstanding section 105(b)'s express prohibition, a bankruptcy court can appoint an *in rem* receiver -- or an officer by another name to play that role. In *Bayou*, the district court had appointed the officer in question as "new management" of the company. *Id.* The Second Circuit did not sanction the appointment by the bankruptcy court of an officer in contravention of a provision of the Bankruptcy Code.

**B.    The Recently Filed Corporate Resolution Only
Highlights the Independence of the Sales Officer**

Justifiably concerned that the SO Application and Amended Settlement Agreement called

for the Court to override the Operating Agreement, as well as relevant state law, the Debtor –

nearly 12 weeks after it had filed its Amended Motion to Approve Compromise, ECF Doc. No.

62 -- has adopted and filed the Corporate Resolution, ECF Doc. No. 101.  Although this action

may have alleviated certain of the corporate governance issues, it has at the same time

underscored others.

Before its modification by the Corporate Resolution, the Operating Agreement provided

that the managing member had the authority to revoke its power of delegation, *see* Operating

Agreement, § 3.9.  With such power vested in the managing member, the Debtor once could

argue that, though it intended to delegate authority of the marketing and sale process to the Sales

Officer, it still had control of the Sales Officer and, ultimately, over the Primary Asset.  Pointing

to the original Operating Agreement, then, the Debtor could have distinguished the Sales Officer

appointment from that of a receiver.  After all, just as a chapter 11 debtor would not have the

power to unilaterally revoke the appointment of a receiver, the Debtor's managing member could

have revoked the delegation of authority to the Sales Officer – that is, before the adoption and

filing of the Corporate Resolution took that power away.

Now, the delegation of authority to the Sales Officer is, by the terms of the Corporate

Resolution, irrevocable.  Corporate Resolution, pg. 1 and 2 of 2, ECF Doc. No. 101.  Moreover,

the Corporate Resolution makes clear that Bankruptcy Court approval is required before the

"Member or Managers" may remove the Sales Officer.  Thus, the Corporate Resolution only

buttresses the argument that the Sales Officer is to be an independent actor.  Ironically, the long-

7

awaited change to the Operating Agreement makes the resemblance between the Sales Officer

and an *in rem* receiver only more striking.

Finally, PAX's success in making the Sales Officer independent of the Debtor would put

the Sales Officer in an awkward position.  On the one hand, it is the Debtor who has purportedly

hired the Sales Officer as both an advisor and an officer.  On the other hand, because the Sales

Officer can only be terminated with Court approval, the Sales Officer effectively reports to the

Court.  Whereas the Debtor represents the bankruptcy estate, the Sales Officer, like a receiver,

would represent the Court "to manage, control and deal with the property that is the subject

matter of a controversy."  *In re Halvorson*, 607 B.R. 680, 685 (Bankr. C.D. Ca. 2019).  So

PAX's insistence that the Sales Officer be independent would essentially give the Sales Officer

two masters, the Debtor and the Court.  Accordingly, the Corporate Resolution did not succeed

in removing the Court from a role in corporate governance as the ultimate manager with respect

to the Sales Officer.

### C.     The Solution to the Acrimony Rampant in these Proceedings is the Appointment of a Chapter 11 Trustee

This chapter 11 case has thus far been dominated by the efforts of the Debtor, along with

Bravo Luck, to fend off PAX's efforts to take away the Debtor's control of the Primary Asset.

Although the Debtor states in the Debtor's Supplemental Brief that it "is not being displaced by

the [Sales Officer]," pg. 3 of 8, ECF Doc. No. 95, the Debtor, in accordance with PAX's wishes,

*is* being displaced with respect to the Primary Asset.  Crucially for PAX, the Sales Officer is to

be independent of the Debtor. "By appointing an independent third party Sales Officer, the

stakeholders are satisfied there will be a transparent sale process. . . ."  PAX's Supplemental

Brief, ¶ 20, pg. 13 of 19, ECF Doc. No. 96.  The retention of the Sales Officer, PAX argues,

8

would "protect and monetize the primary asset – the Residence." *Id.* at ¶ 1, pg. 4 of 19.  Given the history of this case and PAX's statements in its pleadings, it is clear that PAX seeks "to protect . . . the primary asset" by removing it from the Debtor's control.  Thus, with respect to that asset, the Debtor *has* been displaced, and, if the SO Application is granted, PAX will have succeeded in its efforts to separate the Primary Asset from the Debtor's control.

Unfortunately, the deal struck by the parties – whereby the Debtor remains a debtor-in-possession with respect to aspects of the case unrelated to the Sales Officer's mandate – runs afoul of the Bankruptcy Code.   PAX has argued strenuously that the presumption that the debtor-in-possession can act in the creditors' interest as a fiduciary should not apply here.  *See Marvel Entertainment Group, Inc.*, 140 F.3d, 463, 471 (3d Cir. 1998) ("presumption against appointing an outside trustee is that there is often no need for one").  As noted in prior pleadings, acrimony between the debtor and a creditor can provide a basis for cause for the appointment of a chapter 11 trustee under section 1104(a)(1).  *See Marvel*, 140 F.3d at 472 (Code permits "appointment of a trustee based on a finding of acrimony between debtor and creditor. . . ."); *see also In re Sammy ElJamal*, No. 17-CV-7870 (KMK), 2018 WL 4735719, *8-9 (S.D.N.Y Sept. 28, 2018) (same in court's analysis of 11 U.S.C. § 1104(a)(2), affirming trustee order based on long-standing acrimony).  Courts determine on a case-by-case basis whether such acrimony is sufficient basis to direct the appointment of a chapter 11 trustee.  *Marvel*, 140 F.3d at 472-73.

Here, although the Amended Settlement Agreement would lead one to believe that the hostility that has so characterized this case no longer exists, the substance of the agreement belies that notion.  To ward off the Conversion/Chapter 11 Trustee Motion, the Debtor has agreed to PAX's demand that it give control of the Primary Asset to an independent third party.  The longstanding conflict between the Debtor and PAX clearly has risen to such a level that the latter

9

does not believe that the former can act as a fiduciary for the creditors.  In fact, PAX has made every effort to ensure that the Debtor will not be able to administer the Primary Asset.

Moreover, because the Debtor's main creditor will not consent to an arrangement whereby the Debtor remains in control of its principal asset, the Debtor cannot proceed with this chapter 11 case.   Accordingly, the appointment of a Chapter 11 trustee is warranted – and the UST Motion should be granted.

For the reasons stated both in the UST Motion and herein, the motion to approve the Amended Settlement Agreement must be rejected, and the UST Motion granted.

## IV. CONCLUSION

WHEREFORE, the United States Trustee respectfully requests that the Court deny the SO Application, direct the appointment of a Chapter 11 trustee pursuant to section 1104(a) of the Bankruptcy Code, and grant such other and further relief as may be deemed just and proper.

Dated:  New York, New York
        May 28, 2021

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, Region 2

By:    */s/ Richard C. Morrissey*
       Richard C. Morrissey
       Trial Attorney
       201 Varick Street, Room 1006
       New York, New York 10014
       Tel. (212) 510-0500

10