UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                           Chapter 11

Genever Holdings LLC,                            Case No. 20-12411-JLG

                Debtor.
------------------------------------------------------------x

### DEBTOR'S REPLY MEMORANDUM OF LAW IN RESPONSE TO THE SUBMISSION OF THE U.S. TRUSTEE

### PRELIMINARY STATEMENT

The Debtor herein, Genever Holdings LLC (the "Debtor"), respectfully submits this Reply Memorandum of Law in response to the Memorandum of Law (ECF #94) of the U.S. Trustee ("UST") continuing to oppose the proposed Settlement[1] and related appointment of Judge Cyganowski as Sales Officer ("SO").

Despite the amendments and revisions to the Settlement, the UST still takes the position that the Debtor is only a "spectator" and has improperly delegated authority in violation of the Bankruptcy Code and the terms of its Operating Agreement (the "OA"). The UST unfairly minimizes the Debtor's true role, in pursuit of its agenda to obtain the appointment of an operating trustee despite opposition by all creditors and the UST's failure to establish any proof (let alone clear and convincing proof) of misconduct or mismanagement, as required by Section 1104(a).

Moreover, the UST's opposition is based on a false analogy that the appointment of the SO constitutes an impermissible receivership in violation of Section 105(b). Fundamentally, a

---

[1] Capitalized terms shall have the same meaning as in the Debtor's original Motion to Approve the Settlement (ECF #62) and other prior submissions including the Motion to Employ Judge Cyganowski (ECF #72 ), Opposition to UST Motion seeking Operating Trustee (ECF #83), Opposition to PAX Motion to Convert (ECF #84) and May 14, 2021 Status Letter (ECF#88).

1

receiver presents a "hot-button" issue in bankruptcy, and the UST's reference is clearly designed to undermine the Settlement by raising the specter of a disguised receivership. Contrary to the UST's analogy, the SO position is expressly permitted by the Debtor's OA under Section 9.3, as well as the Debtor's right to amend the OA under Section 23 to make termination of Judge Cyganowski or the revocation of her appointment subject to Bankruptcy Court approval. The Debtor has done nothing which offends either the Bankruptcy Code or its own OA, and all objections of the UST should be overruled.

## POINT I:
## THE SO IS NOT A RECEIVER

The notion that Judge Cyganowski is masquerading as a receiver should be rejected. To begin with, under the New York Limited Liability Company Act, a court may appoint a receiver only in a limited and narrow context following dissolution of the limited liability company, to wind-up its affairs. [NY LLC §703(a)]. *See, At the Airport v. ISATA LLC,* 856 N.Y.S.2d 22 (S.Ct. Nassau Co. 2007) [Pursuant to NY LLC Section 703(a), a court may appoint a receiver only in connection with the winding-up of the LLC's affairs. Accordingly, a court may not appoint a receiver until there has been a judicial dissolution of the LLC].

The Debtor is not in dissolution, nor is it winding-up its affairs. To the contrary, it is selling its primary asset with continuing responsibilities of a debtor-in-possession. The Debtor will be involved in litigation with PAX once the stays are lifted and ultimately intends to file a plan of reorganization. Accordingly, there is no state law predicate for the appointment of a receiver, nor should one be imposed because it fits with the UST's theory of how this Chapter 11 case should unfold.

Second, even if, *arguendo,* there were grounds for a receiver, Judge Cyganowski has a far more limited role than a traditional receiver, as she is only charged with overseeing a sale process, as opposed to preserving and maintaining the Residence. Preservation of the Residence remains the responsibility of the Debtor. Outside of the sale process, Judge Cyganowski has no other duties or responsibilities, and she is expressly designated as an employee with a specified and limited role. As such, the UST's receiver analogy fails.

Indeed, in taking this position, the UST misconstrues the substantial distinction between a state law receiver and the SO. While the UST cites to the decision in *In re 400 Madison Ave. Ltd. P'ship*, 213 B.R. 888 (Bankr. S.D.N.Y. 1997), it does not reconcile the differences between a receiver and debtor-in-possession cited by former Judge Beatty:

> The duties of a receiver retained in possession under Code § 543(d) are limited to the preservation and care of the property under his control. Since no section of the Code includes a receiver who remains in possession within the definition of trustee, the receiver does not take on the obligations and duties of a Chapter 11 trustee nor the somewhat different ones of a debtor-in-possession set forth in Code § 1107. Simply put the receiver has absolutely no responsibility to ensure the progress of the case by filing a plan of reorganization or negotiating with creditors or to perform any other duties which are the prerogative and burden of a debtor-in-possession and a trustee.

*Id.*, at 894-895. *See, also, In re Mem'l Ests., Inc.*, 797 F.2d 516, 520 (7th Cir. 1986) ["the receiver is not engaged in liquidation, which normally is the function of a trustee rather than a receiver."].

Here, all of the burdens of insuring the proper conduct of the Chapter 11 case still reside with the Debtor, and ultimately the Debtor is responsible to actually sell the Residence and propose a plan. Judge Cyganowski has influence over a very discrete part of the case, namely to provide full transparency regarding the sale and marketing of the Residence. Once a third-party buyer is procured, the Debtor retains all rights and obligations to proceed to obtain approval of a

3

sale, and Judge Cyganowski's role will end. In this regard, Judge Cyganowski should be viewed as a permissible "363 professional" and her appointment should be properly viewed and considered under Section 363, and not 11 U.S.C. §105(b).

