TROUTMAN PEPPER
HAMILTON SANDERS LLP
Francis J. Lawall
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4000
Facsimile: (215) 981-4750
francis.lawall@troutman.com

*Counsel for Bravo Luck Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genever Holdings LLC, | Case No. 20-12411 (JLG) |
| Debtor. | **Re: ECF No. 94** |

**REPLY BRIEF OF BRAVO LUCK LIMITED TO OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S APPLICATION TO EMPLOY A SALES OFFICER, AND REPLY IN FURTHER SUPPORT OF MOTION OF THE UNITED STATES TRUSTEE FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE PURSUANT TO SECTION 1104 OF THE BANKRUPTCY CODE**

Bravo Luck Limited ("Bravo Luck"), by and through its counsel, hereby files this reply brief (this "Reply")[1] to the *Objection of the United States Trustee to Debtor's Application to Employ a Sales Officer, and Reply in Further Support of Motion of the United States Trustee for the Appointment of a Chapter 11 Trustee Pursuant to Section 1104 of the Bankruptcy Code* (ECF No. 94) (the "Objection") filed by Office of the United States Trustee ("U.S. Trustee") in the bankruptcy case of the above-captioned debtor and debtor in possession (the "Debtor"). In support of this Reply, Bravo Luck respectfully states as follows:

---

[1] By filing this Reply, Bravo Luck does not submit to general bankruptcy or United States jurisdiction. This Reply is only to be construed as a limited appearance of Bravo Luck necessitated by the Motion's potential effect on Bravo Luck and in order for Bravo Luck to protect its rights as a major party-in-interest in this bankruptcy case. Bravo Luck does not waive, and specifically preserves, all of its procedural and substantive defenses to any claims that may be asserted against Bravo Luck by any party in this case.

1

## PRELIMINARY STATEMENT[2]

1. New York state law is clear and unequivocal that the operating agreement is the controlling document governing a New York limited liability company—and the U.S. Trustee pointed to no authority to the contrary. The Debtor's Amended Operating Agreement provides that the Debtor may appoint the Sales Officer as an employee of the Debtor, who will, under the terms of the Debtor's Operating Agreement owe fiduciary and reporting duties to the Debtor, and over whom the Debtor may still assert control, albeit with the requirement that the Court approve any action of the Debtor to terminate the Sales Officer. If the Debtor decides to terminate the Sales Officer, it would simply have to show why it was an exercise of the Debtor's reasonable business judgment. All of which, again, is authorized by New York state law.

2. The U.S. Trustee also adds a new argument in its supplemental Objection—that the Sales Officer is a receiver. This is simply not true. The Debtor remains in possession and control of the Residence and has control over the Sales Officer. Additionally, although the Sales Officer will be responsible for marketing the Residence, any sale of the Residence (just like any sale of Debtor property under section 363 of the Bankruptcy Code) requires Court approval after notice and opportunity for a hearing. Furthermore, nothing in the Bankruptcy Code prevents this Court's approval of the Debtor's appointment of the Sales Officer.

3. The U.S. Trustee acknowledges that "to maximize the value of the Primary Asset, time is of the essence, and that the sale needs to be conducted expeditiously." Chapter 11 Trustee Motion, 1. The U.S. Trustee, however, asserts that disagreements between the Debtor and its creditors have caused a delay in this case to the potential detriment of the stakeholders. The Debtor, Bravo Luck and PAX entered into the Settlement, and the Settlement

---

[2] Terms capitalized but not defined herein are as defined in the *Brief of Bravo Luck Limited in Support of Debtor's Amended Motion to Approve Attached Stipulation of Settlement with Bravo Luck and PAX* (ECF No. 99).

Motion was filed, over two and half months ago on March 5, 2021. The U.S. Trustee—a non-economic party—is the only party objecting to the Settlement and, thus, has been the roadblock in allowing this case to progress. Furthermore, the appointment of a chapter 11 trustee will only further delay this case and the marketing and sale of the Residence—likely causing the Debtor to miss the peak spring selling season. It is imperative for the Debtor to proceed with the marketing and sale of the Residence as soon as possible. The best way to promote that outcome is through approval of the Settlement Motion and appointment of the Sales Officer. Thus, Bravo Luck respectfully requests that this Court grant the Debtor's Settlement Motion, which is supported by all of the economic stakeholders in this case, and deny the U.S. Trustee's Chapter 11 Trustee Motion

## BACKGROUND

4.      The background related to the Debtor's bankruptcy case, the *Debtor's Amended Motion to Approve Attached Stipulation of Settlement with Bravo Luck and PAX* (ECF No. 62) (the "Settlement Motion"), the *United States Trustee's Motion for an Order Directing the Appointment of a Chapter 11 Trustee Pursuant to Section 1104 of the Bankruptcy Code* (ECF No. 64) (the "Chapter 11 Trustee Motion"), and Bravo Luck's related pleadings is set forth in previous pleadings related to the Settlement Motion and Chapter 11 Trustee Motion. *See* ECF Nos. 62, 64, 76, 81, 83, 86, 95, 96, 97, 99, and 101.

