O'MELVENY & MYERS LLP
Stuart Sarnoff
Edward Moss
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2224
Email: ssarnoff@omm.com
        emoss@omm.com

-and-

FOLEY & LARDNER LLP
Douglas E. Spelfogel
Alissa Nann
90 Park Avenue
New York, NY 10016
Telephone:  (212) 682-7474
Facsimile: (212) 687-2329
Email: dspelfogel@foley.com
        anann@foley.com

*Attorneys for Pacific Alliance Asia Opportunity Fund L.P.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>GENEVER HOLDINGS LLC,<br><br>Debtor. | Chapter 11-<br><br>Case No. 20-12411 (JLG) |

**SUPPLEMENTAL RESPONSE OF PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P. IN OPPOSITION TO THE OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S APPLICATION TO EMPLOY A SALES OFFICER, AND REPLY IN FURTHER SUPPORT OF MOTION OF THE UNITED STATES TRUSTEE FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE PURSUANT TO SECTION 1104 OF THE BANKRUPTCY CODE**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 3

A.  The Settlement Agreement and Delegation to the Sales Officer Reflect a Permissible Exercise of the Debtor's Corporate Governance .............................................................. 3

B.  The UST Grossly Misinterprets and Misapplies Well-Established Authority Authorizing the Debtor's Appointment of the Sales Officer and the Court's Approval of the Same ..................................................................................................... 5

    1.  The Bankruptcy Court Has Considerable Authority Under §§ 105(a) and 1107(a) to Limit the Management of the Debtor-in-Possession to Protect Creditors' Interests ...................................................................................... 6

    2.  The UST Asserts the False Alternative that a Court May Only Limit a Debtor-in-Possession by Appointing a Trustee or Examiner Under § 1104 ................. 8

    3.  This Court Is Not Being Asked to Bypass State Corporate Governance Law ........... 10

    4.  The UST's Assertion of the "J. Alix Protocol" Is a Red-Herring ................................. 11

C.  There Is No Comparison Between the Sales Officer and a State Court Receiver ................... 13

CONCLUSION ....................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 1031 Tax Group, LLC*,
2007 WL 2085384 (July 17, 2007) ................................................................ 6, 10, 15

*In re 1031 Tax Group, LLC*,
374 B.R. 78 (Bankr. S.D.N.Y. 2007) ...................................................................6, 10

*In re 400 Madison Avenue Ltd. Partnership*,
213 B.R. 888 (Bankr. S.D.N.Y. 1997) ...................................................................15

*In re Adelphia Communs. Corp.*,
336 B.R. 610 (Bankr. S.D.N.Y. 2006) ...................................................................8, 9

*In re Bayou Group, L.L.C.*,
564 F.3d 541 (2d Cir. 2009) ...............................................................................14, 15

*In re Boileau*,
736 F.2d 503 (9th Cir. 1984) ..................................................................................9, 10

*In re Gaslight Club, Inc.*,
782 F.2d 767 (7th Cir. 1986) ...................................................................6, 7, 9, 14, 15

*In re Ignite Restaurant Group, Inc.*,
No. 17-33550 (Bankr. S.D. Tex. Jun. 28, 2017)......................................................13

*In re K.G. IM, LLC*,
620 B.R. 469 (Bankr. S.D.N.Y. 2020) ................................. 4, 5, 6, 7, 8, 9, 12, 14, 15

*In re Local Insight Media Holdings, Inc.*,
No. 10-13677 (Bankr. D. Del. Dec. 17, 2010; Feb. 11, 2011) .................................13

*In re Memorial Estates, Inc.*,
797 F.2d 516 (7th Cir. 1986) ...................................................................................15

*In re Nine W. Holdings, Inc.*,
588 B.R. 678 (Bankr. S.D.N.Y. 2018) ...............................................................11, 13

*In re Olympia & York Maiden Lane Co, LLC*,
233 B.R. 662 (Bankr. S.D.N.Y. 1999) ...................................................................15

*In re Pewzner*,
47 Misc.3d 1214(A) (Surr. Court Kings Cty. Apr. 21, 2015).....................................4

4811-6648-2923

*In re Ralph C. Tyler, P.E., P.S., Inc.*,
    156 B.R. 995 (Bankr. N.D. Ohio 1993) .......................................................................... 7

*S.E.C. v. Byers*,
    609 F.3d 87 (2d Cir. 2010)............................................................................................ 15

*In re Stillwater Asset Backed Offshore Fund Ltd.*,
    Case No. 12-14140 (ALG) (S.D.N.Y. 2013) ........................................ 5, 8, 13, 14, 15

*In re V. Savino Oil & Heating Co.*,
    99 B.R. 518 (Bankr. E.D.N.Y.) .................................................................................... 9

**Statutes**

Sections 105(a) and 1107(a) of the Bankruptcy Code.................................... 3, 6, 7, 14, 15

