# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) CHAPTER 11 |
| | ) |
| K.G. IM, LLC, *et al.*,[1] | ) |
| | ) CASE NO. 20-11723 (MG) |
| Debtors. | ) |
| | ) (Jointly Administered) |

**DECLARATION OF CRAIG M. BOUCHER IN SUPPORT OF**
**DEBTORS' APPLICATION FOR AN ORDER TO (I) EMPLOY AND RETAIN**
**MACKINAC PARTNERS, LLC AND (II) DESIGNATE CRAIG M. BOUCHER AS**
**CHIEF RESTRUCTURING OFFICER, EFFECTIVE AS OF AUGUST 14, 2020**

Pursuant to 28 U.S.C. § 1746, I, Craig M. Boucher, declare that the following is true to the

best of knowledge, information and belief:

1.      I am a Senior Managing Director Mackinac Partners, LLC ("**Mackinac**"), which

has offices located at 74 W Long Lake Road, Suite 205, Bloomfield Hills, MI 48304.

2.      I submit this declaration (the "**Boucher Declaration**") in support of the Debtors'

*Application for an Order to (I) Employ and Retain Mackinac Partners, LLC and (II) Designate*

*Craig M. Boucher as Chief Restructuring Officer, Effective as of August 14, 2020* (the

"**Application**") pursuant to the terms and conditions of that certain engagement letter, dated

August 18, 2020 (the "**Engagement Letter**," attached hereto as **Exhibit 1**) between Mackinac and

the Debtors.

3.      Except as otherwise noted, I have personal knowledge of the matters set forth herein

and, if called as a witness, I would testify thereto.  Certain of the disclosures herein, however,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if any), include: K.G. IM, LLC (8556); Il Mulino USA, LLC (1682); IM LLC – III (2613); IMNYLV, LLC (9805); IM NY, Florida, LLC (9385); IM NY, Puerto Rico, LLC (0901); IMNY AC, LLC (5082); IM Products, LLC (0303); IM Long Island Restaurant Group, LLC (1623); IM Long Island, LLC (1488); IM Franchise, LLC (0565); IM 60th Street Holdings, LLC (9997); IM Broadway, LLC (4335); IMNY Hamptons, LLC (0423) and IM Payroll, LLC (0807).  For the purpose of these chapter 11 cases, the service address for the Debtors is: 1761 Yardley Langhorne Rd Yardley PA 19067.

relate to matters within the personal knowledge of other professionals at Mackinac and are based on information provided by them.

<u>**MACKINAC QUALIFICATIONS**</u>

4.  Mackinac has a wealth of experience in providing financial advisory services to distressed companies, including those in industries similar to the Debtors, in complex restructurings. Mackinac has an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States. Mackinac's expertise includes significant experience assisting distressed companies with day-to-day management activities, including development of pro forma financials and business plans, cash flow management, and implementation of liquidity-enhancing and cost-saving strategies.

5.  Mackinac is a leading financial advisory and turnaround management firm that delivers a broad range of interrelated strategic and financial advisory services. Specifically, Mackinac' services include, without limitation, restructuring and bankruptcy turnaround consulting, merger and acquisition services, interim and crisis management, capital and creditor advisory, asset management, and sales and dispute advisory services. Mackinac' extensive services help companies and their stakeholders, at any point in the business cycle, develop and implement creative operating and financial solutions to achieve a more stable and responsive operating environment, support future growth, maximize value, and increase productivity.

6.  Mackinac has significant qualifications and experience in these matters and an excellent reputation for providing high quality, specialized management, and restructuring advisory services to debtors, creditors, and investors in complex chapter 11 cases and other restructurings, both in and out of court. Since its inception in 2000, Mackinac has become a national provider of such services to companies in crisis or those in need of performance

improvement in specific financial and operational areas, including, without limitation: Penske Truck Leasing, Norwood Promotional Products, National City, Sunterra, USA Capital, R.E. Loans LLC, Diamond Resorts International, Pacific Monarch Resorts, and PlayPower Holdings.

