# EXHIBIT B

## EVAN BLUM DECLARATION

ASK LLP
151 West 46th Street, 4th Floor
New York, New York 10036
Tel.: (212) 267-7342
Fax.: (212) 918-3427
Edward E. Neiger, Esq.
Dina Gielchinsky, Esq.

*Counsel to Stillwater Asset Backed Offshore Fund Ltd.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
In re                                                        Chapter 11

STILLWATER ASSET BACKED                                      Case No. 12-14140 (ALG)
OFFSHORE FUND LTD.,

        Debtor.
-----------------------------------------------------------x

### DECLARATION OF EVAN BLUM IN SUPPORT OF THE DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF GLASSRATNER ADVISORY & CAPITAL GROUP, LLC AND (II) DESIGNATING EVAN BLUM AS CHIEF RESTRUCTURING OFFICER TO THE DEBTOR *NUNC PRO TUNC* TO MARCH 8, 2013

I, Evan Blum, under penalty of perjury, declare as follows:

1. I am over the age of 18 and competent to testify. I am a principal in the firm of GlassRatner Advisory & Capital Group, LLC (*"GlassRatner"*),[1] which maintains offices at 60 East 42nd Street, Suite 2200, New York, New York 10165. GlassRatner also maintains offices in Atlanta, Georgia; Irvine, California; Miami, Florida; Chicago, Illinois; Los Angeles, California; Phoenix, Arizona; and Tampa, Florida.

---

[1] Capitalized terms used, but not defined, herein shall have the same meanings as in the Application.

2

2. I am duly authorized to make this declaration on behalf of GlassRatner and in support of the application (the "*Application*") of Stillwater Asset Backed Offshore Fund Ltd., the debtor (the "*Debtor*") in the above-captioned chapter 11 case, for entry of an order authorizing the Debtor to employ and retain GlassRatner as manager for the Debtor in connection with its chapter 11 case. Unless otherwise stated in this declaration, I have personal knowledge of the matters set forth herein.

## GLASSRATNER'S QUALIFICATIONS

3. GlassRatner is a national financial advisory firm that specializes in providing bankruptcy and business reorganization consulting services. GlassRatner possesses significant experience in acting as a liquidating agent, plan administrator, and chapter 11 trustee. GlassRatner has worked on matters throughout the U.S. and internationally, and has acquired extensive expertise in debt restructuring, turnaround and crisis management, debtor and creditors' committee advisory, wind-down and liquidation.

4. GlassRatner was appointed as the manager of many of the most significant restructurings and turnarounds in recent years, including *PJ Finance Company, LLC*, Case No. 11-10688 (BLS) (Bankr. D. Del.); *Waste2Energy Holdings, Inc.*, Case No. 11-12504 (KJC) (Bankr. D. Del.); *AmTrust Mortgage Corporation, AmTrust Financial Corporation*, Case No. 09-21323 (PMC) (Bankr. N.D. Ohio); *Open Magnetic Imaging, Inc.*, Case No. 08-10432 (RBR( (Bankr. S.D. Fla.); *PUIG Development Group*, Case No. 07-14026 (RAM) (Bankr. S.D. Fla.); *Firstline Corporation*, Case No. 06-70145 (JDW) (Bankr. M.D. Ga.); and *Piknik Products Company*, Case No. 05-33035 (DHW) (Bankr. M.D. Ala.).

5. In its role as a manager, GlassRatner has, among other things, prepared and successfully implemented plans of reorganization, managed debtors' businesses during chapter

11, facilitated relations and exchange of information between banks, owners and investors, prepared cash flow and related variance analyses, and performed analyses of existing real estate assets.

6. Through conversations with the Debtor's professionals and review of the pleadings in this Court and the District Court, GlassRatner has familiarized itself with the Debtor, the mediation and the proposed Unwind. Having provided restructuring or crisis management services in numerous chapter 11 cases of similar size and complexity to the Debtor's chapter 11 case, GlassRatner professionals have developed relevant experience and expertise that will facilitate effective and efficient services in this chapter 11 case.

