UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                              Chapter 11

GENEVER HOLDINGS LLC,                               Case No. 20-12411-JLG

                              Debtor.
------------------------------------------------------------x

## DEBTOR'S APPLICATION TO EMPLOY
## AND RETAIN SOTHEBY'S INTERNATIONAL REALTY
## AS ITS REAL ESTATE BROKER AND SALES AGENT

The application of Genever Holdings LLC (the "Debtor") seeking entry of the pre-fixed Order pursuant to §§327 and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), and Federal Rules of Bankruptcy Procedure 2014 and 2016, authorizing the retention of Sotheby's International Realty ("Sotheby's") as the Debtor's real estate broker and sales agent, represents and shows this Court as follows:

### BACKGROUND

1.     The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on October 12, 2020, and thereafter has continued in possession and management of its assets as a debtor-in-possession pursuant to 11 U.S.C. §§1107 and 1108.

2.     The Debtor's chief asset consists of the 18th floor apartment and auxiliary units at the Sherry-Netherland Hotel located at 781 Fifth Avenue, New York, NY (the "Residence").

3.     During the Chapter 11 case, the Debtor negotiated a global settlement with Pacific Alliance Asia Opportunity Fund L.P. ("PAX") and Bravo Luck Ltd. ("Bravo Luck") establishing, *inter alia*, a framework and bidding procedures for the sale of the Residence under the stewardship of Melanie L. Cyganowski, as the duly appointed Sales Officer (the "Sales

Pg 2 of 8

Officer"). Ms. Cyganowski is charged with overseeing the Debtor's sale efforts relating to the Residence.

4.  The global settlement was modified to address the Court's concerns outlined in a written decision dated September 1, 2021, and was ultimately approved by the Court on October 8, 2021 (ECF No. 141) following a renewed motion (the "Settlement"). Simultaneously therewith, Ms. Cyganowski's employment as the Debtor's Sales Officer was also approved pursuant to companion Order of even date (ECF No. 142).

5.  Under the Settlement, the first order of business is the retention of a broker to represent the Debtor's estate regarding the sale of the Residence. Consistent with the Settlement, Ms. Cyganowski solicited recommendations from the parties to the Settlement and conducted interviews of six leading candidates following a formal, competitive, and arm's length RFP process. The parties to the Settlement participated in the interview process by being provided with the written proposals of each candidate, attending the interviews, asking questions of the candidates, and making recommendations to the Sales Officer regarding the selection of a broker.

6.  Based upon careful consideration, and after consultation with, and consent of, the parties to the Settlement, Serena Boardman of Sotheby's was deemed the best candidate, and the choice of the Sales Officer to act as broker. Among other things, Ms. Boardman is recognized as one of the leading brokers in New York City with respect to the sale of premier and super-luxury residences and apartments. Since joining Sotheby's in 2001, she sold in excess of $4 billion dollars in property. She is currently ranked the highest producing Sotheby's broker. The Wall Street Journal has ranked her as the number one broker in the United States by sales volume. She has set numerous sales records in New York City with respect to cooperative apartments,

including selling an apartment at 834 Fifth Avenue for $77.5 million in a transaction where she represented both the buyer and the seller. Sotheby's itself is also recognized as a leading brokerage firm, and virtually synonymous in the marketing of high-quality assets, with a vast network of domestic and overseas contacts and wealthy clients.

7.      Perhaps, most importantly, Ms. Boardman was the broker who actually sold the Residence to the Debtor in 2015, representing the prior owner, and obtained a handsome selling price. Accordingly, Ms. Boardman has direct, firsthand knowledge and familiarity with the Residence and experience selling apartments at the Sherry-Netherland. She and her team at Sotheby's are believed to be qualified to represent the Debtor's estate with respect to a resale of the Residence.

**Proposed Retention of Sotheby's**

8.      The Debtor is seeking Bankruptcy Court approval of Sotheby's retention pursuant to 11 U.S.C. §§327 and 328(a) and Bankruptcy Rules 2014 and 2016, in accordance with the engagement agreement, annexed as Exhibit "A" (the "Retention Agreement") to the Declaration of Ms. Boardman (the "Boardman Declaration"), filed contemporaneously herewith.

9.      The Retention Agreement outlines the terms and conditions of Sotheby's retention, and contains many customary provisions which have been tailored to the agreed bidding procedures outlined under the Settlement.

10.     Sotheby's shall be paid in accordance with a commission formula set forth in the Retention Agreement. The agreed upon commission proposed herein is three (3%) percent of the total purchase price for a direct sale involving no cooperating broker and four (4%) of the total purchase price, with 2% commission paid to Ms. Boardman and 2% commission paid to a cooperating broker if there is a cooperating broker. The proposed commission compares favorably

to the commissions proposed by certain of the other brokers interviewed by the Sales Officer. The Debtor requests that any requirement to maintain itemized or line-item time entries be waived for Sotheby's because of the nature of this commission-based compensation. The Retention Agreement also provides for reimbursement of marketing expenses, and Sotheby's is prepared to advance the funds necessary to market the Residence extensively throughout the world.

11. Sotheby's shall be retained for an initial term of 180 days from the entry of the Order approving its retention, which can be extended if necessary upon the consent of the parties to the Settlement without further order of the Court, or by further order of the Court for cause shown.

