UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:                                                                    Chapter 11

GENEVER HOLDINGS LLC,                                   Case No. 20-12411 (JLG)

                              Debtor.
-------------------------------------------------------x

## **DEBTOR'S LIQUIDATING PLAN OF REORGANIZATION**

Genever Holdings LLC (the "Debtor") hereby proposes the following Chapter 11 liquidating plan of reorganization (the "Plan") pursuant to the provisions of Title 11 of the United States Code (the "Bankruptcy Code").

## **FRAMEWORK OF THE PLAN**

The Debtor is a New York limited liability company and the legal owner of a luxury apartment and auxiliary units on the 18th floor of The Sherry-Netherland Inc. ("The Sherry"), located at 781 Fifth Avenue, New York, NY 10022 (the "Residence").[1] The Debtor's sole member is Genever Holdings Corporation (a BVI company), a special purpose company organized in the British Virgin Islands under the management of Kwok Ho Wan ("Miles Kwok").

The Debtor sought Chapter 11 relief on October 12, 2020 in the face of a dispute in multiple courts relating to claims concerning the beneficial ownership of the Residence as between Bravo Luck Limited ("Bravo Luck") and Pacific Alliance Asian Opportunity Fund ("PAX"). This dispute is the subject of pending litigation in the Supreme Court, New York County (Index No. 652077/2017) (the "New York Court") and in the Eastern Caribbean Supreme Court, Virgin Islands, In the High Court of Justice, Commercial Division (Index. No.

---

[1] The Residence consists of 3,050 cooperative shares allocable to apartment 1801, MR 22119 and MR 719 under proprietary leases between The Sherry, as lessor, and the Debtor, as lessee.

BVIHCM2020/0137) (the "BVI Court" and the "BVI Action"). This litigation has been generally referred to as the "Ownership Dispute" throughout the Chapter 11 case, and is defined as such for the purposes of this Plan.

Bravo Luck asserts that it is the beneficial owner of the Residence, with the Residence being held in trust by Miles Kwok for Bravo Luck's benefit (separate and apart from Miles Kwok's creditors) pursuant to a certain Declaration of Trust and Agreement dated February 17, 2015 (the "Trust Agreement"). Alternatively, Bravo Luck contends that, if a court with appropriate jurisdiction determines that Bravo Luck does not retain beneficial ownership of the Residence, then Bravo Luck retains a general unsecured claim[2] against the Debtor in an amount of not less than $76,296,746.85, arising from its funding of the purchase of the Residence in 2015 and other funds paid by Bravo Luck to maintain the Residence thereafter.

For its part, PAX currently holds a judgment against Miles Kwok in the sum of $116,402,019.57 (the "Kwok Judgment") in connection with the guaranty of an unrelated loan transaction. Miles Kwok has filed an appeal of the Kwok Judgement, which is currently pending in the New York Supreme Court, Appellate Division, First Judicial Department at Appellate Case No. 2021-00740. PAX has asserted a monetary unsecured claim against the Debtor for the amount of the Kwok Judgment under the theory that the Debtor is the alter ego of Miles Kwok. Therefore, PAX asserts that the Debtor is liable for the Kwok Judgment, and does not recognize the interest or claims of Bravo Luck.

In the face of the competing claims and multiple lawsuits, the Debtor sought Chapter 11 relief in order to be in a position to pursue a sale of the Residence (the "Sale") and monetize the

---

[2] Bravo Luck's proof of Claim also reserves the right to amend such Claim or file a motion to assert that the amount of The Sherry's security deposit funded by Bravo Luck which has been subsequently drawn-down and applied by The Sherry for post-petition maintenance obligations pursuant to Order dated May 31, 2021 (ECF No. 107), constitutes an administrative expense claim.

