UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                                                    Chapter 11

GENEVER HOLDINGS LLC,                                    Case No. 20-12411 (JLG)

                                         Debtor.
-----------------------------------------------------------x

## DEBTOR'S DISCLOSURE STATEMENT

The Debtor herein, Genever Holdings LLC (the "Debtor"), submits this disclosure statement pursuant to 11 U.S.C. §1125 (the "Disclosure Statement") in support of the Debtor's accompanying Chapter 11 liquidating plan of reorganization (as it may be amended or supplemented, the "Plan") (ECF No. 164).  Capitalized and defined terms used in the Plan shall have the meanings for purposes of the Disclosure Statement.

**THE DEBTOR ANTICIPATES THAT THE PLAN WILL GAIN THE SUPPORT OF CREDITORS AND ACHIEVES THE OVERRIDING GOAL OF IMPLEMENTING THE PARTIES' GLOBAL SETTLEMENT ESTABLISHING PROCEDURES FOR THE MARKETING AND SALE OF THE DEBTOR'S RESIDENCE WHILE THE PENDING LITIGATIONS BETWEEN BRAVO LUCK LIMITED, MILES KWOK AND PACIFIC ALLIANCE ASIAN OPPORTUNITY FUND PROCEED TO CONCLUSION.**

### I. INTRODUCTION

The Debtor is a New York limited liability company and the owner of a luxury apartment and auxiliary units on the 18th floor of The Sherry-Netherland Inc. ("The Sherry"), located at 781 Fifth Avenue, New York, NY 10022 (the "Residence").  The Debtor's sole member is Genever Holdings Corporation ("Genever Member"), a special purpose company organized in the British Virgin Islands under the management of Kwok Ho Wan ("Miles Kwok").

The Debtor sought Chapter 11 relief on October 12, 2020 in the face of multiple court disputes relating primarily to the beneficial ownership of the Residence as between Bravo Luck Limited ("Bravo Luck") and Pacific Alliance Asian Opportunity Fund ("PAX").  The litigation is

1

pending in the Supreme Court, New York County (Index No. 652077/2017) (the "New York Court") and in the Eastern Caribbean Supreme Court in the British Virgin Islands (Index. No. BVIHCOM2020/0137) (the "BVI Court"). The litigation has been generally referred to as the "Ownership Dispute" throughout the Chapter 11 case, and is defined as such for the purposes of the Plan and this Disclosure Statement.

Bravo Luck asserts that it is the beneficial owner of the Residence, with the Residence being held in trust by Miles Kwok for Bravo Luck's benefit (separate and apart from Miles Kwok's creditors) pursuant to a certain Declaration of Trust and Agreement dated February 17, 2015 (the "Trust Agreement"). Alternatively, Bravo Luck also contends that, if a court with appropriate jurisdiction, determines that Bravo Luck does not retain beneficial ownership of the Residence, then Bravo Luck retains a general unsecured claim against the Debtor in an amount of not less than $76,296,746.85, arising from its funding of the purchase of the Residence in 2015 and other funds paid by Bravo Luck to maintain the Residence thereafter.

For its part, PAX currently holds a judgment against Miles Kwok in the sum of $116,402,019.57 (the "Kwok Judgment") in connection with the guaranty of an unrelated loan transaction. Miles Kwok has filed an appeal of the Kwok Judgement, which is currently pending in the New York Supreme Court, Appellate Division, First Judicial Department at Appellate Case No. 2021-00740. PAX has asserted an unsecured monetary claim against the Debtor for the amount of the Kwok Judgment under the theory that the Debtor is the alter ego of Miles Kwok. Therefore, PAX asserts that the Debtor is liable for the Kwok Judgment, and does not recognize the beneficial interest or claims of Bravo Luck.

In the face of the competing claims and multiple lawsuits, the Debtor sought Chapter 11 relief in order to be in a position to pursue a sale of the Residence (the "Sale") and monetize the

2

asset. During the Chapter 11 case, the Debtor was able to reach a comprehensive global settlement with Bravo Luck and PAX. The settlement is embodied in that certain Second Amended and Restated Settlement Agreement dated September 24, 2021 (ECF No. 131), which was subsequently approved by Order of the Bankruptcy Court on October 8, 2021 (ECF No. 141), a copy of which is annexed to the Disclosure Statement as <u>Exhibit</u> "A" (the "<u>Global Settlement</u>").

