O'MELVENY & MYERS LLP
Times Square Tower
Seven Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Stuart M. Sarnoff
Peter Friedman
Diana M. Perez

-and-

MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2151
Douglas Spelfogel

*Attorneys for Pacific Alliance Asia Opportunity Fund L.P.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| GENEVER HOLDINGS LLC, | Case No. 20-12411 (JLG) |
| Debtor. | Re: ECF Nos. 165, 167 |

**OBJECTION OF PACIFIC ALLIANCE TO THE DEBTOR'S MOTION TO APPROVE THE DISCLOSURE STATEMENT AND, THEREAFTER, ENTRY OF AN ORDER SCHEDULING A CONFIRMATION HEARING AND APPROVING NOTICE <u>PROCEDURES RELATING TO CONFIRMATION</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ................................................................................... 4

    A.    Non-Insider Claims ............................................................. 4

    B.    Insider Claims ..................................................................... 5

    C.    The Plan ............................................................................. 11

OBJECTION ...................................................................................... 11

I.    APPROVAL OF THE DISCLOSURE STATEMENT SHOULD BE DENIED
    BECAUSE THE PLAN CANNOT BE CONFIRMED ................................. 11

    A.    The Plan Was Not Proposed in Good Faith ............................. 11

    B.    The Plan is Unconfirmable Under Section 1129 of the Bankruptcy Code .......... 13

    C.    The Plan Impermissibly Gerrymanders General Unsecured Claims in
        Violation of Section 1122(a) of the Bankruptcy Code ...................... 19

    D.    The Plan Cannot Satisfy the "Best Interest Test" Under Section 1129(a)(7)
        of the Bankruptcy Code .................................................... 21

    E.    The Plan Impermissibly Classifies the BL Claim and the BL Interest
        Together in Class 2 In Violation of Section 1122(a) of the Bankruptcy
        Code ............................................................................... 22

    F.    The Plan Impermissibly Confers and Cuts Off Jurisdiction Over Key
        Issues Solely for the Benefit of the Insider Claimants ...................... 23

II.    The Plan and the Disclosure Statement Contemplate Potential Allowance and
    Disallowance of Claims for both Voting and Distribution Procedures But Do Not
    Implement a Procedure and Timeline for Claim Objections ...................... 24

III.    THE DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE
    INFORMATION ................................................................ 25

    A.    The Disclosure Statement Fails to Address the Status of Insiders ............ 26

    B.    The Court Cannot Assess if the Debtor's Proposed Solicitation is in Good
        Faith ............................................................................... 28

    C.    The Disclosure Statement and Plan do not Specify the Treatment of
        Membership Interests .......................................................... 28

PROPOSED MODIFICATIONS TO THE PLAN ....................................... 29

RESERVATION OF RIGHTS .............................................................. 29

CONCLUSION .................................................................................. 31

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
  526 U.S. 434 (1999) ................................................................................................ 23

*Benjamin v. Diamond (In re Mobile Steel Corp.)*,
  563 F.2d 692 (5th Cir. 1997) ................................................................................ 29

*DISH Network Corp. v. DBSD North America, Inc. (In re DBSD North America, Inc.)*,
  634 F.3d 79 (2d Cir. 2011) .................................................................................... 26

*In re 500 Fifth Ave. Assocs.*,
  148 B.R. 1010 (Bankr. S.D.N.Y. 1993), *aff'd*, No. 93 CIV. 844 (LJF), 1993 WL 316183
  (S.D.N.Y. May 21, 1993) ........................................................................................ 22

*In re Adelphia Business Solutions, Inc.*,
  280 B.R. 63 (Bankr. S.D.N.Y. 2002) ............................................................... 8, 16

*In re Avianca Holdings S.A.*,
  632 B.R. 124 (Bankr. S.D.N.Y. 2021) ................................................................. 27

*In re Boston Post Road Ltd. Partnership* (*Boston Post*)
  21 F.3d 477(2d Cir. 1994) ...................................................................................... 21

*In re Delta Airlines, Inc.*,
  No. 05-17923 (CGM), 2010 WL 423279 (Bankr. S.D.N.Y. Feb. 3, 2010) .......... 8, 15

*In re Felicity Assocs., Inc.*,
  197 B.R. 12 (Bankr. D. R.I. 1996) ........................................................................ 12

*In re Filex, Inc.*,
  116 B.R. 37 (Bankr. S.D.N.Y. 1990) .................................................................... 11

*In re Johns-Manville Corp.*,
  68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd in part*, *rev'd in part on other grounds*, 78 B.R.
  407 (S.D.N.Y. 1987), *aff'd sub nom. Kane v. Johns-Manville Corp. (In re Johns-Manville
  Corp.)*, 843 F.2d 636 (2d Cir. 1988) ..................................................................... 14

*In re KDI Holdings, Inc.*,
  277 B.R. 493 (Bankr. S.D.N.Y. 1999) ............................................................. 8, 15

*In re LATAM Airlines*,
  620 B.R. 722 (Bankr. S.D.N.Y. 2020) ................................................................. 20

*In re Lear Corp.*,
  No. 09-14326 (ALG), 2009 WL 6677955 (Bankr. S.D.N.Y. Nov. 5, 2009) ........................... 30

*In re Live Primary,*
  626 B.R. 171 (Bankr. S.D.N.Y. 2021) ..................................................................................... 29

*In re Quigley Co. Inc. (Quigley)*
  377 B.R. 110 (Bankr. S.D.N.Y. 2007) .............................................................................. 11, 18

*In re Scioto Valley Mortgage Co.*,
  88 B.R. 168 (Bankr. S. D. Ohio 1988) .................................................................................... 28

*In re Source Enters.*,
  No. 06-11707 (AJG), 2007 Bankr. LEXIS 4770 (Bankr. S.D.N.Y. July 31, 2007) ................ 28

*In re Toy & Sports Warehouse, Inc.*,
  37 B.R. 141 (Bankr. S.D.N.Y. 1984) ...................................................................................... 14

*In re W.R. Grace & Co.*,
  475 B.R. 34 (D. Del. 2012) ..................................................................................................... 18

*In re Windstream Holdings, Inc.*,
  627 B.R. 32 (Bankr. S.D.N.Y. 2021) ...................................................................................... 29

*In re Woodbrook Assocs.*,
  19 F.3d 312 (7th Cir. 1994) .............................................................................................. 19, 23

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
  843 F.2d 636 (2d Cir. 1988) .................................................................................................... 13

**Statutes**

11 U.S.C. § 101(2) .......................................................................................................................... 7

11 U.S.C. § 101(31)(B) ............................................................................................................. 7, 15

11 U.S.C. § 101(31)(E) ................................................................................................................... 7

11 U.S.C. § 1122(a) ................................................................................................................. 21, 24

11 U.S.C. § 1123(a)(1) .................................................................................................................. 21

11 U.S.C. § 1123(a)(4) .................................................................................................................. 18

11 U.S.C. § 1127(a)(7) .................................................................................................................. 24

11 U.S.C. § 1129(a)(1) .................................................................................................................. 14

11 U.S.C. § 1129(a)(10) ................................................................................................................ 15

11 U.S.C. § 1129(a)(3)............................................................................................................ 13

11 U.S.C. § 1129(a)(7)............................................................................................................ 23

11 U.S.C. § 1129(a)(8)............................................................................................................ 14

11 U.S.C. § 1129(b)(2)(B)...................................................................................................... 24

11 U.S.C. § 1129(b)(2)(B)(ii) ................................................................................................ 20

11 U.S.C. § 1129(b)(2)(C)...................................................................................................... 24

11 U.S.C. § 510(c)(1).............................................................................................................. 29

11 U.S.C. § 726(a) .................................................................................................................. 23

11 U.S.C. §1126(e) ................................................................................................................. 26

11. U.S.C. § 1125(a)(1)........................................................................................................... 27

28 U.S.C. § 1334 .................................................................................................................... 25

28 U.S.C. § 157 ...................................................................................................................... 25

**Other Authorities**

H.R. Rep. No. 95-595 (1977).................................................................................................. 13

S. Rep. No. 95-989 (1978)...................................................................................................... 13

StreetEasy, *Real Estate Listing for 751 Fifth Avenue #18,*
  https://streeteasy.com/building/sherry-netherland/18fl (last visited March 14, 2022) ............... 2

