# EXHIBIT 17

```
                                                                        1

 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK : PART 61
 2   ------------------------------------------------X
     PACIFIC ALLIANCE ASIA OPPORTUNITY FUND, LP,
 3
                       Plaintiff(s),
 4
              - against -
 5
     KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO WEN GUI,
 6   a/k/a GUO WENGUI, a/k/a GUO WEN GUI, a/k/a WAN
     GUE HAOYUN, a/k/a MILES KWOK, a/k/a HAOYUN GUO,
 7   GENEVER HOLDINGS CORPORATION, and GENEVER HOLDINGS LLC

 8                     Defendant(s).

 9   ------------------------------------------------X
     Index No. 652077/2017
10

11                        February 2, 2022 - Via Microsoft Teams

12

13   B E F O R E:   HONORABLE BARRY OSTRAGER, JSC

14

15   A P P E A R A N C E S:

16          O'MELVENY & MYERS LLP
                Attorneys for Plaintiff
17              7 Times Square
                New York, New York 10036
18          BY:  STUART SARNOFF, ESQ.
                 DAVID HARBACH, ESQ.
19               LAURA ARONSSON, ESQ.

20

21          BAKER & HOSTETLER LLP
                Attorneys for Defendant Kwok Ho Wan
22              45 Rockefeller Plaza
                New York, New York 10111
23          BY:  JOHN SIEGAL, ESQ.
                 TRACY COLE, ESQ.
24               ERICA BARROW, ESQ.

25

              Rachel C. Simone, CSR, RMR, CRR
```

```
                                                                    2

 1   APPEARANCES CONTINUED:

 2

 3            CHIESA SHAHINIAN GIANTOMASI PC
                 Attorneys for HK International
 4               11 Times Square, 34th Floor
                 New York, New York 10036
 5            BY:  LEE VARTAN, ESQ.

 6

 7

 8                         - o -

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Rachel C. Simone, CSR, RMR, CRR

FILED: NEW YORK COUNTY CLERK 02/07/2022 02:11 PM    INDEX NO. 652077/2017
NYSCEF DOC. NO. 1179    20-12411-jlg    Doc 177-18    Filed 03/15/22    Entered 03/15/22 18:12:10    Exhibit 17 -    RECEIVED NYSCEF: 02/07/2022
Excerpts from the transcript of the February 2 2022 Evidentiary He    Pg 4 of 16

Guo - by Defendant - Cross / Harbach

53

```
 1   understood you to say that whenever your father took the yacht
 2   out, number one, he had to get authorization from you which, I
 3   suppose, all guests would; and, number two, I believe you said
 4   every time he went out he gave you a detailed itinerary.  So it's
 5   no answer to my -- sorry, Madam Interpreter.  Go ahead.  Excuse
 6   me.
 7        A    I will give you an example, sir.
 8             If the yacht is in New York, my father boarded it
 9   New York and he told me he is going to Long Island, then I would
10   agree to it.  But if he wants to stop half way, it is his freedom
11   as long as it is within the New York area.  But if he is taking
12   the yacht to Palm Beach, then he would need to give me a very
13   detailed itinerary.
14        Q    Did your father ever take the yacht out without your
15   permission or knowledge?
16        A    Never.
17        Q    Let's look at -- well, we are still on Paragraph 14.
18   Excuse me.
19             You talk about in early October of 2020 no longer
20   wishing to use the boat and relating that to Golden Spring.
