UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x

In re:                                          Chapter 11

GENEVER HOLDINGS LLC,                           Case No. 20–12411 (JLG)

                        Debtor.

------------------------------------------------------- x

## BRAVO LUCK LIMITED'S LIQUIDATING PLAN OF
## REORGANIZATION FOR DEBTOR GENEVER HOLDINGS LLC

Bravo Luck Limited ("Bravo Luck")[1] hereby proposes the following Chapter 11 liquidating

plan of reorganization (the "Plan") for Genever Holdings LLC (the "Debtor")  pursuant to the

provisions of Title 11 of the United States Code (the "Bankruptcy Code").

### FRAMEWORK OF THE PLAN

The Debtor is a New York limited liability company and the legal owner of a luxury

apartment and auxiliary units on the 18th floor of The Sherry-Netherland Inc. ("The Sherry"),

located at 781 Fifth Avenue, New York, NY 10022 (the "Residence").[2] The Debtor's sole member

is Genever Holdings Corporation (a BVI company) ("Genever BVI"), a special purpose company

organized in the British Virgin Islands.

The Debtor sought Chapter 11 relief on October 12, 2020 in the face of a dispute in multiple

courts relating to claims concerning the beneficial ownership of the Residence as between Bravo

Luck and Pacific Alliance Asian Opportunity Fund ("PAX"). This dispute remains the subject of

pending litigation in the Supreme Court, New York County (the "New York Court") at Index No.

---

[1] By filing this Plan, Bravo Luck does not submit to general bankruptcy or United States jurisdiction. This Plan is only to be construed as a limited appearance of Bravo Luck in order for Bravo Luck to protect its rights as a major party-in-interest in this bankruptcy case. Bravo Luck does not waive, and specifically preserves, all of its procedural and substantivedefenses to any claims that may be asserted against Bravo Luck by any party in this case.
[2] The Residence consists of 3,050 cooperative shares allocable to apartment 1801, MR 22119 and MR 719 under proprietary leases between The Sherry, as lessor, and the Debtor, as lessee.

652077/2017 (the "New York Action") and in the Eastern Caribbean Supreme Court, Virgin Islands, In the High Court of Justice, Commercial Division (Index. No. BVIHCM2020/0137) (the "BVI Court" and the "BVI Action"). This litigation has been generally referred to as the "Ownership Dispute" throughout the Chapter 11 case, and is defined as such for the purposes of this Plan.

Bravo Luck asserts that it is the beneficial owner of the Residence, with the Residence or Stock or Membership Interest of Genever BVI being held in trust by Kwok Ho Wan ("Miles Kwok") for Bravo Luck's benefit (separate and apart from Miles Kwok's creditors) pursuant to a certain Declaration of Trust and Agreement dated February 17, 2015 (the "Trust Agreement"). Alternatively, Bravo Luck contends that, if a court with appropriate jurisdiction determines that Bravo Luck does not retain beneficial ownership of the Residence or Stock or Membership Interest of Genever BVI, then Bravo Luck retains a general unsecured claim[3] against the Debtor in an amount of not less than $76,296,746.85, arising from its funding of the purchase of the Residence in 2015 and other funds paid by Bravo Luck to maintain the Residence thereafter.

For its part, PAX currently holds a judgment against Miles Kwok in the sum of $116,402,019.57 related to the underlying claims in the New York (the "Kwok Judgment").[4] In connection with the guaranty of an unrelated loan transaction. Miles Kwok has filed an appeal of the Kwok Judgement, which is currently pending in the New York Supreme Court, Appellate Division, First Judicial Department at Appellate Case No. 2021-00740. PAX has asserted a monetary unsecured claim against the Debtor for the amount of the Kwok Judgment under the

---

[3] Bravo Luck's proof of Claim also reserves the right to amend such Claim or file a motion to assert that the amount of The Sherry Security Deposit funded by Bravo Luck which has been subsequently drawn-down and applied by The Sherry for post-petition maintenance obligations pursuant to Order dated May 31, 2021 (ECF No. 107), constitutes an administrative expense claim.

[4] Additionally, a $134 million civil contempt fine was entered against Miles Kwok by the New York Court, payable to PAX, which is currently on appeal in the New York Supreme Court, Appellate Division, First Judicial Department at Appellate Case No. 2022-00609.

theory that the Debtor is the alter ego of Miles Kwok. Therefore, PAX asserts that the Debtor is liable for the Kwok Judgment, and does not recognize the interest or claims of Bravo Luck, Golden Spring New York Ltd. ("Golden Spring" or "GSNY") or Qiang Guo ("Guo").

