> **This is not a solicitation of acceptance or rejection of the Plan. Acceptances or rejections may not be solicited until a disclosure statement has been approved by the Court. This Disclosure Statement is being submitted for approval but has not been approved by the Bankruptcy Court.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

In re:                                                    Chapter 11

GENEVER HOLDINGS LLC,                   Case No. 20–12411 (JLG)

                    Debtor.

------------------------------------------------------x

## DISCLOSURE STATEMENT FOR BRAVO LUCK LIMITED'S LIQUIDATING PLAN OF REORGANIZATION FOR DEBTOR GENEVER HOLDINGS LLC

Bravo Luck Limited ("Bravo Luck")[1] submits this disclosure statement pursuant to 11 U.S.C. §1125 (the "Disclosure Statement")[2] in support of Bravo Luck's accompanying Chapter 11 liquidating plan of reorganization for Debtor Genever Holdings LLC (as it may be amended or supplemented, the "Plan"), filed contemporaneously herewith. Capitalized and defined terms used in the Plan shall have the same meanings for purposes of the Disclosure Statement.

**BRAVO LUCK ANTICIPATES THAT THE PLAN WILL GAIN THE SUPPORT OF CREDITORS AND ACHIEVE THE OVERRIDING GOAL OF IMPLEMENTING THE PARTIES' GLOBAL SETTLEMENT ESTABLISHING PROCEDURES FOR THE MARKETING AND SALE OF THE DEBTOR'S RESIDENCE WHILE THE PENDING LITIGATIONS BETWEEN BRAVO LUCK, MILES KWOK AND PACIFIC ALLIANCE ASIAN OPPORTUNITY FUND PROCEED TO CONCLUSION.**

---

[1] By filing this Disclosure Statement, Bravo Luck does not submit to general bankruptcy or United States jurisdiction. This Disclosure Statement is only to be construed as a limited appearance of Bravo Luck in order for Bravo Luck to protect its rights as a major party-in-interest in this bankruptcy case. Bravo Luck does not waive, and specifically preserves, all of its procedural and substantive.

[2] Certain disclosures and representations in this Disclosure Statement relate to issues that may be outside of Bravo Luck's purview as a creditor of the Debtor and not the Debtor itself and, therefore, Bravo Luck cannot attest to the veracity of those disclosures and representations. This Disclosure Statement, however, is substantially similar to *Debtor's Disclosure Statement* (ECF No. 165) and, as such, Bravo Luck believes that the disclosures and representations in this Disclosure Statement align with representations made by (i) the Debtor in pleadings filed in this case, including but not limited to the *Debtor's Liquidating Plan of Reorganization* (ECF No. 164) and the *Debtor's Disclosure Statement* (ECF No. 165); and (ii) other parties in filings in this case or various other actions pending in different courts.

#129027205 v5

## I.     INTRODUCTION

The Debtor is a New York limited liability company and the legal owner of a luxury apartment and auxiliary units on the 18th floor of The Sherry-Netherland Inc. ("The Sherry"), located at 781 Fifth Avenue, New York, NY 10022 (the "Residence").[3] The Debtor's sole member is Genever Holdings Corporation (a BVI company) ("Genever BVI"), a special purpose company organized in the British Virgin Islands.

The Debtor sought Chapter 11 relief on October 12, 2020 in the face of a dispute in multiple courts relating to claims concerning the beneficial ownership of the Residence as between Bravo Luck and Pacific Alliance Asian Opportunity Fund ("PAX"). This dispute remains the subject of pending litigation in the Supreme Court, New York County (the "New York Court") at Index No. 652077/2017 (the "New York Action")  and in the Eastern Caribbean Supreme Court, Virgin Islands, In the High Court of Justice, Commercial Division (Index. No. BVIHCM2020/0137) (the "BVI Court" and the "BVI Action"). This litigation has been generally referred to as the "Ownership Dispute" throughout the Chapter 11 case, and is defined as such for the purposes of this Plan.

Bravo Luck asserts that it is the beneficial owner of the Residence, with the Residence or Stock or Membership Interest of Genever BVI being held in trust by Kwok Ho Wan ("Miles Kwok") for Bravo Luck's benefit (separate and apart from Miles Kwok's creditors) pursuant to a certain Declaration of Trust and Agreement dated February 17, 2015 (the "Trust Agreement"). Alternatively, Bravo Luck contends that, if a court with appropriate jurisdiction determines that Bravo Luck does not retain beneficial ownership of the Residence or Stock or Membership Interest

---

[3] The Residence consists of 3,050 cooperative shares allocable to apartment 1801, MR 22119 and MR 719 under proprietary leases between The Sherry, as lessor, and the Debtor, as lessee.

of Genever BVI, then Bravo Luck retains a general unsecured claim[4] against the Debtor in an amount of not less than $76,296,746.85, arising from its funding of the purchase of the Residence in 2015 and other funds paid by Bravo Luck to maintain the Residence thereafter

For its part, PAX currently holds a judgment against Miles Kwok in the sum of $116,402,019.57 related to the underlying claims in the New York  (the "Kwok Judgment").[5]  In connection with the guaranty of an unrelated loan transaction. Miles Kwok has filed an appeal of the Kwok Judgement, which is currently pending in the New York Supreme Court, Appellate Division, First Judicial Department at Appellate Case No. 2021-00740. PAX has asserted a monetary unsecured claim against the Debtor for the amount of the Kwok Judgment under the theory that the Debtor is the alter ego of Miles Kwok. Therefore, PAX asserts that the Debtor is liable for the Kwok Judgment, and does not recognize the interest or claims of Bravo Luck, Golden Spring New York Ltd. ("Golden Spring" or "GSNY") or Qiang Guo ("Guo")

In the face of the competing claims and multiple lawsuits, the Debtor sought Chapter 11 relief in order to be in a position to pursue a sale of the Residence (the "Sale") and monetize the asset under a stable and transparent framework consistent with the Bankruptcy Code while the pending litigations proceed to conclusion in New York and the British Virgin Islands. During the Chapter 11 case, and after arduous negotiations, the Debtor, Bravo Luck and PAX reached a comprehensive global settlement pursuant to that certain Second Amended and Restated Settlement Agreement dated September 24, 2021 (ECF No. 131), and approved by order of the Court dated October 8, 2021 (ECF No. 141), a copy of which is annexed to the Plan as Exhibit

---

[4] Bravo Luck's proof of Claim also reserves the right to amend such Claim or file a motion to assert that the amount of The Sherry Security Deposit funded by Bravo Luck which has been subsequently drawn-down and applied by The Sherry for post-petition maintenance obligations pursuant to Order dated May 31, 2021 (ECF No. 107), constitutes an administrative expense claim.

