GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP
Kevin J. Nash, Esq.
1501 Broadway, 22nd Floor
New York, New York 10036
(212) 221-5700

*Counsel for Debtor*

- and -

PAUL HASTINGS LLP
Luc A. Despins, Esq.
G. Alexander Bongartz, Esq.
200 Park Avenue
New York, New York 10166
(212) 318-6079

*Counsel for Chapter 11 Trustee for*
*Estate of Ho Wan Kwok*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------x
                                     :
In re:                               :    Chapter 11
                                     :
GENEVER HOLDINGS LLC,                :    Case No. 20-12411 (JLG)
                                     :
                    Debtor.          :
                                     :
-------------------------------------------------------x
```

**JOINT MOTION OF (A) GENEVER HOLDINGS LLC AND (B) LUC A. DESPINS AS CHAPTER 11 TRUSTEE FOR ESTATE OF HO WAN KWOK TO TRANSFER, PURSUANT TO 28 U.S.C. §§ 1408 AND 1412 AND BANKRUPTCY RULE 1014(a), VENUE OF CHAPTER 11 CASE OF GENEVER HOLDINGS LLC TO BANKRUPTCY COURT FOR DISTRICT OF CONNECTICUT**

Genever Holdings LLC (the "Debtor" or "Genever (US)") and Luc A. Despins (the "Trustee" together with the Debtor, the "Movants"), in his capacity as trustee for the estate of Ho Wan Kwok (the "Individual Debtor" or "Kwok") in the chapter 11 case *In re Ho Wan Kwok*, No. 22-50073 (JAM) (Bankr. D. Conn.) (the "Individual Debtor Case"), by and through their

respective undersigned counsel hereby move (the "<u>Motion</u>"), pursuant to 28 U.S.C. §§ 1408 and 1412 and Rule 1014(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), for entry of an order, substantially in the form attached as **<u>Exhibit A</u>** (the "<u>Proposed Order</u>"), transferring the above-captioned chapter 11 case (the "<u>Genever (US) Case</u>") to the United States Bankruptcy Court for the District of Connecticut (the "<u>Connecticut Bankruptcy Court</u>").  In support of this Motion, the Movants respectfully state as follows:

<b><u>PRELIMINARY STATEMENT</u></b>[1]

1.      Genever (US) is just one of the many corporate vehicles created by the Individual Debtor that, as New York Supreme Court Justice Ostrager observed when holding the Individual Debtor in contempt of court, form part of "the corporate maze" through which the Individual Debtor has attempted to "avoid and deceive his creditors."[2]  Concerned with the Individual Debtor's ability to fairly manage his chapter 11 estate as debtor in possession, the Connecticut Bankruptcy Court appointed the Trustee to oversee the administration of the Individual Debtor Case to ensure that the value of his estate would be maximized for the benefit of his creditors, including by conducting an "effective investigation of the [Individual] Debtor's assets, liabilities, and financial affairs."[3]

2.      Against this backdrop, it is paramount that the Genever (US) Case be transferred to the Connecticut Bankruptcy Court to be jointly administered with the Individual Debtor Case.

---

[1]     Capitalized terms used but not defined in this Preliminary Statement have the meanings ascribed to them later in the Motion.

[2]     Decision and Order on Motion, dated February 9, 2022 (the "<u>Final Contempt Decision</u>"), *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan*, No. 652077/2017 (N.Y. Sup. Ct.) [Doc. No. 1181], at 1.  A copy of the Final Contempt Decision is attached hereto as **<u>Exhibit B</u>**.

[3]     Memorandum of Decision and Order Denying Motion to Dismiss Without Prejudice and Granting Joinder to Motion for Appointment of Chapter 11 Trustee, dated June 15, 2022 (the "<u>Memorandum Decision</u>"), *In re Kwok*, Case No. 22-50073 (JAM) (Bankr. D. Conn.) [Docket No. 465], at 14.  A copy of the Memorandum Decision is attached hereto as **<u>Exhibit C</u>**.

