GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP
Kevin J. Nash, Esq.
1501 Broadway, 22nd Floor
New York, New York 10036
(212) 221-5700

*Counsel for Genever Holdings LLC,*
*Debtor and Debtor-in-Possession*

- and -

PAUL HASTINGS LLP
Luc A. Despins, Esq.
G. Alexander Bongartz, Esq.
200 Park Avenue
New York, New York 10166
(212) 318-6079

*Counsel for Chapter 11 Trustee for*
*Estate of Ho Wan Kwok*


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
                                                       :
In re:                                                 :    Chapter 11
                                                       :
GENEVER HOLDINGS LLC,                                  :    Case No. 20-12411 (JLG)
                                                       :
                              Debtor.                  :
                                                       :
---------------------------------------------------------x

**REPLY IN SUPPORT OF JOINT MOTION OF (A) GENEVER HOLDINGS LLC AND
(B) LUC A. DESPINS AS CHAPTER 11 TRUSTEE FOR ESTATE OF HO WAN KWOK
TO TRANSFER, PURSUANT TO 28 U.S.C. §§ 1408 AND 1412 AND BANKRUPTCY
RULE 1014(a),  VENUE OF CHAPTER 11 CASE OF GENEVER HOLDINGS LLC TO
<u>BANKRUPTCY COURT FOR DISTRICT OF CONNECTICUT</u>**

Genever Holdings LLC (the "<u>Debtor</u>" or "<u>Genever (US)</u>") and Luc A. Despins (the

"<u>Trustee</u>" together with the Debtor, the "<u>Movants</u>"), in his capacity as trustee for the estate of Ho

Wan Kwok (the "<u>Individual Debtor</u>" or "<u>Kwok</u>") in the chapter 11 case *In re Ho Wan Kwok*, No.

22-50073 (JAM) (Bankr. D. Conn.) (the "Individual Debtor Case"), respectfully submit this reply

(the "Reply") (a) in support of the *Joint Motion of (A) Genever Holdings LLC and (B) Luc A.*

*Despins as Chapter 11 Trustee for Estate of Ho Wan Kwok to Transfer, Pursuant to 28 U.S.C. §§*

*1408 and 1412 and Bankruptcy Rule 1014(a), Venue of Chapter 11 Case of Genever Holdings*

*LLC to Bankruptcy Court for District of Connecticut* [Docket No. 211] (the "Motion")[1] and (b) in

response to the objection to the Motion filed by Bravo Luck Limited ("Bravo Luck") on October

14, 2022 [Docket No. 215] (the "Objection").  In support of the Reply, the Movants respectfully

state as follows:

## REPLY

1.      With the exception of Bravo Luck, no party in interest opposes the transfer of venue

of this case.  Bravo Luck's lone opposition should perhaps not be surprising.  Bravo Luck is

allegedly owned by the Individual Debtor's son and, as detailed in the Trustee's and Genever

(US)'s recently filed adversary proceedings against Bravo Luck, part of the Individual Debtor's

overall strategy of hiding assets from his creditors in a maze of corporate shell companies

purportedly owned by close family members, employees or trusted business associates.  Indeed,

Bravo Luck's Objection is not truly concerned that transferring venue of this case to the

Bankruptcy Court adversely affects judicial economy and the convenience of the parties.  To the

contrary, Bravo Luck takes the position that the question as to who is entitled to share in the value

of the Sherry Netherland Apartment should be divided up between three different courts: (1) the

BVI court should determine Bravo Luck's ownership interest in the Sherry Netherland Apartment

and the validity of the Purported Trust Agreement (an agreement governed by U.S. law); (2) this

---

[1]      Capitalized terms used but not otherwise defined herein have the meanings set forth in the Motion.

Court should resolve the distribution of proceeds to Genever (US)'s creditors; and (3) the

Connecticut Bankruptcy Court should resolve the distribution of proceeds (if any) as it relates to

the Individual Debtor's creditors.  This approach is inefficient, imposes unnecessary burdens on

the parties and the courts, and will only further delay resolution of the ownership question and

distribution to creditors.  The principal beneficiaries of Bravo Luck's piecemeal approach are, of

course, the Individual Debtor and Bravo Luck, as it only further delays the resolution of ownership

questions and distribution to creditors.

