**UNITED STATES BANKRUPTCY COURT**                          **NOT FOR PUBLICATION**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x

*In re:*                                                       :          Case No. 20-12411 (JLG)

                                                               :          Chapter 11

Genever Holdings LLC, *et al.*,                                :

                                                               :

                                        Debtor.[1]              :

------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER GRANTING THE JOINT MOTION OF (A) GENEVER HOLDINGS LLC AND (B) LUC A. DESPINS AS CHAPTER 11 TRUSTEE FOR ESTATE OF HO WAN KWOK TO TRANSFER, PURSUANT TO 28 U.S.C. §§ 1408 AND 1412 AND BANKRUPTCY RULE 1014(A), VENUE OF CHAPTER 11 CASE OF GENEVER HOLDINGS LLC TO BANKRUPTCY COURT FOR DISTRICT OF CONNECTICUT

**A P P E A R A N C E S :**

GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP
*Counsel for Debtor*
1501 Broadway, 22nd Floor
New York, New York 10036
By:    Kevin Nash, Esq.

PAUL HASTINGS LLP
*Counsel for Chapter 11 Trustee for Estate of Ho Wan Kwok Trustee*
200 Park Avenue
New York, New York 10166
By:    Luc A. Despins, Esq.
       G. Alexander Bongartz, Esq.

TROUTMAN PEPPER HAMILTON SANDERS LLP
*Counsel for Bravo Luck Limited*
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
By:    Francis J. Lawall, Esq.

---

[1]    The last four digits of Genever Holdings LLC's tax identification number are 8202. The location of Genever Holdings LLC's service address for purposes of this Chapter 11 Case is: 781 5th Ave, Apt 1801, New York, NY 10022-5520.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction

The matter before the Court is the joint motion of Genever Holdings LLC (the "Debtor" or "Genever (US)") and Luc A. Despins (the "Trustee" together with the Debtor, the "Movants"), in his capacity as trustee for the estate of Ho Wan Kwok (the "Individual Debtor" or "Kwok") in the chapter 11 case *In re Ho Wan Kwok*, No. 22-50073 (JAM) (Bankr. D. Conn.) (the "Individual Debtor Case") pursuant to 28 U.S.C. §§ 1408 and 1412 and Rule 1014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order transferring the venue of this chapter 11 case (the "Genever (US) Case") to the United States Bankruptcy Court for the District of Connecticut (the "Connecticut Bankruptcy Court") (the "Motion").[2] Bravo Luck Limited ("Bravo Luck") has filed a claim in the Genever (US) Case. It filed the only objection to the Motion (the "Objection").[3] The Movants filed a reply to the Objection and in further support of the Motion (the "Reply").[4]

For the reasons set forth herein, the Court GRANTS the Motion.

---

[2]    *Joint Motion of (A) Genever Holdings LLC and (B) Luc A. Despins as Chapter 11 Trustee for Estate of Ho Wan Kwok to Transfer, Pursuant to 28 U.S.C. §§ 1408 and 1412 and Bankruptcy Rule 1014(a), Venue of Chapter 11 Case of Genever Holdings LLC to Bankruptcy Court for District of Connecticut*, NY ECF No. 211. Hereinafter, "NY ECF No.__" refers to documents filed on the electronic docket in this chapter 11 case.

[3]    *Objection of Bravo Luck Limited to Joint Motion of (A) Genever Holdings LLC and (B) Luc A. Despins as Chapter 11 Trustee for Estate of Ho Wan Kwok to Transfer, Pursuant to 28 U.S.C. §§ 1408 and 1412 and Bankruptcy Rule 1014(a), Venue of Chapter 11 Case of Genever Holdings LLC to Bankruptcy Court for District of Connecticut*, NY ECF No. 215.

[4]    *Reply in Support of Joint Motion of (A) Genever Holdings LLC and (B) Luc A. Despins as Chapter 11 Trustee for Estate of Ho Wan Kwok to Transfer, Pursuant to 28 U.S.C. §§ 1408 and 1412 and Bankruptcy Rule 1014(a), Venue of Chapter 11 Case of Genever Holdings LLC to Bankruptcy Court for District of Connecticut*, NY ECF No. 220.

**Jurisdiction**

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334

and the *Amended Standing Order of Reference* dated January 31, 2012 (Preska, C.J.). This is a core

proceeding pursuant to 28 U.S.C. § 157(b).

**Background**

**The New York Supreme Court Litigation**

On April 18, 2017, Pacific Alliance Asia Opportunity Fund L.P. ("PAX") brought an action

("NY State Court Action") against the Individual Debtor in the New York State Supreme Court

("NY State Court"). On September 15, 2020, the NY State Court granted PAX's motion for

summary judgment on its breach of contract claim against the Individual Debtor in that lawsuit[5]

and awarded PAX a judgment in the amount of $116,402,019.57.[6]

On September 30, 2020, at the request of PAX, the NY State Court issued a temporary

restraining order preventing the Individual Debtor "from making or causing any sale, assignment,

transfer or interference with any property in which he has an interest . . . ."[7] On October 15, 2020,

the NY State Court entered a restraining order (the "Restraining Order") specifying that "Mr.

Kwok and/or the registered owners of (1) the Residence at the Sherry Netherland Hotel and (2) the

yacht, 'the Lady May' are restrained from making or causing any sale, assignment, transfer, or

---

[5]   *Decision and Order on Motion*, NYS ECF No. 549. Hereinafter, "NYS ECF No.__" refers to documents filed
on the electronic docket in the case of *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan*, No.
652077/2017 in the Supreme Court of the State of New York.

[6]   *Judgment*, NYS ECF No. 716.

[7]   *Decision and Order on Motion*, NYS ECF No. 591 at 1.

interference with those assets."[8] At the time the NY State Court entered the Restraining Order in October 2020, the *Lady May* had left the jurisdiction and was heading to the Bahamas (and later Europe).[9] On March 17, 2021, the NY State Court issued a conditional order of civil contempt which provided that if Kwok failed to return the *Lady May* to the jurisdiction of the NY State Court by May 31, 2021, he would be subject to a $500,000.00 fine for each day that the *Lady May* remained outside the jurisdiction of this Court.[10]

On February 9, 2022, following an evidentiary hearing to determine the ownership of the *Lady May*, the NY State Court entered the final order of civil contempt (a) finding that Kwok "beneficially owns and controls the Lady May" and (b) directing Kwok to pay contempt fines of $134 million within five business days for failure to return the Lady May.[11]

As discussed below, on February 15, 2022, Kwok commenced the Individual Debtor Case in the Connecticut Bankruptcy Court.