The duties of the SO as laid out in detail in the Settlement are focused on the sale process. No responsibilities are assigned to the SO for management, maintenance or preservation of the Residence. In short, the UST's analogy falls away when one examines the limited and strictly defined duties that are actually being undertaken by the SO at the Debtor's request and as an employee, who, in fact, can be terminated in the exercise of business judgment and order of this Court.

## POINT II:
## THE UST TRUSTEE MISINTERPRETS THE OA

The UST is also incorrect in its interpretation of the OA. The UST contends that corporate governance and changes in management structure are actions taken in the ordinary course of business. Thus, the UST argues that by asking the Court to approve the appointment of the Sales Officer, and then specifying that any decision by the Member to terminate the SO is subject to review by the Bankruptcy Court, the proposed Settlement violates both the New York Limited Liability Company Act and the OA itself. The UST is wrong on both counts.

In particular, the UST focuses on Section 9.3 of the OA, which permits the Member to appoint an officer and delegate the Member's power and authority to that officer, as well to terminate any officer appointed under Section 9.3 with or without cause. The UST argues that by injecting an approval process into these actions, the Debtor is violating the state statute and the OA.

4

However, the UST misses several key elements of the OA, starting with Section 9.4, which is not mentioned at all, but requires the Debtor to make management decisions based on a fiduciary standard. Hence, as set forth at some length in the Debtor's Supplemental Memorandum of Law (ECF #95), the provisions for Court to approve a potential termination of the SO flow out of the Debtor's fiduciary obligations, and, specifically Section 9.4, that actions by the Member relating to the termination of an officer appointed pursuant to Section 9.3 are expressly subject to the Member's fiduciary duties to the Debtor (which, in light of the bankruptcy includes a fiduciary duty to creditors). Given this requirement, creditors and parties in interest have the right to be heard as to whether the Debtor's termination of the SO is proper exercise of the fiduciary duty imposed by Section 9.4 of the OA.

Moreover, the UST is also incorrect when it asserts that all management decisions constitute ordinary course of business matters and fall outside of the oversight provisions of Section 363(c). Indeed, the UST acknowledges the applicability of the Jay Alix Protocols to the appointment of a chief restructuring officer. Without Section 363(c), the UST would have no standing to enforce those Protocols. The UST cannot have it both ways. Either Section 363(c) applies to certain managerial and operational changes in the Debtor's corporate structure, or it does not. Having long asserted that the Jay Alix Protocols apply to any change in the corporate structure which cedes management authority over debtor-in-possession duties and obligations because it is outside of the ordinary course of business, the UST has already made its policy on this issue well known. If the appointment of the SO is out of the ordinary course of business, then the removal of the SO is likewise out of the ordinary course and, therefore, subject to Court review on notice to creditors to insure that the Debtor is acting within the proper scope of its business judgment.

In arguing that the Sales Officer is "ultimately accountable not to the Debtor's but rather to the Court [UST Memo p. 15], the UST overlooks that the Court is, in fact, the final arbiter of all non-ordinary course decisions made by all debtors in a Chapter 11 case. Indeed, any action taken by a Chapter 11 debtor outside of the regular course must be brought before the Court for review. The various tests used in determining what constitutes an ordinary course of business transaction in terms of vertical integration have previously been briefed by Bravo Luck, and the UST has not developed its analysis within the relevant considerations.

The UST also minimizes that only the Debtor has the power to terminate the SO, so that immediate control over the SO's employment remains in the hands of the Debtor. The fact that this decision remains subject to Bankruptcy Court approval does not divest the Debtor of having this power in the first place. Neither PAX nor Bravo Luck can fire the SO, or seek her removal. In this regard, the Debtor, in fact, is the decision maker under the Settlement regarding termination of the SO, subject to the legal right of creditors and parties in interest to challenge a decision to terminate the SO either as a breach of fiduciary duty under Section 9.4 of the OA, or as a failure to exercise proper business judgment as required by Section 363.

Finally, that the OA can be and was amended to provide for Bankruptcy Court approval regarding the right to terminate Judge Cyganowski in accordance with Section 23 of the OA, is permissible and consistent with the provisions of Article IV of the NY LLC, which permits members to govern themselves by agreement.

In conclusion, the UST appears to have blinders on concerning Judge Cyganowski's appointment, even though the Settlement that has gained the unanimous support of all creditors and other stakeholders. That the UST believes the Settlement could have been structured

6

differently is not a proper reason to overrule the Settlement or deny the appointment of Judge Cyganowski as SO.

## CONCLUSION

For all of the reasons set forth throughout, the Settlement should approved and Judge Cyganowski should be appointed as SO, and the motion of the UST should be denied.

Dated: New York, New York
       May 27, 2021

                                  Goldberg Weprin Finkel Goldstein LLP
                                  *Attorneys for the Debtor*
                                  1501 Broadway, 22nd Floor
                                  New York, NY 10036
                                  (212) 221-5700


                              By:    /s/ Kevin J. Nash, Esq.