## REPLY

**A.    The Amended Settlement Does Not Render the Debtor Incapable of Carrying Out Fiduciary Duties Nor Does it Seek to Cast the Bankruptcy Court as the Debtor's Ultimate Manager**

5.      The Amended Settlement and appointment of the Sales Officer does not render the Debtor incapable of carrying out its fiduciary duties nor is the Settlement Motion asking the Court to appoint an "alternative fiduciary." The Debtor is not abdicating any of its rights under its Operating Agreement—it is simply delegating certain duties to the Sales Officer

-3-

as provided in the Operating Agreement and permitted under New York state law. The Debtor exercised its reasonable business judgment in entering the Amended Settlement and agreeing to delegate certain duties to the Sales Officer. Moreover, the Debtor retains control to oversee the Sales Officer, participate in the marketing and sales process, and make all other decisions regarding the Debtor's governance during this chapter 11 case. In fact, the Debtor has the ability to terminate the Sales Officer, upon notice and a Court order, as required by its Amended Operating Agreement and authorized by the New York Limited Liability Law. *See* NY LLC L § 417 (requiring an LLC's members to adopt a written operating agreement with provisions not contrary to law or the LLC's articles of organization relating to the LLC's business, conduct of its affairs, and "the rights, powers, preferences, limitations or responsibilities of its members, managers, employees or agents . . . ."); *see also infra* ¶ 14 (discussing an LLC's flexible structure as established by each LLC's operating agreement). If the Debtor chooses to terminate the Sales Officer, it would merely need to demonstrate that its decision was a reasonable exercise of its business judgment—the same standard that applies to any other decision the Debtor might make during this case.

6.      The U.S. Trustee argues that acrimony amongst the parties, in particularly the Debtor and PAX, goes beyond "healthy conflicts" and, thus, is cause to trigger appointment of a chapter 11 trustee. The U.S. Trustee has presented *zero* evidence that the acrimony between parties in this case rises to a level above the "healthy conflicts" that occur in every bankruptcy case. The U.S. Trustee merely recites allegations from prior motions of PAX, *which allegations have not been supported by any evidence introduced on the record and which allegations Bravo Luck strenuously contests*. Furthermore, PAX is not pressing its motions in light of the

-4-

#116376357 v2

settlement reached;[3] therefore, the U.S. Trustee is unable to introduce any evidence that such conflicts have stalemated this case.

7. The U.S. Trustee is seeking to use the PAX motions as a source of delay in this case and as support for appointment of a chapter 11 trustee. Ironically, however, given that the Settlement, which all economic parties support, was quickly reached after those motions were filed, it is the U.S. Trustee that is causing the Debtor's estate to expend significant resources and lose precious time relating to the sale of the Residence by contesting the Settlement.

8. For the first time in its Objection, the U.S. Trustee raises the argument that the Sales Officer is a "receiver" that cannot be appointed by this Court under section 105(b) of the Bankruptcy Code. The Sales Officer is clearly not a receiver or *de facto* receiver. First, the Debtor remains in possession and control of the Residence. Next, the Sales Officer is neither "preserving property of a debtor pending an action against him" nor "applying the property in satisfaction of a creditor's claim . . . ." Chapter 11 Trustee Motion, 11 (quoting BLACK'S LAW DICTIONARY (6th ed. 1990). The Sales Officer may be responsible for marketing the Residence, but as with all sales under section 363 of the Bankruptcy Code, the Court ultimately has the power to approve the sale with all interested parties having the right to object. Finally, in contrast to a receiver that typically can only be removed by a court, the Sales Officer can be removed by the Debtor.