Section 327 of the Bankruptcy Code ............................................................................... 11

Section 1104 of the Bankruptcy Code .............................................................. 1, 7, 8, 9, 10

Section 363 of the Bankruptcy Code ................................................................... 11, 12, 13

Pacific Alliance Asia Opportunity Fund L.P. ("PAX"), by its undersigned attorneys, hereby files its supplemental response in opposition (the "Supplemental Response")[1] to the Objection of the United States Trustee (the "UST") to Debtor's Application to Employ a Sales Officer, and Reply in Further Support of Motion of the United States Trustee for the Appointment of a Chapter 11 Trustee Pursuant to Section 1104 of the Bankruptcy Code [Dkt. 94] (the "Objection" or "Obj."), and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      As detailed in the prior Motion, PAX Objection and Supplemental Brief, the Settlement Agreement represents a heavily negotiated, hard fought settlement by and among the Debtor and every major constituent in this Chapter 11 Case – PAX, Bravo Luck, the Sherry Netherland and the Debtor.  The Settlement Agreement provides the framework for an orderly and agreed process for administering the Chapter 11 Case and to protect and monetize the primary asset – the Residence.  Indeed, the primary and targeted focus of the Settlement Agreement and appointment of the proposed Sales Officer is to run a transparent (and successful) sale process in order to achieve the collective goal of maximizing value for the estate and all creditors – the foundational purpose of Chapter 11.

2.      As described in the Supplemental Brief, PAX is concerned that the window for achieving that purpose is slipping away.  The prime spring sale market in a resurgent New York City real estate market is fleeting and PAX fears that if the Settlement Agreement is not approved, the resulting delay and likely loss of value will be severely prejudicial.  Indeed, if the Settlement

---

[1] PAX previously submitted its objection [Dkt. 81] (the "PAX Objection" or "PAX Obj." to the UST's Motion to Appoint Trustee [Dkt. 64] (the "Trustee Motion") and its Supplemental Brief in (i) Further Support of Debtor's Amended Motion to Approve Stipulation of Settlement [Dkt. 62] (the "Motion") and (ii) Opposition to the U.S. Trustee's Objection to the Settlement Agreement [Dkt. 96] (the "Supplemental Brief" or "Supp. Br."), which are both fully incorporated herein by reference.  Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Supplemental Brief.

Agreement is not approved, PAX has reserved its right to move to dismiss the bankruptcy case, as PAX's forbearance to date has been due to the apparent consensus among all of the major stakeholders regarding the orderly sale of the Residence, as well as the resolution of the PAX Motions.

3.     Amazingly, by the Objection, the UST acknowledges that time is of the essence to market and sell the Residence, and that "a sale needs to be conducted expeditiously." Obj. at 1. The parties could not agree more, which is why a motion to approve the Settlement Agreement has been on file since February 26, 2021 – over three months ago. However, despite the UST's assertions that acrimony between the parties and multiple rounds of revisions to the Settlement Agreement are threatening the ability of the Debtor to quickly effectuate a sale of the Residence, *it is in fact the non-stakeholder UST that is jeopardizing this process*. Despite the parties' repeated best efforts to revise the Settlement Agreement and related motions to address the UST's concerns (although disputed), as well as the efforts of the Court at multiple hearings to cut to the heart of any remaining issues and move forward with a resolution and sale, the UST has consistently moved the goal post, shifting its issues and threatening what will (hopefully) result in a consensual and fruitful sale of the Residence and resolution of all other major issues in this Chapter 11 Case, to the benefit of the estate and all creditors.

4.     As set forth in detail below, the UST's Objection represents more of the same – raising *brand new and baseless* issues that are contrary to the facts and law.

- The UST erroneously argues that the Settlement Agreement violates relevant state law and the Debtor's Operating Agreement, and that in turn, the Court has no power to compel amendment of the Operating Agreement. However, as detailed in the Supplemental Brief, there is no request to compel the Debtor to amend its Operating Agreement. In addition, the Debtor's Resolution, among other things, expressly authorizes the Debtor to enter the Settlement Agreement, as amended, and amends the Operating Agreement – upon agreement of the Debtor (and its Member). The Resolution is entirely consistent with New York State law and moots the UST's arguments related to the *Debtor's* corporate governance.

2

- The UST argues that the Court has no authority under the Bankruptcy Code to approve the appointment of the Sales Officer. Such erroneous argument misapplies well-established law as this Court and others have repeatedly approved similar agreements appointing a third party officer to assume various duties and functions of a debtor-in-possession. Specifically, the UST creates a false alternative by arguing that the Court may only delegate a debtor-in-possession's authority to a trustee or examiner, ignoring not only the routine appointment of CROs (which are akin to the Sales Officer here), but the controlling precedent permitting a Debtor to delegate corporate powers as a matter of corporate governance.

- The UST similarly ignores the Court's well-established authority under §§ 105(a) and 1107(a) to limit the management of the debtor-in-possession to protect creditors' interests.