7.      I am well-qualified to serve as the Debtors' Chief Restructuring Officer. I am a Senior Managing Director at Mackinac Partners and have over 25 years of diversified business experience including serving as a partner in a national restructuring firm and as managing director in an international accounting firm. I have extensive experience in guiding companies through periods of change and turmoil and am nationally recognized as a leading turnaround executive. I have been involved in all aspects of the reorganization process, including the development and negotiation of complex capital structure solutions, formulating and evaluating strategic business plans, developing and implementing short-term turnaround strategies, and helping companies mitigate crisis solutions.

8.      I have considerable experience working with senior management teams in the areas of financial and operational restructuring, loan workouts and business planning. Some of my more notable cases include, Brookstone, Fredericks of Hollywood, Winn Dixie, Macaroni Grill, Logan's Roadhouse and Charlie Browns Steakhouse.

9.      Mackinac is uniquely qualified to advise the Debtors in these chapter 11 cases. I, along with a team of Mackinac professionals, began providing the Debtors with advisory assistance in July 2019 and joined its management team as Chief Financial Officer pursuant to that certain engagement letter dated September 26, 2019. In doing so, the Mackinac team and I became familiar with the Debtors' businesses, financial affairs and capital structure. Since our initial engagement, the Additional Personnel (defined below) and I have worked closely with the Debtors' management and other professionals to understand the Debtors' businesses and

coordinate the necessary professional services and other vital aspects of preparing for these chapter 11 cases.

10. On August 14, 2020, the Bankruptcy Court entered the *Stipulation & Order Appointing Chief Restructuring Office and Establishing Operating Protocol for the Debtors* appointing me as CRO for the Debtors (Docket No. 60; the "**CRO Appointment Order**"). The CRO Appointment Order provides, among other things, that I shall be the sole representative of all of the Debtors' estates and shall be exclusively vested with all of the powers and duties to operate the Debtors' businesses pursuant to Bankruptcy Code Sections 1107 and 1008 and in accordance with, and subject to, the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, and the Local Rules of Bankruptcy Procedure.

11. I believe that Mackinac and I are qualified to provide services to the Debtors in these chapter 11 cases.

## MACKINAC'S DISINTERESTEDNESS

12. In connection with its proposed retention by the Debtors in these chapter 11 cases, Mackinac undertook to determine (a) whether it had any relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors and (b) all "connections" (as such term is used in Bankruptcy Rule 2014) to the Debtors, their creditors, other parties in interest, the United States Trustee or any person employed in the Office of the United States Trustee (the "U.S. Trustee").

13. To check potential relationships and connections in these chapter 11 cases, Mackinac searched its client database to determine whether it had any relationship or connection with the entities identified by the Debtors or their representatives as potential parties-in-interest listed on **Exhibit 2** hereto (collectively, the "**Potential Parties in Interest**"), the results of which,

with details describing any connections, are listed on **Exhibit 3** hereto ("**Mackinac's Connections
With Potential Parties**"). As part of this inquiry, Mackinac did not identify any connections that
would cause it not to be disinterested or to hold or represent an interest adverse to the Debtors.

14.    During the ninety (90) days prior to the Petition Date, Mackinac received $150,000
in retainer payments from the Debtors for services to be provided.  Mackinac currently holds
$120,901.69 in unapplied advance payments from the Debtors (the "**Retainer**").  Mackinac has
agreed to hold the Retainer and apply the Retainer against its postpetition fees and expenses
incurred from and after August 14, 2020 (the "**Appointment Date**") as they become payable in
accordance with the orders of this Court prior to seeking payment of such fees and expenses from
the Debtors, with any balance to be returned to the Debtors.

15.    As of the Petition Date, Mackinac was owed $179,700.38 for services rendered to
the Debtors prepetition.  Mackinac has agreed to waive all claims for payment of amounts owed
by the Debtors to Mackinac in connection with services rendered by Mackinac prior to the
Appointment Date.

16.    Mackinac is involved in a number of cases, proceedings, and transactions involving
many different attorneys, accountants, investment bankers, and financial consultants, some of
whom may represent claimants and parties-in-interest in these chapter 11 cases.  Moreover,
Mackinac has in the past, and may in the future, be represented by several attorneys and law firms,
some of which may be involved in these chapter 11 cases. Finally, Mackinac has in the past, and
will likely in the future, be working with or opposite other professionals involved in these chapter
11 cases with respect to matters wholly unrelated to these chapter 11 cases. Based on our current
knowledge of the professionals involved in these chapter 11 cases and to the best of my knowledge,
none of these business relationships constitute interests adverse to the estates in matters upon

which Mackinac is to be employed and none are in connection with these chapter 11 cases.