7. I have over twenty years of advisory experience, and have managed restructurings as an advisor to debtors and creditors. I was formerly a Senior Vice President with Communications Equity Associates, a boutique investment bank focusing on the media industry; a Director with Merrill Lynch and a Managing Member of Triax Capital Advisors, a restructuring advisory firm. At Triax, I was engaged in a significant number of assignments serving as Chief Restructuring Officer and Financial Advisor on behalf of companies and lenders in bank workouts and as an advisor in corporate transactions.

## SCOPE OF SERVICES

8. GlassRatner was retained by the Debtor to act as the Debtor's manager pursuant to an engagement letter effective as of March 8, 2013 (the "*Management Agreement*"), annexed hereto as **Exhibit A**. I was appointed CRO of the Debtor pursuant to the Management Agreement.

9. The Management Agreement specifies the services that will be performed by GlassRatner in the Debtor's chapter 11 case, and provides that I "shall have all the rights, duties,

obligations and ability to exercise full powers of a trustee/debtor in possession under the Bankruptcy Code for the Debtor, including, without limitation, the right and powers provided under chapter 5 of the Bankruptcy Code, to sue and be sued, to operate and liquidate businesses/assets and to settle any matters." *See* Management Agreement, ¶ 2.

10. As specified in the Management Agreement, GlassRatner was retained by the Debtor to perform the following services, including, but not limited to, the following:

- a. Making and implementing decisions with respect to all aspects of the Debtor's management;
- b. Making and implementing decisions with respect to all aspects of any potential unwinding of the transaction with Gerova as they relate to the Debtor;
- c. Identifying, evaluating and implementing any alternative approaches to create value for the Debtor's business.
- d. Making and implementing decisions with respect to all aspects of the wind down plan of the Debtor's business; and
- e. Providing such other services as needed by the Debtor.

11. The Debtor, the Petitioning Creditors, and GlassRatner have mutually agreed upon the services to be provided by GlassRatner to the Debtor during its chapter 11 case. GlassRatner has and will continue to provide the services described herein.

12. GlassRatner will use reasonable efforts to ensure that the services GlassRatner will provide to the Debtor will not be duplicative of efforts by other professionals retained by the Debtor in the chapter 11 case.

### PROFESSIONAL COMPENSATION

13. GlassRatner's fee structure (the "*Fee Structure*") consists of the following standard hourly billing rates:

| | |
|---|---|
| Evan Blum, Principal | $650 |
| Jim Fox, Principal | $650 |

5

| | |
|---|---|
| Other Professionals | $200-$500 |
| Paraprofessionals | $100-200 |

14. The Fee Structure is consistent with, and typical of, arrangements entered into by GlassRatner and other comparable consulting firms that render similar services under similar circumstances.

15. In addition to compensation for professional services rendered by GlassRatner personnel, GlassRatner will seek reimbursement for reasonable and necessary out-of-pocket expenses incurred in connection with the chapter 11 case, including transportation costs, travel and copying services.

16. GlassRatner will file monthly invoices with the Court, summarizing the services provided and any expenses incurred by GlassRatner, and shall serve such invoices upon the Office of the United States Trustee and the official committee of unsecured creditors if one is appointed.

17. GlassRatner shall receive (a) compensation as specified in the Management Agreement and (b) reimbursement of expenses, which in each case GlassRatner will file quarterly reports of compensation paid and expenses reimbursed with the Court, with notice to the United States Trustee and the official committee of unsecured creditors, if one is appointed.

## DISCLOSURE OF COMPENSATION

18. To date, GlassRatner has received no compensation from the Debtor and holds no prepetition claims against the Debtor.

19. GlassRatner has not received any promises as to payment or compensation in connection with this bankruptcy other than in accordance with the provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules for the Bankruptcy Court for

the Southern District of New York and the United States Trustee Guidelines, and as disclosed herein.