12. In the interim, the Sales Officer seeks to start the sale and marketing process as soon as possible. Thus, *nunc pro tunc* approval of the proposed retention is being sought as of the date of the Retention Agreement. The Debtor believes that *nunc pro tunc* employment of Sotheby's is warranted under the circumstances of this Chapter 11 case and allows the process to begin almost immediately. Further, the Debtor believes that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment because the Debtor's creditors are anxious for the sale process to begin as soon as possible as well, given the upcoming holidays and lingering questions regarding Covid-19's impact on travel.

13. Courts in this District routinely approve *nunc pro tunc* employment similar to that requested herein. *See, e.g., In re Walter Inv. Mgmt. Corp.*, No 17-13446 (JLG) (Bankr. S.D.N.Y. Dec. 28, 2017); *In re Westinghouse Elec. Co. LLC*, No. 17-10751 (MEW) (Bankr. S.D.N.Y. Aug. 3, 2017); *In re SquareTwo Fin. Servs. Corp.*, No. 17-10659 (JLG) (Bankr. S.D.N.Y. Apr. 28, 2017); *In re Eagle Bulk Shipping Inc.*, No. 14-12303 (SHL) (Bankr. S.D.N.Y. Sept. 19,

2014); *In re MPM Silicones, LLC*, No. 14-22503 (RDD) (Bankr. S.D.N.Y. Apr. 28, 2014); *In re Sbarro LLC*, No. 14-10557 (MG) (Bankr. S.D.N.Y. Apr. 7, 2014).

### Sotheby's Disinterestedness

14. As set forth in the Boardman Declaration, neither Ms. Boardman nor Sotheby's has any disqualifying relationships with the Debtor or its creditors, the Sales Officer, and other parties-in-interest. The existence of potential conflicts were disclosed by Sotheby's to the Sales Officer and parties to the Settlement during the request for proposal process. The Debtor, the Sales Officer and the parties to the Settlement are satisfied that Sotheby's qualifies as a "disinterested person" within the meaning of Section 101(14) of the Bankruptcy Code.

15. As noted above, Ms. Boardman and Sotheby's previously represented the prior owner of the Residence and brokered the sale to the Debtor in 2015. However, Ms. Boardman and Sotheby's did not represent the Debtor in that sale and only acted on behalf of the seller. Sotheby's has not represented the Debtor since, nor any of its creditors. As set forth in the Boardman Declaration, Sotheby's discloses that Miles Kwok attended a showing of a property on January 28, 2019, which was handled by other independent brokers at Sotheby's not Ms. Boardman. No sale or other transaction materialized from Mr. Kwok's attendance at that showing. Brokers unrelated to Ms. Boardman represented the Kwok family prior to joining Sotheby's. Those representations are closed, and neither Sotheby's, nor Ms. Boardman, were involved. These tangential interactions are noted in an effort to provide full transparency. In view of the foregoing, Sotheby's is disinterested and has no disabling conflicts which would impede its engagement as the broker for the sale of the Residence.

**Statutory Basis to Retain Sotheby's**

16.  The Debtor's ability as a debtor-in-possession to retain Sotheby's as broker springs out of its right to seek the engagement of professional persons under 11 U.S.C. §327(a), which provides in relevant portion that:

> the [debtor in possession], with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the [debtor in possession's] duties under this title.

Courts enjoy discretion to approve employment of professionals and should apply a fact intensive analysis to determine whether such employment is reasonable. *See Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 621 (2d Cir. 1999) ("When evaluating proposed retention, a bankruptcy court should exercise its discretionary powers over the approval of professionals in a manner which takes into account the particular facts and circumstances surrounding each case and the proposed retention") (internal citations and quotation marks omitted).

17.  The contingent fee arrangement for payment of commissions, as provided in the Retention Agreement, is authorized by Bankruptcy Code section 328(a), which provides:

> The [debtor in possession] …, with the court's approval, may employ or authorize the employment of a professional under section 327 or 1103 of this title … on any reasonable terms and conditions of such employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a).

18. Decisions relating to the sale of the Residence itself are committed to the exercise of sound business judgment under 11 U.S.C. § 363(b)(1). *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *see also In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 WL 6090194, at *5 (Bankr. D. Del. Nov. 20, 2012) (noting that it is "well-settled" that a debtor may use its assets outside the ordinary course where such use "represents the sound exercise of business judgment"); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (stating that judicial approval under Section 363 of the Bankruptcy Code requires a showing that the proposed action is fair and equitable, in good faith, and supported by a good business reason). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

19. Given the focus of the Settlement with the major creditors, the goal of the Chapter 11 case cannot possibly be achieved without the retention of a highly sophisticated and experienced broker to market and sell the Residence. Thus, the retention of Sotheby's and the compensation structure proposed herein is reasonable, easily meets the business judgment test, and constitutes a sound exercise of the Sales Officer's authority which received the unanimous support of the parties to the Settlement.

**Notice**

20. Notice of this Motion is being provided to Richard Morrissey, Esq., of the Office of the U.S. Trustee, all creditors and other parties-in-interest.

WHEREFORE, the Debtor respectfully prays for the entry of the pre-fixed Order approving the retention of Sotheby's as the Debtor's real estate broker.

Dated: New York, New York
December 14, 2021

                         GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP
                         Attorney for the Debtor
                         1501 Broadway, 22nd Floor
                         New York, New York 10036
                         (212) 221-5700

                         By:   /s/ Kevin J. Nash, Esq.
                                Kevin J. Nash, Esq.

                         Genever Holdings LLC

                         By:   /s/ Melanie L. Cyganowski
                                Name: Melanie L. Cyganowski
                                Title:  Sales Officer