2

asset under a stable and transparent framework consistent with the Bankruptcy Code while the pending litigations proceed to conclusion in New York and the British Virgin Islands.  During the Chapter 11 case, and after arduous negotiations, the Debtor was able to reach a comprehensive global settlement with Bravo Luck and PAX pursuant to that certain Second Amended and Restated Settlement Agreement dated September 24, 2021 (ECF No. 131), and approved by order of the Court dated October 8, 2021 (ECF No. 141), a copy of which is annexed to the Disclosure Statement as <u>Exhibit</u> "A" (the "<u>Global Settlement</u>").  At its core, the Global Settlement establishes a consensual bankruptcy process for the sale of the Residence under the stewardship of Melanie L. Cyganowski as the Debtor's employee and duly appointed Sales Officer.  An order approving the employment of Ms. Cyganowski as Sales Officer was entered on October 8, 2021 (ECF No. 142).  The Sales Officer has the authority to direct the sale and marketing process of the Residence pursuant to the Global Settlement.  The Sales Officer subsequently selected Serena Boardman of Sotheby's International Realty to serve as the Debtor's real estate agent and broker for the Sale and the Debtor has moved for approval of this retention (ECF No. 160).

     For purposes of the Plan, the Global Settlement is hereby expressly incorporated by reference and shall remain fully enforceable and binding on the signatories thereto, to wit, the Debtor, Bravo Luck and PAX on a post-confirmation basis through completion of the Sale.  At bottom, the Plan provides the mechanism to implement the Global Settlement, sell the Residence (subject to the approval of The Sherry under its internal rules and regulations and in accordance with applicable non-bankruptcy law), and to distribute the proceeds realized therefrom to the holders of Allowed Claims and Interests.

It is contemplated that the Ownership Dispute will be determined outside of the Bankruptcy Court, unless Bravo Luck's alternate contention that it retains a monetary claim against the Debtor is not determined in the BVI Action on the merits. In such event, the validity of Bravo Luck's monetary claim may be adjudicated in the Bankruptcy Court, or such other court of competent jurisdiction to hear the matter.

Since approval of the Global Settlement, PAX has sought a turnover of the Membership Interest of Genever Holdings Corporation based upon judgment enforcement against Miles Kwok. The turnover proceeding is currently being litigated in the BVI Court. Notwithstanding the pending turnover proceeding, the Global Settlement and the terms of this Plan shall continue in full force and effect without change or modification through the completion of the Sale and consummation of this Plan.

## ARTICLE I

## DEFINITIONS

All capitalized terms used herein shall have the meanings set forth below.

1.1  **Administrative Expense Claim** means a Claim for the costs and expenses of administering the Chapter 11 case allowed under §§ 503(b) and 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of maintaining and preserving the Residence; and (b) the awarded compensation and reimbursement of expenses for the Debtor's bankruptcy counsel and the awarded or agreed compensation and expenses of the Sales Officer.

1.2  **Allowed** means, with reference to any Claim, proof of which was timely and properly filed or, if no proof of Claim was filed, that has been or hereafter is listed by the Debtor on its Schedules of Assets and Liabilities as liquidated in amount and not disputed or contingent and, in each case, as to which: (a) no objection to allowance has been interposed within the applicable period fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the local rules of this Bankruptcy Court, or the Bankruptcy Court; or (b) an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order.

1.3  **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of New York.

4

1.4   "**Bar Date**" means March 10, 2021, as the last date set by the Bankruptcy Court to file a Claim against the Debtor.

1.5   "**Bravo Luck Interest**" means the beneficial ownership interest in the Debtor and, ultimately, in the Residence asserted by Bravo Luck.

1.6   "**Broker**" means Serena Boardman of Sotheby's International Realty pursuant to Order of the Bankruptcy Court to be entered approving the Broker's proposed retention.

1.7   "**Claim**" means a claim against the Debtor as defined in Bankruptcy Code § 101(5).

1.8   "**Claim Objection Deadline**" shall mean sixty (60) business days after the Ownership Dispute is finally adjudicated in both the New York Court and the BVI Court pursuant to a Final Order, unless otherwise extended by the Bankruptcy Court.  To the extent there is a surviving Claim against the Debtor following the complete adjudication of the Ownership Dispute, then in that event the Bankruptcy Court or any other court of competent jurisdiction shall determine the allowance or disallowance of such Claim.