At its core, the Global Settlement establishes a consensual framework for the sale of the Residence under the stewardship of Melanie L. Cyganowski as the Debtor's employee and duly appointed Sales Officer. The Sales Officer has the authority to direct the sale and marketing process of the Residence, and Ms. Cyganowski has subsequently selected Serena Boardman of Sotheby's International Realty ("<u>Sotheby's</u>") to serve as the Debtor's real estate agent and broker for the Sale.

For purposes of the Plan, the Global Settlement is expressly incorporated by reference and shall remain fully enforceable and binding on the signatories thereto, to wit, the Debtor, Bravo Luck and PAX on a post-confirmation basis. Fundamentally, the Plan provides the mechanism to implement the Global Settlement and sell the Residence pending resolution of the Ownership Dispute.

It is contemplated that the Ownership Dispute will be determined outside of the Bankruptcy Court, unless Bravo Luck's alternate contention that it retains an unsecured monetary claim against the Debtor is not determined in the BVI Action on the merits. In such event, the validity of Bravo Luck's monetary claim may be adjudicated in the Bankruptcy Court, or such other court of competent jurisdiction to hear the matter.

Since approval of the Global Settlement, PAX has sought a turnover of the Membership Interest of Genever Holdings Corporation based upon judgment enforcement against Miles Kwok. The turnover proceeding is currently being litigated in the BVI Court. Notwithstanding the pending turnover proceeding, the Global Settlement and the terms of this Plan shall continue in full force and effect without change or modification through the completion of the Sale and consummation of the Plan.

## II.    THE CONFIRMATION PROCESS

### A.    The Scope of this Disclosure Statement

This Disclosure Statement has been prepared by the Debtor in consultation with its attorneys, Goldberg Weprin Finkel Goldstein LLP. The purpose of this Disclosure Statement is to provide creditors and other parties-in-interest with relevant information regarding the Debtor's assets, financial affairs and reorganization strategy to make an informed decision on the Plan.

The Debtor is cognizant that the litigation surrounding the Ownership Dispute is highly contentious. Thus, this Disclosure Statement attempts to highlight the parties' main contentions without adopting a specific position, except to note that the Debtor recognizes the beneficial ownership of Bravo Luck and disputes that Miles Kwok is the Debtor's alter ego. While these matters are currently being litigated outside of bankruptcy, the Plan provides for a continuation of the Sale process pending a final determination of the Ownership Dispute. Under the Plan, the Net Sale Proceeds (after payment at closing, or shortly thereafter, of allowed Administrative Expense Claims, Priority Claims and other allowed Claims) shall be deposited into Escrow.

The Disclosure Statement has been approved by the Bankruptcy Court as containing adequate information within the meaning of 11 U.S.C. §1125. The Bankruptcy Court's approval

4

of this Disclosure Statement does not constitute an endorsement of the Plan, and creditors are urged to review the Plan in its entirety before voting.

**B.     The Confirmation Hearing**

The Bankruptcy Court has scheduled a hearing to consider confirmation of the Plan on _____, 2022 at 10:00 a.m., prevailing New York Time.  The hearing will be conducted by the Honorable James L. Garrity Jr., at the United States Bankruptcy Court, One Bowling Green, Courtroom 601, New York, NY 10004, likely via Court Solutions.  Any party wishing to participate in and/or listen to the hearing can register through Court Solutions at www.court-solutions.com, in accordance with General Order M-543.

At the hearing, the Bankruptcy Court will determine whether the requirements of Section 1129(a) or (b) of the Bankruptcy Code have been satisfied, in order to permit confirmation of the Plan.  Bankruptcy Court approval and confirmation of the Plan makes the Plan binding upon the Debtor and all of its creditors and other parties-in-interest.