Pacific Alliance Asia Opportunity Fund L.P. ("PAX"), by and through its undersigned counsel, respectfully submits this objection (the "Objection") to the Debtor's *Motion to Approve the Disclosure Statement and, Thereafter, Entry of an Order Scheduling a Confirmation Hearing and Approving Notice Procedures Relating to Confirmation* [ECF No. 167] (the "Motion"), which seeks entry of an order approving the *Debtor's Disclosure Statement* [ECF No. 165] (the "Disclosure Statement") in connection with the solicitation of votes on the *Debtor's Liquidating Plan of Reorganization* [ECF No. 164] (the "Plan").[1] In support of this Objection, PAX respectfully states as follows:

## PRELIMINARY STATEMENT

1.    The Debtor asks this Court to approve a Disclosure Statement that seeks to solicit votes on a plan that has not been proposed in good faith and is patently unconfirmable. The Plan and Disclosure Statement are the latest schemes in an endless series of deceptive maneuvers employed by Miles Kwok ("Kwok"), his son Qiang Guo ("Guo"), and their various shell companies to shield assets to avoid repaying PAX. Indeed, as his latest gambit to evade satisfying the over quarter billion dollars in judgments PAX has obtained against him, Kwok filed an individual chapter 11 case in the United States Bankruptcy Court for the District of Connecticut (the "Connecticut Bankruptcy Court") on February 15, 2022.[2]

2.    At the heart of the Debtor's Plan is the dispute regarding the ownership of the Debtor and its sole asset, the apartment (the "Residence") at the Sherry-Netherland in New York

---

[1] Capitalized terms used but not defined in this Objection, shall have the meanings given to such terms in the Disclosure Statement or Plan, as applicable.

[2] *See In re Ho Wan Kwok,* Case No. 22-50073 (JAM) (Bankr. D. Conn.). Notably, Kwok did not voluntarily disclose this chapter 11 case in his individual chapter 11 case until PAX gave notice of the deficiency to the Connecticut Bankruptcy Court. Kwok's individual chapter 11 case is also a sham, which PAX intends to demonstrate to the Connecticut Bankruptcy Court at the appropriate time.

City, currently listed for sale at $45,000,000.[3] Despite numerous representations by Kwok that he purchased, paid for, and owned the Debtor and the Residence, the Debtor now claims that Guo, through a British Virgin Islands-shell company Bravo Luck Limited ("Bravo Luck"), is actually the beneficial owner of the Debtor and its assets (including the Residence). The Debtor also asserts that Bravo Luck is its largest creditor. PAX will prove both of these claims are untrue.

3.      The Plan should provide a straightforward path for resolving this dispute: it should mandate that the proceeds of the sale of the Residence be escrowed until entitlement issues are litigated consistent with the settlement agreement (the "Global Settlement") entered in this case.[4] Instead, the Debtor seeks approval of a Plan with many features (described below) designed improperly to advantage Kwok's son, Guo, and the insider entities purportedly owned by Guo, at the expense of the Debtor's legitimate third-party creditor, PAX. These features are *prima facie* evidence that the Plan is not proposed in good faith and that the Disclosure Statement should not be approved.

4.      Even if the Plan had been proposed in good faith (it was not), the Plan would still not be confirmable as a matter of law under section 1129 of the Bankruptcy Code. PAX is the only impaired, non-insider creditor of the Debtor. Regardless of the Plan's thinly veiled attempt to gerrymander a purportedly impaired accepting class, none of the votes of the plainly Insider Claimants (as defined below) are eligible to be counted as an acceptance of the Plan. Without PAX's approval, which in its present form PAX has no intention of providing given the glaring deficiencies identified below, the Plan is not capable of satisfying the standards for confirmation under the Bankruptcy Code. Thus, approval of the Disclosure Statement should be denied.

---

[3] *See* Declaration of Diana Perez In Support of the Objection, attached hereto as **Exhibit A** (the "Perez Decl."), Ex. 1, StreetEasy, *Real Estate Listing for 751 Fifth Avenue #18,* https://streeteasy.com/building/sherry-netherland/18fl (last visited March 14, 2022).

[4] *See Second Amended and Restated Settlement Agreement*, dated September 24, 2021 [ECF Nos. 131, 141].

5.      Moreover, approval of the Disclosure Statement should be denied because the Debtor has proposed an obviously unconfirmable Plan that: (i) unfairly discriminates against its non-insider claimant and is neither fair nor equitable; (ii) fails to satisfy the "best interests test" under section 1129(a)(7) of the Bankruptcy Code with respect to PAX's claim; (iii) impermissibly gerrymanders general unsecured claims in violation of section 1122(a) of the Bankruptcy Code; and (iv) violates section 1122(a) of the Bankruptcy Code by placing insider Bravo Luck's alleged general unsecured claim in the same class as its purported membership interest in the Debtor.

6.      Despite the shortcomings of the Disclosure Statement, simple fixes would allow the Plan to become both confirmable and acceptable to PAX as the only impaired, non-insider claim holder. As discussed below, the Plan should be amended to (i) classify all general unsecured claims in the same class, (ii) provide for all allowed general unsecured claims to receive their share of Net Sale Proceeds on a *pro rata* basis, (iii) ensure that the definition of Net Sale Proceeds does not provide a priority payment to any insider claimants, (iv) confer jurisdiction over the ultimate allowance and determination of claims on the Bankruptcy Court or, to the extent necessary, determination in consultation with the Connecticut Bankruptcy Court (where Kwok's individual chapter 11 case is currently pending),[5] (v) disregard votes of the insider claimants for purposes of cramdown, and (vi) include a process for claims objections and claims allowance with PAX (and/or a neutral fiduciary) being afforded standing to object to, and seek the recharacterization and/or subordination of, the insiders' claims.[6]

---

[5] Additional information should be provided as part of the Disclosure Statement, discussing the interplay of this chapter 11 case with Kwok's individual chapter 11 case pending before the Connecticut Bankruptcy Court.

[6] PAX provided the Debtor with comments to the Plan, and requested on multiple occasions a meet and confer to resolve and/or narrow the open issues. To date, the Debtor has not responded.

## BACKGROUND

7.     The facts of this case have been set forth in extensive detail in (i) the *Motion of Plaintiff Pacific Alliance Asia Opportunity Fund L.P. to Modify the Automatic Stay to Proceed with State Court Litigation, and Related Relief* [ECF Nos. 12, 13], (ii) the *Motion of Pacific Alliance Asia Opportunity Fund L.P. For an Order Under 11 U.S.C. § 1112(b) Converting the Debtor's Case to a Case Under Chapter 7 or, in the Alternative, for an Order under 11 U.S.C. §1104(a) Appointing a Trustee to Administer the Debtor's Estate* [ECF Nos. 28, 29], and (iii) the *United States Trustee's Motion for an Order Directing the Appointment of a Chapter 11 Trustee Pursuant to Section 1104 of the Bankruptcy Code* [ECF No. 64]. For purposes of this Objection, the following background discussion will focus on the claims asserted against the Debtor and the interconnected web of affiliates and insiders that have filed such claims.

### A.     Non-Insider Claims

#### (a)     Sherry-Netherland Claim

8.     Class 1 of the Plan consists solely of the claim filed by the Sherry-Netherland (the "Sherry-Netherland Claim"), which holds an unimpaired, secured claim against the Debtor in the amount of $891,462.06 for unpaid rent, maintenance, and assessments for the Residence. The Sherry-Netherland Claim is to be paid in full using the security deposit held by the Sherry-Netherland. *See* Plan § 5.1.

#### (b)     PAX Claim

9.     As set forth in PAX's proof of claim, PAX holds a judgment against Kwok for $116,402,019.57,[7] arising out of PAX's 2017 lawsuit against Kwok in New York Supreme Court

---

[7] This is the judgment amount as of February 3, 2021. Kwok has not paid any of the judgment and, until Kwok filed for chapter 11 bankruptcy protection, that judgment continued to accrue interest at a rate of 9%. As of February 3, 2022, the judgment was approximately $127 million.

4

for breach of a personal guarantee whereby Kwok personally guaranteed a loan facility—approximately $46 million at the time—that PAX had issued to one of Kwok's companies (the "New York State Court Action"). *See* Claim No. 5-1, Addendum at ¶ 2 (the "PAX Claim"). On April 18, 2019, PAX amended its complaint against Kwok to add the Debtor and its sole member, Genever Holdings Corporation ("Genever BVI" and together with the Debtor, the "Genever Entities") as defendants in the New York State Court Action because the Genever Entities are, *inter alia*, alter egos of Kwok and thus liable for Kwok's debts. *See First Amended Complaint*, attached as Exhibit B to the PAX Claim. On February 9, 2022, Kwok was ordered to remit an additional $134,000,000 to PAX based on a finding that Kwok violated New York Judiciary Law § 753 and was in civil contempt.[8]

## B.   Insider Claims

10.    Other than PAX and the Sherry-Netherland (which holds an unimpaired, non-voting secured claim), only three other parties have asserted claims against the Debtor: Guo (Kwok's son), Bravo Luck, and Golden Spring New York Ltd. ("Golden Spring" and together with Guo and Bravo Luck, the "Insider Claimants"). Golden Spring is Kwok's "family office," which Kwok set up and funded in 2015 and underwrites Kwok's lavish lifestyle expenses and sizeable bills.[9] As a technical matter, Guo owns Golden Spring (although PAX believes Kwok in actuality dominates and controls that entity).[10] As discussed below, each of these parties unquestionably is an insider of the Debtor and their claims should be designated as such.