21        A    Yes.
22        Q    And then the remainder of the sentence says -- the
23   paragraph says that Golden Spring relayed your directive to
24   Captain Heaslop.
25        A    Yes.
```

Rachel C. Simone, CSR, RMR, CRR

FILED: NEW YORK COUNTY CLERK 02/07/2022 02:11 PM    INDEX NO. 652077/2017
NYSCEF DOC. NO. 1178    20-12411-jlg   Doc 177-18   Filed 03/15/22   Entered 03/15/22 18:12:10   Exhibit 17 -   RECEIVED NYSCEF: 02/07/2022
Excerpts from the transcript of the February 2    2022 Evidentiary He    Pg 5 of 16

Guo - by Defendant - Cross / Harbach

54

1      Q    Do you remember this?

2      A    Yes, I remember.

3      Q    What exactly was your directive?

4      A    Because my yacht in every October the winter season,

5  due to the reason of the weather, it needs to be parked in

6  Florida, a warmer place.  So to me this is a very ordinary

7  request.  Golden Spring asked me if I still need to use the yacht

8  because my understanding is that a yacht needs to be moved to a

9  warmer place.

10     Q    I want to make sure I understand the last part of that

11 answer before I ask another question.

12          Did you say that Golden Spring asked you if you

13 wanted to continue to use the yacht?

14     A    It wasn't a request or inquiry, actually, because I

15 already know that the yacht is no longer suitable to be used in

16 New York under the weather conditions.  They were just informing

17 me that the yacht needs to move to a warmer place.

18     Q    So Golden Spring was informing you of that decision?

19     A    It is not informing.  It is more like reporting.

20     Q    I see.

21          So in your affidavit when you say you no longer

22 wish to use the boat for the season due to the weather; was that

23 the reason you relayed the directive, or is it because you heard

24 from Golden Spring that the boat needed to go to Florida?

25     A    Okay.  Let me reiterate my answer, sir.

Rachel C. Simone, CSR, RMR, CRR

FILED: NEW YORK COUNTY CLERK 02/07/2022 02:11 PM INDEX NO. 652077/2017
NYSCEF DOC. NO. 1178 RECEIVED NYSCEF: 02/07/2022
20-12411-jlg Doc 177-18 Filed 03/15/22 Entered 03/15/22 18:12:10 Exhibit 17 -
Excerpts from the transcript of the February 2 2022 Evidentiary He Pg 6 of 16

Guo - by Defendant - Cross / Harbach

55

1          Every year in the past few years in October, that
2     would be the time to arrange for the yacht to be moved to a
3     warmer place. So this year, that particular year before they
4     moved the yacht to warmer place, they informed me, they told
5     me -- rather, they report to me that the yacht needs to be moved
6     to the warmer place. So it was more like a routine activity.
7          Q    I understand.
8               So is it true, then, that your directive in
9     response to that information was, Take the yacht to Florida?
10         A    Yes, I agreed to the request sent by the captain.
11         Q    Well, I'm sorry, but that's not what your affidavit
12    says. Your affidavit refers to a directive, so that's what I am
13    trying to understand. That was my original question. What
14    exactly was your directive?
15         A    My communication with the captain is through a
16    representative of the company. The representative of the company
17    came to me and told me it is about time to move the yacht to a
18    warmer place, so my instruction to the representative is that
19    yes, all right, the yacht needs to move to Florida. That was my
20    directive.
21              THE COURT: What is your relationship with Golden
22        Spring?
23              THE WITNESS: Your Honor, Golden Spring helps me
24        to pay all the expenses for my yacht, including the
25        management fees.

FILED: NEW YORK COUNTY CLERK 02/07/2022 02:11 PM    INDEX NO. 652077/2017
NYSCEF DOC. NO. 1178    20-12411-jlg   Doc 177-18   Filed 03/15/22   Entered 03/15/22 18:12:10   Exhibit 17 -   RECEIVED NYSCEF: 02/07/2022
Excerpts from the transcript of the February 2 2022 Evidentiary He   Pg 7 of 16

Guo - by Defendant - Cross / Harbach

56

```
 1              THE COURT:  Do you have an ownership interest in
 2     Golden Spring?
 3              THE WITNESS:  No.
 4              THE COURT:  Why would Golden Spring help you pay
 5     all of the expenses associated with operating and
 6     maintaining the yacht?