In the face of the competing claims and multiple lawsuits, the Debtor sought Chapter 11 relief in order to be in a position to pursue a sale of the Residence (the "Sale") and monetize the asset under a stable and transparent framework consistent with the Bankruptcy Code while the pending litigations proceed to conclusion in New York and the British Virgin Islands. During the Chapter 11 case, and after arduous negotiations, the Debtor, Bravo Luck and PAX reached a comprehensive global settlement pursuant to that certain Second Amended and Restated Settlement Agreement dated September 24, 2021 (ECF No. 131), and approved by order of the Court dated October 8, 2021 (ECF No. 141), a copy of which is annexed hereto as Exhibit "A" (the "Global Settlement"). At its core, the Global Settlement establishes a consensual bankruptcy process for the sale of the Residence under the stewardship of Melanie L. Cyganowski as the Debtor's employee and duly appointed Sales Officer. An order approving the employment of Ms. Cyganowski as Sales Officer was entered on October 8, 2021 (ECF No. 142). The Sales Officer has the authority to direct the sale and marketing process of the Residence pursuant to the Global Settlement. The Sales Officer subsequently selected Serena Boardman of Sotheby's International Realty to serve as the Debtor's real estate agent and broker (the "Broker") for the Sale. The Debtor moved for approval of this retention (ECF No. 160), which was approved by this Bankruptcy Court by entry of an order on January 13, 2022 (ECF No. 168). The Broker was retained for an initial term of 180 days from entry of its retention order. The Debtor, PAX, and Bravo Luck, desiring to continue the Sale process for the Residence, entered into a stipulation, extending the Broker's retention from June 12, 2022 through September 12, 2022, which stipulation was approved by the

Court on August 16, 2022 (ECF No. 202). At the time of filing this Plan, a proposed stipulation (ECF No. 205) extending the Sale process and the Broker's retention through October 31, 2022 is pending approval by the Bankruptcy Court.

For purposes of the Plan, the Global Settlement is hereby expressly incorporated by reference and shall remain fully enforceable and binding on the signatories thereto, to wit, the Debtor, Bravo Luck and PAX on a post-Confirmation basis through completion of the Sale. At bottom, the Plan provides the mechanism to implement the Global Settlement, sell the Residence (subject to the approval of The Sherry under its internal rules and regulations and in accordance with applicable non-bankruptcy law[5]), and to distribute the proceeds realized therefrom to the holders of Allowed Claims and Interests.

It is contemplated that the Ownership Dispute will be determined outside of the Bankruptcy Court, unless Bravo Luck's alternate contention that it retains a monetary Claim against the Debtor is not determined in the BVI Action on the merits. In such event, the validity of Bravo Luck's monetary Claim may be adjudicated in the Bankruptcy Court.

Since approval of the Global Settlement, PAX sought turnover of the Stock or Membership Interest of Genever BVI based upon judgment enforcement against Miles Kwok. The turnover proceeding currently remains before the BVI Court.[6] Notwithstanding the pending turnover proceeding, the Global Settlement and the terms of this Plan shall continue in full force and effect without change or modification through the completion of the Sale and consummation of this Plan.

On February 15, 2022, Miles Kwok filed for Chapter 11 bankruptcy in his personal

---

[5] The Sherry reserves all rights with respect to the characterization and treatment of the proprietary leases related to the Residence and the contemplation of a post Confirmation sale of the Residence.
[6] Bravo Luck is currently studying the impact of the Kwok Bankruptcy in light of this Bankruptcy Court's grant of relief from the automatic stay and BVI law which reportedly does not enforce such an automatic stay in any event in a BVI proceeding.

#129027209 v6

capacity in the United States Bankruptcy Court for the District of Connecticut. (the "Connecticut Bankruptcy Court"). *See* Case 22-50073 (JAM) (the "Kwok Bankruptcy"). On June 15, 2022, the Connecticut Bankruptcy Court issued a Memorandum of Decision, among other things*,* granting the *Pacific Alliance Asia Opportunity Fund L.P.'s Motion to Dismiss Chapter 11 Case or, in the Alternative, Partial Joinder to United States Trustee's Motion for an Order Directing the Appointment of a Chapter 11 Trustee* (ECF No. 183) to the extent that it sought the appointment a Chapter 11 trustee. (ECF No. 465).

On July 8, 2022, Luc A. Despins (the "Kwok Trustee") was appointed as the Chapter 11 trustee of Miles Kwok's bankruptcy estate. *See* Kwok Bankruptcy, ECF No. 523 (the "Chapter 11 Trustee Order"). After appointment of Mr. Despins as the Kwok Trustee, Miles Kwok filed *The Debtor's Motion for Relief from Order Appointing Luc A. Despins as Chapter 11 Trustee* (Kwok Bankruptcy, ECF No. 561), whereby Miles Kwok sought relief from the Chapter 11 Trustee Order and the vacation of the Kwok Trustee's appointment due to evidence uncovered after his appointment allegedly demonstrating that the Kwok Trustee is not disinterested. *See* Kwok Bankruptcy, ECF No. 561. The Connecticut Bankruptcy Court denied Miles Kwok's motion to vacate the appointment of the Kwok Trustee (Kwok Bankruptcy, ECF No. 667), and that denial order is currently on appeal by Miles Kwok. *See* Kwok Bankruptcy, ECF Nos. 711, 715; *see also* Case No. 22-cv-01019-KAD, U.S. District Court for the District of Connecticut.