[5] Additionally, a $134 million civil contempt fine was entered against Miles Kwok by the New York Court, payable to PAX, which is currently on appeal in the New York Supreme Court, Appellate Division, First Judicial Department at Appellate Case No. 2022-00609.

#129027205 v5

"A" (the "Global Settlement"). At its core, the Global Settlement establishes a consensual bankruptcy process for the sale of the Residence under the stewardship of Melanie L. Cyganowski as the Debtor's employee and duly appointed Sales Officer. An order approving the employment of Ms. Cyganowski as Sales Officer was entered on October 8, 2021 (ECF No. 142). The Sales Officer has the authority to direct the sale and marketing process of the Residence pursuant to the Global Settlement. The Sales Officer subsequently selected Serena Boardman of Sotheby's International Realty to serve as the Debtor's real estate agent and broker (the "Broker") for the Sale.  The Debtor moved for approval of this retention (ECF No. 160), which was approved by this Bankruptcy Court by entry of an order on January 13, 2022 (ECF No. 168).  The Broker was retained for an initial term of 180 days from entry of its retention order.  The Debtor, PAX, and Bravo Luck, desiring to continue the Sale process for the Residence, entered into a stipulation, extending the Broker's retention from June 12, 2022 through September 12, 2022, which stipulation was approved by the Court on August 16, 2022 (ECF No. 202).  At the time of filing this Plan, a proposed stipulation (ECF No. 205) extending the Sale process and the Broker's retention through October 31, 2022 was pending approval by the Bankruptcy Court.

For purposes of the Plan, the Global Settlement is hereby expressly incorporated by reference and shall remain fully enforceable and binding on the signatories thereto, to wit, the Debtor, Bravo Luck and PAX on a post-Confirmation basis through completion of the Sale. At bottom, the Plan provides the mechanism to implement the Global Settlement, sell the Residence (subject to the approval of The Sherry under its internal rules and regulations and in accordance with applicable non-bankruptcy law[6]), and to distribute the proceeds realized therefrom to the holders of Allowed Claims and Interests.

---

[6] The Sherry reserves all rights with respect to the characterization and treatment of the proprietary leases related to the Residence and the contemplation of a post Confirmation sale of the Residence.

#129027205 v5

It is contemplated that the Ownership Dispute will be determined outside of the Bankruptcy Court, unless Bravo Luck's alternate contention that it retains a monetary Claim against the Debtor is not determined in the BVI Action on the merits. In such event, the validity of Bravo Luck's monetary Claim may be adjudicated in the Bankruptcy Court.

Since approval of the Global Settlement, PAX sought turnover of the Stock or Membership Interest of Genever BVI based upon judgment enforcement against Miles Kwok. The turnover proceeding currently remains before in the BVI Court.[7] Notwithstanding the pending turnover proceeding, the Global Settlement and the terms of this Plan shall continue in full force and effect without change or modification through the completion of the Sale and consummation of this Plan.

On February 15, 2022, Miles Kwok filed for Chapter 11 bankruptcy in his personal capacity in the United States Bankruptcy Court for the District of Connecticut. (the "Connecticut Bankruptcy Court"). *See* Case 22-50073 (JAM) (the "Kwok Bankruptcy"). On June 15, 2022, the Connecticut Bankruptcy Court issued a Memorandum of Decision, among other things*,* granting the *Pacific Alliance Asia Opportunity Fund L.P.'s Motion to Dismiss Chapter 11 Case or, in the Alternative, Partial Joinder to United States Trustee's Motion for an Order Directing the Appointment of a Chapter 11 Trustee* (ECF No. 183) to the extent that it sought the appointment a Chapter 11 trustee. (ECF No. 465).

On July 8, 2022, Luc A. Despins (the "Kwok Trustee") was appointed as the Chapter 11 trustee of Miles Kwok's bankruptcy estate. *See* Kwok Bankruptcy, ECF No. 523  (the "Chapter 11 Trustee Order"). After appointment of Mr.  Despins as the Kwok Trustee, Miles Kwok filed *The Debtor's Motion for Relief from Order Appointing Luc A. Despins as Chapter 11 Trustee*

---

[7] Bravo Luck is currently studying the impact of the Kwok Bankruptcy in light of this Bankruptcy Court's grant of relief from the automatic stay and BVI law which reportedly does not enforce such an automatic stay in any event in a BVI proceeding.

#129027205 v5

(Kwok Bankruptcy, ECF No. 561), whereby Miles Kwok sought relief from the Chapter 11 Trustee
Order and the vacation of the Kwok Trustee's appointment due to evidence uncovered after his
appointment allegedly demonstrating that the Kwok Trustee is not disinterested. *See* Kwok
Bankruptcy, ECF No. 561. The Connecticut Bankruptcy Court denied Miles Kwok's motion to
vacate the appointment of the Kwok Trustee (Kwok Bankruptcy, ECF No. 667), and that denial
order is currently on appeal by Miles Kwok. *See* Kwok Bankruptcy, ECF Nos. 711, 715; *see also*
Case No. 22-cv-01019-KAD, U.S. District Court for the District of Connecticut.