As an initial matter, Genever (US) is an affiliate of the Individual Debtor and, accordingly, venue of Genever (US) Case is proper in the District of Connecticut.  Moreover, transfer of the Genever (US) Case to the District of Connecticut is appropriate for numerous reasons.  For one, both the Genever (US) Case and the Individual Debtor Case arose from similar circumstances (namely, the Individual Debtor's efforts to keep assets beyond the reach of his creditors) and, as a result, there is significant overlap in legal and factual issues on the question of what assets are part of the Individual Debtor's estate.  For example, the Trustee believes that the Individual Debtor has control and/or beneficial ownership of assets such as (a) the Sherry Netherland Apartment—title to which is held by Genever (US), although Bravo Luck (an entity allegedly owned by the Individual Debtor's son) asserts that it holds a beneficial interest in the apartment pursuant to a purported trust agreement—and (b) a 150 foot yacht, *i.e.*, the *Lady May*—title to which is held by HK USA, a corporate entity allegedly owned by the Individual Debtor's daughter, with Bravo Luck having allegedly provided a substantial portion of the purchase price for the *Lady May*.[4]

3.      In fact, the ownership of the *Lady May* is already the subject of an adversary proceeding commenced by HK USA in the Connecticut Bankruptcy Court.[5]  In that adversary proceeding, on September 23, 2022, the Trustee filed counterclaims seeking, among other things, (a) a declaration that the *Lady May* is property of the Individual Debtor's estate because HK USA is an alter ego of the Individual Debtor or because the Individual Debtor is the equitable owner of HK USA and (b) in the alternative, assuming that HK USA is not an alter ego of or equitably owned by the Individual Debtor, a ruling that HK USA was the recipient of an actual fraudulent transfer consisting of the value of the *Lady May* and/or the funds used to purchase the

---

[4]      As further detailed below, Justice Ostrager has already held that the Individual Debtor owns and controls the *Lady May*.

[5]      *See HK Int'l Funds Inv. (USA) Ltd., LLC v. Ho Wan Kwok*, Adv. Proc. No. 22-05003 (JAM) (Bankr. D. Conn.).

*Lady May.*[6]  The Movants anticipate that similar *alter ego* and/or fraudulent transfer claims will also need to be raised in this Court and the Connecticut Bankruptcy Court with respect to Genever (US) and Bravo Luck, including Bravo Luck's asserted beneficial interest in the Sherry Netherland Apartment, and that this litigation will involve (largely) the same witnesses as the *Lady May* litigation in the Connecticut Bankruptcy Court.  Allowing two different courts to decide ownership issues involving the same shell game and the same parties (*i.e.*, the Individual Debtor, members of his family, and corporate entities nominally owned by such family members) would run the risk of inconsistent judgments and threaten judicial economy by wasting resources duplicating efforts.

4.      Furthermore, creditors of the Individual Debtor did not receive actual or publication notice of the deadline to file claims in the chapter 11 case of Genever (US), and, thus, they did not have the opportunity to assert claims against Genever (US), including on the basis that Genever (US) is an *alter ego* of the Individual Debtor, as PAX did in this case (because PAX received actual notice of the bar date).  As a result, absent court relief, creditors of the Individual Debtor would effectively be structurally subordinated to the claims of the handful of creditors that did file proofs of claims in the Genever (US) Case.  If Genever (US) (and other entities owned by the Individual Debtor or his family members) are found to be *alter egos* of the Individual Debtor, the value of the assets belonging to all of these entities, including the Sherry Netherland Apartment, should be collected by the Trustee to fund distributions to all of the Individual Debtor's legitimate creditors.  Creditors of the Individual Debtor should not be limited to the equity value, if any, that would remain at Genever (US) after satisfying the claims (to the

---

[6]      *See* Chapter 11 Trustee's Answer and Counterclaims, *HK Int'l Funds Inv. (USA) Ltd., LLC v. Ho Wan Kwok*, Adv. Proc. No. 22-05003 (JAM) (Bankr. D. Conn.) [Docket No. 36].   A copy of the Chapter 11 Trustee's Answer and Counterclaims (excluding exhibits) is attached hereto as **Exhibit D**.

extent allowed) of the few creditors that filed proofs of claim against Genever (US). To address these issues, the Trustee intends to request, after the transfer of the Genever (US) Case, that the Connecticut Bankruptcy Court set a single bar date in the Individual Debtor Case and the Genever (US) Case, with the bar date notice to be distributed to all known creditors of the Individual Debtor as well as published in certain newspapers with a widespread Mandarin-speaking readership in the United States.

5.    In addition, transferring venue will be more convenient for, and will not prejudice, the parties in this case. For one, other than Bravo Luck, **no party in interest in this chapter 11 case opposes the transfer of venue to the Connecticut Bankruptcy Court**. Furthermore, as a practical matter, resolving the ownership issues would likely require participation by the same witnesses in both the Genever (US) Case and the Individual Debtor Case if they remain separate cases. Rather than having the witnesses appear before two courts, possibly on the same issues, they should only have to appear before one single forum. Finally, to be clear, Genever (US) and the Trustee do **_not_** intend to halt the ongoing process to sell the Sherry Netherland Apartment, which process would continue, subject to the Trustee's duties to maximize value, after this case has been transferred the Connecticut Bankruptcy Court.