2.        For all the reasons already detailed in the Motion, and as further detailed below, the

interests of justice and convenience of the parties are best served by transferring venue of Genever

(US)'s chapter 11 case to the Connecticut Bankruptcy Court, including to resolve in a single forum

the overlapping legal and factual issues as to what assets, including the Sherry Netherland

Apartment, are property of the Individual Debtor's estate.  In furtherance of this objective, the

parent of Genever (US), *i.e.*, Genever Holdings Corporation ("Genever (BVI)"), also recently

commenced its own chapter 11 case in the Connecticut Bankruptcy Court, Case No. 22-50542

(JAM), so that, if and when the Motion is granted, all parties to the Purported Trust Agreement

with Bravo Luck, *i.e.*, the Individual Debtor, Genever (BVI), and Genever (US), are before the

Connecticut Bankruptcy Court.  Accordingly, the Movants submit that Bravo Luck's Objection

should be overruled, and the Motion be granted.

**I.      Genever Settlement Agreement Does Not Require that Ownership Dispute With
         Respect to Sherry Netherland Apartment Be Decided as Part of BVI Litigation**

3.        Bravo Luck's principal argument in opposition to the Motion is that it would be

more efficient for this Court (as opposed to the Connecticut Bankruptcy Court) to resolve the

parties' dispute regarding the interpretation of section 7(b) of the Genever Settlement Agreement

given that this Court approved the settlement.  *See* Objection ¶¶ 6, 14.  According to Bravo Luck,

3

section 7(b) of the Genever Settlement Agreement reflects the parties' "understanding" that the

question of the ownership interests in the Sherry Netherland Apartment should be resolved as

part of the litigation currently pending in the courts of the British Virgin Islands (the "BVI

Litigation").  *See id.* ¶ 13.  However, contrary to Bravo Luck's assertion, section 7(b) is clear and

unambiguous in that ***it does not impose a requirement that the ownership dispute be decided in***

***the BVI courts***.[2]  This Court is in no better position than the Connecticut Bankruptcy Court to

interpret the clear and unambiguous language in section 7(b), nor does this Court have any

unique insight into this matter of contract interpretation.

4.      In particular, section 7(b) of the Genever Settlement Agreement provides that

nothing in the settlement:

> shall prejudice the rights of any party, including Bravo Luck and PAX to
> proceed with the BVI Litigation, provided that PAX, Bravo Luck, Kwok,
> Guo or any of his or its affiliates reserve the right to assert claims in the
> Bankruptcy Court relating to its status as a creditor of the Debtor, and
> PAX reserves all rights to oppose such claims on any grounds.  In
> addition, notwithstanding anything contained herein to the contrary,
> nothing in this Agreement shall prejudice the rights of any Party,
> including Bravo Luck and PAX, from proceeding with any and all claims,
> if any, against anyone, including Bravo Luck, Kwok, Guo, or any of his
> or its affiliates, and PAX or any of its affiliates, in BVI, State Court, or
> otherwise, and Bravo Luck and PAX reserve all rights to oppose such
> claims in the applicable forum.

Genever Settlement Agreement ¶ 7(b).  This provision is a reservation of rights, nothing more.  If

the parties had intended to memorialize an agreement that the ownership dispute must be resolved

through the BVI Litigation, it would have been very easy to say so; however, the Genever

---

[2]    For that reason it is also irrelevant that, as Bravo Luck argues, the Trustee was not involved in this case at the
       time the Genever Settlement Agreement was negotiated.

Settlement Agreement contains no such language.[3]  Given that section 7(b) contains no agreement to that effect, Genever (US) also acted well within its rights when it recently commenced an adversary proceeding against Bravo Luck in this Court,[4] Adv. Proc. No. 22-01157 (JLG) (the "<u>Bravo Luck Adversary Proceeding</u>"), challenging Bravo Luck's supposed equitable ownership interest in the Sherry Netherland Apartment under the Purported Trust Agreement.[5]

5.      Seeking to inject ambiguity into section 7(b), Bravo Luck argues that certain statements made by Genever (US) in other documents—namely, Genever (US)'s motion to approve the Genever Settlement Approval [Docket No. 62] (the "<u>Settlement Approval Motion</u>") and the *Debtor's Liquidating Plan of Reorganization* [Docket No. 164] (the "<u>Proposed Plan</u>")—indicate an understanding that the ownership dispute would be resolved through the BVI Litigation.  *See* Objection ¶ 14.  However, where the operative document (*i.e.*, the Genever Settlement Agreement) is clear and unambiguous on its face, there is no basis to look to statements made by Genever (US) in the Settlement Approval Motion or the Proposed Plan.  In fact, the Genever Settlement Agreement explicitly provides that it "constitutes the entire agreement and understanding of the Parties," Genever Settlement Agreement § 21, and that "[t]o the extent there is [an] inconsistency between the terms of this Settlement Agreement, the Motion, the Engagement Letter and the Order approving the Settlement Agreement, the terms of this Settlement Agreement

---

[3]    Nor is there any merit to Bravo Luck's contorted argument that the second sentence of section 7(b) somehow "was intended to not limit any *other claims* that any 'Party' . . . may have against anyone to any particular forum." Objection ¶ 13 (emphasis in original).  Section 7(b) does not refer to any "other" claims.