### Genever (US) Case

On October 12, 2020, Genever (US) filed its chapter 11 petition before this Court. No trustee or official committee of unsecured creditors has been appointed in the case. Genever (US)'s scheduled assets consist of the Residence at the Sherry-Netherland Hotel (the "Sherry-Netherland Apartment") in New York, New York, and a related security deposit for a total scheduled value of

---

[8]    *Decision and Order on Motion*, NYS ECF No. 630 at 1. The Lady May is a yacht registered in the name of HK International Funds Investments (USA) Limited, LLC ("HK USA"), an entity allegedly owned by Mei Guo, the Individual Debtor's daughter. *See* Motion ¶ 9.

[9]    *See Decision and Order on Motion*, NYS ECF No. 1181 at 5 ("Subsequent to this Court's September 30, 2020 restraining Order, in October 2020 the Lady May was sent to Florida and then the Bahamas for repairs and was subsequently dispatched to Italy in October 2021, purportedly at the direction of Golden Spring. Ms. Guo acknowledged that she was aware of both this Court's September 30, 2020 restraining Order and this Court's subsequent March 16, 2021 Order directing that the Lady May be returned to the Court's jurisdiction.").

[10]    *Decision and Order on Motion*, NYS ECF No. 728 at 2.

[11]    *Decision and Order on Motion*, NYS ECF No. 1181 at 4, 10.

approximately $73 million.[12] By order dated January 30, 2021,[13] the Court fixed March 10, 2021, as the general bar date for filing proofs of claim against Genever (US). Five creditors filed proofs of claim: The Sherry-Netherland, Inc. ("Sherry-Netherland"), PAX, Bravo Luck, Golden Spring (New York) Ltd., and Qiang Guo ("Guo"), the Individual Debtor's son.

On March 5, 2021, Bravo Luck filed its claim against the Debtor (the "Bravo Luck Proof of Claim").[14] In support of its claim, Bravo Luck represents, without limitation, that it is located in the British Virgin Islands ("BVI") and a BVI Business Corporation that is wholly owned by Guo. *See* BL Claim Addendum ¶ 1. Bravo Luck asserts that it paid $76,296,746.85 in connection with the Debtor's acquisition of the Sherry-Netherland Apartment. *Id.* ¶ 4. It contends that it entered into a trust agreement (the "Trust Agreement") with the Debtor, Kwok, and Genever Holdings Corporation ("Genever (BVI)") to make clear that Kwok, as the trustee, was holding the shares of the Debtor and Genever (BVI) and any assets held in their names, the income, profits, and dividends thereof (if any) in trust for Bravo Luck as the beneficial owner of the Debtor and Genever (BVI) and, thus, the Sherry-Netherland Apartment. *Id.* ¶ 2. In support of its claim, Bravo Luck asserts that

> [I]t is the beneficial owner of the Apartment with the Apartment being held in trust by Kwok and the [Debtor and Genever (BVI)] for Bravo Luck's benefit. Accordingly, Bravo Luck asserts that the Apartment and any proceeds from its sale are property of Bravo Luck—not property of the Debtor.
>
> If a court with jurisdiction over Bravo Luck determines that Bravo Luck does not own the Apartment by virtue of the Apartment being held in trust by Kwok and the [Debtor and Genever (BVI)] . . . Bravo Luck [alternatively] asserts a general unsecured claim against the Debtor in an amount of not less than $76,296,746.85

---

[12]   *Schedule A/B: Assets – Real and Personal Property (Official Form A/B)*, NY ECF No. 4 at 4.

[13]   *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, NY ECF No. 46.

[14]   *See Proof of Claim 4-1* at 1. The claim is supplemented by a Claim Addendum (the "BL Claim Addendum").

arising from its advancement of funds for the purchase of the Apartment and any other funds advanced to maintain the Apartment.

*Id.* ¶¶ 6-7.

As relevant to the Motion, Bravo Luck is party to certain ancillary actions in BVI (the "BVI Litigation") brought by PAX against non-debtor third parties, including, Genever (BVI), Bravo Luck, Kwok, and Guo seeking to enforce the NY Judgment, attacking the Trust Agreement as a fraud, and seeking a declaration that Bravo Luck is in any event Kwok's company, and to recover damages for conspiracy. PAX has obtained injunctive relief in support of these proceedings.[15] On January 14, 2021, Bravo Luck and Guo filed their Defense and Counterclaim in the BVI Litigation. The record reflects that the litigation has not progressed in a material way.

On February 26, 2021, PAX, Bravo Luck, and Genever (US) entered into that certain settlement agreement related to, with limitation, the marketing and sale of the Sherry-Netherland Apartment. On September 24, 2021, the parties executed an amended agreement (the "Genever Settlement Agreement"). On October 8, 2021, the Court approved the Genever Settlement Agreement.[16] In accordance with the terms of that agreement, Genever (US) hired Melanie Cyganowski, Esq. to act as Genever (US)'s sales officer (the "Sales Officer") to control and oversee the sale of the Sherry-Netherland Apartment. Paragraph 7 of the Genever Settlement Agreement addresses "Stay Relief, Maintenance, Fees and Other Terms." In part, it states

> a. Stay relief is granted to allow PAX to prosecute, and the Debtor to defend, the [NY State Court Action], with the stay to otherwise remain in place for all other purposes, including relating to enforcement or collection of any judgment entered against the Debtor in the [NY State Court Action], pending further order of the Bankruptcy Court upon further notice to all Parties. Nothing herein shall be

---

[15]    *See Pacific Alliance Asia Opportunity Fund L.P.'s Memorandum of Law In Support Of Motion To Modify The Automatic Stay to Proceed With State Court Litigation, And Related Relief*, NY ECF No. 13, ¶ 44 n.85.