9. The U.S. Trustee attempts to distinguish *In re Gaslight Club*, 782 F.2d 767 (7th Cir. 1986), by arguing that the *Gaslight* court (albeit *in dicta*) provided it would have

---

[3] If this Court denies the Settlement Motion and appointment of a Sales Officer, then an evidentiary hearing will be necessary as to all of the underlying assertions used by the U.S. Trustee in support of its Chapter 11 Trustee Motion. Again, no evidence has been introduced on the record that could support a finding of "cause" to appoint a chapter 11 trustee.

-5-

#116376357 v2

questioned the proposed procedure as a way to avoid trustee appointment, but that "the peculiar circumstances of the case before us as well as the consent on all sides to the procedure followed make this case different." *See* Chapter 11 Trustee Motion, 12-13 (quoting *Gaslight*, 782 F.2d at 772). Although *Gaslight* is extensively discussed in prior pleadings filed in this matter, it is important to further note, that the *Gaslight* court approved the agreement to appoint an independent third party pursuant to sections 105 and 1107(a) of the Bankruptcy Code, which agreement was supported by all major constituents. *See* 782 F.2d at 769-71. Thus, the "peculiar circumstances" present in the *Gaslight* case that led to that court's approval of "a grant of authority to a Responsible Officer," *id.* at 772, also appear to be present here, where all economic parties support the Settlement and oppose the Chapter 11 Trustee Motion.

10.  The U.S. Trustee also makes a half-hearted attempt at distinguishing *K.G. IM, LLC*, 620 B.R. 469 (Bankr. S.D.N.Y. 2020), by asserting that the Responsible Person appointed in that case was not an *in rem* receiver as will be the Sales Officer. *See* Chapter 11 Trustee Motion, 14, n. 7. As set forth above, the Sales Officer is not a receiver, which causes this attempt to distinguish *K.G. IM* to fail. Once again, the prior pleadings filed in this matter related to the Settlement Motion and Chapter 11 Trustee Motion detail how the *K.G. IM* case is analogous to the situation at issue in this case and supports approval of the Settlement.

11.  Despite *Gaslight* and *K.G. IM* providing case law support for the appointment of the Sales Officer, the U.S. Trustee argues that appointment of officers, such as CROs, is permitted under section 363(b) of the Bankruptcy Code, but "only under certain circumstances" and where the J. Alix Protocol is satisfied. *See* Chapter 11 Trustee Motion, 14-15. The J. Alix Protocol is "a national policy adopted by the U.S. Trustee whereby the U.S. Trustee assents to — indeed, directs — the retention of distressed management consultants by a debtor pursuant to section 363 of the Code as long as the firm complies with certain requirements contained in the Protocol." *In re Nine W. Holdings, Inc.*, 588 B.R. 678, 688 (Bankr. S.D.N.Y.

-6-

2018).  Importantly, however, "[t]he Protocol is not a provision of the Bankruptcy Code.  It is not law, and it is not binding on this Court or any other court."  *Id.* at 687-88.  In addition to the J. Alix Protocol not being part of the Bankruptcy Code or binding on this Court, it also does not apply to the appointment of the Sales Officer in this case.  The J. Alix Protocol arose "as a way to avoid conflicts of interest[,]" where a party attempting to be retained by an estate post-petition served in another capacity prior to the petition date and, thus, could not satisfy the disinterestedness standard under section 327 of the Bankruptcy Code.  *Id.* at 688-89.  In this case, there is no concern about potential conflicts of interest with respect to the proposed Sales Officer nor have any been asserted by the U.S. Trustee as the only objecting party.  Simply put, the J. Alix protocol demonstrates that the U.S. Trustee itself has supported alternative management structures not otherwise expressly provided for in the Bankruptcy Code.  Therefore, any argument based upon the J. Alix Protocol in opposition to the Settlement is misplaced.[4]

      **B.**      **Approval of the Amended Settlement is in Accordance with the Amended Operating Agreement and State Law**

      12.      The U.S. Trustee asserts that the parties to the Settlement Motion are requesting that the Court amend the Debtor's corporate governance documents and that the Settlement violates the Operating Agreement and state law.  Both assertions are invalid and unsupported by the record and relevant state law.