- The UST incorrectly argues that the Settlement Agreement does not comply with the so-called "J. Alix Protocol." However, to the extent such Protocol even applies here (which is disputed), it is easily satisfied under the circumstances of this case. Moreover, the UST arbitrarily applies such protocol here (assuming even applicable), despite previously agreeing before this Court to appointment of a CRO with many of the so-called "objectionable" terms.

- Finally, as a last-ditch effort to derail the Settlement Agreement, the UST argues that the Sales Officer is really a "de facto" state court receiver (apparently replacing its prior argument that the Sales Officer was a "de facto" trustee) that may not be appointed by the Bankruptcy Court. Such an argument does not withstand scrutiny. The Sales Officer is a duly appointed officer of the Debtor approved by every major stakeholder in this case, *including the Debtor*, akin to the type of responsible third parties routinely approved to assume key functions of a debtor-in-possession, and does not even resemble a state court receiver.

5.      Accordingly, for the reasons detailed below, and in the Motion, PAX Objection and Supplemental Brief, the UST's collateral attack on the Settlement Agreement should be overruled, and the Settlement Agreement approved as expressly authorized under the Debtor's corporate documents, state law and the Bankruptcy Code.

## ARGUMENT

### A.      The Settlement Agreement and Delegation to the Sales Officer Reflect a Permissible Exercise of the Debtor's Corporate Governance

6.      As described in the Supplemental Brief, the Debtor, by its Member, duly passed the Resolution, authorizing, *inter alia*, (i) entry into the Settlement Agreement as revised, (ii) retention of Judge Cyganowski as Sales Officer, and (iii) amendment of section 9.3 of its Operating Agreement

3

such that "the appointment of Judge Cyganowski as Sales Officer cannot be revoked or terminated, and Judge Cyganowski cannot be removed by the Company or its Member or Managers without an Order of the Bankruptcy Court." *See* Resolution, filed at Dkt. 101. Such amendment was duly authorized pursuant to section 23 of the Operating Agreement (which permits such amendment). *See*, Operating Agreement, section 23, filed at Dkt. 97-2. As fully briefed by PAX (*see* Dkt. 96, 3-6), the Debtor (*see* Dkt. 95, 4-6) and Bravo Luck (*see* Dkt. 98, 4-7), the Debtor's Resolution is a proper exercise of the its corporate authority under well-established New York State law. *See, e.g., In re Pewzner*, 47 Misc.3d 1214(A), *4 (Surr. Court Kings Cty. Apr. 21, 2015) ("One of the basic principles underlying the [New York] limited liability corporation law is that its members are permitted broad flexibility in structuring the limited liability company pursuant to an operating agreement."); *see also*, *In re K.G. IM, LLC*, 620 B.R. 469, 482 (Bankr. S.D.N.Y. 2020) (citing *In re Johns-Manville Corp.*, 801 F.2d 60 (2d Cir. 1986)) ("the shareholders' right to govern their corporation is a 'prerogative ordinarily uncompromised by reorganization' and that the 'law of this circuit directs that the shareholders' natural wish to participate in this matter of corporate governance be respected.'").

7.      By its Objection, the UST argues, among other things, that the Settlement Agreement violates the Debtor's Operating Agreement and therefore is not permitted under state law. Obj. at 16-18. However, all such arguments and concerns have been addressed and rendered moot by the Resolution.[2] For example, and importantly, the parties are not asking the Court to overturn state law or to amend the Operating Agreement. *Id.* at 17. Rather, as described, the Operating Agreement has already been amended by the Debtor (and its Member) to authorize the actions and terms embodied in the Settlement Agreement consistent with the Debtor's well-established corporate governance rights under New York State law. The parties are simply asking

---

[2] PAX notes that the UST filed its Objection before the Debtor filed the revised Settlement Agreement, its supplemental brief in support of the same, and the Resolution.

the Court to approve the Settlement Agreement and retention of the Sales Officer, as the

Bankruptcy Code requires.

**B.      The UST Grossly Misinterprets and Misapplies Well-Established Authority
Authorizing the Debtor's Appointment of the Sales Officer and the Court's Approval
of the Same**

8.      The UST concedes, as established above and in the Supplemental Brief, that post-

petition, the Debtor retains its right to hire and retain officers and other employees. *Id.* at 13.

However, the UST's argument that appointment of the Sales Officer is not authorized under the

Bankruptcy Code, misapplies well-established law in this District and elsewhere.

9.      As an initial matter, this Court (and others) have overwhelmingly supported similar

agreements appointing an independent third party officer to assume various duties and functions of

a debtor-in-possession.  For example, in *K.G. I.M.,* this Court approved a settlement that resolved a

secured creditor's stay relief motion by appointing a CRO to operate and manage the debtors in

their Chapter 11 cases.  620 B.R. at 475-76.  In *K.G. IM*, this Court approved – indeed, *encouraged –*

the agreement reached by the parties, holding that the stipulation and order was within the  "sound

exercise of the [d]ebtor's business judgment" and would result in "reasonable and appropriate relief"

where the debtor and creditor had a contentious relationship.  *Id.* at 485.