17.     The Debtors have numerous creditors and relationships with a large number of individuals and entities that may be parties-in-interest in these chapter 11 cases. Consequently, although every reasonable effort has been made to discover and eliminate the possibility of any conflict including the efforts outlined above, Mackinac is unable to state with certainty whether any of its clients or an affiliated entity of a client holds a claim or otherwise is a party-in-interest in these chapter 11 cases.  If Mackinac discovers any information that is contrary or pertinent to the statements made herein, Mackinac will promptly disclose such information to the Court.

18.     Mackinac does not advise, has not advised, and will not advise any entity other than the Debtors in matters related to these chapter 11 cases.  Mackinac will, however, continue to provide professional services to entities or persons that may be creditors of the Debtors or parties-in-interest in these chapter 11 cases, provided that such services do not relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

19.     Except as otherwise set forth herein and in the Application, to the best of my knowledge, information, and belief, neither Mackinac nor any employee of Mackinac is a creditor, an equity holder or an insider of the Debtors. Except as otherwise set forth herein and in the Application, to the best of my knowledge, information and belief, neither Mackinac nor any employee of Mackinac is or was, within two (2) years before the Petition Date, a director, an officer or an employee of the Debtors. Also, to the best of my knowledge, information and belief, neither the undersigned nor the Mackinac Additional Personnel expected to assist the Debtors in these chapter 11 cases are related or connected to any United States Bankruptcy Judge for the Southern District of New York, the U.S. Trustee or any persons employed in the office of the U.S. Trustee.

20.     Accordingly, to the best of my knowledge, information and belief: (a) Mackinac is

a "disinterested person" within the meaning of Bankruptcy Code section 101(14) and holds no interest materially adverse to the Debtor, its creditors and shareholders for the matters for which Mackinac is to be employed; and (b) Mackinac has no connection to the Debtor, its creditors, shareholders or related parties herein.

## MACKINAC'S COMPENSATION

21.     The compensation structure set forth in the Application is consistent with Mackinac's typical fees for work of this nature. The fees are set at a level designed to compensate Mackinac fairly for the work of its professionals and assistants and to cover fixed and routine overhead expenses. It is Mackinac's policy to charge its clients for all disbursements and expenses incurred in the rendition of services.

22.     In addition, pursuant to the Engagement Letter, Mackinac shall earn a completion fee ("**Completion Fee**") of Two Hundred and Fifty Thousand Dollars ($250,000.00) upon the approval by the Court of a confirmed plan of reorganization or liquidation.  Mackinac has agreed to file a request for approval of the Completion Fee at the conclusion of the chapter 11 cases and that such request shall be subject to approval on reasonableness grounds.

23.     Because Mackinac is not being employed as a professional under Bankruptcy Code section 327(a), Mackinac does not intend to submit fee applications pursuant to Bankruptcy Code sections 330 and 331. Instead, Mackinac will file with the Court, and provide notice to the U.S. Trustee, counsel for any statutory committee appointed in the Chapter 11 Cases, and counsel to the Debtors' postpetition lender (collectively, the "**Notice Parties**"), reports of compensation earned and expenses incurred on a monthly basis. Such reports will (a) identify the Mackinac personnel providing services, (b) summarize the services provided by such personnel, (c) summarize the compensation earned by such personnel and (d) itemize the expenses incurred in

connection with the services provided. Time records shall (i) be appended to the Monthly Reports, (ii) contain detailed time entries describing the tasks performed and (iii) be organized by project category. The time entries shall identify the time spent completing each task in half hour increments and the corresponding charge (time multiplied by hourly rate) for each task. In addition, Mackinac will file with the Court and provide the Notice Parties a report on staffing (the "**Staffing Report**") by the 20th of each month for the previous month, which report will list the names all additional Mackinac personnel performing services for the Debtors and describe the tasks being performed by such personnel (the "**Additional Personnel**").