## INDEMNIFICATION

20. The Debtor has agreed that it will use its best reasonable efforts to obtain a Directors, Officers and Corporate Liability Policy from a national insurance carrier, with up to $5 million in coverage, in order to indemnify GlassRatner and its employees and affiliates against all claims, liabilities, losses and damages arising out or in connection with the engagement of GlassRatner in the chapter 11 case, unless as a result of GlassRatner's gross negligence or willful misconduct.

21. The Debtor and GlassRatner believe that the indemnification is customary and reasonable for firms providing special financial or restructuring advisory services, and provides qualifications and limitations that are customary in this district and others. Moreover, the terms and conditions of the indemnification were negotiated by the Debtor and GlassRatner at arm's-length and in good faith.

22. The CRO and GlassRatner will also benefit from immunity by noticing certain requests for relief to all parties-in-interest required to be noticed by the Bankruptcy Court, and seeking an order from the Bankruptcy Court approving such relief.

## GLASSRATNER'S DISINTEREDNESS

23. In connection with its proposed employment and retention by the Debtor, GlassRatner undertook a lengthy conflicts analysis process to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtor's estate. In connection with this inquiry, GlassRatner obtained from the Debtor and/or its representatives the names of individuals and entities that may be

parties in interest in the chapter 11 case. GlassRatner then researched its client database to determine relationships with the following parties: (i) the Debtor and the entities affiliated with or related to the Debtor; (ii) officers and directors of the Debtor and its affiliates; (iii) the Debtor's major equity holders, (iv) the Debtor's 20 largest unsecured creditors; (v) professionals retained by the Debtor in the chapter 11 case; and (vi) key staff members of the Office of the United States Trustee for the Southern District of New York (the foregoing, collectively, the "*Potential Parties in Interest*").

24. GlassRatner maintains a database of current and former clients and related information (the "*Database*"). Under my direction and supervision, GlassRatner performed a conflicts search comparing the Potential Parties in Interest against the Database to identify potential conflicts. Also under my direction and supervision, an e-mail containing a list of the Potential Parties in Interest was circulated to every professional at GlassRatner to solicit potential conflicts or connections that might not be uncovered through a comparison against the Database.

25. Of the services that were or will be provided in the course of other engagements: (a) none are connected in any way to the chapter 11 case; (b) none will impact, conflict with or be adverse to the rights of the Debtor in the chapter 11 case; and (c) none will compromise GlassRatner's ability to provide services in the chapter 11 case.

26. To the best of my knowledge, information and belief, except as set forth in **Schedule 1** attached hereto, none of GlassRatner's current or former clients (including their affiliates, officers, directors, principal shareholders and their respective affiliates) are connected to the Potential Parties in Interest, other parties in interest herein or interests adverse to such parties.

27. Of the clients listed on **Schedule 1**, no clients represented more than one percent of GlassRatner's fee receipts for the twelve-month period ending January 2013.

28. None of the representations described herein preclude GlassRatner from being a disinterested party under the Bankruptcy Code. To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, neither I nor any of GlassRatner's professional employees: (a) have any connection with the Debtor, its creditors, or any other Potential Parties in Interest in the chapter 11 case or their respective attorneys or accountants; or (b) are related or connected to any United States Bankruptcy Judge for the Southern District of New York, any of the District Judges for the Southern District of New York who handle bankruptcy cases, the United States Trustee, or any employee in the Office of the United States Trustee, except as otherwise set forth herein.

29. GlassRatner is not employed by, and has not been employed by, any entity other than the Debtor in matters related to this chapter 11 case.

30. From time to time, GlassRatner has provided services, and likely will continue to provide services, to various other parties adverse to the Debtor in matters unrelated to this chapter 11 case. As described below, however, GlassRatner will undertake a detailed search to determine, and to disclose, whether it is providing or has provided services to any significant customers, equity security holders, insiders or other parties in interest in such unrelated matters.

31. GlassRatner provides services in connection with numerous cases, proceedings and transactions unrelated to this chapter 11 case. These unrelated matters involve numerous attorneys, financial advisors and creditors, some of which may be claimants or parties with actual or potential interests in these cases or may represent such parties.