1.9   "**Closing**" means the day when the Debtor or Reorganized Debtor transfers all right, title and interest in the Residence to a third-party buyer and consummates a sale transaction pursuant to an order of the Bankruptcy Court.

1.10  "**Confirmation**" means approval of the Plan by the Bankruptcy Court.

1.11  "**Confirmation Hearing**" means the hearing or hearings before the Bankruptcy Court to consider approval of the Plan.

1.12  "**Confirmation Order**" means the order of the Bankruptcy Court approving the Plan pursuant to Bankruptcy Code § 1129.

1.13  "**Creditor**" means the holder of a Claim against the Debtor.

1.14  "**Effective Date**" means the first business day on which the Confirmation Order becomes a Final Order.

1.15  "**Escrow**" means the escrow account established by the Debtor with the Escrow Agent for the deposit of the Net Sale Proceeds after payment of, or funding of the Reserves for (to extent applicable), Allowed Administrative Expense Claims (including brokerage commissions, the Sales Officer's compensation, professional fees and expenses, and customary closing costs and expenses), U.S. Trustee Fees, Allowed Priority Tax Claims, if any, the Allowed Class 1 Claim of The Sherry, and the Allowed Class 4 Claims of Unsecured Creditors.

1.16  "**Escrow Agent**" means a national bank as agreed by the Debtor, PAX and Bravo Luck to hold the Net Sale Proceeds in Escrow.

1.17  "**Final Order**" means an order or judgment of the New York Court, the BVI Court, or the Bankruptcy Court (as applicable) that has not been reversed, stayed, modified, or amended and as to which the time to appeal has expired, or if any appeal has been sought, the order or judgment of the New York Court, the BVI Court, or the Bankruptcy Court (as applicable) has been affirmed by the highest court to which the order or judgment was appealed from and the time to take any further appeal has expired.

1.18  "**Interests**" means, collectively, the Bravo Luck Interest and Membership Interest.

1.19  "**Membership Interests**" means the membership interests of Genever Holdings Corporation in the Debtor.

1.20  "**Net Sale Proceeds**" means the Sale Proceeds to be deposited into the Escrow after payment of, or funding of the Reserve for (to extent applicable), Allowed Administrative Expense Claims (including professional fees and expenses, the Sales Officer's compensation, brokerage commissions, and customary closing costs and expenses), U.S. Trustee Fees, Allowed Priority Tax Claims, if any, the Allowed Claim of The Sherry and the Class 4 Claims of Unsecured Creditors.

1.21  "**Ownership Dispute**" means the pending litigation in the New York Court and the BVI Court relating to the respective claims, defenses and counterclaims of the Debtor, Bravo Luck and PAX concerning or relating to (i) the Debtor's alleged alter ego liability for the Kwok Judgment; (ii) a determination of Bravo Luck's beneficial ownership of the Residence; (iii) the claims of Bravo Luck relating to the funding of the purchase of the Residence and the Sherry Security Deposit (defined below); and (iv) disposition of the Membership Interests of Genever Holdings Corporation in the Debtor.

1.22  "**Petition Date**" means October 12, 2020, the date on which the voluntary petition commencing this Chapter 11 case was filed.

1.23  "**Priority Tax Claim**" means any Claim of a federal, or local taxing authority for real estate taxes or related charges.

1.24  "**Reorganized Debtor**" means the Debtor after confirmation of the Plan.

1.25  "**Reserve**" means the reserve account(s) established by the Debtor prior to, or at, Closing, in which sufficient funds from the Sale Proceeds will be deposited at Closing to fund the payment of Administrative Expense Claims, provided that, in the event an Administrative Expense Claim has not been filed as of the date of the Closing, the amount to be funded in the Reserve may be estimated by the Debtor in consultation with PAX, Bravo Luck, and the Sales Officer.