The Bankruptcy Court has entered an Order (the "Scheduling Order") scheduling the confirmation hearing and directing that objections, if any, shall be served upon counsel to the Debtor, Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New York, New York 10036, Attn: Kevin J. Nash, knash@gwfglaw.com; counsel for Bravo Luck, Troutman Pepper Hamilton Sanders LLP, 3000 Two Logan Square, Philadelphia, PA 19103, Attn: Francis J. Lawall, Francis.lawall@troutman.com, counsel for PAX, Mayer Brown LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn: Douglas Spelfogel, DSpelfogel@mayerbrown.com and the Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, NY 10014, Attn: Richard Morrissey Esq. (richard.morrissey @usdoj.gov).  The Scheduling Order accompanies the Plan and Disclosure Statement, and

5

creditors are advised to review carefully the dates and deadlines contained therein for voting and objections.

**C.  Voting**

For the Plan to be accepted on a consensual basis, all impaired classes of creditors must vote to accept the Plan or be deemed to accept the Plan as a matter of law. Acceptance of the Plan is based upon the actual votes cast by each class of creditors holding at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of claims of those creditors in the particular class who actually vote on the Plan. Even if the Plan is not approved by all voting classes of impaired claims, the Debtor can still confirm the Plan under the cramdown provisions of 11 U.S.C. §1129(b) so long as at least one class of impaired claims votes to accept the Plan.

A class of claims is impaired if the Plan modifies, alters or changes the claimant's legal, equitable or contractual rights against the Debtor. In this case, the designations of impairment (and ultimately voting rights) will depend on the allowability of each creditor's claim. If necessary, the respective voting rights of PAX and Bravo Luck shall be determined in connection with the Confirmation Hearing, based upon a separate motion to designate votes under 11 U.S.C. §1126(e). In the interim, the Debtor shall solicit votes from all classes of creditors, including Bravo Luck and PAX. Thus, a ballot for acceptance or rejection of the Plan will accompany the Plan, and should be completed by each creditor and returned before the voting deadline by either overnight mail or email to Goldberg Weprin Finkel Goldstein LLP, Attn: Kevin J. Nash, 1501 Broadway, 22nd Floor, New York, New York 10036. Facsimile: (212) 422-6836. E-mail: KNash@GWFGlaw.com. In order to be counted, a ballot must be actually received on or before _____, 2022 at 5:00 pm. (the "Voting Deadline"). Only timely submitted ballots will be counted towards confirmation of the Plan.

### III.    RELEVANT BACKGROUND INFORMATION

A.    **Significant Pre-Petition Events Leading to Chapter 11 Filing**

The Debtor was organized in 2015 to purchase the Residence for approximately $70 million. The monies utilized for the acquisition were funded by Bravo Luck based on the Trust Agreement. The Residence itself is titled in the name of the Debtor and memorialized by 3,050 cooperative shares issued to the Debtor allocable to apartment 1801, MR 22119 and MR 719 under respective proprietary leases between The Sherry, as lessor, and the Debtor, as lessee.

Beginning in April 2017, PAX instituted suit against Miles Kwok to enforce the guaranty of certain loan obligations. PAX obtained a judgment against Mr. Kwok on February 3, 2021. PAX also maintained an action (*i.e.*, the New York Action) contending that the Debtor is liable for the Kwok judgment as Miles Kwok's alter ego.

In addition to the New York Action, PAX also commenced a second action against Bravo Luck and Miles Kwok in the BVI Court, challenging, *inter alia*, Bravo Luck's beneficial ownership of the Residence. At this point, the issues surrounding Bravo Luck's beneficial ownership of the Residence are being litigated in the BVI Court, which has issued a series of Case Management Orders in advance of an anticipated trial.

Besides the Ownership Dispute, the Residence also became subject to litigation with The Sherry relating to the treatment of the Debtor's security deposit, and The Sherry's claims for unpaid maintenance charges.

B.    **Major Post-Petition Events**

The Debtor's Chapter 11 filing on October 12, 2020 was initially met with opposition by PAX, which filed a Motion to Modify the Automatic Stay to Proceed with State Court Litigation, and Related Relief (ECF Nos. 12, 13 & 14) (collectively, the "Automatic Stay Motion"). The

7

Automatic Stay Motion was opposed by the Debtor and Bravo Luck (*See*, ECF Nos. 21 and 22). While the Automatic Stay Motion was pending, PAX then filed a motion to convert the Debtor's case to a case under Chapter 7 or, in the alternative, for the appointment of an Operating Trustee (ECF Nos. 28, 29 & 30) (the "Trustee Motion").