---

[8] Perez Decl., Ex. 18, Feb. 9, 2022 Final Order of Civil Contempt, *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan, et al.*, Index No. 65077/2017, NYSCEF Doc. No. 1182 at 2.

[9] Perez Decl., Ex. 2, May 27, 2021 Hr'g Tr. ("May 27, 2021 Hr'g Tr."), *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan, et al.*, Index No. 65077/2017, NYSCEF Doc. No. 833 at 9:25–10:3 (the Court found that "[i]t's quite undisputed that Golden Spring[] has funded seven-figure payments to facilitate Mr. Kwok's lifestyle…").

[10] Perez Decl., Ex. 3, Oct. 3, 2018 Dep. of Miles Kwok Excerpt, *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan, et al.*, 65077/2017, NYSCEF Doc. No. 785 at 63:17–20.

(a)    **Bravo Luck & Guo Claims**

11.    Bravo Luck filed proof of claim number 4 against the Debtor, in which Bravo Luck erroneously asserts that it is the beneficial owner of the Debtor and thus the beneficial owner of the Residence, because the Residence is purportedly being held in trust by Kwok, the Debtor, and Genever BVI for Bravo Luck's benefit (the "BL Interest"). *See* Claim No. 4-1, Addendum at ¶ 6. As discussed below, while contested, at best, Bravo Luck is the owner of the equity of the Debtor, and not the Residence. Alternatively, Bravo Luck "asserts a general unsecured claim for an amount of $76,296,746.85 arising from its advancement of funds for the purchase of the Residence . . . ." (the "BL Claim"). *Id.* at ¶ 7. In the BL Claim, Bravo Luck is described as a "BVI Business Company incorporated in the British Virgin Islands," with Guo as its sole shareholder. *Id.* at ¶ 1. Bravo Luck further claims that the Residence and any proceeds from its sale are the property of Bravo Luck and not the Debtor. *Id.* at ¶ 6.

12.    Guo separately filed proof of claim number 3 against the Debtor, which asserts an alternative unsecured claim to the BL Claim for the amount of $13,306,005 if Bravo Luck is found not to own the Residence (the "Guo Claim"). *See* Claim No. 3-1, Addendum at ¶¶ 4, 7. In the Guo Claim, Guo asserts (i) he is the beneficial owner of the Residence and sole shareholder of Bravo Luck and (ii) he contributed $13,306,005.00 for the Residence's closing fees and various maintenance payments. *See id.* at ¶¶ 1, 4, 6.

13.    Although there are numerous disputed facts in this case, none of the parties dispute that the Debtor is wholly owned by Genever BVI, which is wholly owned[11] and managed by Kwok.

---

[11] *See* Perez Decl., Ex. 4, Genever Holdings Corporation Certificate of Incorporation, *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan, et al.*, Index No. 65077/2017, NYSCEF Doc. No. 252 at SN 0159; *see also* Perez Decl., Ex. 5, May 15, 2018 Aff. of Yanping Wang, *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan, et al.*, Index No. 65077/2017, NYSCEF Doc. No. 182 at ¶ 4 & Ex. A (Yanping Wang swearing that "Mr. Kwok is the sole shareholder of Genever BVI" and attaching register of members showing same).

*See* Disclosure Statement at 1. On September 22, 2021, the judge in the New York State Court Action granted PAX's turnover motion, requiring Kwok to "take whatever steps are necessary in the British Virgin Islands to turnover all share certificates with respect to his 100% ownership interest in [Genever BVI],"[12] potentially rendering PAX the Debtor's equity owner (the "Turnover Order"). That order was contingent only upon the BVI court modifying an existing restraining order relating to Genever BVI, which it did on December 6, 2021. However, in violation of the Turnover Order, Kwok and Genever BVI failed and refused to transfer Genever BVI's shares to PAX.[13] Notably, the Debtor has failed to update its disclosure to reflect the Turnover Order.

14.    As the sole member of the Debtor, Genever BVI directly controls the outstanding voting securities of the Debtor and is thus, an affiliate of the Debtor.[14] And, as the party in control of Genever BVI (and thus, in control of the Debtor), Kwok is a statutory insider of the Debtor.[15] Finally, as the son of Kwok, a statutory insider of the Debtor, Guo is also a statutory insider of the Debtor.[16]

15.    As discussed above, Guo asserts that he is the sole shareholder of Bravo Luck. *See* BL Claim, Addendum at ¶ 1. Based on the close relationship between the Debtor, Genever BVI, Kwok, Guo, and Bravo Luck, and the series of non-arm's length transactions among the parties,

---

[12] *See* Perez Decl., Ex. 6, Sept. 22, 2021 Order, *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan, et al.*, Index No. 652077/2017, NYSCEF Doc. No. 904.

[13] In January 2022, PAX moved in the New York State Court Action for civil contempt for Kwok's failure to follow the Turnover Order. On March 3, 2022, PAX withdrew its contempt motion without prejudice to refile in light of Kwok's chapter 11 petition in the Connecticut Bankruptcy Court. Perez Decl., Ex. 7, Mar. 3, 2022 Ltr., *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan, et al.*, Index No. 652077/2017, NYSCEF Doc. No. 1192.

[14] *See* 11 U.S.C. §101(2) (defining "affiliate" as, among other things, an "entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor.").

[15] *See* 11 U.S.C. §101(31)(E) (defining "insider" to include "affiliates, or insider of an affiliate as if such affiliate were the debtor."); 11 U.S.C. §101(31)(B) (defining "insider" in the context of a corporation to include the debtor's directors and officers, persons in control of the debtor, partnerships in which the debtor is a general partner, general partners of the debtor, or the relative of a general partner, director, officer, or person in control of the debtor).

[16] *See* 11 U.S.C. §101(31)(B).

Bravo Luck is clearly a non-statutory insider of the Debtor.[17] Examples of non-arm's length

transactions between these parties, include:

- In January 2015, Hong Kong International Funds Limited—a Hong Kong entity that Kwok established and was the sole shareholder of before he transferred his 100% interest to a business associate for no consideration[18]—transferred $150 million to Bravo Luck.[19]

- As of March 4, 2015, in connection with the Executed Contract of Sale for the Residence, Kwok represented to the Sherry-Netherland, through his lawyers, that he beneficially owned 50% of Bravo Luck and that Guo owned the other 50%.[20]

- Kwok, Guo, and Bravo Luck also claim that Kwok holds the Debtor and its interest in the Residence as a trustee for Bravo Luck and Guo pursuant to a deed of trust. PAX will demonstrate at an appropriate time in the context of the Plan that the deed of trust is a back-dated sham. But even taken at face value, it at best would make Guo and Bravo Luck owners of the Debtor and inarguably insiders. Put simply, while the deed of trust is not legitimate, its mere existence demonstrates the web of interlocking relationships between the Debtor and Guo and Bravo Luck.[21]

16.    Thus, either way, Guo and Bravo Luck are insiders of the Debtor and the

designation of their claims for voting purposes should reflect that insider status.

---

[17] *See In re Delta Airlines, Inc.*, No. 05-17923 (CGM), 2010 WL 423279 at *1, *4 (Bankr. S.D.N.Y. Feb. 3, 2010) ("Apart from [the six statutory insiders of corporations], the courts generally use two factors to determine if the individual is an insider: (1) the closeness of the relationship between debtor and individual; and (2) whether [any] transaction was performed at arm's length." (internal citation omitted)); *see also In re KDI Holdings, Inc.*, 277 B.R. 493, 511 (Bankr. S.D.N.Y. 1999) (In bankruptcy cases, "insider" is "one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor. . . . In cases involving non-management creditors, a creditor will be held to an insider standard where it is found that it dominated and controlled the debtor." (internal citations omitted)); *In re Adelphia Business Solutions, Inc.*, 280 B.R. 63, 72 (Bankr. S.D.N.Y. 2002) (finding that entities associated with certain members of the debtor's lender's family were insiders of the debtor "by virtue of [their] common ownership).