 7              THE WITNESS:  Golden Spring belongs to my brother.
 8     It is my brother's company.  When the yacht was gifted to me
 9     as a gift, I find it very troublesome to form another bank
10     account just to try to manage the yacht; so I requested my
11     brother if he can continue to manage the yacht using his
12     company.  He and I came to an agreement with that.
13              THE COURT:  So it is your testimony that your
14     brother is the sole owner of Golden Spring?
15              THE WITNESS:  Yes, your Honor.
16              THE COURT:  And it was part of your brother's gift
17     to you that he would incur the costs of maintaining and
18     operating the yacht?
19              THE WITNESS:  Yes.
20              THE COURT:  Do you know how much it costs to
21     maintain and operate the yacht for a year?
22              THE WITNESS:  Your Honor, between $2 million to
23     $3 million US dollars.
24              THE COURT:  All right.  We are going to give the
25     court reporter a ten-minute break.  She has been trying to
```

Rachel C. Simone, CSR, RMR, CRR

FILED: NEW YORK COUNTY CLERK 02/07/2022 02:11 PM  INDEX NO. 652077/2017
NYSCEF DOC. NO. 1178  20-12411-jlg  Doc 177-18  Filed 03/15/22  Entered 03/15/22 18:12:10  Exhibit 17 -  RECEIVED NYSCEF: 02/07/2022
Excerpts from the transcript of the February 2  2022 Evidentiary He  Pg 8 of 16

Guo - by Defendant - Cross / Harbach

57

```
 1      follow the testimony all morning.  We will resume at 12:15
 2      and go to 1:00 and break for lunch.
 3                THE WITNESS:  Okay.  Thank you.
 4                     (Short recess taken)
 5                THE COURT:  All right.  Let's proceed.
 6   BY MR. HARBACH:
 7      Q    Ms. Guo, at the time you directed that the yacht go to
 8   Florida, were you aware that a temporary restraining order had
 9   been entered against your father on September 30?
10                THE INTERPRETER:  September 30, right, sir?
11                MR. HARBACH:  Yes, of 2020.
12      A    I do not know about it at that time.
13                MR. HARBACH:  Could I ask the interpreter to
14      please clarify?  She did not know about it at the time?
15                THE INTERPRETER:  She did not know about it at the
16      time, sir.
17                MR. VARTAN:  Your Honor, I will interpose an
18      objection.  I understand that the Court's order was entered
19      in October and not in September.
20                THE COURT:  (To the witness)  At any time in 2020
21      were you aware that a temporary restraining order was
22      entered against your father prohibiting him from removing
23      the vessel from the territorial United States?
24                THE WITNESS:  I learned about this matter around
25      the end of 2020.  I can't remember the exact date.  It was
```

Rachel C. Simone, CSR, RMR, CRR

FILED: NEW YORK COUNTY CLERK 02/07/2022 02:11 PM INDEX NO. 652077/2017
NYSCEF DOC. NO. 1178 RECEIVED NYSCEF: 02/07/2022
20-12411-jlg    Doc 177-18    Filed 03/15/22    Entered 03/15/22 18:12:10    Exhibit 17 -
Excerpts from the transcript of the February 2    2022 Evidentiary He    Pg 9 of 16

Guo - by Defendant - Cross / Harbach

58

1    sometime in winter.  It possibly is the beginning of 2021.
2    I came to know about it through my lawyer's telephone call.
3    BY MR. HARBACH:
4        Q   So when the yacht sailed south for Florida in early
5    October of 2020, your testimony is that you did not know about
6    any restraining order that had been entered on September 30?
7                MR. VARTAN:  Same objection, your Honor, with
8        respect to the date.  Certainly if Mr. Harbach has a
9        document he wants to show the witness, I am sure she would
10       be happy to look at it; but I understand the date to be
11       October 15 and not September 30.
12               MR. HARBACH:  To clarify for counsel and the
13       Court, there is a temporary restraining order issued on
14       September 30 of 2020.  It is Document 591 on the Court's
15       docket.  My only question about this is whether the witness
16       was aware that that temporary restraining order had been
17       entered.