Since his appointment, the Kwok Trustee sought an order confirming, among other things, that the Kwok Trustee holds all of Miles Kwok's economic and corporate governance rights in debtor-controlled entities, which the Connecticut Bankruptcy Court entered on August 10, 2022. *See* Kwok Bankruptcy, ECF No. 717 (the "Governance Order"). The Governance Order provides that, among other things, (i) the Kwok Trustee holds all of Miles Kwok's economic and

governance rights with respect to "Debtor-Controlled Entities," including Genever BVI; (ii) Miles Kwok is to transfer shares of Genever BVI to the Kwok Trustee; (iii) the Connecticut Bankruptcy Court requested the assistance of foreign courts with respect to the Kwok Trustee's exercise of corporate control over the "Debtor-Controlled Entities," including specifically Genever BVI; (iv) that nothing in the Governance Order will authorize any particular action with respect to the Debtor, Genever Holdings LLC, in this Chapter 11 bankruptcy case before the Bankruptcy Court and that the Kwok Trustee will appear before, and seek guidance from, the Bankruptcy Court to the extent the Kwok Trustee's exercise of corporate governance rights impact Genever Holdings LLC's bankruptcy case; and (v) the Governance Order does not constitute a ruling or determination regarding the validity or enforceability of the Trust Agreement. *See generally* Governance Order. On August 10, 2022, Miles Kwok appealed the Governance Order, and such appeal remains pending. *See* Kwok Bankruptcy, ECF No. 723; *see also* Case No. 22-cv-01028-KAD, U.S. District Court for the District of Connecticut.

After the filing of the Kwok Bankruptcy, appointment of the Kwok Trustee, and entry of the Governance Order in the Kwok Bankruptcy, which authorizes the Kwok Trustee to exercise corporate authority over the Debtor's Chapter 11 case, the Debtor decided to no longer pursue confirmation of the *Debtor's Liquidating Plan of Reorganization* (ECF No. 164) (the "<u>Debtor's Prior Plan</u>"). *See* ECF No. 204. Therefore, Bravo Luck has filed this Plan in essentially the same form as an amended version of the Debtor's Prior Plan that was circulated by the Debtor amongst parties in interest earlier this month.

Additionally, PAX had objected to the Debtor's Prior Plan based upon various grounds centering upon different treatments of the various classes of Claims. This Plan, however, addresses these concerns and provides the same overall treatment for all Allowed Claims, namely a *pro rata*

*pari passu* share of the Net Sale Proceeds generated from the sale of the Residence. The Claims and Interests of Bravo Luck, Golden Spring, Guo, and PAX continue to be separately classified.

## ARTICLE I

## DEFINITIONS

All capitalized terms used herein shall have the meanings set forth below.

1.1    "**Administrative Expense Claim Bar Date**" means the date set forth in the Confirmation Order, by which parties must file Administrative Expense Claims.

1.2    "**Administrative Expense Claim**" means a Claim for the costs and expenses of administering the Chapter 11 case allowed under §§ 503(b) and 507(b) of the Bankruptcy Code, incurred after the Petition Date and through the Effective Date, including: (a) the actual and necessary costs and expenses of maintaining and preserving the Residence; and (b) the awarded compensation and reimbursement of expenses for the Debtor's bankruptcy counsel and the awarded or agreed compensation and expenses of the Sales Officer.

1.3    "**Allowed**" means, with reference to any Claim, proof of which was timely and properly filed or, if no proof of Claim was filed, that has been or hereafter is listed by the Debtor on its Schedules of Assets and Liabilities as liquidated in amount and not disputed or contingent and, in each case, as to which: (a) no objection to allowance has been interposed within the applicable period fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the local rules of the Bankruptcy Court, or the Bankruptcy Court; or (b) an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order.

1.4    "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York.

1.5    "**Bar Date**" means March 10, 2021, as the last date set by the Bankruptcy Court to file a Claim against the Debtor.

1.6    "**Bravo Luck Interest**" means the beneficial ownership interest in the Debtor and, ultimately, in the Residence asserted by Bravo Luck.

1.7    "**Broker**" means Serena Boardman of Sotheby's International Realty pursuant to Order of the Bankruptcy Court approving the Broker's retention (ECF No. 168).

1.8    "**Claim**" means a claim against the Debtor as defined in Bankruptcy Code § 101(5).

1.9    "**Claim Objection Deadline**" shall mean sixty (60) business days after the Ownership Dispute is finally adjudicated in both the New York Court and the BVI Court pursuant to a Final Order, unless otherwise extended by the Bankruptcy Court. To the extent there is a surviving Claim against the Debtor following the complete adjudication of the Ownership Dispute, then in that event the Bankruptcy Court or any other court of competent jurisdiction shall determine the allowance or disallowance of such Claim.

1.10    "**Closing**" means the day when the Debtor or Reorganized Debtor transfers all right, title and interest in the Residence to a third-party buyer and consummates a sale transaction pursuant to an order of the Bankruptcy Court.

1.11    "**Confirmation**" means approval of the Plan by the Bankruptcy Court.

1.12    "**Confirmation Hearing**" means the hearing or hearings before the Bankruptcy Court to consider approval of the Plan.