Since his appointment, the Kwok Trustee sought an order confirming, among other things,
that the Kwok Trustee holds all of Miles Kwok's economic and corporate governance rights in
debtor-controlled entities, which the Connecticut Bankruptcy Court entered on August 10, 2022.
*See* Kwok Bankruptcy, ECF No. 717 (the "Governance Order"). The Governance Order provides
that, among other things, (i) the Kwok Trustee holds all of Miles Kwok's economic and
governance rights with respect to "Debtor-Controlled Entities," including Genever BVI; (ii) Miles
Kwok is to transfer shares of Genever BVI to the Kwok Trustee; (iii) the Connecticut Bankruptcy
Court requested the assistance of foreign courts with respect to the Kwok Trustee's exercise of
corporate control over the "Debtor-Controlled Entities," including specifically Genver BVI; (iv)
that nothing in the Governance Order will authorize any particular action with respect to the
Debtor, Genever Holdings LLC, in this Chapter 11 bankruptcy case before the Bankruptcy Court
and that the Kwok Trustee will appear before, and seek guidance from, the Bankruptcy Court to
the extent the Kwok Trustee's exercise of corporate governance rights impact Genever Holdings
LLC's bankruptcy case; and (v) the Governance Order does not constitute a ruling or determination
regarding the validity or enforceability of the Trust Agreement. *See generally* Governance Order.
On August 10, 2022, Miles Kwok appealed the Governance Order, and such appeal remains

6

pending.  *See* Kwok Bankruptcy, ECF No. 723; *see also* Case No. 22-cv-01028-KAD, U.S. District Court for the District of Connecticut.

After the filing of the Kwok Bankruptcy, appointment of the Kwok Trustee, and entry of the Governance Order in the Kwok Bankruptcy, which authorizes the Kwok Trustee to exercise corporate authority over the Debtor's chapter 11 case, the Debtor decided to no longer pursue confirmation of the *Debtor's Liquidating Plan of Reorganization* (ECF No. 164) (the "Debtor's Prior Plan").  *See* ECF No. 204.  Therefore, Bravo Luck filed its Plan in essentially the same form as an amended version of the Debtor's Prior Plan that was circulated by the Debtor amongst parties in interest earlier this month.

Additionally, PAX had objected to the Debtor's Prior Plan based upon various grounds centering upon different treatments of the various classes of Claims.  This Plan, however, addresses these concerns and provides the same overall treatment for all Allowed Claims, namely a *pro rata pari passu* share of the Net Sale Proceeds generated from the sale of the Residence.  The Claims and Interests of Bravo Luck, Golden Spring, Guo, and PAX continue to be separately classified.

## II.    THE CONFIRMATION PROCESS

### A.    The Scope of this Disclosure Statement

This Disclosure Statement has been prepared by Bravo Luck in consultation with its attorneys, Troutman Pepper Hamilton Sanders LLP. The purpose of this Disclosure Statement is to provide creditors and other parties-in-interest with relevant information regarding the Debtor's assets and financial affairs[8] and Bravo Luck's reorganization strategy for the Debtor so that creditors can make an informed decision on the Plan.

The litigation surrounding the Ownership Dispute is highly contentious.  This Disclosure

---

[8] *See supra* footnote 2.

#129027205 v5

Statement attempts to highlight the parties' main contentions in the Ownership Dispute. While these matters are currently being litigated outside of bankruptcy, the Plan provides for a continuation of the Sale process pending a final determination of the Ownership Dispute. Under the Plan, the Net Sale Proceeds (after payment at Closing, or shortly thereafter, of Allowed Administrative Expense Claims, Priority Claims and other Allowed Claims) shall be deposited into the Sale Escrow.

The Disclosure Statement has been approved by the Bankruptcy Court as containing adequate information within the meaning of 11 U.S.C. §1125. The Bankruptcy Court's approval of this Disclosure Statement does not constitute an endorsement of the Plan, and creditors are urged to review the Plan in its entirety before voting.

### B.    The Confirmation Hearing

The Bankruptcy Court has scheduled a hearing to consider Confirmation of the Plan on _____ ___, 2022 at ___:___ __.m., prevailing New York Time (the "Confirmation Hearing"). The Confirmation Hearing will be conducted by the Honorable James L. Garrity Jr., at the United States Bankruptcy Court, One Bowling Green, Courtroom 601, New York, NY 10004, likely via Court Solutions. Any party wishing to participate in and/or listen to the hearing can register through Court Solutions at www.court-solutions.com, in accordance with General Order M-543.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129(a) or (b) of the Bankruptcy Code have been satisfied, in order to permit Confirmation of the Plan. Bankruptcy Court approval and Confirmation of the Plan makes the Plan binding upon the Debtor and all of its creditors and other parties-in-interest.

The Bankruptcy Court has entered an order (the "Scheduling Order") scheduling the Confirmation Hearing and directing that objections, if any, shall be served upon (i) counsel to the

Bravo Luck, Troutman Pepper Hamilton Sanders LLP, 3000 Two Logan Square, Eighteenth and Arch Streets, Philadelphia, PA 19103-2799, Attn: Francis J. Lawall, francis.lawall@troutman.com; and (ii) the Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, NY 10014, Attn: Richard Morrissey Esq. (richard.morrissey@usdoj.gov). The Scheduling Order accompanies the Plan and Disclosure Statement, and creditors are advised to review carefully the dates and deadlines contained therein for voting and objections.

**C.      Voting**

For the Plan to be accepted on a consensual basis, all impaired classes of creditors must vote to accept the Plan or be deemed to accept the Plan as a matter of law. Acceptance of the Plan is based upon the actual votes cast by each class of creditors holding at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of Claims of those creditors in the particular class who actually vote on the Plan. Even if the Plan is not approved by all voting classes of impaired Claims, Bravo Luck can still confirm the Plan under the cramdown provisions of 11 U.S.C. §1129(b) so long as at least one class of impaired Claims votes to accept the Plan.

A class of Claims is impaired if the Plan modifies, alters or changes the claimant's legal, equitable or contractual rights against the Debtor. In this case, the designations of impairment (and ultimately voting rights) will depend on the allowability of each creditor's Claim. If necessary, the respective voting rights of PAX and Bravo Luck shall be determined in connection with the Confirmation Hearing, based upon a separate motion to designate votes under 11 U.S.C. §1126(e). In the interim, Bravo Luck shall solicit votes from all classes of creditors. Thus, a ballot for acceptance or rejection of the Plan will accompany the Plan, and should be completed by each creditor and returned before the voting deadline by either overnight mail or email to Troutman

#129027205 v5

Pepper Hamilton Sanders LLP, 3000 Two Logan Square, Eighteenth and Arch Streets, Philadelphia, PA 19103-2799, Attn: Francis J. Lawall, francis.lawall@troutman.com. In order to be counted, a ballot must be actually received on or before _____, 2022 at 5:00 pm. (the "Voting Deadline"). Only timely submitted ballots will be counted towards Confirmation of the Plan.