6.    For all these reasons, as further detailed below, the Debtor and the Trustee request that the Genever (US) Case be transferred to the Connecticut Bankruptcy Court.

## BACKGROUND

## I.    The New York Supreme Court Litigation

7.    Prior to the commencement of the Individual Debtor Case and Genever (US) Case, on April 18, 2017, Pacific Alliance Asia Opportunity Fund L.P. ("PAX") brought a breach of contract action against the Individual Debtor in the New York State Supreme Court ("NY State Court"). On September 15, 2020, the NY State Court granted PAX's motion for summary

judgment on its claim against the Debtor for breach of contract[7] and awarded PAX a judgment in the amount of $116,402,019.57.[8]

8.  Thereafter, PAX attempted to enforce its judgment against the Individual Debtor by levying on his assets. Among other things, at the request of PAX, on September 30, 2020, the NY State Court issued a temporary restraining order preventing the Individual Debtor "from making or causing any sale, assignment, transfer or interference with any property in which he has an interest . . . ."[9] Then, two weeks later, on October 15, 2020, the NY State Court entered a restraining order (the "Restraining Order") specifying that "Mr. Kwok and/or the registered owners of (1) the Residence at the Sherry Netherland Hotel and (2) the yacht, 'the Lady May' are restrained from making or causing any sale, assignment, transfer, or interference with those assets."[10]

9.  The Lady May is a yacht registered in the name of HK International Funds Investments (USA) Limited, LLC ("HK USA"), an entity allegedly owned by Mei Guo, the Individual Debtor's daughter. The Trustee has reason to believe that the purchase price was funded, in substantial part, by Bravo Luck (with such funds originating from other shell companies owned and/or controlled by the Individual Debtor). Unbeknownst to the NY State

---

[7]  Decision and Order on Motion, dated Sept. 16, 2020, *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan*, No. 652077/2017 (N.Y. Sup. Ct.) [Doc. No. 549].

[8]  Judgment, dated Feb. 3, 2021, *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan*, No. 652077/2017 (N.Y. Sup. Ct.) [Doc. No. 716].

[9]  Decision and Order on Motion, dated Sept. 30, 2020, *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan*, No. 652077/2017 (N.Y. Sup. Ct.) [Doc. No. 591] at 1.

[10]  Decision and Order, dated Oct. 15, 2020, *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan*, No. 652077/2017 (N.Y. Sup. Ct.) [Doc. No. 630] at 1.

Court, at the time it entered the Restraining Order in October 2020, the *Lady May* had left the jurisdiction and was heading to the Bahamas (and later Europe).[11]

10.     On March 17, 2021, the Court issued a conditional order of civil contempt which provided that if the Individual Debtor failed to return the *Lady May* to the jurisdiction of the NY State Court by May 31, 2021, he would be subject to a $500,000.00 fine for each day that the *Lady May* remained outside the jurisdiction of this Court.[12]

11.     On February 9, 2022, following an evidentiary hearing to determine the ownership of the *Lady May*, the NY State Court found that (a) the Individual Debtor "beneficially owns and controls the Lady May" and (b) entered the Final Contempt Decision ordering the Individual Debtor to pay contempt fines of $134 million within five business days for failure to return the Lady May.[13]  In concluding, the NY State Court noted that "***if billionaire litigants can simultaneously seek to use Court process in New York and elsewhere in the United States while knowingly and intentionally violating Court orders, there is no rule of law***."[14]

12.     Four business days later, the Individual Debtor commenced its chapter 11 cases in the Connecticut Bankruptcy Court.

---

[11]    Final Contempt Decision at 5 ("Subsequent to this Court's September 30, 2020 restraining Order, in October 2020 the Lady May was sent to Florida and then the Bahamas for repairs and was subsequently dispatched to Italy in October 2021, purportedly at the direction of Golden Spring. Ms. Guo acknowledged that she was aware of both this Court's September 30, 2020 restraining Order and this Court's subsequent March 16, 2021 Order directing that the Lady May be returned to the Court's jurisdiction.")

[12]    Decision and Order on Motion, dated March 17, 2021, *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan*, No. 652077/2017 (N.Y. Sup. Ct.) [Doc. No. 728] at 2.

[13]    Final Contempt Decision at 4, 10.

[14]    *Id.* at 10 (emphasis added).

**B.**     <u>Genever (US) Case</u>

13.     On October 12, 2020, three days prior to the entry of the Restraining Order, Genever (US) filed its chapter 11 petition before this Court.

14.     No trustee or official committee of unsecured creditors has been appointed in the Genever (US) Case.

15.     Genever (US)'s only scheduled assets are the Residence at the Sherry Netherland Hotel (the "<u>Sherry Netherland Apartment</u>") in New York, New York, and a related security deposit for a total scheduled value of approximately $73 million.