[4]    As noted in Genever (US)'s complaint, that adversary proceeding was commenced out of an abundance of caution because the two-year statute of limitation which may govern some of the claims asserted in the complaint expired on October 12, 2022.  Obviously, this adversary proceeding would be transferred to the Connecticut Bankruptcy Court as part of Genever (US)'s chapter 11 case if this Court grants the Motion.

[5]    Concurrently with the filing of the Bravo Luck Adversary Proceeding, the Trustee also filed a similar complaint against Bravo Luck in the Individual Debtor's chapter 11 case.  *See* Complaint, *Despins v. Bravo Luck Limited*, Adv. Pro. 22-05027 (Bankr. D. Conn. Oct. 11, 2022) [Docket No. 1].

shall govern." *Id.* § 27.F.  In any event, the statements relied upon by Bravo Luck suggest, at most, that the ownership dispute *may* be resolved through the BVI Litigation, not that the parties reached an agreement that it would have to be resolved though that litigation.[6]

6.       For all these reasons, the Court should reject Bravo Luck argument that this Court should retain this chapter 11 case because it is best positioned to interpret section 7(b) of the Genever Settlement Agreement.  There is simply no efficiency to be gained by having this Court, as opposed to the Connecticut Bankruptcy Court, interpret clear and unambiguous provisions in the Genever Settlement Agreement.

## II.       Length of Pending BVI Litigation Is Not Relevant, and, In any Event, Questions as to Property of the Estate Should Be Decided by a U.S. Bankruptcy Court

7.       Bravo Luck also argues that it would be more efficient for the ownership issues to be decided as part of the BVI Litigation because that litigation has been pending for two years. *See* Objection ¶ 16.  Setting aside for a moment that, over those two years, no practical progress has been made in that litigation on the substantive issues, the question as to whether the ownership issues should be litigated in the BVI courts is not before this Court.  The Motion only asks this Court to decide whether this chapter 11 case should be transferred to the Connecticut Bankruptcy Court, not whether the ownership dispute should be resolved as part of the BVI Litigation.  The latter question is separate from the question of what venue is proper for this chapter 11 case.

8.       In any event, this Court should reject Bravo Luck's contention that the BVI Litigation is the appropriate forum to address the ownership issues because of the supposed progress already made in that litigation.  To date, no substantive rulings have been issued in the BVI Litigation, and, moreover, that litigation has been effectively inactive for several months.

---

[6]     For example, the language Bravo Luck quotes from the Proposed Plan merely states that "[i]t is contemplated that the Ownership Dispute will be determined outside of the Bankruptcy Court . . . ."  Proposed Plan, at 4.

More fundamentally, the BVI Litigation is simply not the proper vehicle to address questions as to what assets constitute property of the Individual Debtor's and Genever (US)'s estates—and this is especially true here where the Purported Trust Agreement (which is the basis of Bravo Luck's equitable ownership claims) is governed by U.S. law.  Bravo Luck offers no explanation of why the BVI courts would be better positioned to interpret a U.S. law governed document than a U.S. bankruptcy court.

9.      Furthermore, while the Trustee's investigation is still ongoing, it is clear that, as the NY State Court found, the Individual Debtor has built a maze of corporate shell companies purportedly owned by close family members, employees, and/or trusted business associates, all in an effort to hide assets from his creditors.  To protect the rights of all creditors of the Individual Debtor and Genever (US), it is paramount that ownership issues be decided in a holistic, consistent, and efficient manner in a U.S. bankruptcy court.  The BVI Litigation is not the forum to accomplish this.  Indeed, Genever (US) is not even a party to the BVI Litigation.

10.     There is also no basis for Bravo Luck's unsupported allegation that the Trustee is engaged in "impermissible forum shopping" by commencing litigation in the Connecticut Bankruptcy Court challenging Bravo Luck's equitable ownership claim to the Sherry Netherland Apartment under the Purported Trust Agreement. *See* Objection ¶ 16.  For one, the adversary proceedings challenging the Purported Trust Agreement assert causes of action that can only be brought in bankruptcy court, such as avoidance actions.  These causes of action could not even be could not even be asserted by the Trustee in the BVI courts.  Moreover, as noted above, the Genever Settlement Agreement does not dictate the forum in which the ownership issues related to the Sherry Netherland Apartment are to be resolved.  In any event, the Trustee is not a party to the Genever Settlement Agreement.