[16]    *Order Granting Debtor's Second Renewed Motion to Approve the Revised Settlement Agreement*, NY ECF No. 141.

construed as an acknowledgment of the appropriate forum outside the bankruptcy court to address any such issues, with all Parties' rights expressly reserved.

b. Nothing herein shall prejudice the rights of any party, including Bravo Luck and PAX to proceed with the BVI Litigation, provided that PAX, Bravo Luck, Kwok, Guo or any of his or its affiliates reserve the right to assert claims in the Bankruptcy Court relating to its status as a creditor of the Debtor, and PAX reserves all rights to oppose such claims on any grounds. In addition, notwithstanding anything contained herein to the contrary, nothing in this Agreement shall prejudice the rights of any Party, including Bravo Luck and PAX, from proceeding with any and all claims, if any, against anyone, including Bravo Luck, Kwok, Guo, or any of his or its affiliates, and PAX or any of its affiliates, in BVI, State Court, or otherwise, and Bravo Luck and PAX reserve all rights to oppose such claims in the applicable forum.

Genever Settlement Agreement ¶ 7(a), (b).

On January 6, 2022, Genever (US) filed its Chapter 11 liquidating plan of reorganization (the "Plan")[17] and its disclosure statement pursuant to 11 U.S.C. § 1125 (the "Disclosure Statement").[18] In the Disclosure Statement, the Debtor explains that it

sought Chapter 11 relief on October 12, 2020 in the face of multiple court disputes relating primarily to the beneficial ownership of the [Sherry-Netherland Apartment] as between Bravo Luck Limited ("Bravo Luck") and Pacific Alliance Asian Opportunity Fund ("PAX"). The litigation is pending in the Supreme Court, New York County (Index No. 652077/2017) (the [NY State Court]) and in the Eastern Caribbean Supreme Court in the British Virgin Islands (Index. No. VIHCOM2020/0137) (the "BVI Court"). The litigation has been generally referred to as the "Ownership Dispute" throughout the Chapter 11 case, and is defined as such for the purposes of the Plan and this Disclosure Statement.

Disclosure Statement at 1-2. The Debtor says that "[i]n the face of the competing claims and multiple lawsuits, the Debtor sought Chapter 11 relief in order to be in a position to pursue a sale of the [Sherry-Netherland Apartment] . . . and monetize the asset." *Id.* at 2-3. The Debtor explains that "[d]uring the Chapter 11 case, [it] was able to reach a comprehensive global settlement with Bravo Luck and PAX . . . " and that the agreement is embodied in the Genever Settlement

---

[17]    *See Debtor's Liquidating Plan of Reorganization*, NY ECF No. 164.

[18]    *See Debtor's Disclosure Statement*, NY ECF No. 165.

Agreement. *Id.* at 3. It asserts that "[a]t its core, the [Genever Settlement Agreement] establishes a consensual framework for the sale of the [Sherry-Netherland Apartment] under the stewardship of Malanie L. Cyganowski as the Debtor's employee and duly appointed Sales Officer." *Id.* at 3. "Fundamentally, the Plan provides the mechanism to implement the [Genever Settlement Agreement] and sell the [Sherry-Netherland Apartment] pending resolution of the Ownership Dispute." *Id.*

A hearing with respect to the Disclosure Statement was originally scheduled to be held on February 15, 2022. However, at the Debtor's request, the Court adjourned the hearing several times, ultimately to September 27, 2022.[19] Prior to the scheduled September 27 hearing, counsel for Genever (US) informed the Court that the Debtor would join the Trustee in filing the Motion and, as such, the Debtor would "not expend its limited resources on its chapter 11 plan [Docket No. 164] at this time."[20]

On September 26, 2022, Bravo Luck filed its own Chapter 11 liquidating plan of reorganization[21] and disclosure statement.[22] In support of its plan, Bravo Luck claims that it "filed this Plan in essentially the same form as an amended version of the Debtor's Prior Plan that was circulated by the Debtor amongst parties in interest earlier this month."[23]

---

[19]    *Memorandum Endorsed Order signed on 8/12/2022 Re: Request for Adjournment*, NY ECF No. 201.

[20]    *Letter updating status in advance of September 27, 2022 conference*, NY ECF No. 204 at 3.

[21]    *Bravo Luck Limited's Liquidating Plan of Reorganization for Debtor Genever Holdings LLC*, NY ECF No. 206.

[22]    *Disclosure Statement for Bravo Luck Limited's Liquidating Plan of Reorganization for Debtor Genever Holdings LLC*, NY ECF No. 207.

[23]    *Bravo Luck Limited's Liquidating Plan of Reorganization for Debtor Genever Holdings LLC*, NY ECF No. 206 at 6.

**Individual Debtor Case**

On February 15, 2022, Kwok filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Connecticut Bankruptcy Court. On March 19, 2022, the United States Trustee filed a motion for an order directing appointment of an examiner or, in the alternative, directing the appointment of a chapter 11 trustee.[24] On June 15, 2022, the Connecticut Bankruptcy Court entered the Memorandum Decision directing the United States Trustee to appoint a chapter 11 trustee in the case.[25] Following entry of the Memorandum Decision, the United States Trustee selected Luc. A. Despins, Esq. as the Trustee. On July 8, 2022, the Connecticut Bankruptcy Court entered an order granting the appointment of Mr. Despins as the Trustee in the Individual Debtor Case.[26]

On August 10, 2022, the Connecticut Bankruptcy Court entered an order (the "Corporate Governance Order")[27] granting the Trustee's Corporate Governance Motion[28] and providing, among other things:

> [T]he Trustee holds all of the [Individual] Debtor's economic and governance rights, for the benefit of the Estate, with respect to all [Individual] Debtor-Controlled Entities, including, without limitation, Genever (BVI). For the

---

[24]  *United States Trustee's Motion for an Order Directing the Appointment of an Examiner or, in the Alternative, Motion for Order Directing the Appointment of a Chapter 11 Trustee*, CT ECF No. 102. Hereinafter, "CT ECF No.__" refers to documents filed on the electronic docket in the Chapter 11 Case *In re Ho Wan Kwok*, No. 22-50073 (JAM) (Bankr. D. Conn.).

[25]  *Memorandum of Decision and Order Denying Motion to Dismiss Without Prejudice and Granting Joinder to Motion for Appointment of Chapter 11 Trustee*, CT ECF No. 465.

[26]  *Order Granting Appointment of Chapter 11 Trustee*, CT ECF No. 523.

[27]  *Order, Pursuant to Bankruptcy Code Sections 363, 521, 541, 1108, and 1505, (A) Confirming that Chapter 11 Trustee Holds All of Debtor's Economic and Corporate Governance Rights in Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee to Act in Any Foreign Country on Behalf of Estate, and (C) Granting Related Relief*, CT ECF No. 717.