      13.      First, the Debtor, in accordance with state law and its Operating Agreement, (i) adopted formal resolutions approving the Settlement, (ii) hired (subject to Court approval) Judge Cyganowski (Ret.) as an employee in the capacity of the Sales Officer; (iii) delegated the duties and responsibilities set forth in the Settlement to the Sales Officer; and (iv)

---

[4] The U.S. Trustee's J. Alix Protocol argument is that the Sales Officer is not accountable to the Debtor's manager and that the Debtor waived its authority to terminate the Sales Officer without Court approval.  *See* Chapter 11 Trustee Motion, 15.  Those arguments are addressed elsewhere in this Reply.

amended section 9.3 of its Operating Agreement to provide that the appointment of Judge Cyganowski as Sales Officer cannot be revoked or terminated by the Debtor without Court approval.  *See* Resolution Ratifying and Approving Certain Actions Amending the Company's Operating Agreement of Genever Holdings, LLC (ECF No. 101).  Thus, by approving the Settlement, the Court is not entering an order effectively amending the Debtor's Operating Agreement because the Debtor already validly amended its Operating Agreement.  The Court will simply be approving the Settlement entered into by the Debtor in a reasonable exercise of its business judgment and authorized by its own Operating Agreement and state law as is required by Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code for actions involving estate property outside of the ordinary course of business.  *See* ECF No. 99 (explaining why the appointment and termination of the Sales Officer are outside the ordinary course of business and, thus, require Court approval).

14.    The U.S. Trustee cites section 402 of the New York Limited Liability Law, which relates to the "Voting rights of members[,]" as somehow being supportive of its argument that the Debtor's manager/member's authority extends to the sale of all or substantially all of the Debtor's assets.  *See* Chapter 11 Trustee Motion, 16-17.  The U.S. Trustee ignores completely that each cited subsection of section 402 of the New York Limited Liability Law begins with the phrase, "Except as provided in the operating agreement . . . ."  A key principle underlying the formation of limited liability companies is the freedom to contract to govern the company as the members and managers see fit.  *See*, *e.g.*, *LNYC Loft, LLC v. Hudson Opportunity Fund I, LLC,* 154 A.D.3d 109, 114 (1st Dept. Aug. 15, 2017) ("It is often said that LLCs are creatures of contract, and that [o]ne attraction of the LLC form of entity is the statutory freedom granted to members to shape, by contract, their own approach to common business relationship problems[.]") (internal quotations and citations omitted); *In re Pewzner*, 47 Misc.3d 1214(A), *4 (Surr. Court Kings Cty. Apr. 21, 2015) ("One of the basic principles underlying the

[New York] limited liability corporation law is that its members are permitted broad flexibility in structuring the limited liability company pursuant to an operating agreement."). This principle is not overridden by bankruptcy law.

15. Consistent with relevant state law, the Debtor had the authority to amend its Operating Agreement to include provisions of the Settlement, including the delegation of duties to the Sales Officer (section 9.3 of the Amended Operating Agreement), that the Sales Officer can be removed by the Debtor only upon notice and a Court order (*id.*), and that the Sales Officer owes a fiduciary duty to act reasonably in the best interests of the Debtor (section 9.4 of the Operating Agreement). The U.S. Trustee has not cited to any provision of state law that prevents the Debtor from taking such action nor does the Bankruptcy Code prevent the Debtor from abiding by the corporate governance rights afforded to it under state law.

C. **Section 1107(a) of the Bankruptcy Code Does Not Override State Law's Authorization of the Amended Settlement and Amended Operating Agreement**

16. While the Court may prescribe limitations or conditions on a debtor in possession's rights, powers, functions and duties under section 1107 of the Bankruptcy Code, *see Gaslight*, 782 F.2d at 769-71, the Court does not need to rely on section 1107 to approve the Settlement Motion and appointment of the Sales Officer. Moreover, while section 1104 of the Bankruptcy Code governs the appointment of a chapter 11 trustee, the Bankruptcy Code does not provide that no other alternatives are permitted. Namely, state law allows the Debtor to govern itself as it sees fit and to amend its Operating Agreement to so provide. That is exactly what the Debtor did here—it exercised its reasonable business judgment and fiduciary duty to enter into the Settlement Motion, appointed the Sales Officer as an employee of the Debtor over which it has control by properly authorized resolutions and amendments to its Operating Agreement, and now is simply asking this Court to approve the Settlement as an outside of the ordinary course action pursuant to Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Bravo Luck respectfully requests that the Court grant the Settlement Motion and deny the Chapter 11 Trustee Motion.

Dated: May 28, 2021
      Philadelphia, PA

TROUTMAN PEPPER HAMILTON SANDERS LLP

By: */s/ Francis J. Lawall*
Francis J. Lawall (PA Bar No. 43932)
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799
Telephone: (215) 981-4000
Facsimile:  (215) 981-4750
E-mail: francis.lawall@troutman.com

*Counsel for Bravo Luck Limited*