10.      Similarly, an analogous agreement was approved by this Court in *In re Stillwater Asset

Backed Offshore Fund Ltd.*, Case No. 12-14140 (ALG) (S.D.N.Y. 2013) ("*Stillwater*"), where the

creditors' committee filed a motion to appoint a Chapter 11 trustee based on similar alleged conduct

as that raised in the PAX Motions.  To avoid costly and protracted litigation, the debtor and

creditors' committee settled the pending issues through appointment of an independent third party

restructuring officer.  Notably, in Stillwater, the U.S. Trustee signed off on such agreement, which

was approved by this Court.  *Stillwater*, Dkt. 70.  Here, as in *Stillwater*, the appointment of an

independent third party Sales Officer, is an appointment by the Debtor, approved by all major

stakeholders, to resolve contested issues and avoid engaging in costly and time-consuming litigation, and should similarly be approved.

11.    Moreover, Courts have consistently held that the appointment of an independent third party officer, such as the Sales Officer here, is an appropriate measure to address a debtor's issues in lieu of appointing a Chapter 11 trustee.  For example, in *1031 Tax Grp.*, 374 B.R. 78, 88-90 (Bankr. S.D.N.Y. 2007), this Court denied the U.S. Trustee's motion to appoint a Chapter 11 trustee finding that notwithstanding the debtors' bad acts prepetition, it was not necessary to appoint a trustee because of the appointment of a CRO.  Similarly here, *as agreed by the Debtor and all major creditors and parties in interest*, the Settlement Agreement and appointment of the Sales Officer sufficiently address the concerns raised by the UST and are fair, reasonable and in the best interests of the estate.

1.    **The Bankruptcy Court Has Considerable Authority Under §§ 105(a) and 1107(a) to Limit the Management of the Debtor-in-Possession to Protect Creditors' Interests**

12.    The UST argues that appointment of the Sales Officer is not authorized under Bankruptcy Code §§ 105(a) or 1107(a) (Obj. at 13) – *an argument that has been squarely rejected by this Court*.  The UST cites to this Court's decision in *K.G. IM* and specifically, to a citation to a footnote in *In re 1031 Tax Group, LLC*: "[s]ections 105(a) and 1107(a) may empower a bankruptcy court to prevent a debtor from removing a manager, officer, or director, but they do not provide the Court with an independent power of appointment."  No. 07-11448 (MG), 2007 WL 2085384, *3 n. 4 (Bankr. S.D.N.Y. July 17, 2007).  Importantly, this Court's reference to that footnote was for the purpose of *rejecting the exact same argument made by the U.S. Trustee in that case*.  Specifically, in *K.G. IM*, this Court found that "[t]he UST relies on a footnote from [*1031 Tax Group*] for the proposition that the Court lacks the power to appoint a 'responsible person.'"  *Id.*  The Court then held, "[t]he UST

misreads that footnote, which includes a discussion of *In re Gaslight Club, Inc.*, 782 F.2d 767 (7th Cir.

1986)." The Court explained:

> In *Gaslight*, as here, the debtor's principal agreed with creditors to the
> appointment of a third party 'to exercise its debtor in possession powers.' When
> the debtor's principal later changed course and sought to oust the third party, the
> court refused to appoint an alternative. **The initial designation of a**
> **responsible third party, with the consent of debtor and creditor, was**
> **permissible**; it was the subsequent attempt at replacement that was not.

*Id.* at 483 (emphasis added) (citations omitted). Accordingly, this Court in *K.G. IM* affirmed its

approval of a stipulation and order appointing a CRO, holding such appointment appropriate and

*not* prohibited by the Bankruptcy Code. *Id.*

13.     Indeed, the holding in *Gaslight* *directly contradicts the UST's position here*:

> Sections 105(a) and 1107(a) of the Bankruptcy Code provide adequate authority
> for the bankruptcy court to approve the replacement of the person designated to
> perform the duties and exercise the rights of the debtor in possession if the
> creditors' committee, the person presently in control and the majority and
> controlling shareholder of the debtor agree to this course of action.

*Gaslight,* 782 F.2d at 771 (emphasis added). Critical to the *Gaslight* decision was the fact that, like

here, all major constituents in the case approved the agreement. *Id.* The court held that because of

the agreement of the parties to designate an independent third party, there was no need to appoint a

trustee. *Id.* (As described below, the UST's attempt to distinguish *Gaslight* is futile.)

Moreover, and significantly, the UST's *own authority* confirms the holding in *Gaslight* and

courts' broad grant of authority under §§ 105(a) and 1107(a) to approve changes to the management

of a debtor-in-possession. *See In re Ralph C. Tyler, P.E., P.S., Inc.*, 156 B.R. 995, 997 (Bankr. N.D.