24.     The foregoing constitutes the statement of Mackinac pursuant to Bankruptcy Code section 504, and Bankruptcy Rules 2014(a) and 5002.

25.     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 28th August, 2020

/s/ Craig M. Boucher
Name: Craig M. Boucher
Title: Chief Restructuring Officer

# Exhibit 1



STRICTLY CONFIDENTIAL

August 18, 2020

Mr. Jerry Katzoff
Chairman of the Board
K.G. IM, LLC
136 E 57th Street
Suite 13
New York, NY 10019
Email: Jerrykatzo@aol.com

Dear Mr. Katzoff,

We are pleased to confirm our mutual understanding regarding the retention of Mackinac Partners, LLC ("Mackinac") to provide restructuring and crisis management services and Craig Boucher, a Senior Managing Director with Mackinac, as the Chief Restructuring Officer ("CRO") of the debtors and debtors-in-possession ("[1]Debtor") that filed petitions for relief under chapter 11 of the United States Bankruptcy Code on July 28, 2020 and July 31, 2020 (Case No. 20-11723 (MG)).

(1)     Pursuant to the Stipulation & Order Appointing Chief Restructuring Office and Establishing Operating Protocol for the Debtors entered on August 14, 2020 ("Stipulation" *Exhibit A*) and the terms of this agreement (such retention, the "Engagement" and this agreement, the "Agreement"), the Debtor hereby retains Mackinac to provide restructuring and crisis management services (its professional staff, the "Additional Personnel") and hereby agrees to retain Craig Boucher as the Chief Restructuring Officer of the Debtor.  Furthermore, Mackinac shall be appointed as CRO for the Debtor effective immediately as of the Order approving this Stipulation (the "Appointment Date").  The Debtor will promptly apply to the bankruptcy court or other court of competent jurisdiction (the "Court") to obtain approval of Mackinac's retention and any compensation arrangements and other terms hereunder *nunc pro tunc* to the date of the filing. The form of retention application and proposed order shall be reasonably acceptable to Mackinac. The Debtor will cause its counsel to assist with preparing, filing, serving and noticing any motions or other filings related to Mackinac's retention, compensation and provision of services hereunder.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if any), include: K.G. IM, LLC (8556);Il Mulino USA, LLC (1682); IM LLC – III (2613); IMNYLV, LLC (9805); IM NY, Florida, LLC (9385); IM NY, Puerto Rico, LLC (0901); IMNY AC, LLC (5082); IM Products, LLC (0303); IM Long Island Restaurant Group, LLC (1623); IM Long Island, LLC (1488); IM Franchise, LLC (0565); IM 60th Street Holdings, LLC (8040); IM Broadway, LLC (4335); IMNY Hamptons, LLC (0423), and IM Payroll, LLC (0807). For the purpose of these chapter 11 cases, the service address for the Debtors is: 1761 Yardley Langhorne Rd., Yardley, PA 19067.

(2)     In conjunction with undertaking the ordinary course duties of a Chief Restructuring Officer, and consistent with the terms and conditions of the Stipulation, Mackinac shall be the sole representative of all of the Debtors' estates and shall be exclusively vested with all of the powers and duties to operate the Debtors' businesses pursuant to Bankruptcy Code Sections 1107 and 1008 and in accordance with, and subject to, the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, and the Local Rules of Bankruptcy.

Mackinac's duties, obligations, and its restructuring and crisis management Services (collectively, the "Management Services") are set forth in the Stipulation and attached as Exhibit A. Mackinac may provide such other restructuring or crisis management services as are consistent with the role of Chief Restructuring Officer and/or the above-described services, requested by the Debtor or its counsel, not duplicative of services provided by other professionals, and agreed to by Mackinac, the Debtor and approved by the applicable court.

The CRO shall be an independent fiduciary with respect to each of the Debtors' estates and shall exercise that duty consistent with the Bankruptcy Code. Mackinac's primary contact at the Debtor for support in the fulfillment of its duties will be counsel for the Debtors, Alston & Bird LLP's Gerard Catalanello (the "Primary Contact"), or persons designated thereby in writing. The Management Services will not include any legal, tax, audit or accounting advice or services or any similar advice or services (which will be procured by the Debtor at its own expense).