32. GlassRatner's personnel may have professional associations with various parties in interest unrelated to this chapter 11 case. In addition, in the ordinary course of its business, GlassRatner may engage counsel or other professionals in unrelated matters who now represent, or who may in the future represent, creditors or other interested parties in this chapter 11 case.

33. GlassRatner reserves the right to supplement this declaration in the event that GlassRatner discovers any facts bearing on matters described in this declaration regarding GlassRatner's employment by the Debtor.

34. Despite the efforts described above to identify and disclose the connections that GlassRatner and its affiliates have with parties in interest in this chapter 11 case, GlassRatner is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if GlassRatner discovers additional information that requires disclosure, GlassRatner will promptly file a supplemental declaration with this Court.

35. In accordance with section 504 of the Bankruptcy Code and Bankruptcy Rule 2016, neither I nor GlassRatner has entered into any agreements, express or implied, with any other party in interest, including the Debtor, any creditor, or any attorney for such party in interest in this chapter 11 case (a) for the purpose of sharing or fixing fees or other compensation to be paid to any such party in interest or its attorneys for services rendered in connection therewith, (b) for payment of such compensation from the assets of the estates in excess of the compensation allowed by this Court pursuant to the applicable provisions of the Bankruptcy Code, or (c) for payment of compensation in connection with this chapter 11 case other than in accordance with the applicable provisions of the Bankruptcy Code. If any such agreement is entered into, GlassRatner undertakes to amend and supplement this declaration to disclose the terms of any such agreement.

## AFFIRMATIVE STATEMENT OF DISINTERESTEDNESS

36. To the best of my knowledge, GlassRatner is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that GlassRatner: (a) is not a creditor, an equity security holder, or an insider of the Debtor; (b) is not and was not, within two years before the date of the filing of this chapter 11 case, a director, officer or employee of the Debtor; and (c) does not have an interest materially adverse to the interest of the Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or for any other reason.

37. Accordingly, based upon the foregoing, I believe GlassRatner is disinterested as defined in section 101(14) of the Bankruptcy Code and does not hold or represent an interest materially adverse to the Debtor or its estate.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Dated: March 15, 2013  
New York, New York

GlassRatner Advisory & Capital Group, LLC

_____  
Evan Blum  
Principal

Schedule 1

Preliminary Conflicts Schedule

| Party in Interest | Relationship to the Debtors | Description of Current or Prior Relationship with GlassRatner |
|---|---|---|
| Foley & Lardner LLP | Counsel for the Petitioning Creditors | GlassRatner has worked, and currently works, on unrelated matters with Foley & Lardner LLP |
| Herrick Feinstein LLP | Counsel for some of the defendants in the District Court actions, including the Asset Manager | Glass Ratner has worked, and currently works, on unrelated matters with Herrick Feinstein LLP |

# EXHIBIT A

## MANAGEMENT AGREEMENT

# GLASSRATNER

Date: March 11, 2013

To: Jack Doueck
Richard Rudy
Stillwater Asset Backed Offshore Fund, Ltd.
165 Remsen St, 2nd Floor
Brooklyn, NY 11201

From: Evan Blum
Jim Fox

Re: **Stillwater Asset Backed Offshore Fund LTD**

---

### 1. Introduction

This memo agreement, effective as of March 8, 2013, confirms our understanding that Stillwater Asset Backed Offshore Fund LTD (the "Company" or "Debtor") is engaging GlassRatner Advisory & Capital Group, LLC ("GlassRatner") and its professionals to provide Chief Restructuring Officer ("CRO") services to the Company. This agreement outlines the proposed scope of services and fee structure.

The Company represents that its Board of Directors ("Board") has duly approved the retention of GlassRatner and the terms of this agreement, including the appointment of Evan Blum as Chief Restructuring Officer of the Company. GlassRatner will assign Evan Blum to act as Chief Restructuring Officer of Company and will assign Jim Fox and other professionals to act in various capacities to carry out other services, as required and may appoint other officers as necessary.