1.26 "**Sales Officer**" means Melanie L. Cyganowski pursuant to the order of the Bankruptcy Court approving her employment with the Debtor (ECF No. 142).

1.27 "**Sale Proceeds**" means the total proceeds generated from the Sale of the Residence as paid by a third-party buyer at Closing.

1.28 "**Unsecured Claim**" means an Allowed general unsecured claim arising prior to the Petition Date not entitled to priority under the Bankruptcy Code or otherwise secured by property of the Debtor, excluding the Claims of Bravo Luck, PAX and The Sherry (to the extent The Sherry Claim is not secured).

1.29 "**Unsecured Creditor**" means the holder of an Allowed Unsecured Claim against the Debtor, except for Bravo Luck, PAX and The Sherry.

1.30 "**U.S. Trustee Fees**" means fees payable pursuant to 28 U.S.C. § 1930, together with any statutory interest.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

The Claims and Interests as defined by the Plan hereunder are classified as follows:

**Class 1** – Allowed Claim of The Sherry.

**Class 2** – Allowed Bravo Luck Claim and Bravo Luck Interest, if any.

**Class 3** – Allowed Claim of PAX, if any.

**Class 4** – Allowed Claims of Unsecured Creditors.

**Class 5** – The Membership Interest of Genever Holdings Corporation.

## ARTICLE III

## MEANS FOR IMPLEMENTATION OF THE PLAN

3.1 **Ratification and Continuation of the Global Settlement**. The Plan is intended to continue and implement the Global Settlement and carry forward all its terms and conditions (without change). Thus, approval and confirmation of the Plan shall constitute ratification and reconfirmation of the Global Settlement on a post-confirmation basis by the signatories thereto, providing for the Sale and distribution of the Sale Proceeds.

7

3.2 **Ratification and Continuation of the Sales Officer and Broker**.  The Debtor and Reorganized Debtor shall continue the employment of Melanie L. Cyganowski as the Sales Officer and Serena Boardman of Sotheby's International Realty as the Broker on a post-confirmation basis on the same terms and conditions specified under their respective retention orders.

3.3 **Post-Confirmation Marketing of the Residence**.  The Sales Officer and Broker shall continue to pursue the marketing and sale of the Residence on a post-confirmation basis in accordance with the Global Settlement and their respective retention orders.

3.4 **Sale Free and Clear of All Claims, Liens, Taxes and Interests.**  The sale of the Residence shall be made on a post-confirmation basis, free and clear of all liens, claims, taxes and interests pursuant to 11 U.S.C. §§ 363(b) and (f) and 1123(a)(5), with the same liens, claims, taxes and interests – to the same extent and in the same priority – attaching to the Net Sale Proceeds.  The Net Sale Proceeds shall be held and maintained by the Escrow Agent in accordance with the Global Settlement, the terms of this Plan, or further order of the Bankruptcy Court.  The Sale of the Residence shall be subject to separate motion filed by the Debtor with the Bankruptcy Court on notice to all of the Debtor's creditors and other parties-in-interest, and entry of an appropriate Order of the Bankruptcy Court.

3.5 **Approval Rights of The Sherry.**  The sale of the Residence shall remain subject to the consent and approval rights of The Sherry under its internal rules and regulations relating to the sale of cooperative apartments in the hotel.

3.6 **Transfer Taxes**.  The sale of the Residence constitutes the making or delivery of an instrument of transfer of property or otherwise, pursuant to or in connection with confirmation of the Plan, and, therefore, the sale of the Residence shall be exempt from the payment of any

8

City or State stamp, real estate transfer, or other similar tax or governmental assessment pursuant to 11 U.S.C. §1146(a).