The Trustee Motion was initially joined by The Sherry *(*ECF No. 45*)*, and opposed by Bravo Luck (ECF No. 44). The Debtor was also in the process of preparing opposition to the Trustee Motion when the Debtor began settlement negotiations with PAX and Bravo Luck in an effort to develop a consensual sale process. Throughout the early months of the Chapter 11 case, the parties reported to the Court on a regular basis as to the progress of their settlement discussions. In the interim, the pending motions were adjourned from time to time to allow the parties to complete their settlement discussions.

C.    **The Global Settlement**

After several months of extensive negotiations, the Global Settlement was finally agreed upon and executed by the Debtor, PAX and Bravo Luck in or about March 2021. Thereafter, the Debtor filed a formal motion to approve the Global Settlement under Bankruptcy Rule 9019 (ECF Nos. 60 and 62). By the time of the execution of the Global Settlement, the parties were already in agreement that Melanie L. Cyganowski, Esq. should serve as the Debtor's Sales Officer to oversee the sale and marketing process of the Residence.

Although the Debtor, PAX and Bravo Luck reached agreement on the terms of the Global Settlement, the Office of the U.S. Trustee ("UST") objected to the Global Settlement upon the primary ground that the Debtor had purportedly delegated fiduciary power to the Sale Officer, which the UST characterized as a *de facto* receiver. As part of its opposition, the UST filed its own motion seeking an Operating Trustee (ECF No. 64). The Debtor, PAX and Bravo Luck

8

opposed the UST's motion, and each filed a series of memorandums in further support of the Global Settlement. Additionally, various revisions were made to the Global Settlement in an effort to address any potential issues under the Jay Alix Protocols. Nevertheless, the UST continued to object to the Global Settlement, forcing the matter to be formally decided by the Bankruptcy Court.

Following substantial additional briefing (*See*, ECF Nos. 76, 81, 83, 95, 96, 97, 99, 104, 105 and 106), and several additional hearings, the Bankruptcy Court issued a comprehensive decision on September 1, 2021 (ECF No. 123) finding (i) that the settlement comfortably fell within the range of reasonableness and was in the best interests of the Debtor's estate; (ii) that the Debtor had the right under state law to amend its operating agreement to appoint the Sales Officer; and (iii) that the Debtor had the right to employ Ms. Cyganowski as Sales Officer.

The Bankruptcy Court, however, found certain issues relating to the possibility of Ms. Cyganowski providing legal advice to the Debtor and utilizing personnel at her firm (Otterbourg P.C.) without retention under 11 U.S.C. §327. Accordingly, the Bankruptcy Court declined to approve the Global Settlement on this limited basis.

The settling parties quickly reached agreement on necessary revisions to the Global Settlement to clarify that (i) the Sales Office shall be hired strictly as an employee of the Debtor; and (ii) the Debtor shall not retain the Otterbourg P.C. law firm. With these changes, the Debtor filed a renewed motion for approval of the revised settlement. Ultimately, the UST withdrew its opposition to the Global Settlement, and the Bankruptcy Court subsequently entered Orders on October 8, 2021 approving the Second Amended and Restated Settlement Agreement dated September 24, 2021 (ECF No. 141) and the employment of Ms. Cyganowski as Sale Officer (ECF No. 142).

9

**D.     Implementation of the Global Settlement**

The approval of the Global Settlement has now paved the way for the Debtor to file the Plan to implement the agreed upon sale process. The Sales Officer has selected Sotheby's broker after conducting a wide-ranging interview process. Indeed, all of the parties agreed on Ms. Cyganowski's selection of Serena Boardman of Sotheby's as broker, who adds great experience, acumen and credibility to the sale process. The Debtor has formally moved for approval of Sotheby's retention (ECF No. 160), which has already taken steps to begin a comprehensive marketing process that, hopefully, will end with a successful sale of the Residence. It is anticipated that the Sale process with take at least six (6) months or more to complete. In the interim, the Debtor is moving forward with the Plan confirmation process.