[18] *See* Perez Decl., Ex. 8, Feb. 9, 2022 Decision + Order on PAX's Pacific Alliance Opportunity Fund L.P.'s Motion for a Final Order of Civil Contempt ("Feb. 9, 2022 Final Contempt Order"), *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan, et al.*, Index No. 65077/2017, NYSCEF Doc. No. 1181 at 4.

[19] Perez Decl., Ex. 9, Nov. 30, 2021 Aff. of Qiang Guo, *Pacific Alliance Asia Opportunity Fund L.P. v Genever Holdings Corp., et al.*, Case No. BVIHCOM2020/0137, Eastern Caribbean Supreme Court Virgin Islands in the High Court of Justice Commercial Division (B.V.I.) at ¶ 39.

[20] Perez Decl., Ex. 10, Mar. 4, 2015 Letter from Stevenson, Wong & Co. to The Sherry-Netherland regarding Kwok's purchase application, *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan, et al.*, Index No. 65077/2017, NYSCEF Doc. No. 254 at SN 0074 ("[Bravo Luck] is legally and beneficially owned as to 50% by Mr. Kwok Ho Wan and 50% by Mr. Guo Qiang respectively.").

[21] *See Pacific Alliance Asia Opportunity Fund L.P.'s Memorandum of Law in Support of Motion to Modify the Automatic Stay to Proceed with State Court Litigation, and Related Relief*, dated December 16, 2020 [ECF No. 13].

(b)    **Golden Spring Claim**

17.    Golden Spring filed proof of claim number 2 against the Debtor, asserting a general unsecured claim for (a) $275,000 in attorney's fees related to the purchase of the Residence and (b) $1.8 million for monthly maintenance payments it paid "at Guo's direction." *See* Claim No. 2-1 (the "GS Claim"), Addendum at ¶¶ 1, 4. The GS Claim for $1.8 million of maintenance is asserted in the event that a "court with jurisdiction over Bravo Luck" finds that "Bravo Luck does *not* own the Residence" (emphasis added). GS Claim Addendum at ¶ 4. Additionally, the claim for $275,000 in reimbursement of attorney's fees is similarly premised on a finding that "Bravo Luck does *not* own the Residence" (emphasis added) as well as that "funds paid directly by Golden Spring to satisfy attorney fees related to the sale of the Residence do not give rise to a claim by Bravo Luck against the Debtor." *Id.* at ¶ 5.

18.    The GS Claim states that Golden Spring—which was set up and funded by Kwok in 2015 and pays Kwok's considerable personal living and legal expenses—is an entity owned as a technical legal matter by Guo (Kwok's son).[22] *See* GS Claim, Addendum at ¶ 1. However, the GS Claim does not specify what the relationship is between Golden Spring and Bravo Luck, nor does it provide any explanation for why Golden Spring would have provided funds for the Residence, other than the fact that it purportedly shares a mutual equity owner with Bravo Luck. Despite this, based on the close relationship between the Debtor, Kwok, Guo, Bravo Luck, and Golden Spring, as well as the series of non-arm's length transactions among the parties, Golden Spring is clearly a non-statutory insider of the Debtor. Examples of non-arm's length transactions between these parties, include:

---

[22] Perez Decl. Ex. 2, May 27, 2021 Hr'g Tr. at 9:25–10:3 (the Court found that "[i]t's quite undisputed that Golden Spring[] has funded seven-figure payments to facilitate Mr. Kwok's lifestyle . . . .").

- In March 2015, Kwok "set[] up Golden Spring New York by transferring funds from one of [his] accounts at UBS to Golden Spring New York's JPMorgan Chase bank account."[23]

- Golden Spring is wholly owned by China Golden Spring Group (Hong Kong Limited),[24] which purportedly is technically owned by Guo.

- Golden Spring operates as Kwok's "family office."[25]

- Golden Spring funds Kwok's lavish lifestyle,[26] including paying millions of dollars in expenses related to the Residence,[27] funding Kwok's counsel in various litigations,[28] and paying for the upkeep of, employees working on, and legal counsel for the deca-million dollar Lady May yacht,[29] which, on February 9, 2022, the judge in the New York State Court Action found Kwok "beneficially owns and controls."[30]

---

[23] Perez Decl., Ex. 11, Feb. 5, 2016 Aff. of Kwok Ho Wan, *Ace Decade Holdings Limited v. UBS AG*, Index No. 653316/2015, NYSCEF Doc. No. 27 at ¶ 36.

[24] Perez Decl., Ex. 12, May 19, 2021 Aff. of Yanping Wang, *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan, et al.*, Index No. 65077/2017, NYSCEF Doc. No. 806 at ¶ 3.

[25] *Id.* at ¶ 4.

[26] Perez Decl., Ex. 2, May 27, 2021 Hr'g Tr. at 9:25–10:3 (the Court found that "[i]t's quite undisputed that Golden Spring[] has funded seven-figure payments to facilitate Mr. Kwok's lifestyle . . . .").

[27] Perez Decl., Ex. 13, Feb. 1, 2021 Ltr., *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan, et al.*, Index No. 65077/2017, NYSCEF Doc. No. 765 (Letter from M. Carvalho to E. Moss stating that "[Kwok's] expenses during the relevant time period have been paid for by Golden Spring (New York) Ltd."); *see also* Perez Decl., Ex. 14, Dec. 18, 2020 341 Hr'g Tr., *In re Genever Holdings LLC*, No. 20-12411 (Bankr. S.D.N.Y. 2020) at 21–22 ("This family office [Golden Spring New York] pays some of the expenses related to the Sherry apartment also, which is about like 1.8 million in total so far . . . .").

[28] Perez Decl., Ex. 15, Apr. 7, 2021 Ltr., *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan, et al.*, Index No. 65077/2017, NYSCEF Doc. No. 766 (Letter from K. Kearney of Hodgson Russ to E. Moss explaining that the firm has represented Kwok in various matters and that payments received by the firm for its services were made by Golden Spring (New York) Ltd.); *see also* Perez Decl. Ex., 16, Official Form 104, *In re Ho Wan Kwok*, Case No. 22-50073 (JAM) (Bankr. D. Conn.), Doc. No. 20 (listing Golden Spring as an unsecured creditor in Kwok's individual chapter 11 case for approximately $21,000,000 in "Litigation Funding").

[29] Perez Decl., Ex. 17, Feb. 2, 2022 Evidentiary Hr'g Tr., *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan, et al.*, Index No. 65077/2017, NYSCEF Doc. No. 1179 at 55:21–56:23; 64:21–65:5.

[30] See Perez Decl., Ex. 8, Feb. 9, 2022 Final Contempt Order at 4 ("The testimony adduced at the hearing out of the mouths of defendants' witnesses clearly and convincingly demonstrated that Kwok beneficially owns and controls the Lady May and has utter contempt for this Court and the judicial process.").

C.    **The Plan**

19.    Per the below chart, the Plan contains five classes of claims against, and equity

interests in, the Debtor.

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| Class 1 | Allowed Claim of The Sherry | No | No |
| Class 2 | Allowed Bravo Luck Claim and Bravo Luck Interest | Yes | Yes |
| Class 3 | Allowed Claim of PAX | Yes | Yes, if Allowed |
| Class 4 | Unsecured Claims | Yes | Yes |
| Class 5 | Membership Interest | N/A | N/A |

20.    Class 1 contains the secured claim of the Sherry-Netherland. Class 2 contains both

the BL Claim and the BL Interest. Class 3 contains the PAX Claim. Class 4 contains all other

general unsecured claims, namely the insider GS Claim and the insider Guo Claim. And finally,

Class 5 contains the membership interests in the Debtor.

## OBJECTION

I.    **APPROVAL OF THE DISCLOSURE STATEMENT SHOULD BE DENIED BECAUSE THE PLAN CANNOT BE CONFIRMED**

A.    **The Plan Was Not Proposed in Good Faith**

21.    The Court may consider fundamental legal objections to confirmation of the Plan

at this point in the proceedings. *See, e.g., In re Quigley Co. Inc. (Quigley)*, 377 B.R. 110, 115-16

(Bankr. S.D.N.Y. 2007) (Where a plan is "patently unconfirmable on its face, the application to

approve the disclosure statement must be denied, as solicitation of the vote would be futile."