18               MR. VARTAN:  Again, your Honor, my understanding
19       is that the September order, not to belabor the point, has
20       nothing at all to do with the Lady May.  Granted, I wasn't
21       part of the proceedings at that point, but my understanding
22       is the Lady May is first made mention before your Honor in
23       October, not September 30.  So, again, I'd invite
24       Mr. Harbach to show the document to the witness if he has
25       something before him.

Rachel C. Simone, CSR, RMR, CRR

FILED: NEW YORK COUNTY CLERK 02/07/2022 02:11 PM INDEX NO. 652077/2017
NYSCEF DOC. NO. 1179 RECEIVED NYSCEF: 02/07/2022
20-12411-jlg   Doc 177-18   Filed 03/15/22   Entered 03/15/22 18:12:10   Exhibit 17 -
Excerpts from the transcript of the February 2, 2022 Evidentiary He   Pg 10 of 16

Guo - by Defendant - Cross / Harbach

62

1  signature. It is dated March 16 of 2021.

2    A    Okay.

3    Q    And this is the order of the Court that specifically

4  requires that it be returned to New York?

5    A    Okay. Okay.

6    Q    So my question for you is: Have you ever seen this

7  order before?

8    A    Can you please go back to the top of the document and

9  show me again because I want to reconfirm. At this point of time

10  I am not able to confirm it.

11    Q    Okay. I will give you a little while longer, but then

12  I will move on because it is not crucial.

13        THE COURT: Can you show her the next page?

14        MR. HARBACH: Yes, your Honor.

15    A    I really truly do not recall if I have seen this

16  document before, but I do know the content of this document.

17    Q    Okay. Thank you.

18        Returning to your affidavit, you said in

19  Paragraph 20 that you were aware of the Court's order requiring

20  the Lady May to return to New York in May of '21 and that you

21  learned of that through your counsel?

22    A    Yes.

23    Q    So what I want to make sure I understand is when you

24  learned of the Court's order. I understood you to say to

25  Justice Ostrager a few minutes ago that you thought you learned

Rachel C. Simone, CSR, RMR, CRR

FILED: NEW YORK COUNTY CLERK 02/07/2022 02:11 PM    INDEX NO. 652077/2017
NYSCEF DOC. NO. 1175                                 RECEIVED NYSCEF: 02/07/2022
20-12411-jlg   Doc 177-18   Filed 03/15/22   Entered 03/15/22 18:12:10   Exhibit 17 -
          Excerpts from the transcript of the February 2, 2022 Evidentiary He   Pg 11 of 16

Guo - by Defendant - Cross / Harbach

63

1  of a restraining order at the end of 2020 or the beginning of
2  2021, is that correct?
3       A    What I remember now is that at the end of 2020 my
4  lawyer called me and informed me that there would be a possible
5  issue as such with Lady May, but I don't remember exactly when I
6  learned about this order, this Court order.  It is probably
7  around 2021, beginning of 2021 between the month of March and
8  April.
9       Q    Okay.  Let me --
10           MR. HARBACH:  I really appreciate your Honor being
11      patient.  I am moving as quickly as I can.
12      Q    Let me add one more piece to the puzzle.  And, again, I
13  am not trying to confuse you.
14           There was a restraining order issued by the Court
15  on October 15 of 2020.  I am going to represent that to you,
16  okay?
17      A    Okay.
18      Q    Do you think that is the order that you learned about
19  toward the end of 2020 from your counsel?
20           MR. VARTAN:  Your Honor, I would object.  I think
21      the question has been asked and answered now a number of
22      times.  Also, we are beginning to conflate dates.  We are
23      looking at Paragraph 20 that talks about a different court
24      order from March.  Mr. Harbach is talking now about an order
25      from October.  I think he is confusing the witness here.