1.13    "**Confirmation Order**" means the order of the Bankruptcy Court approving the Plan pursuant to Bankruptcy Code § 1129.

1.14    "**Creditor**" means the holder of a Claim against the Debtor.

1.15    "**Effective Date**" means the first business day on which the Confirmation Order becomes a Final Order.

#129027209 v6

1.16   "**Escrow Agent**" means a national bank as agreed by the Debtor or Reorganized Debtor, as applicable, PAX and Bravo Luck to hold the Net Sale Proceeds in Escrow or otherwise established pursuant to order of the Bankruptcy Court.

1.17   "**Final Order**" means an order or judgment of the New York Court, the BVI Court, or the Bankruptcy Court (as applicable) that has not been reversed, stayed, modified, or amended and as to which the time to appeal has expired, or if any appeal has been sought, the order or judgment of the New York Court, the BVI Court, or the Bankruptcy Court (as applicable) has been affirmed by the highest court to which the order or judgment was appealed from and the time to take any further appeal has expired.

1.18   "**Interests**" means, collectively, the Bravo Luck Interest and Stock or Membership Interest.

1.19   "**Net Sale Proceeds**" means the Sale Proceeds to be deposited into the Escrow after payment of, or funding of the Reserve, as applicable, for Allowed Administrative Expense Claims (including professional fees and expenses, the Sales Officer's compensation, brokerage commissions, and customary closing costs and expenses), U.S. Trustee Fees, Allowed Priority Tax Claims, if any, the Allowed Claim of The Sherry (as defined herein) and the Class 5 Claims of Unsecured Creditors, if any.

1.20   "**Ownership Dispute**" means the pending litigation in the New York Court and the BVI Court relating to the respective claims, defenses and counterclaims of the Debtor, Bravo Luck and PAX concerning or relating to, among other things: (i) the Debtor's alleged alter ego liability for the Kwok Judgment; (ii) a determination of Bravo Luck's beneficial ownership of the Residence or Stock or Membership Interest of Genever BVI; (iii) the claims of Bravo Luck relating

to the funding of the purchase of the Residence and The Sherry Security Deposit (defined below); and (iv) disposition of the Stock or Membership Interest of Genever BVI.

1.21 "**Petition Date**" means October 12, 2020, the date on which the voluntary petition commencing this Chapter 11 case was filed.

1.22 "**Priority Tax Claim**" means any Claim of a federal, or local taxing authority for real estate taxes or related charges.

1.23 "**Reorganized Debtor**" means the Debtor after Confirmation of the Plan.

1.24 "**Reserve**" means the reserve account(s) established by the Debtor prior to, or at, Closing, in which sufficient funds from the Sale Proceeds will be deposited at Closing to fund the payment of Administrative Expense Claims, provided that, in the event an Administrative Expense Claim has not been filed as of the date of the Closing, the amount to be funded in the Reserve may be estimated by the Debtor in consultation with PAX, Bravo Luck, and the Sales Officer.

1.25 "**Sale Escrow**" means the escrow account established by the Debtor with the Escrow Agent for the deposit of the Net Sale Proceeds after payment of, or funding of the Reserve, as applicable, for Allowed Administrative Expense Claims (including brokerage commissions, the Sales Officer's compensation, professional fees and expenses, and customary closing costs and expenses), U.S. Trustee Fees, Allowed Priority Tax Claims, if any, the Allowed Claim of The Sherry, and the Allowed Class 5 Claims of Unsecured Creditors, if any.

1.26 "**Sales Officer**" means Melanie L. Cyganowski pursuant to the order of the Bankruptcy Court approving her employment with the Debtor (ECF No. 142).

1.27 "**Sale Proceeds**" means the total proceeds generated from the Sale of the Residence as paid by a third-party buyer at Closing.

1.28   "**Stock or Membership Interest**" means the stock or membership interest of Genever BVI in the Debtor.

1.29   "**Unsecured Claim**" means Allowed non-insider Claims of Unsecured Creditors arising prior to the Petition Date not entitled to priority under the Bankruptcy Code or otherwise secured by property of the Debtor, excluding the Claims of Bravo Luck, Golden Spring, Guo, PAX and The Sherry (to the extent the Allowed Claim of the Sherry is not secured).

1.30   "**Unsecured Creditor**" means the holder of an Allowed Unsecured Claim against the Debtor, except for Bravo Luck, Golden Spring, Guo, PAX and The Sherry.