## III.   RELEVANT BACKGROUND INFORMATION

### A.   Significant Pre-Petition Events Leading to Chapter 11 Filing

The Debtor was organized in 2015 to purchase the Residence for approximately $70 million. The monies utilized for the acquisition were funded by Bravo Luck based on the Trust Agreement. The Residence itself is titled in the name of the Debtor and memorialized by 3,050 cooperative shares issued to the Debtor allocable to apartment 1801, MR 22119 and MR 719 under respective proprietary leases between The Sherry, as lessor, and the Debtor, as lessee.

Beginning in April 2017, PAX instituted suit against Miles Kwok to enforce the guaranty of certain loan obligations. PAX obtained a judgment against Mr. Kwok on February 3, 2021. PAX also maintained an action (*i.e.*, the New York Action) contending that the Debtor is liable for the Kwok Judgment as Miles Kwok's alter ego.

In addition to the New York Action, PAX also commenced a second action against Bravo Luck and Miles Kwok in the BVI Court, challenging, *inter alia*, Bravo Luck's beneficial ownership of the Residence. At this point, the issues surrounding Bravo Luck's beneficial ownership of the Residence are being litigated in the BVI Court, which has issued a series of Case Management Orders in advance of an anticipated trial.

Besides the Ownership Dispute, the Residence also became subject to litigation with The Sherry relating to the treatment of The Sherry Security Deposit, and The Sherry's claims for unpaid

#129027205 v5

maintenance charges.

**B.** **Major Post-Petition Events**

The Debtor's Chapter 11 filing on October 12, 2020 was initially met with opposition by PAX, which filed a Motion to Modify the Automatic Stay to Proceed with State Court Litigation, and Related Relief (ECF Nos. 12, 13 & 14) (collectively, the "Automatic Stay Motion"). The Automatic Stay Motion was opposed by the Debtor and Bravo Luck (*See*, ECF Nos. 21 and 22). While the Automatic Stay Motion was pending, PAX then filed a motion to convert the Debtor's case to a case under Chapter 7 or, in the alternative, for the appointment of an Operating Trustee (ECF Nos. 28, 29 & 30) (the "Trustee Motion").

The Trustee Motion was initially joined by The Sherry (ECF No. 45), and opposed by Bravo Luck (ECF No. 44). The Debtor was also in the process of preparing opposition to the Trustee Motion when the Debtor began settlement negotiations with PAX and Bravo Luck in an effort to develop a consensual sale process. Throughout the early months of the Chapter 11 case, the parties reported to the Bankruptcy Court on a regular basis as to the progress of their settlement discussions. In the interim, the pending motions were adjourned from time to time to allow the parties to complete their settlement discussions.

**C.** **The Global Settlement**

After several months of extensive negotiations, the Global Settlement was finally agreed upon and executed by the Debtor, PAX and Bravo Luck in or about March 2021. Thereafter, the Debtor filed a formal motion to approve the Global Settlement under Bankruptcy Rule 9019 (ECF Nos. 60 and 62). By the time of the execution of the Global Settlement, the parties were already in agreement that Melanie L. Cyganowski, Esq., should serve as the Debtor's Sales Officer to oversee the sale and marketing process of the Residence.

Although the Debtor, PAX and Bravo Luck reached agreement on the terms of the Global Settlement, the Office of the U.S. Trustee ("UST") objected to the Global Settlement upon the primary ground that the Debtor had purportedly delegated fiduciary power to the Sale Officer, which the UST characterized as a *de facto* receiver. As part of its opposition, the UST filed its own motion seeking an Operating Trustee (ECF No. 64). The Debtor, PAX and Bravo Luck opposed the UST's motion, and each filed a series of memorandums in further support of the Global Settlement. Additionally, various revisions were made to the Global Settlement in an effort to address any potential issues under the Jay Alix Protocols. Nevertheless, the UST continued to object to the Global Settlement, forcing the matter to be formally decided by the Bankruptcy Court.

Following substantial additional briefing (*See*, ECF Nos. 76, 81, 83, 95, 96, 97, 99, 104, 105 and 106), and several additional hearings, the Bankruptcy Court issued a comprehensive decision on September 1, 2021 (ECF No. 123) finding (i) that the settlement comfortably fell within the range of reasonableness and was in the best interests of the Debtor's estate; (ii) that the Debtor had the right under state law to amend its operating agreement to appoint the Sales Officer; and (iii) that the Debtor had the right to employ Ms. Cyganowski as Sales Officer.

The Bankruptcy Court, however, found certain issues relating to the possibility of Ms. Cyganowski providing legal advice to the Debtor and utilizing personnel at her firm (Otterbourg P.C.) without retention under 11 U.S.C. §327. Accordingly, the Bankruptcy Court declined to approve the Global Settlement on this limited basis.

The settling parties quickly reached agreement on necessary revisions to the Global Settlement to clarify that (i) the Sales Officer shall be hired strictly as an employee of the Debtor; and (ii) the Debtor shall not retain the Otterbourg P.C. law firm. With these changes, the Debtor filed a renewed motion for approval of the revised settlement. Ultimately, the UST withdrew its

opposition to the Global Settlement, and the Bankruptcy Court subsequently entered orders on October 8, 2021 approving the Second Amended and Restated Settlement Agreement dated September 24, 2021 (ECF No. 141) and the employment of Ms. Cyganowski as Sale Officer (ECF No. 142).

### D.    Implementation of the Global Settlement

Upon approval of the Global Settlement, the agreed-upon Sale process can now be implemented in conjunction with the Plan. The Sales Officer selected Sotheby's broker after conducting a wide-ranging interview process. Indeed, all of the parties agreed on Ms. Cyganowski's selection of Serena Boardman of Sotheby's as broker, who adds great experience, acumen and credibility to the sale process. The Debtor's retention of the Broker was approved by entry of an order on January 13, 2022 (ECF No. 168).  The Broker has taken steps with respect to a comprehensive marketing process that, hopefully, will end with a successful sale of the Residence. The Broker was retained for an initial term of 180 days from entry of its retention order. The Debtor, PAX, and Bravo Luck, desiring to continue the Sale process for the Residence, entered into a stipulation, extending the Broker's retention from June 12, 2022 through September 12, 2022, which stipulation was approved by the Court on August 16, 2022 (ECF No. 202). At the time of this filing, a proposed stipulation (ECF No. 205) extending the Sale process and the Broker's retention through October 31, 2022 is pending approval by the Bankruptcy Court. While awaiting the completion of the Sale process, Bravo Luck  believes that it is in the best interest of the Debtor's estate and creditors to move the Plan Confirmation process forward.