16.     Bravo Luck Limited ("<u>Bravo Luck</u>"), an entity allegedly owned by Qiang Guo, the Kwok's son, has filed a proof of claim in the Genever (US) Case [Claim No. 4] asserting, among other things, that it is the beneficial owner of the Sherry Netherland Apartment by virtue of a purported trust agreement dated February 17, 2015 (the "<u>Purported Trust Agreement</u>"). In the alternative, Bravo Luck asserts a general unsecured claim against Genever (US) for approximately $76 million based on allegedly supplying the funds used to purchase the Sherry Netherland Apartment and paying related expenses.

17.     By order dated January 30, 2021 [Docket No. 46], the Court set the general bar date to file proofs of claim against Genever (US) for March 10, 2021. The bar date notice was only served on a handful of creditors of Genever (US) as well as certain government entities, but it was not served on creditors of the Individual Debtor.[15]

18.     Only five creditors have filed proofs of claim in the Genever (US) Case: Sherry-Netherland, Inc. (the "<u>Sherry-Netherland</u>"), PAX, Bravo Luck, Golden Spring (New York) Ltd. ("<u>Golden Spring</u>"), and Qiang Guo (the Individual Debtor's son).

---

[15]   *See* Declaration of Service, dated February 4, 2021 [Docket No. 48].

19. On February 26, 2021, PAX, Bravo Luck, and Genever (US) entered into that certain settlement agreement (the "Genever Settlement Agreement") related to the sale of the Sherry-Netherland Apartment that, following the execution of an amended version of the agreement on September 24, 2021, was approved by this Court on October 8, 2021.[16]  In accordance with the Genever Settlement Agreement, Melanie Cyganowski—a retired bankruptcy judge—was appointed to be Genever (US)'s sales officer (the "Sales Officer") to control and oversee the sale of the Sherry-Netherland Apartment.  Pursuant to the Genever Settlement Agreement, the proceeds of such sale will be held in escrow pending further order of the court.

20. The Genever Settlement Agreement does not contain a provision regarding the appropriate forum or venue to resolve the substantive disputes related to the Sherry-Netherland Apartment, such as the ownership thereof, the merits of any *alter ego* claims against Genever (US), or Bravo Luck's claims of beneficial ownership.  In fact, the Genever Settlement Agreement specifically provides that "[n]othing herein shall be construed as an acknowledgement of the appropriate forum outside the bankruptcy court to address any such issues, with all Parties' rights expressly reserved."[17]  Nor does the Genever Settlement Agreement contain any provisions regarding the terms of an eventual chapter 11 plan.

**C.  Individual Debtor Case**

21. On February 15, 2022, the Individual Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the Connecticut Bankruptcy Court.

---

[16] Order Granting Debtor's Second Renewed Motion to Approve the Revised Settlement Agreement, *In re Genever Holdings LLC*, No. 20-12411-JLG (Bankr. S.D.N.Y. Oct. 8, 2021) [Docket No. 141].

[17] Second Amended and Restated Settlement Agreement [Docket No. 131] ¶ 7.

22.     On March 19, 2022, the United States Trustee filed a motion for an order directing appointment of an examiner or, in the alternative, directing the appointment of a chapter 11 trustee.[18]

23.     On June 15, 2022, the Connecticut Bankruptcy Court entered the Memorandum Decision directing the United States Trustee to appoint a chapter 11 trustee in the Kwok Case. Following entry of the Memorandum Decision, the United States Trustee selected Luc. A. Despins as the Trustee.

24.     On July 8, 2022, the Connecticut Bankruptcy Court entered an order granting the appointment of Luc. A. Despins as the Trustee in the Individual Debtor Case.[19]

25.     On August 10, 2022, the Connecticut Bankruptcy Court entered an order (the "Corporate Governance Order")  granting the Corporate Governance Motion providing, among other things:

> [T]he Trustee holds all of the Debtor's economic and governance rights, for the benefit of the Estate, with respect to all [Individual] Debtor-Controlled Entities, including, without limitation, Genever (BVI).  For the avoidance of doubt, the foregoing rights include the Trustee's asserted authority to replace any existing officer, director, manager, or similar person of the [Individual] Debtor-Controlled Entities.  As part of the foregoing, to the extent necessary, the Trustee is authorized to act, in his capacity as the chapter 11 trustee in this Chapter 11 Case, as any such officer, director, manager, or similar person who has been removed.[20]

---

[18]   United States Trustee's Motion for an Order Directing the Appointment of an Examiner or, in the Alternative, Motion for Order Directing the Appointment of a Chapter 11 Trustee, *In re Ho Wan Kwok*, No. 22-50073 (JAM) (Bankr. D. Conn. Mar. 19, 2022) [Docket No. 102].