11.     Finally, the fact that the Trustee may be capable of litigating the ownership issues in the BVI courts is irrelevant. *See id.* The relevant question here is not one of capacity, but efficiency and judicial economy. Having this Court, the Connecticut Bankruptcy Court, and the BVI courts adjudicate interrelated issues surrounding ownership of the Sherry Netherland Apartment clearly does not serve judicial economy.

## III.     Failure to Transfer Venue Would Prejudice Creditors of Individual Debtor

12.     The Court should also reject Bravo Luck's contention that the Individual Debtor's creditors[7] are not prejudiced if the Genever (US) case remains in this Court. *See id.* ¶ 17. That is plainly not the case. As the Motion explains, the Individual Debtor's creditors may be entitled to share in the value of the Sherry Netherland Apartment on the basis that Genever (US) is an *alter ego* of the Individual Debtor. However, because they did not receive notice of the bar date in this chapter 11 case, their recovery would be limited to the equity value (if any) of Genever (US) after all of Genever (US)'s creditors have been paid. Effectively, these creditors would be structurally subordinated to the (very few) Genever (US) creditors that received notice of the bar date and filed a proof of claim.

13.     To remedy this unfairness, this chapter 11 case should be transferred to the Connecticut Bankruptcy Court so that all creditors of the Individual Debtor be given the opportunity to assert claims against the Individual Debtor and with respect to all his assets (including the Sherry Netherland Apartment).

---

[7]     While it is technically true that no claims have yet been allowed in the Individual Debtor's case, Bravo Luck's assertion that "there may be no creditors with valid claims against the Individual Debtor" is mere wishful thinking. *See* Objection ¶ 17. In fact, the Individual Debtor scheduled more than 100 creditors (with disputed claims) and, even though no bar date has yet been set in the Individual Debtor's case, 15 creditors have already filed proofs of claim.

**IV.      Duration of This Chapter 11 Case Does Not Weigh Against Transfer of Venue**

14.      Bravo Luck also attaches great weight to the fact that this chapter 11 case was filed first and has now been pending for two years.  *See* Objection ¶¶ 10, 21, 31.  However, there is no legal significance to the fact that Genever (US) filed its chapter 11 case before the Individual Debtor's case—other than that this Court must decide the request to transfer venue.  *See* Bankruptcy Rule 1014(b).

15.      Moreover, this chapter 11 case remains, unfortunately, far from confirmation of a chapter 11 plan.  Two years into the case, the ownership dispute with respect to the Sherry Netherland Apartment remains unresolved.  Bravo Luck had every opportunity over the last two years to seek a ruling from this Court on its ownership rights, but it has chosen not to do so.  Nor have any claims been allowed to date (and, as noted, it remains unresolved whether creditors of the Individual Debtor will be allowed to assert claims in this chapter 11 case).  Without knowing what assets are property of the estate and what claims are properly asserted in this chapter 11 case, it is simply impossible to confirm a chapter 11 plan.

**V.       Transferring Venue to Connecticut Bankruptcy Court Does Not Inject Extraneous Issues**

16.      There is also no basis for Bravo Luck's assertion that transferring this case to the Connecticut Bankruptcy Court would allow the Trustee to inject "miscellaneous, unrelated conjecture" into this case.  *See* Objection ¶ 18.  Bravo Luck cannot avoid the fact that there are numerous overlapping legal and factual issues between this case and the Individual Debtor's chapter 11 case, including the ownership disputes related to the Sherry Netherland Apartment and the *Lady May* yacht.  Indeed, it is for that very reason that this case should be transferred to the court presiding over the Individual Debtor's chapter 11 case.  Not only do both disputes involve the same kind of shell game—*i.e.*, hiding assets from the Individual Debtor's creditors through

shell companies owned by close family members—but in both instances it appears that the purchase price for the underlying assets was funded by the Individual Debtor through Bravo Luck. In any event, to the extent that Bravo Luck is concerned about extraneous issues being injected, those concerns can be addressed by the Connecticut Bankruptcy Court.

**VI.** **Transfer of Venue to Connecticut Bankruptcy Court Is Most Convenient for the Parties**

17.     Transferring venue of this chapter 11 case to the Connecticut Bankruptcy Court is also more convenient for all parties, notwithstanding Bravo Luck's argument to the contrary. For example, Bravo Luck claims that transferring venue would be inconvenient for the Sherry-Netherland, an entity located in New York and one of Genever (US)'s creditors. *See* Objection ¶ 24. However, the Sherry-Netherland is *not* objecting to the transfer of venue to the Connecticut Bankruptcy Court—nor are any other creditors for that matter (except Bravo Luck).