[28]  *Motion of Chapter 11 Trustee for Entry of Order, Pursuant to Bankruptcy Code Sections 363, 521, 541, 1108, and 1505, (A) Confirming that Chapter 11 Trustee Holds All of Debtor's Economic and Corporate Governance Rights in Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee to Act in Any Foreign Country on Behalf of Estate, and (C) Granting Related Relief*, CT ECF No. 598.

avoidance of doubt, the foregoing rights include the Trustee's asserted authority to replace any existing officer, director, manager, or similar person of the [Individual] Debtor-Controlled Entities. As part of the foregoing, to the extent necessary, the Trustee is authorized to act, in his capacity as the chapter 11 trustee in this Chapter 11 Case, as any such officer, director, manager, or similar person who has been removed.

Corporate Governance Order ¶ 2. The Corporate Governance Order expressly provides that nothing in such order:

shall be deemed to authorize any particular action with respect to [Genever (US)] in its chapter 11 case pending before the United States Bankruptcy Court for the Southern District of New York (the "Genever Court"). The Trustee shall appear before, and seek guidance from, the Genever Court to the extent the Trustee's exercise of corporate governance rights with respect to Genever (US) would impact its chapter 11 case.

*Id.* ¶ 8. Following entry of the Corporate Governance Order, the Trustee and the Individual Debtor took the necessary steps for the Trustee to obtain corporate control over Genever (BVI) and Genever (US). No bar date has yet been set in the Individual Debtor Case.

**Genever (BVI) Chapter 11 Case**

Genever (US) is a wholly owned subsidiary of Genever (BVI), and, in turn, Genever (BVI) is wholly owned by Kwok. In accordance with the Corporate Governance Order, the Individual Debtor's shares in the Genever (BVI) were transferred to the Trustee and such transfer was registered with the registered agent for the Genever (BVI) Debtor in BVI. *See* Abrehart Decl. ¶ 10.[29] On September 13, 2022, Genever (BVI) entered into that certain Director Services Agreement with Harneys Corporate pursuant to which Harneys Corporate agreed, among other things, to provide the services of Clair Abrehart for the position of the Director of the Genever

---

[29]   *Declaration of Claire Abrehart, Director of Genever Holdings Corporation, In Support of Debtor's Chapter 11 Petition*, BVI ECF No. 1. Hereinafter, "BVI ECF No.__" refers to documents filed on the electronic docket in the Chapter 11 Case of *In re Genever Holdings Corporation*, No. 22-50542 (JAM) (Bankr. D. Conn.).

(BVI). *Id*. ¶ 11. By shareholder's resolution dated September 14, 2022, Ms. Abrehart was appointed

as the Director Of Genever (BVI) effective as of September 14, 2022, replacing Kwok, its former

director. *Id*. On October 11, 2022, after the Trustee filed the Motion, Genever (BVI) filed it

voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Connecticut

Bankruptcy Court.

## Bravo Luck Litigation

In addition to being party to the BVI Litigation, Bravo Luck is the sole defendant in

virtually identical lawsuits filed against it by the Trustee in the Individual Debtor Case (the "CT

Fraudulent Transfer Action"),[30] and the Debtor in the Genever (US) Case (the "NY Fraudulent

Transfer Action").[31] In substance, in their respective complaints filed in those actions, the Trustee

and Debtor each seek an order pursuant to Bankruptcy Rule 7001(9) declaring that the Trust

Agreement is a fraudulent, backdated document and is therefore invalid, void, and unenforceable,

and, therefore, that Bravo Luck is not the beneficial owner of the Sherry-Netherland Apartment.

As an alternative to those claims, in its complaint, the Debtor seeks an order, pursuant to section

502(d) of the Bankruptcy Code, disallowing the Bravo Luck Proof of Claim; and, alternatively,

pursuant to section 510(b) of the Bankruptcy Code, subordinating all allowed (or eventually

allowed) claims of Bravo Luck. In their respective complaints, the Trustee and Debtor each also

---

[30]   *Chapter 11 Trustee's Adversary Complaint Against Bravo Luck and Qiang Guo Seeking (I) Invalidation of Purported Trust Agreement in Favor of Bravo Luck and, (II) in Alternative, Ruling that Debtor Effectuated Fraudulent Transfer in Favor of Bravo Luck and Qiang Guo Pursuant to Section 276 of New York Debtor and Creditor Law, Made Applicable by Section 544 of Bankruptcy Code*, CT AP ECF No. 1. Hereinafter, "CT AP ECF No.__" refers to documents filed on the electronic docket in the Adversary Proceeding of *Luc A. Despins, Chapter 11 Trustee v. Bravo Luck Ltd. and Qian Guo*, Adv. Pro. No. 22-05027 (JAM) (Bankr. D. Conn.).

[31]   *Debtor's Adversary Complaint Against Bravo Luck Seeking (I) Invalidation of Purported Trust Agreement in Favor of Bravo Luck and, (II) in Alternative, Ruling that Debtor Effectuated Fraudulent Transfer in Favor of Bravo Luck Pursuant to Section 276 of New York Debtor and Creditor Law, Made Applicable by Section 544 of Bankruptcy Code*, NY AP ECF No. 1. Hereinafter, "NY AP ECF No.__" refers to documents filed on the electronic docket in the Adversary Proceeding of *Genever Holdings LLC v. Bravo Luck Ltd.*, Adv. Pro. No. 22-01157 (JLG) (Bankr. S.D.N.Y.).

11

seek entry of an order (i) declaring, pursuant to the Section 276 of the New York Debtor and

Creditor Law, sections 544 and 550 of the Bankruptcy Code, and Bankruptcy Rule 7001(9), that

the Trust Agreement is invalid and (ii) avoiding any conveyance of Genever (US)'s property or

any incurrence of any obligation by Genever (US) that occurred pursuant to the Trust Agreement.

### Legal Standards

A chapter 11 case may be commenced in the district court for the district in which "the

domicile, residence, principal place of business in the United States, or principal assets in the

United States, of the person or entity that is the subject of such case have been located for a hundred

and eighty days immediately preceding such commencement . . . ." 28 U.S.C.§ 1408(1). The statute

is written in the disjunctive, making venue proper in any of the listed locations. *In re Segno*

*Commc'ns, Inc.,* 264 B.R. 501, 505 (Bankr. N.D. Ill. 2001) (finding any of the four is

jurisdictionally sufficient). Furthermore, a chapter 11 case may be commenced in the district court

for the district "in which there is pending a case under title 11 concerning such person's affiliate,

general partner, or partnership." 28 U.S.C.§ 1408(2).