Ohio 1993) (citing *Gaslight*, 782 F.2d at 770; 11 U.S.C. 105(a) and 1107(a)) ("Finally, the Bankruptcy

Court has considerable authority to interfere with management of the DIP to protect creditors'

interests.").

Accordingly, consistent with the long line of cases approving a similar third party officer and responsible person, the Court has clear authority under §§ 105(a) and 1107 (a) to approve the appointment of the Sales Officer here.

**2.      The UST Asserts the False Alternative that a Court May Only Limit a Debtor-in-Possession by Appointing a Trustee or Examiner Under § 1104**

14.      The UST also renews its misguided argument that the Court's only authority to limit the debtor-in-possession is the authority to appoint a chapter 11 trustee or examiner under § 1104. Obj. at 13.  However, as detailed in the PAX Objection and Supplemental Brief, this Court and others throughout the country have routinely appointed a third party restructuring officer – *not a trustee or examiner* – to assume certain powers and obligations of a debtor-in-possession.  *See, e.g.,* PAX. Obj. at 7-10; *K.G. IM, Stillwater and 1031 Tax Group, supra*.  Indeed, the UST contradicts its own false alternative (*i.e.*, a purported binary choice between a chapter 11 trustee and examiner) by admitting that the Court may approve appointment of a CRO.  Obj. at 14.

15.      In so arguing, the UST relies first on *In re Adelphia*, which this Court expressly rejected as a bar to the appointment of a CRO:

> At issue in the *Adelphia* decision was an attempt by a Noteholders Committee to seek recusal by the debtors' directors and to foist an 'alternative fiduciary' on the debtors in lieu of a chapter 11 trustee. That is not the case here, however, where the Court has neither been asked to remove the Debtors' management nor appoint an independent fiduciary.  Rather, BSP and the Debtors have requested that the Court approve a consensual delegation of authority by the Debtors' former management to an independent CRO.

*K.G. I.M.*, 620 B.R. at 482.  **The same is true here**.  By the Settlement Agreement, the parties are not seeking to remove and unilaterally "foist" a fiduciary on the Debtor.  To the contrary, under the Settlement Agreement, every major stakeholder in this Chapter 11 Case requests that the Court approve a consensual delegation of authority *by the Debtor* to an independent third party officer.

8

16.     The UST also takes this Court's holding in *Adelphia* completely out of context by stating that "the court might be 'altogether forbidden' from using section 1107(a) to impose limitations on the rights of a DIP that circumvented other sections of the Bankruptcy Code, such as section 1104." Obj. at 19.  In *Adelphia*, however, this Court only suggested that § 1107 may not be available to circumvent other Code sections such as to appoint a fiduciary "after denial of a request to appoint a trustee." *In re Adelphia Communs. Corp.*, 336 B.R. 610, 666 (Bankr. S.D.N.Y. 2006).  That has obviously not happened here.  As this Court found in *K.G. IM* in rejecting a similar argument by the U.S. Trustee there, no one is seeking to "foist an alternative fiduciary" on the Debtor; rather, the parties request approval of their consensual delegation to the Sales Officer per the Settlement Agreement.  Indeed, in *Adelphia*, the Court cited *Gaslight* as authority under § 1107(a) for "displacing a debtor in possession with a nontrustee only where there was consent, and suggesting that the presence of consent to it was the controlling factor." *Id.* (citing *Gaslight*, 782 F.2d 767 (approving replacement of debtor's president and majority shareholder as individual exercising debtor in possession powers, without appointing a trustee, but where the individual who had been replaced consented to it.))  Similarly here, *unanimous* consent exists under the Settlement Agreement to appoint the Sales Officer.

17.     The UST further relies on *In re V. Savino Oil & Heating Co.*, 99 B.R. 518 (Bankr. E.D.N.Y.) and *In re Boileau*, 736 F.2d 503, 506 (9th Cir. 1984) – neither of which support the UST's false assertion that "Congress has provided [only] two ways to eliminate or reduce management's control while allowing the case to remain in chapter 11." Obj. at 19.  *Savino* merely confirms a court's authority to appoint a chapter 11 trustee under § 1104(a)(1) – it does *not* limit a court to § 1104 or any particular means for delegating the power of a debtor-in-possession.  99 B.R. at 525-26.  Similarly, *Boileau* addresses the power of an examiner appointed under § 1104 without placing any limitations on the Court.  Further, in *Boileau*, the examiner had expanded powers based on a

9

stipulation among the parties to avoid designation of a trustee.  736 F.2d at 506.  By analogy here, the Sales Officer was appointed by the agreement of all parties to resolve objections raised, including the PAX Motions.  In addition, in *Boileau*, the court confirmed that "the Official Committee of Unsecured Creditors has been given the authority to carry out many of the functions of a debtor in possession and trustee" – *directly contradicting the UST's false alternative that only a trustee or examiner may carry out powers of a debtor-in-possession.  Id.*[3]

18.     Accordingly, the UST's false alternative between *only* a Chapter 11 trustee or examiner is a fiction not grounded in law.  This Court and other courts have consistently confirmed appointments of similar third party officers in lieu of a trustee or examiner, consistent with well-established law.