(3)     The Debtors will cooperate with Mackinac and will make available to Mackinac such personnel, documents and other information as Mackinac may reasonably request, in connection with Mackinac's performance of the Management Services.

(4)     The Debtors will inform Mackinac of (a) any material changes that arise after delivery of any such information and that may affect Mackinac's use of, or reliance on, such information or (b) any material inaccuracy or misstatement in, or material omission from, any information delivered to Mackinac, in each case of (a) and (b), promptly after the Debtors become aware thereof. The Debtors represent and warrant to Mackinac that (i) to the best of the Debtors' knowledge, all information (other than projections) provided or otherwise made available to Mackinac by or on behalf of the Debtors will be complete and correct in all material respects and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which they are made and (ii) any projections provided by it to Mackinac will have been reasonably prepared in good faith and will be based upon the best then available estimates and judgments of the future financial results and condition of the Debtors and assumptions, which, in light of the circumstances under which they are made, the Debtors believe to be reasonable.  The Debtors acknowledge that, in rendering Management Services, Mackinac will be using and relying on the information provided by and on behalf of the Debtors without independent verification by Mackinac. Mackinac assumes no responsibility for the accuracy or completeness of any information provided by or on behalf of the Debtors or any other information regarding the Debtors provided or otherwise made available to Mackinac.

(5) As compensation for the services to be rendered by Mackinac under this Agreement, the Debtors will pay Mackinac fees calculated on a time basis at the following customary hourly rates:

- Senior Managing Directors    $650 – $800
- Managing Directors       $550 – $700
- Directors           $400 – $550
- Associates and Analysts     $250 – $400

The above hourly rates shall be subject to adjustment annually at such time as Mackinac adjusts its rates. Mackinac agrees that the above hourly rates will remain in effect for this Engagement through December 31, 2020, although maturation increases may be implemented upon the advancement or promotion of any given professional. Notice of any such adjustment shall be given to the Debtor reasonably in advance of its effectiveness. Mackinac may add or substitute Additional Personnel during the course of the Engagement, in which case such Additional Personnel will be billed at Mackinac's customary hourly rates, as modified pursuant to this paragraph.

Mackinac shall also receive a "Completion Fee" of Two Hundred and Fifty Thousand Dollars ($250,000.00) upon the approval by the Court of a confirmed Plan of Reorganization or Liquidation. Payment of the Fee will be submitted on an invoice and processed with payment together with other invoices consistent with any Court orders on the same.

(6) Mackinac will bill the Debtors and be paid its compensation for services rendered at the rates provided above via invoices consistent with any court orders on the same.  The Debtors will also reimburse Mackinac for its reasonable and documented out-of-pocket expenses incurred in connection with the Management Services. Out-of-pocket expenses include expenses incurred for travel, meals, lodging, postage, telephone, document reproduction, computer charges and database access fees which Mackinac incurs during the term of this Agreement in connection with its Engagement. Such unpaid amounts to be reimbursed will be submitted to the Debtors with each invoice as outlined above.

(7) (Intentionally Omitted)

(8) (Intentionally Omitted)

(9) Except as contemplated by this Agreement or as otherwise may be necessary for Mackinac to carry out its obligations under this Agreement, and except as required by applicable law, regulations or by a governmental authority or court of competent jurisdiction or as necessary in connection with any judicial, regulatory or administrative inquiry or proceeding, and except with the prior approval of the Debtors, Mackinac shall (a) keep confidential all material nonpublic information (to the extent such information does not become publicly available as the result of a disclosure in breach hereof) provided to it by the Debtors and (b) not disclose such information to third parties, other than to such of its employees and advisors as Mackinac, in its reasonable discretion, determines have a need to know, in each case of (a) and (b), until the earliest to occur of (i) the date such information will have been made publicly available by the Debtors or by others without breach of a confidentiality agreement and (ii) the date on which such information becomes available to Mackinac from a third party on a non-confidential basis. No advice of Mackinac may be disclosed to any third party in any manner by the Debtors without the prior written consent of Mackinac, and the terms of this Agreement may not be disclosed or referred to by the Debtors to any third party without Mackinac's prior written consent.  If access to any of the materials in Mackinac's possession relating to this Engagement is sought by a third party, Mackinac will promptly notify the Debtors

of such action, tender to the Debtors the defense of responding to such request and cooperate with the Debtors concerning Mackinac's response thereto.  In the event that Mackinac is subpoenaed as the result of any work performed in connection with this Agreement, Mackinac will provide to the Debtors immediate notice of such subpoena.