In undertaking this engagement as set forth herein, GlassRatner does not guarantee, or provide any other such assurances that it will succeed in restoring any of the Company's original assets back to the Company or if such assets are restored, that they will yield any proceeds, either before or after the payment of expenses. GlassRatner's hourly charges are not contingent upon the achievement of any particular result.

In view of the Company's uncertain circumstances, the Company acknowledges that Evan Blum and other GlassRatner professionals may be required to make decisions and judgments quickly, and that the depth of analysis of information upon which such decisions are made may be limited due to availability, time constraints and other factors. Evan Blum and other GlassRatner professionals shall be entitled, in performing their duties on behalf of GlassRatner, to rely on information disclosed or supplied to them without verification or warranty of accuracy or validity.

## 2. Authority

Evan Blum, in his role as Chief Restructuring Officer, shall be authorized to make decisions with respect to all aspects of the management and wind down of the Company's business in such a manner as he may deem necessary or appropriate in his sole discretion consistent with the exercise of his fiduciary duty and the business judgment rule, subject only to appropriate governance by the Board in accordance with the Company's bylaws and applicable state law, with the goal of maximizing the liquidation proceeds of the Company's assets, if any. The Board agrees that it shall have no involvement in GlassRatner's management of the Debtor other than in an advisory capacity as deemed necessary by GlassRatner, and that it will not exercise any authority over the Debtor, GlassRatner, or Evan Blum.

Evan Blum shall have all the rights, duties, obligations and ability to exercise full powers of a trustee/debtor in possession under the Bankruptcy Code for the Debtor, including, without limitation, the right and powers provided under chapter 5 of the Bankruptcy Code, to sue and be sued, to operate and liquidate businesses/assets and to settle any matters.

## 3. Scope of Work

GlassRatner will render management and supervisory services to the Debtor in its chapter 11 case, including, but not limited to:

- Making and implementing decisions with respect to all aspects of the Debtor's management;
- Making and implementing decisions with respect to all aspects of any potential unwinding of the transaction with Gerova Financial Group, Ltd. as they relate to the Debtor;
- Identifying, evaluating and implementing any alternative approaches to create value for the Debtor's business.
- Making and implementing decisions with respect to all aspects of the wind down plan of the Debtor's business; and
- Providing such other services as needed by the Debtor.

## 4. Fee Arrangement

GlassRatner's professional fees will be based on the number of hours worked at standard hourly billing rates as set out below:

| | |
|---|---|
| Evan Blum, Principal | $650 |
| Jim Fox, Principal | $650 |
| Other Professionals | $200-$500 |
| Paraprofessionals | $100-200 |

Additionally, the Company will reimburse GlassRatner's reasonable out-of-pocket expenses, including but not limited to travel expense, meals, reproduction, computer usage, legal counsel and other direct expenses. In matters where travel is required, GlassRatner will bill 50% of required travel time. GlassRatner will provide detailed billing monthly or at other logical points during the engagement. GlassRatner's hourly charges are not contingent on the outcome of the matter.

Finally, GlassRatner reserves the right to amend and modify this fee arrangement to the extent that the proposed or anticipated Scope should change.

### 5. Limitations

GlassRatner is not a public accounting firm and its procedures and consulting services will not constitute an "Audit" or "Review" in accordance with generally accepted auditing standards in the United States. Accordingly, GlassRatner will not be expressing an Audit Opinion on any of the financial or other data received in this engagement.

### 6. Indemnification

Upon execution of this agreement, the Company will use its best reasonable efforts to obtain a Directors, Officers and Corporate Liability Policy from a national insurance carrier, with up to $5 million in coverage, in order to indemnify and hold harmless GlassRatner (including any employees or affiliated persons) from and against all claims, liabilities, losses and damages arising out of services performed except to the extent caused by gross negligence or willful misconduct by us. Further, the Company agrees to reimburse GlassRatner for any legal or other expenses incurred by us in connection with the defense of such claims. Such indemnification shall survive the completion of the engagement. The Company shall cause its insurance broker to send copies of documentation of the policy to Evan Blum (eblum@glassratner.com).