3.7     **Release of Sales Officer.**  Upon the Closing, the Debtor, Pax and Bravo Luck, for themselves and on behalf of their agents, representatives, employees, attorneys, successors and assigns, release, acquit, and forever discharge the Sales Officer and her agents, representatives and attorneys from any and all claims, demands, debts, liabilities, causes of action, obligations, and liabilities of any kind, which the Debtor, Pax and Bravo Luck, collectively or individually, could have had, claim to have had or could ever have, whether at law or in equity, whether known or unknown, whether anticipated or unanticipated, arising from the beginning of time through and including the Closing Date.

## ARTICLE IV

## UNCLASSIFIED CLAIMS

Pursuant to Section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Expense Claims, Priority Tax Claims or U.S. Trustee Fees, all of which shall be paid in full as required by 11 U.S.C. §1129(a)(9).

4.1     **Administrative Expense Claims**.  Administrative Expense Claims primarily consist of the costs and expenses of maintaining, preserving and selling the Residence during the Chapter 11 case, including allowed brokerage commissions, the Sales Officer's allowed compensation, and allowed professional fees and expenses.  Following Bankruptcy Court approval, each holder of an Administrative Expense Claim[3] shall be paid at the Closing or as soon thereafter as is practicable from the Sale Proceeds or from the Reserve.

4.2     **Professional Fees, Sales Officer Compensation and Broker Commissions**. The requests for allowance of professional fees and expenses by the Debtor's counsel, the

---

[3] Additionally, Golden Spring New York Ltd. and Qiang Guo retain the right to amend their claim or file a motion to assert reimbursement as an administrative expense claim for the amounts paid out of the Sherry Security Deposit to pay post-petition maintenance and common charges.

compensation to be paid to the Sales Officer, and the commissions to be paid to the Broker for all services rendered prior to the Effective Date may be filed in conjunction with a motion to approve the sale of the Residence, but must be filed no later than thirty (30) days after the Closing. After notice and a hearing, as applicable, the allowed professional fees and expenses, compensation to the Sales Officer and commissions to the Broker, shall be paid from the Sale Proceeds at Closing (or from the Reserve created for these items at Closing) pursuant to appropriate Orders awarding such fees, expenses, compensation or commissions.

4.3     **Priority Tax Claims**. The Debtor does not believe that there are any outstanding Priority Tax Claims relating to the Residence. However, any such Allowed Claim that may arise shall be treated as a Priority Tax Claim for purposes of the Plan and shall be paid in full at the Closing or shortly thereafter from the Sale Proceeds.

4.4     **U.S. Trustee Fees**. The Debtor shall pay the accrued and billed U.S. Trustee Fees, together with any interest thereon, until the Chapter 11 case is closed by entry of a Final Decree. The U.S. Trustee Fees due in connection with the Sale itself shall be paid at Closing from the Sale Proceeds.

## ARTICLE V

## CLASSIFICATION AND TREATMENT OF CLAIMS

The Plan classifies Claims and Interests against the Debtor consistent with the applicable provisions of the Bankruptcy Code.

5.1     **Summary**. The categories listed below classify Claims and Interests against the Debtor for all purposes, including voting, confirmation and distribution pursuant to Sections 1122 and 1123(a)(l) of the Bankruptcy Code, as summarized below:

11

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| Class 1 | Allowed Claim of The Sherry | No | No |
| Class 2 | Allowed Bravo Luck Claim and Bravo Luck Interest | Yes | Yes |
| Class 3 | Allowed Claim of PAX | Yes | Yes, if Allowed |
| Class 4 | Unsecured Claims | Yes | Yes |
| Class 5 | Membership Interest | N/A | N/A |

**Class 1: The Allowed Claim of The Sherry**

    5.1    **Classification** – Class 1 consists of the Allowed Claim of The Sherry.

**Background** – The Sherry has filed a pre-petition Claim for unpaid rent, additional rent, maintenance and assessments in the total sum of not less than $891,462.06. As of the Petition Date, The Sherry held a security deposit in sum of approximately $3 million (the "Sherry Security Deposit"), which has been used to pay the Debtor's post-petition unpaid rent, additional rent, maintenance and assessments pursuant to prior order of the Bankruptcy Court (ECF No. 107) (the "Sherry Payment Order").