## IV.    THE PLAN

The Plan constitutes a binding contract between the Debtor and its creditors, and is predicated upon the Sale of the Residence and distribution of the Sale Proceeds consistent with the priorities established under the Bankruptcy Code. Like many plans of reorganization, the Plan here divides claims as between impaired and unimpaired claims.

**A.     Classification and Treatment of Claims and Interests under the Plan**

    **A.   Unclassified Claims**

Pursuant to Section 1123(a) of the Bankruptcy Code, the Plan establishes a tiered system for the payment of Administrative Expense Claims, Priority Tax Claims and U.S. Trustee Fees immediately upon the sale of the Residence, at Closing or shortly thereafter.

**Administrative Expense Claims**. Administrative Expense Claims primarily consist of the costs and expenses of maintaining, preserving and selling the Residence during the Chapter 11 case, including brokerage commissions to Serena Boardman, the Sales Officer's compensation, and allowed professional fees and expenses to Goldberg Weprin Finkel Goldstein

10

LLP as Debtor's counsel. All of the professionals involved in the Chapter 11 case are required to file formal written fee applications, which likely will be heard in connection with the Debtor's separate motion under 11 U.S.C. §363(b) and (f) to approve a Sale of the Residence. To the extent allowed, each holder of an Administrative Expense Claim[1] shall be paid at the Closing on the sale of the Residence or as soon thereafter as is practicable from the reserve created for these items at Closing. It is projected that Administrative Expense Claims will aggregate approximately $600,000 [$350,000 for legal fees and expenses to Goldberg Weprin Finkel Goldstein LLP and $250,000 to the Sales Officer], plus brokerage commissions and closing costs. Under the proposed retention, Sotheby's shall be paid a 3% commission for a direct sale of the Residence and a 4% commission if a sale occurs with the assistance of a co-broker [2% each].

**Priority Tax Claims**. The Plan also provides for payment of Priority Tax Claims, if any, although the Debtor does not believe that there are any outstanding Priority Tax Claims relating to the sale of the Residence. However, any such Allowed Priority Tax Claim shall be paid in full at the Closing or shortly thereafter from the Sale Proceeds.

**U.S. Trustee Fees**. The Plan further provides that the Debtor shall pay all U.S. Trustee Fees, together with any interest thereon, until the Chapter 11 case is closed by entry of a Final Decree. The U.S. Trustee Fees due in connection with the Sale itself shall be paid at Closing from the Sale Proceeds. In all likelihood, the U.S. Trustee fees owed in connection with the Sale will be in the statutory maximum of $250,000.

---

[1] Additionally, Golden Spring New York Ltd. and Qiang Guo retain the right to amend their claim or file a motion to assert reimbursement as an administrative express claim for the amounts paid out of the Sherry Security Deposit to pay post-petition maintenance and common charges.

11

**B.      Classified Claims and Interests**

The remaining Claims against the Debtor consist of The Sherry, Bravo Luck, PAX and other Unsecured Creditors, which are separately classified for all purposes, including voting, confirmation and distribution pursuant to Sections 1122 and 1123(a)(l) of the Bankruptcy Code:

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| Class 1 | Allowed Claim of The Sherry | No | No |
| Class 2 | Allowed Bravo Luck Claim and Bravo Luck Interest | Yes | Yes |
| Class 3 | Allowed Claim of PAX | Yes | Yes, if Allowed |
| Class 4 | Unsecured Claims | Yes | Yes |
| Class 5 | Membership Interest | N/A | N/A |

**Class 1: The Allowed Claim of The Sherry**

**Classification** – Class 1 consists of the Allowed Claim of The Sherry.

**Background** – The Sherry has filed a pre-petition Claim for unpaid rent, additional rent, maintenance and assessments in the total sum of not less than $891,462.06.  As of the Petition Date, The Sherry held a security deposit in the sum of approximately $3 million (the "Sherry Security Deposit"), which has been used to pay the Debtor's post-petition rent, additional rent, maintenance and assessments pursuant to prior order of the Bankruptcy Court (ECF No. 107) (defined in the "Sherry Payment Order")