(internal citations omitted)); *In re Filex, Inc.*, 116 B.R. 37, 41 (Bankr. S.D.N.Y. 1990) ("A court

approval of a disclosure statement for a plan which will not, nor cannot, be confirmed by the

Bankruptcy Court is a misleading and artificial charade which should not bear the imprimatur of

the court."); *In re Felicity Assocs., Inc.*, 197 B.R. 12, 14 (Bankr. D. R.I. 1996) ("It has become

standard Chapter 11 practice that when an objection raises substantive plan issues that are normally

11

addressed at confirmation, it is proper to consider and rule upon such issues prior to confirmation, where the proposed plan is arguably unconfirmable on its face." (internal quotation marks and citation omitted)). Here, the Plan is facially unconfirmable for lack of good faith.

22.    This is not a complex chapter 11 case; there is no operating business, just an apartment to be sold. The Debtor could have easily proposed a simple liquidating plan that provides for the sale of the Residence and the funding of an escrow account to hold the proceeds of such sale pending the distribution to the holders of allowed claims against the Debtor in accordance with the priorities set forth in the Bankruptcy Code. Instead, the Debtor has proposed a plan that is the final step in a deceptive scheme to subvert the fundamental principles of the Bankruptcy Code by transferring the Debtor's assets to its insiders. In view of the totality of the circumstances, the Plan has not been proposed in good faith and does not satisfy the requirements of section 1129(a)(3) of the Bankruptcy Code.

23.    Other than the security deposit that will be used to satisfy the Sherry-Netherland Claim in full, the Debtor's only asset available to satisfy claims is the Residence. The Plan is deliberately designed to improperly provide Insider Claimants with the proceeds from the sale of the Residence ahead of any non-insider claimants.

- *First,* in the event that Bravo Luck is found to be the beneficial owner of the Debtor, the Plan provides that Bravo Luck (Guo) will receive the entirety of the Net Sale Proceeds and there shall be no distributions to PAX. *See* Plan § 5.2. Notably, the Disclosure Statement and Plan are both silent as to why the BL Interest is entitled to a recovery ahead of the PAX Claim.[31]

- *Second,* in the event that Bravo Luck is not found to be the beneficial owner of the Debtor, the Plan—through the creation of three separate classes of unsecured claims— is designed to ensure that Guo receives a 100% recovery on his GS Claim and the Guo Claim (approximately $15.1 million in the aggregate) from the Net Sales Proceeds as

---

[31] The PAX Claim does not go away if Bravo Luck is found to be the beneficial owner of the Debtor. Not only does that at best provide that Bravo Luck is an equity owner of the Debtor (and not the Residence), if necessary, PAX will demonstrate that Bravo Luck is simply a Kwok shell company that is an alter ego of the Debtor and its related entities.

well as a recovery on the BL Claim (approximately $76 million) that would be *pari passu* with the PAX Claim. *See* Plan §§ 5.2-5.4.

24.      Section 1129(a)(3) of the Bankruptcy Code provides that in order for a court to confirm a plan of reorganization, the plan must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The Second Circuit has construed this standard as requiring a showing that "the plan [was] proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." *In re Granite Broadcasting Corp.*, 369 B.R. 120, 128 (Bankr. S.D.N.Y. 2007), *appeal dismissed*, 385 B.R. 41 (S.D.N.Y. 2008); *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 649 (2d Cir. 1988) (stating that the plan of reorganization must be consistent with the Bankruptcy Code and its objectives and purposes). Here, of course, the Debtor has no good intentions – it has eschewed a level playing field in favor of scheming to benefit its own insiders without any justification.

### B.      The Plan is Unconfirmable Under Section 1129 of the Bankruptcy Code

25.      For a plan to be capable of confirmation, the Court must determine that, among other things, the plan "complies with the applicable provisions of the Bankruptcy Code." 11 U.S.C. § 1129(a)(1). The legislative history explains that this provision encompasses, among other things, the requirements of section 1123 of the Bankruptcy Code with respect to the mandatory and permissive contents of a plan. *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978); *In re Johns-Manville Corp.*, 68 B.R. 618, 629 (Bankr. S.D.N.Y. 1986), *aff'd in part*, *rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom. Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636 (2d Cir. 1988); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984).

26.     For the reasons set forth below, the Debtor has proffered a patently unconfirmable plan that violates both the mandatory and permissive content provisions of the Bankruptcy Code. Accordingly, absent the modifications set forth herein, the Motion should be denied.

**(a)     The Plan Cannot be Confirmed Because it Improperly Permits Insider Voting to Support a Cramdown on PAX**

27.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests under a plan has either accepted the plan or is not impaired under the plan. 11 U.S.C. § 1129(a)(8). Under section 1129(a)(10) of the Bankruptcy Code, a plan containing a class of impaired claims may only be confirmed if "at least one class of claims that is impaired under the plan has accepted the plan, *determined without including any acceptance of the plan by any insider*." 11 U.S.C. § 1129(a)(10) (emphasis added).

28.     In short, in order to confirm the Plan, which includes four classes of impaired claims and interests, at least one of the impaired classes must vote to accept the Plan (as determined without including any acceptances cast by insiders of the Debtor).[32] The Disclosure Statement recognizes this, noting that "[e]ven if the Plan is not approved by all voting classes of impaired claims, the Debtor can still confirm the Plan under the cramdown provisions of 11 U.S.C. § 1129(b) so long as at least one class of impaired claims votes to accept the Plan." *See* Disclosure Statement at § II(C). However, under the circumstances here, where PAX will not support the Plan, there cannot be an impaired accepting class.

---

[32] The Plan and Disclosure Statement are silent as to the impairment and voting status of the membership interests in Class 5 of the Plan. However, regardless of whether such interests are impaired and entitled to vote on the Plan, the holder of such interests, Genever BVI, is an insider of the Debtor and cannot act as the impaired accepting class for purposes of confirmation of the Plan.

29.    The Insider Claimants are all insiders of the Debtor and would not be entitled to have their votes counted in favor of a cramdown plan.[33] Courts have found parties like the Insider Claimants to be insiders where there are close relationships and non-arm's length transactions. *See In re Delta Airlines, Inc.*, 2010 WL 423279 at *1, *4 ("Apart from [the six statutory insiders of corporations], the courts generally use two factors to determine if the individual is an insider: (1) the closeness of the relationship between debtor and individual; and (2) whether [any] transaction was performed at arm's length." (internal citation omitted)); *see also In re KDI Holdings, Inc.*, 277 B.R. at 511 (In bankruptcy cases, "insider" is "one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor. . . . In cases involving non-management creditors, a creditor will be held to an insider standard where it is found that it dominated and controlled the debtor."); *In re Adelphia Business Solutions, Inc.*, 280 B.R. at 72 (finding that entities associated with certain members of the debtor's lender's family were insiders of the debtor "by virtue of [their] common ownership of the family").

30.    There can be no doubt that Bravo Luck and Golden Spring have "sufficiently close" ties with the Debtor to constitute insiders. Kwok owns Genever BVI (which holds the membership interests of the Debtor) while Bravo Luck also (falsely) asserts beneficial ownership of the entity. *See* BL Claim, Addendum at ¶ 2. Guo purportedly is the sole shareholder of Bravo Luck and also purportedly holds technical legal title to Golden Spring. *See* Guo Claim, Addendum at ¶ 1; *see also* GS Claim, Addendum at ¶ 1. Guo is an insider, as he is the son of Kwok. Guo's claim is for "amounts that were paid by Guo on behalf of Bravo Luck," which, again is Kwok's shell company

---

[33] *See* 11 U.S.C. §101(31)(B) and (E). As discussed above, Kwok is purportedly in control of the Debtor here, and his son, Guo, by virtue of their familial relationship is an insider.

15

in his son's name. *See* Guo Claim, Addendum at ¶ 4. There has been no legitimate documentation provided that demonstrates any arm's-length transaction between these entities. Rather, as the court overseeing PAX's litigation with Kwok for five years recently explained, these interactions have been part of a long-running shell game to defraud and frustrate PAX.[34]

31.     Thus, even if the Insider Claimants can vote on the Plan, as insiders of the Debtor their votes cannot be counted for purposes of determining whether an impaired class of claims has accepted the Plan. As the holder of the only impaired, non-insider claim, PAX's vote is the *only vote* that may be counted for purposes of satisfying section 1129(a)(10) of the Bankruptcy Code. As PAX will not vote to accept the Plan as currently drafted, it is unconfirmable as a matter of law under section 1129(a) of the Bankruptcy Code, and solicitation on the Plan at this time would be futile.

> **(b)     The Plan Does Not Provide Equal Treatment to Unsecured Creditors, Unfairly Discriminates Against Non-Insider Claimants, and is Neither Fair nor Equitable, All In Violation of the Bankruptcy Code**

32.     Even if the Plan could ever have an impaired accepting class (which it cannot) and could conceivably be crammed down on PAX, the Plan would still be fatally flawed.