Rachel C. Simone, CSR, RMR, CRR

FILED: NEW YORK COUNTY CLERK 02/07/2022 02:11 PM  INDEX NO. 652077/2017
NYSCEF DOC. NO. 1179  20-12411-jlg  Doc 177-18  Filed 03/15/22  Entered 03/15/22 18:12:10  Exhibit 17 -  RECEIVED NYSCEF: 02/07/2022
Excerpts from the transcript of the February 2, 2022 Evidentiary He   Pg 12 of 16

Guo - by Defendant - Cross / Harbach

64

1           THE WITNESS:  Thank you.

2           THE COURT:  Just rephrase your question.  This

3    isn't that hard.

4    Q    Ms. Guo, when was the first time you learned about any

5    restraining order from the Court through your counsel?

6           MR. VARTAN:  Same objection.  Asked and answered

7    multiple times.

8           THE COURT:  Overruled.

9           THE WITNESS:  Can I answer the question?

10          THE COURT:  Yes.

11   A    I really do not remember the specific date, but it was

12   somewhere around the beginning of 2021.  It was somewhere around

13   the beginning of 2021.  I really do not remember the specific

14   date.

15   Q    After you learned about the order from your counsel,

16   did you discuss it with your father?

17          MR. VARTAN:  I'd just ask Mr. Harbach to clarify,

18   your Honor, which order he is talking about.  He's mentioned

19   a September order, an October order, a March order?

20          THE COURT:  Let's make this easy.

21          Ms. Guo, did you discuss any Court orders relating

22   to the Lady May with your father?

23          THE WITNESS:  I did not.  I have only discussed it

24   with my lawyers.

25   Q    The lawyer representing you today, Mr. Vartan, is that

Rachel C. Simone, CSR, RMR, CRR

FILED: NEW YORK COUNTY CLERK 02/07/2022 02:11 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 1179
20-12411-jlg   Doc 177-18   Filed 03/15/22   Entered 03/15/22 18:12:10   Exhibit 17 -
Excerpts from the transcript of the February 2, 2022 Evidentiary He   Pg 13 of 16
RECEIVED NYSCEF: 02/07/2022

Guo - by Defendant - Cross / Harbach

65

1   the same lawyer who alerted you about the existence of a court
2   order relating to the Lady May?
3       A   Yes.
4       Q   Who is paying for his services?
5       A   Golden Spring.
6           MR. HARBACH:  Your Honor, did you say you wanted
7   to break at 1:00 for lunch?
8           THE COURT:  Yes.  And I wanted to speak with you
9   and Mr. Siegal in the same manner that we did at the
10  beginning of this hearing.
11          MR. HARBACH:  May I suggest that we break now and
12  do that?  The last bit of questioning I have that has to do
13  with this witness involves publication of exhibits and may
14  be a little cumbersome.  I would suggest doing that right
15  after lunch.
16          THE COURT:  All right.  We can do that.
17          For the record, Ms. Guo, I have excluded the press
18  from your testimony because I understand that you were
19  detained and tortured by the CCP and your whereabouts are
20  potentially a matter of interest to the CCP while you seek
21  asylum in the United States.  If there is no disclosure in
22  your examination about your whereabouts, the transcript of
23  your examination will be made public.  And I should add that
24  the plaintiff has consented to this arrangement, which is
25  highly unusual.

Rachel C. Simone, CSR, RMR, CRR

FILED: NEW YORK COUNTY CLERK 02/07/2022 02:11 PM    INDEX NO. 652077/2017
NYSCEF DOC. NO. 1179    20-12411-jlg   Doc 177-18   Filed 03/15/22   Entered 03/15/22 18:12:10   Exhibit 17 -   RECEIVED NYSCEF: 02/07/2022
Excerpts from the transcript of the February 2, 2022 Evidentiary He    Pg 14 of 16

Guo - by Defendant - Cross / Harbach

66

```
 1              THE WITNESS:  Thank you, your Honor, for my
 2    protection over my safety and not allow the media's
 3    involvement in this proceeding.  Thank you, your Honor.
 4              THE COURT:  All right.  We will break for lunch
 5    now.  I would like counsel to call me at the same number
 6    that I gave you before.