1.31   "**U.S. Trustee Fees**" means fees payable pursuant to 28 U.S.C. § 1930, together with any statutory interest.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

The Claims and Interests as defined by the Plan hereunder are classified as follows:

**Class 1** – Allowed Claim of The Sherry.

**Class 2** – Allowed Bravo Luck Claim and Bravo Luck Interest, if any.

**Class 3** – Allowed Claims of Golden Spring and Guo, if any.

**Class 4** – Allowed Claim of PAX, if any.

**Class 5** – Allowed Claims of Unsecured Creditors, if any.

**Class 6** – The Stock or Membership Interest of Genever BVI.

## ARTICLE III

## MEANS FOR IMPLEMENTATION OF THE PLAN

3.1   **Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.** Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one impaired class of Claims. Bravo Luck shall seek

Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting class of Claims or Interests. Bravo Luck reserves the right to modify the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a class of Claims or Interests to render such class of Claims or Interests unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

3.2     **Ratification and Continuation of the Global Settlement**. The Plan is intended to continue and implement the Global Settlement and carry forward all its terms and conditions (without change). Thus, approval and Confirmation of the Plan shall constitute ratification and reconfirmation of the Global Settlement on a post-Confirmation basis by the signatories thereto, providing for the Sale and distribution of the Sale Proceeds.

3.3     **Ratification and Continuation of the Sales Officer and Broker**. The Debtor and Reorganized Debtor shall continue the employment of Melanie L. Cyganowski as the Sales Officer and Serena Boardman of Sotheby's International Realty as the Broker on a post-Confirmation basis on the same terms and conditions specified under their respective retention orders.

3.4     **Post-Confirmation Marketing of the Residence**. The Sales Officer and Broker shall continue to pursue the marketing and sale of the Residence on a post-Confirmation basis in accordance with the Global Settlement and their respective retention orders.

3.5     **Sale Free and Clear of All Claims, Liens, Taxes and Interests**. The sale of the Residence shall be made on a post-Confirmation basis, free and clear of all liens, claims, taxes and interests pursuant to 11 U.S.C. §§ 363(b) and (f) and 1123(a)(5), with the same liens, claims, taxes and interests — to the same extent and in the same priority — attaching to the Net Sale Proceeds. The Net Sale Proceeds shall be held and maintained by the Escrow Agent in accordance with the

Global Settlement, the terms of this Plan, or further order of the Bankruptcy Court. The Sale of the Residence shall be subject to separate motion filed by the Debtor with the Bankruptcy Court on notice to all of the Debtor's creditors and other parties-in-interest, and entry of an appropriate Order of the Bankruptcy Court.

3.6    **Approval Rights of The Sherry**. The sale of the Residence shall remain subject to the consent and approval rights of The Sherry under its internal rules and regulations relating to the sale of cooperative apartments in the hotel.

3.7    **Transfer Taxes**. The sale of the Residence constitutes the making or delivery of an instrument of transfer of property or otherwise, pursuant to or in connection with Confirmation of the Plan, and, therefore, the sale of the Residence shall be exempt from the payment of any City or State stamp, real estate transfer, or other similar tax or governmental assessment pursuant to 11 U.S.C. §1146(a).

3.8    **Release of Sales Officer**. Upon the Closing, the Debtor, PAX and Bravo Luck, for themselves and on behalf of their agents, representatives, employees, attorneys, successors and assigns, release, acquit, and forever discharge the Sales Officer and her agents, representatives and attorneys from any and all claims, demands, debts, liabilities, causes of action, obligations, and liabilities of any kind, which the Debtor, PAX and Bravo Luck, collectively or individually, could have had, claim to have had or could ever have, whether at law or in equity, whether known or unknown, whether anticipated or unanticipated, arising from the beginning of time through and including the Closing Date.

## ARTICLE IV

## UNCLASSIFIED CLAIMS

Pursuant to Section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Expense Claims, Priority Tax Claims or U.S. Trustee Fees, all of which shall be

paid in full as required by 11 U.S.C. §1129(a)(9).

4.1     **Administrative Expense Claims**. Administrative Expense Claims primarily consist of the costs and expenses of maintaining, preserving and selling the Residence during the Chapter 11 case, including Allowed brokerage commissions, the Sales Officer's Allowed compensation, and Allowed professional fees and expenses. Following Bankruptcy Court approval, each holder of an Administrative Expense Claim[7] shall be paid at the Closing or as soon thereafter as is practicable from the Sale Proceeds or from the Reserve.

4.2     **Professional Fees, Sales Officer Compensation and Broker Commissions**. The requests for allowance of professional fees and expenses by the Debtor's counsel, the compensation to be paid to the Sales Officer, and the commissions to be paid to the Broker for all services rendered prior to the Effective Date may be filed in conjunction with a motion to approve the sale of the Residence, but must be filed no later than thirty (30) days after the Closing. After notice and a hearing, as applicable, the allowed professional fees and expenses, compensation to the Sales Officer and commissions to the Broker, shall be paid from the Sale Proceeds at Closing (or from the Reserve created for these items at Closing) pursuant to appropriate orders awarding such fees, expenses, compensation or commissions.

4.3     **Priority Tax Claims**. Upon information and belief from the Debtor, Bravo Luck does not believe that there are any outstanding Priority Tax Claims relating to the Residence. However, any such Allowed Claim that may arise shall be treated as a Priority Tax Claim for purposes of the Plan and shall be paid in full at the Closing or shortly thereafter from the Sale Proceeds.

---

[7] Additionally, Golden Spring New York Ltd. and Qiang Guo retain the right to amend their claim or file a motion to assert reimbursement as an Administrative Expense Claim for the amounts paid out of The Sherry Security Deposit to pay post-petition maintenance and common charges.