### E.    Miles Kwok's Personal Bankruptcy

As further discussed above and in the Plan, on February 15, 2022, Miles Kwok filed for Chapter 11 bankruptcy in his personal capacity in the Connecticut Bankruptcy Court. *See* Case 22-

50073 (JAM). On June 15, 2022, the Connecticut Bankruptcy Court issued a Memorandum of Decision, among other things, granting the *Pacific Alliance Asia Opportunity Fund L.P.'s Motion to Dismiss Chapter 11 Case or, in the Alternative, Partial Joinder to United States Trustee's Motion for an Order Directing the Appointment of a Chapter 11 Trustee* (ECF No. 183) to the extent that it sought the appointment a Chapter 11 trustee. (ECF No. 465.) On July 8, 2022, Luc A. Despins (the "Kwok Trustee") was appointed as the Chapter 11 trustee of Miles Kwok's bankruptcy estate. *See* Kwok Bankruptcy, ECF No. 523 (the "Chapter 11 Trustee Order"). In the Kwok Bankruptcy, Miles Kwok appealed certain relief related to the appointment of Mr. Despins as the Kwok Trustee, as further detailed above and in the Plan.

Since his appointment, the Kwok Trustee sought an order confirming, among other things, that the Kwok Trustee holds all of Miles Kwok's economic and corporate governance rights in debtor-controlled entities, which the Connecticut Bankruptcy Court entered on August 10, 2022. *See* Kwok Bankruptcy, ECF No. 717 (the "Governance Order").[9] The Governance Order provides that, among other things, (i) the Kwok Trustee holds all of Miles Kwok's economic and governance rights with respect to "Debtor-Controlled Entities," including Genever BVI; (ii) Miles Kwok is to transfer shares of Genever BVI to the Kwok Trustee; (iii) the Connecticut Bankruptcy Court requested the assistance of foreign courts with respect to the Kwok Trustee's exercise of corporate control over the "Debtor-Controlled Entities," including specifically Genver BVI; **(iv) that nothing in the Governance Order will authorize any particular action with respect to the Debtor, Genever Holdings LLC, in this Chapter 11 bankruptcy case before the Bankruptcy Court and that the Kwok Trustee will appear before, and seek guidance from, the Bankruptcy Court to the extent the Kwok Trustee's exercise of corporate governance**

---

[9] On August 10, 2022, Miles Kwok appealed the Governance Order, and such appeal remains pending. *See* Kwok Bankruptcy, ECF No. 723; *see also* Case No. 22-cv-01028-KAD, U.S. District Court for the District of Connecticut.

#129027205 v5

**rights impact Genever Holdings LLC's bankruptcy case;** and (v) the Governance Order does not constitute a ruling or determination regarding the validity or enforceability of the Trust Agreement. *See generally* Governance Order (emphasis added).

The Kwok Trustee has filed two letters in this Debtor's case. *See* ECF No. 194, 200. On July 25, 2022, the Kwok Trustee informed the Bankruptcy Court of his appointment and the relief sought in the Kwok Bankruptcy related to the ultimately entered Governance Order, including pointing out that such relief expressly made clear that the Kwok Trustee would appear before the Bankruptcy Court to the extent the Kwok Trustee exercised any corporate governance rights that would impact the Debtor's bankruptcy case and that the Kwok Trustee did not intend to interfere with the ongoing Sale process in the Debtor's case before the Bankruptcy Court. *See* ECF No. 194. On August 12, 2022, the Kwok Trustee filed another letter with the Bankruptcy Court, enclosing a copy of the Governance Order from the Connecticut Bankruptcy Court and requesting a status conference in the Debtor's case to discuss, among other related matters, the Kwok Trustee's intent to file a motion to transfer venue of the Debtor's case to the Connecticut Bankruptcy Court for joint administration with the Kwok Bankruptcy. *See* ECF No. 200. The Bankruptcy Court scheduled a status conference on these issues for September 27, 2022 at 10:00 a.m. (ET). *See* ECF No. 201.

On September 20, 2022, the Debtor filed a status letter, which, among other things, informed the Bankruptcy Court that, as a result of the Governance Order in the Kwok Bankruptcy, the Kwok Trustee is now authorized to exercise corporate authority over the Debtor's Chapter 11 case and, as a result, the Debtor decided to no longer pursue confirmation of the Debtor's Prior Plan. Therefore, Bravo Luck filed its Plan in essentially the same form as an amended version of the Debtor's Prior Plan that was circulated by the Debtor amongst parties in interest earlier this

15

month.

## IV.    THE PLAN

The Plan constitutes a binding contract between the Debtor and its creditors, and is predicated upon the Sale of the Residence and distribution of the Sale Proceeds consistent with the priorities established under the Bankruptcy Code. Like many plans of reorganization, the Plan here divides claims as between impaired and unimpaired claims.

## A.    Classification and Treatment of Claims and Interests under the Plan

### A.    Unclassified Claims

Pursuant to Section 1123(a) of the Bankruptcy Code, the Plan establishes a tiered system for the payment of Administrative Expense Claims, Priority Tax Claims and U.S. Trustee Fees immediately upon the sale of the Residence, at Closing or shortly thereafter.