[19]   Order Granting Appointment of Chapter 11 Trustee, *In re Ho Wan Kwok*, No. 22-50073 (JAM) (Bankr. D. Conn. July 8, 2022) [Docket No. 523].

[20]   Order, Pursuant to Bankruptcy Code Sections 363, 521, 541, 1108, and 1505, (A) Confirming that Chapter 11 Trustee Holds All of Debtor's Economic and Corporate Governance Rights in Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee to Act in Any Foreign Country on Behalf of Estate, and (c) Granting Related Relief, *In re Ho Wan Kwok*, No. 22-50073 (JAM) (Bankr. D. Conn. August 10, 2022) [Docket No. 717] ¶ 2.

26.     At the request of the Trustee, the Corporate Governance Order expressly provided that nothing in such order:

> shall be deemed to authorize any particular action with respect to [Genever (US)] in its chapter 11 case pending before the United States Bankruptcy Court for the Southern District of New York (the "Genever Court"). The Trustee shall appear before, and seek guidance from, the Genever Court to the extent the Trustee's exercise of corporate governance rights with respect to Genever (US) would impact its chapter 11 case.[21]

27.     Following entry of the Corporate Governance Order, the Trustee and the Individual Debtor took the necessary steps for the Trustee to obtain corporate control over Genever Holdings Corporation ("Genever (BVI)") and Genever (US).

28.     No bar date has yet been set in the Individual Debtor Case.

## JURISDICTION

29.     This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BASIS FOR RELIEF AND RELIEF REQUESTED

30.     The statutory authority for the relief requested is 28 U.S.C. §§ 1408, 1412 and Rule 1014 of the Bankruptcy Rules. The Movants respectfully request that this Court enter the Proposed Order transferring the Genever (US) Case to the Connecticut Bankruptcy Court.

## ARGUMENT

### I.      Venue of Genever (US) Case Is Proper in the Connecticut Bankruptcy Court

31.     Connecticut is a proper venue for the Genever (US) Case under 28 U.S.C. § 1408 because the Individual Debtor is an affiliate of Genever (US).

---

[21] *Id.* ¶ 8.

**II.     The Genever (US) Case Should Be Transferred to the Connecticut Bankruptcy Court in the Interest of Justice and for the Convenience of the Parties**

32.     Section 1412 of title 28 of the United States Code provides that a court may "transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412; *see also* Fed. R. Bankr. P. 1014.  The decision as to whether to transfer venue of a bankruptcy case pursuant to 28 U.S.C. § 1412 and Bankruptcy Rule 1014 is within the court's discretion "according to an individualized, case-by-case consideration of convenience and fairness." *In re Patriot Coal Corp.*, 482 B.R. 718, 738-39 (Bankr. S.D.N.Y. 2012); *Gulf States Exploration Co. v. Manville Forest Prod. Corp. (In re Manville Forest Prod. Corp.)*, 896 F.2d 1384, 1391 (2d Cir. 1990). Moreover, "[s]ection 1412 is written in the disjunctive, which means 'interest of justice' and 'convenience of the parties' are each independent grounds for transferring venue." *In re Asset Resolution LLC*, No. 09-16142 (AJG), 2009 WL 4505944, at *2 (Bankr. S.D.N.Y. Nov. 24, 2009).  Here, transfer of venue is justified both in the interest of justice and for the convenience of the parties.

A.     Interest of Justice

33.     The Second Circuit has found that "[t]he 'interest of justice' component of § 1412 is a broad and flexible standard which must be applied on a case-by-case basis.  It contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness . . . ." *In re Manville Forest Prod. Corp.*, 896 F.2d at 1391.  Courts analyzing the interest of justice have considered the following factors:

> (i) transfer would promote the economic and efficient administration of the bankruptcy estate; (ii) the interests of judicial economy would be served by the transfer; (iii) the parties would be able to receive a fair trial in each of the possible venues; (iv) either forum has an interest in

having the controversy decided within its borders; (v) the enforceability of any judgment would be affected by the transfer; and (vi) the plaintiff's original choice of forum should be disturbed.

*In re Dunmore Homes, Inc.*, 380 B.R. 663, 672 (Bankr. S.D.N.Y. 2008).

       *i.*     *Efficient and Economic Administration and Judicial Economy*

34.     The first two factors, economic and efficient administration and judicial economy, heavily weigh in favor of transfer. These two factors will be analyzed together because economic and efficient administration directly affects judicial economy. *See In re Enron Corp.*, 317 B.R. 629, 640 (Bankr. S.D.N.Y. 2004).