18.     Moreover, while Bravo Luck recognizes that some of the witnesses are involved in both the Genever (US) case and Individual Debtor Case, it claims that many of the witnesses would likely fly into New York, would incur less expense in traveling to this Court, and would need to appear before the Connecticut Bankruptcy Court on different dates if the Genever (US) case were transferred. *See* Objection ¶¶ 26, 27. However, Bravo Luck ignores that the witnesses will need to appear before the Connecticut Bankruptcy Court *regardless* of whether the Genever (US) case is transferred given the significant overlap of legal and factual issues between the two cases. Transferring the case to Connecticut would eliminate the need for such witnesses to also appear in the Southern District of New York.[8]

---

[8]   Many of the witnesses are likely close family members, such as the Individual Debtor's son and daughter, and they can stay at their father's house in Greenwich, Connecticut.

19.     Furthermore, even though Genever (US)'s only major asset, the Sherry Netherland Apartment, is located in New York, this should not control here.  For one, the sale process is already underway under the auspices of the Sales Officer—and the Movants have no intention of stopping the sale process of the Sherry Netherland Apartment, subject to their duty to maximize value for creditors.  There is no inconvenience in having that sale process be supervised by the Connecticut Bankruptcy Court.  Nor is the sale of the Sherry Netherland Apartment a complex real estate transaction that will require particular expertise in New York law that only this Court could supply.  Far more significant is the question of who is entitled to share in proceeds from the sale of the Sherry Netherland Apartment, and the Connecticut Bankruptcy Court is as capable as this Court to address that question.

20.     Finally, contrary to Bravo Luck's assertion, transferring venue to the Connecticut Bankruptcy Court will not "draw Genever (US) and its creditors into the chaos" of the Individual Debtor Case.  *See* Objection ¶ 32.  Not only is there no "chaos" in the Individual Debtor's chapter 11 case, but most of the Genever (US) creditors (such as PAX, Bravo Luck, Golden Spring, and the Individual Debtor's son) and are already involved, in some form or another, in the Individual Debtor's chapter 11 case.

**VII.   Venue of This Chapter 11 Case Is Proper in Connecticut Bankruptcy Court**

21.     Finally, Bravo Luck attempts to cast doubt on whether venue of this chapter 11 case is proper in Connecticut.  It cannot be disputed, however, that, prior to the appointment of the Trustee, the Individual Debtor owned all of the shares in Genever (BVI) and that Genever (BVI) wholly owns Genever (US).  In fact, this ownership structure was the basis for the Corporate Governance Order and the Individual Debtor transferring all his shares in Genever (BVI) to the

11

Trustee.  Because Genever (US) is an affiliate of the Individual Debtor's estate, venue is proper in

the Connecticut Bankruptcy Court under 28 U.S.C. § 1408(2).[9]

## **CONCLUSION**

22.     For all these reasons, as well as the reasons set forth in the Motion, the Movants

submits that the interests of justice and convenience of the parties would best be served if venue

of this chapter 11 case is transferred to the Connecticut Bankruptcy Court.

[*Remainder of page intentionally left blank.*]

---

[9]     The transfer of the Genever (BVI) shares to the Trustee does not affect affiliate status for purposes of the venue
rules. *See In re BLX Group, Inc.*, No. 09-61893-11, 2009 WL 3340162 (Bankr. D. Mont. Oct. 15, 2022) (holding
that, for purposes of section 28 U.S.C. § 1408(2), individual debtor for which trustee had been appointed was
"affiliate" of corporate debtor wholly owned by individual debtor).

WHEREFORE, the Movants respectfully request entry of the Proposed Order (a) granting

the relief requested herein and (b) granting such other relief as is just and proper.

Dated: October 18, 2022                         By: */s/ Kevin J. Nash*
       New York, New York                            Kevin J. Nash, Esq.
                                                     GOLDBERG WEPRIN FINKEL
                                                     GOLDSTEIN LLP
                                                     1501 Broadway, 22nd Floor
                                                     New York, New York 10036
                                                     (212) 221-5700

                                                     *Counsel for Genever Holdings Corporation,*
                                                     *Debtor and Debtor-in-Possession*

Dated: October 18, 2022
       New York, New York                       By: */s/ Luc A. Despins*
                                                     Luc A. Despins, Esq.
                                                     G. Alexander Bongartz, Esq.
                                                     PAUL HASTINGS LLP
                                                     200 Park Avenue
                                                     New York, New York 10166
                                                     (212) 318-6079

                                                     *Counsel for Chapter 11 Trustee for Estate*
                                                     *of Ho Wan Kwok Trustee*