Pursuant to 28 U.S.C. § 1412, a "district court may transfer a case or proceeding under title

11 to a district court for another district, in the interest of justice or for the convenience of the

parties." 28 U.S.C. § 1412; *see* Fed. R. Bankr. P. 1014. Section 1412 "is phrased in the disjunctive,

therefore [e]ach requirement is discrete. . .Thus, transferability pursuant to [section] 1412 is an

either-or test, not a two-fold one.'" *In re Enron Corp.*, 317 B.R. 629, 637 (Bankr. S.D.N.Y. 2004)

(alteration in original) (quoting *Indep. Stationers, Inc. v. Vaughn*, No. IP 99-0127 C M/S, 2000

WL 1449854, at *2 (S.D. Ind. Jan. 3, 2000)). *See also In re Patriot Coal Corp.*, 482 B.R. 718,

738–39 (Bankr. S.D.N.Y. 2012) ("Section 1412 is written in the disjunctive, meaning that each of

the two prongs—'in the interest of justice' or 'for the convenience of the parties'—constitutes an independent ground for transferring venue.").

The decision of whether to transfer venue is within the court's discretion based on an individualized case-by-case analysis of convenience and fairness. *See, e.g., Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.),* 896 F.2d 1384, 1391 (2d Cir. 1990) (analogizing adjudication under 28 U.S.C. § 1404 and citing *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22 (1988)); *Commonwealth of Puerto Rico v. Commonwealth Oil Ref. Co. (In re Commonwealth Oil Ref. Co.),* 596 F.2d 1239, 1247 (5th Cir. 1979); *In re Dunmore Homes, Inc.,* 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008); *In re Enron,* 317 B.R. at 638. The burden is on the movant to show by a preponderance of the evidence that the transfer of venue is warranted. *See In re Manville Forest Prods. Corp.,* 896 F.2d at 1390; *In re Commonwealth Oil Ref. Co.,* 596 F.2d at 1241; *In re Patriot Coal Corp.,* 482 B.R. at 739; *In re Enron Corp.,* 317 B.R. at 639.

## Discussion

Genever (US)'s principal assets in the United States are the Sherry-Netherland Apartment and a related security deposit.[32] Both assets are located in this district. Accordingly, the venue selected by Genever (US) is proper under section 1408. In assessing the merits of the Motion, the Court recognizes that "the power to transfer a case [or proceeding] should be exercised cautiously." *In re Enron,* 317 B.R. at 638 (quoting *In re Toxic Control Techs., Inc.,* 84 B.R. 140, 143 (Bankr. N.D. Ind. 1988) (internal quotations omitted). Moreover, where, as here, a debtor's venue selection is proper under section 1408, that selection is "entitled to great weight" in the consideration of change of venue motions. *In re Suntech Power Holdings Co., Ltd.,* 520 B.R. 399, 420 (Bankr.

---

[32]    *See Schedule A/B: Assets – Real and Personal Property (Official Form A/B),* NY ECF No. 4 at 4.

S.D.N.Y. 2014) (citing *In re Enron*, 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002)). *See also In re Garden Manor Assocs., L.P.*, 99 B.R. 551, 555 (Bankr. S.D.N.Y. 1988).

The debtors did not file their respective chapter 11 cases with the goal of rehabilitating their businesses. Indeed, none of them operates as a business. Genever (US) commenced its chapter 11 case in order to monetize the Sherry-Netherlands Apartment. It took steps to address that issue through the Genever Settlement Agreement as there is now an asset sale process underway that is being overseen by the Debtor's Sales Officer.

In filing his case, Kwok sought, among other things, to centralize the many claims against him and his assets in a one forum. In support of his chapter 11 case, Kwok says that he commenced his chapter 11 case to

> (a) create a single forum to orderly address the various competing claims asserted against me; (b) afford stakeholders an efficient opportunity to investigate my assets, liabilities, and financial affairs, given what I perceive to be misunderstandings in that regard; (c) establish what assets are estate property and, in turn, available for distribution to holders of allowed claims; and, hopefully (d) reach consensus with my creditors on a fair and equitable resolution of claims and distribution of assets pursuant to a Chapter 11 plan.

Kwok Chapter 11 Decl. ¶ 3.[33]

In commencing its chapter 11 case, Genever (BVI) likewise focused on centralizing the many Kwok-related disputes in a single forum. It explains that it commenced its case (i) to avoid time consuming litigation in the BVI court on whether the automatic stay in the Individual Debtor Case bars Bravo Luck from continuing to litigate the ownership issues relating to Sherry-Netherland Apartment in the BVI Litigation, and (ii) as part of the Trustee's efforts to address all issues relating to the Sherry-Netherland Apartment in a comprehensive and efficient manner with all parties before the Connecticut Bankruptcy Court. *See* Abrehart Decl. ¶¶ 17-18.

---

[33] *Declaration of Mr. Ho Wan Kwok In Support Of The Chapter 11 Case and Certain Motions*, CT ECF No. 107, ¶ 3.

It is plain that the "gating issue" common to the Genever (US), Genever (BVI) and Individual Debtor's chapter 11 cases is resolution of the question of which creditor group will be entitled to share in the value of the Sherry-Netherland Apartment. As noted, litigation relating to that issue is pending in the BVI Court, pursuant to the BVI Litigation commenced by PAX against Bravo Luck, Genever (BVI), the Individual Debtor and Guo. It is also pending in this Court, in the NY Fraudulent Transfer Action, and the Connecticut Bankruptcy Court, in the nearly identical CT Fraudulent Transfer Action. Neither of the bankruptcy court actions has proceeded beyond the filing of the complaints commencing those actions. The record reflects that the BVI Litigation has not progressed in a material way. Moreover, the BVI Litigation has been automatically stayed as against Genever (BVI) and the Individual Debtor. To the extent the Genever (US) could be viewed as a necessary party to that litigation, the automatic stay likewise bars suit against it.