**3.     <u>This Court Is Not Being Asked to Bypass State Corporate Governance Law</u>**

19.     The UST's further reference to *In re 1031 Tax Group, LLC*, 2007 WL 2085384, in the context of state corporate governance rights is entirely misplaced.  That *1031* decision approved the appointment of debtor's sole manager and director, not its CRO, which was approved in the separate opinion *In re 1031 Tax Group, LLC*, 374 B.R. 78.  Irrespective, however, the UST cites *1031* here for the unremarkable (and undisputed) proposition that such positions (manager or director) – while not at issue here – are creatures of state law governed by applicable state law.  Obj. at 15.  The UST then quotes that portion of the decision holding that "[t]he Bankruptcy Code does not authorize the bankruptcy court to fill these positions, or to bypass the procedures that the state statutes mandate."  *Id.*  However, as detailed above and in the Supplemental Brief, the Debtor exercised its corporate governance rights under well-established New York State law and the Operating Agreement to appoint the Sales Officer and delegate certain authority to the Sales Officer.

---

[3] While entirely irrelevant, contrary to the UST's assertion, *Boileau* does not create any distinction between § 1106(b) and § 1107(a) related to the power of an examiner appointed under § 1104.

4811-6648-2923

*See*, § A, *supra*; Supp. Br. § A. The parties do *not* ask the Court to bypass those laws and procedures or to order amendments to or otherwise interfere with the Debtor's corporate governance documents, as the UST inexplicably suggests. *See Obj. at 15.* Rather, by the Motion, the parties seek approval of their Settlement Agreement and the Debtor's appointment of the Sales Officer.

### 4.    The UST's Assertion of the "J. Alix Protocol" Is a Red-Herring

20.    The UST further raises the so called J. Alix Protocol ("Protocol") as yet another attempted roadblock to the appointment of the unanimously agreed to Sales Officer here. As an initial matter, as noted by Judge Chapman in her *Nine West* decision, "[t]he Protocol is not a provision of the Bankruptcy Code. It is not law, and it is not binding on this Court or any other court.*" In re Nine W. Holdings, Inc.*, 588 B.R. 678, 687-88 (Bankr. S.D.N.Y. 2018).

21.    In any case, however, the circumstances surrounding the concerns which led to the development of the Protocol – avoiding undue influence by a director in the hiring of professionals – are simply not present here.[4] The professional being retained – Judge Cyganowski – is a bankruptcy attorney, appointed with the agreement of the major stakeholders, including the Debtor, who will serve in a limited capacity as Sales Officer for the limited purpose to market and sell the Residence.

22.    In addition, to the extent applicable, the other terms of the Settlement Agreement satisfy the spirit of the Protocol, *i.e.*, (a) Judge Cyganowski (and limited members of her firm (Otterbourg), engaged by her as Sales Officer solely to provide assistance in her role as Sales

---

[4] The Protocol was "designed to prevent a party from using its position in one capacity to benefit itself in another capacity." *Nine W. Holdings*, 588 B.R. at 688. The Protocol "began as a settlement agreement executed in 2004 between the U.S. Trustee and Jay Alix & Associates … it has developed into a national policy adopted by the U.S. Trustee whereby the U.S. Trustee assents to – indeed, directs – the retention of distressed management consultants by a debtor pursuant to section 363 of the Code as long as the firm complies with certain requirements contained in the Protocol . . . *the Protocol has served as a way to avoid conflicts of interest. Id.* (emphasis added). More specifically, the Protocol's "one hat" rule (which requires that the firm sought to be retained serve the debtor in only one capacity) is designed to avoid the "inherent conflict" between an advisor's duty to a debtor and its own business interests where the advisory firm serves both as a financial advisor retained pursuant to section 327 of the Bankruptcy Code and as a crisis manager with firm staff serving as officers of the debtor corporation." *Id.* (emphasis added).

4811-6648-2923

Officer), will serve in only one capacity with respect to the Debtor; (b) the Sales Officer retention application was filed under section 363 of the Bankruptcy Code and provided the requisite disclosures regarding disinterestedness; and (c) the Sales Officer and Otterbourg will file monthly staffing reports, subject to Court review.