(10)    (Intentionally omitted.)

(11)    Mackinac or the Debtor may only terminate this Agreement with the approval of the court, after notice to all interested parties.  Such termination would be without liability or continuing obligation except as set forth in the remainder of this paragraph; provided, however, that (a) notwithstanding any such termination, except with respect to a termination for Cause (as defined below), Mackinac shall be entitled to receive compensation up to the date of termination; (b) any termination of Mackinac's engagement hereunder (other than a termination for Cause) shall not affect the Debtors' obligation to reimburse expenses, accruing prior to such termination, incurred by Mackinac up to the date of termination; and (c) the provisions of paragraphs (3) through (19) of this Agreement, inclusive, shall survive any termination of this Agreement.  For purposes of this paragraph (11), "Cause" shall mean (i) a material breach by Mackinac of its obligations under this Agreement or (ii) gross negligence, bad faith or willful misconduct (whether through act or omission) by Mackinac relating to the Debtors' or Mackinac's obligations under this Agreement.

(12)    Mackinac has been retained under this Agreement pursuant to the Stipulation and as an independent contractor with no fiduciary or agency relationship to the Debtors or to any other party. Mackinac's duties hereunder run solely to the Debtors, and Mackinac is not authorized to be, and will not purport to be, an agent of the Debtors for any purpose; provided, however, that Mr. Boucher in his capacity as Chief Restructuring Officer pursuant to this Agreement and the Stipulation shall be an agent of the Debtors with appropriate authority and duties.

(13)    This Agreement will be governed by and construed in accordance with the laws of the state of New York applicable to agreements executed and to be performed entirely within that state, without regard to principles of conflicts of laws requiring application of the laws of any other jurisdiction. The parties consent to the exclusive jurisdiction of the Bankruptcy Court for the Southern District of New York over all disputes arising out of or relating to this Agreement, and waive any objections based on venue, forum non conveniens or otherwise to such jurisdiction.

(14)    This Agreement may be amended or modified, and any provision of this Agreement may be waived, in and only in a writing signed by the Debtors, Mackinac and approved by the court.

(15)    This Agreement constitutes the entire agreement between the parties and supersedes and cancels any and all prior or contemporaneous arrangements, understandings and agreements, written or oral, between them, relating to the subject matter of this Agreement.

(16)    If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement will remain in full force and effect and will in no way be affected, impaired or invalidated.

LEGAL02/39982322v4
LEGAL02/39982322v6

(17)     This Agreement shall inure to the benefit of and be binding upon the parties hereto, Mr. Boucher and their respective successors, heirs and assigns and any successor, heir or assign of any substantial portion of a party's businesses and/or assets, including any chapter 11 or chapter 7 trustee appointed on behalf of the Debtors. This Agreement may not be assigned or delegated by any party hereto, including any assignment by operation of law, without the prior written consent of the other, except to any chapter 11 or chapter 7 trustee appointed on behalf of the Debtor to whom a substantial portion of a party's businesses and/or assets is transferred.

(18)     THE DEBTORS CONSENT TO PERSONAL JURISDICTION IN THE BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK FOR THE PURPOSE OF SERVICE AND VENUE IN ANY COURT IN WHICH ANY CLAIM AND PROCEEDING WHICH IS SUBJECT TO THE TERMS PROVIDED FOR IN THIS AGREEMENT IS BROUGHT AGAINST MACKINAC. THE PARTIES WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR PROCEEDING RELATED TO OR ARISING OUT OF MACKINAC'S ENGAGEMENT, ANY TRANSACTION OR CONDUCT IN CONNECTION THEREWITH, OR THIS AGREEMENT.

(19)     This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered electronically shall be deemed to have the same legal effect as delivery of an original signed copy.

*[signature page follows]*

LEGAL02/39982322v4
LEGAL02/39982322v6

If the foregoing correctly sets forth our understanding, please acknowledge your acceptance of and agreement with the terms and conditions set forth in this Agreement, consistent with the Stipulation, by countersigning in the space provided below.