Evan Blum and GlassRatner will also benefit from immunity by noticing certain requests for relief to all parties-in-interest required to be noticed by the Bankruptcy Court, and seeking an order from the Bankruptcy Court approving such relief.

### 7. Termination

The term of GlassRatner's engagement shall commence on the date hereof and shall continue on a month-to-month basis until terminated by GlassRatner upon written notice to the Company given at least 15 days prior to the end of any month. The Board relinquishes any authority to terminate GlassRatner or Evan Blum during the pendency of the chapter 11 case, except upon the order of the Bankruptcy Court for cause shown.

### 8. Confidentiality

GlassRatner agrees not to disclose or permit the disclosure of information relating to operation of the Debtor's estate, provided that such disclosure may be made (a) to any person who is an officer, director or employee of GlassRatner solely for their use in the performance of the services hereunder and on a need-to-know basis, (b) with the prior consent of the Company, not be unreasonably withheld, or (c) pursuant to a subpoena or order issued by a court, arbitrator or governmental body, agency or official. The Company's consent will not be required if such information is required to be disclosed by an order of a Court or such information is otherwise publicly available.

GlassRatner may, in its discretion, discuss matters pertaining to this chapter 11 case with individual creditors or a committee of unsecured creditors, if appointed; provided, however, that (i) the disclosure of any information which would violate applicable securities laws, if any, is prohibited, and (ii) the disclosure of any non-public information about the Company is prohibited without the execution of an appropriate confidentiality agreement.

### 9. Governing Law

The laws of the State of New York shall govern this agreement and any controversy arising under it. Any disputes arising hereunder shall be resolved by the Bankruptcy Court for the Southern District of New York presiding over the chapter 11 case. The prevailing party in any dispute arising hereunder shall be entitled to recover from the other all fees and costs incurred, including legal fees and costs and the costs of experts, in any proceedings, including, but not limited to arbitration, litigation, bankruptcy and in any appellate proceedings as well.

### 10. Conclusion

We look forward to working with you on this matter. All correspondence should be directed to:

Evan Blum
GlassRatner Advisory & Capital Group, LLC
One Grand Central Place
60 East 42nd Street, Suite 2200
(212) 223 2430 x13
eblum@glassratner.com

If you agree with the terms of this agreement, please sign and return one copy to us.

_____     _____
Signature                                              Date

_____
Printed Name of Person Authorized to Sign

*[Signed: Evan Blum, 3/15/13]*
*Evan Blum*
*Glass Ratner Advisory Group*

GlassRatner may, in its discretion, discuss matters pertaining to this chapter 11 case with individual creditors or a committee of unsecured creditors, if appointed; provided, however, that (i) the disclosure of any information which would violate applicable securities laws, if any, is prohibited, and (ii) the disclosure of any non-public information about the Company is prohibited without the execution of an appropriate confidentiality agreement.

9. **Governing Law**

The laws of the State of New York shall govern this agreement and any controversy arising under it. Any disputes arising hereunder shall be resolved by the Bankruptcy Court for the Southern District of New York presiding over the chapter 11 case. The prevailing party in any dispute arising hereunder shall be entitled to recover from the other all fees and costs incurred, including legal fees and costs and the costs of experts, in any proceedings, including, but not limited to arbitration, litigation, bankruptcy and in any appellate proceedings as well.

10. **Conclusion**

We look forward to working with you on this matter. All correspondence should be directed to:

Evan Blum
GlassRatner Advisory & Capital Group, LLC
One Grand Central Place
60 East 42nd Street, Suite 2200
(212) 223 2430 x13
eblum@glassratner.com

If you agree with the terms of this agreement, please sign and return one copy to us.

*[signature: Richard Rudy]*                    March 15, 2013_
Signature                                      Date

Richard Rudy _____
Printed Name of Person Authorized to Sign