**Treatment** – The Sherry's allowed pre-petition claim shall be paid in full, in cash, from either the Sherry Security Deposit or Sale Proceeds upon the Closing ("The Sherry Pre-petition Claim"). Additional allowed amounts owing to the Sherry pursuant to the proprietary leases that are not paid pursuant to the Sherry Payment Order, including attorneys' fees, interest, late fees, and other charges, shall also be paid in full, in cash, as an Allowed Administrative Expense Claim, from the Sherry Security Deposit or the Sale Proceeds upon the Closing ("The Sherry Administrative Claim", and together with The Sherry Pre-petition Claim, the "Allowed Claim of The Sherry").[4]

---

[4] The Sherry Security Deposit, if any, remains subject to the claim of Bravo Luck, Golden Spring or Qiang Guo as the party that originally funded the security deposit (as described more fully in each Bravo Luck's, Golden Spring's and Qiang Guo's proofs of Claim). Any dispute as to the

**Class 2: The Allowed Bravo Luck Claim and Bravo Luck Interest**

    5.2    **Classification** – Class 2 consists of the Bravo Luck Claim and Bravo Luck Interest.

**Background** – Bravo Luck asserts that it is the beneficial owner of the Residence (independent of PAX's claims against Miles Kwok). Alternatively, if Bravo Luck is not recognized as the beneficial owner of the Residence, Bravo Luck filed a monetary claim (Claim number 4) against the Debtor for the funds advanced by Bravo Luck to the Debtor to acquire the Residence in 2015 – all as set forth more fully in Bravo Luck's Claim.

**Treatment** – To the extent that Bravo Luck prevails on its claim of beneficial ownership of the Residence, then Bravo Luck shall receive the Net Sale Proceeds and there shall be no further distributions to PAX as the unsuccessful party in the Ownership Dispute. Alternatively, if Bravo Luck does not prevail on its claim of beneficial ownership of the Residence, the allowance or disallowance of Bravo Luck's Claim shall then be determined either as part of the Ownership Dispute in the BVI Court, or potentially in the Bankruptcy Court or such other court of competent jurisdiction. To the extent Bravo Luck's Claim is Allowed (in whole or part) for a sum of money pursuant to Final Order, then in such event Bravo Luck shall be paid from the Net Sale Proceeds on a *pro rata* and *pari passu* basis with PAX to the extent of their respective Allowed Claims.

**Class 3: The Claim of PAX**

    5.3    **Classification** - Class 3 consists of the Claim of PAX.

**Background** – PAX has filed a disputed monetary claim for the amount of the Kwok Judgment, alleging that the Debtor is the alter ego of Miles Kwok.

---

entitlement to the balance of the Sherry Security Deposit shall be determined by the Bankruptcy Court following the Closing.

**Treatment** – To the extent that (i) PAX prevails on its monetary claim against the Debtor in the Ownership Dispute; (ii) Bravo Luck is not recognized as the beneficial owner of the Residence; and (iii) Bravo Luck's monetary claim is disallowed pursuant to Final Order, then, in such circumstances, PAX shall be paid the Net Sale Proceeds from Escrow and Bravo Luck shall not receive a distribution as the unsuccessful party in the Ownership Dispute.

Conversely, to the extent that (i) PAX prevails on its monetary claim against the Debtor; (ii) Bravo Luck is not recognized as the beneficial owner of the Residence; but (iii) Bravo Luck is recognized to have an Allowed monetary claim against the Debtor for advancing the funds to purchase the Residence, then, in such circumstances, the Net Sale Proceeds shall be paid to Bravo Luck and PAX on a *pro rata* and *pari passu* basis to the extent of their respective Allowed Claims.

**Class 4: Unsecured Claims**

5.4   **Classification** – Class 4 consists of the Unsecured Claims.