**Treatment** – The Sherry's Allowed pre-petition Claim shall be paid in full from either the Sherry Security Deposit, or Sale Proceeds, upon the Closing.  If the Sherry Security Deposit is exhausted prior to a Sale of the Residence, then the Allowed Claim of The Sherry shall be paid from the Sale Proceeds at Closing.[2]  Additional Allowed amounts owing to the Sherry pursuant

---

[2] The balance of the Sherry Security Deposit, if any, remains subject to the claim of Bravo Luck, Golden Spring or Qiang Guo as the party that originally funded the security deposit (as described more fully in each Bravo Luck's, Golden Spring's and Qiang Guo's proofs of Claim).  Any

to the proprietary leases that are not paid pursuant to the Sherry Payment Order (including allowed attorney's fees, interest, late fees and other charges) shall also be paid in full, as an Allowed Administrative Expense, from the Sherry Deposit of the Sale Proceeds at Closing.

**Class 2: The Allowed Bravo Luck Claim and Bravo Luck Interest**

**Classification** – Class 2 consists of the Bravo Luck Claim and Bravo Luck Interest.

**Background** – Bravo Luck asserts that it is the beneficial owner of the Residence (independent of PAX's claims against Miles Kwok). Alternatively, if Bravo Luck is not recognized as the beneficial owner of the Residence, Bravo Luck filed a monetary claim (Claim number 4) against the Debtor for the funds advanced by Bravo Luck to the Debtor to acquire the Residence in 2015 – all as set forth more fully in Bravo Luck's Claim.

**Treatment** – To the extent that Bravo Luck prevails in the BVI Court on its claim of beneficial ownership of the Residence, then Bravo Luck shall receive the Net Sale Proceeds from the Escrow account at Closing and there shall be no further distributions to PAX as the unsuccessful party in the Ownership Dispute. Alternatively, if Bravo Luck does not prevail on its claim of beneficial ownership of the Residence, the allowance or disallowance of Bravo Luck's Claim shall then be determined either as part of the Ownership Dispute in the BVI Court, or potentially in the Bankruptcy Court or such other court of competent jurisdiction. To the extent Bravo Luck's Claim is Allowed (in whole or part) for a sum of money pursuant to Final Order, then in such event Bravo Luck shall be paid from the Net Sale Proceeds deposited into Escrow at Closing on a *pro rata* and *pari passu* basis with PAX based on their respective Allowed Claims.

---

dispute as to the entitlement to the balance of the Sherry Security Deposit shall be determined by the Bankruptcy Court following the Closing.

**Class 3: The Claim of PAX**

**Classification** - Class 3 consists of the Claim of PAX.

**Background** – PAX has filed a disputed monetary claim for the amount of the Kwok Judgment, alleging that the Debtor is the alter ego of Miles Kwok.

**Treatment** – To the extent that (i) PAX prevails on its monetary claim against the Debtor in the Ownership Dispute; (ii) Bravo Luck is not recognized as the beneficial owner of the Residence; and (iii) Bravo Luck's monetary claim is disallowed pursuant to Final Order, then, in such circumstances, PAX shall be paid the Net Sale Proceeds from the Escrow created at Closing and Bravo Luck shall not receive a distribution as the unsuccessful party in the Ownership Dispute.

Conversely, to the extent that (i) PAX prevails on its monetary claim against the Debtor; (ii) Bravo Luck is not recognized as the beneficial owner of the Residence; but (iii) Bravo Luck is recognized to have an Allowed monetary claim against the Debtor for advancing the funds to purchase the Residence, then, in such circumstances, the Net Sale Proceeds shall be paid to Bravo Luck and PAX on a *pro rata* and *pari passu* basis based on their respective Allowed Claims.

**Class 4: Unsecured Claims**

**Classification** – Class 4 consists of the Unsecured Claims.

**Background** – The Unsecured Claims have been filed by Golden Spring New York Ltd. ("Golden Spring" or "GSNY") and Qiang Guo ("Guo") for monies expended to establish the Sherry Security Deposit and maintain the Residence pre-petition and fund certain expenses, costs, and attorneys' fees in connection with the original acquisition of the Residence in 2015, each as set forth more fully in the applicable proof of Claim.