> **1.     The Plan Improperly Provides Priority Treatment to the Insider Claimants**

33.     First, the Plan impermissibly provides Class 4 (consisting solely of Golden Spring's and Guo's purported general unsecured claims) with priority treatment over all other general unsecured claims in contravention of section 1123(a)(4) of the Bankruptcy Code. *See* Plan at § 5.4. Specifically, the Plan states that "[t]o the extent Allowed, the Class 4 Claims of [Golden Spring] and Guo shall be *paid in full* from the Escrow *prior to* any distribution of the Net Sale Proceeds to

---

[34] See Perez Decl., Ex. 8, Feb. 9, 2022 Final Contempt Order at 1 (attributing almost all of the case's 1,180 docket entries to "defendant [Kwok's] efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members . . . .").

either Bravo Luck or PAX" (emphasis added).[35] *Id*. Similarly, the definition of "Net Sale Proceeds" provides that Class 4 Claimants will be paid from the Sale Proceeds with other administrative expenses even before the remaining proceeds are deposited into the Escrow Account. *Id*. at § 1.20.

34.     Each of Golden Spring's and Guo's proofs of claim assert general unsecured claims, and neither seeks priority treatment. *See* Claim No. 2-1 and Claim No. 3-1. Similarly, the Plan classifies these claims as general unsecured claims. *Id*. at § 5.4; *see also Debtor's Schedule E/F: Creditors Who Have Unsecured Claims* [ECF No. 4]. Yet, the Debtor proposes to provide these insiders payment in full, ahead of its only non-insider general unsecured claimant.

35.     The proposed preferential treatment provided to Golden Spring's and Guo's claims violates section 1123(a)(4) of the Bankruptcy Code, which requires a plan to "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest [.]" 11 U.S.C. § 1123(a)(4). "This equal treatment" provision requires that "all members of the class must receive equal value [and] each member of the class must pay the same consideration for its distribution. *In re Quigley Co., Inc.*, 377 B.R. at 110; *see also In re W.R. Grace & Co.*, 475 B.R. 34, 121 (D. Del. 2012) ("Federal case law construing [Section 1123(a)(4)] has interpreted equal treatment to mean that: (1) all class members must be subject to the same process for claim satisfaction… (2) all class members' claims must be of 'equal value' through the application of the same pro rata distribution or payment percentage procedures to all claims."). In the present case, as noted below, there is no legitimate purpose for separating purportedly general unsecured creditors. The claims

---

[35] The Plan notes that "[i]f the Class 4 claims are subject to an objection filed on or before the Claim Objection Date, then in such event, a separate reserve shall be established with the Escrow Agent from the Net Sale Proceeds in an amount sufficient to pay the Class 4 Claims in full." *See* Plan at § 5.4. This too contravenes the priority rules as any allowed Class 4 claims should be paid *pro rata* with all other allowed general unsecured claims.

of PAX and, to the extent allowed, those belonging to Bravo Luck, Golden Spring, and Guo, should all be classified in the same general unsecured creditor class and receive *pro rata* treatment. Therefore, by proposing disparate treatment to parties that should be in the same class, the Plan directly contravenes section 1123(a)(4).

36.     Ultimately, the priority treatment afforded to Golden Spring's and Guo's general unsecured claims in violation of sections 1122(a) and 1123(a)(4) of the Bankruptcy Code renders the Plan patently unconfirmable. As a result, the Plan must be amended to classify together and treat equally all purported general unsecured claims.

### 2.     The Plan Unfairly Discriminates Against PAX

37.     Second, by providing improper benefits to insiders, the Plan unfairly discriminates against PAX, rendering the Plan unconfirmable even assuming that PAX's claim could be separately classified. *See In re Woodbrook Assocs*., 19 F.3d 312, 321 (7th Cir. 1994) (finding that the plan, which the court described as a "three dollar bill," provided preferred treatment to insiders at the expense of unsecured creditors and thus, unfairly discriminated against such creditors). In *Woodbrook*, the plan proposed to pay the general unsecured claims of the debtor's insiders (family members and affiliates) in full at the expense of the Department of Housing and Urban Development, which was forecasted to receive not more than a 5% distribution on its unsecured claim. *Id*. Based on these facts, the court in *Woodbrook* found that "[a]ny affirmative vote from [the insiders] must be discounted as an insider vote. Thus, as the bankruptcy court found, confirmation cannot be achieved over HUD's objection [and] [d]ismissal of Woodbrook's Chapter 11 case, under these circumstances, was in the creditor's best interest." *Id.* (internal citation omitted). The Plan is just as phony as the one at issue in *Woodbrook*, and similarly impermissibly discriminates against holders of legitimate general unsecured claims for the benefit of insiders.

18

**3.     The Plan is Neither Fair nor Equitable, as it Violates the Absolute Priority Rule**

38.     Third, the Plan facially fails because it is neither fair nor equitable. For a plan to be "fair and equitable" with respect to an impaired class of unsecured claims or interests that rejects the plan, it must comply with the "absolute priority rule." *See* 11 U.S.C. § 1129(b)(2)(B)(ii) ("[T]he holder of any claim or interest that is junior to the claims of [the rejecting class] will not receive or retain under the plan on account of such junior claim or interest any property."); *In re LATAM Airlines*, 620 B.R. 722, 797 (Bankr. S.D.N.Y. 2020) ("[A] reorganization plan may not give property to the holders of any junior claim or interest on account of those claims or interest, unless all classes of senior claims either receive the full value of their claims or give their consent." (internal quotation marks and citation omitted)). Pursuant to Section 5.2 of the Plan, in the event that Bravo Luck is found to be the beneficial owner of the Debtor, Bravo Luck will receive the entirety of the Net Sale Proceeds and there will be no distribution to PAX on account of the PAX Claim. *See* Plan § 5.2. Providing Bravo Luck with a potentially full recovery on its alleged interest in the Debtor ahead of all senior unsecured claims, including the PAX Claim, is a clear violation of the absolute priority rule. Accordingly, even if the Debtor were successful in its efforts to gerrymander an impaired accepting class, the Debtor would be unable to cram down the Plan on PAX as PAX is the only impaired, non-insider creditor.

**C.     The Plan Impermissibly Gerrymanders General Unsecured Claims in Violation of Section 1122(a) of the Bankruptcy Code**

39.     The Plan is also facially unconfirmable because it impermissibly gerrymanders unsecured claims in an artificial attempt to guarantee an impaired accepting class.

40.     The Bankruptcy Code requires that the Plan designate classes of claims and interests in accordance with section 1122 of the Bankruptcy Code. *See* 11 U.S.C. § 1123(a)(1). Section 1122(a) of the Bankruptcy Code provides that chapter 11 plans "may place a claim or an

interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). Furthermore, the "separate classification of unsecured claims solely to create an impaired assenting class [is not] permitted." *In re Boston Post Road Ltd. Partnership* (*Boston Post*), 21 F.3d 477, 483 (2d Cir. 1994) (holding that "approving a plan that aims to disenfranchise the overwhelmingly largest creditor through artificial classification is simply inconsistent with the principles underlying the Bankruptcy Code."). A debtor must provide "credible proof of a legitimate reason for separate classification of similar claim." *Id.* Such "legitimate reason" must be based on a valid *business* need. *Id.* at 482-83 (emphasis added). Classification based on the differing origins of claims that "enjoy similar rights and privileges within the Bankruptcy Code, do not alone justify separate segregation." *Id.* at 483.

41.    The Plan proposes three separate classes of general unsecured claims, each with differing treatment. *See* Plan at § 5. As set forth in Section 5 of the Plan, the BL Claim (a general unsecured claim) is classified in Class 2, the PAX Claim (a general unsecured claim) is classified in Class 3, and the Guo Claim and GS Claim (each, a general unsecured claim) are classified in Class 4. *Id.* There are no valid business reasons for separately classifying PAX and the other general unsecured creditors because the Debtor has no business—it is liquidating its only asset. Moreover, PAX, Bravo Luck, Guo, and Golden Spring all assert general unsecured claims against the Debtor that, if allowed, are entitled to similar rights under the Bankruptcy Code.