 7              MR. VARTAN:  Your Honor, could I first be heard on
 8    one issue?
 9              THE COURT:  Yes.
10              MR. VARTAN:  With respect to the remainder of
11    Mr. Harbach's cross-examination, can he give me a rough
12    approximation of how much more time he has so that I can
13    plan for other witnesses?
14              MR. HARBACH:  I am happy to do that.  I have a
15    couple small factual questions to ask, and then I have three
16    of the videotapes that we proffered to the Court that I want
17    to show some tiny portions of to the witness.  My guess is
18    30, 40 minutes.
19              MR. VARTAN:  Thank you, Mr. Harbach.
20              Thank you, your Honor.
21              THE COURT:  Okay.  We will resume at 2:00.
22              MR. SIEGAL:  Your Honor, may we call you towards
23    the end of the lunch break or would you like to hear from us
24    now?
25              THE COURT:  I would like to hear from you now.
```

Rachel C. Simone, CSR, RMR, CRR

FILED: NEW YORK COUNTY CLERK 02/07/2022 02:11 PM INDEX NO. 652077/2017
NYSCEF DOC. NO. 1179 RECEIVED NYSCEF: 02/07/2022
20-12411-jlg  Doc 177-18  Filed 03/15/22  Entered 03/15/22 18:12:10  Exhibit 17 -
Excerpts from the transcript of the February 2, 2022 Evidentiary He    Pg 15 of 16

Guo - Defendant - Cross / Guo

67

```
 1              MR. SIEGAL:  All right.  I will reach out to
 2      O'Melveny and we will call you.
 3              THE COURT:  Great.
 4              (L U N C H E O N    R E C E S S)
 5              MR. HARBACH:  Your Honor, can I continue my
 6      questioning?
 7              THE COURT:  Yes.
 8      BY MR. HARBACH:
 9      Q    Ms. Guo, before lunch we talked about all sorts of
10      things, but you mentioned something in one of your answers that I
11      just would like to clarify.
12      A    Okay.
13      Q    I believe you said in one of your answers that if you
14      needed to use the yacht with some friends, for example, you would
15      just contact the captain directly?
16      A    Sometimes I contacted the captain directly.  Sometimes
17      I would contact the captain through Golden Spring.
18      Q    Do you recall the names of any of the captains you
19      contacted directly?
20      A    I communicated mostly with captain that I used earlier,
21      Mr. Craig.  Then I also have contacted Momchil, the current
22      captain of the yacht.
23      Q    You have contacted each of them directly, is that
24      right?
25      A    Yes.
```

Rachel C. Simone, CSR, RMR, CRR

FILED: NEW YORK COUNTY CLERK 02/07/2022 02:11 PM    INDEX NO. 652077/2017
NYSCEF DOC. NO. 1179    20-12411-jlg    Doc 177-18    Filed 03/15/22    Entered 03/15/22 18:12:10    Exhibit 17 -    RECEIVED NYSCEF: 02/07/2022
Excerpts from the transcript of the February 2    2022 Evidentiary He    Pg 16 of 16

Proceedings

98

```
 1     me tomorrow by conference call at noon.  If you don't have
 2     anything to tell me by conference call at noon, I will just
 3     proceed to have the transcript fully transcribed and
 4     uploaded on the Court's electronic filing system.  I will
 5     rule, certainly, no later than Wednesday of next week.
 6            MR. SIEGAL:  Judge, we will call at noon tomorrow,
 7     a joint call of counsel.
 8            THE COURT:  Okay.  Thank you.  Have a nice day.
 9                    *         *         *
10            The foregoing is hereby certified to be a true and
11     accurate transcript of the proceedings.
12
13
14                          _Rachel C. Simone-Ivanac_
15                          Rachel C. Simone-Ivanac
16                          Senior Court Reporter
17     SO ORDERED February 7, 2022
18
19         _Barry Ostrager_
           BARRY R. OSTRAGER, J.S.C.
20
21
22
23
24
25
```

Rachel C. Simone, CSR, RMR, CRR