4.4 **U.S. Trustee Fees**. The Debtor shall pay the accrued and billed U.S. Trustee Fees, together with any interest thereon, until the Chapter 11 case is closed by entry of a final decree. The U.S. Trustee Fees due in connection with the Sale itself shall be paid at Closing from the Sale Proceeds.

4.5 **Administrative Expense Claim Bar Date**. A date establishing an Administrative Expense Claim Bar Date shall be included as part of the Confirmation Order, which shall be served upon all creditors and other parties in interest. All requests for payment of Administrative Expense Claims that accrued after the Petition Date and through the Effective Date must be filed with the Bankruptcy Court on or before the Administrative Expense Claim Bar Date, except Professional Fees. Any holder of an alleged Administrative Expense Claim that fails to file a timely request for payment of the Administrative Expense Claim shall be forever barred, estopped and enjoined from asserting such Administrative Expense Claim against the Debtor and the Reorganized Debtor. To the extent that Bravo Luck, Golden Spring or Guo assert Administrative Expense Claims based upon the funding of The Sherry Security Deposit (which has been drawn down and applied for post-petition maintenance), those parties shall file a request for an Administrative Expense Claim prior to the Administrative Expense Claim Bar Date, whereupon the allowance of such Administrative Expense Claims shall be determined by the Bankruptcy Court after notice and hearing, subject to the right of PAX or other parties-in-interest to object thereto.

## ARTICLE V

## CLASSIFICATION AND TREATMENT OF CLAIMS

The Plan classifies Claims and Interests against the Debtor consistent with the applicable provisions of the Bankruptcy Code.

5.1 **Summary**. The categories listed below classify Claims and Interests against the Debtor for all purposes, including voting, Confirmation and distribution pursuant to Sections 1122 and 1123(a)(l) of the Bankruptcy Code, as summarized below:

| Class | Designation | Impaired | Preliminary Entitlement to Vote |
|---|---|---|---|
| Class 1 | Allowed Claim of The Sherry | No | No |
| Class 2 | Allowed Bravo Luck Claim and Bravo Luck Interest | Yes | Yes |
| Class 3 | Allowed Claims of Golden Spring and Guo | Yes | Yes |
| Class 4 | Allowed Claim of PAX | Yes | Yes |
| Class 5 | Unsecured Claims | Yes | Yes |
| Class 6 | Stock or Membership Interest | N/A | N/A |

The Plan provides that all Allowed Unsecured Claims, even if separately classified, shall receive the same *pari passu* treatment relating to entitlement to share *pro rata* in the Net Sale Proceeds. In all likelihood, the allowance of each Claim and Interest shall be determined in connection with the Ownership Dispute, subject to final allowance by the Bankruptcy Court. With these amendments, Bravo Luck believes there should be no basis for any creditor to object to the Plan.

**Class 1: The Allowed Claim of The Sherry**

5.2 **Classification** – Class 1 consists of the Allowed Claim of The Sherry.

**Background** – The Sherry has filed a pre-petition Claim for unpaid rent, additional rent, maintenance and assessments in the total sum of not less than $891,462.06. As of the Petition Date, The Sherry held a security deposit in sum of approximately $3 million ("The Sherry Security Deposit"), which has been used to pay the Debtor's post-petition unpaid rent, additional rent, maintenance and assessments pursuant to prior order of the Bankruptcy Court (ECF No. 107) (the

#129027209 v6

"Sherry Payment Order").

**Treatment** – The Sherry's allowed pre-petition claim shall be paid in full, in cash, from the Sale Proceeds upon the Closing, with the balance of the unused portion of The Sherry Security Deposit to be returned to the party that originally funded The Sherry Security Deposit. ("The Sherry Pre-petition Claim"). Additional allowed amounts owing to the Sherry pursuant to the proprietary leases that are not paid pursuant to the Sherry Payment Order, including attorneys' fees, interest, late fees, and other charges, shall also be paid in full, in cash, as an Allowed Administrative Expense Claim, from the Sale Proceeds upon the Closing ("The Sherry Administrative Claim", and together with The Sherry Pre-petition Claim, the "Allowed Claim of The Sherry").[8]

**Class 2: The Allowed Bravo Luck Claim**

5.3     **Classification** – Class 2 consists of the Bravo Luck Claim.

**Background** – Bravo Luck asserts that it is separate and distinct from Miles Kwok and is the beneficial owner of the Residence or the Stock or Membership Interest of Genever BVI (independent of PAX's claims against Miles Kwok) and Bravo Luck is not the alter ego of Miles Kwok. The interest of Bravo Luck is anticipated to be determined as part of the Ownership Dispute, but if it is ultimately not determined in connection therewith, the Bankruptcy Court shall retain jurisdiction to determine Bravo Luck's Allowed Claim or Interest. Alternatively, if Bravo Luck is not determined to be the beneficial owner of the Residence or the Stock or Membership Interest of Genever BVI independent of Miles Kwok. Bravo Luck has asserted a monetary Claim (Claim number 4) against the Debtor for the funds advanced by Bravo Luck to the Debtor to acquire the Residence in 2015—all as set forth more fully in Bravo Luck's Claim.