**__Administrative Expense Claims__**. Administrative Expense Claims primarily consist of the costs and expenses of maintaining, preserving and selling the Residence during the Chapter 11 case, including Allowed brokerage commissions to Serena Boardman, the Sales Officer's Allowed compensation, and Allowed professional fees and expenses. All of the professionals involved in the Chapter 11 case are required to file formal written fee applications, which likely will be heard in connection with the Debtor's separate motion under 11 U.S.C. § 363(b) and (f) to approve a Sale of the Residence. To the extent allowed, each holder of an Administrative Expense Claim[10] shall be paid at the Closing on the sale of the Residence or as soon thereafter as is practicable from the reserve created for these items at Closing. It is projected that Administrative Expense Claims will aggregate approximately $600,000 [$350,000 for legal fees and expenses to Goldberg Weprin

---

[10] Additionally, Golden Spring New York Ltd. and Qiang Guo retain the right to amend their claim or file a motion to assert reimbursement as an Administrative Expense Claim for the amounts paid out of The Sherry Security Deposit to pay post-petition maintenance and common charges.

#129027205 v5

Finkel Goldstein LLP as Debtor's counsel and $250,000 to the Sales Officer], plus brokerage commissions and Closing costs. Under the proposed retention, the Broker shall be paid a 3% commission for a direct sale of the Residence and a 4% commission if a Sale occurs with the assistance of a co-broker [2% each].

**Priority Tax Claims**. The Plan also provides for payment of Priority Tax Claims, if any, although, upon information and belief from the Debtor, Bravo Luck does not believe that there are any outstanding Priority Tax Claims relating to the Sale of the Residence. However, any such Allowed Priority Tax Claim shall be paid in full at the Closing or shortly thereafter from the Sale Proceeds.

**U.S. Trustee Fees**. The Plan further provides that the Debtor shall pay all U.S. Trustee Fees, together with any interest thereon, until the Chapter 11 case is closed by entry of a final decree. The U.S. Trustee Fees due in connection with the Sale itself shall be paid at Closing from the Sale Proceeds. In all likelihood, the U.S. Trustee fees owed in connection with the Sale will be in the statutory maximum of $250,000.

**Administrative Expense Claim Bar Date**.   A date establishing an Administrative Expense Claim Bar Date shall be included as part of the Confirmation Order, which shall be served upon all creditors and other parties in interest.  All requests for payment of Administrative Expense Claims that accrued after the Petition Date and through the Effective Date must be filed with the Bankruptcy Court on or before the Administrative Expense Claim Bar Date, except Professional Fees.  Any holder of an alleged Administrative Expense Claim that fails to file a timely request for payment of the Administrative Expense Claim shall be forever barred, estopped and enjoined from asserting such Administrative Expense Claim against the Debtor and the Reorganized Debtor.  To the extent that Bravo Luck, Golden Spring or Guo assert Administrative Expense Claims based

#129027205 v5

upon the funding of The Sherry Security Deposit (which has been drawn down and applied for post-petition maintenance), those parties shall file a request for an Administrative Expense Claim prior to the Administrative Expense Claim Bar Date, whereupon the allowance of such Administrative Expense Claims shall be determined by the Bankruptcy Court after notice and hearing, subject to the right of PAX or other parties-in-interest to object thereto.

**B.      Classified Claims and Interests**

The remaining Claims against the Debtor consist of The Sherry, Bravo Luck, Golden Spring, Guo, PAX and holders of other Unsecured Claims, which are separately classified for all purposes, including voting, Confirmation and distribution pursuant to Sections 1122 and 1123(a)(l) of the Bankruptcy Code:

| Class | Designation | Impaired | Preliminary Entitlement to Vote |
|-------|-------------|----------|---------------------------------|
| Class 1 | Allowed Claim of The Sherry | No | No |
| Class 2 | Allowed Bravo Luck Claim and Bravo Luck Interest | Yes | Yes |
| Class 3 | Allowed Claims of Golden Spring and Guo | Yes | Yes |
| Class 4 | Allowed Claim of PAX | Yes | Yes |
| Class 5 | Unsecured Claims | Yes | Yes |
| Class 6 | Stock or Membership Interest | N/A | N/A |

The Plan provides that all Allowed Unsecured Claims, even if separately classified, shall receive the same *pari passu* treatment relating to entitlement to share *pro rata* in the Net Sale Proceeds.  In all likelihood, the allowance of each Claim and Interest shall be determined in connection with the Ownership Dispute, subject to final allowance by the Bankruptcy Court.  With

#129027205 v5

these amendments, Bravo Luck believes there should be no basis for any creditor to object to the Plan.

## Class 1: The Allowed Claim of The Sherry

**Classification** – Class 1 consists of the Allowed Claim of The Sherry.

**Background** – The Sherry has filed a pre-petition Claim for unpaid rent, additional rent, maintenance and assessments in the total sum of not less than $891,462.06. As of the Petition Date, The Sherry held a security deposit in sum of approximately $3 million ("The Sherry Security Deposit"), which has been used to pay the Debtor's post-petition unpaid rent, additional rent, maintenance and assessments pursuant to prior order of the Bankruptcy Court (ECF No. 107) (the "Sherry Payment Order").

**Treatment** – The Sherry's allowed pre-petition claim shall be paid in full, in cash, from the Sale Proceeds upon the Closing, with the balance of the unused portion of The Sherry Security Deposit to be returned to the party that originally funded The Sherry Security Deposit. ("The Sherry Pre-petition Claim").  Additional allowed amounts owing to the Sherry pursuant to the proprietary leases that are not paid pursuant to the Sherry Payment Order, including attorneys' fees, interest, late fees, and other charges, shall also be paid in full, in cash, as an Allowed Administrative Expense Claim, from the Sale Proceeds upon the Closing ("The Sherry Administrative Claim", and together with The Sherry Pre-petition Claim, the "Allowed Claim of The Sherry").[11]

## Class 2: The Allowed Bravo Luck Claim

**Classification** – Class 2 consists of the Bravo Luck Claim.

**Background** – Bravo Luck asserts that it is separate and distinct from Miles Kwok and is

---

[11] Any dispute as to the entitlement to the balance of The Sherry Security Deposit shall be determined by the Bankruptcy Court following the Closing.