35.     The substantial overlap in issues and parties between the Genever (US) Case and Individual Debtor Case necessitates their coordination in one forum. *See In re TS Employment, Inc.,* No. 15-10243 (MG), 2015 WL 4940348, at *4 (Bankr. S.D.N.Y. Aug. 18, 2015) (considering the fact that all cases were "inextricably intertwined" in granting transfer of venue). As noted, Genever (US) is just one of many entities that the Individual Debtor utilized in creating a corporate maze to hide assets from his creditors. The Individual Debtor's shell game has given rise to disputes in both the Genever (US) Case and Individual Debtor Case regarding the extent and characterization of the Individual Debtor's ownership in certain assets, including the Sherry-Netherland Apartment and the *Lady May*. In fact, the ownership of the *Lady May* is already the subject of an adversary proceeding pending in the Connecticut Bankruptcy Court, in which the Trustee recently filed counterclaims based on *alter ego* and fraudulent transfer theories. The Movants anticipate that similar issues will need to be raised with respect to Genever (US) and Bravo Luck, including Bravo Luck's asserted beneficial interest in the Sherry-Netherland Apartment.

36.     For example, in this case, although title to the Sherry-Netherland Apartment is registered in the name of Genever (US), Bravo Luck has asserted that it is the beneficial owner

13

of the Sherry-Netherland Apartment by virtue of the Purported Trust Agreement. The Trustee has serious doubts about Bravo Luck's position and is currently reviewing potential challenges to the Purported Trust Agreement, which would have to be brought in this Court and in the Connecticut Bankruptcy Court, including as to authenticity, validity, and enforceability, as well as actual fraudulent intent transfer challenges. How these issues are ultimately resolved will affect the question of who owns the Sherry-Netherland Apartment, which, in turn, has important implications for **both** the Genever (US) Case and Individual Debtor Case.

37. More generally, both the Genever (US) Case and Individual Debtor Case need to address the same fundamental question of what assets belonged to the Individual Debtor (and thus the chapter 11 estate) as of the Individual Debtor's petition date. For that reason, the ownership issues should be resolved in a single forum. *See* 9 Collier on Bankruptcy § 1014.04 (16th ed.) ("[T]he best way to coordinate or consolidate the cases is usually to bring them within one district."). Failure to transfer venue could lead to inconsistent rulings and would be a waste of judicial resources. "[J]udicial efficiency is served by litigating the same legal issue only once." *Hilton Worldwide, Inc. Glob. Benefits Admin. Comm. v. Caesars Entm't Corp.*, 532 B.R. 259, 274 (E.D. Va. 2015).

    *ii.    Fair Trial in Each Venue*

38. With regard to the third factor, there is no reason to believe that Genever (US)'s creditors would not receive a fair trial in the Connecticut Bankruptcy Court. Indeed, other than Bravo Luck (which, as noted, is an entity allegedly owned by the Individual Debtor's son), no party in interest opposes transfer of venue to the Connecticut Bankruptcy Court. In addition, the Sales Officer also consents to the transfer of venue.

39.     Furthermore, because numerous creditors of the Individual Debtor did not receive actual or publication notice of the deadline to file claims in the chapter 11 case of Genever (US) to assert, for example *alter ego* claims, their claims against the Individual Debtor would, absent court relief, be structurally subordinated to the claims of the five creditors that filed proofs of claims in the Genever (US) Case.  If Genever (US) (and other entities owned by the Individual Debtor or his family members) are found to be *alter egos* of the Individual Debtor, the value of the assets belonging to (all of) these entities, including the Sherry-Netherland Apartment and the *Lady May*, should be collected by the Trustee to fund distributions to all of the Individual Debtor's legitimate creditors.   Such creditors should not be limited to the equity value, if any, that would remain at Genever (US) after satisfying the claims (to the extent allowed) of the five creditors that filed proofs of claim against Genever (US).  The Movants submit that, under these facts, the Connecticut Bankruptcy Court is best positioned to address the rights of all of the Individual Creditor's legitimate creditors.

iii.     *Interests of Either Forum in Having Controversies Decided Within Its Borders*

40.     The fourth factor looks to whether either forum has an interest in having the controversy decided within its borders.  Although Genever (US) is a New York limited liability company, it does not have any employees, conduct any business or provide any services in New York, aside from owning the Sherry-Netherland Apartment.  Furthermore, only five creditors have filed proofs of claim in the Genever (US) Case.  Importantly, other than Sherry-Netherland, none of these creditors appear to be located in New York.[22]  On the other hand, the Connecticut Bankruptcy Court has a strong interest in having controversies involving the Individual Debtor,

---

[22]   The Trustee understands that (a) the Individual Debtor's son resides in the United Kingdom, (b) Golden Spring is a Delaware entity, (c) PAX is an entity a Cayman Islands entity, and (d) Bravo Luck is a BVI entity.