Bravo Luck contends that the BVI Court should resolve Ownership Dispute, essentially because in the Genever Settlement Agreement, the Debtor, Bravo Luck and PAX agreed that the dispute would be resolved in the BVI Litigation. Bravo Luck contends that in support of the BVI Litigation, PAX asserts, among other things, that the Individual Debtor is the owner of the Genever (US) and Genever (BVI) and that those entities are mere alter egos of the Individual Debtor and that, as such, PAX's interests are wholly aligned with that of the Trustee. Objection ¶ 3. Bravo Luck also maintains that the parties to the Genever Settlement Agreement determined that the Ownership Dispute would go forward and be resolved in the BVI and, as such, the Court cannot and should not now, after two years, transfer venue of the Genever (US) Case to the Connecticut Bankruptcy Court where the Individual Debtor Case is being administered and the CT Fraudulent Transfer Action is pending. *Id.* Bravo Luck complains that the Debtor's commencement of the NY Fraudulent Transfer Action directly contravenes the understanding of the parties to the Genever

Settlement Agreement—which includes the Debtor—that the Ownership Dispute was to be decided outside of a bankruptcy court. *Id.* ¶ 4. It asserts that this Court is in the best position to interpret the Settlement Order and Genever Settlement Agreement and should do so before considering the merits of the Motion. *Id.*

The Court finds no merit to those contentions. Although well qualified, the BVI Court is not best suited to address the gating issues in these cases. Although PAX's interests in the BVI Litigation may be aligned with the Trustee's interests, PAX cannot step into the Trustee's shoes in that litigation. Only the Trustee can assert the avoidance claims that are central to the CT Fraudulent Transfer Action. Moreover, the Debtor and Trustee contend, and PAX agrees, that section 7(b) of the agreement does not impose a requirement that the Ownership Dispute be decided in the BVI Court. They maintain that the provision is nothing more than a reservation of rights. Reply ¶ 4. The language in paragraph 7(b) appears to be clear and unambiguous. In any event, this Court and the Connecticut Bankruptcy Court are equally well suited to interpret the agreement, as necessary. Accordingly, the Court will not reserve for itself the interpretation of the Genever Settlement Agreement and will consider the merits of the Motion.

Turning to the substance of the Objection, Bravo Luck essentially contends that the resolution of which creditor group is entitled to share in the value of the Sherry-Netherland Apartment should be divided up between three different courts: (1) the BVI court should determine Bravo Luck's ownership interest in the Sherry-Netherland Apartment and the validity of the Trust Agreement (an agreement governed by U.S. law); (2) this Court should resolve the distribution of proceeds to Genever (US)'s creditors; and (3) the Connecticut Bankruptcy Court should resolve the distribution of proceeds (if any) as it relates to the Individual Debtor's creditors.

The Court finds no support for that contention in fact or law. The Court essentially must determine whether, in light of settled principles governing change of venue motions, this Court or the Connecticut Bankruptcy Court is best positioned to oversee the process of adjudicating the many issues relating to the ownership of the Sherry-Netherland Apartment and distribution of the value of the apartment to creditors. The Court finds that, by a preponderance of the evidence, the Trustee has demonstrated grounds under section 1412 to transfer the venue of the Genever (US) Case to the Connecticut Bankruptcy Court. The Court will proceed by analyzing whether transferring the case is "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412; *see* Fed. R. Bankr. P. 1014.

Interest of Justice

The Second Circuit has found that "[t]he 'interest of justice' component of § 1412 is a broad and flexible standard which must be applied on a case-by-case basis. It contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness . . . ." *In re Manville Forest Prods. Corp.*, 896 F.2d at 1391. In analyzing the "interest of justice" prong under section 1412, courts have considered the following factors:

> (i) whether transfer would promote the economic and efficient administration of the bankruptcy estate; (ii) whether the interests of judicial economy would be served by the transfer; (iii) whether the parties would be able to receive a fair trial in each of the possible venues; (iv) whether either forum has an interest in having the controversy decided within its borders; (v) whether the enforceability of any judgment would be affected by the transfer; and (vi) whether the plaintiff's original choice of forum should be disturbed.

*In re Dunmore Homes, Inc.*, 380 B.R. at 672. The Court considers those factors below.

1. Efficient and Economic Administration and Judicial Economy

The Court analyzes the economic and efficient administration of the bankruptcy estate and judicial economy together because economic and efficient administration directly affects judicial economy. *See In re Enron Corp.*, 317 B.R. at 640. The Movants have demonstrated that Genever (US) is one of many entities created by the Individual Debtor that he utilized in an effort to hide assets from his creditors, and that the Individual Debtor's alleged "shell game" has given rise to disputes in both the Genever (US) Case and Individual Debtor Case regarding the extent and characterization of the Individual Debtor's ownership in certain assets, including the Sherry-Netherland Apartment. Motion ¶ 35. They note, for example, that although title to the Sherry-Netherland Apartment is registered in the name of Genever (US), Bravo Luck asserts that it is the beneficial owner of the Sherry-Netherland Apartment by virtue of the Trust Agreement. *Id.* ¶ 36. The Movants assert, and the Court agrees, that in both this case and the Individual Debtor Case, the courts will be asked to address the same fundamental question of what assets belonged to the Individual Debtor (and thus the chapter 11 estate) as of the Individual Debtor's petition date. *Id.* Failure to transfer venue of this case to the Connecticut Bankruptcy Court could lead to inconsistent rulings on that important issue and would be a waste of judicial resources. "[J]udicial efficiency is served by litigating the same legal issue only once." *Hilton Worldwide, Inc. Glob. Benefits Admin. Comm. v. Caesars Ent. Corp.*, 532 B.R. 259, 274 (E.D. Va. 2015). The substantial overlap in issues and parties between the Genever (US) Case and Individual Debtor Case necessitates their coordination in one forum. *See In re TS Emp., Inc.*, No. 15-10243 (MG), 2015 WL 4940348, at *4 (Bankr. S.D.N.Y. Aug. 18, 2015) (finding that all the cases were "inextricably intertwined" in granting transfer of venue).

2. <u>Fair Trial in Each Venue</u>

There is simply to no reason to question whether Genever (US) and its creditors will receive fair a trial in the Connecticut Bankruptcy Court. None of the parties asserting an economic interest in the Sherry-Netherland Apartment (including the Sherry-Netherland) opposes the transfer of the venue of the Genever (US) Case to the Connecticut Bankruptcy Court. Bravo Luck does not question the impartiality of the Connecticut Bankruptcy Court, Objection ¶ 18, but it asserts that "the Individual Debtor Case is replete with issues and allegations that are completely unrelated to the Ownership Dispute" and "should the Ownership Dispute be brought before the Connecticut Bankruptcy Court, there would certainly be miscellaneous, unrelated conjecture injected into the matter." *Id.* This Court is confident that the Connecticut Bankruptcy Court can easily distinguish facts from "unrelated conjecture." Application of this factor plainly weighs in favor of transferring the venue of this case to the Connecticut Bankruptcy Court.