23.     Further, the UST's argument, first that the Sales Officer is accountable to no one, and now that this makes the "Court the ultimate manager of the Debtor" (Obj. at 15) is without merit.  As initial matter, as provided above, the Debtor is free to delegate any and all powers or authority to its officers and agents as a matter of corporate governance (including, with respect to decision making, voting rights, etc.).  Here, the Debtor's sole Member has expressly approved the delegation of authority as provided under the Settlement Agreement.  The UST may not interfere with such internal corporate governance matters under controlling precedent.  *See K.G. IM,* 620 B.R. at 482 (citing *Johns-Manville,* 801 F.2d 60) ("the shareholders' right to govern their corporation is a 'prerogative ordinarily uncompromised by reorganization'").

24.     Indeed, even if control of the sale process remained completely with the Debtor, the Court would have to approve the sale of the Residence under Section 363 of the Bankruptcy Code. Similarly, the Court also would approve the retention of officers and other professionals, fee applications, broker retentions, etc.  As such, the Court is not being asked to do anything out of the ordinary here.  With respect to the termination of the Sales Officer, the need for Court approval is also not out of the ordinary, just as court approval is sought for the engagement, termination should likewise be subject to court approvals.  *See, e.g., K.G. IM*, Application to Retain/Designate CRO, 20-11723 (MG), [Dkt. 84-1, Ex. 1 (retention agreement), **attached hereto as Exhibit A**; approved at Dkt. 166] (retention agreement provides the CRO is sole representative of the debtor (section 2), and that the CRO can only be terminated with bankruptcy court approval (section 11)); *Stillwater*, Application to Retain CRO, 12-14140, [Dkt. 65-2, Ex. A (management agreement), **attached hereto**

12

**as Exhibit B**; approved at Dkt. 70] (management agreement provides that the CRO can only be

terminated with bankruptcy court approval (section 7. In fact, the UST consented to the

appointment of the CRO in Stillwater before this Court, notwithstanding the provision that the

CRO may not be terminated without court order.

25.     Such arbitrary application of the so-called Protocol was criticized by Judge Chapman

in *Nine West*. Therein, despite the UST's assertions to the contrary, as noted by the Court in *Nine*

*West*, insolvency advisors have been retained pursuant to section 363(b) and in accordance with the

Protocol, not just to provide a CRO to debtors, but to serve as additional officers of the debtors,

including in roles such as Interim Chief Executive Officer, Interim Chief Financial Officer, Interim

Chief Operating Officer, and Interim Vice President of Finance, and to provide additional personnel

to assist such officers. *Nine W. Holdings,* 588 B.R. at 687 (*citing In re Angelica Corp.,* No. 17-10870

(Bankr. S.D.N.Y. May 4, 2017) [Dkt. No. 149]; *In re Ignite Restaurant Group, Inc.,* No. 17-33550

(Bankr. S.D. Tex. Jun. 28, 2017) [Dkt. No. 255]; *In re Local Insight Media Holdings, Inc.,* No. 10-13677

(Bankr. D. Del. Dec. 17, 2010; Feb. 11, 2011) [Dkt. Nos. 162, 333].

26.     In *Nine West*, Judge Chapman declined to elevate form over substance in the manner

sought by the U.S. Trustee. Instead, she concluded that rehabilitating a debtor and preserving the

value of the debtor's business – significant Code-related objectives – can be best accomplished here

by permitting the Debtors to utilize their estate assets under section 363 of the Code to hire the

advisory services firm and its personnel who played key management roles at the company

prepetition, thus ensuring the continuity of such services. *Nine W. Holdings*, 588 B.R. at 689-91.

**C.     There Is No Comparison Between the Sales Officer and a State Court Receiver**

27.     The UST tries one last-ditch attempt to avoid the agreement of the parties to appoint

the Sales Officer, arguing for the first time that the Sales Officer is a "de facto Receiver" (an

apparent shift from its initial argument that the Sales Officer is a "de facto" trustee), which may not

13

be appointed by the Bankruptcy Court under Bankruptcy Code § 105(b). Obj. at 10-12. However, such characterization of the Sales Officer was dead on arrival. While the UST relies on so-called "striking similarities" between a state court appointed receiver and the Debtor's duly appointed Sales Officer, the Sales Officer is clearly akin to the type of responsible third parties this Court previously approved in *K.G. IM*, *Stillwater and 1031 Tax Group*, and that the Seventh Circuit approved of in *Gaslight*. The UST portrays a situation where PAX has unilaterally petitioned for the Sales Officer as a means to wrest control of the process away from the Debtor for its own advantage, as is often the case with a state court receivership (which the UST specifically relies on here). *But nothing could be further from reality*. The appointment of the Sales Officer is the result of arm's length negotiations and unanimous consent by PAX, Bravo Luck, the Sherry Netherland *and the Debtor*. In *K.G. IM*, this Court pointed to the importance of such consent by the parties, which the Seventh Circuit relied on in *Gaslight*. 620 B.R. at 483. Indeed, like the appointments in those previous cases, the Sales Officer will assume certain responsibilities and powers of the Debtor, will make decisions related to the sale of the Residence in consultation with the Debtor and other interested parties, and will ultimately be required to seek Court approval of the sale (just as the Debtor, or an appointed trustee would). The foregoing also ensures that the sale process will be handled with integrity, and that the primary assets will be properly marketed and preserved for the benefit of all creditors.