Sincerely,

**MACKINAC PARTNERS, LLC**

By: _____

      Name: Craig Boucher

      Title: Senior Managing Director

**AGREED TO AND ACCEPTED PURSUANT TO STIPULATION AND ORDER ENTERED 8/14/2020:** [2]

**K.G. IM, LLC**

By: _____

Name:  Mr. Jerry Katzoff

Title:  Manager

Date:  _____

---

[2] All rights of Jerry Katzoff as equity holder and/or creditor with respect to fees sought by Mackinac are fully reserved.

74 W Long Lake Road  •  Suite 205  •  Bloomfield Hills, MI 48304  •  TEL (248) 258-6900  •  FAX (248) 258-6913

If the foregoing correctly sets forth our understanding, please acknowledge your acceptance of and agreement with the terms and conditions set forth in this Agreement, consistent with the Stipulation, by countersigning in the space provided below.

Sincerely,

**MACKINAC PARTNERS, LLC**

By: _____

      Name: Craig Boucher

      Title: Senior Managing Director

**AGREED TO AND ACCEPTED PURSUANT TO STIPULATION AND ORDER ENTERED 8/14/2020:** [2]

**K.G. IM, LLC**

By: _____

Name: Mr. Jerry Katzoff

Title: Manager

Date: _____08/28/2020_____

---

[2] All rights of Jerry Katzoff as equity holder and/or creditor with respect to fees sought by Mackinac are fully reserved.

# Exhibit 2

## **EXHIBIT 2: LIST OF INTERESTED PARTIES SEARCHED**

This information is being provided in connection with the Declaration of Craig Boucher in Support of the Application for an Order to (I) Employ and Retain Mackinac Partners, LLC and (II) Affirm Designation of Craig M. Boucher as Chief Restructuring Officer, Effective as of August 14, 2020. The following names were compared to Mackinac Partners' client database and certain records in Mackinac Partners' client database to identify any connection or relationship:

### DEBTORS

— K.G. IM, LLC
— IL Mulino USA, LLC
— IM LLC – III
— IMNYLV, LLC
— IM NY, Florida, LLC
— IM NY, Puerto Rico, LLC
— IMNY AC, LLC
— IM Products, LLC
— IM Long Island Restaurant Group, LLC
— IM Long Island, LLC
— IM Franchise, LLC
— IM 60th Street Holdings, LLC
— IM Broadway, LLC
— IMNY Hamptons, LLC

### AFFILIATES

— Il Mulino Joint Ventures, LLC
— IM-NY GS, LLC
— Il Mulino Gramercy, LLC
— IM NY Boca Holdings LLC
— IMNY Boca, LLC
— Pasta Perfect, LLC
— IM 60th Street, LLC
— IM LLC-I
— IM LLC-II
— IM LLC-III
— GFB, Inc.
— J.B. IM, LLC

### DEBTORS' PROFESSIONALS

— Alston & Bird LLP
— Davis & Gilbert LLP
— Traxi LLC
— Omni Agent Solutions

### INSIDERS

— Gerald Katzoff
— Lee Katzoff
— Stuart Katzoff
— BDG Family Partnership LP
— Brian Galligan
— Craig Boucher

### LENDERS

— BSP Agency LLP
— Providence Debt Fund III L.P.
— BSP IM Investment Masters, LP
— Benefit Street Partners SMA LM LP
— Firstrust Bank
— Empire State Bank
— Advance Restaurant Finance LLC
— ARF Financial
— Platinum Rapid Funding
— AC Hardrock
— Sterling & Sterling LLC
— Wells Fargo
— Prime Line International, Inc.
— Corporation Service Company, as Representative
— Washington Business Bank
— American Express National Bank
— Signature Bank

### LENDERS COUNSEL

— Goodwin Procter LLP

### 5% OR MORE SHAREHOLDERS

— Gerald Katzoff
— BDG Family Partnership, LP.
— Louis Lauch
— Lyons Share Investment