**Background** – The Unsecured Claims have been filed by Golden Spring New York Ltd. ("Golden Spring" or "GSNY") and Qiang Guo ("Guo") for monies expended to establish the Sherry Security Deposit and maintain the Residence pre-petition and fund certain expenses, costs, and attorneys' fees in connection with the original acquisition of the Residence in 2015, each as set forth more fully in the applicable proof of Claim.

**Treatment** – To the extent Allowed, the Class 4 Claims of GSNY and GUO shall be paid in full from the Escrow prior to any distribution of the Net Sale Proceeds to either Bravo Luck or PAX.  If the Class 4 Claims are subject to an objection filed on or before the Claim Objection Date, then in such event, a separate reserve shall be established with the Escrow Agent

14

from the Net Sale Proceeds in an amount sufficient to pay the Class 4 Claims in full, should the Claims to GSNY and Guo be ultimately allowed pursuant to Final Order.

**Class 5:  Membership Interest**

5.5     **Classification** – Class 5 consists of the 100% Membership Interest of Genever Holdings Corporation in the Debtor.

**Treatment** – The disposition of the Membership Interest of Genever Holdings Corporation shall be determined in the context of the Ownership Dispute.  Pending such a determination pursuant to Final Order, Genever Holdings Corporation shall continue as the sole member of the Debtor and Reorganized Debtor, as applicable, to carry out and implement the Global Settlement, and the terms of this Plan, which shall remain in full force and effect irrespective of the final disposition of PAX's pending turnover proceeding in the BVI Court.

## ARTICLE VI

## DISPOSITION OF EXECUTORY CONTRACTS

6.1     **Proprietary Leases**.  The Debtor's right, title and interest in and to the proprietary leases for the Residence are viewed as interests in real property (not true leases) for the purposes of the Debtor's Chapter 11 case.  Accordingly, the proprietary leases for the Residences are not subject to the provisions of 11 U.S.C. § 365 and the Debtor is not a party to any executory contract for purposes of the Chapter 11 case.  Notwithstanding the foregoing, to the extent any proprietary leases or any other agreement or lease to which the Debtor is a party is deemed to be an executory contract or unexpired lease under 11 U.S.C. §365, then the Debtor in such event reserves the right to assume and assign such executory contract or unexpired lease as necessary to convey title to the Residence as part of the Sale.

15

# ARTICLE VII

## CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN

7.1    This Plan is conditioned upon the entry of the Confirmation Order which becomes a Final Order.

# ARTICLE VIII

## DISTRIBUTIONS

8.1    **Creation of Escrow at Closing**.  At Closing, the Escrow shall be created from the Net Sale Proceeds.  If the Ownership Dispute is still pending at the time of the Closing, the Escrow shall remain in existence until final adjudication of the Ownership Dispute or further proceedings in the Bankruptcy Court or any other court of competent jurisdiction relating to allowance or disallowance of the Claims of Bravo Luck or PAX.  At the Closing, an escrow agreement containing customary terms and conditions in a form and content reasonably acceptable to the Debtor, Bravo Luck and PAX shall be prepared and executed by the Debtor and the Escrow Agent.  Following the Closing, there shall be no distributions from the Escrow except upon Bankruptcy Court Order or the mutual agreement of the Debtor, Bravo Luck and PAX.  In the event there are insufficient funds in the Reserve to pay for Administrative Expense Claims, the funds sufficient to pay Administrative Expense Claims may be transferred from the Escrow to the Reserve upon Bankruptcy Court Order or the mutual agreement of the Debtor, Bravo Luck and PAX.