**Treatment** – To the extent Allowed, the Class 4 Claims of GSNY and Guo shall be paid in full from the Escrow created at Closing prior to any distribution of the Net Sale Proceeds to either Bravo Luck or PAX. If the Class 4 Claims are subject to an objection filed on or before the Claim Objection Date, then in such event, a separate reserve shall be established with the Escrow Agent from the Net Sale Proceeds in an amount sufficient to pay the Class 4 Claims in full, should the Claims to GSNY and Guo be ultimately allowed pursuant to Final Order.

**Class 5:  Membership Interest**

**Classification** – Class 5 consists of the 100% Membership Interest of Genever Holdings Corporation in the Debtor.

**Treatment** – The disposition of the Membership Interest of Genever Holdings Corporation shall be determined in the context of the Ownership Dispute. Pending such a determination pursuant to Final Order, Genever Holdings Corporation shall continue as the sole member of the Debtor and Reorganized Debtor, as applicable, to carry out and implement the Global Settlement, and the terms of this Plan, which shall remain in full force and effect irrespective of the final disposition of PAX's pending turnover proceeding in the BVI Court.

## V.  IMPLEMENTATION OF THE PLAN

The Plan is predicated upon the Sale of the Residence pursuant to the Global Settlement. All distributions shall be made on a post-confirmation basis at or after closing, even though the Plan becomes effective once the Confirmation Order becomes final. To reinforce continuity, the Plan contains express provisions for the ratification of the Global Settlement. Thus, approval and confirmation of the Plan constitutes ratification and continuation of the Global Settlement on a post-confirmation basis.

1. **Ratification and Continuation of the Sales Officer and Broker**.  The Plan also contemplates that the Debtor and Reorganized Debtor shall continue the employment of Melanie L. Cyganowski as the Sales Officer and Sotheby's as the Broker on a post-confirmation basis as well.  These respective retentions shall continue on the same terms and conditions specified under the original retention orders.  Upon the Closing, the Plan provides that the Sales Officer shall receive a full release from the Debtor, PAX and Bravo Luck, together with agents, representatives, etc., pursuant to Section 3.7

2. **Post-Confirmation Marketing of the Residence**.  The Sales Officer and Broker shall continue to pursue the marketing and sale of the Residence on a post-confirmation basis in accordance with the Global Settlement.

3. **Sale Free and Clear of All Claims, Liens, Taxes and Interests.**  Once a purchaser is identified, the sale of the Residence shall be the subject of a separate motion to be filed by the Debtor providing for a sale free and clear of all liens, claims, taxes and interests pursuant to 11 U.S.C. §§ 363(b) and (f) and 1123(a)(5).  The same liens, claims, taxes and interests – to the same extent and in the same priority – shall attach to the Sale Proceeds.

4. **Approval Rights of The Sherry.**  The Plan further contemplates that the sale of the Residence shall remain subject to the consent and approval rights of The Sherry under its internal rules and regulations relating to the sale of cooperative apartments in the hotel.

5. **Transfer Taxes**.  The sale of the Residence constitutes the making or delivery of an instrument of transfer of property or otherwise, pursuant to or in connection with confirmation of the Plan.  Therefore, the Plan also provides that the sale of the Residence shall be exempt from the payment of any City or State stamp, real estate transfer, or other similar tax or governmental assessment pursuant to 11 U.S.C. §1146(a).

## VI. CREATION OF THE ESCROW AT CLOSING

Another central component of the Global Settlement and Plan is the establishment of an escrow for the deposit of the Net Sale Proceeds with a nationally recognized bank as Escrow Agent pending a final determination of the Ownership Dispute. The Net Sale Proceeds are defined under the Plan to mean the residual Sale Proceeds after payment of Allowed Administrative Expense Claims, (including the reserve) Priority Tax Claims, if any, U.S. Trustee fees and other Allowed Classes of Claims. The Escrow shall remain in existence until final adjudication of the Ownership Dispute or further proceedings in the Bankruptcy Court or any other court of competent jurisdiction relating to allowance or disallowance of the Claims of Bravo Luck or PAX. At the Closing, an escrow agreement containing customary terms and conditions in a form and content reasonably acceptable to the Debtor, Bravo Luck and PAX shall be prepared and executed by the Debtor and the Escrow Agent. Following the Closing, there shall be no distributions from the Escrow except upon Bankruptcy Court Order or the mutual agreement of the Debtor, Bravo Luck and PAX.