42.    The sole purpose of the Plan's classification scheme is to improperly gerrymander a class that will accept the Plan in an attempt to disenfranchise and cram down PAX. In addition to failing because the Insider Claimants are not entitled to have their votes counted, this gambit also fails because it is an obvious, impermissible manipulation of voting classes. *See In re 500 Fifth Ave. Assocs.*, 148 B.R. 1010, 1019 (Bankr. S.D.N.Y. 1993), *aff'd*, No. 93 CIV. 844 (LJF),

1993 WL 316183 (S.D.N.Y. May 21, 1993) (holding that "although the debtor retains some flexibility in the classification of substantially similar claims, it may not separately classify claims only to conjure up an impaired, assenting class"). Thus, the Plan violates section 1122(a) of the Bankruptcy Code. As discussed below, the Plan must be modified to classify all general unsecured claims into one class that provides for a *pro rata* distribution of the sale proceeds to all holders of allowed, non-subordinated claims. Without such change, the Plan is patently unconfirmable and the Court should deny approval of the Disclosure Statement.

**D.** **The Plan Cannot Satisfy the "Best Interest Test" Under Section 1129(a)(7) of the Bankruptcy Code**

43.    Section 1129(a)(7) of the Bankruptcy Code—the "best interests of creditors test"—requires that, with respect to each impaired class of claims and equity interests, each holder of a claim or equity interest in such class:

(i)    has accepted the plan; or

(ii)    will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date[.]

11 U.S.C. § 1129(a)(7). The "best interests test" focuses on individual dissenting creditors rather than classes of claims. *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999). Under the best interests test, the Court must find that each non-accepting creditor will receive or retain value that is not less than the amount it would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code. *Id.*

44.    The Disclosure Statement simply states that "the Plan pays creditors at least as much as they would receive in a liquidation under Chapter 7." Disclosure Statement at 18. Not surprisingly, the Disclosure Statement fails to provide any substantive analysis regarding creditor

recoveries under chapter 7. But the Plan proposes to classify the BL Interest in Class 2, and if such interest is allowed, the Plan proposes to distribute all of the Net Sale Proceeds to Bravo Luck with "no further distributions to PAX." *See* Plan § 5.2. In a chapter 7 liquidation, the BL Interest would only receive a distribution if all claims, including post-petition interest on such claims, were paid in full. *See* 11 U.S.C. § 726(a). That is not the case here. The Debtor should not be permitted to end-run the distribution priorities set forth in the Bankruptcy Code to provide a clear insider with a recovery in full prior to the holder of a legitimate claim. *See In re Woodbrook Assocs.*, 19 F.3d at 321 (dismissing debtor's chapter 11 case where the debtor proposed a plan that provided a preferred recovery to its insiders over a non-insider general unsecured claim). As currently proposed, the Plan cannot satisfy the best interests test with respect to the claim of PAX, and thus is patently unconfirmable and the Court should deny approval of the Disclosure Statement.

###### E.    The Plan Impermissibly Classifies the BL Claim and the BL Interest Together in Class 2 In Violation of Section 1122(a) of the Bankruptcy Code

45.    As discussed above, section 1122(a) of the Bankruptcy Code provides that chapter 11 plans "may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). Class 2 of the Plan contains both the BL Claim (asserting a general unsecured claim for amounts used to fund the purchase of the Residence) and the BL Interest (asserting a beneficial ownership interest in the Debtor). *See* Plan § 5.2.

46.    Although false, Bravo Luck expressly represents that it is the owner of the Debtor and Genever BVI and that Kwok holds those interests in trust for Bravo Luck. *See* BL Claim, Addendum at ¶ 2. Guo has also (falsely) asserted that Bravo Luck is the beneficial owner of the "Genever Entities and, thus, the Apartment." *See id*. As an alleged holder of an equity interest in the Debtor, the BL Interest receives different treatment under the Bankruptcy Code than the BL

22

Claim, a putatively general unsecured claim. Most importantly, as discussed above, equity interests are satisfied only *after* the claims of creditors. *See* 11 U.S.C. §§ 1129(b)(2)(B); (C) (requiring a debtor to comply with the absolute priority rule with respect to the cram down of a dissenting creditor); *see also* 11 U.S.C. § 1127(a)(7) (incorporating the distribution scheme set forth in section 726(a) of the Bankruptcy Code for purposes of determining whether the "best interests" test has been met with respect to a dissenting creditor). Thus, the BL Interest (if allowed) should be treated as an equity interest in a separate class from the BL Claim and should not receive any amounts until allowed general unsecured claims are paid in full. As currently proposed, the Plan thus violates section 1122(a) of the Bankruptcy Code. Accordingly, the Plan is patently unconfirmable and the Court should deny approval of the Disclosure Statement.

### F.    The Plan Impermissibly Confers and Cuts Off Jurisdiction Over Key Issues Solely for the Benefit of the Insider Claimants

47.    In addition to the Debtor's chapter 11 case, there now is Kwok's individual chapter 11 case pending in the Connecticut Bankruptcy Court and the ownership dispute and alter ego litigations in the New York Court and BVI Court.[36] A bankruptcy court may preside over any "core proceeding" relating to a debtor's liquidation, including "allowance or disallowance of claims against the estate." 28 U.S.C. §§ 157, 1334. The Plan seeks to remove matters from this Court's core jurisdiction in an improper attempt to advantage insiders.

48.    Specifically, the Class 2 treatment of the BL Claim contemplates giving jurisdiction to the BVI Court over whether Bravo Luck holds an allowed general unsecured claim against the Debtor even though that issue is fundamental to this case. *See* Plan at § 5.2. While this issue may ultimately be addressed at Plan confirmation, it reflects yet another improper effort to permit insiders to litigate in their preferred forum.

---

[36] The action in the BVI Court has been stayed as a result of Kwok's chapter 11 filing.

23

49.    The Plan should provide for the coordination between this Bankruptcy Court and the Connecticut Bankruptcy Court, to the extent necessary, regarding the allowance of claims under the Plan and/or the distribution of the sale proceeds of the Residence. In addition, numerous issues herein are expressly core bankruptcy issues, including claims relating to recharacterization and equitable subordination (which is only available under the Bankruptcy Code) with respect to the claims of Bravo Luck, and the other Insider Claimants.

## II.    THE PLAN AND THE DISCLOSURE STATEMENT CONTEMPLATE POTENTIAL ALLOWANCE AND DISALLOWANCE OF CLAIMS FOR BOTH VOTING AND DISTRIBUTION PROCEDURES BUT DO NOT IMPLEMENT A PROCEDURE AND TIMELINE FOR CLAIM OBJECTIONS

50.    The Plan and Disclosure Statement contemplate the potential allowance and disallowance of claims for both voting and distribution procedures but do not implement a procedure for claim objections or a timeline for doing so. Neither the Disclosure Statement nor the Plan specify whether PAX will be entitled to vote on the Plan but rather state "Yes, if Allowed." *See* Disclosure Statement at 12. The Disclosure Statement also states that "[i]n this case, the designations of impairment (and ultimately voting rights) will depend on the allowance/disallowance of each creditor's claim. If necessary, the respective voting rights of PAX and Bravo Luck shall be determined in connection with the Confirmation Hearing, based upon a separate motion to designate votes under 11 U.S.C. §1126(e)." *See* Disclosure Statement at 6. Of course, this is too limiting: all of the Insider Claimants will be subject to motions to designate their votes.[37]

51.    The Plan should provide for an appropriate period of time for claims designation and voting procedures, and should provide PAX (and/or a neutral fiduciary) with standing to

---

[37] Even if the Debtor could designate PAX's votes, it would still not result in a confirmable plan. If PAX is not permitted to vote, then its class will be deemed to reject the Plan, and there would still be no consenting impaired class excluding the votes of insiders. *See DISH Network Corp. v. DBSD North America, Inc. (In re DBSD North America,*

challenge the claims of the Insider Claimants given the obvious insider relationship between the

Debtor and the Insider Claimants. The ultimate disallowance or allowance of claims of the Insider

Claimants (whether as equity interests or general unsecured claims) must be subjected to a

thorough claim objection process overseen by the Bankruptcy Court. As PAX is the only non-

insider, impaired creditor, the Disclosure Statement should not be approved unless and until there

is an approved mechanism for and litigation permitting PAX to seek disallowance of the Insider

Claimants' claims as invalid under applicable law or recharacterization and/or equitable

subordination under the Bankruptcy Code.

## III. THE DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE INFORMATION

52. Approval of the Disclosure Statement should also be denied because it fails to

contain "information of a kind, and in sufficient detail, as far as is reasonably practicable in light

of the nature and history of the debtor and the condition of the debtor's books and records . . . that

would enable a hypothetical investor of the relevant class to make an informed judgment about the

plan." *See* 11. U.S.C. § 1125(a)(1). Courts have created a non-exhaustive list of factors that should

be disclosed including, without limitation, the scheduled claims, the estimated return to creditors

under a chapter 7 liquidation, information relevant to the risks posed to creditors under the plan,

and the relationship of the debtor with affiliates. *See In re Avianca Holdings S.A.*, 632 B.R. 124,

130 (Bankr. S.D.N.Y. 2021) (internal citation omitted). Here, the Disclosure Statement fails to

provide key information that would allow a reasonable investor to accurately evaluate the Plan.