---

[8] Any dispute as to the entitlement to the balance of The Sherry Security Deposit shall be determined by the Bankruptcy Court following the Closing.

**Treatment** – In the event that Bravo Luck is determined to be the direct or indirect owner of the Residence pursuant to the Ownership Dispute and/or Allowed by the Bankruptcy Court pursuant to Final Order, then in such event Bravo Luck shall be paid all of the Net Sale Proceeds from the Escrow or otherwise after satisfaction of Allowed Administrative and Priority Claims as well as the Allowed Claim of The Sherry.  In the event Bravo Luck is not found to be the direct or indirect owner of the Residence, but is determined to hold an Allowed Unsecured Claim against the Debtor, then such Class 2 Claim shall be paid on a *pro rata* and *pari passu* basis with any other Allowed Class 3 and Class 4 Claims, if any.

**Class 3: The Claims of Golden Spring and Guo**

5.4     **Classification** – Class 3 consists of the Claims of Golden Spring and Guo.

**Background** – Golden Spring and Guo have asserted Claims for monies expended to establish The Sherry Security Deposit pre-petition and fund certain expenses, costs and attorneys' fees in connection with the acquisition of the Residence.

**Treatment** – To the extent that Golden Spring's and Guo's Claims are Allowed by the Bankruptcy Court pursuant to Final Order, then in such event Golden Spring and Guo shall be paid from the Net Sale Proceeds (if not otherwise paid to Bravo Luck as set forth above), on a *pro rata* and *pari passu* basis with any other Allowed Class 2 and Class 4 Claims, if any.

**Class 4: The Claim of PAX**

5.5     **Classification** – Class 4 consists of the Claim of PAX.

**Background** – PAX has filed a Claim for the amount of the Kwok Judgment, alleging that the Debtor is the alter ego of Miles Kwok.  This contention is anticipated to be determined as part of the Ownership Dispute, but if it is not ultimately determined in connection therewith, the Bankruptcy Court shall retain jurisdiction to determine PAX's Allowed Claim.

**Treatment** – To the extent that PAX's alter ego claims are established in the

18

Ownership Dispute and/or the PAX Claim is Allowed by the Bankruptcy Court pursuant to Final Order, then, in such event, PAX shall be paid from the Net Sale Proceeds (if not otherwise paid to Bravo Luck as set forth above), on a *pro rata* and *pari passu* basis with any other Allowed Class 2 and Class 3 Claims, if any.

**Class 5: Unsecured Claims**

5.6 **Classification** – Class 5 consists of any Unsecured Claims, excluding the Claims of Bravo Luck, Golden Spring, Guo and PAX.

**Treatment** – The Allowed Class 5 Claims of other Unsecured Creditors, if any, shall be paid in full from the Net Sale Proceeds (if not otherwise paid to Bravo Luck as set forth above), on a *pro rata* and *pari passu* basis with any other Allowed Class 2, 3 and 4 Claims, if any.

**Class 6: Stock or Membership Interest**

5.7 **Classification** – Class 6 consists of the 100% Stock or Membership Interest of Genever BVI in the Debtor.

**Treatment** – In all likelihood, the disposition of the Stock or Membership Interest of Genever BVI shall be determined in the context of the Ownership Dispute, subject to the Bankruptcy Court's retention of jurisdiction to adjudicate the Stock or Membership Interest if not resolved in the Ownership Dispute as set forth above. Regardless of the outcome of the Ownership Dispute with respect to the Stock or Membership Interest, Genever BVI shall continue as the sole member of the Debtor and Reorganized Debtor, as applicable, to carry out and implement the Global Settlement, and the terms of this Plan, which shall remain in full force and effect irrespective of the final disposition of PAX's pending turnover proceeding in the BVI Court or any other dispute regarding the equity ownership of Genever BVI or the Debtor.

#129027209 v6

**ARTICLE VI**

**DISPOSITION OF EXECUTORY CONTRACTS**

6.1     **Proprietary Leases**. The Debtor's right, title and interest in and to the proprietary leases for the Residence are viewed as interests in real property (not true leases) for the purposes of the Debtor's Chapter 11 case. Accordingly, the proprietary leases for the Residences are not subject to the provisions of 11 U.S.C. § 365 and the Debtor is not a party to any executory contract for purposes of the Chapter 11 case. Notwithstanding the foregoing, to the extent any proprietary leases or any other agreement or lease to which the Debtor is a party is deemed to be an executory contract or unexpired lease under 11 U.S.C. §365, then the Debtor in such event reserves the right to assume and assign such executory contract or unexpired lease as necessary to convey title to the Residence as part of the Sale.