#129027205 v5

the beneficial owner of the Residence or the Stock or Membership Interest of Genever BVI (independent of PAX's claims against Miles Kwok) and Bravo Luck is not the alter ego of Miles Kwok. The interest of Bravo Luck is anticipated to be determined as part of the Ownership Dispute, but if it is ultimately not determined in connection therewith, the Bankruptcy Court shall retain jurisdiction to determine Bravo Luck's Allowed Claim or Interest. Alternatively, if Bravo Luck is not determined to be the beneficial owner of the Residence or the Stock or Membership Interest of Genever BVI independent of Miles Kwok. Bravo Luck has asserted a monetary Claim (Claim number 4) against the Debtor for the funds advanced by Bravo Luck to the Debtor to acquire the Residence in 2015—all as set forth more fully in Bravo Luck's Claim.

**Treatment** – In the event that Bravo Luck is determined to be the direct or indirect owner of the Residence pursuant to the Ownership Dispute and/or Allowed by the Bankruptcy Court pursuant to Final Order, then in such event Bravo Luck shall be paid all of the Net Sale Proceeds from the Escrow or otherwise after satisfaction of Allowed Administrative and Priority Claims as well as the Allowed Claim of The Sherry. In the event Bravo Luck is not found to be the direct or indirect owner of the Residence, but is determined to hold an Allowed Unsecured Claim against the Debtor, then such Class 2 Claim shall be paid on a *pro rata* and *pari passu* basis with any other Allowed Class 3 and Class 4 Claims, if any.

**Class 3: The Claims of Golden Spring and Guo**

**Classification** – Class 3 consists of the Claims of Golden Spring and Guo.

**Background** – Golden Spring and Guo have asserted Claims for monies expended to establish The Sherry Security Deposit pre-petition and fund certain expenses, costs and attorneys' fees in connection with the acquisition of the Residence.

#129027205 v5

**Treatment** – To the extent that Golden Spring's and Guo's Claims are Allowed by the Bankruptcy Court pursuant to Final Order, then in such event Golden Spring and Guo shall be paid from the Net Sale Proceeds (if not otherwise paid to Bravo Luck as set forth above), on a *pro rata* and *pari passu* basis with any other Allowed Class 2 and Class 4 Claims, if any.

## Class 4: The Claim of PAX

**Classification** - Class 4 consists of the Claim of PAX.

**Background** – PAX has filed a Claim for the amount of the Kwok Judgment, alleging that the Debtor is the alter ego of Miles Kwok. This contention is anticipated to be determined as part of the Ownership Dispute, but if it is not ultimately determined in connection therewith, the Bankruptcy Court shall retain jurisdiction to determine PAX's Allowed Claim.

**Treatment** – To the extent that PAX's alter ego claims are established in the Ownership Dispute and/or the PAX Claim is Allowed by the Bankruptcy Court pursuant to Final Order, then, in such event, PAX shall be paid from the Net Sale Proceeds (if not otherwise paid to Bravo Luck as set forth above), on a *pro rata* and *pari passu* basis with any other Allowed Class 2 and Class 3 Claims, if any.

## Class 5: Unsecured Claims

**Classification** – Class 5 consists of any Unsecured Claims, excluding the Claims of Bravo Luck, Golden Spring, Guo and PAX.

**Treatment** – The Allowed Class 5 Claims of other Unsecured Creditors, if any, shall be paid in full from the Net Sale Proceeds (if not otherwise paid to Bravo Luck as set forth above), on a *pro rata* and *pari passu* basis with any other Allowed Class 2, 3 and 4 Claims, if any.

## Class 6: Stock or Membership Interest

**Classification** – Class 6 consists of the 100% Stock or Membership Interest of Genever BVI in the Debtor.

21

#129027205 v5

**Treatment** – In all likelihood, the disposition of the Stock or Membership Interest of Genever BVI shall be determined in the context of the Ownership Dispute, subject to the Bankruptcy Court's retention of jurisdiction to adjudicate the Stock or Membership Interest if not resolved in the Ownership Dispute as set forth above. Regardless of the outcome of the Ownership Dispute with respect to the Stock or Membership Interest, Genever BVI shall continue as the sole member of the Debtor and Reorganized Debtor, as applicable, to carry out and implement the Global Settlement, and the terms of this Plan, which shall remain in full force and effect irrespective of the final disposition of PAX's pending turnover proceeding in the BVI Court or any other dispute regarding the equity ownership of Genever BVI or the Debtor.

## V.   MEANS FOR IMPLEMENTATION OF THE PLAN

1. **Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.** Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one impaired class of Claims. Bravo Luck shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting class of Claims or Interests. Bravo Luck reserves the right to modify the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a class of Claims or Interests to render such class of Claims or Interests unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

2. **Ratification and Continuation of the Global Settlement.** The Plan is predicated upon the Sale of the Residence pursuant to the Global Settlement. All distributions shall be made on a post-Confirmation basis at or after Closing, even though the Plan becomes effective once the Confirmation Order becomes final. To reinforce continuity, the Plan contains express provisions

#129027205 v5

for the ratification of the Global Settlement. The Plan is intended to continue and implement the Global Settlement and carry forward all its terms and conditions (without change). Thus, approval and Confirmation of the Plan shall constitute ratification and reconfirmation of the Global Settlement on a post-Confirmation basis by the signatories thereto, providing for the Sale and distribution of the Sale Proceeds.

3.     **Ratification and Continuation of the Sales Officer and Broker**. The Plan also contemplates that the Debtor and Reorganized Debtor shall continue the employment of Melanie L. Cyganowski as the Sales Officer and Sotheby's as the Broker on a post-Confirmation basis as well. These respective retentions shall continue on the same terms and conditions specified under the original retention orders. Upon the Closing, the Plan provides that the Sales Officer shall receive a full release from the Debtor, PAX and Bravo Luck, together with agents, representatives, etc., pursuant to Section 3.7

4.     **Post-Confirmation Marketing of the Residence**. The Sales Officer and Broker shall continue to pursue the marketing and sale of the Residence on a post-Confirmation basis in accordance with the Global Settlement.

5.     **Sale Free and Clear of All Claims, Liens, Taxes and Interests**. Once a purchaser is identified, the Sale of the Residence shall be the subject of a separate motion to be filed by the Debtor providing for a sale free and clear of all liens, claims, taxes and interests pursuant to 11 U.S.C. §§ 363(b) and (f) and 1123(a)(5). The same liens, claims, taxes and interests—to the same extent and in the same priority — shall attach to the Sale Proceeds.