including questions as to property of his estate, decided within its borders because of the pending Individual Debtor Case.

       *iv.*    *Enforceability of Judgment*

41.    The fifth factor contemplates whether the enforceability of any judgment would be affected by the transfer. There is no reason to believe that a judgment by the Connecticut Bankruptcy Court would be any less enforceable than a judgment by this Court.

       *v.*    *Disturbing the Original Forum*

42.    The sixth factor looks to whether the original choice of forum should be disturbed. This factor weighs in favor of having the Genever (US) Case transferred. In analyzing this factor, courts look at whether the debtor's interests will be harmed or whether the estate will suffer a diminution in value if venue is transferred. *See In re Certa Dose, Inc*., No. 21-11045 (LGB), 2021 WL 5177376, at *15 (Bankr. S.D.N.Y. Nov. 4, 2021) (citing *Dunmore*, 380 B.R. at 675). Considering that it is the Debtor, *i.e.*, Genever (US), that is requesting the transfer of venue, its choice of forum should be given deference. In any event, transfer of the Genever (US) Case to the Connecticut Bankruptcy Court will not cause Genever (US)'s estate to suffer a diminution in value. Again, to be clear, neither Genever (US) nor the Trustee have any intention of stopping the sale process of the Sherry-Netherland Apartment, subject to their duty to maximize value for creditors.

    B.    <u>Convenience of Parties</u>

43.    In considering the convenience of the parties under section 1412, courts commonly analyze the following factors:

> (1) the proximity of creditors of every kind to the Court; (2) the proximity of the debtor to the Court; (3) the proximity of the witnesses necessary to the administration of the estate; (4) the location of the

> assets; (5) the economic administration of the estate; and (6) the
> necessity for ancillary administration if liquidation should result.

*Dunmore*, 380 B.R. at 672; *In re Enron Corp.,* 274 B.R. 327, 343 (Bankr. S.D.N.Y. 2002). In

this case, these factors weigh in favor of transferring venue to the Connecticut Bankruptcy Court.

### i. *Proximity of Creditors*

44.     With respect to the first factor, proximity of creditors, courts "examine both the

number of creditors as well as the amount of claims held by such creditors." *In re Enron Corp.*,

274 B.R. at 345. As stated above, of the five creditors that filed proofs of claim in the Genever

(US) Case, only Sherry-Netherland is located in New York. The remaining creditors appear to

be located outside of New York. Transferring this case to a neighboring state does not cause any

inconvenience to these five creditors. This factor favors transfer or is neutral.

### ii. *Proximity of the Debtor*

45.     This factor also favors transfer. Genever (US) is owned and controlled by the

estate of the Individual Debtor, whose case is pending in the Connecticut Bankruptcy Court, and

the Trustee has the authority to direct Genever (US) in its chapter 11 case by virtue of the

Corporate Governance Order. Thus, the Connecticut Bankruptcy Court already has a strong

nexus to Genever (US).

### iii. *Proximity of Witnesses*

46.     The third factor examines the proximity of the witnesses. Many of the witnesses

that will be required to participate in the litigation of ownership issues will likely be from outside

of New York. As such, the general proximity from this Court compared to the Connecticut

Bankruptcy Court is insignificant. Moreover, because the cases arose from the same

circumstances and there is a significant overlap of legal and factual issues, these witnesses will

be required to appear in the Connecticut Bankruptcy Court for the Individual Debtor Case

regardless of whether transfer is approved.  Rather than make the witnesses waste time and resources appearing before both courts, they should only need to appear before one court, namely the Connecticut Bankruptcy Court.  This factor weighs in favor of transfer.

### iv.    *Location of Assets*

47.    The fourth factor considers the location of assets.  As discussed above, although Genever (US)'s main asset—the Sherry-Netherland Apartment—is located in New York, Genever (US) is owned by Genever (BVI), which is located in the British Virgin Islands.

48.    Importantly, courts have also noted that the location factor "takes on less compelling significance" given the "relative proximity of the two jurisdictions in question." *In re Red Door Prop. Mgmt. LLC*, No. 11-02704-KMS, 2011 WL 5592910, at *7 (Bankr. S.D. Miss. Nov. 16, 2011) (citing *In re Laguardia Assocs, L.P.,* 316 B.R. 832, 839-40 (Bankr. E.D. Pa. 2004)).  This is obviously the case here with New York and Connecticut sharing a common border.  Accordingly, the Movants submit that the Genever (US) Case can be effectively administered by the Connecticut Bankruptcy Court.