3. <u>Interests of Either Forum in Having Controversies Decided Within its Borders</u>

Bravo Luck asserts that this Court has a particular interest in retaining venue of this case because Genever (US)'s primary asset is located in New York and subject to New York state laws, including, but not limited to, "complicated" real estate and co-op laws that will be implicated as the sale process of the Sherry-Netherland Apartment proceeds to conclusion. Objection ¶ 20. In contrast, the Movants assert that although Genever (US) is a New York limited liability company, it does not have any employees, conduct any business, or provide any services in New York, aside from owning the Sherry-Netherland Apartment. Motion ¶ 40. Moreover, they note that other than Sherry-Netherland, none of the creditors that filed proofs of claims in the Genever (US) Case are located in New York. *Id.* This Court does not have a particular interest in resolving the conflicting claims to the ownership of the Sherry-Netherland Apartment or in overseeing the sale of the

apartment. In contrast, the Connecticut Bankruptcy Court has a strong interest in deciding controversies involving the Individual Debtor's claims to the property because the Individual Debtor Case is pending in that court. The Court also finds that Bravo Luck overstates the significance of the potential application of New York state law to a sale of the Sherry-Netherland Apartment. Bankruptcy courts regularly apply state law and local law in real estate sale transactions. Moreover, Sherry-Netherland has a keen interest in ensuring that the sale of the apartment complies with state and local law. It does not object to the Motion. Application of this factor supports granting the Motion.

4. Enforceability of Judgment

The same holds true with this factor. There is nothing in the record demonstrating that there is reason to believe that a judgment from the Connecticut Bankruptcy Court in the CT Fraudulent Transfer Action would be any less enforceable than a judgment by this Court.

5. Disturbing the Original Forum

In analyzing this factor, courts look at whether the debtor's interests will be harmed or whether the estate will suffer a diminution in value if venue is transferred. *See In re Certa Dose, Inc.*, No. 21-11045 (LGB), 2021 WL 5177376, at *15 (Bankr. S.D.N.Y. Nov. 4, 2021) (citing *In re Dunmore Homes, Inc.*, 380 B.R. at 675). In considering this matter, the Court notes that the Debtor, *i.e.*, Genever (US), is requesting the transfer of venue. Moreover, the Trustee has indicated that he has no intention of stopping the court-approved sale process for the Sherry-Netherland Apartment. There is no indication that Genever (US)'s interests will be harmed if the Court transfers the venue of this case to the Connecticut Bankruptcy Court.

Based on the foregoing, the Court finds that the Movants have met their burden of demonstrating that, in the interests of justice, the Court should transfer the venue of the Genever

(US) Case to the Connecticut Bankruptcy Court. *E.g., In re Dunmore Homes, Inc.*, 380 B.R. at 672 (holding that the moving parties had met their burden under both the interests of justice and convenience of parties' standards). This affords a sufficient basis for the Court to grant the Motion and transfer the venue of this case to the Connecticut Bankruptcy Court.

Convenience of the Parties

In determining whether a venue transfer serves the convenience of the parties, courts consider six different factors: (i) the proximity of creditors of every kind to the Court; (ii) the proximity of the debtor to the Court; (iii) the proximity of the witnesses necessary to the administration of the estate; (iv) the location of the assets; (v) the economic administration of the estate; and (vi) the necessity for ancillary administration if liquidation should result. *See In re Dunmore Homes, Inc.*, 380 B.R. at 672. The Court considers those matters below.

1. The Proximity of Creditors of Every Kind to the Court

In considering the proximity of creditors, courts "examine both the number of creditors as well as the amount of claims held by such creditors." *In re Enron Corp.*, 274 B.R. at 345. Of the five creditors that filed proofs of claim in the Genever (US) Case, only one creditor, the Sherry-Netherland, is located in New York. The remaining creditors are located outside of New York. *See* Motion ¶ 40.[34] Bravo Luck asserts that application of this factor nonetheless weighs against granting the Motion because (1) Sherry-Netherland is located in New York and holds an administrative claim against Genever (US), and (2) PAX filed the NY State Court Action in New York Supreme Court. *See* Objection ¶ 24. However, neither Sherry-Netherland nor PAX objects

---

[34]    "The Trustee understands that (a) the Individual Debtor's son resides in the United Kingdom, (b) Golden Spring is a Delaware entity, (c) PAX is an entity a Cayman Islands entity, and (d) Bravo Luck is a BVI entity." Motion ¶ 40 n.22.

to the Motion. Given the fact that none of the Creditors are Connecticut entities, this factor remains neutral.

2. <u>The Proximity of the Debtor to the Court</u>

The Individual Debtor's estate owns and controls Genever (US), and the Individual Debtor's chapter 11 case is pending in the Connecticut Bankruptcy Court. In the Individual Debtor's chapter 11 case, pursuant to the Corporate Governance order, the Trustee has been granted the authority to direct Genever (US) throughout the proceedings. That weighs heavily in favor of granting the Motion. Still, Bravo Luck asserts that application of this factor weighs against transferring the venue of this case to the Connecticut Bankruptcy Court because "the Debtor was created with the purpose of holding real estate . . . located in New York City," and the Trustee's professional website shows that he is based in New York City. Objection ¶ 25. However, neither factor is particularly relevant. The fact that the U.S. Trustee selected an attorney with a New York business address as the Trustee does not undermine the force of his Motion, as the Individual Debtor's case is pending in Connecticut. Moreover, the Individual Debtor purports to own and control Genever (US) and chose to file his case in Connecticut. Indeed, the Debtor and Trustee are requesting that the venue be transferred to Connecticut.

Finally, Bravo Luck asserts that it "would need to engage separate Connecticut counsel . . . if [the Genever (US) Case] would be transferred to the Connecticut Bankruptcy Court" because "the Local Rules of Bankruptcy Procedure for the District of Connecticut require parties appearing in the Connecticut Bankruptcy Court to be represented by counsel not only barred in the State of Connecticut, but with an office in Connecticut." *Id.* ¶ 24 n.13. However, given that the Trustee has initiated the CT Fraudulent Transfer Action against Bravo Luck in the Connecticut

Bankruptcy Court, Bravo Luck must engage Connecticut counsel regardless of whether this venue

transfer occurs. Application of this factor does not cut against the Motion.