28.     Not surprisingly, the cases cited by the UST are simply inapplicable to the facts of this case. While they include references to § 105(b)'s bar on receivers, they do *not* hold that the Court is barred from appointing a responsible third party, selected with *unanimous* consent by all the major stakeholders in this Chapter 11 Case. Indeed, in *In re Bayou Group, L.L.C.*, 564 F.3d 541, 548 (2d Cir. 2009) (affirming the District Court decision cited by the UST), the Second Circuit rejected the U.S. Trustee's "collateral attack on the Order" and motion to appoint a Chapter 11 trustee to replace the receiver, because the receiver was not only appointed as receiver, "but also as 'new

14

management of the debtors' with the authority and capacity to manage the bankruptcy proceedings as the debtor-in-possession."  In upholding the District Court's order and appointment, the Second Circuit pointed out that (*like the Settlement Agreement here*) the appointment was authorized under the law, and the receiver's efforts in the bankruptcy proceedings "have been endorsed by all of [the debtor's] creditors."  *Id.* at 544-45.[5]

29.    The UST also addresses *Gaslight* here, conceding, as detailed above, that the Seventh Circuit confirmed that §§ 105(a) and 1107(a) support granting authority to a responsible officer, as the Sales Officer is here.  Obj. at 12.  However, in an apparent attempt to limit that holding in *Gaslight* (which has been repeatedly confirmed by this Court), and generally obfuscate the actual facts here, the UST cites to *In re Memorial Estates, Inc.*, 797 F.2d 516 (7th Cir. 1986) – *a case that has absolutely nothing to do with Gaslight*.  *Memorial Estates* does not address *Gaslight* or its holding and does not address §§ 105(a) or 1107(a).  Rather, *Memorial Estates* is another entirely irrelevant case, as those described above, affirming the appointment of a receiver outside of bankruptcy, while observing that under § 105(b), a Bankruptcy Court may not appoint a receiver.  *Memorial Estates*, 797 F.2d at 519.  Notwithstanding, in a bizarre non-sequitur, the UST states: "[i]n light of the ruling in *Memorial Estates*, regarding the appointments of receivers under section 105(b), the parties' reliance on the ruling in *Gaslight* which addresses a different kind of officer, is misplaced."  Obj. at 13. As discussed above, this however, has nothing to do with *Gaslight*.  For all of the reasons described above, the duly appointed Sales Officer is a responsible third party officer of the same type appointed in *Gaslight, K.G. IM, Stillwater* and *1031 Tax Group*.  *Memorial Estates* and other decisions regarding state court receivers have absolutely no relevance or applicability here and should be disregarded.

---

[5] Similarly, none of the other cases relied on by the UST – *S.E.C. v. Byers*, 609 F.3d 87 (2d Cir. 2010), *In re 400 Madison Avenue Ltd. Partnership*, 213 B.R. 888 (Bankr. S.D.N.Y. 1997) and *In re Olympia & York Maiden Lane Co, LLC*, 233 B.R. 662 (Bankr. S.D.N.Y. 1999) – bar appointment of a responsible third party to assume responsibilities of the debtor-in-possession and all involved prepetition receivers who were authorized to maintain their powers in the bankruptcy case.

15

30.     In closing, and significantly, all of the major stakeholders in this case agree that appointment of the Sales Officer is the best way to resolve their disputes and maximize value of the Debtor's sole asset for the benefit of the estate and all creditors.  This Court has already approved similar appointments, and should do so in this case as well in the interests of all creditors and to avoid unreasonable delay and loss of the value of the assets, which would be severely prejudicial.

## CONCLUSION

For all of the reasons stated above and in the PAX Objection and Supplemental Brief, and while reserving all other rights and remedies, PAX respectfully requests that this Court: (i) overrule any objection by the UST to the Settlement Agreement and appointment of the Sales Officer, (ii) grant the Motion approving the Settlement Agreement and appointment of a Sales Officer as provided for therein, and (iii) grant such other and further relief as the Court may deem just and proper.

Dated:  May 28, 2021
         New York, New York

Respectfully submitted,

**O'MELVENY & MYERS LLP**

_____/s/ Edward Moss_____
By: Edward Moss
    Stuart Sarnoff
    7 Times Square
    New York, NY 10036
    Telephone: (212) 326-2000
    Email: emoss@omm.com
           ssarnoff@omm.com

-and-

**FOLEY & LARDNER LLP**

_____/s/ Douglas Spelfogel_____
By: Douglas E. Spelfogel
    90 Park Avenue
    New York, NY 10016
    Telephone: (212) 338-3566
    Email:  dspelfogel@foley.com

16

anann@foley.com

*Attorneys for Pacific Alliance Asia Opportunity Fund L.P.*

4811-6648-2923