### LANDLORDS

— 1144 Forum Shops, LLC
— ABS Partners Real Estate, LLC
— Silk & Halpern

**GOVERNMENTAL AGENCIES**

— Commission Of Tax Finance
— Dept Of Hacienda - Sales Tax
— Florida Department of Revenue- S TAX
— Gobierno Mun Aut de Caroli -LOCAL S. TAX
— Miami Dade County Tax Collector
— Nevada Department Of Taxation-Sales Tax
— NJ DIVISON OF TAXATION
— NJ Partnership Tax
— State of New Jersey -Division of Employer Accounts
— STATE OF NEW JERSEY-LUX TAX
— Employment Security Division of the State of Nevada

**VENDORS**

— A. Esposito Inc.
— Affiliated Adjustment Group, LTD
— Alsco
— Baldor Specialty Foods Inc.
— Borah,Goldstein,ET.AL. IM0401
— Breakthru Beverage Nevada.
— C&C Nevada, LLC.
— Capital Floors LLC
— Charles Berman, Receiver Of Taxe
— Citrin Cooperman & Company, LLP
— Colonial Life
— Conca D'Oro Importers, INC.
— ConEDison-42-7005-0230-0011-4
— Davis & Gilbert LLP.
— Done4NY, LLC.
— Ecolab
— Ellenoff Grossman and Schole LLP
— Empire Merchants, LLC.
— Employers Compensation Ins. Co.
— Executive Parking
— FEDERAL WINE & LIQUOR CO
— Firstrust Bank - LOAN# 5109246
— Freedom Fresh
— Freedom Fresh-Payment Plan
— Health Plan of Nevada

— Hygiene Coast Services.
— I. Halper Paper & Supplies Inc.
— Independence Blue Cross
— IPFS Corporation
— IPFS of New York, LLC
— Jody Markman
— La Reserve, INC.
— MacKnight Food Group
— Mackinac Partners
— Magnacare-Claim
— McConnell Valdes LLC
— Mikuni Wild Harvest INC.
— Monsieur Touton Selection
— Musco Food Corporation
— Open Table, Inc.
— Paris Produce Company, INC.
— Pat La Frieda
— Primal Custom Cutting LLC
— Prime Line Distributors-PAYMENT PLAN
— PSEGLI
— Royal Waste Services INC.
— Sabatino North America LLC.
— Sabatino Truffles NYC, LLC
— Seatide Fish & Lobster, INC.
— SHAGALLA INC.
— Shagalla, Inc --PAYMENT PLAN
— Siena Food Inc.
— Silver State Meats, LLC.
— Southern Glazer's Wine & Spirits, INC.
— STATE INSURANCE FUND OF PUERTO RICO
— Sterling&Sterling LLC dba Sterling Risk
— Sysco Las Vegas
— Sysco Long Island, LLC
— Sysco Philadelphia, LLC.
— Teitel Bros. - Wholesale Grocery
— The Chef's Warehouse of Florida, LLC
— Trump Taj Mahal
— Travelers
— Trinity Seafood
— Vignaioli Selection
— WestGUARD Insurance Company 18-19

**UNITED STATES BANKRUPTCY JUDGE AND UNITED STATES TRUSTEE**

— Judge Martin Glenn
— Shannon Scott

# Exhibit 3

# EXHIBIT 3: LIST OF INTERESTED PARTIES SEARCHED

This information is being provided in connection with the Declaration of Craig Boucher in Support of the Application for an Order to (I) Employ and Retain Mackinac Partners, LLC and (II) Affirm Designation of Craig M. Boucher as Chief Restructuring Officer, Effective as of August 14, 2020. Mackinac Partners have or had business relationships with, currently render or have previously rendered services during the past two years in matters unrelated to these Chapter 11 cases for the following entities or their affiliates:

## DEBTORS' PROFESSIONALS

— <u>Omni Agent Solutions</u>:  Professional relationship - Various business engagement referrals and transactions. No current engagements represent a conflict.

## LENDERS

— <u>BSP Agency LLP</u>:  Professional relationship - Various business engagement referrals and transactions. No current engagements represent a conflict.

— <u>Benefit Street Partners SMA LM LP</u>: Professional relationship - Various business engagement referrals and transactions. No current engagements represent a conflict.

— <u>Wells Fargo</u>:  Professional relationship - Various business engagement referrals and transactions. No current engagements represent a conflict.

— <u>American Express National Bank</u>: Vendor-business relationship-Company business transactions