8.2    **Disputed Claims**.    No distributions from the Escrow shall be made with respect to the Class 2 and 3 Claims or Interests held by Bravo Luck or PAX until there has been a Final Order adjudicating the Ownership Dispute, and, to the extent applicable, a Final Order adjudicating the allowance or disallowance of the Claims of Bravo Luck and PAX.  The Debtor,

16

Bravo Luck and PAX shall have standing to object to each other's Claims (as well as the Claims of Unsecured Creditors, subject to the Claim Objection Deadline). Notwithstanding anything herein to the contrary, distributions to the holders of Allowed Class 4 Unsecured Claims shall be made (i) upon the expiration of the Claim Objection Deadline; or (ii) if an objection to a Class 4 Unsecured Claim is timely filed, as soon as reasonably practicable after entry of a Final Order Allowing such Class 4 Unsecured Claim from the Net Sale Proceeds or any reserves established in connection therewith.

## ARTICLE IX

## RETENTION OF JURISDICTION

9.1     **Retention of Jurisdiction**. The Bankruptcy Court shall retain post-confirmation jurisdiction over the following matters:

9.1.1    To approve the sale of the Residence and otherwise implement the Global Settlement and ensure that the Plan is substantially consummated.

9.1.2    To resolve all matters arising under or relating to the Plan or Global Settlement, including, without limitation, (i) disputes relating to the Sale of the Residence; (ii) any disputes relating to, or involving the Sherry in connection with the Sale; (iii) distribution of the Net Sale Proceeds; and (iv) any action by PAX to modify, alter or change the Global Settlement or Plan following completion of turnover proceedings in the BVI Court.

9.1.3    To the extent applicable or necessary, jurisdiction to allow or disallow in whole or in part the Claims of PAX or Bravo Luck not otherwise adjudicated in connection with the Ownership Dispute by the New York Court or the BVI Court or by such other court of competent jurisdiction.

       9.1.4    To grant or deny the applications for allowance of final compensation and reimbursement of expenses for the Debtor's counsel, the Sales Officer and the Broker.

       9.1.5    To decide all disputes relating to distribution or disbursement of the Sale Proceeds or the Escrow.

       9.1.6    To enter an order or final decree concluding the Chapter 11 case following the sale of the Residence, resolution of all Claims and Interests, and distribution of the Escrow.

## ARTICLE X

## GENERAL PROVISIONS

10.1    **Headings**.  The headings in the Plan are for reference purposes only.

10.2    **Contents of Confirmation Order**.  The Confirmation Order shall be in form and substance satisfactory to the Debtor, Bravo Luck and PAX, and may contain various provisions deemed necessary to clarify, implement or enforce the Plan or Global Settlement.

10.3    **No Modification of the Plan**.  The Plan may not be altered, amended or modified by the Debtor or Reorganized Debtor without the unanimous consent of the Debtor, PAX and Bravo Luck or order of the Bankruptcy Court.

10.4    **Quarterly Fees**.  All fees payable pursuant to 28 U.S.C. § 1930, together with any applicable interest thereon, shall be paid by the Debtor and the Reorganized Debtor until the closing of the Chapter 11 case under 11 U.S.C. §350(a).

10.5    **Post-Confirmation Reports**.  The Debtor or Reorganized Debtor, as applicable, shall file quarterly status reports until the Chapter 11 case is closed.

10.6    **Continuation of the Debtor and Reorganized Debtor**.  The Debtor and Reorganized Debtor, as applicable, shall continue in existence as a duly constituted New York limited liability company, duly authorized to carry out the Global Settlement and the terms of the

Plan, and to execute all documents or other instruments in connection with the sale of the Residence and establishment of the Escrow. The Reorganized Debtor shall not be dissolved until after the entry of a final decree closing this Chapter 11 case.

10.7 **Successors and Assigns.** This Plan shall be binding and enforceable upon and inure to the benefit of the Debtor, the Reorganized Debtor, Bravo Luck, PAX and all other holders of Allowed Claims, together with their respective successors, assigns and heirs.

Dated: New York, NY
January 6, 2022

| | |
|---|---|
| Genever Holdings LLC | Goldberg Weprin Finkel Goldstein LLP<br>Attorneys for the Debtor<br>1501 Broadway, 22nd Floor<br>New York, NY 10036 |
| By:  /s/ Yanping Wang | By:  /s/Kevin J. Nash |