## VII. POST-CONFIRMATION RETENTION OF JURISDICTION

Recognizing that the Sale of the Residence shall occur after confirmation, the Plan contains specific provisions for the continued post-confirmation jurisdiction. Specifically, the Bankruptcy Court shall retain jurisdiction after confirmation over the following matters: (i) To approve the sale of the Residence and otherwise implement the Global Settlement and ensure that the Plan is substantially consummated; (ii) To resolve all matters arising under or relating to the Plan or Global Settlement, including, without limitation, disputes relating to the Sale of the Residence, any disputes relating to or involving The Sherry in connection with the Sale, distribution of the Net Sale Proceeds, and any action by PAX to modify, alter or change the

17

Global Settlement or Plan following completion of turnover proceedings in the BVI Court; (iii) To the extent applicable or necessary, jurisdiction to allow or disallow in whole or in part the Claims of PAX or Bravo Luck not otherwise adjudicated in connection with the Ownership Dispute by the New York Court or the BVI Court or by such other court of competent jurisdiction; (iv) To grant or deny the applications for allowance of final compensation and reimbursement of expenses for the Debtor's counsel, the Sales Officer and the Broker; (v) To decide all disputes relating to distribution or disbursement of the Escrow; and (vi) To enter an order or final decree concluding the Chapter 11 case following the sale of the Residence, resolution of all Claims and Interests, and distribution of the Net Sale Proceeds from the Escrow.

## VIII. KEY LEGAL REQUIREMENTS FOR CONFIRMATION UNDER SECTION 1129

**A.    General.**

Confirmation of a plan of reorganization is the primary objective in a Chapter 11 case, and this case is no exception. For the Plan to be confirmed, a number of elements must be established under Section 1129 of the Bankruptcy Code, which are reviewed below.

**B.    Key Confirmation Requirements.**

The Bankruptcy Court shall confirm the Plan only if, *inter alia*, all applicable requirements of 11 U.S.C. §1129(a) are met, including: (i) the Plan complies with the requirements of the Bankruptcy Code, (ii) the Debtor has proposed the Plan in good faith, (iii) the Debtor has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan, (iv) the Plan pays creditors at least as much as they would receive in a liquidation under Chapter 7 (the "Best Interests Test"), (v) the Plan is feasible; and (vi) the Plan has been accepted by at least one class of impaired claims.

The Debtor believes that it will be able to satisfy all applicable statutory requirements of 11 U.S.C. § 1129(a) in order to obtain consensual confirmation of the Plan. Based upon the Global Settlement, the Debtor anticipates receiving affirmative votes from all classes of claims. Even though the Sale shall occur after confirmation, the Plan is feasible since the Residence is unencumbered and retains significant value under any circumstances. The existing security deposit of $3 million will enable the Debtor's estate to remain current with its post-petition maintenance obligations owed to The Sherry. By providing for the sale of the Debtor's only asset under a robust process, the Plan provides creditors with a better recovery than they could obtain in Chapter 7 due to (i) the elimination of trustee fees, expenses and commissions, and (ii) the preservation of all transfer tax exemptions under the Plan, which do not apply in Chapter 7. Thus, for a number of reasons, the Debtor urges all creditors to vote to accept the Plan.

Dated: New York, NY
　　　　January 6, 2022

| Genever Holdings LLC | Goldberg Weprin Finkel Goldstein LLP |
| --- | --- |
| | Attorneys for the Debtor |
| | 1501 Broadway, 22nd Floor |
| | New York, NY 10036 |
| By:　/s/ Yanping Wang | By:　/s/ Kevin J. Nash |

X:\GWFG\New Data\Yen\Word\Genever Holdings LLC\Disclosure Statement 01-06-22 v1.Doc