---

*Inc.)*, 634 F.3d 79 (2d Cir. 2011) (finding that the bankruptcy court did not err in designating the vote of a competitor and disregarding competitor's class for voting purposes).

A.    **The Disclosure Statement Fails to Address the Status of Insiders**

53.    First, the Disclosure Statement fails to disclose the significant relationships between the Debtor and its affiliates, including the Insider Claimants. When evaluating the adequacy of a disclosure statement, courts expressly look to the disclosure of the relationship of a debtor with its affiliates. *See In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170-71 (Bankr. S. D. Ohio 1988); *see also In re Source Enters.*, No. 06-11707 (AJG), 2007 Bankr. LEXIS 4770 at *1, *8 (Bankr. S.D.N.Y. July 31, 2007). Here, the Debtor, Genever BVI, Bravo Luck, Guo, and Golden Spring are all intimate insiders of Kwok with the closest of ties to one another: Kwok owns the shares of the parent company of the Debtor; Golden Spring is a company that Kwok formed and funded that pays for his lavish personal lifestyle and considerable legal expenses, and that is purportedly now owned by Guo (Kwok's son); Bravo Luck is a company technically owned by Guo (which Kwok at least half-owned in early 2015) that received money from Kwok's Hong Kong International Funds Limited in order to buy the Residence. Despite the business interrelationships between the parties, the Disclosure Statement makes no mention of any such relationship between these Insider Claimants and the Debtor.

54.    In addition to failing to disclose these relationships, the Disclosure Statement fails to discuss the substantial likelihood that the claims and interests of the Insider Claimants will be disallowed, recharacterized, or equitably subordinated. Simply put, the Insider Claimants are asserting unsupportable claims and false interests against the Debtor. The Disclosure Statement, at a minimum, should reveal that the Debtor never disclosed the purported BL Interest to the Sherry-Netherland when it purchased the Residence, nor did it disclose (as it now alleges, PAX submits falsely) that it borrowed funds from Bravo Luck to purchase the Residence.

55.    Additionally, the Disclosure Statement should reflect that PAX has strong arguments for the recharacterization of the BL Claim, Guo Claim, and GS Claim as—at best—

equity interests in the Debtor. *See In re Live Primary,* 626 B.R. 171, 178 (Bankr. S.D.N.Y. 2021) ("The 'paradigmatic' recharacterization case involves a situation where 'the same individuals or entities (or affiliates of such) control both the transferor and the transferee, and inferences can be drawn that funds were put into an enterprise with little or no expectation that they would be paid back along with other creditor claims.'" (internal citation omitted)).

56.     Further, the Disclosure Statement should be amended to disclose the strong arguments for the equitable subordination of the claims of the Insider Claimants to the PAX Claim. *See* 11 U.S.C. § 510(c)(1) (permitting the Bankruptcy Court to "subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim."). Courts subordinate claims and interests if (i) the claimant engaged in some type of inequitable conduct, (ii) the misconduct caused injury to the creditors or conferred an unfair advantage on the claimant and (iii) equitable subordination of the claim is consistent with bankruptcy law. *See Benjamin v. Diamond (In re Mobile Steel Corp.),* 563 F.2d 692, 700 (5th Cir. 1997); *see also In re Windstream Holdings, Inc.,* 627 B.R. 32, 60 (Bankr. S.D.N.Y. 2021). For the reasons described herein, PAX will be asserting equitable subordination objections to the Insider Claimants' claims, which should be disclosed.

57.     Finally, the Disclosure Statement does not address the existence of the Kwok bankruptcy filing in the Connecticut Bankruptcy Court or its potential effect on this case and the Plan. For example, is the Debtor subject to being substantively consolidated into the Kwok estate? Are the Insider Claimants subject to avoidance and other claims in the Kwok bankruptcy? What other impacts will the Kwok bankruptcy case have on the Plan? The Debtor and Kwok may not simply ignore these foundational questions, as they have attempted to do in both bankruptcy cases.

### B.    <u>The Court Cannot Assess if the Debtor's Proposed Solicitation is in Good Faith</u>

58.    The Motion states that the Debtor "proposes to provide a solicitation package to all creditors and other parties-in-interest consisting of the following: of (a) a conformed copy of the Order approving the Disclosure Statement and scheduling the Confirmation Hearing; (b) the Plan; (c) the Disclosure Statement; and (d) a ballot for use by the creditors in voting on the Plan, subject to the making of any motion to designate the voting rights of particular creditors." *See* Motion at ¶ 10. This package has not been submitted to the Court for approval or distributed to creditors for analysis. Although there is no standard for the appropriateness of a solicitation package, votes for acceptance and rejection of a plan should be solicited in good faith. *See In re Lear Corp.*, No. 09-14326 (ALG), 2009 WL 6677955 at *1, *4 (Bankr. S.D.N.Y. Nov. 5, 2009).

### C.    <u>The Disclosure Statement and Plan do not Specify the Treatment of Membership Interests</u>

59.    The Disclosure Statement and the Plan do not specify the treatment afforded to equity holders. Specifically, the equity holders, which are categorized in Class 5 "Membership Interests" are not categorized as impaired or unimpaired (but simply given an N/A) nor given a voting status. *See* Plan at § 5.5. Furthermore, the treatment afforded the membership interests by the Plan is that "disposition shall be determined in the context of the Ownership Dispute." *Id*. Membership interests in the Debtor should receive the remaining amount (if any) of the Net Sale Proceeds following the distribution and satisfaction in full of all allowed general unsecured claims.

60.    Accordingly, the Disclosure Statement should be revised so that the above information is fully disclosed in order for creditors voting on the Plan to make an informed decision.

## PROPOSED MODIFICATIONS TO THE PLAN

61.    In addition to the Disclosure Statement lacking adequate information, as noted herein, the Plan is patently unconfirmable as currently proposed. In order to fix the Plan's infirmities and provide for a level playing field, the Plan and Disclosure Statement must be revised as follows:

- The Plan and Disclosure Statement should provide for all allowed general unsecured claims to be classified in the same class (*i.e.,* have three separate classes: Class 1 (the Sherry-Netherland Claim), Class 2 (all Allowed General Unsecured Claims), and Class 3 (Allowed Membership Interests in the Debtor)).

- All allowed general unsecured claims (as allowed under the process set forth below) should receive their share of Net Sale Proceeds on a *pro rata* basis based upon the Allowed amount of their respective claim as determined by this Court.

- The Plan should provide for coordination, to the extent necessary, between the Bankruptcy Court and the Connecticut Bankruptcy Court regarding the allowance of claims and distribution of the Net Sale Proceeds.

- The Plan and Disclosure Statement should specifically state that the votes of the Insider Claimants will be discarded for cramdown purposes.

- The Plan should include a process and timeline for claim objections and a determination of, with PAX being afforded standing to object to (and seek recharacterization, disallowance, and subordination of), the claims of the Insider Claimants.

62.    These modifications along with additional comments to the Plan are reflected in the attached **Exhibit B**. PAX reserves all rights to retract, change, supplement, or propose additional comments to the Plan and Disclosure Statement.

## RESERVATION OF RIGHTS

63.    This Objection is submitted without prejudice to, and with a full reservation of, PAX's rights to object to confirmation of the Plan on any basis, or to supplement this Objection in writing or at the hearing thereon including, without limitation, in the event the Debtor amends or otherwise modifies the Disclosure Statement and/or the Plan.

## CONCLUSION

**WHEREFORE**, for all the reasons stated above, and while reserving all other rights and remedies, PAX respectfully requests that this Court: (i) deny the relief requested in the Motion, (ii) alternatively, require the Debtor to make the proposed changes to the Plan set forth in Exhibit B, and (iii) grant such other and further relief as the Court may deem just and proper.


Dated: March 15, 2022
     New York, New York

*/s/ Diana M. Perez*

**O'MELVENY & MYERS**
Stuart M. Sarnoff, Esq. (1976034)
Peter Friedman, Esq. (4976551)
Diana Perez, Esq. (4636403)
Time Square Tower
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email:    ssarnoff@omm.com
           pfriedman@omm.com
           dperez@omm.com

- and -

**MAYER BROWN LLP**
Douglas Spelfogel, Esq.
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2151
Email:    dspelfogel@mayerbrown.com

*Attorneys for Pacific Alliance Asia Opportunity Fund L.P.*