**ARTICLE VII**

**CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN**

7.1     This Plan is conditioned upon the entry of the Confirmation Order which becomes a Final Order.

**ARTICLE VIII**

**DISTRIBUTIONS**

8.1     **Creation of the Sale Escrow at Closing**.  At Closing, the Sale Escrow shall be created from the Sale Proceeds after payment or Reserves for all Administrative Expense Claims and Priority Claims.  If the Ownership Dispute is still pending at the time of the Closing, the Sale Escrow shall remain in existence until final adjudication of the Ownership Dispute and final allowance of the Claims and Interests of Class 2, 3, 4 and 5 creditors by the Bankruptcy Court.  At the Closing, an escrow agreement containing customary terms and conditions in a form and content reasonably acceptable to the Debtor or Reorganized Debtor, as applicable, Bravo Luck and PAX

20

shall be prepared and executed by the Debtor or Reorganized Debtor, as applicable, and the Escrow Agent subject to Bankruptcy Court approval. Following the Closing, there shall be no distributions from the Sale Escrow except pursuant to order of the Bankruptcy Court.

8.2 **Disputed Claims.** While it is anticipated that adjudication of the Ownership Dispute will determine the respective rights of the Claims and Interests of Bravo Luck and PAX, to the extent that any residual issues, matters or entitlements remain outstanding following conclusion of the Ownership Dispute, the Bankruptcy Court shall retain jurisdiction, with the Debtor and all creditors and parties-in-interest having the right and standing to object to each other's Claims or Interests in the Bankruptcy Court. Thus, no distributions from the Sale Escrow shall be made with respect to Class 2, 3, 4 or 5 Claims or Interests until there has been a Final Order establishing the allowance or disallowance thereof.

**ARTICLE IX**

**RETENTION OF JURISDICTION**

9.1 **Retention of Jurisdiction**. The Bankruptcy Court shall retain post-Confirmation jurisdiction over the following matters:

9.1.1 To approve the sale of the Residence and otherwise implement the Global Settlement and ensure that the Plan is substantially consummated.

9.1.2 To resolve all matters arising under or relating to the Plan or Global Settlement, including, without limitation, (i) disputes relating to the Sale of the Residence; (ii) any disputes relating to, or involving The Sherry in connection with the Sale; (iii) distribution of the Net Sale Proceeds; and (iv) any action by the Debtor, Reorganized Debtor, Bravo Luck or PAX to modify, alter or change the Global Settlement or Plan following completion of the proceedings in the BVI Court.

21

9.1.3    To the extent applicable, jurisdiction to allow or disallow in whole or in part the Claims or Interests of Class 2, 3, 4 and 5 creditors not adjudicated in connection with the Ownership Dispute by the New York Court or the BVI Court or otherwise

9.1.4    To grant or deny the applications for allowance of final compensation and reimbursement of expenses for the Debtor's counsel, the Sales Officer and the Broker.

9.1.5    To decide all disputes relating to distribution or disbursement of the Sale Proceeds or the Escrow.

9.1.6    To enter an order or final decree concluding the Chapter 11 case following the sale of the Residence, resolution of all Claims and Interests, and distribution of the Escrow.

## ARTICLE X

## GENERAL PROVISIONS

10.1    **Headings**. The headings in the Plan are for reference purposes only.

10.2    **Contents of Confirmation Order**. The Confirmation Order shall be in form and substance satisfactory to Bravo Luck and may contain various provisions deemed necessary to clarify, implement or enforce the Plan or Global Settlement.

10.3    **No Material Modification of the Plan**. The Plan may not be materially altered, amended or modified by Bravo Luck without order of the Bankruptcy Court.

10.4    **Quarterly Fees.** All fees payable pursuant to 28 U.S.C. § 1930, together with any applicable interest thereon, shall be paid by the Debtor and the Reorganized Debtor until the closing of the Chapter 11 case under 11 U.S.C. §350(a).

10.5    **Post-Confirmation Reports**. The Debtor or Reorganized Debtor, as applicable, shall file quarterly status reports until the Chapter 11 case is closed.

10.6    **Continuation of the Debtor and Reorganized Debtor**. The Debtor and Reorganized Debtor, as applicable, shall continue in existence as a duly constituted New York

limited liability company, duly authorized to carry out the Global Settlement and the terms of the Plan, and to execute all documents or other instruments in connection with the Sale of the Residence and establishment of the Escrow. The Reorganized Debtor shall not be dissolved until after the entry of a final decree closing this Chapter 11 case.

10.7    **Successors and Assigns**. This Plan shall be binding and enforceable upon and inure to the benefit of the Debtor, the Reorganized Debtor, Bravo Luck, PAX and all other holders of Allowed Claims, together with their respective successors, assigns and heirs.

Dated:  New York, NY
            September 26, 2022

| | |
|---|---|
| Bravo Luck Limited | Troutman Pepper Hamilton Sanders LLP |
| Qiang Guo | Attorneys for Bravo Luck Limited |
| | Francis J. Lawall |
| | 3000 Two Logan Square |
| | Eighteenth and Arch Streets |
| | Philadelphia, PA 19103-2799 |
| | Telephone: (215) 981-4000 |
| | Facsimile: (215) 981-4750 |
| | francis.lawall@troutman.com |

By:    */s/ Qiang Guo*              By:    */s/ Francis J. Lawall*

#129027209 v6