6.     **Approval Rights of The Sherry**. The Plan further contemplates that the Sale of the Residence shall remain subject to the consent and approval rights of The Sherry under its internal rules and regulations relating to the sale of cooperative apartments in The Sherry.

#129027205 v5

7.      **Transfer Taxes**. The Sale of the Residence constitutes the making or delivery of

an instrument of transfer of property or otherwise, pursuant to or in connection with Confirmation

of the Plan. Therefore, the Plan also provides that the Sale of the Residence shall be exempt from

the payment of any City or State stamp, real estate transfer, or other similar tax or governmental

assessment pursuant to 11 U.S.C. §1146(a).

## VI.      CREATION OF THE SALE ESCROW AT CLOSING

Another central component of the Global Settlement and Plan is the establishment of the

Sale Escrow for the deposit of the Net Sale Proceeds with a nationally recognized bank as Escrow

Agent pending a final determination of the Ownership Dispute. The Net Sale Proceeds are defined

under the Plan to mean the residual Sale Proceeds after payment of, or funding of the Reserve, as

applicable, for Allowed Administrative Expense Claims (including professional fees and expenses,

the Sales Officer's compensation, brokerage commissions, and customary closing costs and

expenses), U.S. Trustee Fees, Allowed Priority Tax Claims, if any, the Allowed Claim of The

Sherry (as defined herein) and the Class 5 Claims of Unsecured Creditors, if any. The Sale Escrow

shall remain in existence until final adjudication of the Ownership Dispute and final allowance of

the Claims and Interests of Class 2, 3, 4 and 5 creditors by the Bankruptcy Court. At the Closing,

an escrow agreement containing customary terms and conditions in a form and content reasonably

acceptable to the Debtor or Reorganized Debtor, as applicable, Bravo Luck and PAX shall be

prepared and executed by the Debtor or Reorganized Debtor, as applicable, and the Escrow Agent

subject to Bankruptcy Court approval.  Following the Closing, there shall be no distributions from

the Sale Escrow except pursuant to order of the Bankruptcy Court..

## VII.      POST-CONFIRMATION RETENTION OF JURISDICTION

Recognizing that the Sale of the Residence shall occur after Confirmation, the Plan

#129027205 v5

contains specific provisions for the continued post-Confirmation jurisdiction. Specifically, the Bankruptcy Court shall retain jurisdiction after Confirmation over the following matters: (i) To approve the sale of the Residence and otherwise implement the Global Settlement and ensure that the Plan is substantially consummated; (ii) To resolve all matters arising under or relating to the Plan or Global Settlement, including, without limitation, disputes relating to the Sale of the Residence, any disputes relating to or involving The Sherry in connection with the Sale, distribution of the Net Sale Proceeds, and any action by the Debtor, Reorganized Debtor, Bravo Luck or PAX to modify, alter or change the Global Settlement or Plan following completion of turnover proceedings in the BVI Court; (iii) To the extent applicable, jurisdiction to allow or disallow in whole or in part the Claims or Interests of Class 2, 3, 4 and 5 creditors not adjudicated in connection with the Ownership Dispute by the New York Court or the BVI Court or otherwise; (iv) To grant or deny the applications for allowance of final compensation and reimbursement of expenses for the Debtor's counsel, the Sales Officer and the Broker; (v) To decide all disputes relating to distribution or disbursement of the Sale Proceeds or the Escrow; and (vi) To enter an order or final decree concluding the Chapter 11 case following the sale of the Residence, resolution of all Claims and Interests, and distribution of the Net Sale Proceeds from the Escrow.

## VIII.    KEY LEGAL REQUIREMENTS FOR CONFIRMATION UNDER SECTION 1129

### A.    General.

Confirmation of a plan of reorganization is the primary objective in a Chapter 11 case, and this case is no exception. For the Plan to be confirmed, a number of elements must be established under Section 1129 of the Bankruptcy Code, which are reviewed below.

### B.    Key Confirmation Requirements.

The Bankruptcy Court shall confirm the Plan only if, *inter alia*, all applicable requirements

25

of 11 U.S.C. §1129(a) are met, including: (i) the Plan complies with the requirements of the Bankruptcy Code, (ii) Bravo Luck has proposed the Plan in good faith, (iii) Bravo Luck has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan, (iv) the Plan pays creditors at least as much as they would receive in a liquidation under Chapter 7 (the "Best Interests Test"), (v) the Plan is feasible; and (vi) the Plan has been accepted by at least one class of impaired claims.

Bravo Luck believes that it will be able to satisfy all applicable statutory requirements of 11 U.S.C. § 1129(a) in order to obtain consensual Confirmation of the Plan. Even if the Plan is not approved by all voting classes of impaired Claims, Bravo Luck can still confirm the Plan under the cramdown provisions of 11 U.S.C. §1129(b) so long as at least one class of impaired Claims votes to accept the Plan. Based upon the Global Settlement, however, Bravo Luck anticipates receiving affirmative votes from all classes of Claims. Even though the Sale shall occur after Confirmation, the Plan is feasible since the Residence is unencumbered and retains significant value under any circumstances. The existing The Sherry Security Deposit of $3 million will enable the Debtor's estate to remain current with its post-petition maintenance obligations owed to The Sherry. By providing for the sale of the Debtor's only asset under a robust process, the Plan provides creditors with a better recovery than they could obtain in Chapter 7 due to (i) the elimination of trustee fees, expenses and commissions, and (ii) the preservation of all transfer tax exemptions under the Plan, which do not apply in Chapter 7. Thus, for a number of reasons, Bravo Luck urges all creditors to vote to accept the Plan.

*[Signature page follows]*

#129027205 v5

Dated: New York, NY
      September 26, 2022

| | |
|---|---|
| Bravo Luck Limited | Troutman Pepper Hamilton Sanders LLP |
| Qiang Guo | Attorneys for Bravo Luck Limited |
| | Francis J. Lawall |
| | 3000 Two Logan Square |
| | Eighteenth and Arch Streets |
| | Philadelphia, PA 19103-2799 |
| | Telephone: (215) 981-4000 |
| | Facsimile: (215) 981-4750 |
| | francis.lawall@troutman.com |

By: *  /s/ Qiang Guo  *         By: *  /s/ Francis J. Lawall  *

#129027205 v5