### v.    *Economic and Efficient Administration*

49.    The fifth factor focuses on the economic administration of the estate. "Among the six factors, courts have often given the most weight to the economic and efficient administration of the estate." *In re Asset Resolution LLC*, No. 09–16142 (AJG), 2009 WL 4505944, at *2 (Bankr. S.D.N.Y. Nov. 24, 2009).  Economic and efficient administration of the estate weighs heavily in favor of transfer for the reasons state above in Part II.A.i above.

### vi.    *Need for Ancillary Administration if Liquidation Results*

50.    The sixth factor looks to the necessity for ancillary administration if liquidation results.  The Connecticut Bankruptcy Court is already familiar with the Sherry-Netherland

Apartment and the surrounding issues.  There is no reason to believe it would be any less capable than this Court in handling ancillary liquidation proceedings.

### III.  Genever Settlement Agreement Does Not Preclude Transfer of Venue to Connecticut Bankruptcy Court

51.     Finally, Movants submit that the Genever Settlement Agreement does not preclude the transfer of the Genever (US) Case to the Connecticut Bankruptcy Court.  In fact, the Genever Settlement Agreement provides nothing of that sort.  Indeed, it only provides that "[n]othing herein shall be construed as an acknowledgement of the appropriate forum outside the bankruptcy court to address any such issues, with all Parties' rights expressly reserved."[23]  This is a mere reservation of rights, nothing more.

52.     Nothing in the Genever Settlement Agreement specifies in what forum or venue substantive disputes related to the Sherry-Netherland Apartment have to be resolved.  Nor does the Genever Settlement Agreement address the eventual distribution of proceeds of the sale of the Sherry-Netherland Apartment to creditors of Genever (US) and creditors of the Individual Debtor.

53.     While the Genever Settlement Agreement references PAX's litigation in BVI court against Genever BVI, Bravo Luck, the Individual Debtor, and Qiang Guo seeking to enforce the judgment in PAX's NY state court action, the Genever Settlement Agreement provides that nothing therein "shall prejudice the rights of any party, including Bravo Luck and PAX to proceed with the BVI Litigation" and that nothing in the Genever Settlement Agreement "shall prejudice the rights of any Party, including Bravo Luck and PAX, from proceeding with any and all claims . . . in BVI, State Court, or otherwise, and Bravo Luck and PAX reserve all

---

[23]    Second Amended and Restated Settlement Agreement [Docket No. 131] § 7.a.

rights to oppose such claims in the applicable forum."[24]  Obviously, at the time the parties

entered into the Genever Settlement Agreement in February 2021, the Individual Debtor had not

yet commenced its own chapter 11 case in the Connecticut Bankruptcy Court, and, thus, the

parties could not have included a reference to the Connecticut Bankruptcy Court in the

settlement agreement.  However, section 7.b of the Genever Settlement Agreement explicitly

recognizes that nothing therein prejudices the parties' rights from proceeding in a forum **other**

**than** BVI or the New York state court.

**NO PRIOR REQUEST**

54.      No prior motion for the relief requested herein has been made to this Court or any

other court.

**CONCLUSION**

55.      For all these reasons, the Movants respectfully request that, in the interests of

justice and for convenience of the parties, the Court transfer venue of the Genever (US) Case to

the Connecticut Bankruptcy Court.

[*Remainder of page intentionally left blank.*]

---

[24]   *Id.* § 7.b.

WHEREFORE, the Movants respectfully request entry of the Proposed Order

(a) granting the relief requested herein and (b) granting such other relief as is just and proper.


Dated: September 30, 2022               By: */s/ Kevin J. Nash*
      New York, New York             Kevin J. Nash, Esq.
                                                GOLDBERG WEPRIN FINKEL
                                              GOLDSTEIN LLP
                                                1501 Broadway, 22nd Floor
                                                New York, New York 10036
                                                (212) 221-5700

                                              *Counsel for Debtor*


Dated: September 30, 2022
      New York, New York             By: */s/ Luc A. Despins*
                                                Luc A. Despins, Esq.
                                              G. Alexander Bongartz, Esq.
                                              PAUL HASTINGS LLP
                                              200 Park Avenue
                                              New York, New York 10166
                                              (212) 318-6079

                                              *Counsel for Chapter 11 Trustee for Estate*
                                              *of Ho Wan Kwok Trustee*