3. <u>The Proximity of the Witnesses Necessary to the Administration of the Estate</u>

Bravo Luck acknowledges that "some of the witnesses in this case may reside outside of

New York." *Id.* ¶ 26. Even though some of the witnesses are native to New York, many of these

witnesses are outside of New York and are going to "be required to appear in the Connecticut

Bankruptcy Court for the Individual Debtor Case regardless of whether transfer is approved"

because "the cases arose from the same circumstances and there is a significant overlap of legal

and factual issues." Motion ¶ 46. Thus, although it might be less convenient for those witnesses

living in New York to travel to Connecticut, denying transfer would require the witnesses residing

outside of the New York-Connecticut region to travel to two different locations to appear in front

of two different courts in order to testify about overlapping factual issues. *See id.* Such

consideration outweighs the slight inconvenience that the New York-based witnesses might

experience in having to travel to Connecticut. Application of this factor weighs in favor of granting

the Motion.

4. <u>The Location of the Assets</u>

The location of assets can "take[] on less compelling significance" depending on the

"relative proximity of the two jurisdictions in question." *In re Red Door Prop. Mgmt. LLC*, No.

11-02704-KMS, 2011 WL 5592910, at *7 (Bankr. S.D. Miss. Nov. 16, 2011) (citing *In re

LaGuardia Assocs., L.P.,* 316 B.R. 832, 839–40 (Bankr. E.D. Pa. 2004)). That is clearly the case

here. Genever (US)'s primary asset is the Sherry-Netherland Apartment, which is located in New

York, and New York and Connecticut share a border. Moreover, as previously discussed,

bankruptcy courts routinely apply state and local law in considering matters relating the disposition of real property. Application of this factor is neutral.

5. <u>The Economic Administration of the Estate</u>

"Among the six factors, courts have often given the most weight to the economic and efficient administration of the estate." *In re Asset Resol. LLC*, No. 09-16142 (AJG), 2009 WL 4505944, at *2 (Bankr. S.D.N.Y. Nov. 24, 2009). The Movants assert that at this point, both courts are being asked to determine whether the Trust Agreement is enforceable and the extent, if any, to which Bravo Luck has an interest in the Sherry-Netherland Apartment. The Movants assert, and the Court agrees, that the failure to transfer venue could lead to the possibility of inconsistent rulings on the important issue of the enforcement of the Trust Agreement and would be a waste of judicial resources. Motion ¶¶ 36–37. Thus, this factor heavily weighs in favor of resolving the ownership issues in a single forum: the Connecticut Bankruptcy Court. Bravo Luck asserts that the Genever (US) Case has been pending for two years "and is substantively resolved in light of the Genever Settlement Agreement," and that it would "cost the estates and parties time and expense to get the Connecticut Bankruptcy Court up to speed on the Genever (US) Case." Objection ¶¶ 31–32. However, the Movants have neither any intention of delaying the sale process of the Sherry-Netherland Apartment, Reply ¶ 19, nor of halting the work of the Sales Officer, who was appointed in accordance with the Genever Settlement Agreement. Motion ¶ 19. Thus, the Movants have no intention of stopping the very process created by the terms of the Genever Settlement Agreement, which Bravo Luck states "substantively resolved" the issues in the Genever (US) Case. This factor weighs in favor of granting the Motion and transferring the venue of this case to the Connecticut Bankruptcy Court.

6. <u>The Necessity of Ancillary Administration if Liquidation Should Result</u>

The "inquiry about possible ancillary administration as a factor in a venue determination is only rarely afforded significant weight, and, when it is, the inquiry focuses on the location of a debtor's assets." *In re Hermitage Inn Real Est. Holding Co., LLC*, No. 19-10214, 2019 WL 2536075, at *14 (Bankr. D. Vt. June 19, 2019). Thus, in this case the inquiry would focus on the liquidation of Genever (US) after the sale of the Sherry-Netherland Apartment, which is located in New York. Bravo Luck asserts that courts "weigh this factor in favor of the location where the debtor's assets were located because it was best for the marketing and sale of those asset[s] to be conducted as close to the assets' location as possible." Objection ¶ 34 (citing *In re Dunmore Homes, Inc.*, 380 B.R. at 677).

However, this case is distinguishable from *Dunmore*. In *Dunmore*, the court had to determine whether to transfer venue of a chapter 11 case from New York to California, where the majority of the debtor's assets were centralized in California. *Id.* at 673. The debtor was wholly owned by a California resident and had "no office, employees, or bank accounts in New York. Its only presence in New York is its recent incorporation in this state." *Id.* at 667. Here, prior to the Trustee's appointment, Kwok owned all of the shares in Genever (BVI), which in turn wholly owned Genever (US). *See* Reply ¶ 21. Kwok, the Individual Debtor, is located in Connecticut; this is not a situation in which the Individual Debtor, who owns the other assets, is located in New York and is attempting to forum shop in Connecticut. Furthermore, when analyzing this factor, the court in *Dunmore* cites to *Enron* and *In re B.L. of Miami, Inc.*, 294 B.R. 325 (Bankr. D. Nev. 2003), in which it was "apparent that the nature of the underlying businesses was a major consideration in the venue decisions." *In re Dunmore Homes, Inc.*, 380 B.R. at 677. Here, however, there is no "underlying business" anchoring Genever (US) to New York; the only matter of

consideration in New York is the sale of the Sherry-Netherland Apartment because the apartment is located there. The Individual Debtor, who owns Genever (US), is located in Connecticut. In this light, this Court determines that application of this factor weighs in favor of transferring the venue of this case to the Connecticut Bankruptcy Court.

In sum, the Movants have met their burden of demonstrating that the convenience of the parties weighs in favor of transferring the venue of this case to the Connecticut Bankruptcy Court.

## **Conclusion**

Based on the foregoing reasons, the Court GRANTS the Motion.

IT IS SO ORDERED.

Dated: New York, New York
        November 3, 2022

                                /s/ *James L. Garrity, Jr.*
                                Hon. James L. Garrity, Jr.
                                U.S. Bankruptcy Judge